IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ACCREDITED HOME LENDERS | § | Case No. 09-11516 (MFW) |
| HOLDING CO., et al. | § | |
| | § | |
| Debtors.[1] | § | JOINTLY ADMINISTERED |

**DEBTORS' MOTION FOR AN ORDER AUTHORIZING THE SALE
OF REAL PROPERTY LOCATED IN DORCHESTER, MASSACHUSETTS,
THE PAYMENT OF OUTSTANDING TAX OBLIGATIONS RELATING
TO THE PROPERTY, AND THE SETTLEMENT OF CLAIMS WITH
THOMAS ROMANO, SR., THOMAS ROMANO, JR., AND MARY ROMANO**

The debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") hereby file this Motion for an Order Authorizing the Sale of Real Property Located in Dorchester, Massachusetts, the Payment of Outstanding Tax Obligations Relating to the Property, and the Settlement of Claims with Thomas Romano, Sr., Thomas Romano, Jr. And Mary Romano. By this Motion, the Debtors seek to sell real property located at 23 Humphreys St. in Dorchester, Massachusetts (the "Property") owned by Debtor Accredited Home Lenders, Inc. ("AHL") to Thomas Romano, Sr. pursuant to the Purchase and Sale Agreement attached hereto as "**Exhibit A**" (the "Purchase and Sale Agreement"), to pay any outstanding taxes related to the Property, regardless of when such taxes arose, and to enter the Release attached hereto as "**Exhibit B**" (the "Release") which would settle and release all claims between the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Accredited Home Lenders Holding Co., a Delaware corporation (9482), Accredited Home Lenders, Inc., a California corporation (6859), Vendor Management Services, LLC d/b/a Inzura Settlement Services, a Pennsylvania limited liability company (8047), Inzura Insurance Services, Inc., a Delaware corporation (7089), and Windsor Management Co., d/b/a AHL Foreclosure Services Co., a California corporation (4056). The address for all Debtors is 9915 Mira Mesa Blvd., Ste. 100, San Diego, CA 92131. The bankruptcy cases for these debtors and debtors-in-possession are jointly administered under the bankruptcy case and style referenced above.

Debtors and Thomas Romano, Sr., Thomas Romano Jr., and Mary Romano (the "Romanos"). In support of the Motion, the Debtors would respectfully show the Court as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of the Motion pursuant to 28 U.S.C. § 1334. Consideration of this Motion is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

2. These bankruptcy cases were filed on May 1, 2009 (the "Petition Date"). The Debtors continue to operate their businesses and manage their property as debtors-in-possession. The United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") on June 16, 2009, and re-appointed one member and added two new members to the Committee on July 23, 2009. No trustee or examiner has been appointed.

3. In April, 2007 Thomas Romano, Jr. obtained a $600,000 mortgage loan (the "Loan") from the Debtors, which was secured by the Property. Only two payments were made on the Loan. The Debtors foreclosed on the Property in May, 2008. Shortly before this foreclosure, Thomas Romano, Jr. and Thomas Romano, Sr. filed a lawsuit against AHL, which is pending in the U.S. District Court for the District of Massachusetts, No. 1:08-cv-10795-EFH (the "Lawsuit").

4. In the Lawsuit, Romano, Jr. and Romano, Sr. allege, among other things, that AHL committed fraud and that Romano, Jr., at the instructions of AHL's agent, forged the

names of his parents Romano, Sr. and Mary Romano on the documents conveying the mortgage interest in the Property to AHL. Romano, Jr. and Romano, Sr. filed a motion for relief from the automatic stay in these bankruptcy cases seeking to continue the Lawsuit. *See* Docket No. 776.

5. The Debtors and the Romanos subsequently negotiated the Purchase and Sale Agreement and the Release. Pursuant to the Purchase and Sale Agreement, AHL will sell the Property to Romano, Sr. for $115,000, plus 25% of the property taxes owed on the Property at the time of closing, plus payment of all other unpaid expenses relating to the Property. The Release mutually releases all claims between the Debtors and the Romanos. This Motion seeks approval of the Purchase and Sale Agreement and the Release, and also seeks authority for the Debtors to pay certain taxes due on the Property, regardless of whether such taxes were incurred before or after the Petition Date.

## RELIEF REQUESTED & APPLICABLE AUTHORITY

1. **Sale of the Property.**

    a. **Sale is Fair and within Debtors' Business Judgment.**

    6. The Bankruptcy Code provides that a trustee or debtor-in-possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, bankruptcy courts routinely authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor. *See, e.g., Meyers v.*

00411-001\DOCS_DE:155126.1

*Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999).

7. The price offered for the Property is the highest and best offer that the Debtors have obtained for the Property. The Debtors have been marketing approximately ten other parcels of real estate owned by the Debtors and certain non-debtor subsidiaries and approximately thirteen non-performing mortgage loans for sale as a single package. The Debtors have obtained one buyer who is willing to act as a stalking horse for an auction for these remaining properties. That buyer's initial bid for all of these assets is expected to be in the range of $400,000, which the buyer reduced by approximately $80,000 after the Property was removed from the sale package. These facts lead the Debtors to conclude that the price offered by Romano, Sr.—$115,000, plus 25% of the property taxes owed on the Property at the time of closing, plus payment of all other unpaid expenses relating to the Property—is the highest and best offer they could hope to receive for the Property.

8. More importantly, the Debtors' title to the Property might be clouded by the Lawsuit. If the Romanos can prove their allegation that the signatures on the documents conveying the mortgage on the Property to AHL were forged, and if the Romanos can establish that these forged signatures were necessary to convey the mortgage on the Property to AHL, the Debtors might not have legal title to the Property. The Romanos would likely attempt to prevent the Debtors from selling the Property to a different buyer by raising these arguments. Thus, the Debtors' ability to sell the Property to a different buyer is uncertain, and such an attempt could

<mark>
</mark>

00411-001\DOCS_DE:155126.1

lead to increased litigation expenses and further delay. The Debtors believe that selling the Property to Romano, Sr. is their best option.

9. The Debtors would prefer not to use their scarce resources to continue maintaining the Property. The Romanos have represented that the condition of the Property is deteriorating, and the Debtors' few remaining employees in San Diego, California are not in a good position for ensuring that the Property, which is located in Massachusetts, is properly maintained. Selling the Property now will ensure that the Property does not decline further in value and prevent the Debtors' estates from being depleted by the costs of maintaining the Property.

**b. Terms of Sale & Local Rule 6004 Disclosures.**

10. The Debtors do not propose to sell the Property free and clear of liens, security interests, or encumbrances. The sale of the Property will be a private sale. The Debtors intend to close the sale of the Property within five business days of the entry of a final order approving the sale. In this Motion, the Debtors are seeking approval of the Release, which would release all of the Debtors' claims against the Romanos, and all of the Romanos' claims against the Debtors. The Release is also incorporated in the Purchase and Sale Agreement with Romano, Sr. *See* Exhibit D to Purchase and Sale Agreement.

**c. Waiver of Ten-Day Stay Imposed by Bankruptcy Rule 6004(h).**

11. The Debtors request that the Court waive the ten-day stay Bankruptcy Rule 6004(h) imposes on an order approving the sale of the Property. This is in the best interests of the Debtors' estates because closing the sale expeditiously will ensure that the expenses and

5

risks of losses associated with the Property are transferred from the Debtors to the Romanos as soon as possible. Furthermore, the Romanos have stated that their ability to obtain funding for the purchase of the Property would be jeopardized by further delay. Since the Motion does not seek to impair the rights of any other entities, having the sale close expeditiously will not prejudice any parties.

2. **Payment of Taxes on Property.**

12. In order to effectuate the transfer of the Property, the outstanding property taxes on the Property will need to be paid. The Romanos have agreed to pay 25% of these taxes. The Debtors do not believe that any of their outstanding property tax obligation relating to the Property arose pre-petition.[2] However, out of an abundance of caution, the Debtors are seeking permission to pay any pre-petition property tax obligations relating to the Property. The Debtors believe that any such pre-petition obligations will be paid in full at the end of these bankruptcy cases anyways, since such pre-petition tax obligations would be entitled to priority status under § 507(a)(8) of the Bankruptcy Code and the Debtors have ample unencumbered cash and other assets that will be sufficient to pay all priority claims in full. Thus, paying such pre-petition obligations will not disadvantage the Debtors' other creditors, and will benefit the Debtors' bankruptcy estates by enabling the Property to be sold.

---

[2] The Debtors are not entirely certain of the amount of these obligations. No claims have been filed with respect to such obligations. On-line records indicate that $2,270.33 is presently due. *See Exhibit C.*

00411-001\DOCS_DE:155126.1

3. **Approval of Release.**

13. Federal Rule of Bankruptcy Procedure 9019(a) authorizes the Court to approve compromises and settlements involving bankruptcy estates. "To minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'"

14. *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996) (*quoting* 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. 1993)). Motions under Rule 9019 require the bankruptcy court "to assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Id.*

15. The Third Circuit recognizes "four criteria that a bankruptcy court should consider in striking this balance: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.* (following *Prot. Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)).

16. The Debtors' believe that they may have deficiency claims against Romano, Jr. on the unpaid balance of the Loan, regardless of whether he forged his parents' signatures on the loan documents. Romano, Jr. has asserted counterclaims of fraud and other allegations in the Lawsuit. The Debtors are not sure of their ability to succeed in this litigation. Moreover, the Debtors doubt that a judgment against Romano, Jr. would be collectible. The fact that he only made two payments on the Loan before defaulting indicates that he is not a wealthy person. Suing Romano, Jr. would be expensive and time-consuming, and likely a waste of the estates' assets.

00411-001\DOCS_DE:155126.1

17. It should also be noted that Romano, Sr. and Mary Romano may have claims against the Debtors' estates, which are being waived by the Release.

18. Moreover, this Release is integral to selling the Property, and this sale will enable the Debtors to maximize the value obtained for that asset. Thus, mutually settling all claims between the Debtors and the Romanos is in the best interests of the bankruptcy estates and creditors.

## NOTICE

19. Notice of the filing of this Motion has been provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) all Persons that have requested special notice pursuant to Bankruptcy Rule 2002; (iii) the Romanos' counsel; (iv) all Persons known or reasonably believed to have asserted a lien, claim, encumbrance, or security interest on any of the Property; and (v) the Committee. A copy of the Motion has been made available on the website of the Debtors' notice and claims agent, Kurtzman Carson Consultants. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully requests that this Court enter an order authorizing AHL to sell the Property pursuant to the Purchase & Sale Agreement, approving the Release, and permitting the Debtors to pay any outstanding taxes on the Property, and granting such other and further relief to which they may be entitled.

Dated: November 23, 2009

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Kathy Mail (#3648)*

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:  ljones@pszjlaw.com
  joneill@pszjlaw.com
  tcairns@pszjlaw.com

-and-

HUNTON & WILLIAMS LLP

Gregory G. Hesse (Texas Bar No. 09549419)
Lynnette R. Warman (Texas Bar No. 20867940)
Jesse T. Moore (Texas Bar No. 24056001)
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Telephone: (214) 979-3000
Telecopy: (214) 880-0011
Email:  ghesse@hunton.com
  lwarman@hunton.com
  jtmoore@hunton.com

Attorneys For The Debtors And Debtors In Possession