IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ACCREDITED HOME LENDERS HOLDING CO., et al. | § | Case No. 09-11516 (MFW) |
| | § | |
| Debtors.[1] | § | JOINTLY ADMINISTERED |

## DEBTORS' FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

**HUNTON & WILLIAMS LLP**
Gregory G. Hesse
Lynnette R. Warman
Jesse T. Moore
Caroline R. Penninck
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Telephone: (214) 979-3000
Telecopy: (214) 880-0011

ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Accredited Home Lenders Holding Co., a Delaware corporation (9482), Accredited Home Lenders, Inc., a California corporation (6859), Vendor Management Services, LLC d/b/a Inzura Settlement Services, a Pennsylvania limited liability company (8047), Inzura Insurance Services, Inc., a Delaware corporation (7089), and Windsor Management Co., d/b/a AHL Foreclosure Services Co., a California corporation (4056). The address for all Debtors is 9915 Mira Mesa Blvd., Ste. 100, San Diego, CA 92131. The bankruptcy cases for these debtors and debtors-in-possession are jointly administered under the bankruptcy case and style referenced above.

# TABLE OF CONTENTS

1. DEFINITIONS ........................................................................................................1
   1.1. Accredited Preferred Securities Trust I ...........................................................1
   1.2. Administrative Claim ........................................................................................2
   1.3. Administrative Claim Bar Date ........................................................................2
   1.4. AHL ..................................................................................................................2
   1.5. AHL Canada .....................................................................................................2
   1.6. Allowed Administrative Claim .........................................................................2
   1.7. Allowed Claim ..................................................................................................2
   1.8. Allowed Priority Claim ....................................................................................2
   1.9. Allowed Priority Tax Claim .............................................................................2
   1.10. Allowed Secured Claim ...................................................................................2
   1.11. Allowed Unsecured Claim ...............................................................................2
   1.12. Assets ...............................................................................................................2
   1.13. Avoidance Actions ...........................................................................................3
   1.14. Ballot ................................................................................................................3
   1.15. Bankruptcy Code ..............................................................................................3
   1.16. Bankruptcy Court .............................................................................................3
   1.17. Bankruptcy Proceeding ....................................................................................3
   1.18. Bankruptcy Rules .............................................................................................3
   1.19. Bar Date ...........................................................................................................3
   1.20. Bar Date Order .................................................................................................3
   1.21. Canadian Equity ...............................................................................................3
   1.22. Causes of Action ..............................................................................................3
   1.23. Claim ................................................................................................................4
   1.24. Claim Holder ....................................................................................................4
   1.25. Claim Register ..................................................................................................4
   1.26. Class .................................................................................................................4
   1.27. Confirmation Date ............................................................................................4
   1.28. Confirmation Order ..........................................................................................4
   1.29. Consolidated Debtors .......................................................................................4
   1.30. Consolidated Debtors Assets ...........................................................................4
   1.31. Consolidated Debtors Convenience Claim .......................................................4
   1.32. Consolidated Debtors Convenience Class Election ..........................................4
   1.33. Consolidated Debtors Liquidating Trust ..........................................................5
   1.34. Consolidated Debtors Liquidating Trust Account ............................................5
   1.35. Consolidated Debtors Liquidating Trust Advisory Board .................................5
   1.36. Consolidated Debtors Liquidating Trust Agreement .........................................5

i

1.37.   Consolidated Debtors Liquidating Trust Assets ............................................5
1.38.   Consolidated Debtors Liquidating Trust Expenses..........................................5
1.39.   Consolidated Debtors Liquidating Trust Professionals ....................................5
1.40.   Consolidated Debtors Liquidating Trust Reserve...........................................5
1.41.   Consolidated Debtors Liquidating Trustee ...................................................6
1.42.   Consolidated Holdco....................................................................................6
1.43.   Consolidated Holdco Assets .........................................................................6
1.44.   Consolidated Holdco Convenience Claim ......................................................6
1.45.   Consolidated Holdco Convenience Class Election...........................................6
1.46.   Consolidated Holdco Liquidating Trust..........................................................6
1.47.   Consolidated Holdco Liquidating Trust Account ............................................6
1.48.   Consolidated Holdco Liquidating Trust Advisory Board ..................................6
1.49.   Consolidated Holdco Liquidating Trust Agreement.........................................7
1.50.   Consolidated Holdco Liquidating Trust Assets ...............................................7
1.51.   Consolidated Holdco Liquidating Trust Expenses ..........................................7
1.52.   Consolidated Holdco Liquidating Trust Professionals .....................................7
1.53.   Consolidated Holdco Liquidating Trust Reserve.............................................7
1.54.   Consolidated Holdco Liquidating Trustee ......................................................7
1.55.   Creditor .....................................................................................................8
1.56.   Creditor Release ..........................................................................................8
1.57.   Creditors' Committee....................................................................................8
1.58.   Creditors' Committee Counsel ......................................................................8
1.59.   CRO Expenses .............................................................................................8
1.60.   Cure Claim ..................................................................................................8
1.61.   D&O Policies ...............................................................................................8
1.62.   Debtor ........................................................................................................8
1.63.   Deferred Compensation Settlement Proceeds..................................................8
1.64.   Disbursing Agent .........................................................................................8
1.65.   Disclosure Statement ...................................................................................8
1.66.   Disclosure Statement Approval Date .............................................................8
1.67.   Disputed Claim ............................................................................................8
1.68.   Distribution .................................................................................................9
1.69.   Distribution Date..........................................................................................9
1.70.   Distribution Date Balance.............................................................................9
1.71.   Distribution Record Date ..............................................................................9
1.72.   Effective Date ..............................................................................................9
1.73.   Effective Date Balance .................................................................................9
1.74.   Effective Date Distribution ...........................................................................9

DOCS_DE:164983.1

| | | |
|---|---|---|
| 1.75. | Entity | 9 |
| 1.76. | Estate | 9 |
| 1.77. | Final Decree | 9 |
| 1.78. | Final Distribution | 9 |
| 1.79. | Final Order | 9 |
| 1.80. | Finally Determined | 10 |
| 1.81. | Holdco | 10 |
| 1.82. | Holder | 10 |
| 1.83. | Initial Deposit | 10 |
| 1.84. | Injunction | 10 |
| 1.85. | Intercompany Claims | 10 |
| 1.86. | Interest | 10 |
| 1.87. | Interim Distribution | 10 |
| 1.88. | IRS Priority Tax Claims | 10 |
| 1.89. | Lien or Liens | 10 |
| 1.90. | Liquidating Trust | 10 |
| 1.91. | Liquidating Trustee | 10 |
| 1.92. | Liquidating Trust Advisory Board | 11 |
| 1.93. | Liquidating Trust Assets | 11 |
| 1.94. | Liquidating Trust Claim Reserve | 11 |
| 1.95. | Lone Star Causes of Action | 11 |
| 1.96. | Lone Star Commencement Deadline | 11 |
| 1.97. | Lone Star Entities | 11 |
| 1.98. | Lone Star Proofs of Claim | 11 |
| 1.99. | Lone Star Releasees | 11 |
| 1.100. | Lone Star Settlement Payment | 11 |
| 1.101. | Net Proceeds | 11 |
| 1.102. | Non-Debtor Subsidiaries | 12 |
| 1.103. | Officer and Director Causes of Action | 12 |
| 1.104. | Person | 12 |
| 1.105. | Petition Date | 12 |
| 1.106. | Plan | 12 |
| 1.107. | Plan Supplement | 12 |
| 1.108. | Plan Supplement Filing Date | 12 |
| 1.109. | Plan Support Agreement and Term Sheet | 12 |
| 1.110. | Priority Claims | 12 |
| 1.111. | Priority Tax Claim | 12 |
| 1.112. | Privilege | 12 |

iii

1.113. Proceeds ..................................................................................................13
1.114. Professionals ...........................................................................................13
1.115. Professional Fees ....................................................................................13
1.116. Professional Fee Claim Bar Date ...........................................................13
1.117. Property ..................................................................................................13
1.118. Pro Rata Share ........................................................................................13
1.119. Receivables ............................................................................................13
1.120. REIT ........................................................................................................13
1.121. REIT Adversary ......................................................................................13
1.122. REIT Causes of Action ...........................................................................13
1.123. REIT Committee ......................................................................................13
1.124. REIT Directors and Officers ...................................................................13
1.125. REIT Litigation Recovery Sources .........................................................13
1.126. REIT Preferred Securities ......................................................................14
1.127. REIT Preferred Security Holder .............................................................14
1.128. REIT Preferred Holders' Subordinated Guaranty Claims ......................14
1.129. REIT Releasors .......................................................................................14
1.130. Rejection Claim .......................................................................................14
1.131. Rejection Claim Bar Date .......................................................................14
1.132. Residual Assets ......................................................................................14
1.133. Schedules ...............................................................................................14
1.134. Subordinated Claim ................................................................................14
1.135. Subsequent Distributions .......................................................................14
1.136. Tax Code .................................................................................................14
1.137. Tax Refunds ............................................................................................14
1.138. Tolling Agreement ...................................................................................15
1.139. Trust Declaration .....................................................................................15
1.140. Trust Preferred Adversary Proceeding ...................................................15
1.141. Trust Preferred Common Securities ........................................................15
1.142. Trust Preferred Guarantee ......................................................................15
1.143. Trust Preferred Indenture ........................................................................15
1.144. Trust Preferred Indenture Trustee ...........................................................15
1.145. Trust Preferred Note ................................................................................15
1.146. Trust Preferred Note Claim .....................................................................15
1.147. Trust Preferred Holders ...........................................................................15
1.148. Trust Preferred Securities .......................................................................15
1.149. Vendor .....................................................................................................16
1.150. Vendor Cash ............................................................................................16

DOCS_DE:164983.1

2.    DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS ....................................16
      2.1.    Unclassified Claims:  Administrative Claims and Priority Tax Claims ...............16
      2.2.    Classified Claims of Consolidated Holdco .....................................................16
      2.3.    Classification of Claims against the Consolidated Debtors. ...................................17
      2.4.    Preservation of Subordination Right and Claims of Subordination........................18
3.    TREATMENT OF UNCLASSIFIED CLAIMS..................................................................18
      3.1.    Administrative Claims .................................................................................18
      3.2.    Priority Tax Claims.....................................................................................19
      3.3.    IRS Priority Tax Claims...............................................................................19
4.    TREATMENT  OF  CLASSES  OF  CLAIMS  AND  INTERESTS  UNDER  THE
      CONSOLIDATED HOLDCO PLAN...................................................................................19
      4.1.    Class 1 H - Secured Claims .............................................................................19
      4.2.    Class 2 H - Priority Claims, other than Priority Tax Claims ................................20
      4.3.    Class 3 H - General Unsecured Claims against Consolidated Holdco ..................20
      4.4.    Class 4 H - Unsecured Claims Against Consolidated Holdco held by LSF-MRA,
              LLC .........................................................................................................21
      4.5.    Class 5 H - Unsecured Claims Held By the REIT ...............................................22
      4.6.    Class 6 H - Convenience Class Claims..............................................................22
      4.7.    Class 7 H - Claims against Consolidated Holdco relating to Accredited Preferred
              Securities Trust I .........................................................................................23
      4.8.    Class 8 H – REIT Preferred Holders' Subordinated Guaranty Claims..................23
      4.9.    Class 9 H - Subordinated Claims against Consolidated Holdco...........................24
      4.10.   Class 10 H- Interests:  The Class 10 H Claims are impaired................................24
5.    TREATMENT  OF  CLASSES  OF  CLAIMS  AND  INTERESTS  UNDER  THE
      CONSOLIDATED DEBTORS PLAN ..................................................................................24
      5.1.    Class 1 C - Secured Claims.............................................................................24
      5.2.    Class 2 C - Priority Claims, other than Priority Tax Claims ................................25
      5.3.    Class 3 C - General Unsecured Claims against the Consolidated Debtors............25
      5.4.    Class 4 C - General Unsecured Claims against the Consolidated Debtors opting
              out of the Creditor Release ...........................................................................26
      5.5.    Class 5 C - Unsecured Claims Against the Consolidated Debtors held by the Lone
              Star Entities................................................................................................27
      5.6.    Class 6 C - Convenience Class Claims..............................................................27
      5.7.    Class 7 C - Subordinated Claims against the Consolidated Debtors .....................27
      5.8.    Class 8 C - Interests .....................................................................................28
6.    INTERCOMPANY CLAIMS................................................................................................28
      6.1.    Inter-Debtor Waivers ...................................................................................28
      6.2.    Non-Debtor Subsidiary Waivers.....................................................................28
      6.3.    Asset Allocation...........................................................................................29

v

| 7. | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 29 |
|---|---|---|
| | 7.1. Assumption and Rejection | 29 |
| | 7.2. Indemnification Agreements | 29 |
| | 7.3. Claims Relating to Assumption or Rejection | 29 |
| | 7.4. Insurance Policies | 30 |
| 8. | LONE STAR SETTLEMENT | 30 |
| | 8.1. Incorporation of Settlement | 30 |
| | 8.2. Terms of the Lone Star Settlement | 30 |
| 9. | LIQUIDATING TRUSTS | 33 |
| | 9.1. Rules of Construction | 33 |
| | 9.2. Appointment of Liquidating Trustee. | 33 |
| | 9.3. Funding of the Consolidated Holdco Liquidating Trust | 33 |
| | 9.4. Funding of the Consolidated Debtors Liquidating Trust | 33 |
| | 9.5. Transfer of Liquidating Trust Assets to the Liquidating Trust | 34 |
| | 9.6. The Liquidating Trust. | 34 |
| | 9.7. Limitation of Liability for Liquidating Trustee | 37 |
| | 9.8. Transferability | 37 |
| | 9.9. The Liquidating Trust Advisory Board | 37 |
| | 9.10. Final Administration of Liquidating Trusts | 39 |
| 10. | MEANS OF IMPLEMENTING THE PLAN | 39 |
| | 10.1. Rules of Construction | 39 |
| | 10.2. Substantive Consolidation of Consolidated Debtors Estates | 39 |
| | 10.3. Substantive Consolidation of Consolidated Holdco Estates | 39 |
| | 10.4. Lone Star Settlement Payment | 40 |
| | 10.5. Effective Date Distribution | 40 |
| | 10.6. Transfer Assets to Consolidated Holdco Liquidating Trust | 40 |
| | 10.7. Transfer of Assets to Consolidated Debtors Liquidating Trust | 40 |
| | 10.8. REIT Adversary Settlement | 40 |
| | 10.9. Abandonment of REIT Equity | 41 |
| | 10.10. Payment of Fees to United States Trustee | 41 |
| | 10.11. Debtors' Continued Cooperation | 41 |
| | 10.12. Debtors' Continued Existence | 41 |
| | 10.13. Debtors' Books and Records | 41 |
| | 10.14. Accredited Preferred Securities Trust I Termination | 42 |
| | 10.15. Employee Agreements | 42 |
| | 10.16. Closing of Debtors' Cases | 42 |
| | 10.17. Distribution of Property Under this Plan. | 43 |
| 11. | CONDITIONS PRECEDENT TO EFFECTIVE DATE OF PLAN | 45 |

11.1.   Conditions Precedent to Effective Date of Plan ............................................45

11.2.   Waiver of Conditions Precedent ....................................................................46

11.3.   Nonoccurrence of Conditions to Consummation...........................................46

12.    MISCELLANEOUS PROVISIONS................................................................................46

12.1.   No Discharge of Debtors ................................................................................46

12.2.   Post-Confirmation Injunction ........................................................................46

12.3.   Exculpation .....................................................................................................47

12.4.   Permissible Continuation of Actions .............................................................47

12.5.   Trust Preferred Adversary Proceeding...........................................................47

12.6.   Vesting of Assets. ...........................................................................................48

12.7.   Unclaimed Property ........................................................................................48

12.8.   Reasonable Efforts to Collect Tax Refunds....................................................48

12.9.   Privileges.........................................................................................................48

12.10.  Preservation of All Rights of Action Not Expressly Settled or Released.............49

12.11.  Waiver of Taxes...............................................................................................49

12.12.  Plan Governs ...................................................................................................49

12.13.  Business Days ..................................................................................................49

12.14.  Dissolution of Creditors Committee ..............................................................49

12.15.  Evidence...........................................................................................................50

12.16.  Taxpayer Identification...................................................................................50

12.17.  Forfeiture of Payment .....................................................................................50

12.18.  Bar Date ..........................................................................................................50

12.19.  Exemption from Securities Laws.....................................................................51

12.20.  Deemed Consent ..............................................................................................51

12.21.  Governing Law ................................................................................................51

12.22.  Notice...............................................................................................................51

13.    MODIFICATION OF THE PLAN ................................................................................52

13.1.   Pre-Confirmation Modification .....................................................................52

13.2.   Pre-Consummation Modifications ..................................................................53

13.3.   Non-Material Modifications ...........................................................................53

14.    RETENTION OF JURISDICTION ..............................................................................53

15.    REQUEST FOR CONFIRMATION ............................................................................55

DOCS_DE:164983.1

TO THE HONORABLE MARY F. WALRATH, U.S. BANKRUPTCY JUDGE:

The Debtors and Debtors-in-Possession in the above-captioned Chapter 11 cases (the "Debtors"), hereby propose this Debtors' First Amended Chapter 11 Plan of Liquidation (the "Plan") to creditors and equity holders of the Debtors, pursuant to § 1121(a) of the United States Bankruptcy Code.

This Plan is a liquidating plan. It does not contemplate the continuation of the Debtors' collective businesses. The Plan:

  (i)  incorporates and implements the Plan Support Agreement and Term Sheet (defined below);

  (ii)  substantively consolidates the assets and liabilities of Accredited Home Lenders Holding Co. ("Holdco") with those of its wholly owned subsidiary, Vendor Management Services, LLC (collectively referred to herein with Holdco as "Consolidated Holdco");

  (iii)  establishes a liquidating trust for Consolidated Holdco that will acquire the Consolidated Holdco Liquidating Trust Assets (as defined herein), liquidate those assets, and distribute the proceeds of those assets to creditors of Consolidated Holdco pursuant to the terms of this Plan;

  (iv)  substantively consolidates the assets and liabilities of Accredited Home Lenders, Inc., Inzura Insurance Services, Inc. and Windsor Management Co. (collectively referred to herein as the "Consolidated Debtors");

  (v)  establishes a second liquidating trust that will acquire the Consolidated Debtors Liquidating Trust Assets (as defined herein), liquidate those assets, and distribute the proceeds of those assets to the creditors of the Consolidated Debtors pursuant to the terms of this Plan;

  (vi)  resolves the intercompany claims of the Consolidated Debtors and Consolidated Holdco and other inter-Estate and inter-Debtor issues; and

  (vii)  settles all Claims that the Consolidated Debtors may have against Lone Star Entities in exchange for a cash payment from the Lone Star Entities in the amount of $15,600,000 and the subordination and/or waiver of all claims asserted by the Lone Star Entities, which have been filed in the approximate amount of $100,000,000.

## 1.  **DEFINITIONS**

1.1. Accredited Preferred Securities Trust I. The certain trust established pursuant to the Amended and Restated Trust Agreement among Accredited Home Lenders Holding Co., as depositor, Wells Fargo Bank, N.A., as Property Trustee, Wells Fargo Delaware Trust Company, as Delaware Trustee and the administrative trustees named therein dated January 11, 2007.

1.2.   Administrative Claim.  A Claim, including, but not limited to Professional Fee Claims, entitled to payment as an administrative expense as specified in §503(b) of the Bankruptcy Code that is entitled to priority under §507(a)(2) of the Bankruptcy Code, which Claim must be filed by the Administrative Claim Bar Date or the Professional Fee Claim Bar Date, as applicable.

1.3.   Administrative Claim Bar Date.  For all Administrative Claims except Professional Fee Claims, the first business day that is thirty (30) days following the Effective Date.

1.4.   AHL.  Accredited Home Lenders, Inc., a California corporation.

1.5.   AHL Canada.  Accredited Home Lenders Canada, Inc.

1.6.   Allowed Administrative Claim.  An Administrative Claim as to which no objection to the allowance thereof has been interposed prior to the forty-fifth (45th) day following the Administrative Claim Bar Date or the Professional Fee Claim Bar Date, as applicable, or as to which an objection has been filed and such Claim has been allowed by Final Order.

1.7.   Allowed Claim.  A Claim (a) with respect to which a proof of claim was timely filed, in the manner prescribed by the Bankruptcy Court, either within the Bar Date or as extended upon motion, or (b) if no proof of claim has been timely filed, listed by any of the Debtors in their Schedules as undisputed, noncontingent, or liquidated; and, in any such case, as to which Claim no objection has been timely interposed, or as to which an objection or request for estimation has been filed and such Claim has been allowed by a Final Order.

1.8.   Allowed Priority Claim.  The portion of an Allowed Claim that is entitled to priority under §507(a)(3) through 507(a)(7) of the Bankruptcy Code.

1.9.   Allowed Priority Tax Claim.  The portion of an Allowed Claim that is entitled to priority under §507(a)(8) of the Bankruptcy Code.

1.10.   Allowed Secured Claim.  An Allowed Claim secured by liens, security interests, encumbrances, charges against, or interests in any property in which any of the Debtors have an interest, to the extent of the value (determined in accordance with §506(a) of the Bankruptcy Code) of the interest of the holder of such Allowed Claim in the Debtors' interest in such property.

1.11.   Allowed Unsecured Claim.  Each Allowed Claim, without interest or costs, that is not an Allowed Secured Claim, an Allowed Administrative Claim, an Allowed Priority Claim, or an Allowed Priority Tax Claim.

1.12.   Assets.  All property that is property of the applicable Debtor and that Debtor's estate under §541 of the Bankruptcy Code of every kind and character, whether such property is now existing or hereafter arising or acquired, wherever located and whether real, personal, tangible or intangible including, without limitation, all cash, Causes of Action and all proceeds of and recoveries on Causes of Action, all accounts, contract rights, chattel paper, general

intangibles, instruments, securities, furniture, fixtures, machinery, equipment, inventory intellectual property, domain names, and interest in real estate.

1.13. <u>Avoidance Actions</u>. Any and all rights to recover or avoid transfers under Chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, §522, 541, 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code, to recover transfers pursuant to §550 of the Bankruptcy Code, to avoid any lien under §506(d) of the Bankruptcy Code, or otherwise to exercise the avoidance powers provided under the Bankruptcy Code.

1.14. <u>Ballot</u>. The ballot distributed to each eligible Creditor, on which ballot such Creditor may, among other things, vote to accept or reject this Plan, make another election for treatment of such Claim as provided under the Plan, including the Convenience Class Election, and opt out of the Creditor Release.

1.15. <u>Bankruptcy Code</u>. Title 11 of the United States Code, 11 U.S.C. §101 et seq., as amended and in effect as of the Petition Date.

1.16. <u>Bankruptcy Court</u>. The United States Bankruptcy Court for the District of Delaware having jurisdiction of the above-captioned Chapter 11 cases.

1.17. <u>Bankruptcy Proceeding</u>. The Debtors' jointly administered bankruptcy cases, filed under Chapter 11 of the Bankruptcy Code on the Petition Date, pending in the Bankruptcy Court as Accredited Home Lenders Holding Co.

1.18. <u>Bankruptcy Rules</u>. The Federal Rules of Bankruptcy Procedure, as amended and in effect as of the Petition Date.

1.19. <u>Bar Date</u>. October 6, 2009 with respect to all Claims other than (a) Administrative Claims and (b) Claims subject to the Governmental Bar Date (as defined in the Bar Date Order).

1.20. <u>Bar Date Order</u>. That certain order entered by the Bankruptcy Court on July 27, 2009, Docket No. 478, establishing the Bar Date.

1.21. <u>Canadian Equity</u>. All equity interests owned by any of the Debtors in Accredited Home Lenders Canada, Inc.

1.22. <u>Causes of Action</u>. Any and all claims, actions, causes of action, suits, judgments, third-party claims, counterclaims, cross-claims, or other rights of recovery, whether asserted or unasserted or pending as of the Effective Date or direct, indirect, derivative or otherwise, or known or unknown, or asserted or unasserted, that are held by the applicable Debtor or Estate against any person, entity, or property, wherever located, from the beginning of the world to the Effective Date, including Avoidance Actions as well as Officer and Director Causes of Action and claims for malpractice, negligence, breach of contract, fraud, aiding and abetting, inducement as well as claims against attorneys, auditors, investment bankers, financial consultants, agents, or other advisors that provided professional, accounting, audit, or other services to the Debtors and Non-Debtor Subsidiaries (including, without limitation, REIT) prior to the Petition Date.

1.23.  Claim.  All claims, as defined in § 101(5) of the Bankruptcy Code, against the applicable Debtor, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, including, without limitation, all claims arising from that Debtor's rejection of an executory contract or unexpired lease.

1.24.  Claim Holder.  Any Entity that holds a Claim against the estates, whether Finally Determined or Disputed.

1.25.  Claim Register.  The official register of Claims in this Bankruptcy Proceeding.

1.26.  Class.  A group of Claims or Interests which are substantially similar to each other, as described in Article 2 and 3 hereof.

1.27.  Confirmation Date.  The date on which the Bankruptcy Court enters an order confirming this Plan.

1.28.  Confirmation Order.  The order entered by the Bankruptcy Court confirming this Plan, which includes the approval of the settlements set forth in the Plan Support Agreement and Term Sheet.

1.29.  Consolidated Debtors.  Accredited Home Lenders, Inc., a California corporation, Inzura Insurance Services, Inc., a Delaware corporation, and Windsor Management of Washington, Inc., d/b/a AHL Foreclosure Services Company, a Washington corporation.

1.30.  Consolidated Debtors Assets.  All Assets of the Consolidated Debtors and the Consolidated Debtors' estates, whether such property is now existing or hereafter arising or acquired and wherever located including, without limitation, the Tax Refunds, all Causes of Action and all proceeds of and recoveries on Causes of Action, all cash, accounts, contract rights, chattel paper, general intangibles, instruments, securities, furniture, fixtures, machinery, equipment, inventory, intellectual property, domain names, and interest in real estate.  For the avoidance of any doubt, the Consolidated Debtor Assets shall not include the Canadian Equity, Vendor Cash, the Lone Star Causes of Action, or the REIT Causes of Action.

1.31.  Consolidated Debtors Convenience Claim.  Any Allowed Unsecured Claim against any of the Consolidated Debtors for which the Claim Holder has properly made the Consolidated Debtors Convenience Class Election on a properly cast Ballot, and any Allowed Unsecured Claim against any of the Consolidated Debtors that has a face amount equal to or less than $25,0000, unless the Holder of such Claim opted for that Claim to be treated as a Class 4 C Claim on a properly cast Ballot.

1.32.  Consolidated Debtors Convenience Class Election.  The election available to a Claim Holder of one or more Allowed Unsecured Claims against the Consolidated Debtors to opt into Class 6 C, as applicable, and have all of such Holders' Claims treated as a single Consolidated Debtors Convenience Claim; provided, however, that in making such election, the Holder of such unsecured Claim(s) (i) has agreed to reduce the face amount of such Claim(s) for purposes of voting and distributions under this Plan to a single Claim against the Consolidated Debtors in an amount equal to $25,000.00 if the aggregate face amount of such Claim(s) is

greater than $25,000, (ii) has voted all Claims held by such Claim Holder in favor of this Plan, and (iii) has opted for the Creditor Release.

1.33. _Consolidated Debtors Liquidating Trust_. A trust for the benefit of the Holders of Allowed Claims against the Consolidated Debtors that is to be formed and governed by the Consolidated Debtors Liquidating Trust Agreement.

1.34. _Consolidated Debtors Liquidating Trust Account_. An account to be established by the Consolidated Debtors Liquidating Trustee, at a depository institution listed as an approved institution of the United States Trustee for the District of Delaware.

1.35. _Consolidated Debtors Liquidating Trust Advisory Board_. The post-confirmation committee formed on the Effective Date, whose members will be selected by the Creditors Committee and indentified by the Debtors in the Plan Supplement.

1.36. _Consolidated Debtors Liquidating Trust Agreement_. The certain Consolidated Debtors Liquidating Trust Agreement that is to govern the Consolidated Debtors Liquidating Trust, in substantially the form of such document included in the Plan Supplement, pursuant to which, among other things, the Consolidated Debtors Liquidating Trust Assets shall initially be conveyed to the Consolidated Debtors Liquidating Trust and shall ultimately be distributed pursuant to the terms of this Plan.

1.37. _Consolidated Debtors Liquidating Trust Assets_. All of the Consolidated Debtors' Assets not transferred on or prior to the Effective Date of the Plan, including, but not limited to, the Proceeds of any Consolidated Debtors Assets, the funds held in the Consolidated Debtors' bank accounts (after the Consolidated Debtors make the Effective Date Distribution), the Tax Refunds, the Trust Preferred Common Securities, the Deferred Compensation Settlement Proceeds, promissory notes, Receivables, all Causes of Action belonging to the Consolidated Debtors, to the extent such Causes of Action have not been previously settled or released pursuant to this Plan, but not including the Lone Star Settlement Payment, except as provided in §10.4 of the Plan.

1.38. _Consolidated Debtors Liquidating Trust Expenses_. Any reasonable expenses and fees incurred in connection with the administration of the applicable Consolidated Debtors Liquidating Trust, by the Consolidated Debtors Liquidating Trustee, including, but not limited to, claims for fees of professionals employed by the Consolidated Debtors Liquidating Trustee and quarterly fees due to the Office of the United States Trustee, and costs relating to the completion of the liquidation of the Assets including, without limitation, the resolution of all Disputed Claims.

1.39. _Consolidated Debtors Liquidating Trust Professionals_. Professionals retained by the Consolidated Debtors Liquidating Trustee, including without limitation, attorneys, accountants, engineers, agents, real estate brokers, tax specialists, and clerical and stenographic assistants.

1.40. _Consolidated Debtors Liquidating Trust Reserve_. An amount determined by the Consolidated Debtors Liquidating Trustee to be held in reserve for distribution to Creditors holding Disputed Claims upon such Claims becoming Allowed Claims and Rejection Claims,

such that holders of such claims, upon allowance of such claims, shall receive the same Pro Rata Share as do Creditors in the same Class holding claims that are not Disputed Claims or Rejection Claims. The Consolidated Debtors Liquidating Trust Reserve shall also include an amount calculated by the Consolidated Debtors Liquidating Trustee to satisfy anticipated Consolidated Debtors Liquidating Trust Expenses and to pay anticipated tax liabilities of the Consolidated Debtors Liquidating Trust.

1.41. **Consolidated Debtors Liquidating Trustee.** The trustee of the Consolidated Debtors Liquidating Trust, who shall be identified in the Plan Supplement.

1.42. **Consolidated Holdco.** Holdco and Vendor.

1.43. **Consolidated Holdco Assets.** All Assets of Consolidated Holdco and Consolidated Holdco's Estates, whether such property is now existing or hereafter arising or acquired and wherever located including, without limitation, all Causes of Action and all Proceeds of and recoveries on Causes of Action, including, but not limited to, the Lone Star Causes of Action, all cash, accounts, contract rights, chattel paper, general intangibles, instruments, securities, furniture, fixtures, machinery, equipment, inventory intellectual property, domain names, and interest in real estate; provided, however, that Consolidated Holdco Assets do not include the Tax Refunds or any other Assets or Property specifically indentified in this Plan as Consolidated Debtors Assets.

1.44. **Consolidated Holdco Convenience Claim.** Any Allowed Unsecured Claim against Consolidated Holdco (i) that has an aggregate face amount of $25,000.00 or less, or (ii) for which the Claim Holder has properly made the Consolidated Holdco Convenience Class Election on a properly cast Ballot.

1.45. **Consolidated Holdco Convenience Class Election.** The election available to a Claim Holder of one or more Allowed Unsecured Claims against Consolidated Holdco with an aggregate face amount in excess of $25,000.00 to opt into Class 6 H, as applicable, and have all of such Holder's Claims treated as a single Consolidated Holdco Convenience Claim; provided, however, that in making such election, the Holder of such unsecured Claim(s) (i) has agreed to reduce the face amount of such Claim(s) for purposes of voting and distributions under this Plan to a single Claim against Consolidated Holdco in an amount equal to $25,000.00, and (ii) has voted all Claims held by such Claim Holder in favor of this Plan.

1.46. **Consolidated Holdco Liquidating Trust.** A trust for the benefit of Holders of Allowed Claims against  Consolidated Holdco that is to be formed and governed by the Consolidated Holdco Liquidating Trust Agreement.

1.47. **Consolidated Holdco Liquidating Trust Account.** An account to be established by the Consolidated Holdco Liquidating Trustee, at a depository institution listed as an approved institution of the United States Trustee for the District of Delaware.

1.48. **Consolidated Holdco Liquidating Trust Advisory Board.** The post-confirmation committee formed on the Effective Date, selected by the Creditors' Committee and identified by the Debtors in the Plan Supplement.

1.49.   Consolidated Holdco Liquidating Trust Agreement.   The certain Consolidated Holdco Liquidating Trust Agreement that is to govern the Consolidated Holdco Liquidating Trust, in substantially the form of such document included in the Plan Supplement, pursuant to which, among other things, the Consolidated Holdco Liquidating Trust Assets shall initially be conveyed to the Consolidated Holdco Liquidating Trust and shall ultimately be distributed pursuant to the terms of this Plan.

1.50.   Consolidated Holdco Liquidating Trust Assets.   (i) All of Consolidated Holdco's Assets not transferred on or prior to the Effective Date of the Plan, including, but not limited to, the Proceeds of any Assets of Consolidated Holdco, the funds held in Consolidated Holdco's bank accounts (after Consolidated Holdco makes the Effective Date Distribution), and Consolidated Holdco's promissory notes, Receivables, and Causes of Action, to the extent such Causes of Action have not been previously settled by Consolidated Holdco, (ii) the Lone Star Causes of Action, (iii) the REIT Causes of Action, (iv) any and all of the Debtors' rights under the D&O Policies, and, to the extent applicable, the REIT's rights thereunder or other insurance policies and the related proceeds, (v) the Canadian Equity, and (vi) Vendor Cash; provided, however, (a) that the Consolidated Holdco Liquidating Trust Assets shall not include the Tax Refunds, (b) that the Consolidated Holdco Liquidating Trust shall be deemed to have explicitly released any claims (if any) to the Tax Refunds, and (c) that the Consolidated Holdco Liquidating Trust Assets shall not include the equity interests in the REIT, which interests shall be deemed abandoned on the Effective Date pursuant to §10.9 of the Plan and §554 of the Bankruptcy Code.

1.51.   Consolidated Holdco Liquidating Trust Expenses.   Any reasonable expenses and fees incurred in connection with the administration of the Consolidated Holdco Liquidating Trust, by the Consolidated Holdco Liquidating Trustee, including, but not limited to, claims for fees of professionals employed by the Consolidated Holdco Liquidating Trustee and quarterly fees due to the Office of the United States Trustee, and costs relating to the completion of the liquidation of the Assets including, without limitation, the resolution of all Disputed Claims.

1.52.   Consolidated Holdco Liquidating Trust Professionals.   Professionals retained by the Consolidated Holdco Liquidating Trustee, including without limitation, attorneys, accountants, engineers, agents, real estate brokers, tax specialists, and clerical and stenographic assistants.

1.53.   Consolidated Holdco Liquidating Trust Reserve.   An amount determined by the Consolidated Holdco Liquidating Trustee to be held in reserve for distribution to Creditors holding Disputed Claims upon such Claims becoming Allowed Claims and Rejection Claims, such that holders of such claims, upon allowance of such claims, shall receive the same Pro Rata Share as do Creditors in the same Class holding claims that are not Disputed Claims or Rejection Claims.   The Consolidated Holdco Liquidating Trust Reserve shall also include an amount calculated by the Consolidated Holdco Liquidating Trustee to satisfy anticipated Consolidated Holdco Liquidating Trust Expenses and to pay anticipated tax liabilities of the Consolidated Holdco Liquidating Trust.

1.54.   Consolidated Holdco Liquidating Trustee.   The trustee of the Consolidated Holdco Liquidating Trust, who shall be identified in the Plan Supplement.

1.55.  Creditor.  Any Entity holding a Claim or Claims of any character whatsoever, whether unsecured or secured by assets of any of the Debtors, against one or more of the Debtors.

1.56.  Creditor Release.  The release of claims and causes of action against the Lone Star Entities by certain creditors as set forth in Section 8.2 of the Plan.

1.57.  Creditors' Committee.  The Official Committee of Unsecured Creditors appointed in the Bankruptcy Proceeding by the United States Trustee, namely Citigroup Global Markets Realty Corp., Transcontinental Valuations, Inc., Kodiak CDO I, Ltd., Patricia Howell, and Carrie Luft.

1.58.  Creditors' Committee Counsel.  The law firms of Arent Fox, LLP, and Elliott Greenleaf.

1.59.  CRO Expenses.  Has the same meaning ascribed thereto in Section 3.1 of the Plan.

1.60.  Cure Claim.  Those payments and assurances required upon assumption of an executory contract or unexpired lease pursuant to §365(b)(1) of the Bankruptcy Code.

1.61.  D&O Policies.  Those certain directors and officers insurance policies issued at the request of LSF5 Accredited Investments, LLC by (i) XL Specialty Insurance Company, Policy No. ELU 107630-08, (ii) Arch Insurance Company, Policy No. PCD 0023435-01; (iii) RSUI Indemnity Company, Policy No. NHS630845; and (iv) XL Specialty Insurance Company, Policy No. ELU 107631-08, and any other insurance policies with respect to the Debtors' current and former directors and officers as well as any renewals thereof.

1.62.  Debtor.  As applicable, Holdco, AHL, Vendor, Inzura Insurance Services, Inc., a Delaware corporation, or Windsor Management of Washington, Inc., d/b/a AHL Foreclosure Services Company, a Washington corporation (collectively the "Debtors");

1.63.  Deferred Compensation Settlement Proceeds.  The proceeds received by the Debtors as a result of that certain settlement relating to the First American Trust, FSB Deferred Compensation Plan, as approved by the Court on February 17, 2010, Docket No. 1307.

1.64.  Disbursing Agent.  Each Liquidating Trustee.

1.65.  Disclosure Statement.  The Disclosure Statement proposed in connection with this Plan, as approved by the Bankruptcy Court pursuant to §1125 of the Bankruptcy Code and Bankruptcy Rule 3017, and as modified and amended, including all exhibits and attachments thereto.

1.66.  Disclosure Statement Approval Date.  The date on which the Bankruptcy Court enters an order approving the Disclosure Statement.

1.67.  Disputed Claim.  Any Claim as to which an objection has been interposed, or which is listed in the applicable Debtor's schedules as disputed, or which is identified in the

Disclosure Statement as being the subject of an anticipated objection, or to which an objection or request for estimation has been interposed, which objection or request for estimation has not been Finally Determined as of the Effective Date.

1.68. <u>Distribution</u>. A payment by the respective Liquidating Trustee out of the respective Liquidating Trust Account to holders of Allowed Unsecured Claims.

1.69. <u>Distribution Date</u>. A date on which either the Effective Date Distribution and/or any Subsequent Distribution occurs.

1.70. <u>Distribution Date Balance</u>. All funds on deposit in the respective Liquidating Trust Account from any source whatsoever as of a Distribution Date.

1.71. <u>Distribution Record Date</u>. The Effective Date.

1.72. <u>Effective Date</u>. The date upon which the conditions set forth in § 11.1 of this Plan have been satisfied, subject to any waiver or modification of such conditions pursuant to § 11.2 of this Plan.

1.73. <u>Effective Date Balance</u>. All funds on deposit in the applicable Debtor's bank accounts from any source whatsoever as of the Effective Date.

1.74. <u>Effective Date Distribution</u>. A cash distribution to be made by the applicable Debtors on the Effective Date or as soon thereafter as is practicable, from the Effective Date Balance pursuant to the terms of the Plan.

1.75. <u>Entity</u>. Entity shall have the meaning ascribed in § 101(15) of the Bankruptcy Code.

1.76. <u>Estate</u>. The bankruptcy estate of the applicable Debtor created or constituted under the provisions of the Bankruptcy Code and applicable law.

1.77. <u>Final Decree</u>. An order entered by the Bankruptcy Court closing the Bankruptcy Proceeding.

1.78. <u>Final Distribution</u>. The last Distribution to be made by the respective Liquidating Trustee out of the respective Liquidating Trust Account upon the full administration of the Assets vested in the respective Liquidating Trust.

1.79. <u>Final Order</u>. An unstayed order or judgment of the Bankruptcy Court or other court having jurisdiction over any matter, provided that such order would be considered "final" for the purposes of § 158(a)(1) of Title 28 of the United States Code, provided that such order has not been reversed, stay, or vacated, that the time to appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing has expired, and that no appeal, petition for certiorari, or other proceeding seeking a new trial, re-argument, or rehearing is pending, or, if an appeal, writ of certiorari, new trial, re-argument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest Court to which such order or judgment was appealed, certiorari shall have been denied, or a new trial, re-argument or rehearing shall have been denied.

1.80. _Finally Determined_. Entry of a Final Order resolving a Claim to which an objection or request for estimation has been filed, or which is listed in the Schedules as contingent, unliquidated, or disputed, or which is identified in the Disclosure Statement as being the subject of an anticipated objection.

1.81. _Holdco_. Accredited Home Lenders Holding Co., a Delaware corporation.

1.82. _Holder_. An Entity holding a Claim or Interest or any authorized agent who has completed, executed and delivered a Ballot in accordance with the applicable voting instructions.

1.83. _Initial Deposit_. A deposit to be made to the applicable Liquidating Trust Account on the Effective Date in an amount consisting of the applicable Effective Date Balance less the amount of the applicable Effective Date Distribution.

1.84. _Injunction_. The post-confirmation injunction set forth in Section 11.2 of the Plan.

1.85. _Intercompany Claims_. Any Claim or Causes of Action held by any Debtor or Non-Debtor Subsidiary against any Debtor accruing before or after the Petition Date, including, but not limited to, any claim for reimbursement, payment as guarantor or surety, any claim for contribution and expenses that were allocable between multiple Debtors.

1.86. _Interest_. Any equity interest in any Debtor, including, without limitation, common, preferred or other stock of such Debtor or option, warrant or right to acquire or purchase any such interest issued on or before the Petition Date, and any claim (a) arising from the rescission of a purchase or sale of any such equity interest; (b) for damages arising from the purchase or sale of any such equity interest; or (c) for reimbursement or contribution allowed under § 502 of the Bankruptcy Code on account of such claim.

1.87. _Interim Distribution_. A distribution to be made out of a Liquidating Trust Account from the applicable Liquidating Trust Reserve to any holder of an Allowed Claim whose Claim was not Allowed or was Disputed as of the Effective Date Distribution and whose Claim became Finally Determined subsequent to the Effective Date, but prior to the immediately proceeding Subsequent Distribution Date.

1.88. _IRS Priority Tax Claims_. The Claims asserted by the Internal Revenue Service that are specified on the Claim Register as Claim Nos. 12, 14, 474, and 475, which shall be satisfied in full from the Tax Refunds.

1.89. _Lien or Liens_. Any lien, security interest, mortgage, or similar encumbrance on property of the applicable Debtor that secured payment of a debt or obligation, which lien, interest, mortgage, or similar encumbrance is valid, perfected, and enforceable against such property or the proceeds thereof and is non-avoidable.

1.90. _Liquidating Trust_. The Consolidated Debtors Liquidating Trust and the Consolidated Holdco Liquidating Trust, collectively, or individually depending on context.

1.91. _Liquidating Trustee_. The Consolidated Debtors Liquidating Trustee and the Consolidated Holdco Liquidating Trustee, collectively, or individually depending on context.

1.92.   Liquidating Trust Advisory Board.  The Consolidated Debtors Liquidating Trust Advisory Board and the Consolidated Holdco Liquidating Trust Advisory Board, collectively, or individually depending on context.

1.93.   Liquidating Trust Assets.  The Consolidated Holdco Liquidating Trust Assets and the Consolidated Debtors Liquidating Trust Assets.

1.94.   Liquidating Trust Claim Reserve.  Any Liquidating Trust Assets allocable to, or retained on account of, Disputed Claims, even if held in commingled accounts.

1.95.   Lone Star Causes of Action.  Any and all Causes of Action existing on the Confirmation Date that could be asserted by Consolidated Holdco against the Lone Star Entities.

1.96.   Lone Star Commencement Deadline.  The deadline, which shall be one hundred twenty (120) days after the Effective Date, by which the Consolidated Holdco Liquidating Trust shall commence prosecution of the Lone Star Causes of Action; provided, however, that the Lone Star Commencement Deadline may be extended by the written consent of the Lone Star Entities or by Order of the Bankruptcy Court so long as such extension does not exceed an additional one hundred twenty (120) days.

1.97.   Lone Star Entities.  LSF5 Mortgage Line, LLC, LSF MRA, LSF5 Affiliate Finance, LLC, LSF5 Accredited Investments, Vericrest Financial, Inc., Caliber Funding LLC, Hudson Advisors and any Entity that controls, is controlled by or is under common control with any foregoing party.  The term "control" and correlative terms shall have the meanings ascribed to them in Rule 405 under the Securities Act of 1933, as amended.  The term Lone Star Entities shall not include, however, the Debtors or any of their subsidiaries including, but not limited to, REIT.

1.98.   Lone Star Proofs of Claim.  The Proofs of Claim filed by the Lone Star Entities, which are specified in the Claims Register as Claim Nos. 802, 804, and 877.

1.99.   Lone Star Releasees.  The Lone Star Entities and current and former affiliates and all their respective officers, agents, employees, directors, attorneys, representatives, insurers, predecessors, successors and assigns (other than any Debtor, the REIT or a Non-Debtor Subsidiary of any Debtor), with the current and former officers and directors of the Debtors set forth on Exhibit "B" to the Plan Support Agreement and Term Sheet, but excluding any attorneys, accountants, auditors, investment bankers, financial or other advisors, consultants or agents that provided professional, accounting, audit or other services to the REIT, the Debtors and the Non-Debtor Subsidiaries, and further excluding any insurers who provided insurance to the Debtors or any non-debtor subsidiary of the Debtors including the REIT.

1.100.  Lone Star Settlement Payment.  The payment, in the amount of Fifteen Million, Six Hundred Thousand Dollars ($15,600,000), to be provided to the Consolidated Debtors, which amount shall be used to fund Distributions to Holders of Class 3 C General Unsecured Claims and Class 6 C Convenience Claims in accordance with the terms of this Plan.

1.101.  Net Proceeds.  The Proceeds realized by the applicable Estate from the sale, lease, or other disposition of an Asset after satisfaction of any Secured Claims encumbering that Asset,

less costs of collection including, but not limited to, the fees and expenses of any attorneys, accountants, auctioneers, brokers, or similar professional incurred in the sale, lease, prosecution, adjudication, or other disposition of an Asset.

1.102. <u>Non-Debtor Subsidiaries</u>. All subsidiaries of the Debtors that are not debtors in the Bankruptcy Proceeding.

1.103. <u>Officer and Director Causes of Action</u>. Any and all claims, actions, Causes of Action, or other rights of recovery, whether asserted or unasserted or pending as of the Effective Date or direct, indirect, derivative or otherwise or known or unknown, that are held by the applicable Debtor against any of its current or former officers and directors from the beginning of the world to the Effective Date.

1.104. <u>Person</u>. Any individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, limited liability limited partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, or other Entity.

1.105. <u>Petition Date</u>. May 1, 2009, the date on which the Debtors filed their Chapter 11 petitions with the Bankruptcy Court.

1.106. <u>Plan</u>. This Debtors' First Amended Chapter 11 Plan of Liquidation, in its present form and as it may be amended or modified from time to time.

1.107. <u>Plan Supplement</u>. The supplement to the Plan that will be filed with the Bankruptcy Court on or before the Plan Supplement Filing Date and will, among other things, contain (i) the forms of the Liquidating Trust Agreements, (ii) the Tolling Agreement, (iii) the form of the REIT claim assignment discussed in §8.2(c)(ii) of this Plan, and (iv) the identity of the Liquidating Trustees and the Liquidating Trust Advisory Boards.

1.108. <u>Plan Supplement Filing Date</u>. The date by which the Plan Supplement and any Exhibits or Plan Schedules not filed with the Plan, shall be filed with the Bankruptcy Court, which date shall be at least ten (10) days prior to the Voting Deadline.

1.109. <u>Plan Support Agreement and Term Sheet</u>. The *Proposed Settlement Between Accredited Home Lenders Holding Co., et al. ("Debtors"), Lone Star, the REIT, the Official Committee of Unsecured Creditors ("Committee"), and the REIT Committee relating to a Consensual Plan of Liquidation*, dated September 2, 2010 and attached hereto as Exhibit A.

1.110. <u>Priority Claims</u>. A Claim entitled to priority under §507(a)(3) through 507(a)(7).

1.111. <u>Priority Tax Claim</u>. A Claim entitled to priority under § 507(a)(8) of the Bankruptcy Code.

1.112. <u>Privilege</u>. All attorney-client privileges, work product protections and other immunities or protections from disclosure held by the Debtors.

1.113. <u>Proceeds</u>. The funds realized by the applicable Estate from the sale, lease, settlement, adjudication, or other disposition of an Asset, including any recovery from a Cause of Action.

1.114. <u>Professionals</u>. Those persons (a) retained pursuant to an order of the Bankruptcy Court in accordance with §327, 1103 and/or 1106 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to §327, 328, 329, 330 and/or 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to §330 and 503(b)(2) of the Bankruptcy Code.

1.115. <u>Professional Fees</u>. (a) a claim under § 327, 331, 503(b), 1103 or 1106 of the Bankruptcy Code for compensation for professional services rendered or expenses incurred prior to the Effective Date on the Estates' behalf; or (b) a claim under § 503(b)(4) of the Bankruptcy Code for compensation for professional services rendered.

1.116. <u>Professional Fee Claim Bar Date</u>. Shall have the meaning specified in Section 3.1 of the Plan.

1.117. <u>Property</u>. The applicable Debtor's legal, possessory, equitable, or other interests in any property or Assets, whether real, personal, tangible, intangible or mixed, as defined in §541 of the Bankruptcy Code.

1.118. <u>Pro Rata Share</u>. The ratio (expressed as a percentage) of (i) the amount of any Allowed Claim in a particular Class or Classes, as applicable, to (ii) the sum of (x) the aggregate amount of all Allowed Claims in such Class or Classes, as applicable, and (y) the aggregate amount of Disputed Claims in such Class or Classes, as applicable.

1.119. <u>Receivables</u>. Accounts receivable of the applicable Debtor.

1.120. <u>REIT</u>. Accredited Mortgage Loan REIT Trust, a Maryland real estate investment trust.

1.121. <u>REIT Adversary</u>. That certain adversary proceeding commenced by the Creditors Committee against, among others, the REIT, styled as *Official Committee of Unsecured Creditors v. Accredited Mortgage Loan REIT Trust*, Adversary Proceeding No.10-50980.

1.122. <u>REIT Causes of Action</u>. All direct and personal claims and Causes of Action of the REIT (including, but not limited to, any derivative claims held by REIT that are assertable on behalf of the REIT Preferred Holders) against REIT Directors and Officers..

1.123. <u>REIT Committee</u>. That certain Ad Hoc Committee of certain REIT Preferred Holders.

1.124. <u>REIT Directors and Officers</u>. The current and former directors and officers (including trustees) of REIT.

1.125. <u>REIT Litigation Recovery Sources</u>. (i) the personal property or individual assets of any individual REIT Directors and Officers up to an aggregate of Five Million Dollars

($5,000,000) for all such REIT Causes of Action and (ii) the proceeds of any insurance policies that provide or are otherwise legally or contractually obligated to provide coverage with respect to the REIT Causes of Action against the REIT Directors and Officers or from any insurance company that has issued such a policy, including, but not limited to the D&O Policies, with all rights of any party against these policies being fully preserved.

1.126. <u>REIT Preferred Securities</u>. The preferred securities issued by the REIT.

1.127. <u>REIT Preferred Security Holder</u>. Any Entity that holds any of the REIT Preferred Securities.

1.128. <u>REIT Preferred Holders' Subordinated Guaranty Claims</u>. All Claims against any of the Debtors relating to the guaranty claims of the REIT Preferred Security Holders.

1.129. <u>REIT Releasors</u>. The REIT and the members of the REIT Committee, namely Footprint Asset Management & Research, Inc. and its constituent shareholders, Dupont Capital Management, Scott J. Weber, Anthony J. Sutton, Blake C. Sutton, and their successors and assigns.

1.130. <u>Rejection Claim</u>. Any Claim for amounts due as a result of the rejection of any executory contract or unexpired lease which is rejected by the Debtors pursuant to the Plan, which Claim must be filed by the Rejection Claim Bar Date.

1.131. <u>Rejection Claim Bar Date</u>. Thirty (30) days after the Effective Date; provided, however, if a motion seeking assumption or rejection is not heard and determined prior to the Effective Date, any Claim based thereon shall be filed within thirty (30) days of entry of an Order ruling on such a motion.

1.132. <u>Residual Assets</u>. The assets remaining in the Liquidating Trust after all beneficiaries of the Liquidating Trust have been paid in full as provided under the Plan and all expenses of the Liquidating Trust have been paid and satisfied, which shall be distributed by the Disbursing Agent upon termination and dissolution of the Liquidating Trust as provided under the Plan.

1.133. <u>Schedules</u>. The schedules of assets and liabilities filed by the Debtors in accordance with § 521 of the Bankruptcy Code, as such schedules may be amended from time to time.

1.134. <u>Subordinated Claim</u>. A claim subject to subordination under § 510 of the Bankruptcy Code.

1.135. <u>Subsequent Distributions</u>. Any distribution to be made subsequent to the Effective Date Distribution, in cash, by the respective Liquidating Trustee.

1.136. <u>Tax Code</u>. The Internal Revenue Code of 1986, as amended from time to time.

1.137. <u>Tax Refunds</u>. All refunds of tax that may be paid to any of the Debtors, their subsidiaries, and consolidated, combined or unitary tax group, whether Federal, state or local,

including, but not limited to, as a result of a carryback (including a carryback pursuant to an election under Tax Code Section 172(b)(1)(H)) by the Debtors and/or their subsidiaries of NOLs and alternative minimum tax NOLs incurred in recent years, including 2008 and/or 2009, the amount and timing of any such refund(s) being uncertain as of the date hereof.

1.138. <u>Tolling Agreement</u>. The agreement by the Lone Star Entities, the REIT Directors and Officers and the directors and officers of Holdco and AHL Canada that are also employed by the Lone Star Entities to toll any applicable statute of limitations with respect to any of the Lone Star Causes of Action to the end of the Lone Star Commencement Deadline.

1.139. <u>Trust Declaration</u>. The Amended and Restated Trust Agreement among Accredited Home Lenders Holding Co., as depositor, Wells Fargo Bank, N.A., as Property Trustee, Wells Fargo Delaware Trust Company, as Delaware Trustee and the administrative trustees named therein dated January 11, 2007.

1.140. <u>Trust Preferred Adversary Proceeding</u>. That certain adversary proceeding commenced by the trustee under the Trust Preferred Indenture against certain Lone Star Entities, styled as *Wells Fargo Bank, N.A., Indenture Trustee vs. LSF5 Accredited Investments LLC*, Adversary Proceeding No. 09-53276.

1.141. <u>Trust Preferred Common Securities</u>. The common securities issued by the Accredited Preferred Statutory Trust I, which terms are governed by the provisions of the Trust Declaration.

1.142. <u>Trust Preferred Guarantee</u>. The guarantee by Holdco to satisfy all amounts owed pursuant to the Trust Preferred Indenture and Trust Declaration.

1.143. <u>Trust Preferred Indenture</u>. That certain Junior Subordinated Indenture between Accredited Home Lenders Holding Co. and Wells Fargo Bank, N.A., as trustee, dated as of January 11, 2007.

1.144. <u>Trust Preferred Indenture Trustee</u>. Wells Fargo Bank, N.A.

1.145. <u>Trust Preferred Note</u>. The junior subordinated note issued pursuant to the Trust Preferred Indenture.

1.146. <u>Trust Preferred Note Claim</u>. Any Claims for principal and interest under or on account of the obligations owed to the Trust Preferred Indenture Trustee or any Trust Preferred Holder asserted by the Trust Preferred Indenture Trustee by and through a proof of claim, which claim includes, but is not limited to, principal and interest as of the Petition Date and, if applicable, post-petition interest.

1.147. <u>Trust Preferred Holders</u>. The holder of the Trust Preferred Securities.

1.148. <u>Trust Preferred Securities</u>. The preferred securities issued by the Accredited Preferred Statutory Trust I, which terms are governed by the provisions of the Trust Declaration.

1.149. <u>Vendor</u>. Vendor Management Services, LLC, d/b/a Inzura Settlement Services, a Pennsylvania limited liability company, which entity shall be consolidated with Holdco pursuant to this Plan.

1.150. <u>Vendor Cash</u>. All cash held by Vendor Management Services, LLC

Any capitalized terms used in the Plan, but not defined above, that are used in the Bankruptcy Code or Bankruptcy Rules shall have the meanings ascribed to them in the Bankruptcy Code or in the Bankruptcy Rules.

Whenever the context requires, references in this Plan to any person shall be deemed to be references to or to include, as appropriate, its respective successors, transferees and assigns. Terms shall include the plural as well as the singular. Terms denoting any gender shall be deemed to include all genders. Any accounting terms and phrases used herein and not otherwise defined herein shall have the meanings ascribed to such terms in conformity with generally accepted accounting principles.

Whenever the context requires, references in this Plan to an unspecified Liquidating Trust or Liquidating Trustee shall be deemed to be references to the appropriate Liquidating Trust or Liquidating Trustee. For an example of how these terms should be appropriately construed according to context, see section 8.1 of the Plan, below.

The words, "this Plan," "hereto," "herein," "hereunder," "hereof," and expressions of similar import refer to this Plan as a whole, together with any appendices, schedules and exhibits hereto, and not to any particular article, section, subsection, clause or other portion of this Plan. References in this Plan to any agreement, instrument or other document (including references to this Plan) shall be deemed to include references to such agreement, instrument or other document as amended, modified, varied, supplemented or replaced from time to time in accordance with its terms, the Bankruptcy Code or the Bankruptcy Rules, as may be applicable.

## 2. <u>DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS</u>

For the purpose of this Plan, Claims are divided into the following Classes. A proof of claim asserting a Claim which is properly included in more than one Class is included in each such Class to the extent that it qualifies within the description of such Class.

2.1. <u>Unclassified Claims: Administrative Claims and Priority Tax Claims</u>

Administrative Claims and Priority Tax Claims are not classified for purposes of voting or receiving distributions under the Plan. Rather, all such Claims are treated separately as unclassified Claims pursuant to the terms set forth in Article 3 of this Plan.

2.2. <u>Classified Claims of Consolidated Holdco</u>

<u>Class 1 H</u>:     Secured Claims against Consolidated Holdco (***Unimpaired***)

| Class 2 H: | All Allowed Unsecured Claims against Consolidated Holdco entitled to priority under §507(a)(3) through (a)(7) of the Bankruptcy Code (***Unimpaired***) |
|---|---|
| Class 3 H: | All Allowed Unsecured Claims against Consolidated Holdco, except for the Unsecured Claims separately classified (***Impaired***) |
| Class 4 H: | All Allowed Unsecured Claims against Consolidated Holdco held by LSF-MRA, LLC (***Impaired***) |
| Class 5 H: | All Allowed Unsecured Claims against Consolidated Holdco held by the REIT (***Impaired***) |
| Class 6 H: | All Consolidated Holdco Convenience Claims (***Impaired***) |
| Class 7 H: | All Claims against Holdco arising from or related to Trust Preferred Note, Trust Preferred Note Claim, or the Trust Preferred Securities (***Impaired***) |
| Class 8 H: | The REIT Preferred Holders Subordinated Guaranty Claims (***Impaired***) |
| Class 9 H: | All other Subordinated Claims against Consolidated Holdco, except for the Subordinated Claims separately classified (***Impaired***) |
| Class 10 H: | All Interests in Consolidated Holdco (***Impaired***) |

2.3.    Classification of Claims against the Consolidated Debtors.

| Class 1 C: | Secured Claims against the Consolidated Debtors (***Unimpaired***) |
|---|---|
| Class 2 C: | All Allowed Unsecured Claims against the Consolidated Debtors entitled to priority under §507(a)(3) through (a)(7) of the Bankruptcy Code (***Unimpaired***) |
| Class 3 C: | All Allowed Unsecured Claims against the Consolidated Debtors, except for the Unsecured Claims separately classified (***Impaired***) |
| Class 4 C: | All Allowed Unsecured Claims against the Consolidated Debtors opting out of the Creditor Release (***Impaired***) |
| Class 5 C: | All Allowed Unsecured Claims against the Consolidated Debtors held by the Lone Star Entities (***Impaired***) |
| Class 6 C: | All Consolidated Debtors Convenience Claims (***Impaired***) |
| Class 7 C: | All Subordinated Claims against the Consolidated Debtors (***Impaired***) |
| Class 8 C: | All Interests in the Consolidated Debtors (***Impaired***). |

2.4.    Preservation of Subordination Right and Claims of Subordination.  Pursuant to §510(a) of the Bankruptcy Code, except as otherwise agreed to by a creditor, class of creditors, or as otherwise provided under the Plan, nothing in this Plan is intended to affect the terms or enforceability of any subordination agreement entered into prior to the Effective Date by any creditor or group of creditors in favor of any other creditors of the Debtors in respect of any obligations owing by the Debtors.

## 3.    TREATMENT OF UNCLASSIFIED CLAIMS

3.1.    Administrative Claims

(a)    Non-Professional Fee Administration Claims

Any Holder of an Allowed Administrative Claim shall receive the full amount of the Holder's Allowed Administrative Claim in one cash payment from the Consolidated Debtors, or Consolidated Holdco, as applicable, as part of the Effective Date Distribution.  An Administrative Claim that is a Disputed Claim shall not receive any distribution unless and until such Claim becomes an Allowed Administrative Claim.  Upon the entry of a Final Order allowing an Administrative Claim, the Holder of that Claim shall receive the full amount of such Claim in one cash payment  from the applicable Liquidating Trust.  The applicable Liquidating Trustee or the applicable Debtor and the Holder of an Allowed Administrative Claim may agree to less favorable treatment of such Allowed Administrative Claim.  An Administrative Claim not filed prior to the Administrative Claim Bar Date as provided in this Plan shall be deemed forever waived and barred, the Holder thereof shall not be entitled to a distribution under the Plan, and the Debtors or applicable Liquidating Trustee shall have no obligation with respect thereto.

With regard to the services provided by AP Services, LLC (the "CRO Expenses") since the Petition Date, such CRO Expenses shall be ratably paid, with 75% paid by the Consolidated Debtors or the Consolidated Debtors Liquidating Trust and 25% paid by Consolidated Holdco or the Consolidated Holdco Liquidating Trust.  To the extent that the Consolidated Debtors have previously paid more than 75% of the CRO Expenses, the Consolidated Debtors shall have an Allowed Administrative Claim against Consolidated Holdco or the Consolidated Holdco Liquidating Trust for any amount paid in excess of 25% of the CRO Expenses which shall be paid, in cash, to the Consolidated Debtors' Liquidating Trust within five (5) days after such CRO Expenses shall become allowed.

(b)    Professional Fee Claims

Unless otherwise expressly provided in the Plan, a Professional Fee Claim will be Allowed only if:  (i) on or before forty-five (45) days after the Effective Date (the "Professional Fee Bar Date"), the entity holding such Professional Fee Claim files with the Court a final fee application and serves the application on counsel to the Debtors, counsel to the Creditors' Committee, Consolidated Debtors Liquidating Trustee, Consolidated Holdco Liquidating Trustee, and the U.S. Trustee; and (ii) the Court enters a Final Order allowing such Claim.

Any party in interest may file an objection to such application within the time provided by the Bankruptcy Rules or within any other period that the Bankruptcy Court establishes.

Entities holding Professional Fee Claims that do not timely file and serve a fee application will be forever barred from asserting such Professional Fee Claim against the Debtors, the Estates, the Liquidating Trusts, or their respective property.

The Debtors, or the applicable Liquidating Trustee, will pay or cause to be paid an Allowed Professional Fee Claim, in cash, within five (5) days after the conditions specified in this Section 3.1(b) of the Plan are satisfied. All Allowed Professional Fee Claims shall be ratably paid, with 75% paid by the Consolidated Debtors or the Consolidated Debtors Liquidating Trust and 25% paid by Consolidated Holdco or the Consolidated Holdco Liquidating Trust. To the extent that the Consolidated Debtors have previously paid more than 75% of the Allowed Professional Fee Claims, the Consolidated Debtors shall have an Administrative Claim against Consolidated Holdco or the Consolidated Holdco Liquidating Trust for any amount paid in excess of 75% of the Allowed Professional Fee Claims which shall be paid, in cash, to the Consolidated Debtors Liquidating Trust within five (5) days after the entry of a Final Order allowing such Allowed Professional Fee Claims.

### 3.2. Priority Tax Claims

Any Holder of an Allowed Priority Tax Claim shall receive the full amount of the Holder's Allowed Priority Tax Claim in one cash payment from Consolidated Holdco or the Consolidated Debtors, as applicable, as part of the Effective Date Distribution. A Priority Tax Claim that is a Disputed Claim shall not receive any distribution unless and until such Claim becomes an Allowed Priority Tax Claim. Upon the entry of a Final Order allowing an Priority Tax Claim against Consolidated Holdco after the Effective Date, the Holder of that Claim shall receive the full amount of such Claim in one cash payment from the Consolidated Holdco Liquidating Trust except as otherwise provided under Section 3.3 of the Plan. Upon the entry of a Final Order allowing a Priority Tax Claim against the Consolidated Debtors after the Effective Date, the Holder of that Allowed Claim shall receive the full amount of such Claim in one cash payment from the Consolidated Debtors Liquidating Trust except as otherwise provided under Section 3.3 of the Plan. The applicable Liquidating Trustee or Debtor and the Holder of an Allowed Priority Tax Claim may agree to less favorable treatment of such Allowed Priority Tax Claim. To the extent that some or all of an Allowed Secured Claim for taxes does not qualify as a Priority Tax Claim, it will be classified as a Class 1 Secured Claim.

### 3.3. IRS Priority Tax Claims.

The Holder of the IRS Priority Tax Claims shall be paid in full from the Tax Refunds. The IRS Priority Tax Claims shall be treated as an obligation of the Consolidated Debtors or the Consolidated Debtors Liquidating Trust.

## 4. TREATMENT OF CLASSES OF CLAIMS AND INTERESTS UNDER THE CONSOLIDATED HOLDCO PLAN

### 4.1. Class 1 H - Secured Claims.
Class 1H Secured Claims are unimpaired. Any Holder of a Class 1H Allowed Secured Claim shall, at the sole option of Consolidated Holdco, receive (a) the full amount of the Holder's Class 1H Allowed Secured Claim in one cash payment as part of the Effective Date Distribution from Consolidated Holdco, (b) all or a portion

of the Assets securing the Allowed Secured Claim or (c) subject to the requirements of § 1124(2) of the Bankruptcy Code, the legal, equitable and contractual rights of the Holder of such Allowed Secured Claim shall be reinstated. A Class 1H Secured Claim that is a Disputed Claim shall not receive any distribution unless and until such Claim becomes a Class 1H Allowed Secured Claim. Upon the entry of a Final Order allowing the Class 1H Allowed Secured Claim against Consolidated Holdco after the Effective Date, the Holder of that Claim shall receive, at the sole option of the Consolidated Holdco Liquidating Trustee, (a) the full amount of such Claim in one cash payment from the Consolidated Holdco Liquidating Trust, (b) all or a portion of the Assets securing the Allowed Secured Claim or (c) subject to the requirements of § 1124(2) of the Bankruptcy Code, the legal, equitable and contractual rights of the Holder of such Allowed Secured Claim shall be reinstated. The Consolidated Holdco Liquidating Trustee or Debtor and the Holder of a Class 1H Allowed Secured Claim may agree to less favorable treatment of such Class 1H Allowed Secured Claim.

**BECAUSE CLASS 1 H CLAIMS ARE NOT IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 1 H CLAIMS ARE NOT ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.2.    <u>Class 2 H - Priority Claims, other than Priority Tax Claims</u>:  Class 2H Priority Claims are unimpaired.  Any Holder of a Class 2 H Allowed Priority Non-Tax Claim shall receive the full amount of the Holder's Class 2 H Allowed Priority Non-Tax Claim in one cash payment as part of the Effective Date Distribution from Consolidated Holdco.  A Class 2 H Priority Non-Tax Claim that is a Disputed Claim shall not receive any distribution unless and until such Claim becomes a Class 2 H Allowed Priority Non-Tax Claim.  Upon the entry of a Final Order allowing the Class 2 H Allowed Priority Non-Tax Claim against Consolidated Holdco after the Effective Date, the Holder of that Claim shall receive the full amount of such Claim in one cash payment from the Consolidated Holdco Liquidating Trust.  The Consolidated Holdco Liquidating Trustee or Debtor and the Holder of a Class 2 H Allowed Priority Non-Tax Claim may agree to less favorable treatment of such Class 2 H Allowed Priority Non-Tax Claim.

**BECAUSE CLASS 2 H CLAIMS ARE NOT IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 2 H CLAIMS ARE NOT ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.3.    <u>Class 3 H - General Unsecured Claims against Consolidated Holdco</u>:  The Class 3H Claims <u>are</u> impaired.  Holders of Class 3 H Allowed Claims shall receive a Pro Rata Share of interests in the Consolidated Holdco Liquidating Trust and are entitled to receive distributions equal to their Pro Rata Share of any distributions of Consolidated Holdco Liquidating Trust Assets made by the Consolidated Holdco Liquidating Trustee out of the Consolidated Holdco Liquidating Trust in accordance with the Consolidated Holdco Liquidating Trust Agreement and the Plan. In calculating the distribution to the Holders of Class 3 H Claims, the Pro Rata Share shall include in the calculation the Allowed Claims and Disputed Claims included in Class 3 H, 4 H, 5 H and 7 H.

In the event of entry of a Final Order determining a Disputed Claim to be an Allowed Claim, the Holder of the subject claim shall receive its Pro Rata Share of interests in the Consolidated Holdco Liquidating Trust and the Consolidated Holdco Liquidating Trustee, in his

sole discretion, may make an Interim Distribution to the Holder of such Allowed Claim from the Consolidated Holdco Liquidating Trust Reserve, or may release funds from the Consolidated Holdco Liquidating Trust Reserve to such Holder in a Subsequent Distribution. The Holders of Class 3 H Allowed Claims shall thereafter receive their Pro Rata Share of Subsequent Distributions from the Consolidated Holdco Liquidating Trust.

Upon full administration of the Assets vested in the Consolidated Holdco Liquidating Trust, the Consolidated Holdco Liquidating Trustee shall make the Final Distribution, and all obligations under the Plan of the Consolidated Holdco Liquidating Trustee to the Holders of Class 3 H Allowed Claims shall be satisfied. In the event that the Holders of Class 3 H Allowed Claims are paid in full, together with interest thereon from the Petition Date through the date on which such claim is paid in full calculated at the federal judgment rate in effect as of the Petition Date, any funds remaining in the Consolidated Holdco Liquidating Trust Account, net of expenses, shall be distributed to the Holders of the Class 4 H and 5 H Claims, and potentially Class 7 H Claims, in accordance with the provisions of the Plan.

In the event Class 3 H votes in favor of the Plan, the payment of Class 4 H Claims will be subordinated and junior to the payment of Class 3 H Claims and Class 4 H Claims shall not receive any distribution until Class 3 H Claims are paid in full under the Plan.

**BECAUSE CLASS 3 H CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 3 H CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.4.    <u>Class 4 H - Unsecured Claims Against Consolidated Holdco held by LSF-MRA, LLC.</u> The Class 4 H Claims <u>are</u> impaired. Subject to the provisions of this Section 4.4 of the Plan, Holders of Class 4 H Allowed Claims shall receive a Pro Rata Share of interests in the Consolidated Holdco Liquidating Trust. In calculating the distribution to the Holder of Class 4 H Claims, the Pro Rata Share shall include in the calculation the Allowed Claims and Disputed Claims included in Class 3 H, 4 H, 5 H, and 7 H. Until the Holders of the Class 4 H Allowed Claims are satisfied in full with interest thereon from the Petition Date through the date on which such Claim is paid in full calculated at the federal judgment rate in effect as of the Petition Date, the Holder of Class 4 H Allowed Claims shall be entitled to receive its Pro Rata Share of the proceeds of the Consolidated Holdco Liquidating Trust.

Notwithstanding the foregoing, in the event Class 3 H votes in favor of the Plan, the payment of Class 4 H Claims will be subordinated to the payment of Class 3 H Claims and Class 4 H Claims shall not receive any distribution until Class 3 H Claims are paid in full as provided under the Plan.

Further, in the event Class 5 H votes in favor of the Plan and does not object to confirmation of the Plan, the payment of Class 4 H Claims will be subordinated to the payment of Class 5 H Claims.

Pursuant to the terms of the Trust Preferred Indenture and related documents, Class 7 H Claims are subordinated to the Class 4 H Claims and any payment attributable to Class 7 H Claims are to be paid to the Holders of, <u>inter alia</u>, Allowed Class 4 H Claims on a pro rata basis

to the extent provided under the Trust Preferred Indenture and related documents. Notwithstanding the foregoing, in the event that Class 7 H votes to accept the Plan, and the Holders of Class 7 H Claims do not object to confirmation of the Plan, payment of Class 4 H shall be subordinated to payment of the Allowed Class 7 H Claims.

Notwithstanding the foregoing, the subordination of claims of the Lone Star Entities, against Consolidated Holdco including, but not limited to, claims of the Lone Star Entities that are Class 4 H Claims, and as set forth herein, shall not in any way affect or be deemed to affect the availability of such claims for use as setoff or any other defenses of the Lone Star Entities to or against claims against the Lone Star Entities asserted by Consolidated Holdco or the Consolidated Holdco Liquidating Trust.

**BECAUSE CLASS 4 H CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 4 H CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.5.    <u>Class 5 H - Unsecured Claims Held By the REIT</u>. The Class 5 H Claims <u>are</u> impaired. The Class 5 H Claim of the REIT shall be fixed and Allowed in the amount of Twenty Million Dollars ($20,000,000) and, on account of such claim, the Holder of the Allowed Class 5 H Claim shall receive its Pro Rata Share of interests in the Consolidated Holdco Liquidating Trust. In calculating the distribution to the Holder of Class 5 H Claims, the Pro Rata Share shall include in the calculation the Allowed Claims and Disputed Claims included in Class 3 H, 4 H, 5 H, and 7 H. Until the Class 5 H Claim is satisfied in full with interest thereon from the Petition Date through the date on which such Claim is paid in full calculated at the federal judgment rate in effect as of the Petition Date, the Holder of Allowed Class 5 H Unsecured Claims shall be entitled to Pro Rata Share of the proceeds of the Consolidated Holdco Liquidating Trust. The Holder of Allowed Class 5 H Claim will waive its right to enforce any subordination provisions relating to Class 7 H Claims, and in the event Class 5 H votes in favor of the Plan and does not object to confirmation of the Plan, payment of Class 4 H Claims will be subordinated to the payment of Class 5 H Claims.

**BECAUSE CLASS 5 H CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 5 H CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.6.    <u>Class 6 H - Convenience Class Claims</u>. The Class 6 H Claims are impaired. Each Holder of an Allowed Consolidated Holdco Convenience Claim in Class 6 H shall receive seventy-five percent (75%) of the Holder's Allowed Class 6 H Convenience Claim in one cash payment as part of the Effective Date Distribution from Consolidated Holdco, or such other, less favorable treatment as is agreed upon by Consolidated Holdco and the Holder of such Consolidated Holdco Convenience Claim.

**BECAUSE CLASS 6 H CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 6 H CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.7. Class 7 H - Claims against Consolidated Holdco relating to Accredited Preferred Securities Trust I. The Class 7 H Claims are impaired. Class 7 H consists of Allowed Claims against Holdco that relate to the Trust Preferred Securities, Trust Preferred Notes, and the Trust Preferred Note Claims. Holders of Allowed Class 7 H Claims shall receive their Pro Rata Share of interests in the Consolidated Holdco Liquidating Trust subject to the enforcement of the applicable subordination provisions as described herein to the extent provided under the Trust Preferred Indenture and related documents and the Plan.

Pursuant to the terms of the Trust Preferred Indenture, the Class 7 H Claims are subordinated to the Class 4 H and 5 H Claims and any payments attributable to Class 7 H Claims are to be paid to the Holders of Class 4 H and 5 H Claims. If Class 7 H votes to reject the Plan, then, until distributions are made in an amount sufficient to pay Holders of Allowed Class 4 H Claims, in full with interest thereon, from the Petition Date through the date on which such Claim is paid in full calculated at the federal judgment rate in effect as of the Petition Date, the subordination provisions relating to Class 7 H will be enforced and the Pro Rata Share attributable to Class 7 H shall be distributed pursuant to the terms of §4.4 of the Plan.

Notwithstanding the foregoing, if Class 7 H votes in favor of confirmation of the Plan and the Holders of Allowed Class 7 H Claims do not object to confirmation of the Plan, then the payment of the holders of the Class 4 H Claims shall be subordinated to the payment of Class 7 H Claims and Holders of Allowed 7 H Claims will receive distributions as provided in this §4.7 of the Plan.

**BECAUSE CLASS 7 H CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 7 H CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.8. Class 8 H – REIT Preferred Holders' Subordinated Guaranty Claims: The Class 8 H Claims are impaired. Unless otherwise agreed to by the Creditors Committee and the REIT Committee, on the Effective Date (i) the Holders of Allowed Class 8 H Claims shall not receive beneficial interests in the Consolidated Holdco Liquidating Trust or be deemed to be beneficial holders of the Consolidated Holdco Liquidating Trust until all beneficial holders with Allowed Claims in Classes 3 H, 4 H, 5 H, and 7 H have been paid in full as provided under the Plan prior to the termination of the Consolidated Holdco Liquidating Trust, (ii) the Holders of Allowed Class 8 H Claims shall not be entitled to any reports or notices from the Consolidated Holdco Liquidating Trustee until they receive beneficial interests in the Consolidated Holdco Liquidating Trust and are beneficial holders of the Consolidated Holdco Liquidating Trust, and (iii) the Consolidated Holdco Liquidating Trust Agreement shall be drafted in a manner that avoids any material adverse consequences to the Consolidated Holdco Liquidating Trust under applicable securities and tax laws. If the Holders of Class 3 H, 4 H, 5 H, and 7 H Claims who are beneficial holders of the Consolidated Holdco Liquidating Trust are not paid in full as provided under the Plan, or if the Consolidated Holdco Liquidating Trust is terminated prior to the time when such senior unsecured creditors who are beneficial holders are paid in full, then the Holders of Allowed Class 8H Claims shall not receive any distribution under the Plan. If the Holders of Class 3 H, 4 H, 5 H, and 7 H Claims who are beneficial holders of the Consolidated Holdco Liquidating Trust are paid in full as provided under the Plan prior to the termination of the Consolidated Holdco Liquidating Trust, then Holders of Allowed Class 8 H Claims shall

receive beneficial interests in the Consolidated Holdco Liquidating Trust as provided under the Plan.

**BECAUSE CLASS 8 H CLAIMS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTIONS UNDER THE PLAN, THE HOLDERS OF CLASS 8 H CLAIMS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

4.9. <u>Class 9 H - Subordinated Claims against Consolidated Holdco</u>: The Class 9 H Claims are impaired. Class 9 H consists of claims against Consolidated Holdco that are not separately classified and are subordinated for any reason under §510 of the Bankruptcy Code. Holders of Class 9 H Claims shall not receive any distributions until the Holders of Class 3 H, 4 H, 5 H and 7 H Claims against Consolidated Holdco have been paid in full with interest as provided under the Plan, in which event the holders of Class 9 H Claims shall receive their Pro Rata Share of Subsequent Distributions from the Consolidated Holdco Liquidating Trust and their Pro Rata Share of the Residual Assets, as applicable.

**BECAUSE CLASS 9 H CLAIMS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTIONS UNDER THE PLAN, THE HOLDERS OF CLASS 9 H CLAIMS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

4.10. <u>Class 10 H- Interests</u>: The Class 10 H Claims are impaired. Class 10 H consists of the Interests in Consolidated Holdco, including those Interests held by the Lone Star Entities. All Interests, including those Interests held by the Lone Star Entities, shall be canceled as of the Effective Date and the Holders thereof shall receive no distribution under the Plan, unless Holders of all Class 8 H and 9 H Claims against Consolidated Holdco are paid in full with interest as provided under the Plan, in which event the holders of Class 10 H Interests shall receive their Pro Rata Share of Subsequent Distributions from the Consolidated Holdco Liquidating Trust and their Pro Rata Share of the Residual Assets, as applicable.

**BECAUSE CLASS 10 H INTERESTS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTIONS UNDER THE PLAN, THE HOLDERS OF CLASS 10 H INTERESTS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

## 5. TREATMENT OF CLASSES OF CLAIMS AND INTERESTS UNDER THE CONSOLIDATED DEBTORS PLAN

5.1. <u>Class 1 C - Secured Claims</u>. Class 1C Secured Claims are unimpaired. Any Holder of a Class 1C Allowed Secured Claim shall, at the sole option of the Consolidated Debtors, receive (a) the full amount of the Holder's Allowed Class 1C Secured Claim in one cash payment as part of the Effective Date Distribution from the Consolidated Debtors, (b) all or a portion of the Assets securing the Allowed Secured Claim or (c) subject to the requirements of§

1124(2) of the Bankruptcy Code, the legal, equitable and contractual rights of the Holder of such Allowed Secured Claim shall be reinstated. A Class 1C Secured Claim that is a Disputed Claim shall not receive any distribution unless and until such Claim becomes an Allowed Class 1C Secured Claim. Upon the entry of a Final Order allowing the Allowed Class 1C Secured Claim against the Consolidated Debtors after the Effective Date, the Holder of that Claim shall, at the sole option of the Consolidated Debtors Liquidating Trust, receive (a) the full amount of such Claim in one cash payment from the Consolidated Debtors Liquidating Trust, (b) all or a portion of the Assets securing the Allowed Secured Claim, or (c) subject to the requirements of § 1124(2) of the Bankruptcy Code, the reinstatement of the legal, equitable and contractual rights of the Holder of such Allowed Secured Claim. The Consolidated Debtors Liquidating Trustee or Consolidated Debtors and the Holder of an Allowed Class 1C Secured Claim may agree to less favorable treatment of such Allowed Class 1C Secured Claim.

**BECAUSE CLASS 1 C CLAIMS ARE NOT IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 1 C CLAIMS ARE NOT ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

5.2.    Class 2 C - Priority Claims, other than Priority Tax Claims. The Class 2C Claims are unimpaired. Any Holder of a Class 2 C Allowed Priority Non-Tax Claim shall receive the full amount of the Holder's Class 2 C Allowed Priority Non-Tax Claim in one cash payment as part of the Effective Date Distribution from the Consolidated Debtors. A Class 2 C Priority Non-Tax Claim that is a Disputed Claim shall not receive any distribution unless and until such Claim becomes a Class 2 C Allowed Priority Non-Tax Claim. Upon the entry of a Final Order allowing the Class 2 C Allowed Priority Non-Tax Claim against the Consolidated Debtors after the Effective Date, the Holder of that Claim shall receive the full amount of such Claim in one cash payment from the Consolidated Debtors Liquidating Trust. The Consolidated Debtors Liquidating Trustee or Debtor and the Holder of a Class 2 C Allowed Priority Non-Tax Claim may agree to less favorable treatment of such Class 2 C Allowed Priority Non-Tax Claim.

**BECAUSE CLASS 2 C CLAIMS ARE NOT IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 2 C CLAIMS ARE NOT ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

5.3.    Class 3 C - General Unsecured Claims against the Consolidated Debtors. The Class 3 C Claims are impaired. Holders of Allowed Class 3 C and 4 C Claims shall be entitled to receive a Pro Rata Share of interests in the Consolidated Debtors Liquidating Trust and are entitled to receive distributions equal to their Pro Rata Share of any distributions of the Consolidated Debtors Liquidating Trust Assets made by the Consolidated Debtors Liquidating Trustee out of the Consolidated Debtors Liquidating Trust in accordance with the Consolidated Debtors Liquidating Trust Agreement, and continuing on the dates of Subsequent Distributions, equal to their Pro Rata Share of any distributions of Consolidated Debtors Liquidating Trust Assets made by the Consolidated Debtors Liquidating Trustee out of the Consolidated Debtors Liquidating Trust, as provided under the Plan.

In addition to the distributions described above, Holders of Class 3 C General Unsecured Claims shall be entitled to receive a Pro Rata Share of the Lone Star Settlement Payment subject

to the terms of this Plan. Holders of Class 3 C General Unsecured Claims and Class 6 C Convenience Claims are deemed to have accepted the Creditor Release.

In the event of entry of a Final Order determining a Disputed Claim to be an Allowed Claim, the Holder of the subject claim shall receive its Pro Rata Share of interests in the Consolidated Debtors Liquidating Trust and the Consolidated Debtors Liquidating Trustee, in his sole discretion, may make an Interim Distribution to the Holder of such Allowed Claim from the Consolidated Debtors Liquidating Trust Reserve, or may release funds from the Consolidated Debtors Liquidating Trust Reserve to such Holder in a Subsequent Distribution. The Holders of Class 3 C Allowed Claims shall thereafter receive their Pro Rata Share of Subsequent Distributions from the Consolidated Debtors Liquidating Trust.

Upon full administration of the Assets vested in the Consolidated Debtors Liquidating Trust, the Consolidated Debtors Liquidating Trustee shall make the Final Distribution, and all obligations under the Plan of the Consolidated Debtors Liquidating Trustee to the Holders of Allowed Class 3 C Claims shall be satisfied. In the event that the Holders of Allowed Class 3 C Claims are paid in full, together with interest thereon from the Petition Date through the date on which such claim is paid in full calculated at the federal judgment rate in effect as of the Petition Date, any funds remaining in the Consolidated Debtors Liquidating Trust Account, net of expenses, shall be distributed first to the Holders of the Allowed Class 4C and then to the Holders of Allowed Class 7 C Claims in accordance with the provisions of the Plan.

**BECAUSE CLASS 3 C CLAIMS ARE IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 3 C CLAIMS ARE ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

5.4.    Class 4 C - General Unsecured Claims against the Consolidated Debtors opting out of the Creditor Release. The Class 4 C Claims are impaired. Holders of Allowed Class 3 C and 4 C Claims shall be entitled to receive a Pro Rata Share of interests in the Consolidated Debtors Liquidating Trust and are entitled to receive distributions equal to their Pro Rata Share of any distributions of the Consolidated Debtors Liquidating Trust Assets made by the Consolidated Debtors Liquidating Trustee out of the Consolidated Debtors Liquidating Trust in accordance with the Consolidated Debtors Liquidating Trust, and continuing on each Subsequent Distribution Date, equal to their Pro Rata Share of any distributions of Consolidated Debtors Liquidating Trust Assets made by the Consolidated Debtors Liquidating Trustee out of the Consolidated Debtors Liquidating Trust.

For the avoidance of doubt, Holders of Allowed Class 4 C Claims opting out of the Creditor Release shall not be entitled to receive any distributions from the Lone Star Settlement Payment.

Upon full administration of the Assets vested in the Consolidated Debtors Liquidating Trust, the Consolidated Debtors Liquidating Trustee shall make the Final Distribution, and all obligations under the Plan of the Consolidated Debtors Liquidating Trustee to the Holders of Allowed Class 4 C Claims shall be satisfied. In the event that the Holders of Allowed Class 4C Claims are paid in full, together with interest thereon from the Petition Date through the date on which such claim is paid in full calculated at the federal judgment rate in effect as of the Petition