Date, any funds remaining in the Consolidated Debtors Liquidating Trust Account, net of expenses, shall be distributed to the Holders of Allowed Class 7 C Claims in accordance with the provisions of the Plan.

**BECAUSE CLASS 4 C CLAIMS ARE IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 4 C CLAIMS ARE ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

5.5.     Class 5 C - Unsecured Claims Against the Consolidated Debtors held by the Lone Star Entities. The Class 5 C Claims are impaired. The Claims of the Lone Star Entities against the Consolidated Debtors shall be waived and shall receive no distributions under this Plan.

**BECAUSE CLASS 5 C CLAIMS ARE IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 5 C CLAIMS ARE ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

5.6.     Class 6 C - Convenience Class Claims. The Class 6 C Claims are impaired.  On the Effective Date, or as soon as practicable thereafter, each Holder of an Allowed Consolidated Debtor Convenience Claim in Class 6 C shall receive seventy-five percent (75%) of the Holder's Allowed Class 6 C Convenience Claim in one cash payment as part of the Effective Date Distribution from the Consolidated Debtors, or such other less favorable treatment as is agreed upon by the Consolidated Debtors and the Holder of such Allowed Consolidated Debtor Convenience Claim.

Holders of Class 6 C Convenience Claims are deemed to have accepted the Creditor Release and will be entitled to receive distributions from the Lone Star Settlement Payment.

An Allowed Unsecured Claim against any of the Consolidated Debtors that has a face amount equal to or less than $25,000 shall be treated as a Class 6 C Claim, provided, however that a Holder of such a Claim may opt for that Claim to be treated as a Class 4 C Claim by making that designation on a properly cast Ballot.

**BECAUSE CLASS 6 C CLAIMS ARE IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 6 C CLAIMS ARE ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

5.7.     Class 7 C - Subordinated Claims against the Consolidated Debtors. The Class 7 C Claims are impaired.  Class 7 C consists of Subordinated Claims against the Consolidated Debtors, including the subordinated claim of the REIT in the amount of Fifteen Million Dollars ($15,000,000), that is being allowed pursuant to Section 10.8 of this Plan (the "REIT Junior Claims"). Holders of Class 7 C Subordinated Claims shall receive no distribution under the Plan unless the Holders of Allowed Class 3 C and 4 C Allowed Claims are paid in full, as provided under the Plan, in which event the holders of Class 7 C Claims shall receive their Pro Rata Share of Subsequent Distributions from the Consolidated Holdco Liquidating Trust and their Pro Rata Share of the Residual Assets, as applicable.

**BECAUSE CLASS 7 C CLAIMS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTIONS UNDER THE PLAN, THE HOLDERS OF CLASS 7 C CLAIMS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

5.8.     Class 8 C - Interests.  The Class 8 C Claims are impaired.  Class 8 C consists of the Interests in the Consolidated Debtors.  All Interests shall be canceled as of the Effective Date and the Holders thereof shall receive no distribution under the Plan, unless Holders of all Class 7 C Allowed Subordinated Claims against the Consolidated Debtors are paid in full with interest as provided under the Plan, in which event the holders of Class 8 C Interests shall receive their Pro Rata Share of Subsequent Distributions from the Consolidated Holdco Liquidating Trust and their Pro Rata Share of the Residual Assets, as applicable.

**BECAUSE CLASS 8 C INTERESTS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTIONS UNDER THE PLAN, THE HOLDERS OF CLASS 8 C INTERESTS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

## 6.     INTERCOMPANY CLAIMS

6.1.     Inter-Debtor Waivers.  By virtue of the compromises and settlement of the issues set forth in the Plan, on the Effective Date, (i) AHL Canada shall pay and satisfy the Claims of the Consolidated Debtors against AHL Canada and after giving effect to such payment, (ii) each Debtor shall waive any defense, including, without limitation, defenses arising under § 502(d) and 553(a) of the Bankruptcy Code, to Intercompany Claims asserted by another Debtor and such claims shall be deemed Allowed Claims, (iii) Intercompany Claims between Debtors shall be deemed to be mutual claims arising prior to the Petition Date for purposes of setoff, (iv) except as provided in Section 3.1 of the Plan, each Debtor shall waive its right to receive any distribution on any Claims and Causes of Action such Debtor may have against another Debtor, and (v) except as provided in Section 3.1 of the Plan, each Debtor shall waive and forever release any right, Claim or Cause of Action which has been or could have been asserted by such Debtor against any other Debtor.

6.2.     Non-Debtor Subsidiary Waivers.  By virtue of the compromises and settlement of the issues set forth in the Plan and except as otherwise provided in this Plan, on the Effective Date, (i) AHL Canada shall pay and satisfy the Claims of the Consolidated Debtors against AHL Canada and after giving effect to such payment, (ii) each Non-Debtor Subsidiary, except REIT and AHL Canada, shall waive any defense, including, without limitation, defenses arising under § 502(d) and 553(a) of the Bankruptcy Code, to Intercompany Claims asserted by another Debtor or Non-Debtor Subsidiary against any Debtor and such claims shall be deemed Allowed Claims, (iii) Intercompany Claims between Debtors and Non-Debtor Subsidiaries, except REIT and AHL Canada, shall be deemed to be mutual claims arising prior to the Petition Date for purposes of setoff, (iv) each Non-Debtor Subsidiary, except REIT, shall waive its right to receive any distribution on any Claims and Causes of Action such Non-Debtor Subsidiary may have against any Debtor, except that the Debtors shall not waive or release any Non-Debtor Subsidiary for

any Avoidance Actions, and (v) except as provided in this Section 6.2 of the Plan, each Non-Debtor Subsidiary, except REIT, shall waive and forever release any right, Claim or Cause of Action which has been or could have been asserted by such Non-Debtor Subsidiary against any Debtor.

6.3. <u>Asset Allocation</u>. The allocation of certain Assets is an integral component of the comprehensive compromise and settlement concerning Intercompany Claims and intra-Debtor issues as determined in light of a number of facts, including, but not limited to, (i) respective legal claims, rights and entitlements of the Debtors, (ii) validity and enforceability of Intercompany Claims, (iii) Intercompany Claims not reflected as inter-company payables or receivables in the Debtors' books and records, (iv) relative value of Assets under administration in each Debtor, (v) Intercompany Claims for contribution or reimbursement, (vi) the necessity of resolving inter-Estate and inter-Debtor issues and disputes through the Plan, and (vii) administration and liquidation of Trust Assets unfettered or effected by inter-Estate or inter-Debtor conflicts of interest or multiple claims.

## 7. <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

7.1. <u>Assumption and Rejection</u>. All executory contracts and unexpired leases, other than those executory contracts and unexpired leases which (i) were executed subsequent to the Petition Date, or (ii) have not expired by their own terms prior to the Confirmation Date, and other than those executory contracts and unexpired leases regarding which an Order has been entered prior to the Effective Date authorizing assumption thereof, shall be deemed rejected upon the Confirmation Date except for any executory contract or unexpired lease that is specifically designated to be assumed or has been assumed or assumed and assigned.

7.2. <u>Indemnification Agreements</u>. The obligations of the Consolidated Debtors to indemnify any person having served as an officer or director of the Consolidated Debtors, to the extent provided in any of the Consolidated Debtors' corporate governance documents or by written or other agreement or applicable law, shall be terminated and extinguished and, to any extent necessary, deemed an executory contract, terminated and rejected under the Plan. Notwithstanding the foregoing, this provision will not limit or modify any indemnification obligations approved by this Court.

7.3. <u>Claims Relating to Assumption or Rejection</u>. Any party to an executory contract or unexpired lease not previously assumed or rejected and to which no bar date has been established, which is assumed or rejected pursuant to this Plan or is the subject of a pending rejection motion, is required under the terms of this Plan to file a claim for amounts due as a result of such assumption or rejection by the Rejection Bar Date; provided, however, if a motion seeking assumption or rejection is not heard and determined prior to the Effective Date, any Claim based thereon shall be filed within thirty (30) days of entry of an Order ruling on the motion. Any Allowed Claim relating to the rejection of executory contracts or leases shall be treated as a Class 3 H or 3 C Unsecured Claim depending on the Debtor counter-party to such executory contract or unexpired lease. Any Allowed Cure Claim relating to the assumption of executory contracts or leases pursuant to the Plan shall be paid in full from the Effective Date Distribution to the extent Finally Determined as of the Effective Date, or, to the extent thereafter, from an Interim Distribution or Subsequent Distribution by the applicable Liquidating Trustee.

Any such claim not filed by the Rejection Bar Date as provided in the Plan shall be forever barred and shall not be enforceable against the Debtors or their properties or the Liquidating Trusts and the Debtors and Liquidating Trusts shall have no obligation to pay the same.

7.4.    Insurance Policies. To the extent that any and all insurance policies including the D&O Policies are considered executory contracts, then notwithstanding anything contained in the Plan to the contrary, such insurance policies shall be deemed assumed and assigned to the respective Liquidating Trust. Unless otherwise determined by the Bankruptcy Court, pursuant to a Final Order, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such policy. For the avoidance of any doubt, all rights under any insurance policy, including the D&O Policies, that is not an executory contract, and all rights under any other insurance policies under which the Debtors may be beneficiaries, shall be preserved and shall vest with the respective Liquidating Trust; and, nothing herein shall alter or adversely affect the rights of any non-Debtor beneficiaries of or covered persons under such insurance policies.

## 8.    LONE STAR SETTLEMENT

8.1.    Incorporation of Settlement. The Plan is deemed to be a motion pursuant to § 363 and 1123 of the Bankruptcy Code and Fed. R. Bankr. P 9019 to authorize a settlement between the Consolidated Debtors and the Lone Star Entities. The Plan incorporates and is expressly conditioned upon approval of the Plan Support Agreement and Term Sheet in the Confirmation Order. The provisions of the Plan are intended to implement the Plan Support Agreement and Term Sheet, and the Plan Support Agreement and Term Sheet provides that it shall be effected through the Plan and is contingent upon confirmation of the Plan. All provisions of the Plan Support Agreement and Term Sheet are to be considered non-severable and the Plan and the Plan Support Agreement and Term Sheet are to be considered non-severable. The terms of the Plan Support Agreement and Term Sheet set forth below are for the purpose of summary and convenience only, and are not intended to take precedence over the terms of the Plan Support Agreement and Term Sheet. To the extent the summary provided below conflicts with the terms of the Plan Support Agreement and Term Sheet, the Plan Support Agreement and Term Sheet shall control.

8.2.    Terms of the Lone Star Settlement. As more fully set forth in the Plan Support Agreement and Term Sheet, attached hereto as Exhibit "A" the general terms of the Lone Star Settlement are as follows:

(a)    Provided that less than 25% in amount of the general unsecured claims against the Consolidated Debtors eligible to vote on the plan elect treatment as Class 4 C Creditors (rather than class 3 C Creditors) and to withhold releases of direct and personal claims under the Plan:

(i)    one or more of the Lone Star Entities (other than LSF MRA, LLC) shall make the Lone Star Settlement Payment to the Consolidated Debtors on or before the Effective Date, which shall be made available for distribution pursuant to the terms of this Plan to creditors who grant releases as set forth in Section 8.2(b) of the Plan;

(ii)     the Lone Star Entities shall be deemed to have waived, for purposes of the Plan and receiving distributions hereunder, all Claims against the Consolidated Debtors or their respective properties, including those asserted in the Lone Star Proofs of Claim; and

(iii)     the Lone Star Entities shall be deemed to have subordinated, for purposes of the Plan and receiving distributions hereunder, all claims asserted against Consolidated Holdco in favor of Classes 3 H, 5 H, and 7 H, if those applicable Classes do not vote to reject the Plan, to the extent such claims of the Lone Star Entities are not disallowed, so that any distributions that would be made to the Lone Star Entities on account of claims against Consolidated Holdco (the "Subordinated Distributions") will first be distributed to such non-rejecting Classes until such claims are paid in full (which Subordinated Distributions shall not be subject to disgorgement); provided, however, that subordination of the Claims of the Lone Star Entities against Consolidated Holdco as set forth herein shall not in any way affect or be deemed to affect the availability of such claims for use as setoff or any other defenses of the Lone Star Entities to or against claims against the Lone Star Entities asserted by Consolidated Holdco (including by Consolidated Holdco as assignee of the REIT Releasors (see Section 8.2(b) below)), and provided, further, however, that claims and Causes of Action, if any, that may be brought by the Consolidated Holdco Estate or the Consolidated Holdco Liquidating Trustee against any of the Lone Star Entities must be brought within Lone Star Commencement Deadline unless further extended either by the written consent of the Lone Star Entities or by order of the Court not to exceed an additional one hundred twenty (120) days; and still further provided, that in the event of any Consolidated Holdco distributions to non-rejecting creditors on account of the Claims of the Lone Star Entities, the Claims of the Lone Star Entities shall remain available for use by the Lone Star Entities for set-off or as defenses, to the extent applicable, as if such distributions had not been made. The Lone Star Entities agree to execute the Tolling Agreement, and to use reasonable efforts to cause the REIT, Holdco and AHL Canada directors and officers that are also employed by the Lone Star Entities to execute the Tolling Agreement. The Consolidated Holdco Liquidating Trustee shall distribute the Subordinate Distributions pursuant to the terms of §4.3, 4.4, 4.5, and 4.7 of the Plan and the Consolidated Holdco Liquidating Trust Agreement.

**(b)     Subject to Section 12.3 of the Plan, upon the Effective Date of the Plan, the Lone Star Releasees shall receive a full release of all claims from the Estates of the Consolidated Debtors and of all direct and personal claims relating to the Consolidated Debtors and their businesses from individual creditors of the Consolidated Debtors (other than from REIT) that elect to receive a distribution from the Lone Star Settlement Payment by not electing to withhold releases of direct and personal claims as of the Effective Date; provided, however, that the foregoing shall not operate as a waiver or release of the Lone Star Releasees' obligations under the Plan or Plan Support Agreement and Term Sheet.**

**(c)     The direct and personal claims of REIT Releasors   shall be treated as follows:**

(i)     The REIT Releasors shall release the Lone Star Releasees and the current and former officers and directors (including trustees) of the Debtors but not the current and former directors and officers (including trustees) with respect to the REIT or the Lone Star Releasees in their capacities as REIT Directors and Officers of all direct and personal claims, including but not limited to, any derivative claims held by the REIT which are assertable on behalf of the REIT Preferred Security Holders; provided, however, the foregoing release shall not apply to any claims or causes of action assigned pursuant to Section 8.2(c)(ii).

(ii)     The REIT and the members of the REIT Committee shall assign to Consolidated Holdco (or the Consolidated Holdco Liquidating Trust) all direct and personal claims with respect to the REIT (including, but not limited to, any derivative claims held by the REIT that are assertable on behalf of the REIT Preferred Holders) and of such REIT Committee members against the REIT Directors and Officers; provided, however, that REIT, the members of the REIT Committee and Consolidated Holdco (and the Consolidated Holdco Liquidating Trust and Consolidated Holdco Liquidating Trustee), as assignee, shall be permitted to satisfy any judgment, settlement or other obligation due on account of any such claims against (i) the personal property or individual assets of any individual REIT Directors and Officers up to REIT Litigation Recovery Sources. The rights of any insured or actual or prospective claimant against the policies shall not be altered by the terms of these provisions. For the avoidance of doubt, the rights of the REIT, the members of the REIT Committee (and Consolidated Holdco as assignee of the REIT claims) and the REIT Directors and Officers against any of the policies are fully preserved.

(d)     The Consolidated Debtors and Consolidated Liquidating Trustee agree and covenant not to make, assert or pursue any claim or commence any action or litigation against the Lone Star Releasees or the current and former directors and officers of the Debtors released as set forth herein or under or against the D&O Policies; provided, however, this covenant and any release of current or former Directors and Officers of the Debtors as set forth herein shall be conditioned on such officer or director granting a full release of claims against the Consolidated Debtors and their respective properties (including all claims under or that could be asserted under filed proofs of claim, which claims shall be deemed expunged and relinquished).

(e)     The REIT, the members of the REIT Committee, Holdco and the Consolidated Holdco Liquidating Trust and Trustee agree not to satisfy or attempt to satisfy any judgment, settlement or other obligation due on account of any claims of the REIT or a member of the REIT Committee against the REIT Directors and Officers from any source other than from the Litigation Recovery Sources.

(f)     Upon or after the Effective Date, the Consolidated Debtors or the Consolidated Debtors Liquidating Trustee will comply, without cost or expense to them, with any reasonable requests received from the Lone Star Releasees for separate documents acknowledging the releases contemplated herein.

## 9.    **LIQUIDATING TRUSTS**

9.1.    <u>Rules of Construction</u>. Except where specifically provided otherwise, the terms of this Article 9 shall apply to both the Consolidated Debtors Liquidating Trust and the Consolidated Holdco Liquidating Trust and shall be construed according to the understanding that these trusts are receiving parallel treatment. Thus, for example, where Article 9.4(c) states, "[a]ll costs and expenses associated with the administration of the Liquidating Trust shall be the responsibility of and paid by the Liquidating Trust from the Liquidating Trust Assets," this provision of the Plan should be interpreted as if it states both (a) "[a]ll costs and expenses associated with the administration of the Consolidated Holdco Liquidating Trust shall be the responsibility of and paid by the Consolidated Holdco Liquidating Trust from the Consolidated Holdco Liquidating Trust Assets" and (b) "[a]ll costs and expenses associated with the administration of the Consolidated Debtors Liquidating Trust shall be the responsibility of and paid by the Consolidated Debtors Liquidating Trust from the Consolidated Debtors Liquidating Trust Assets."

9.2.    <u>Appointment of Liquidating Trustee</u>.

(a)    On or before the Plan Supplement Filing Date, the Consolidated Debtors Liquidating Trustee shall be selected by the Committee and be reasonably acceptable to the Consolidated Debtors and REIT, and the Consolidated Holdco Liquidating Trustee shall be selected by the Committee and be reasonably acceptable to Wells Fargo Bank, as indenture trustee under the Trust Preferred Indenture, and the REIT; <u>provided</u>, <u>however</u>, that none of the Lone Star Entities or their affiliates, officers, directors or employees shall serve as Liquidating Trustee. Prior to the Confirmation Date, the person(s) designated as Liquidating Trustee shall file an affidavit demonstrating that such person is disinterested. If approved by the Bankruptcy Court in the Confirmation Order, the person so designated shall become the Liquidating Trustee of the respective Liquidating Trust on the Effective Date.

(b)    The Liquidating Trustee shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Liquidating Trust Agreement.

9.3.    <u>Funding of the Consolidated Holdco Liquidating Trust</u>. The Consolidated Holdco Liquidating Trust will be funded initially by a contribution to the Consolidated Holdco Liquidating Trust Account by Consolidated Holdco equal to its Effective Date Balance less any payments made to the Holders of Allowed Administrative Claims, Holders of Allowed Secured Claims, Holders of Allowed Priority Claims, Holders of Allowed Priority Tax Claims, and Holders of Allowed Convenience Claims against Consolidated Holdco on the Effective Date. The Consolidated Holdco Liquidating Trust shall subsequently be funded from any amounts recovered from the other Proceeds of the Consolidated Holdco Assets.

9.4.    <u>Funding of the Consolidated Debtors Liquidating Trust</u>. The Consolidated Debtors Liquidating Trust will be funded initially by a contribution to the Consolidated Debtors Liquidating Trust Account by the Consolidated Debtors equal to their Effective Date Balance less any payments made to the Holders of Allowed Administrative Claims, Holders of Allowed Secured Claims, Holders of Allowed Priority Claims, Holders of Allowed Priority Tax Claims, and Holders of Allowed Convenience Claims against the Consolidated Debtors on the Effective

Date. The Consolidated Debtors Liquidating Trust shall subsequently be funded from the other Proceeds of Consolidated Debtors Assets.

9.5.    Transfer of Liquidating Trust Assets to the Liquidating Trust.  On the Effective Date, the Debtors shall transfer and shall be deemed to have irrevocably transferred to the Liquidating Trust, for and on behalf of the beneficiaries of the Liquidating Trust, with no reversionary interest in the Debtors, the Liquidating Trust Assets.  For the avoidance of any doubt, the Consolidated Debtors shall transfer and convey the Consolidated Debtors Liquidating Trust Assets to the Consolidated Debtors Liquidating Trustee and the Consolidated Holdco shall transfer and convey the Consolidated Holdco Liquidating Trust Assets to the Consolidated Holdco Liquidating Trust.

9.6.    The Liquidating Trust.

(a)    Without any further action of the directors or shareholders of the Debtors, on the Effective Date, the Liquidating Trust Agreement for the Liquidating Trust, substantially in the form included in the Plan Supplement, shall become effective.  On or before the Effective Date, the Debtors and the Liquidating Trustee shall execute the Liquidating Trust Agreements and shall take such other necessary steps to establish the Liquidating Trusts.  The Liquidating Trustee shall accept the Liquidating Trust Assets and sign the Liquidating Trust Agreement on the Effective Date and the Liquidating Trust will then be deemed created and effective.

(b)    The Liquidating Trustee shall have full authority to take any steps necessary to administer the Liquidating Trust Assets and the Lone Star Settlement Payment, as applicable, including, without limitation, the duty and obligation to liquidate Liquidating Trust Assets, and to pursue and settle any other trust claims, subject to the approval of the Liquidating Trust Advisory Board and to the procedures in the Liquidating Trust Agreement.  Upon such transfer (which, as stated above, shall occur on the Effective Date), the Debtors and their Estates shall have no other rights or obligations with respect to the Liquidating Trusts.

(c)    All costs and expenses associated with the administration of the Liquidating Trust shall be the responsibility of and paid by the Liquidating Trust from the Liquidating Trust Assets.

(d)    The Liquidating Trustee may retain such law firms, accounting firms, experts, advisors, consultants, investigators, appraiser, auctioneers or other professionals as it may deem necessary (collectively, the "Liquidating Trustee Professionals"), in its sole discretion, and at the sole expense of the Liquidating Trust, to aid in the performance of its responsibilities pursuant to the terms of this Plan including, without limitation, the liquidation and distribution of Liquidating Trust Assets and the Lone Star Settlement Payment, as applicable.

(e)    Distribution of Liquidating Trust Assets:  The Liquidating Trustee is required to distribute to the holders of Allowed Claims on account of their interests in the Liquidating Trust , on a periodic basis, and at least once per year, all unrestricted Cash on hand (including any Cash received from the applicable Debtors on the Effective Date, and treating any permissible investment as Cash for purposes of this Section 9.6(e)), except such amounts (i) as have been reserved on account of Disputed Claims, or are otherwise part of the claims reserve established

by the Liquidating Trustee, (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (iii) as are necessary to pay reasonable incurred or anticipated expenses (including, but not limited to, any taxes imposed on or payable by the Debtors or the Liquidating Trust or in respect of the Liquidating Trust Assets), or (iv) as are necessary to satisfy other liabilities incurred or anticipated by the Liquidating Trust in accordance with the Plan or the Liquidating Trust Agreement; provided, however, that the Liquidating Trustee shall not be required to make a distribution pursuant to this Section 9.6(e) if the aggregate, net amount of unrestricted Cash available for distribution (taking into account the above listed exclusions) is such as would make the distribution impracticable as reasonably determined by the Liquidating Trustee; and provided further that nothing in this Plan shall compel the Liquidating Trustee to treat any tentative Tax Refund(s) obtained pursuant to Tax Code Section 6411 as unrestricted cash until completion of the associated audit by the relevant authorities.

(f)     For federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under Treasury Regulation section 301.7701-4 and that such trust be owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution of an undivided interest in the Liquidating Trust Assets and then contributed such interests to the Liquidating Trust. The Liquidating Trust Agreement shall (i) state that the primary purpose of the Liquidating Trust is to liquidate the Liquidating Trust Assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, its liquidating purpose and (ii) contain a fixed or determinable termination date that is not more than five (5) years from the date of creation of the Liquidating Trust, which termination date may be extended for one or more finite terms subject to the approval of the Bankruptcy Court upon a finding that the extension is necessary to its liquidating purpose. Each such extension must be approved by the Bankruptcy Court within two (2) months before the beginning of the extended term.

(g)     The Liquidating Trustee shall be responsible for filing all federal, state and local tax returns for the Liquidating Trust. The Liquidating Trustee shall file all federal tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4. The Liquidating Trustee also will annually send to each holder of a Liquidating Trust Interest a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holder's underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns. The Liquidating Trustee shall also file (or cause to be filed) any other statement, return or disclosure relating to the Liquidating Trust that is required by any governmental unit.

(h)     Tax Reporting for Liquidating Trust:

(i)     On or before the Effective Date, the Debtors shall provide the Liquidating Trustee with a good-faith valuation of the Tax Refunds as of the Effective Date. As soon as practical after the Effective Date, the Liquidating Trustee shall determine the fair market value, as of the Effective Date, of

all other Liquidating Trust Assets, and shall make all such values (including the Tax Refunds value) available from time to time, to the extent relevant, and such values shall be used consistently by all parties to the Liquidating Trust (including, without limitation, the Debtors, the Liquidating Trustee, and Liquidating Trust Beneficiaries) for all United States federal income tax purposes.

(ii)     Allocations of Liquidating Trust taxable income among the Liquidating Trust beneficiaries shall be determined by reference to the manner in which an amount of cash representing such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value) to the holders of the Liquidating Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust. Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets. The tax book value of the Liquidating Trust Assets for purpose of this paragraph shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(iii)    Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee shall (A) timely elect to treat any Liquidating Trust Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, and (B) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including the Liquidating Trustee, the Debtors, and the Liquidating Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(iv)     The Liquidating Trustee shall be responsible for payment, out of the Liquidating Trust Assets, of any Taxes imposed on the trust or its assets, including the Liquidating Trust Claims Reserve. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Liquidating Trust Claims Reserve is insufficient to pay the portion of any such Taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such Taxes shall be (A) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (B) to the extent such Disputed Claims have

subsequently been resolved, deducted from any amounts otherwise distributable by the Liquidating Trustee as a result of the resolution of such Disputed Claims.

(i)     The Consolidated Debtors Liquidating Trustee shall have full and exclusive authority and responsibility with respect to all Tax Refunds to the same extent as if the Consolidated Debtors Liquidating Trustee were, as applicable, the Consolidated Debtors, Consolidated Holdco, debtors, or debtors-in-possession, including the filing of tax returns (including amended tax returns), or requests for refunds for one or more of the Debtors. Without limiting the foregoing, each of the Debtors shall execute, on or prior to the Effective Date, a power of attorney authorizing the Consolidated Debtors Liquidating Trustee to correspond with any tax authority on behalf of such Debtor and to sign, collect, negotiate, settle, and administer the Tax Refunds, tax payments and tax returns. The Consolidated Debtors (and the Consolidated Debtors Liquidating Trustee, as assignee) shall be entitled to the amount of the Tax Refunds. For the avoidance of doubt, Consolidated Holdco hereby waives and relinquishes any right or interest to the Tax Refunds and the Tax Refunds shall be and is hereby deemed assets and property of the Consolidated Debtors.

9.7.    Limitation of Liability for Liquidating Trustee. Upon the Effective Date and execution of the Liquidating Trust Agreement, the Liquidating Trustee as trustee of the Liquidating Trust, and not personally, shall be vested in all right, title and interest in all Liquidating Trust Assets, and all rights to enforce orders of the Bankruptcy Court entered in this Bankruptcy Proceeding. The Liquidating Trustee shall liquidate the Liquidating Trust Assets and distribute the proceeds thereof in accordance with this Plan and the Liquidating Trust Agreement.

9.8.    Transferability. The Debtors shall cause the interests in the Liquidating Trust to be non-transferrable and any such transfer shall be disregarded by the applicable Liquidating Trustee, except with respect to a transfer by will or under laws of descent and distribution; provided, however, such transfer will not be effective until and unless the Liquidating Trustee receives written notice of such transfer under the law of descent and distribution.

9.9.    The Liquidating Trust Advisory Board.

(a)     The Liquidating Trust Advisory Boards shall be comprised of up to three (3) members selected by the Creditors' Committee, be reasonably acceptable to the Consolidated Debtors and the REIT and, in the case of the Consolidated Holdco Liquidating Trust Advisory Board, be reasonably acceptable to Wells Fargo, as indenture trustee under the Trust Preferred Indenture; provided, however, that none of the Lone Star Entities or their affiliates, officers, directors or employees shall serve on either of the Liquidating Trust Advisory Boards. Written notice of the identities of such members shall be filed with the Bankruptcy Court by the Plan Supplement Filing Date. The Liquidating Trust Advisory Board shall adopt such by-laws as it may deem appropriate. In the event written notice is not filed prior to the Plan Supplement Filing Date, there will be no Liquidating Trust Advisory Board, and compliance with the reporting, consulting and consent requirements under the Plan shall not be required and such terms shall be removed from the Consolidated Debtors Trust Agreement. The Liquidating Trustee shall consult regularly with the Liquidating Trust Advisory Board when carrying out the

purpose and intent of the Liquidating Trust. Members of the Liquidating Trust Advisory Board shall be entitled to reimbursement of the reasonable and necessary expenses incurred by them in carrying out the purpose of the Liquidating Trust Advisory Board. Reimbursement of the reasonable and necessary expenses of the members of the Liquidating Trust Advisory Board shall be payable by the Liquidating Trust.

(b) The Liquidating Trust Advisory Board shall advise and approve the material actions of the Liquidating Trustee and have the right and duties as more particularly set forth in the Liquidating Trust Agreements, including, but not limited to, (a) authorize the Liquidating Trustee to commence, continue to prosecute or abandon any Causes of Action; (b) approve the settlement or compromise of any Cause of Action if the amount sought to be recovered in the complaint or other pleadings or documents initiating, evidencing, or stating such Cause of Action exceeds $1,000,000; (c) approve the sale, assignment, or other conveyance or abandonment of any Trust Asset for an amount exceeding $1,000,000 or an asset that has a value in excess of $1,000,000; (d) approve the allowance of any Disputed Claim, if the asserted amount of such claim exceeds $250,000; (e) with respect to the Consolidated Debtors Liquidating Trust, consult upon and approve all matters concerning the Tax Refunds, and (f) review, contest, or challenge to fees and expenses of the Liquidating Trustee and its professionals.

(c) In the case of an inability or unwillingness of any member of the Liquidating Trust Advisory Board to serve, such member shall be replaced by designation of the remaining members of the Liquidating Trust Advisory Board. If the Liquidating Trust Advisory Board has only one member and any position on the Liquidating Trust Advisory Board remains vacant for more than thirty (30) days, such vacancy shall be filled within fifteen (15) days thereafter by the designation of the Liquidating Trustee without the requirement of a vote by the other members of the Liquidating Trust Advisory Board.

(d) Upon the certification by the Liquidating Trustee that all Liquidating Trust Assets have been distributed, abandoned or otherwise disposed of, the members of the Liquidating Trust Advisory Board shall resign their positions, whereupon they shall be discharged from further duties and responsibilities.

(e) The Liquidating Trust Advisory Board, in its discretion, may remove the Liquidating Trustee by a majority vote. In the event the requisite approval is not obtained, the Liquidating Trustee may be removed by the Bankruptcy Court for cause shown. In the event of the resignation or removal of the Liquidating Trustee, the Liquidating Trust Advisory Board shall, by majority vote, designate a person to serve as successor Liquidating Trustee. In the event the Liquidating trust Advisory Board does not designate a person to serve as successor Liquidating Trustee, the Bankruptcy Court shall make such selection.

(f) Notwithstanding anything to the contrary in this Plan, neither the Liquidating Trust Advisory Board nor any of its members, designees, or any duly designated agent or representative of any such party shall be liable for the act, default or misconduct of any other member of the Liquidating Trust Advisory Board, nor shall any member be liable for anything other than such member's own gross negligence or willful misconduct. The Liquidating Trust Advisory Board may, in connection with the performance of its duties, and in its sole and absolute discretion, consult with its counsel, accountants or other professionals, and shall not be

liable for anything done or omitted or suffered to be done in accordance with such advice or opinions. If the Liquidating Trust Advisory Board determines not to consult with its counsel, accountants or other professionals, that fact alone shall not be deemed to impose any liability on the Liquidating Trust Advisory Board, or its members and/or designees.

(g)     To the extent the Liquidating Trust Advisory Board adopts by-laws, no provisions of such by-laws shall supersede any express provision of the Plan.

9.10.   <u>Final Administration of Liquidating Trusts</u>.   Upon full administration of the Assets vested in the Liquidating Trust, and the satisfaction as far as possible of all remaining liabilities of the Liquidating Trust, in accordance with the Plan, the Liquidating Trustee, shall: (i) terminate the Liquidating Trust, by filing written notice of termination with the Bankruptcy Court and providing such notice to the Beneficiaries and the United States Trustee; (ii) as soon as practicable after termination of the Liquidating Trust, provide to the United States Trustee, and file with the Bankruptcy Court, a final account and report of Liquidating Trust administration; and (iii) thereupon be approved as the Disbursing Agent and distribute the Residual Assets and be forever discharged of and released from all power, duties and responsibilities under the Liquidating Trust Agreement and the Plan.   Every effort shall be made to effectuate such termination no later than the time reasonably necessary to accomplish the Liquidating Trust's purpose of liquidating the Trust Assets and distributing the proceeds thereof to the Beneficiaries in accordance with the Liquidating Trust Agreement and the Plan, and in no event shall the Liquidating Trust continue for more than five (5) years after the Effective Date without further order of the Bankruptcy Court.

## 10.     <u>MEANS OF IMPLEMENTING THE PLAN</u>

10.1.   <u>Rules of Construction</u>.   Except where specifically provided otherwise, the terms of this Article 10 shall apply to both the Consolidated Debtors Liquidating Trust and the Consolidated Holdco Liquidating Trust and  shall be construed according to the understanding that these trusts are receiving parallel treatment.  Thus, for example, where Article 10.10 states, "all fees payable to the United States Trustee shall be paid as and when due by the Liquidating Trustee, which payments shall be considered a reasonable expense of the Liquidating Trust.," this provision of the Plan should be interpreted as if it states both (a) "all fees payable to the United States Trustee shall be paid as and when due by the Consolidated Holdco Liquidating Trustee, which payments shall be considered a reasonable expense of the Consolidated Holdco Liquidating Trust," and (b) "all fees payable to the United States Trustee shall be paid as and when due by the Consolidated Debtors Liquidating Trustee, which payments shall be considered a reasonable expense of the Consolidated Debtors Liquidating Trust."

10.2.   <u>Substantive Consolidation of Consolidated Debtors Estates</u>.  Upon the Effective Date, the Estates of the Consolidated Debtors shall be deemed substantively consolidated for purposes of administration, as well as distribution to Creditors and Interest holders under the Plan.

10.3.   <u>Substantive Consolidation of Consolidated Holdco Estates</u>.  Upon the Effective Date, the Estates of Accredited Home Lenders Holding Company and Vendor Management

Services shall be deemed substantively consolidated for purposes of administration, as well as distribution to Creditors and Interests Holders under the Plan.

10.4.   Lone Star Settlement Payment. Prior to or on the Effective Date, in the event that the Plan Support Agreement and Term Sheet is approved, the Lone Star Settlement Entities shall cause the Lone Star Settlement Payment to be delivered to the Consolidated Debtors. The Consolidated Debtors shall first use the Lone Star Settlement Payment to make the Effective Date Distribution to Holders of Allowed Class 6 C Convenience Claims, and then shall use the remaining Lone Star Settlement Payment to provide Holders of Allowed Class 3 C Claims with their Pro Rata Share of the remaining Lone Star Settlement Payment, and then shall transfer the remainder of the Lone Star Settlement Payment to the Consolidated Debtors Liquidating Trustee. The Consolidated Debtors Liquidating Trustee shall hold the remaining Lone Star Settlement Payment in a segregated account in trust for the benefit of the remaining Holders of Class 3 C and Class 6 C Claims. The Consolidated Debtors Liquidating Trustee shall use the remaining Lone Star Settlement Payment to fund Subsequent Distributions, in the same manner as set forth in § 9.6(e) of this Plan, to Holders of Allowed Class 6 C and Allowed Class 3 C Claims, with Holders of Allowed Class 3 C claims continuing to receive their Pro Rata Share of the remaining Lone Star Settlement Payment. When the remaining Lone Star Settlement Payment is equal to or less than $200,000, it shall be transferred to the Consolidated Debtors Liquidating Trust and deemed a Consolidated Debtors Liquidating Trust Asset.

10.5.   Effective Date Distribution. Upon the Effective Date, or as soon thereafter as practicable, the Debtors shall make the Effective Date Distribution.

10.6.   Transfer Assets to Consolidated Holdco Liquidating Trust. Upon the Effective Date, (a) the Canadian Equity shall be transferred to the Consolidated Holdco Liquidating Trust (b) all Vendor Cash will be transferred to the Consolidated Holdco Liquidating Trust, (c) all of the Consolidated Holdco's rights in the D&O Policies and the proceeds thereof shall be transferred to the Consolidated Holdco Liquidating Trust, (d) the Consolidated Debtors' rights in the D&O Policies and the proceeds thereof are to be transferred to the Consolidated Holdco Liquidating Trust, and (e) REIT shall transfer (i) its direct and personal and derivative claims against the REIT Directors and Officers and (ii) its interest in the D&O Policies, subject to the provisions of Sec. 8.2(c) of the Plan.

10.7.   Transfer of Assets to Consolidated Debtors Liquidating Trust. Upon the Effective Date and thereafter, (a) any Tax Refunds received by the Debtors, any rights to receive any Tax Refunds, whether contingent, disputed, or unliquidated, and any proceeds of any Tax Refunds, shall be vested in the Consolidated Debtors Liquidating Trust and shall be paid to the Consolidated Debtors Liquidating Trust, (b) the Trust Preferred Common Securities shall be transferred by Consolidated Holdco to the Consolidated Debtors Liquidating Trust; and (c) all rights and interests in the Deferred Compensation Settlement shall be transferred to the Consolidated Debtors Liquidating Trust.

10.8.   REIT Adversary Settlement. The Plan is deemed to be a motion pursuant to Sections 363 and 1123 of the Bankruptcy Code and Fed. R. Bankr. P. 9019 to authorize a settlement between the Committee, the Debtors and the REIT resolving the REIT Adversary as more particularly described in the Plan Support Agreement and Term Sheet. The Confirmation

Order shall include approval of the settlement of the REIT Adversary, and, upon the Effective Date, the REIT Adversary shall be resolved and the REIT shall have as Allowed Claims: (1) an Allowed Unsecured Claim against the Consolidated Debtors in the amount of $37.5 Million, which Claim shall be included in and receive the same treatment as Class 3 C; (2) an Allowed subordinated Unsecured Claim against the Consolidated Debtors in the amount of $15 Million, which Claim shall be included in and receive the same treatment as Class 7 C; and (3) an Allowed Unsecured Claim against Consolidated Holdco in the amount of $20 Million, which Claim shall be included in and receive the same treatment as Class 5 H. To the extent the claims of the REIT against the Debtors are not otherwise allowed under this Plan, such claims are disallowed and released.

10.9. <u>Abandonment of REIT Equity</u>. On the Effective Date, Consolidated Holdco shall, pursuant to § 554 of the Bankruptcy Code, abandon all equity interests in the REIT.

10.10. <u>Payment of Fees to United States Trustee</u>. On and after the Effective Date, all fees payable to the United States Trustee shall be paid as and when due by the Liquidating Trustee, which payments shall be considered a reasonable expense of the Liquidating Trust.

10.11. <u>Debtors' Continued Cooperation</u>. On or after the Effective Date, the Debtors shall provide such reasonable cooperation to effectuate the provisions of the Plan the Liquidating Trustee might reasonably request, including, but not limited to, executing such documents as might be reasonably requested to carry out the terms of the Plan.

10.12. <u>Debtors' Continued Existence</u>. From and after the Effective Date, the Debtors shall remain in existence for the sole purpose of winding up the Debtors' businesses and transferring the Assets to the applicable Liquidating Trust. Upon the completion of such liquidation and the entry of the Final Decree, the Liquidating Trustee may file a certificate of dissolution as to each of the Debtors. The Liquidating Trustee shall not be compelled to dissolve any Debtor if to do so would unduly burden the Liquidating Trust. On the Effective Date, the officers and the directors of the Debtors shall cease to serve and the Liquidating Trustee, as applicable, or their respective designee, shall be deemed the sole director and officer of each Debtor for all purposes.

10.13. <u>Debtors' Books and Records</u>. On the Effective Date, the Debtors' books and records, in any form, including all electronic records, shall be transferred to the respective Liquidating Trust. For the avoidance of doubt, all books and records related to the Tax Refunds shall be transferred to the Consolidated Debtors Liquidating Trustee. Such Liquidating Trustee shall be free, in his or her discretion, to abandon, destroy, or otherwise dispose of those books and records in compliance with applicable non-bankruptcy law, <u>provided, however</u> that, in the Liquidating Trustee's discretion, these books and records may be destroyed or disposed of beginning two (2) years after the Effective Date notwithstanding any applicable laws, rules, or regulations that would have required the Debtors to retain such books and records. While these books and records are retained, each Liquidating Trustee shall take all reasonable steps necessary to comply with requests of the other Liquidating Trustee to share the information contained therein with or provide copies of those books and records to the other Liquidating Trustee, at the expense of the requesting entity.

10.14. Accredited Preferred Securities Trust I Termination. On the Effective Date, except to the extent provided elsewhere in this Plan, all of the agreements and other documents evidencing the claim or right of any Holder against the Debtors pursuant to or related to the Trust Preferred Common Securities, Trust Preferred Guarantee, Trust Preferred Indenture, Trust Preferred Note, Trust Preferred Note Claims, and/or Trust Preferred Securities shall be (i) automatically cancelled, discharged, terminated, and of no further force and effect, and (ii) deemed surrendered without any further act by the Debtors or the Trust Preferred Indenture Trustee under any applicable agreement, law, regulation, order, or rule; provided, however, that the Trust Preferred Common Securities, Trust Preferred Guarantee, Trust Preferred Indenture, Trust Preferred Note, Trust Preferred Note Claims, and Trust Preferred Securities shall continue in effect solely for the purposes of (A) (i) permitting the Trust Preferred Indenture Trustee to make any distributions on account of Allowed Class 7 H Claims pursuant to this Plan and perform such other necessary administrative functions with respect thereto, (ii) permitting the Trust Preferred Indenture Trustee to receive any payments it is entitled to under the Trust Preferred Indenture and exercise any rights it is entitled to exercise under the Trust Preferred Indenture; and (B) permitting Kodiak CDO I Ltd., Kodiak CDO II Ltd., and the Trust Preferred Indenture Trustee (i) to continue to participate in the prosecution, mediation, or settlement of the Trust Preferred Adversary Proceeding, or to appeal any order or decision arising from the Trust Preferred Adversary Proceeding, and (ii) to bring any other action, suit, or proceeding against the Lone Star Entities or any other persons or entities (other than the Debtors) relating to, arising from, or in connection with the Trust Preferred Common Securities, Trust Preferred Guarantee, Trust Preferred Indenture, Trust Preferred Note, Trust Preferred Note Claims, and/or Trust Preferred Securities, and to participate in the prosecution, mediation, and/or settlement of such action, suit, or proceeding, or to appeal any order or decision in such action, suit, or proceeding, provided that such action is not a Consolidated Holdco Asset or Consolidated Debtors Asset.

10.15. Employee Agreements. On or before the Plan Supplement Filing Date, the Debtors will negotiate employment or consulting contracts with any current employees necessary to wind down the Debtors' Estates, such contracts to be reasonably acceptable to the Committee. On the Effective Date, the Debtors' remaining employees will receive a payment equal to five (5) months salary, which payment shall be in satisfaction of any prior arrangements, agreement or employment policies with the Debtors.

10.16. Closing of Debtors' Cases

(a)     Consolidated Holdco Estates.

After the Consolidated Holdco Estate has been fully administered, the Consolidated Holdco Liquidating Trustee shall file the final account and report with the Bankruptcy Court. At such time, if the Consolidated Debtors Liquidating Trustee has already filed a final account and report with the Bankruptcy Court, the Consolidated Holdco Liquidating Trustee shall move for the Bankruptcy Court to enter a Final Decree closing the Bankruptcy Proceeding pursuant to § 350 of the Bankruptcy Code and Bankruptcy Rule 3022.

(b)     Consolidated Debtors Estates.

After the Consolidated Debtors' Estates have been fully administered, the Consolidated Debtors Liquidating Trustee shall file the final account and report with the Bankruptcy Court. At such time, if the Consolidated Holdco Liquidating Trustee has already filed a final account and report with the Bankruptcy Court, the Consolidated Debtors Liquidating Trustee shall move for the Bankruptcy Court to enter a Final Decree closing the Bankruptcy Proceeding pursuant to § 350 of the Bankruptcy Code and Bankruptcy Rule 3022.

10.17. <u>Distribution of Property Under this Plan</u>.

The following procedures set forth in this Plan apply to distributions made pursuant to this Plan by Consolidated Holdco, the Consolidated Debtors or the Liquidating Trustees. As set forth in the Plan, the Debtors or the Liquidating Trustee shall make all distributions under this Plan. To the extent required by applicable law, distributions that are cash shall be in compliance with all tax withholding and reporting requirements imposed by any governmental unit, and all distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Debtors or the Liquidating Trustee may withhold the entire cash distribution due to any holder of an Allowed Claim or Allowed Interest until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit.

(a)    <u>Manner of Cash Payments Under this Plan</u>.

Cash payments to domestic persons holding Allowed Claims or Allowed Interests will be tendered in United States dollars and will be made by checks drawn on a United States domestic bank or by wire transfer from a United States domestic bank. Any domestic person holding a Claim or Interest that wishes to receive a Cash payment by wire transfer shall provide wire instructions to the Debtors or the Liquidating Trustee. In any such case, the Debtors or the Liquidating Trustee shall make the Cash payment(s) by wire transfer in accordance with the wire instructions, provided that the costs of such wire transfer shall be deducted from such entity's distribution. Payments made to foreign creditors holding Allowed Claims or Allowed Interests may be paid or caused to be paid, at the option of the Debtors or the Liquidating Trustee, as applicable, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

(b)    No <i>De Minimis</i> Distributions.

Notwithstanding anything to the contrary in this Plan, no cash payment of less than $50 will be made to any person. No consideration will be provided in lieu of the <i>de minimis</i> distributions that are not made under this Section 10.14(b), and the Debtors or the respective Liquidating Trustee shall be authorized to remit such amounts to a charitable organization, which is a tax exempt organization under section 501(c)(3) of the Internal Revenue Code.

(c)    <u>Allowance of Claims and Interests</u>.

(i)    Objections to Claims

Except as otherwise provided under the Plan, the Liquidating Trustee shall file objections to Claims or Interests within one hundred eighty (180) days of the Effective

Date. The Liquidating Trustee may obtain an extension of this date by filing a motion in the Bankruptcy Court, based upon a showing of "cause." Once a Claim or Interest becomes an Allowed Claim or Interest, it will receive the treatment afforded by this Plan.

(ii)     Disallowance of Claims.

All Claims held by persons against whom the Debtors (including, without limitation, its successors and assigns) have asserted an Avoidance Action shall be deemed disallowed pursuant to § 502(d) of the Bankruptcy Code, and holders of such Claims may not vote to accept or reject this Plan, both consequences to be in effect until such time as such causes of action against that entity have been settled or resolved by a Final Order and all sums due to the related Debtor(s) by that entity, if any, are turned over to Debtor(s) or, after the Effective Date, the Liquidating Trustee(s).

(iii)     Allowance of Claims and Interests.

Except as expressly provided in this Plan, no Claim or Interest shall be deemed Allowed by virtue of this Plan or entry of the Confirmation Order, unless and until such Claim or Interest is deemed Allowed under the Bankruptcy Code or the Bankruptcy Court enters a Final Order in the Case allowing such Claim or Interest.

(d)     Distributions to Holders as of the Distribution Record Date.

At the close of business on the Distribution Record Date, the claims register shall be closed, and there shall be no further changes in the record holder of any Claim or Interest. The Debtors or the Liquidating Trustee or any other party responsible for making distributions under this Plan shall have no obligation to recognize any transfer of any Claim or Interest occurring after the Distribution Record Date except as otherwise provided under the Plan; and shall instead be authorized and entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the claims register and stock transfer books as of the close of business on the Distribution Record Date.

(e)     Deemed Distributions to Subordinated Creditors.

Wherever this Plan effectuates contractual subordination rights by requiring distributions that would be made to subordinated creditors to be distributed to other creditors, including but not limited to the provisions in Sections 4.4 and 4.7 of this Plan, those distributions shall be deemed to have been made to the subordinated creditors and then transferred by those subordinated creditors to the creditors receiving those distributions pursuant to this Plan.

(f)     Delivery of Distributions and Undeliverable/Unclaimed Distributions.

(i)     Delivery of Distributions in General.

The Debtors or the Liquidating Trustee shall make distributions to each holder of an Allowed Claim by mail as follows: (a) at the address set forth on the proof of claim filed by such holder of an Allowed Claim; (b) at the address set forth in any written notice of address change delivered to the Debtors or the Liquidating Trustee after the date

of any related proof of claim; and (c) at the address reflected in the Schedules if no proof of claim is filed and the Debtors or the Liquidating Trustee has not received a written notice of a change of address.

The Debtors or the Liquidating Trustee may withhold the entire distribution due to any holder of an Allowed Claim or Allowed Interest until such time as the holder provides the Debtors or the Liquidating Trustee with the information necessary to make a distribution to such holder in accordance with this Plan and applicable law, and Holders of Allowed Claims or Allowed Interests who do not provide such information may be barred from participating in distributions under the Plan.

      (ii)     Undeliverable and Unclaimed Distributions.

If the distribution to the Holder of any Allowed Claim or Allowed Interest is returned as undeliverable, no further distribution shall be made to such Holder unless and until the Liquidating Trustee is notified in writing of such Holder's then current address. Insofar as a distribution is returned to the Liquidating Trustee as undeliverable, the Liquidating Trustee shall remit the undeliverable distribution back to the account established by the Liquidating Trustee as soon as is practicable. Subject to the other provisions of this Plan, undeliverable distributions shall remain in the possession of the Liquidating Trustee pursuant to this Section until such time as a distribution becomes deliverable. All undeliverable Cash distributions will be held in unsegregated, interest-bearing bank accounts for the benefit of the entities entitled to the distributions. These entities will be entitled to any interest actually earned on account of the undeliverable distributions. The bank account will be maintained in the name of the Liquidating Trustee, but it will be accounted for separately.

Any holder of an Allowed Claim or Allowed Interest who does not assert a claim in writing for any undeliverable distribution within one (1) year after such distribution was first made shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any distributions under this Plan, or from asserting a Claim against or Interest in the Debtors, the Estate, or their respective property, and the Claim or Interest giving rise to the undeliverable distribution will be barred.

Any undeliverable distributions that are not claimed under this Section will be transferred to the account maintained by the Liquidating Trustee to be paid or caused to be paid to the other holders of Allowed Claims or Allowed Interests.

## 11.    CONDITIONS PRECEDENT TO EFFECTIVE DATE OF PLAN

11.1.   Conditions Precedent to Effective Date of Plan. The occurrence of the Effective Date and the substantial consummation of the Plan are subject to the satisfaction of the following conditions precedent:

      (a)     The receipt by the Consolidated Debtors of the Lone Star Settlement Payment;

      (b)     Assignment of the REIT Claims to the Consolidated Holdco Liquidating Trust;

(c)     The Confirmation Order shall be entered by the Court;

(d)     The Confirmation Order shall be in form and substance reasonably acceptable to the Debtors, the Creditors Committee, the REIT, and the Lone Star Entities;

(d)     The Plan Support and Term Sheet shall not have terminated by its terms;

(e)     The Debtors shall have sufficient cash and assets to permit compliance with the terms and conditions of the Plan, including, projected fees and expenses; and

(f)     The Liquidating Trusts are created pursuant to the terms of the Plan once the Bankruptcy Court has approved the indemnity provisions and appointed the Liquidating Trustees and approved the Liquidating Trust Agreements in form and substance acceptable to the Creditors Committee.

11.2.    Waiver of Conditions Precedent.    To the extent practicable and legally permissible, each of the conditions, other than 11.1(a), (b), (c), and (d) may be waived, in whole or in part, by the Debtors, subject to approval of the Creditors Committee and the Lone Star Entities.

11.3.    Nonoccurrence of Conditions to Consummation.    If each of the conditions to the occurrence of the Effective Date has not been satisfied or duly and properly waived on or before the first Business Day that is one hundred, eighty (180) days after the Confirmation Date, or such later date as agreed to by the Debtors and the Creditors Committee, the Confirmation Order shall be deemed vacated and the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute a waiver or release of any Claims.

## 12.    MISCELLANEOUS PROVISIONS

12.1.    No Discharge of Debtors.    Pursuant to § 1141(d)(3) of the Bankruptcy Code, confirmation of this Plan will not discharge the Debtors.  Other than as set forth in Article 12.3 below, no non-Debtors shall receive a discharge under the Plan or the Confirmation Order.

12.2.    **Post-Confirmation Injunction.    From and after the Confirmation Date, and as provided for by the Confirmation Order, there shall be in place with regard to the Liquidating Trust, the Assets, and any Claims, the Injunction, which shall have the same extent and with the same effect as the stay imposed by § 362 of the Bankruptcy Code, as modified by orders entered by the Bankruptcy Court in this Bankruptcy Proceeding.  The Injunction will remain in effect until the Bankruptcy Proceeding is closed pursuant to § 350 of the Bankruptcy Code except as otherwise expressly provided herein.  Except as provided elsewhere in this Plan, all Holders of Claims or Interests shall be precluded and enjoined by the Injunction from asserting any Claim against the Debtors, the Consolidated Debtors Liquidating Trust, the Consolidated Debtors Liquidating Trustee, the Consolidated Holdco Liquidating Trust, the Consolidated Holdco Liquidating Trustee, and their respective agents, successors, and assigns, and also from asserting any other and further Claim based on any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, against the Debtors, the Consolidated Debtors Liquidating Trust, the Consolidated Debtors Liquidating Trustee, the**

Consolidated Holdco Liquidating Trust, and the Consolidated Holdco Liquidating Trustee, as representatives of the Estate, as well as their successors or their respective agents, successors, and assigns, whether or not the holder filed a proof of claim. Nothing herein shall prohibit action against the Debtors and only the Debtors and their assets after dissolution of the Injunction.

12.3. <u>Exculpation</u>. Neither the Debtors nor their officers, directors, managers, employees or professionals, or the Creditors Committee and its professionals and advisors and members in their capacity as members of the Creditors Committee and their respective professionals and advisors, the Consolidated Debtors Liquidating Trust, the Consolidated Debtors Liquidating Trustee, the Consolidated Holdco Liquidating Trust, nor the Consolidated Holdco Liquidating Trustee will have or incur any liability to any holder of a Claim or Interest or any other entity for any act or omission in connection with, or arising out of, the Bankruptcy Proceeding or the cases, including but not limited to the formulation, preparation, dissemination, approval, confirmation, execution, administration, or consummation of the Plan Support Agreement and Term Sheet, the Plan or the Disclosure Statement, the solicitation of votes for or confirmation of the Plan, or implementation, consummation, or administration of the Plan or the property to be distributed under the Plan, or any compromises and settlements under the Plan, except for liability arising from conduct constituting willful misconduct or gross negligence pursuant to a Final Order. The foregoing parties will be entitled to rely upon the advice of counsel in all respects regarding their duties and responsibilities under the Plan.

12.4. <u>Permissible Continuation of Actions</u>. Notwithstanding the rest of this Plan, the Injunction imposed herein shall not apply to prevent the commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtors or any real property in which the Debtors may have an interest; <u>provided</u>, however, that any order entered or judgment, fine, sanction, penalty, declaration, determination, or monetary award assessed against the Debtors in such an action proceeding may not be enforced against the Debtors, the Consolidated Debtors Liquidating Trust, the Consolidated Debtors Liquidating Trustee, the Consolidated Holdco Liquidating Trust, the Consolidated Holdco Liquidating Trustee, and their respective agents, successors, and assigns, that such an award or determination shall not give rise to an Allowed Claim, and that any judgment, fine, sanction, penalty, declaration, determination, award, or other action which affects property of the Debtors, the Consolidated Debtors Liquidating Trust, the Consolidated Debtors Liquidating Trustee, the Consolidated Holdco Liquidating Trust, or the Consolidated Holdco Liquidating Trustee, creates personal liability for the agents, successors, and assigns of the Debtors, or creates personal liability for the Consolidated Debtors Liquidating Trust, the Consolidated Debtors Liquidating Trustee, the Consolidated Holdco Liquidating Trust, the Consolidated Holdco Liquidating Trustee, and their respective agents, successors, and assigns, shall be void. Nothing herein shall prevent the Court from modifying the Injunction at the request of any party, upon notice and a hearing.

12.5. <u>Trust Preferred Adversary Proceeding</u>. Notwithstanding anything in this Plan to the contrary and except as provided in Section 8.2 of this Plan, nothing herein shall impair, waive, extinguish or otherwise impact the claims and causes of action asserted in the Trust Preferred Adversary Proceeding

12.6.    Vesting of Assets.

(a)    Consolidated Debtors.

Except as otherwise provided in this Plan, the Consolidated Debtors Liquidating Trustee shall be vested, as of the Effective Date, with all of the Consolidated Debtors Liquidating Trust Assets Property free and clear of all claims, liens, encumbrances, charges, and other interests of holders of Claims against, or Interests in, the Debtors and their Property.

(b)    Consolidated Holdco.

Except as otherwise provided in this Plan, the Consolidated Holdco Liquidating Trustee shall be vested, as of the Effective Date, with all of the Consolidated Holdco Liquidating Trust Assets free and clear of all claims, liens, encumbrances, charges, and other interests of Holders of Claims against, or Interests in, the Debtors and their Property.

12.7.    Unclaimed Property.    Notwithstanding any local, state, federal, or other laws or regulations regarding unclaimed property or escheatment of property, all funds or other property possessed by the Debtors on the Effective that is unclaimed, subject to escheatment, or potentially subject to escheatment shall be treated as Assets of such Debtors under this Plan, and shall accordingly be transferred to, vested with, and become the property of the applicable Liquidating Trustee to be held and distributed pursuant to the terms of this Plan free and clear of all such laws or regulations, and free and clear of any other claims, liens, encumbrances, charges, and other interests in such property.

12.8.    Reasonable Efforts to Collect Tax Refunds.    The Debtors, Consolidated Holdco, the Creditors Committee, the Consolidated Holdco Liquidating Trust, the Lone Star Entities, the REIT, and the REIT Committee shall take such reasonable steps as may be requested by the Consolidated Debtors (or the Consolidated Debtors' Liquidating Trust or Trustee) to cooperate with and assist the Consolidated Debtors in obtaining the Tax Refunds; provided, however, that none of such parties shall be obligated to incur any material liability or unreimbursed cost in connection with such assistance. The Consolidated Debtors shall take reasonable steps to collect and maximize the amount of the Tax Refunds and, if necessary, direct all taxing authorities to pay the refunds to the Consolidated Debtors Liquidating Trust. Should Consolidated Holdco, the Consolidated Holdco Liquidating Trust, or any successor of Consolidated Holdco receive the Tax Refunds, Consolidated Holdco or such successor shall immediately deposit or remit such Tax Refunds to the Consolidated Debtors Liquidating Trust.

12.9.    Privileges.    All Privileges shall be transferred, assigned and delivered to the Liquidating Trusts, without waiver or release, and shall vest with the Liquidating Trustee. The Liquidating Trustee shall hold and be the beneficiary of all Privileges and entitled to assert all Privileges. No Privilege shall be waived by disclosures to the Liquidating Trustees of the Debtors' documents, information or communications subject to attorney-client privileges, work product protections or immunities or protections from disclosure jointly held by the Debtors and the Creditors Committee.

12.10. <u>Preservation of All Rights of Action Not Expressly Settled or Released</u>. Unless a claim against a Creditor or other Entity or Cause of Action is expressly waived, relinquished, released, compromised or settled in this Plan, or any Final Order, the Debtors expressly reserve such claim or Cause of Action for later enforcement by the Liquidating Trusts (including, without limitation, claims and Causes of Action set forth in the Plan Supplement or not specifically identified or which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances which may change or be different from those which the Debtors no believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the confirmation or consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, expect where such claims or Causes of Action have been expressly released in this Plan or other Final Order. In addition, the Liquidating Trusts expressly reserve the right to pursue or adopt any claim, crossclaim or counterclaims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any person or entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, subject to the provisions of this Plan or any Final Order.

12.11. <u>Waiver of Taxes</u>. The making or delivery of an instrument of transfer under this Plan, including, but not limited to, the issuance, transfer or exchange of any security under this Plan, may not be taxed under any law imposing a stamp or similar tax.

12.12. <u>Plan Governs</u>. To the extent that the terms of this Plan are inconsistent with the terms of any agreement or instrument concerning any Claim, any Interest or any other matter, the terms of this Plan shall control.

12.13. <u>Business Days</u>. If any payment is due or any action is required to be taken under this Plan on a day that is a Saturday, Sunday or legal holiday under the laws of the United States of America or the State of Delaware then such payment shall be due and any action shall be required to be taken on the next business day.

12.14. <u>Dissolution of Creditors Committee</u>. On the fifth (5th) Business Date following the Effective Date, and provided the Liquidating Trusts have become effective as provided under the Plan, the Creditors' Committee shall be dissolved and the Creditors Committee and its members shall be released and discharged from the rights and duties arising from or related to the Case and the retention or employment of the Creditors Committee professionals shall terminate, except with respect to final applications for professionals' compensation, provided that the Creditors' Committee shall continue for the sole purpose of reviewing and taking any appropriate action (including, without limitation, filing objections thereto) in connection with Professional Fee Claims. The professionals retained by the Creditors' Committee and the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered or expenses incurred after the fifth (5th) Business Day following the Effective Date, except for (i) services rendered and expenses incurred in connection with any applications by such professionals or Creditors' Committee members for allowance of compensation and reimbursement of expenses pending on the Effective Date or timely Filed after the Effective Date as provided in this Plan, as approved by the Court, (ii) services rendered and expenses incurred

as requested by the Creditors' Committee in connection with Professional Fee Claims and (iii) services rendered or expenses incurred with respect to implementation or enforcement of the Plan. Notwithstanding the foregoing, the Creditors Committee may, at its own discretion, continue or resume its duties arising from or related to any pending litigation, contested matter, adversary proceeding or appeal to which it is a party and, in such a case, the Liquidating Trustee shall compensate the post-Effective Date fees and expenses of the Creditors Committee's professionals.

12.15. <u>Evidence</u>. In the event this Plan shall not take effect for whatever reason, nothing here shall constitute an admission or denial with respect to whether any of the Claims or Interests held by the Debtors, Creditors or holders of Interests are (a) entitled to allowance or disallowance, (b) secured or unsecured, (c) entitled to priority treatment under the Bankruptcy Code, (d) liable to subordination, or (e) liable for any claims or causes of action, including but not limited to claims under § 506, 510, 522, 542, 543, 544, 545, 547, 548, 549 and/or 550 of the Bankruptcy Code.

12.16. <u>Taxpayer Identification</u>. Each Claim Holder shall be required, before any distribution is made to such Holder, to return to the applicable Liquidating Trustee or Debtors an executed IRS W-9 forms and such other appropriate taxpayer identification information necessary to allow the applicable Liquidating Trustee or Debtors to report all required tax information under applicable law on behalf of the applicable Liquidating Trust or Debtors. If a Claim Holder fails to return to the applicable Liquidating Trustee or Debtors any requested taxpayer identification information within sixty (60) days after a request for this information, this failure shall be deemed a waiver of all claims against the applicable Debtors and Liquidating Trusts, including the right to any and all distributions, and the funds that would otherwise have been distributed to such Claim Holder shall revert to the applicable Liquidating Trusts to be distributed to other Claim Holders who have provided the requested taxpayer identification information. The Claim Holder shall be responsible for the payment of taxes in connection with any distributions received from the Debtors or the Liquidating Trusts.

12.17. <u>Forfeiture of Payment</u>. The Holder of a Claim or any other entity entitled to be paid under this Plan who has not claimed such Claim Holder's payment within ninety (90) days of the disbursement or attempted disbursement of such funds under this Plan shall be deemed to have forfeited such Claim Holder's right to receive such payment pursuant to the Plan. A Claim Holder shall be deemed to have failed to claim a payment if (a) a check to such Claim Holder is returned as undeliverable without a proper forwarding address, (b) such Claim Holder's check has not been cashed within ninety (90) days of the date such instrument was mailed, or (c) a check to such Claim Holder could not be mailed or delivered because of the absence of a proper address to which to mail or deliver such check. Any such unclaimed payment shall be deemed to be forfeited and, such funds will be returned to the applicable Liquidating Trust Account and distributed in accordance with the Plan.

12.18. <u>Bar Date</u>. The deadline for filing with the Bankruptcy Court any and all Claims against the Debtor, other than Administrative Claims and Claims arising from the assumption or rejection of any executory contract or unexpired lease pursuant to this Plan, was October 6, 2009. Any such Claim that was not filed prior to that time, except as otherwise set forth in the Plan, is

forever barred and shall be conclusively deemed discharged and disallowed for purposes of voting on this Plan or receiving any distributions hereunder.

12.19. <u>Exemption from Securities Laws</u>. To the maximum extent provided by § 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance under the Plan of the beneficial interests in the Liquidating Trusts will be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder.

12.20. <u>Deemed Consent</u>. By submitting a Ballot or receiving a Distribution under or any benefit pursuant to the Plan and not electing to withhold consent as provided under the Plan prior to the Confirmation Date, each Holder of a Claim or Interest shall be deemed to have specifically consented to the terms of the Plan, including the releases and treatment contained herein.

12.21. <u>Governing Law</u>. Expect to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent any document entered into in connection with the Plan so provides, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of Delaware, without giving effect to the principles of conflicts of law.

12.22. <u>Notice</u>. Any notice required under this Plan shall be given to:

To the Debtors:

> Meade A. Monger
> AlixPartners
> 2101 Cedar Springs Rd., Suite 1100
> Dallas, TX 75201
> Telephone: 214-647-7500
> Facsimile: 214-647-7501
> Attn:  Meade A. Monger (mmonger@alixpartners.com)

With a copy to:

> Hunton & Williams LLP
> 1445 Ross Ave., Suit 3700
> Dallas, TX 75202
> Telephone: 214-979-3000
> Facsimile: 214-468-3599
> Attn:  Gregory G. Hesse (ghesse@hunton.com)
>
> -and-
>
> Pachulski Stang Ziehl & Jones LLP
> 919 North Market Street, 17th Floor
> P.O. Box 8705
> Wilmington, DE  19899-8705 (Courier 19801)

Telephone:                          (302)                    652-4100
Facsimile:  (302) 652-4400
Attn:   Kathleen P. Makowski (kmakowski@pszjlaw.com)

To the Creditors' Committee:

Arent Fox LLP
1675 Broadway
New York, NY 10019
Telephone: 212-484-3900
Facsimile: 212-484-3990
Attn:   Andrew I. Silfen (silfen.andrew@arentfox.com)
         Jeffrey N. Rothleder (rothleder.jeffrey@arentfox.com)

-and-

Elliott                                                     Greenleaf
1105            Market           St.,            Suite           1700
Wilmington,               DE                                     19801
Telephone:                          (302)                    384-9400
Facsimile:  (302) 384-9399
Attn:   Rafael X. Zahralddin-Aravena (rxza@elliottgreenleaf.com)

To the Lone Star Entities:

Vinson & Elkins LLP
Josiah M. Daniel, III
2001 Ross Ave., Suite 3700
Dallas, TX 75201
Telephone: 214-220-7718
Facsimile: 214-999-7718
Attn:   Josiah M. Daniel, III (jdaniel@velaw.com)

-and-

Young, Conaway, Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone: 302-571-6600
Facsimile: 302-576-3401
Attn:   John T. Dorsey (jdorsey@ycst.com)

## 13.   <u>MODIFICATION OF THE PLAN</u>

13.1.   <u>Pre-Confirmation Modification</u>.  At any time before the Confirmation Date, the
Plan or Plan Supplement may be modified by the Debtors, subject to the consent of the Creditors
Committee and the Lone Star Entities, which, to the extent such modifications do not adversely

affect the rights, treatment, benefits or obligations of the respective parties or constituencies, shall not be unreasonably withheld, upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of § 1122 & 1123 of the Bankruptcy Code. In the event that there is a modification of the Plan, then the Plan as modified shall become the Plan.

13.2. <u>Pre-Consummation Modifications</u>. At any time after the Confirmation Date, but before substantial consummation of the Plan, the Plan or Plan Supplement may be modified by the Debtors, subject to the consent of the Creditors Committee and the Lone Star Entities, which, to the extent such modifications do not adversely affect the rights, treatment, benefits or obligations of the respective parties or constituencies, shall not be unreasonably withheld, upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of § 1122 & 1123 of the Bankruptcy Code. The Plan, as modified under this section, becomes a Plan only if the Court, after notice and hearing, confirms such Plan, as modified, under § 1129 of the Bankruptcy Code.

13.3. <u>Non-Material Modifications</u>. At any time after the Confirmation Date, the applicable Debtors may, without the approval of the Court, remedy any defect or omission, or reconcile any such inconsistencies in the Plan or Plan Supplement or in the Confirmation Order, as such matters may be necessary to carry out the purposes, intent, and effect of this Plan, provided that they do not materially or adversely affect the interests of creditors or other entities, subject to the terms of the Lone Star Settlement and the Plan Support and Term Sheet and upon consultation with the Creditors Committee.

## 14. RETENTION OF JURISDICTION

14.1 Notwithstanding confirmation of this Plan or the Effective Date having occurred, the Bankruptcy Court, unless it otherwise provides in the order confirming this Plan, shall retain jurisdiction to enforce the provisions, purposes and intent of this Plan, until the entry of the Final Decree, including, without limitation, jurisdiction with respect to the following matters:

(a) To determine the classification, allowance or disallowance of all Claims or Interests, including, without limitation, Claims and objections relating to the assumption or rejection of executory contracts or unexpired leases pursuant to this Plan, and to hear and determine any and all objections to such Claims or Interests including, without limitation, Claims and objections relating to the assumption of executory contracts or unexpired leases pursuant to this Plan;

(b) To enable the Liquidating Trustees to commence, prosecute, settle, compromise, or abandon any and all claims or Causes of Action of the Debtors;

(c) To adjudicate all Claims to a security or ownership interest in any Property of the Debtors or in any proceeds thereof;

(d) To liquidate damages or estimate Claims in connection with any Disputed Claims or contingent or unliquidated Claims;

(e)     To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, consummation, or performance of this Plan including, but not limited to, any matters related to the Plan Support Agreement and Term Sheet, as well as all controversies, suits, and disputes that may be pending before the Bankruptcy Court on or before the Confirmation Date or may be brought thereafter;

(f)     To determine and allow all expenses of administration of the Bankruptcy Proceeding, including, without limitation, all requests for Professional Fees for periods prior to the Effective Date;

(g)     To recover all Assets and Property of the Debtors, wherever located;

(h)     To interpret, construe or enforce this Plan, the Confirmation Order or any order previously entered by the Bankruptcy Court in this case;

(i)     To hear, determine and enforce any and all Causes of Action, to set aside liens or encumbrances, to recover any transfers, assets or damages to which the Estate may be entitled, to avoid or recover any preferences, fraudulent conveyances, or obligations, or other obligations or transfers voidable or subject to avoidance under applicable provisions of the Bankruptcy Code or other federal, state, or local law, or to subordinate or disallow, in whole or in part, any Claim, under applicable provisions of the Bankruptcy Code or other federal, state, or local law;

(j)     To consider and determine any proposed modification or amendment of the Plan;

(k)     To make any determination necessary or appropriate under §505 of the Bankruptcy Code or other determination relating to taxes paid or payable by the Debtors or the Liquidating Trusts, Tax Refunds due to the Debtors or the Liquidating Trusts, and tax returns filed or to be filed by the Debtors or the Liquidating Trusts, for all periods through the end of the fiscal year in which the Effective Date occurs;

(l)     To implement the provisions of this Plan and enter any orders in aid of its implementation or in furtherance of its purposes and intent;

(m)     To make such orders as the Bankruptcy Court deems necessary or appropriate to carry out the provisions, purposes, or intent of this Plan;

(n)     To adjudicate any dispute with respect to any obligations of the Liquidating Trusts, including any fees requested by professionals employed by the Liquidating Trusts; and

(o)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order.

14.2     If the Bankruptcy Court abstains from exercising, declines to exercise, or is otherwise without jurisdiction over any matter arising out of the Cases, the provisions of the Plan shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## 15. __REQUEST FOR CONFIRMATION__

15.1    The Debtors request confirmation of the Plan under §1129(a) or 1129(b) of the Bankruptcy Code, as appropriate.

Dated: October 29, 2010

Wilmington, Delaware

Respectfully submitted,

__ACCREDITED HOME LENDERS HOLDING COMPANY AND VENDOR MANAGEMENT SERVICES, LLC__

By: _____
Meade A. Monger
Their: Chief Restructuring Officer

__ACCREDITED HOME LENDERS, INC., INZURA INSURANCE SERVICES, INC., and WINDSOR MANAGEMENT CO.__

By: _____
Meade A. Monger
Their: Chief Restructuring Officer