# EXHIBIT A

**SETTLEMENT BETWEEN ACCREDITED HOME LENDERS HOLDING CO., ET AL.
("DEBTORS"), LONE STAR, DEBTORS, THE REIT, THE REIT COMMITTEE AND
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS ("COMMITTEE")
RELATING TO A CONSENSUAL PLAN OF LIQUDATION**

September 2, 2010

This Term Sheet summarizes certain of the critical terms, elements and conditions of a plan to be proposed by the Debtors and supported by the Committee and LSF MRA LLC, LSF5 Mortgage Line LLC, Caliber Funding LLC, Vericrest Financial Inc., LSF5 Accredited Investments LLC, LSF5 Accredited Holdings, LLC, Lone Star Funds V (U.S.) L.P., Hudson Americas LLC, Hudson Advisors LLC, Lone Star U.S. Acquisitions LLC, (collectively, the "Lone Star Entities"), the REIT[1], and the Ad Hoc Committee of REIT Preferred Holders (the "REIT Committee")[2]. Notwithstanding the foregoing, this Term Sheet remains subject to, among other things, (a) resolution of any terms or items set forth herein that are bracketed or indicated as "to be provided" or "to be determined"; (b) resolution of technical and non-substantive terms not specifically set forth herein; and (c) acceptable definitive documentation of all matters contemplated herein, including a revised Plan and any agreements contemplated under the Plan or in re Term Sheet. The Debtors, Lone Star Entities, the Committee, the REIT, and the REIT Committee have agreed to work together in good faith to attempt to complete negotiations of the terms of the Plan and to resolve other outstanding issues. No vote in favor of any plan is being solicited by or agreed to by this Term Sheet, with such votes to be solicited in connection with a Disclosure Statement approved by the Bankruptcy Court and in accordance with Section 1125 of the Bankruptcy Code.

The Term Sheet is provided in connection with ongoing discussions between the Lone Star Entities, the Debtors, the Committee, the REIT and the REIT Committee, following the Settlement Agreement proposed by the Lone Star Entities to the Debtors on May 13, 2010, which was subsequently embodied in a draft plan of liquidation (the "Plan") provided by the Debtors to the parties.

This Term Sheet reflects the understanding that certain of the Debtors are entitled to a tax refund in an amount not less than $54 million and the REIT has always maintained its REIT status under the tax code and the foregoing discussions and is provided on a confidential basis as part of a comprehensive compromise, each element of which is consideration for the other elements and an integral aspect of the proposed terms of a plan of liquidation and settlement of certain claims and disputes. Nothing contained herein shall obligate the REIT to maintain its REIT status under the tax code following the Effective Date of the Plan. This term sheet is proffered in the nature of a settlement proposal in furtherance of settlement discussions and is intended to be entitled to protection from any use or disclosure to any party or person pursuant to Federal Rule

---

[1] Capitalized terms used but not defined herein shall have the meaning set forth in the Plan.
[2] The members of the REIT Committee are set forth on Schedule A attached hereto.

of Evidence 408 and any other applicable statutes or doctrines protecting the use or disclosure of confidential information and information exchanged in the context of settlement discussions.

The terms of the settlement proposal are as follows:

1.     The REIT and REIT Committee will support the Plan and take such action as is reasonably necessary to support confirmation and consummation of the Plan and, subject to Paragraph 3 below, will receive for purposes of the Plan (x) an allowed general unsecured claim against the Consolidated Debtors of $37.5 million; (y) an allowed subordinated unsecured claim against the Consolidated Debtors, subordinated to the claims of general unsecured creditors of the Consolidated Debtors in the amount of $15 million (the "Junior Claim"); and (z) an allowed unsecured claim against Accredited Home Lenders Holding Company ("Holdco") of $20 million. Any subordination rights the REIT may have will be waived under the terms of the Plan (excluding any benefits the REIT may receive as a result of Lone Star's agreement to subordinate its claim against Holdco as provided in Paragraph 2 below). The REIT will not receive any distribution on account of the Junior Claim until allowed unsecured claims against the Consolidated Debtors are paid in full (without any post-petition or post-emergence interest or costs). All agreements, contracts and obligations between the REIT and the Debtors will be terminated or rejected pursuant to the Plan without further liability on the part of the Debtors unless otherwise agreed by the Debtors, the REIT and the Committee. The Plan shall provide for a separate class of claims against Holdco comprised of the guaranty claims of the preferred shareholders of the REIT (the "Preferred Holder's Subordinated Guaranty Claims") which class shall be subordinate to unsecured claims against Holdco to the extent those claims are contractually senior. Unless otherwise agreed to by the Committee and REIT Committee, at the Effective Date (i) the Class of Preferred Holder's Subordinated Guaranty Claims (the "Preferred Holders Subordinated Class") shall not receive beneficial interests in the Holdco Liquidating Trust or be deemed to be beneficial holders of the Holdco Liquidating Trust until all beneficial holders with allowed senior unsecured claims against the Holdco Liquidating Trust have been paid in full prior to the termination of the Holdco Liquidating Trust, (ii) the Preferred Holders Subordinated Class shall not be entitled to any reports or notices from the Holdco Liquidating Trustee until they receive beneficial interests in the Holdco Liquidating Trust and are beneficial holders of the Holdco Liquidating Trust, and (iii) the liquidating trust agreement shall be drafted in a manner that avoids any material adverse consequences to the liquidating trust under applicable securities and tax laws. In the event the senior unsecured creditors who are beneficial holders of the Holdco Liquidating Trust are not paid in full or the Holdco Liquidating Trust is terminated prior to the senior unsecured creditors who are beneficial holders are paid in full, then the Preferred Holders Subordinated Class shall not receive any distribution under the Plan. If the senior unsecured creditors who are beneficial holders of the Holdco Liquidating Trust are paid in full prior to the termination of the Holdco Liquidating Trust, then Holders of Preferred Holder's Subordinated Guaranty Claims shall receive beneficial interests in the Holdco Liquidating Trust as provided under the Plan (unless such claims are disallowed pursuant to a Final Order).

2.     Provided that less than 25% in amount of the general unsecured claims against the Consolidated Debtors eligible to vote on the Plan (other than claims of the Lone Star Releasees) elect to withhold releases of direct and personal claims (as set forth in Paragraph 3 below) (the "Release Requirement"), under the Plan:

(x) one or more of the Lone Star Entities (other than LSF MRA, LLC) shall make a payment to the Consolidated Debtors on or before the Effective Date of the Plan in the amount of $15.6 million (the "Plan Payment") to be made available to those unsecured creditors (including the REIT) who grant releases as set forth in Paragraph 1;

(y) the Lone Star Entities shall be deemed to have waived, for purposes of the Plan and receiving distributions thereunder, all claims against the Consolidated Debtors or their respective properties, including those asserted in their Proofs of Claim; and

(z) the Lone Star Entities shall be deemed to have subordinated, for purposes of the Plan and receiving distributions thereunder, all claims asserted against Holdco in favor of those holders of allowed nonpriority unsecured claims that do not vote to reject the Plan, to the extent such claims of the Lone Star Entities are not disallowed, so that any distributions to the Lone Star Entities on account of claims against Holdco will first be distributed to such non-rejecting claims until such claims are paid in full (which distributions shall not be subject to disgorgement); provided, however, that subordination of the claims of the Lone Star Entities against Holdco as set forth herein shall not in any way affect or be deemed to affect the availability of such claims for use as setoff or any other defenses of the Lone Star Entities to or against claims against the Lone Star Entities asserted by Holdco (including by Holdco as assignee of the REIT Releasors (see Paragraph 3(b) below)), and further provided, that claims, if any, that may be brought by the Holdco estate or Holdco Liquidating Trustee against any of the Lone Star Entities must be brought within 120 days of the Effective Date unless further extended either by the written consent of the Lone Star Entities or by order of the court not to exceed an additional 120 days; and still further provided, that in the event of any Holdco distributions to non-rejecting creditors on account of the claims of the Lone Star Entities, the claims of the Lone Star Entities shall remain available for use by the Lone Star Entities for set off or as defenses, to the extent applicable, as if such distributions had not been made. The Lone Star Entities agree to toll, and to use reasonable efforts to cause the REIT, Holdco, and Canada directors and officers that are also employed by or are agents of the Lone Star Entities to toll, any applicable statute of limitations with respect to any Holdco claims set forth in this Paragraph 2(z) above to the end of such 120 day period (and the additional 120 days, if applicable).

3.      Upon the Effective Date of the Plan, the Lone Star Entities and current and former affiliates and all their respective officers, agents, employees, directors, attorneys, representatives, insurers, predecessors, successors and assigns (other than any Debtor, the REIT or a non-debtor subsidiary of any Debtor) but excluding[3] any attorneys, accountants, auditors, investment bankers, financial or other advisors, consultants or agents that provided professional, accounting, audit or other services to the REIT, Debtors and non-debtor subsidiaries of any of the Debtors, and further excluding any insurers who provided insurance to the Debtors or any non-debtor subsidiary of the Debtors including the REIT (collectively the "Lone Star Releasees", with the current and former Officers and Directors of the Debtors set forth on Schedule B attached hereto) shall receive a full release of all claims from the estates of the Consolidated Debtors and of all direct and personal claims relating to the Consolidated Debtors and their businesses from

---

[3] For the sake of clarity: this exclusion does not preclude or limit any usual and customary exculpation provision that is included within the Plan as confirmed.

individual creditors of the Consolidated Debtors (other than from the REIT) that elect to receive a distribution from the Plan Payment by not electing to withhold releases of direct and personal claims as of the Effective Date. The direct and personal claims of the REIT Releasors shall be treated as follows:

(a)     The REIT and the members of the REIT Committee shall release the Lone Star Releasees and the current and former officers and directors (including trustees) of the Debtors but not the current and former directors and officers (including trustees) with respect to the REIT or the Lone Star Releasees in their capacities as directors or officers (or trustees) of the REIT (the "REIT Ds and Os") of all direct and personal claims including but not limited to any derivative claims held by the REIT that are assertable on behalf of the REIT Preferred Holders.

(b)     The REIT and the members of the REIT Committee shall assign to Holdco (or the Holdco Liquidating Trust) all direct and personal claims with respect to the REIT (including but not limited to any derivative claims held by the REIT that are assertable on behalf of the REIT Preferred Holders) and of such REIT Committee member against the REIT Ds and Os; provided, however, that the REIT, the members of the REIT Committee and Holdco (and the Holdco Liquidating Trust and Holdco Liquidating Trustee), as assignee, shall be permitted to satisfy any judgment, settlement or other obligation due on account of any such claims against (i) the personal property or individual assets of any individual REIT Ds and Os up to an aggregate of $5,000,000 for all such claims and (ii) from the proceeds of any insurance policies that provide or are otherwise legally or contractually obligated to provide coverage with respect to the claims against the REIT Ds and Os or from any insurance company that has issued such policy ((i) and (ii) collectively, the "Litigation Recovery Sources"). The rights of any insured or actual or prospective claimant against the policies shall not be altered by the terms of these provisions. For the avoidance of doubt, the rights of the REIT, the members of the REIT Committee (and Holdco as assignee of the REIT claims) and the REIT Ds and Os against any of the policies are fully preserved.]

The foregoing notwithstanding, no party shall be released of any of its obligations under this Settlement Term Sheet or to perform its obligations under the Plan set forth herein.

4.     In order to resolve inter-estate issues, disputed or challenged debtor assets shall be contributed or allocated as follows:

(a)     Canadian Cash and Residual Value or equity in Canadian subsidiaries to Holdco, the Holdco Liquidating Trust or other liquidation vehicle, consistent with tax considerations and efficiency.

(b)     Cash held by Vendor Management Services LLC ("Vendor") to Holdco or the Holdco Liquidating Trust.

(c)     Trust Common Securities to Accredited Home Lenders, Inc. ("Inc.") or Consolidated Debtors Liquidating Trust.

(d)     Ownership of equity interest in REIT [to be discussed].

(e)     Proceeds of Tax Refunds to Inc. or the Consolidated Debtors Liquidating Trust

(f)     First American Trust, FSB Deferred Compensation settlement payment to Inc.

(g)     All of the Debtors' rights under the Debtors' and, to the extent applicable, the REIT's D&O or other Policies and the proceeds thereof shall be transferred to Holdco Liquidating Trust (except as otherwise specified hereunder) and Holdco shall have a priority as against any of the Consolidated Debtors with respect to any recovery under any such policy.

(h)     Vendor or its assets shall either be merged into Holdco or consolidated with Holdco consistent with tax considerations and efficiency.

(i)     The definition of Consolidated Debtors shall not include Vendor or Vendor's assets.

(j)     Non-Debtor subsidiaries (other than Canadian and REIT subsidiaries) shall be wound down and dissolved prior to Effective Date, subject to tax considerations and efficiency after review by the Debtors and the Committee.

(k)     Canadian subsidiaries shall pay all amounts owing to Consolidated Debtors.

5.      IRS Tax Claim shall be satisfied by the Consolidated Debtors out of Tax Refunds.

6.      The Consolidated Debtors and Consolidated Liquidating or Litigation Trustee shall agree and covenant not to make, assert or pursue any claim or commence any action or litigation against the Lone Star Releasees or the current and former Directors and Officers of the Debtors released as set forth herein or under or against the D&O Policies; provided, however, that any release of current or former Directors and Officers of the Debtors as set forth herein shall also be conditioned on such officer or director granting a full release of claims against the Consolidated Debtors and their respective properties (including all claims under or that could be asserted under filed proofs of claim, which claims shall be deemed expunged and relinquished).

7.      The REIT, the members of the REIT Committee, Holdco and the Holdco Liquidating Trust and Trustee shall agree not to satisfy or attempt to satisfy any judgment, settlement or other obligation due on account of any claims of the REIT or a member of the REIT Commitee against the REIT Ds and Os from any source other than from the Litigation Recovery Sources.

8.      Continuation and/or wind down of the Debtors and their respective non-debtor subsidiaries, and governance and post-emergence structure of the Consolidated Debtors and Holdco to be discussed further between the Debtors and the Parties. After giving effect to the transactions set forth in Paragraph 4 hereof, it is contemplated that all remaining cash, assets, interests and properties, including claims, actions, suits, counterclaims, or cross claims of the Consolidated Debtors and their Estates, whether asserted or unasserted or pending as of the Effective Date, or direct, indirect, derivative or otherwise or known or unknown (other than

claims specifically released pursuant to Paragraphs 3 and 6 hereof) shall be assigned, conveyed and transferred to the Consolidated Liquidating Trust or similar structure or other liquidating vehicle. After giving effect to the transactions set forth in Paragraph 4 hereof, it is further contemplated that all remaining cash, assets, interests, and properties of Holdco shall be assigned, conveyed and transferred to Holdco Liquidating Trust or similar structure or other liquidating vehicle. All claims, actions, suits, counterclaims or cross claims of Holdco, whether asserted or unasserted or pending as of the Effective Date or direct, indirect, derivative or otherwise or known or unknown shall be assigned, conveyed and transferred to Holdco Trust.

9. Mechanics and structure related to debtor common estate claims or settling inter-debtor disputes or issues regarding these claims or rights to be determined.

10. The Consolidated Debtors Liquidating or Litigation Trustee shall be selected by the Committee and be reasonably acceptable to the Debtors and the REIT. The Holdco Liquidating Trustee shall be selected by the Committee and be reasonably acceptable to Wells Fargo Bank and the REIT.

11. The Trust Advisory Boards shall be selected by the Committee, be reasonably acceptable to the REIT and, in the case of the Holdco Advisory Board, also be reasonably acceptable to Wells Fargo, and be authorized to retain professionals (and such professionals shall be reimbursed by the respective trusts). None of the Lone Star Entities or their affiliates, officers, directors or employees shall serve on any of the Trust Advisory Boards or as Trustee.

12. Debtors will negotiate employment or consulting contracts with current employees necessary to wind-down the Debtors' estates, with such contracts to be reasonably acceptable to the Committee.

13. Upon the Effective Date of the Plan contemplated by this Term Sheet, the Debtors' remaining employees will be given a payment equal to three (3) months' salary, which payout shall be in satisfaction of any prior arrangements, agreements or employment policies with the Debtors.

14. The obligations of the Consolidated Debtors to indemnify any person having served as an officer or director of the Consolidated Debtors, to the extent provided in any of the Consolidated Debtors' corporate governance documents or by written or other agreement or applicable law, shall be terminated and extinguished and, to any extent necessary, deemed an executory contract, terminated and rejected under the Plan. This provision does not apply to persons holding postpetition indemnifications from the Debtors that were approved by order of the Court.

15. Each holder of a claim that receives a ballot or a distribution or any other benefit under the Plan shall be deemed to consent to and grant the releases under the Plan as set forth herein unless it timely returns its ballot marked to indicate that it has opted out of the release set forth in the Plan.

16. Contractual, equitable and legal subordination shall not be altered or affected under the Plan except as specifically set forth therein consistent with this Term Sheet and any claims of subordination not specifically implemented or effected pursuant to the Plan shall be irrevocably

terminated and waived; provided, .that any disagreement with the priorities or distributions set forth herein or to the Plan shall be raised prior to and ahead of the Confirmation Hearing.

17.     The Plan Supplement Documents including all agreements, instruments and documents relating to Trusts shall be reasonably acceptable to the Committee and to the Lone Star Entities to the extent relevant to the Lone Star Entities. The Plan Supplement Filing Date shall be filed at least ten (10) days prior to the Voting Deadline.

18.     Consolidated Debtors Convenience Claim shall include creditors electing to reduce and fix their claim at $25,000.

19.     Holders of Lone Star's equity interests in Holdco shall not receive any distribution under the Holdco Plan and such interests shall be extinguished.

20.     Claims of Holdco shall not be affected, limited, or released and shall be specifically preserved.

21.     The claims of REIT Preferred Holders held in their individual capacity and not assertable on their behalf by the REIT shall not be affected, limited or released except as specifically set forth herein.

22.     Direct claims asserted by Wells/Kodiak in the Wells/Kodiak Adversary Proceeding shall not be affected by the Plan except as set forth in Paragraphs 1 and 2.

23.     The Repurchase and Breach Claims Protocol shall be reasonably acceptable to the Committee and approved.

24.     Holdco, the Committee, the Lone Star Entities, the REIT and the REIT Committee shall take such reasonable steps as may be requested by the Debtors (or the Consolidated Debtors Liquidating Trust or Trustee) to cooperate with and assist the Consolidated Debtors' in obtaining the tax refund; provided, however, that none of such parties shall be obligated to incur any material liability or unreimbursed cost in connection with such assistance. The Debtors shall take reasonable steps to collect and maximize the amount of the tax refund and, if necessary, direct all taxing authorities to pay the refunds to the Consolidated Debtors Liquidating Trust. Should Holdco or any successor of Holdco receive the tax refund, Holdco or such successor shall immediately deposit or remit such tax refund to the Consolidated Debtors Liquidating Trust.

25.     The Plan shall not be modified by the Debtors without the consent of the Committee and the Lone Star Entities, which, to the extent such modifications do not adversely effect the rights, treatment, benefits or obligations of the respective parties or constituencies, may not be unreasonably withheld.

26.     The Debtors shall promptly file a plan and disclosure statement to provide for the terms and distributions consistent with the terms of this Term Sheet and use reasonable best efforts to prosecute confirmation and consummation thereof.

27.    Provided this Term Sheet is still in effect and has not been made void as provided hereunder, the Lone Star Entities, the Committee, the REIT, and the REIT Committee will support prosecution, confirmation and consummation of the Plan consistent with the Term Sheet.

28.    None of the Lone Star Releasors shall sell, assign, transfer or pledge their respective claims against the Debtors or any right to vote such claims.

Nothing herein shall be interpreted to conflict with or to restrict the performance of any fiduciary duty of Committee or Committee members or impede or restrict a Committee member, not in its capacity as a member of the Committee but in its individual capacity, objecting to or contesting confirmation of the Plan. In the event the Plan is not filed by September 24, 2010, confirmed by December 30, 2010 or effective by January 15, 2011 (unless extended by written consent of the parties hereto) or the Release Requirement is not satisfied (unless the Release Requirement is waived in writing by the Lone Star Entities), then the settlement and proposal hereunder shall be void and of no effect and all parties hereto shall revert to their prior positions without prejudice.

[Signature pages follow]

Accepted and agreed to this 2nd day of September, 2010.

**DEBTORS**
**ACCREDITED HOME LENDERS HOLDING COMPANY**

By:_____
        Meade A. Monger
        Its: Chief Restructuring Officer

**ACCREDITED HOME LENDERS, INC.,**
**VENDOR MANAGEMENT SERVICES, LLC,**
**INZURA INSURANCE SERVICES, INC., and**
**WINDSOR MANAGEMENT CO.**

By:_____
        Meade A. Monger
        Their: Chief Restructuring Officer

**LONE STAR ENTITIES**

**LSF MRA, LLC**

By: _____
    Sandra Collins
    Vice President


**LSF5 MORTGAGE LINE, LLC**


By: _____
    Name: Stewart L. Motley
    Title:  Vice President

**CALIBER FUNDING LLC**


By: _____
    Name:
    Title:


**VERICREST FINANCIAL, INC.**


By: _____
    Name:
    Title:

**LSF5 ACCREDITED INVESTMENTS, LLC**
**LSF5 ACCREDITED HOLDINGS, LLC**


By: _____
    Name: Marc L. Lipshy
    Title:  Vice President

**LONE STAR ENTITIES**

**LSF MRA, LLC**

By: _____
    Sandra Collins
    Vice President

**LSF5 MORTGAGE LINE, LLC**

By: _____
    Name: Stewart L. Motley
    Title: Vice President

**CALIBER FUNDING LLC**

By: _____
    Name: Missy Hubbell
    Title: Vice President

**VERICREST FINANCIAL, INC.**

By: _____
    Name: Jennifer Lamprecht
    Title: Vice President

**LSF5 ACCREDITED INVESTMENTS, LLC**
**LSF5 ACCREDITED HOLDINGS, LLC**

By: _____
    Name: Marc L. Lipshy
    Title: Vice President

**LONE STAR FUND V (U.S.), L.P.**

By: Lone Star Partners V, L.P., its general partner
    By:    Lone Star Management Co. V, Ltd., its
          general partner

          By:     _____
               Name:  Stewart L. Motley
               Title:   Vice President


**HUDSON AMERICAS LLC**
**HUDSON ADVISORS LLC**
**LONE STAR U.S. ACQUISITIONS, LLC**

By:  _____
     Name:     Steven R. Shearer
     Title:      Senior Vice President

**COMMITTEE**

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS APPOINTED BY THE UNITED STATES TRUSTEE IN THE CHAPTER 11 CASES OF ACCREDITED HOME LENDERS HOLDING COMPANY AND CERTAIN OF ITS AFFILIATES**

By: Arent Fox LLP, its counsel

By: _____
Name:
Title


**REIT**

**ACCREDITED MORTGAGE LOAN REIT TRUST**

By: _____
Name:
Title

**COMMITTEE**

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS APPOINTED BY THE UNITED STATES TRUSTEE IN THE CHAPTER 11 CASES OF ACCREDITED HOME LENDERS HOLDING COMPANY AND CERTAIN OF ITS AFFILIATES**

By: Arent Fox LLP, its counsel

By: _____
Name:
Title


**REIT**

**ACCREDITED MORTGAGE LOAN REIT TRUST**

By: _____
Name:
Title    Thomas J. Sullivan
         Trustee

## THE REIT COMMITTEE

**FOOTPRINT ASSET MANAGEMENT & RESEARCH, INC.,**
*On behalf of itself and various other preferred shareholders*

By: _____
     Name:
     Title

## DUPONT CAPITAL MANAGEMENT
*In its capacity as investment adviser of the DuPont Pension Trust and various other entities*

By: _____
     Name: Ming Shao
     Title    Director of Fixed Income Investments

By: _____
     Name:
     Title

SCOTT J. WEBER

ANTHONY J. SUTTON _____

**THE REIT COMMITTEE**

**FOOTPRINT ASSET MANAGEMENT &
RESEARCH, INC.,**
*On behalf of itself and various other preferred
shareholders*

By: _____
    Name:
    Title

**DUPONT CAPITAL MANAGEMENT**

By: _____
    Name:
    Title

_____
**SCOTT J. WEBER**

_____
**ANTHONY J. SUTTON**

# Members of the REIT Committee

**MEMBERS OF THE AD HOC COMMITTEE OF
PREFERRED SHAREHOLDERS OF ACCREDITED REIT**


**Footprint Asset Management & Research, Inc.,**
*On behalf of itself and various other preferred shareholders*
11422 Miracle Hills Drive, Suite 208
Omaha, NE 68154
<u>Attn</u>: Stephen J. Lococo, President

**Dupont Capital Management**
One Richter Parkway, Suite 3200
Wilmington, DE 19803
<u>Attn</u>: Kris Kowal, Managing Director, Global Fixed Income

**Scott J. Weber**
4009 Overbrook Lane
Houston, TX 77027

**Anthony J. Sutton**
**c/o Blake C. Sutton**
295 E. Evelyn Ave #218
Sunnyvale, CA 94086

### Current and Former Officers and Directors of the Debtors

[to come]

**Accredited Home Lenders Holding Company**

| Name | Position |
| --- | --- |
| A. Jay Meyerson (AHL) | Director |
| Benjamin D. Velvin III (LS) | Director |
| Bowers Espy (AHL) | Director |
| Catharon Miller (LS) | Director |
| Chad Patton (LS) | Director |
| David Osborn (AHL) | Treasurer, Vice President & Ass't Secretary |
| Gary Erickson (AHL) | Director |
| Greg Russell (LS) | Director |
| James A. Konrath (AHL) | Chief Executive Officer |
| James Berglund (AHL) | Director |
| James Konrath (AHL) | CEO & Director |
| James Moran (LS) | Director |
| James Ransom (AHL) | Controller, Vice President  & Ass't Secretary |
| Jody Gunderson (AHL) | Director |
| John Buchanan (AHL) | Chief Financial Officer |
| Joseph Lydon (AHL) | President & Chief Operations Officer, Director |
| Joshua Weiss (AHL) | Secondary Markets Counsel, Vice President |
| Karen Shields (AHL) | President, COO and Secretary |
| Leigh Rea (LS) | Director |
| Len Allen (LS) | Director |
| Marc Lipshy (LS) | Director |
| Michael Thompson (LS) | Director |
| Mike Prushan (LS) | Director |
| Richard Pratt (AHL) | Director |
| Stephen Wall (AHL) | Director |
| Stuart Marvin (AHL) | Executive Vice President & Secretary |
| Greg Strong (LS) | Executive Treasurer |
| James Ransom (AHL) | Controller, Vice President & Assistant Secretary |
| Jeff Walton (AHL) | President & CEO |
| Meade Monger (APS) | Chief Restructuring Officer |
| Michael Murphy (APS) | Chief Administrative Officer |

**Accredited Home Lenders, Inc.**

| Name | Position | x |
|------|----------|---|
| A. Jay Meyerson (AHL) | Director | |
| Bowers Espy (AHL) | Director | |
| David Osborn (AHL) | Treasurer, Vice President & Ass't Secretary | |
| Chad Patton (LS) | Director | |
| Gary Erickson (AHL) | Director | |
| Greg Strong (LS) | Executive Treasurer | |
| James A. Konrath (AHL) | Chief Executive Officer | |
| James Berglund (AHL) | Director | |
| James Konrath (AHL) | Director | |
| James Moran (LS) | CEO | |
| James Ransom (AHL) | Controller, Vice President & Ass't Secretary | |
| Jeffrey Walton (LS) | Director | |
| Jody Gunderson (AHL) | Director | |
| John Buchanan (AHL) | Chief Financial Officer | |
| John M. Robbins, Jr. (AHL) | Director | |
| Joseph Lydon (AHL) | President & Chief Operations Officer | |
| Joshua Weiss (AHL) | Secondary Markets Counsel, Vice President | |
| Karen Shields (AHL) | President, COO and Secretary | |
| Marc Lipshy (LS) | Director | |
| Mike Prushan (LS) | Director | |
| Ray W. McKewon (AHL) | Executive Vice President | |
| Richard Pratt (AHL) | Director | |
| Stephen Wall (AHL) | Director | |
| Stuart Marvin (AHL) | Executive Vice President & Secretary | |
| Stuart Marvin (AHL) | Director | |
| Meade Monger (APS) | Chief Restructuring Officer | |
| Michael Murphy (APS) | Chief Administrative Officer | |

**Inzura Insurance Services**

| Name | Position |
|---|---|
| David Osborn (AHL) | Treasurer, Vice President & Ass't Secretary |
| James Ransom (AHL) | Controller, Vice President & Ass't Secretary |
| Jeffrey N. Walton (AHL) | Director and Officer |
| Joseph J. Lydon (AHL) | Director and Officer |
| Joshua Weiss (AHL) | Secondary Markets Counsel, Vice President |
| Karen Shields (AHL) | President, COO and Secretary |
| Stuart D. Marvin (AHL) | Officer |
| Meade Monger (APS) | Chief Restructuring Officer |
| Michael Murphy (APS) | Chief Administrative Officer |

**Vendor Management Services, LLC**

| Name | Position |
|---|---|
| David Osborn (AHL) | Treasurer, Vice President & Ass't Secretary |
| James Ransom (AHL) | Controller, Vice President & Ass't Secretary |
| James W. Potter (AHL) | Director & Officer |
| Joshua Weiss (AHL) | Secondary Markets Counsel, Vice President |
| Karen Shields (AHL) | President, COO and Secretary |
| Meade Monger (APS) | Chief Restructuring Officer |
| Michael Murphy (APS) | Chief Administrative Officer |

**Windsor Management Co.**

| Name | Position |
| --- | --- |
| David Osborn (AHL) | Treasurer, Vice President & Ass't Secretary |
| James Ransom (AHL) | Controller, Vice President & Ass't Secretary |
| Jeffrey N. Walton (AHL) | Director and Officer |
| Joseph J. Lydon (AHL) | Officer |
| Joshua Weiss (AHL) | Secondary Markets Counsel, Vice President |
| Karen Shields (AHL) | President, COO and Secretary |
| Marc Lipshy (AHL) | Director |
| Mike Prushan (AHL) | Director |
| Stuart D. Marvin (AHL) | Director & Officer |
| Chad Patton (LS) | Director |
| Meade Monger (APS) | Chief Restructuring Officer |
| Michael Murphy (APS) | Chief Administrative Officer |

**REIT**

| Name | Position | x |
|------|----------|---|
| A. Jay Meyerson (AHL) | Trustee | |
| Benjamin D. Velvin III (LS) | Trustee | |
| Bowers Espy (AHL) | Trustee | |
| Catharon Miller (LS) | Trustee | |
| Chad Patton (LS) | Trustee | |
| Gary Erickson (AHL) | Trustee | |
| Greg Russell (LS) | Trustee | |
| Greg Strong (LS) | Executive Treasurer & Trustee | |
| James A. Konrath (AHL) | Chief Executive Officer | |
| James Berglund (AHL) | Trustee | |
| James Konrath (AHL) | Trustee | |
| Jeff Walton (LS) | President/CEO/Secretary | |
| Jeffrey Walton (LS) | Trustee | |
| Jim Moran (LS) | Trustee | |
| Jody Gunderson (AHL) | Trustee | |
| John Buchanan (AHL) | Chief Financial Officer | |
| Joseph Lydon (AHL) | President, Chief Operations Officer & Trustee | |
| Leigh Rea (LS) | Trustee | |
| Len Allen (LS) | Trustee | |
| Marc Lipshy (LS) | Trustee | |
| Michael Thompson (LS) | Trustee | |
| Mike Prushan (LS) | Trustee | |
| Richard Pratt (AHL) | Trustee | |
| Stephen Wall (AHL) | Trustee | |
| Stuart Marvin (AHL) | Executive Vice President, Secretary & Trustee | |
| David Osborn (AHL) | Vice President, Treasurer & Assistant Secretary | |
| Joshua Weiss (AHL) | Counsel, Vice President & Assistant Secretary | |
| Karen Shields (AHL) | President & COO | |
| Meade Monger (APS) | Chief Restructuring Officer | |
| Michael Murphy (APS) | Chief Administrative Officer | |