EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ACCREDITED HOME LENDERS | § | Case No. 09-11516 (MFW) |
| HOLDING CO., et al. | | |
| | § | |
| Debtors.[1] | § | JOINTLY ADMINISTERED |

## DEBTORS' FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

**HUNTON & WILLIAMS LLP**
Gregory G. Hesse
Lynnette R. Warman
Jesse T. Moore
Caroline R. Penninck
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Telephone: (214) 979-3000
Telecopy: (214) 880-0011

ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Accredited Home Lenders Holding Co., a Delaware corporation (9482), Accredited Home Lenders, Inc., a California corporation (6859), Vendor Management Services, LLC d/b/a Inzura Settlement Services, a Pennsylvania limited liability company (8047), Inzura Insurance Services, Inc., a Delaware corporation (7089), and Windsor Management Co., d/b/a AHL Foreclosure Services Co., a California corporation (4056). The address for all Debtors is 9915 Mira Mesa Blvd., Ste. 100, San Diego, CA 92131. The bankruptcy cases for these debtors and debtors-in-possession are jointly administered under the bankruptcy case and style referenced above.

# TABLE OF CONTENTS

1.  DEFINITIONS ........................................................................................................................1
    1.1.  Accredited Preferred Securities Trust I .................................................................1
    1.2.  Administrative Claim ..............................................................................................2
    1.3.  Administrative Claim Bar Date ..............................................................................2
    1.4.  AHL .........................................................................................................................2
    1.5.  AHL Canada ............................................................................................................2
    1.6.  Allowed Administrative Claim ...............................................................................2
    1.7.  Allowed Claim ........................................................................................................2
    1.8.  Allowed Priority Claim ..........................................................................................2
    1.9.  Allowed Priority Tax Claim ...................................................................................2
    1.10.  Allowed Secured Claim ..........................................................................................2
    1.11.  Allowed Unsecured Claim ......................................................................................2
    1.12.  Assets ......................................................................................................................2
    1.13.  Avoidance Actions ..................................................................................................3
    1.14.  Ballot ......................................................................................................................3
    1.15.  Bankruptcy Code ....................................................................................................3
    1.16.  Bankruptcy Court ...................................................................................................3
    1.17.  Bankruptcy Proceeding ..........................................................................................3
    1.18.  Bankruptcy Rules ...................................................................................................3
    1.19.  Bar Date ..................................................................................................................3
    1.20.  Bar Date Order ........................................................................................................3
    1.21.  Canadian Equity ......................................................................................................3
    1.22.  Causes of Action .....................................................................................................3
    1.23.  Claim .......................................................................................................................4
    1.24.  Claim Holder ...........................................................................................................4
    1.25.  Claim Register .........................................................................................................4
    1.26.  Class ........................................................................................................................4
    1.27.  Confirmation Date ..................................................................................................4
    1.28.  Confirmation Order .................................................................................................4
    1.29.  Consolidated Debtors ..............................................................................................4
    1.30.  Consolidated Debtors Assets ..................................................................................4
    1.31.  Consolidated Debtors Convenience Claim ..............................................................4
    1.32.  Consolidated Debtors Convenience Class Election .................................................4
    1.33.  Consolidated Debtors Liquidating Trust .................................................................5
    1.34.  Consolidated Debtors Liquidating Trust Account ...................................................5
    1.35.  Consolidated Debtors Liquidating Trust Advisory Board .......................................5
    1.36.  Consolidated Debtors Liquidating Trust Agreement ...............................................5

1.37. Consolidated Debtors Liquidating Trust Assets .................................................5
1.38. Consolidated Debtors Liquidating Trust Expenses...............................................5
1.39. Consolidated Debtors Liquidating Trust Professionals .........................................5
1.40. Consolidated Debtors Liquidating Trust Reserve.................................................5
1.41. Consolidated Debtors Liquidating Trustee .........................................................6
1.42. Consolidated Holdco.........................................................................................6
1.43. Consolidated Holdco Assets .............................................................................6
1.44. Consolidated Holdco Convenience Claim ..........................................................6
1.45. Consolidated Holdco Convenience Class Election...............................................6
1.46. Consolidated Holdco Liquidating Trust..............................................................6
1.47. Consolidated Holdco Liquidating Trust Account .................................................6
1.48. Consolidated Holdco Liquidating Trust Advisory Board .......................................6
1.49. Consolidated Holdco Liquidating Trust Agreement..............................................7
1.50. Consolidated Holdco Liquidating Trust Assets ....................................................7
1.51. Consolidated Holdco Liquidating Trust Expenses ...............................................7
1.52. Consolidated Holdco Liquidating Trust Professionals ..........................................7
1.53. Consolidated Holdco Liquidating Trust Reserve..................................................7
1.54. Consolidated Holdco Liquidating Trustee ...........................................................7
1.55. Creditor ..........................................................................................................8
1.56. Creditor Release ..............................................................................................8
1.57. Creditors' Committee.......................................................................................8
1.58. Creditors' Committee Counsel ..........................................................................8
1.59. CRO Expenses .................................................................................................8
1.60. Cure Claim .....................................................................................................8
1.61. D&O Policies ..................................................................................................8
1.62. Debtor ............................................................................................................8
1.63. Deferred Compensation Settlement Proceeds......................................................8
1.64. Disbursing Agent .............................................................................................8
1.65. Disclosure Statement .......................................................................................8
1.66. Disclosure Statement Approval Date..................................................................8
1.67. Disputed Claim ...............................................................................................8
1.68. Distribution ....................................................................................................9
1.69. Distribution Date.............................................................................................9
1.70. Distribution Date Balance.................................................................................9
1.71. Distribution Record Date ..................................................................................9
1.72. Effective Date .................................................................................................9
1.73. Effective Date Balance .....................................................................................9
1.74. Effective Date Distribution................................................................................9

1.75. Entity .................................................................................................................9
1.76. Estate .................................................................................................................9
1.77. Final Decree .....................................................................................................9
1.78. Final Distribution ...........................................................................................9
1.79. Final Order .......................................................................................................9
1.80. Finally Determined ......................................................................................10
1.81. Holdco .............................................................................................................10
1.82. Holder ..............................................................................................................10
1.83. Initial Deposit ...............................................................................................10
1.84. Injunction .......................................................................................................10
1.85. Intercompany Claims ..................................................................................10
1.86. Interest ............................................................................................................10
1.87. Interim Distribution ....................................................................................10
1.88. IRS Priority Tax Claims ..............................................................................10
1.89. Lien or Liens ..................................................................................................10
1.90. Liquidating Trust ........................................................................................10
1.91. Liquidating Trustee .....................................................................................10
1.92. Liquidating Trust Advisory Board ...........................................................11
1.93. Liquidating Trust Assets ............................................................................11
1.94. Liquidating Trust Claim Reserve .............................................................11
1.95. Lone Star Causes of Action .......................................................................11
1.96. Lone Star Commencement Deadline ........................................................11
1.97. Lone Star Entities .........................................................................................11
1.98. Lone Star Proofs of Claim ..........................................................................11
1.99. Lone Star Releasees ......................................................................................11
1.100. Lone Star Settlement Payment ...................................................................11
1.101. Net Proceeds ...................................................................................................11
1.102. Non-Debtor Subsidiaries .............................................................................12
1.103. Officer and Director Causes of Action .....................................................12
1.104. Person ...............................................................................................................12
1.105. Petition Date ...................................................................................................12
1.106. Plan ....................................................................................................................12
1.107. Plan Supplement ...........................................................................................12
1.108. Plan Supplement Filing Date ......................................................................12
1.109. Plan Support Agreement and Term Sheet ...............................................12
1.110. Priority Claims ...............................................................................................12
1.111. Priority Tax Claim ........................................................................................12
1.112. Privilege ...........................................................................................................12

74392.000009 EMF_US 29688829v22

1.113. Proceeds ........................................................................................................13
1.114. Professionals ...............................................................................................13
1.115. Professional Fees .........................................................................................13
1.116. Professional Fee Claim Bar Date .................................................................13
1.117. Property .......................................................................................................13
1.118. Pro Rata Share .............................................................................................13
1.119. Receivables ..................................................................................................13
1.120. REIT .............................................................................................................13
1.121. REIT Adversary ...........................................................................................13
1.122. REIT Causes of Action ................................................................................13
1.123. REIT Committee ...........................................................................................13
1.124. REIT Directors and Officers ........................................................................13
1.125. REIT Litigation Recovery Sources ..............................................................13
1.126. REIT Preferred Securities ............................................................................14
1.127. REIT Preferred Security Holder ...................................................................14
1.128. REIT Preferred Holders' Subordinated Guaranty Claims ...........................14
1.129. REIT Releasors ............................................................................................14
1.130. Rejection Claim ............................................................................................14
1.131. Rejection Claim Bar Date ............................................................................14
1.132. Residual Assets ............................................................................................14
1.133. Schedules .....................................................................................................14
1.134. Subordinated Claim .....................................................................................14
1.135. Subsequent Distributions .............................................................................14
1.136. Tax Code ......................................................................................................14
1.137. Tax Refunds .................................................................................................14
1.138. Tolling Agreement .......................................................................................15
1.139. Trust Declaration ..........................................................................................15
1.140. Trust Preferred Adversary Proceeding .........................................................15
1.141. Trust Preferred Common Securities .............................................................15
1.142. Trust Preferred Guarantee ............................................................................15
1.143. Trust Preferred Indenture .............................................................................15
1.144. Trust Preferred Indenture Trustee ................................................................15
1.145. Trust Preferred Note .....................................................................................15
1.146. Trust Preferred Note Claim ..........................................................................15
1.147. Trust Preferred Holders ................................................................................15
1.148. Trust Preferred Securities .............................................................................15
1.149. Vendor ..........................................................................................................16
1.150. Vendor Cash .................................................................................................16

74392.000009 EMF_US 29688829v22

2.    DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS ....................................16
      2.1.   Unclassified Claims:  Administrative Claims and Priority Tax Claims ..............16
      2.2.   Classified Claims of Consolidated Holdco ....................................................16
      2.3.   Classification of Claims against the Consolidated Debtors. ...........................17
      2.4.   Preservation of Subordination Right and Claims of Subordination.....................18
3.    TREATMENT OF UNCLASSIFIED CLAIMS..............................................................18
      3.1.   Administrative Claims ...............................................................................18
      3.2.   Priority Tax Claims....................................................................................19
      3.3.   IRS Priority Tax Claims..............................................................................19
4.    TREATMENT OF CLASSES OF CLAIMS AND INTERESTS UNDER THE
      CONSOLIDATED HOLDCO PLAN...........................................................................19
      4.1.   Class 1 H - Secured Claims .......................................................................19
      4.2.   Class 2 H - Priority Claims, other than Priority Tax Claims .............................20
      4.3.   Class 3 H - General Unsecured Claims against Consolidated Holdco ................20
      4.4.   Class 4 H - Unsecured Claims Against Consolidated Holdco held by LSF-MRA,
             LLC ...........................................................................................................21
      4.5.   Class 5 H - Unsecured Claims Held By the REIT ...........................................22
      4.6.   Class 6 H - Convenience Class Claims.........................................................22
      4.7.   Class 7 H - Claims against Consolidated Holdco relating to Accredited Preferred
             Securities Trust I .......................................................................................23
      4.8.   Class 8 H – REIT Preferred Holders' Subordinated Guaranty Claims.................23
      4.9.   Class 9 H - Subordinated Claims against Consolidated Holdco..........................24
      4.10.  Class 10 H- Interests:  The Class 10 H Claims are impaired...............................24
5.    TREATMENT OF CLASSES OF CLAIMS AND INTERESTS UNDER THE
      CONSOLIDATED DEBTORS PLAN.........................................................................24
      5.1.   Class 1 C - Secured Claims........................................................................24
      5.2.   Class 2 C - Priority Claims, other than Priority Tax Claims .............................25
      5.3.   Class 3 C - General Unsecured Claims against the Consolidated Debtors............25
      5.4.   Class 4 C - General Unsecured Claims against the Consolidated Debtors opting
             out of the Creditor Release ........................................................................26
      5.5.   Class 5 C - Unsecured Claims Against the Consolidated Debtors held by the Lone
             Star Entities..............................................................................................27
      5.6.   Class 6 C - Convenience Class Claims.........................................................27
      5.7.   Class 7 C - Subordinated Claims against the Consolidated Debtors ....................27
      5.8.   Class 8 C - Interests ..................................................................................28
6.    INTERCOMPANY CLAIMS.....................................................................................28
      6.1.   Inter-Debtor Waivers .................................................................................28
      6.2.   Non-Debtor Subsidiary Waivers..................................................................28
      6.3.   Asset Allocation........................................................................................29

7.      EXECUTORY CONTRACTS AND UNEXPIRED LEASES .........................................29
     7.1.    Assumption and Rejection .........................................................................29
     7.2.    Indemnification Agreements .....................................................................29
     7.3.    Claims Relating to Assumption or Rejection............................................29
     7.4.    Insurance Policies ....................................................................................30
8.      LONE STAR SETTLEMENT.........................................................................30
     8.1.    Incorporation of Settlement .....................................................................30
     8.2.    Terms of the Lone Star Settlement ..........................................................30
9.      LIQUIDATING TRUSTS ...............................................................................33
     9.1.    Rules of Construction ...............................................................................33
     9.2.    Appointment of Liquidating Trustee. .......................................................33
     9.3.    Funding of the Consolidated Holdco Liquidating Trust ...........................33
     9.4.    Funding of the Consolidated Debtors Liquidating Trust ..........................33
     9.5.    Transfer of Liquidating Trust Assets to the Liquidating Trust ..................34
     9.6.    The Liquidating Trust. ..............................................................................34
     9.7.    Limitation of Liability for Liquidating Trustee .........................................37
     9.8.    Transferability..........................................................................................37
     9.9.    The Liquidating Trust Advisory Board......................................................37
     9.10.  Final Administration of Liquidating Trusts ...............................................39
10.    MEANS OF IMPLEMENTING THE PLAN ...................................................39
     10.1.  Rules of Construction ...............................................................................39
     10.2.  Substantive Consolidation of Consolidated Debtors Estates .....................39
     10.3.  Substantive Consolidation of Consolidated Holdco Estates......................39
     10.4.  Lone Star Settlement Payment..................................................................40
     10.5.  Effective Date Distribution.......................................................................40
     10.6.  Transfer Assets to Consolidated Holdco Liquidating Trust ......................40
     10.7.  Transfer of Assets to Consolidated Debtors Liquidating Trust .................40
     10.8.  REIT Adversary Settlement.......................................................................40
     10.9.  Abandonment of REIT Equity ...................................................................41
     10.10. Payment of Fees to United States Trustee .................................................41
     10.11. Debtors' Continued Cooperation ..............................................................41
     10.12. Debtors' Continued Existence ...................................................................41
     10.13. Debtors' Books and Records .....................................................................41
     10.14. Accredited Preferred Securities Trust I Termination.................................42
     10.15. Employee Agreements...............................................................................42
     10.16. Closing of Debtors' Cases .........................................................................42
     10.17. Distribution of Property Under this Plan. ..................................................43
11.    CONDITIONS PRECEDENT TO EFFECTIVE DATE OF PLAN ..................45

74392.000009 EMF_US 29688829v22

| | | |
|---|---|---|
| 11.1. | Conditions Precedent to Effective Date of Plan | 45 |
| 11.2. | Waiver of Conditions Precedent | 46 |
| 11.3. | Nonoccurrence of Conditions to Consummation | 46 |
| 12. | MISCELLANEOUS PROVISIONS | 46 |
| 12.1. | No Discharge of Debtors | 46 |
| 12.2. | Post-Confirmation Injunction | 46 |
| 12.3. | Exculpation | 47 |
| 12.4. | Permissible Continuation of Actions | 47 |
| 12.5. | Trust Preferred Adversary Proceeding | 47 |
| 12.6. | Vesting of Assets. | 48 |
| 12.7. | Unclaimed Property | 48 |
| 12.8. | Reasonable Efforts to Collect Tax Refunds | 48 |
| 12.9. | Privileges | 48 |
| 12.10. | Preservation of All Rights of Action Not Expressly Settled or Released | 49 |
| 12.11. | Waiver of Taxes | 49 |
| 12.12. | Plan Governs | 49 |
| 12.13. | Business Days | 49 |
| 12.14. | Dissolution of Creditors Committee | 49 |
| 12.15. | Evidence | 50 |
| 12.16. | Taxpayer Identification | 50 |
| 12.17. | Forfeiture of Payment | 50 |
| 12.18. | Bar Date | 50 |
| 12.19. | Exemption from Securities Laws | 51 |
| 12.20. | Deemed Consent | 51 |
| 12.21. | Governing Law | 51 |
| 12.22. | Notice | 51 |
| 13. | MODIFICATION OF THE PLAN | 52 |
| 13.1. | Pre-Confirmation Modification | 52 |
| 13.2. | Pre-Consummation Modifications | 53 |
| 13.3. | Non-Material Modifications | 53 |
| 14. | RETENTION OF JURISDICTION | 53 |
| 15. | REQUEST FOR CONFIRMATION | 55 |

74392.000009 EMF_US 29688829v22

TO THE HONORABLE MARY F. WALRATH, U.S. BANKRUPTCY JUDGE:

The Debtors and Debtors-in-Possession in the above-captioned Chapter 11 cases (the "Debtors"), hereby propose this Debtors' First Amended Chapter 11 Plan of Liquidation (the "Plan") to creditors and equity holders of the Debtors, pursuant to §1121(a) of the United States Bankruptcy Code.

This Plan is a liquidating plan. It does not contemplate the continuation of the Debtors' collective businesses. The Plan:

> (i)     incorporates and implements the Plan Support Agreement and Term Sheet (defined below);

> (ii)    substantively consolidates the assets and liabilities of Accredited Home Lenders Holding Co. ("Holdco") with those of its wholly owned subsidiary, Vendor Management Services, LLC (collectively referred to herein with Holdco as "Consolidated Holdco");

> (iii)   establishes a liquidating trust for Consolidated Holdco that will acquire the Consolidated Holdco Liquidating Trust Assets (as defined herein), liquidate those assets, and distribute the proceeds of those assets to creditors of Consolidated Holdco pursuant to the terms of this Plan;

> (iv)    substantively consolidates the assets and liabilities of Accredited Home Lenders, Inc., Inzura Insurance Services, Inc. and Windsor Management Co. (collectively referred to herein as the "Consolidated Debtors");

> (v)     establishes a second liquidating trust that will acquire the Consolidated Debtors Liquidating Trust Assets (as defined herein), liquidate those assets, and distribute the proceeds of those assets to the creditors of the Consolidated Debtors pursuant to the terms of this Plan;

> (vi)    resolves the intercompany claims of the Consolidated Debtors and Consolidated Holdco and other inter-Estate and inter-Debtor issues; and

> (vii)   settles all Claims that the Consolidated Debtors may have against Lone Star Entities in exchange for a cash payment from the Lone Star Entities in the amount of $15,600,000 and the subordination and/or waiver of all claims asserted by the Lone Star Entities, which have been filed in the approximate amount of $100,000,000.

## 1.     DEFINITIONS

1.1.    <u>Accredited Preferred Securities Trust I.</u>  The certain trust established pursuant to the Amended and Restated Trust Agreement among Accredited Home Lenders Holding Co., as depositor, Wells Fargo Bank, N.A., as Property Trustee, Wells Fargo Delaware Trust Company, as Delaware Trustee and the administrative trustees named therein dated January 11, 2007.

1.2.  Administrative Claim.  A Claim, including, but not limited to Professional Fee Claims, entitled to payment as an administrative expense as specified in § 503(b) of the Bankruptcy Code that is entitled to priority under § 507(a)(2) of the Bankruptcy Code, which Claim must be filed by the Administrative Claim Bar Date or the Professional Fee Claim Bar Date, as applicable.

1.3.  Administrative Claim Bar Date.  For all Administrative Claims except Professional Fee Claims, the first business day that is thirty (30) days following the Effective Date.

1.4.  AHL.  Accredited Home Lenders, Inc., a California corporation.

1.5.  AHL Canada.  Accredited Home Lenders Canada, Inc.

1.6.  Allowed Administrative Claim.  An Administrative Claim as to which no objection to the allowance thereof has been interposed prior to the forty-fifth (45th) day following the Administrative Claim Bar Date or the Professional Fee Claim Bar Date, as applicable, or as to which an objection has been filed and such Claim has been allowed by Final Order.

1.7.  Allowed Claim.  A Claim (a) with respect to which a proof of claim was timely filed, in the manner prescribed by the Bankruptcy Court, either within the Bar Date or as extended upon motion, or (b) if no proof of claim has been timely filed, listed by any of the Debtors in their Schedules as undisputed, noncontingent, or liquidated; and, in any such case, as to which Claim no objection has been timely interposed, or as to which an objection or request for estimation has been filed and such Claim has been allowed by a Final Order.

1.8.  Allowed Priority Claim.  The portion of an Allowed Claim that is entitled to priority under § 507(a)(3) through 507(a)(7) of the Bankruptcy Code.

1.9.  Allowed Priority Tax Claim.  The portion of an Allowed Claim that is entitled to priority under § 507(a)(8) of the Bankruptcy Code.

1.10.  Allowed Secured Claim.  An Allowed Claim secured by liens, security interests, encumbrances, charges against, or interests in any property in which any of the Debtors have an interest, to the extent of the value (determined in accordance with § 506(a) of the Bankruptcy Code) of the interest of the holder of such Allowed Claim in the Debtors' interest in such property.

1.11.  Allowed Unsecured Claim.  Each Allowed Claim, without interest or costs, that is not an Allowed Secured Claim, an Allowed Administrative Claim, an Allowed Priority Claim, or an Allowed Priority Tax Claim.

1.12.  Assets.  All property that is property of the applicable Debtor and that Debtor's estate under § 541 of the Bankruptcy Code of every kind and character, whether such property is now existing or hereafter arising or acquired, wherever located and whether real, personal, tangible or intangible including, without limitation, all cash, Causes of Action and all proceeds of and recoveries on Causes of Action, all accounts, contract rights, chattel paper, general

intangibles, instruments, securities, furniture, fixtures, machinery, equipment, inventory intellectual property, domain names, and interest in real estate.

1.13. <u>Avoidance Actions</u>. Any and all rights to recover or avoid transfers under Chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, §522, 541, 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code, to recover transfers pursuant to §550 of the Bankruptcy Code, to avoid any lien under §506(d) of the Bankruptcy Code, or otherwise to exercise the avoidance powers provided under the Bankruptcy Code.

1.14. <u>Ballot</u>. The ballot distributed to each eligible Creditor, on which ballot such Creditor may, among other things, vote to accept or reject this Plan, make another election for treatment of such Claim as provided under the Plan, including the Convenience Class Election, and opt out of the Creditor Release.

1.15. <u>Bankruptcy Code</u>. Title 11 of the United States Code, 11 U.S.C. §101 et seq., as amended and in effect as of the Petition Date.

1.16. <u>Bankruptcy Court</u>. The United States Bankruptcy Court for the District of Delaware having jurisdiction of the above-captioned Chapter 11 cases.

1.17. <u>Bankruptcy Proceeding</u>. The Debtors' jointly administered bankruptcy cases, filed under Chapter 11 of the Bankruptcy Code on the Petition Date, pending in the Bankruptcy Court as Accredited Home Lenders Holding Co.

1.18. <u>Bankruptcy Rules</u>. The Federal Rules of Bankruptcy Procedure, as amended and in effect as of the Petition Date.

1.19. <u>Bar Date</u>. October 6, 2009 with respect to all Claims other than (a) Administrative Claims and (b) Claims subject to the Governmental Bar Date (as defined in the Bar Date Order).

1.20. <u>Bar Date Order</u>. That certain order entered by the Bankruptcy Court on July 27, 2009, Docket No. 478, establishing the Bar Date.

1.21. <u>Canadian Equity</u>. All equity interests owned by any of the Debtors in Accredited Home Lenders Canada, Inc.

1.22. <u>Causes of Action</u>. Any and all claims, actions, causes of action, suits, judgments, third-party claims, counterclaims, cross-claims, or other rights of recovery, whether asserted or unasserted or pending as of the Effective Date or direct, indirect, derivative or otherwise, or known or unknown, or asserted or unasserted, that are held by the applicable Debtor or Estate against any person, entity, or property, wherever located, from the beginning of the world to the Effective Date, including Avoidance Actions as well as Officer and Director Causes of Action and claims for malpractice, negligence, breach of contract, fraud, aiding and abetting, inducement as well as claims against attorneys, auditors, investment bankers, financial consultants, agents, or other advisors that provided professional, accounting, audit, or other services to the Debtors and Non-Debtor Subsidiaries (including, without limitation, REIT) prior to the Petition Date.

1.23. <u>Claim</u>. All claims, as defined in § 101(5) of the Bankruptcy Code, against the applicable Debtor, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, including, without limitation, all claims arising from that Debtor's rejection of an executory contract or unexpired lease.

1.24. <u>Claim Holder</u>. Any Entity that holds a Claim against the estates, whether Finally Determined or Disputed.

1.25. <u>Claim Register</u>. The official register of Claims in this Bankruptcy Proceeding.

1.26. <u>Class</u>. A group of Claims or Interests which are substantially similar to each other, as described in Article 2 and 3 hereof.

1.27. <u>Confirmation Date</u>. The date on which the Bankruptcy Court enters an order confirming this Plan.

1.28. <u>Confirmation Order</u>. The order entered by the Bankruptcy Court confirming this Plan, which includes the approval of the settlements set forth in the Plan Support Agreement and Term Sheet.

1.29. <u>Consolidated Debtors</u>. Accredited Home Lenders, Inc., a California corporation, Inzura Insurance Services, Inc., a Delaware corporation, and Windsor Management of Washington, Inc., d/b/a AHL Foreclosure Services Company, a Washington corporation.

1.30. <u>Consolidated Debtors Assets</u>. All Assets of the Consolidated Debtors and the Consolidated Debtors' estates, whether such property is now existing or hereafter arising or acquired and wherever located including, without limitation, the Tax Refunds, all Causes of Action and all proceeds of and recoveries on Causes of Action, all cash, accounts, contract rights, chattel paper, general intangibles, instruments, securities, furniture, fixtures, machinery, equipment, inventory, intellectual property, domain names, and interest in real estate. For the avoidance of any doubt, the Consolidated Debtor Assets shall not include the Canadian Equity, Vendor Cash, the Lone Star Causes of Action, or the REIT Causes of Action.

1.31. <u>Consolidated Debtors Convenience Claim</u>. Any Allowed Unsecured Claim against any of the Consolidated Debtors for which the Claim Holder has properly made the Consolidated Debtors Convenience Class Election on a properly cast Ballot, and any Allowed Unsecured Claim against any of the Consolidated Debtors that has a face amount equal to or less than $25,0000, unless the Holder of such Claim opted for that Claim to be treated as a Class 4 C Claim on a properly cast Ballot.

1.32. <u>Consolidated Debtors Convenience Class Election</u>. The election available to a Claim Holder of one or more Allowed Unsecured Claims against the Consolidated Debtors to opt into Class 6 C, as applicable, and have all of such Holders' Claims treated as a single Consolidated Debtors Convenience Claim; provided, however, that in making such election, the Holder of such unsecured Claim(s) (i) has agreed to reduce the face amount of such Claim(s) for purposes of voting and distributions under this Plan to a single Claim against the Consolidated Debtors in an amount equal to $25,000.00 if the aggregate face amount of such Claim(s) is

greater than $25,000, (ii) has voted all Claims held by such Claim Holder in favor of this Plan, and (iii) has opted for the Creditor Release.

1.33. <u>Consolidated Debtors Liquidating Trust</u>. A trust for the benefit of the Holders of Allowed Claims against the Consolidated Debtors that is to be formed and governed by the Consolidated Debtors Liquidating Trust Agreement.

1.34. <u>Consolidated Debtors Liquidating Trust Account</u>. An account to be established by the Consolidated Debtors Liquidating Trustee, at a depository institution listed as an approved institution of the United States Trustee for the District of Delaware.

1.35. <u>Consolidated Debtors Liquidating Trust Advisory Board</u>. The post-confirmation committee formed on the Effective Date, whose members will be selected by the Creditors Committee and indentified by the Debtors in the Plan Supplement.

1.36. <u>Consolidated Debtors Liquidating Trust Agreement</u>. The certain Consolidated Debtors Liquidating Trust Agreement that is to govern the Consolidated Debtors Liquidating Trust, in substantially the form of such document included in the Plan Supplement, pursuant to which, among other things, the Consolidated Debtors Liquidating Trust Assets shall initially be conveyed to the Consolidated Debtors Liquidating Trust and shall ultimately be distributed pursuant to the terms of this Plan.

1.37. <u>Consolidated Debtors Liquidating Trust Assets</u>. All of the Consolidated Debtors' Assets not transferred on or prior to the Effective Date of the Plan, including, but not limited to, the Proceeds of any Consolidated Debtors Assets, the funds held in the Consolidated Debtors' bank accounts (after the Consolidated Debtors make the Effective Date Distribution), the Tax Refunds, the Trust Preferred Common Securities, the Deferred Compensation Settlement Proceeds, promissory notes, Receivables, all Causes of Action belonging to the Consolidated Debtors, to the extent such Causes of Action have not been previously settled or released pursuant to this Plan, but not including the Lone Star Settlement Payment, except as provided in §10.4 of the Plan.

1.38. <u>Consolidated Debtors Liquidating Trust Expenses</u>. Any reasonable expenses and fees incurred in connection with the administration of the applicable Consolidated Debtors Liquidating Trust, by the Consolidated Debtors Liquidating Trustee, including, but not limited to, claims for fees of professionals employed by the Consolidated Debtors Liquidating Trustee and quarterly fees due to the Office of the United States Trustee, and costs relating to the completion of the liquidation of the Assets including, without limitation, the resolution of all Disputed Claims.

1.39. <u>Consolidated Debtors Liquidating Trust Professionals</u>. Professionals retained by the Consolidated Debtors Liquidating Trustee, including without limitation, attorneys, accountants, engineers, agents, real estate brokers, tax specialists, and clerical and stenographic assistants.

1.40. <u>Consolidated Debtors Liquidating Trust Reserve</u>. An amount determined by the Consolidated Debtors Liquidating Trustee to be held in reserve for distribution to Creditors holding Disputed Claims upon such Claims becoming Allowed Claims and Rejection Claims,

such that holders of such claims, upon allowance of such claims, shall receive the same Pro Rata Share as do Creditors in the same Class holding claims that are not Disputed Claims or Rejection Claims. The Consolidated Debtors Liquidating Trust Reserve shall also include an amount calculated by the Consolidated Debtors Liquidating Trustee to satisfy anticipated Consolidated Debtors Liquidating Trust Expenses and to pay anticipated tax liabilities of the Consolidated Debtors Liquidating Trust.

1.41.  <u>Consolidated Debtors Liquidating Trustee</u>.  The trustee of the Consolidated Debtors Liquidating Trust, who shall be identified in the Plan Supplement.

1.42.  <u>Consolidated Holdco</u>.  Holdco and Vendor.

1.43.  <u>Consolidated Holdco Assets</u>.  All Assets of Consolidated Holdco and Consolidated Holdco's Estates, whether such property is now existing or hereafter arising or acquired and wherever located including, without limitation, all Causes of Action and all Proceeds of and recoveries on Causes of Action, including, but not limited to, the Lone Star Causes of Action, all cash, accounts, contract rights, chattel paper, general intangibles, instruments, securities, furniture, fixtures, machinery, equipment, inventory intellectual property, domain names, and interest in real estate; <u>provided, however</u>, that Consolidated Holdco Assets do not include the Tax Refunds or any other Assets or Property specifically indentified in this Plan as Consolidated Debtors Assets.

1.44.  <u>Consolidated Holdco Convenience Claim</u>.  Any Allowed Unsecured Claim against Consolidated Holdco (i) that has an aggregate face amount of $25,000.00 or less, or (ii) for which the Claim Holder has properly made the Consolidated Holdco Convenience Class Election on a properly cast Ballot.

1.45.  <u>Consolidated Holdco Convenience Class Election</u>.  The election available to a Claim Holder of one or more Allowed Unsecured Claims against Consolidated Holdco with an aggregate face amount in excess of $25,000.00 to opt into Class 6 H, as applicable, and have all of such Holder's Claims treated as a single Consolidated Holdco Convenience Claim; provided, however, that in making such election, the Holder of such unsecured Claim(s) (i) has agreed to reduce the face amount of such Claim(s) for purposes of voting and distributions under this Plan to a single Claim against Consolidated Holdco in an amount equal to $25,000.00, and (ii) has voted all Claims held by such Claim Holder in favor of this Plan.

1.46.  <u>Consolidated Holdco Liquidating Trust</u>.  A trust for the benefit of Holders of Allowed Claims against  Consolidated Holdco that is to be formed and governed by the Consolidated Holdco Liquidating Trust Agreement.

1.47.  <u>Consolidated Holdco Liquidating Trust Account</u>.  An account to be established by the Consolidated Holdco Liquidating Trustee, at a depository institution listed as an approved institution of the United States Trustee for the District of Delaware.

1.48.  <u>Consolidated Holdco Liquidating Trust Advisory Board</u>.  The post-confirmation committee formed on the Effective Date, selected by the Creditors' Committee and identified by the Debtors in the Plan Supplement.

1.49.  Consolidated Holdco Liquidating Trust Agreement.  The certain Consolidated Holdco Liquidating Trust Agreement that is to govern the Consolidated Holdco Liquidating Trust, in substantially the form of such document included in the Plan Supplement, pursuant to which, among other things, the Consolidated Holdco Liquidating Trust Assets shall initially be conveyed to the Consolidated Holdco Liquidating Trust and shall ultimately be distributed pursuant to the terms of this Plan.

1.50.  Consolidated Holdco Liquidating Trust Assets.  (i) All of Consolidated Holdco's Assets not transferred on or prior to the Effective Date of the Plan, including, but not limited to, the Proceeds of any Assets of Consolidated Holdco, the funds held in Consolidated Holdco's bank accounts (after Consolidated Holdco makes the Effective Date Distribution), and Consolidated Holdco's promissory notes, Receivables, and Causes of Action, to the extent such Causes of Action have not been previously settled by Consolidated Holdco, (ii) the Lone Star Causes of Action, (iii) the REIT Causes of Action, (iv) any and all of the Debtors' rights under the D&O Policies, and, to the extent applicable, the REIT's rights thereunder or other insurance policies and the related proceeds, (v) the Canadian Equity, and (vi) Vendor Cash; provided, however, (a) that the Consolidated Holdco Liquidating Trust Assets shall not include the Tax Refunds, (b) that the Consolidated Holdco Liquidating Trust shall be deemed to have explicitly released any claims (if any) to the Tax Refunds, and (c) that the Consolidated Holdco Liquidating Trust Assets shall not include the equity interests in the REIT, which interests shall be deemed abandoned on the Effective Date pursuant to §10.9 of the Plan and §554 of the Bankruptcy Code.

1.51.  Consolidated Holdco Liquidating Trust Expenses.  Any reasonable expenses and fees incurred in connection with the administration of the Consolidated Holdco Liquidating Trust, by the Consolidated Holdco Liquidating Trustee, including, but not limited to, claims for fees of professionals employed by the Consolidated Holdco Liquidating Trustee and quarterly fees due to the Office of the United States Trustee, and costs relating to the completion of the liquidation of the Assets including, without limitation, the resolution of all Disputed Claims.

1.52.  Consolidated Holdco Liquidating Trust Professionals.  Professionals retained by the Consolidated Holdco Liquidating Trustee, including without limitation, attorneys, accountants, engineers, agents, real estate brokers, tax specialists, and clerical and stenographic assistants.

1.53.  Consolidated Holdco Liquidating Trust Reserve.  An amount determined by the Consolidated Holdco Liquidating Trustee to be held in reserve for distribution to Creditors holding Disputed Claims upon such Claims becoming Allowed Claims and Rejection Claims, such that holders of such claims, upon allowance of such claims, shall receive the same Pro Rata Share as do Creditors in the same Class holding claims that are not Disputed Claims or Rejection Claims.  The Consolidated Holdco Liquidating Trust Reserve shall also include an amount calculated by the Consolidated Holdco Liquidating Trustee to satisfy anticipated Consolidated Holdco Liquidating Trust Expenses and to pay anticipated tax liabilities of the Consolidated Holdco Liquidating Trust.

1.54.  Consolidated Holdco Liquidating Trustee.  The trustee of the Consolidated Holdco Liquidating Trust, who shall be identified in the Plan Supplement.

1.55.  <u>Creditor</u>.  Any Entity holding a Claim or Claims of any character whatsoever, whether unsecured or secured by assets of any of the Debtors, against one or more of the Debtors.

1.56.  <u>Creditor Release</u>.  The release of claims and causes of action against the Lone Star Entities by certain creditors as set forth in Section 8.2 of the Plan.

1.57.  <u>Creditors' Committee</u>.  The Official Committee of Unsecured Creditors appointed in the Bankruptcy Proceeding by the United States Trustee, namely Citigroup Global Markets Realty Corp., Transcontinental Valuations, Inc., Kodiak CDO I, Ltd., Patricia Howell, and Carrie Luft.

1.58.  <u>Creditors' Committee Counsel</u>.  The law firms of Arent Fox, LLP, and Elliott Greenleaf.

1.59.  <u>CRO Expenses</u>.  Has the same meaning ascribed thereto in Section 3.1 of the Plan.

1.60.  <u>Cure Claim</u>.  Those payments and assurances required upon assumption of an executory contract or unexpired lease pursuant to §365(b)(1) of the Bankruptcy Code.

1.61.  <u>D&O Policies.</u>  Those certain directors and officers insurance policies issued at the request of LSF5 Accredited Investments, LLC by (i) XL Specialty Insurance Company, Policy No. ELU 107630-08, (ii) Arch Insurance Company, Policy No. PCD 0023435-01; (iii) RSUI Indemnity Company, Policy No. NHS630845; and (iv) XL Specialty Insurance Company, Policy No. ELU 107631-08, and any other insurance policies with respect to the Debtors' current and former directors and officers as well as any renewals thereof.

1.62.  <u>Debtor</u>.  As applicable, Holdco, AHL, Vendor, Inzura Insurance Services, Inc., a Delaware corporation, or Windsor Management of Washington, Inc., d/b/a AHL Foreclosure Services Company, a Washington corporation (collectively the "<u>Debtors</u>");

1.63.  <u>Deferred Compensation Settlement Proceeds</u>.  The proceeds received by the Debtors as a result of that certain settlement relating to the First American Trust, FSB Deferred Compensation Plan, as approved by the Court on February 17, 2010, Docket No. 1307.

1.64.  <u>Disbursing Agent</u>.  Each Liquidating Trustee.

1.65.  <u>Disclosure Statement</u>.  The Disclosure Statement proposed in connection with this Plan, as approved by the Bankruptcy Court pursuant to §1125 of the Bankruptcy Code and Bankruptcy Rule 3017, and as modified and amended, including all exhibits and attachments thereto.

1.66.  <u>Disclosure Statement Approval Date</u>.  The date on which the Bankruptcy Court enters an order approving the Disclosure Statement.

1.67.  <u>Disputed Claim</u>.  Any Claim as to which an objection has been interposed, or which is listed in the applicable Debtor's schedules as disputed, or which is identified in the

Disclosure Statement as being the subject of an anticipated objection, or to which an objection or request for estimation has been interposed, which objection or request for estimation has not been Finally Determined as of the Effective Date.

1.68. <u>Distribution</u>. A payment by the respective Liquidating Trustee out of the respective Liquidating Trust Account to holders of Allowed Unsecured Claims.

1.69. <u>Distribution Date</u>. A date on which either the Effective Date Distribution and/or any Subsequent Distribution occurs.

1.70. <u>Distribution Date Balance</u>. All funds on deposit in the respective Liquidating Trust Account from any source whatsoever as of a Distribution Date.

1.71. <u>Distribution Record Date</u>. The Effective Date.

1.72. <u>Effective Date</u>. The date upon which the conditions set forth in § 11.1 of this Plan have been satisfied, subject to any waiver or modification of such conditions pursuant to § 11.2 of this Plan.

1.73. <u>Effective Date Balance</u>. All funds on deposit in the applicable Debtor's bank accounts from any source whatsoever as of the Effective Date.

1.74. <u>Effective Date Distribution</u>. A cash distribution to be made by the applicable Debtors on the Effective Date or as soon thereafter as is practicable, from the Effective Date Balance pursuant to the terms of the Plan.

1.75. <u>Entity</u>. Entity shall have the meaning ascribed in § 101(15) of the Bankruptcy Code.

1.76. <u>Estate</u>. The bankruptcy estate of the applicable Debtor created or constituted under the provisions of the Bankruptcy Code and applicable law.

1.77. <u>Final Decree</u>. An order entered by the Bankruptcy Court closing the Bankruptcy Proceeding.

1.78. <u>Final Distribution</u>. The last Distribution to be made by the respective Liquidating Trustee out of the respective Liquidating Trust Account upon the full administration of the Assets vested in the respective Liquidating Trust.

1.79. <u>Final Order</u>. An unstayed order or judgment of the Bankruptcy Court or other court having jurisdiction over any matter, provided that such order would be considered "final" for the purposes of § 158(a)(1) of Title 28 of the United States Code, provided that such order has not been reversed, stay, or vacated, that the time to appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing has expired, and that no appeal, petition for certiorari, or other proceeding seeking a new trial, re-argument, or rehearing is pending, or, if an appeal, writ of certiorari, new trial, re-argument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest Court to which such order or judgment was appealed, certiorari shall have been denied, or a new trial, re-argument or rehearing shall have been denied.

1.80. <u>Finally Determined</u>. Entry of a Final Order resolving a Claim to which an objection or request for estimation has been filed, or which is listed in the Schedules as contingent, unliquidated, or disputed, or which is identified in the Disclosure Statement as being the subject of an anticipated objection.

1.81. <u>Holdco</u>. Accredited Home Lenders Holding Co., a Delaware corporation.

1.82. <u>Holder</u>. An Entity holding a Claim or Interest or any authorized agent who has completed, executed and delivered a Ballot in accordance with the applicable voting instructions.

1.83. <u>Initial Deposit</u>. A deposit to be made to the applicable Liquidating Trust Account on the Effective Date in an amount consisting of the applicable Effective Date Balance less the amount of the applicable Effective Date Distribution.

1.84. <u>Injunction</u>. The post-confirmation injunction set forth in Section 11.2 of the Plan.

1.85. <u>Intercompany Claims</u>. Any Claim or Causes of Action held by any Debtor or Non-Debtor Subsidiary against any Debtor accruing before or after the Petition Date, including, but not limited to, any claim for reimbursement, payment as guarantor or surety, any claim for contribution and expenses that were allocable between multiple Debtors.

1.86. <u>Interest</u>. Any equity interest in any Debtor, including, without limitation, common, preferred or other stock of such Debtor or option, warrant or right to acquire or purchase any such interest issued on or before the Petition Date, and any claim (a) arising from the rescission of a purchase or sale of any such equity interest; (b) for damages arising from the purchase or sale of any such equity interest; or (c) for reimbursement or contribution allowed under § 502 of the Bankruptcy Code on account of such claim.

1.87. <u>Interim Distribution</u>. A distribution to be made out of a Liquidating Trust Account from the applicable Liquidating Trust Reserve to any holder of an Allowed Claim whose Claim was not Allowed or was Disputed as of the Effective Date Distribution and whose Claim became Finally Determined subsequent to the Effective Date, but prior to the immediately proceeding Subsequent Distribution Date.

1.88. <u>IRS Priority Tax Claims</u>. The Claims asserted by the Internal Revenue Service that are specified on the Claim Register as Claim Nos. 12, 14, 474, and 475, which shall be satisfied in full from the Tax Refunds.

1.89. <u>Lien or Liens</u>. Any lien, security interest, mortgage, or similar encumbrance on property of the applicable Debtor that secured payment of a debt or obligation, which lien, interest, mortgage, or similar encumbrance is valid, perfected, and enforceable against such property or the proceeds thereof and is non-avoidable.

1.90. <u>Liquidating Trust</u>. The Consolidated Debtors Liquidating Trust and the Consolidated Holdco Liquidating Trust, collectively, or individually depending on context.

1.91. <u>Liquidating Trustee</u>. The Consolidated Debtors Liquidating Trustee and the Consolidated Holdco Liquidating Trustee, collectively, or individually depending on context.

1.92.  Liquidating Trust Advisory Board.  The Consolidated Debtors Liquidating Trust Advisory Board and the Consolidated Holdco Liquidating Trust Advisory Board, collectively, or individually depending on context.

1.93.  Liquidating Trust Assets.  The Consolidated Holdco Liquidating Trust Assets and the Consolidated Debtors Liquidating Trust Assets.

1.94.  Liquidating Trust Claim Reserve.  Any Liquidating Trust Assets allocable to, or retained on account of, Disputed Claims, even if held in commingled accounts.

1.95.  Lone Star Causes of Action.  Any and all Causes of Action existing on the Confirmation Date that could be asserted by Consolidated Holdco against the Lone Star Entities.

1.96.  Lone Star Commencement Deadline.  The deadline, which shall be one hundred twenty (120) days after the Effective Date, by which the Consolidated Holdco Liquidating Trust shall commence prosecution of the Lone Star Causes of Action; provided, however, that the Lone Star Commencement Deadline may be extended by the written consent of the Lone Star Entities or by Order of the Bankruptcy Court so long as such extension does not exceed an additional one hundred twenty (120) days.

1.97.  Lone Star Entities.  LSF5 Mortgage Line, LLC, LSF MRA, LSF5 Affiliate Finance, LLC, LSF5 Accredited Investments, Vericrest Financial, Inc., Caliber Funding LLC, Hudson Advisors and any Entity that controls, is controlled by or is under common control with any foregoing party.  The term "control" and correlative terms shall have the meanings ascribed to them in Rule 405 under the Securities Act of 1933, as amended.  The term Lone Star Entities shall not include, however, the Debtors or any of their subsidiaries including, but not limited to, REIT.

1.98.  Lone Star Proofs of Claim.  The Proofs of Claim filed by the Lone Star Entities, which are specified in the Claims Register as Claim Nos. 802, 804, and 877.

1.99.  Lone Star Releasees.  The Lone Star Entities and current and former affiliates and all their respective officers, agents, employees, directors, attorneys, representatives, insurers, predecessors, successors and assigns (other than any Debtor, the REIT or a Non-Debtor Subsidiary of any Debtor), with the current and former officers and directors of the Debtors set forth on Exhibit "B" to the Plan Support Agreement and Term Sheet, but excluding any attorneys, accountants, auditors, investment bankers, financial or other advisors, consultants or agents that provided professional, accounting, audit or other services to the REIT, the Debtors and the Non-Debtor Subsidiaries, and further excluding any insurers who provided insurance to the Debtors or any non-debtor subsidiary of the Debtors including the REIT.

1.100.  Lone Star Settlement Payment.  The payment, in the amount of Fifteen Million, Six Hundred Thousand Dollars ($15,600,000), to be provided to the Consolidated Debtors, which amount shall be used to fund Distributions to Holders of Class 3 C General Unsecured Claims and Class 6 C Convenience Claims in accordance with the terms of this Plan.

1.101.  Net Proceeds.  The Proceeds realized by the applicable Estate from the sale, lease, or other disposition of an Asset after satisfaction of any Secured Claims encumbering that Asset,

less costs of collection including, but not limited to, the fees and expenses of any attorneys, accountants, auctioneers, brokers, or similar professional incurred in the sale, lease, prosecution, adjudication, or other disposition of an Asset.

1.102. <u>Non-Debtor Subsidiaries</u>. All subsidiaries of the Debtors that are not debtors in the Bankruptcy Proceeding.

1.103. <u>Officer and Director Causes of Action</u>. Any and all claims, actions, Causes of Action, or other rights of recovery, whether asserted or unasserted or pending as of the Effective Date or direct, indirect, derivative or otherwise or known or unknown, that are held by the applicable Debtor against any of its current or former officers and directors from the beginning of the world to the Effective Date.

1.104. <u>Person</u>. Any individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, limited liability limited partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, or other Entity.

1.105. <u>Petition Date</u>. May 1, 2009, the date on which the Debtors filed their Chapter 11 petitions with the Bankruptcy Court.

1.106. <u>Plan</u>. This Debtors' First Amended Chapter 11 Plan of Liquidation, in its present form and as it may be amended or modified from time to time.

1.107. <u>Plan Supplement</u>. The supplement to the Plan that will be filed with the Bankruptcy Court on or before the Plan Supplement Filing Date and will, among other things, contain (i) the forms of the Liquidating Trust Agreements, (ii) the Tolling Agreement, (iii) the form of the REIT claim assignment discussed in §8.2(c)(ii) of this Plan, and (iv) the identity of the Liquidating Trustees and the Liquidating Trust Advisory Boards.

1.108. <u>Plan Supplement Filing Date</u>. The date by which the Plan Supplement and any Exhibits or Plan Schedules not filed with the Plan, shall be filed with the Bankruptcy Court, which date shall be at least ten (10) days prior to the Voting Deadline.

1.109. <u>Plan Support Agreement and Term Sheet</u>. The *Proposed Settlement Between Accredited Home Lenders Holding Co., et al. ("Debtors"), Lone Star, the REIT, the Official Committee of Unsecured Creditors ("Committee"), and the REIT Committee relating to a Consensual Plan of Liquidation*, dated September 2, 2010 and attached hereto as Exhibit A.

1.110. <u>Priority Claims</u>. A Claim entitled to priority under §507(a)(3) through 507(a)(7).

1.111. <u>Priority Tax Claim</u>. A Claim entitled to priority under § 507(a)(8) of the Bankruptcy Code.

1.112. <u>Privilege</u>. All attorney-client privileges, work product protections and other immunities or protections from disclosure held by the Debtors.

1.113. <u>Proceeds</u>.  The funds realized by the applicable Estate from the sale, lease, settlement, adjudication, or other disposition of an Asset, including any recovery from a Cause of Action.

1.114. <u>Professionals</u>.  Those persons (a) retained pursuant to an order of the Bankruptcy Court in accordance with §327, 1103 and/or 1106 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to §327, 328, 329, 330 and/or 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to §330 and 503(b)(2) of the Bankruptcy Code.

1.115. <u>Professional Fees</u>.  (a) a claim under § 327, 331, 503(b), 1103 or 1106 of the Bankruptcy Code for compensation for professional services rendered or expenses incurred prior to the Effective Date on the Estates' behalf; or (b) a claim under § 503(b)(4) of the Bankruptcy Code for compensation for professional services rendered.

1.116. <u>Professional Fee Claim Bar Date</u>.  Shall have the meaning specified in Section 3.1 of the Plan.

1.117. <u>Property</u>.  The applicable Debtor's legal, possessory, equitable, or other interests in any property or Assets, whether real, personal, tangible, intangible or mixed, as defined in §541 of the Bankruptcy Code.

1.118. <u>Pro Rata Share</u>.  The ratio (expressed as a percentage) of (i) the amount of any Allowed Claim in a particular Class or Classes, as applicable, to (ii) the sum of (x) the aggregate amount of all Allowed Claims in such Class or Classes, as applicable, and (y) the aggregate amount of Disputed Claims in such Class or Classes, as applicable.

1.119. <u>Receivables</u>.  Accounts receivable of the applicable Debtor.

1.120. <u>REIT</u>.  Accredited Mortgage Loan REIT Trust, a Maryland real estate investment trust.

1.121. <u>REIT Adversary</u>.  That certain adversary proceeding commenced by the Creditors Committee against, among others, the REIT, styled as *Official Committee of Unsecured Creditors v. Accredited Mortgage Loan REIT Trust*, Adversary Proceeding No.10-50980.

1.122. <u>REIT Causes of Action</u>.  All direct and personal claims and Causes of Action of the REIT (including, but not limited to, any derivative claims held by REIT that are assertable on behalf of the REIT Preferred Holders) against REIT Directors and Officers..

1.123. <u>REIT Committee</u>.  That certain Ad Hoc Committee of certain REIT Preferred Holders.

1.124. <u>REIT Directors and Officers</u>.  The current and former directors and officers (including trustees) of REIT.

1.125. <u>REIT Litigation Recovery Sources</u>.  (i) the personal property or individual assets of any individual REIT Directors and Officers up to an aggregate of Five Million Dollars

($5,000,000) for all such REIT Causes of Action and (ii) the proceeds of any insurance policies that provide or are otherwise legally or contractually obligated to provide coverage with respect to the REIT Causes of Action against the REIT Directors and Officers or from any insurance company that has issued such a policy, including, but not limited to the D&O Policies, with all rights of any party against these policies being fully preserved.

1.126. REIT Preferred Securities. The preferred securities issued by the REIT.

1.127. REIT Preferred Security Holder. Any Entity that holds any of the REIT Preferred Securities.

1.128. REIT Preferred Holders' Subordinated Guaranty Claims. All Claims against any of the Debtors relating to the guaranty claims of the REIT Preferred Security Holders.

1.129. REIT Releasors. The REIT and the members of the REIT Committee, namely Footprint Asset Management & Research, Inc. and its constituent shareholders, Dupont Capital Management, Scott J. Weber, Anthony J. Sutton, Blake C. Sutton, and their successors and assigns.

1.130. Rejection Claim. Any Claim for amounts due as a result of the rejection of any executory contract or unexpired lease which is rejected by the Debtors pursuant to the Plan, which Claim must be filed by the Rejection Claim Bar Date.

1.131. Rejection Claim Bar Date. Thirty (30) days after the Effective Date; provided, however, if a motion seeking assumption or rejection is not heard and determined prior to the Effective Date, any Claim based thereon shall be filed within thirty (30) days of entry of an Order ruling on such a motion.

1.132. Residual Assets. The assets remaining in the Liquidating Trust after all beneficiaries of the Liquidating Trust have been paid in full as provided under the Plan and all expenses of the Liquidating Trust have been paid and satisfied, which shall be distributed by the Disbursing Agent upon termination and dissolution of the Liquidating Trust as provided under the Plan.

1.133. Schedules. The schedules of assets and liabilities filed by the Debtors in accordance with §521 of the Bankruptcy Code, as such schedules may be amended from time to time.

1.134. Subordinated Claim. A claim subject to subordination under § 510 of the Bankruptcy Code.

1.135. Subsequent Distributions. Any distribution to be made subsequent to the Effective Date Distribution, in cash, by the respective Liquidating Trustee.

1.136. Tax Code. The Internal Revenue Code of 1986, as amended from time to time.

1.137. Tax Refunds. All refunds of tax that may be paid to any of the Debtors, their subsidiaries, and consolidated, combined or unitary tax group, whether Federal, state or local,

including, but not limited to, as a result of a carryback (including a carryback pursuant to an election under Tax Code Section 172(b)(1)(H)) by the Debtors and/or their subsidiaries of NOLs and alternative minimum tax NOLs incurred in recent years, including 2008 and/or 2009, the amount and timing of any such refund(s) being uncertain as of the date hereof.

1.138. <u>Tolling Agreement</u>. The agreement by the Lone Star Entities, the REIT Directors and Officers and the directors and officers of Holdco and AHL Canada that are also employed by the Lone Star Entities to toll any applicable statute of limitations with respect to any of the Lone Star Causes of Action to the end of the Lone Star Commencement Deadline.

1.139. <u>Trust Declaration</u>. The Amended and Restated Trust Agreement among Accredited Home Lenders Holding Co., as depositor, Wells Fargo Bank, N.A., as Property Trustee, Wells Fargo Delaware Trust Company, as Delaware Trustee and the administrative trustees named therein dated January 11, 2007.

1.140. <u>Trust Preferred Adversary Proceeding</u>. That certain adversary proceeding commenced by the trustee under the Trust Preferred Indenture against certain Lone Star Entities, styled as *Wells Fargo Bank, N.A., Indenture Trustee vs. LSF5 Accredited Investments LLC*, Adversary Proceeding No. 09-53276.

1.141. <u>Trust Preferred Common Securities</u>. The common securities issued by the Accredited Preferred Statutory Trust I, which terms are governed by the provisions of the Trust Declaration.

1.142. <u>Trust Preferred Guarantee</u>. The guarantee by Holdco to satisfy all amounts owed pursuant to the Trust Preferred Indenture and Trust Declaration.

1.143. <u>Trust Preferred Indenture</u>. That certain Junior Subordinated Indenture between Accredited Home Lenders Holding Co. and Wells Fargo Bank, N.A., as trustee, dated as of January 11, 2007.

1.144. <u>Trust Preferred Indenture Trustee</u>. Wells Fargo Bank, N.A.

1.145. <u>Trust Preferred Note</u>. The junior subordinated note issued pursuant to the Trust Preferred Indenture.

1.146. <u>Trust Preferred Note Claim</u>. Any Claims for principal and interest under or on account of the obligations owed to the Trust Preferred Indenture Trustee or any Trust Preferred Holder asserted by the Trust Preferred Indenture Trustee by and through a proof of claim, which claim includes, but is not limited to, principal and interest as of the Petition Date and, if applicable, post-petition interest.

1.147. <u>Trust Preferred Holders</u>. The holder of the Trust Preferred Securities.

1.148. <u>Trust Preferred Securities</u>. The preferred securities issued by the Accredited Preferred Statutory Trust I, which terms are governed by the provisions of the Trust Declaration.

1.149. <u>Vendor</u>. Vendor Management Services, LLC, d/b/a Inzura Settlement Services, a Pennsylvania limited liability company, which entity shall be consolidated with Holdco pursuant to this Plan.

1.150. <u>Vendor Cash</u>. All cash held by Vendor Management Services, LLC

Any capitalized terms used in the Plan, but not defined above, that are used in the Bankruptcy Code or Bankruptcy Rules shall have the meanings ascribed to them in the Bankruptcy Code or in the Bankruptcy Rules.

Whenever the context requires, references in this Plan to any person shall be deemed to be references to or to include, as appropriate, its respective successors, transferees and assigns. Terms shall include the plural as well as the singular. Terms denoting any gender shall be deemed to include all genders. Any accounting terms and phrases used herein and not otherwise defined herein shall have the meanings ascribed to such terms in conformity with generally accepted accounting principles.

Whenever the context requires, references in this Plan to an unspecified Liquidating Trust or Liquidating Trustee shall be deemed to be references to the appropriate Liquidating Trust or Liquidating Trustee. For an example of how these terms should be appropriately construed according to context, see section 8.1 of the Plan, below.

The words, "this Plan," "hereto," "herein," "hereunder," "hereof," and expressions of similar import refer to this Plan as a whole, together with any appendices, schedules and exhibits hereto, and not to any particular article, section, subsection, clause or other portion of this Plan. References in this Plan to any agreement, instrument or other document (including references to this Plan) shall be deemed to include references to such agreement, instrument or other document as amended, modified, varied, supplemented or replaced from time to time in accordance with its terms, the Bankruptcy Code or the Bankruptcy Rules, as may be applicable.

## 2. DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

For the purpose of this Plan, Claims are divided into the following Classes. A proof of claim asserting a Claim which is properly included in more than one Class is included in each such Class to the extent that it qualifies within the description of such Class.

2.1. <u>Unclassified Claims: Administrative Claims and Priority Tax Claims</u>

Administrative Claims and Priority Tax Claims are not classified for purposes of voting or receiving distributions under the Plan. Rather, all such Claims are treated separately as unclassified Claims pursuant to the terms set forth in Article 3 of this Plan.

2.2. <u>Classified Claims of Consolidated Holdco</u>

<u>Class 1 H</u>:     Secured Claims against Consolidated Holdco (***Unimpaired***)

| | |
|---|---|
| Class 2 H: | All Allowed Unsecured Claims against Consolidated Holdco entitled to priority under §507(a)(3) through (a)(7) of the Bankruptcy Code (***Unimpaired***) |
| Class 3 H: | All Allowed Unsecured Claims against Consolidated Holdco, except for the Unsecured Claims separately classified (***Impaired***) |
| Class 4 H: | All Allowed Unsecured Claims against Consolidated Holdco held by LSF-MRA, LLC (***Impaired***) |
| Class 5 H: | All Allowed Unsecured Claims against Consolidated Holdco held by the REIT (***Impaired***) |
| Class 6 H: | All Consolidated Holdco Convenience Claims (***Impaired***) |
| Class 7 H: | All Claims against Holdco arising from or related to Trust Preferred Note, Trust Preferred Note Claim, or the Trust Preferred Securities (***Impaired***) |
| Class 8 H: | The REIT Preferred Holders Subordinated Guaranty Claims (***Impaired***) |
| Class 9 H: | All other Subordinated Claims against Consolidated Holdco, except for the Subordinated Claims separately classified (***Impaired***) |
| Class 10 H: | All Interests in Consolidated Holdco (***Impaired***) |

2.3. Classification of Claims against the Consolidated Debtors.

| | |
|---|---|
| Class 1 C: | Secured Claims against the Consolidated Debtors (***Unimpaired***) |
| Class 2 C: | All Allowed Unsecured Claims against the Consolidated Debtors entitled to priority under §507(a)(3) through (a)(7) of the Bankruptcy Code (***Unimpaired***) |
| Class 3 C: | All Allowed Unsecured Claims against the Consolidated Debtors, except for the Unsecured Claims separately classified (***Impaired***) |
| Class 4 C: | All Allowed Unsecured Claims against the Consolidated Debtors opting out of the Creditor Release (***Impaired***) |
| Class 5 C: | All Allowed Unsecured Claims against the Consolidated Debtors held by the Lone Star Entities (***Impaired***) |
| Class 6 C: | All Consolidated Debtors Convenience Claims (***Impaired***) |
| Class 7 C: | All Subordinated Claims against the Consolidated Debtors (***Impaired***) |
| Class 8 C: | All Interests in the Consolidated Debtors (***Impaired***). |

2.4. <u>Preservation of Subordination Right and Claims of Subordination</u>. Pursuant to §510(a) of the Bankruptcy Code, except as otherwise agreed to by a creditor, class of creditors, or as otherwise provided under the Plan, nothing in this Plan is intended to affect the terms or enforceability of any subordination agreement entered into prior to the Effective Date by any creditor or group of creditors in favor of any other creditors of the Debtors in respect of any obligations owing by the Debtors.

## 3. TREATMENT OF UNCLASSIFIED CLAIMS

3.1. <u>Administrative Claims</u>

(a) <u>Non-Professional Fee Administration Claims</u>

Any Holder of an Allowed Administrative Claim shall receive the full amount of the Holder's Allowed Administrative Claim in one cash payment from the Consolidated Debtors, or Consolidated Holdco, as applicable, as part of the Effective Date Distribution. An Administrative Claim that is a Disputed Claim shall not receive any distribution unless and until such Claim becomes an Allowed Administrative Claim. Upon the entry of a Final Order allowing an Administrative Claim, the Holder of that Claim shall receive the full amount of such Claim in one cash payment from the applicable Liquidating Trust. The applicable Liquidating Trustee or the applicable Debtor and the Holder of an Allowed Administrative Claim may agree to less favorable treatment of such Allowed Administrative Claim. An Administrative Claim not filed prior to the Administrative Claim Bar Date as provided in this Plan shall be deemed forever waived and barred, the Holder thereof shall not be entitled to a distribution under the Plan, and the Debtors or applicable Liquidating Trustee shall have no obligation with respect thereto.

With regard to the services provided by AP Services, LLC (the "CRO Expenses") since the Petition Date, such CRO Expenses shall be ratably paid, with 75% paid by the Consolidated Debtors or the Consolidated Debtors Liquidating Trust and 25% paid by Consolidated Holdco or the Consolidated Holdco Liquidating Trust. To the extent that the Consolidated Debtors have previously paid more than 75% of the CRO Expenses, the Consolidated Debtors shall have an Allowed Administrative Claim against Consolidated Holdco or the Consolidated Holdco Liquidating Trust for any amount paid in excess of 25% of the CRO Expenses which shall be paid, in cash, to the Consolidated Debtors' Liquidating Trust within five (5) days after such CRO Expenses shall become allowed.

(b) <u>Professional Fee Claims</u>

Unless otherwise expressly provided in the Plan, a Professional Fee Claim will be Allowed only if: (i) on or before forty-five (45) days after the Effective Date (the "Professional Fee Bar Date"), the entity holding such Professional Fee Claim files with the Court a final fee application and serves the application on counsel to the Debtors, counsel to the Creditors' Committee, Consolidated Debtors Liquidating Trustee, Consolidated Holdco Liquidating Trustee, and the U.S. Trustee; and (ii) the Court enters a Final Order allowing such Claim.

Any party in interest may file an objection to such application within the time provided by the Bankruptcy Rules or within any other period that the Bankruptcy Court establishes.

Entities holding Professional Fee Claims that do not timely file and serve a fee application will be forever barred from asserting such Professional Fee Claim against the Debtors, the Estates, the Liquidating Trusts, or their respective property.

The Debtors, or the applicable Liquidating Trustee, will pay or cause to be paid an Allowed Professional Fee Claim, in cash, within five (5) days after the conditions specified in this Section 3.1(b) of the Plan are satisfied. All Allowed Professional Fee Claims shall be ratably paid, with 75% paid by the Consolidated Debtors or the Consolidated Debtors Liquidating Trust and 25% paid by Consolidated Holdco or the Consolidated Holdco Liquidating Trust. To the extent that the Consolidated Debtors have previously paid more than 75% of the Allowed Professional Fee Claims, the Consolidated Debtors shall have an Administrative Claim against Consolidated Holdco or the Consolidated Holdco Liquidating Trust for any amount paid in excess of 75% of the Allowed Professional Fee Claims which shall be paid, in cash, to the Consolidated Debtors Liquidating Trust within five (5) days after the entry of a Final Order allowing such Allowed Professional Fee Claims.

3.2.    Priority Tax Claims

Any Holder of an Allowed Priority Tax Claim shall receive the full amount of the Holder's Allowed Priority Tax Claim in one cash payment from Consolidated Holdco or the Consolidated Debtors, as applicable, as part of the Effective Date Distribution. A Priority Tax Claim that is a Disputed Claim shall not receive any distribution unless and until such Claim becomes an Allowed Priority Tax Claim. Upon the entry of a Final Order allowing an Priority Tax Claim against Consolidated Holdco after the Effective Date, the Holder of that Claim shall receive the full amount of such Claim in one cash payment from the Consolidated Holdco Liquidating Trust except as otherwise provided under Section 3.3 of the Plan. Upon the entry of a Final Order allowing a Priority Tax Claim against the Consolidated Debtors after the Effective Date, the Holder of that Allowed Claim shall receive the full amount of such Claim in one cash payment from the Consolidated Debtors Liquidating Trust except as otherwise provided under Section 3.3 of the Plan. The applicable Liquidating Trustee or Debtor and the Holder of an Allowed Priority Tax Claim may agree to less favorable treatment of such Allowed Priority Tax Claim. To the extent that some or all of an Allowed Secured Claim for taxes does not qualify as a Priority Tax Claim, it will be classified as a Class 1 Secured Claim.

3.3.    IRS Priority Tax Claims.

The Holder of the IRS Priority Tax Claims shall be paid in full from the Tax Refunds. The IRS Priority Tax Claims shall be treated as an obligation of the Consolidated Debtors or the Consolidated Debtors Liquidating Trust.

## 4.    TREATMENT OF CLASSES OF CLAIMS AND INTERESTS UNDER THE CONSOLIDATED HOLDCO PLAN

4.1.    Class 1 H - Secured Claims. Class 1H Secured Claims are unimpaired. Any Holder of a Class 1H Allowed Secured Claim shall, at the sole option of Consolidated Holdco, receive (a) the full amount of the Holder's Class 1H Allowed Secured Claim in one cash payment as part of the Effective Date Distribution from Consolidated Holdco, (b) all or a portion

of the Assets securing the Allowed Secured Claim or (c) subject to the requirements of § 1124(2) of the Bankruptcy Code, the legal, equitable and contractual rights of the Holder of such Allowed Secured Claim shall be reinstated. A Class 1H Secured Claim that is a Disputed Claim shall not receive any distribution unless and until such Claim becomes a Class 1H Allowed Secured Claim. Upon the entry of a Final Order allowing the Class 1H Allowed Secured Claim against Consolidated Holdco after the Effective Date, the Holder of that Claim shall receive, at the sole option of the Consolidated Holdco Liquidating Trustee, (a) the full amount of such Claim in one cash payment from the Consolidated Holdco Liquidating Trust, (b) all or a portion of the Assets securing the Allowed Secured Claim or (c) subject to the requirements of § 1124(2) of the Bankruptcy Code, the legal, equitable and contractual rights of the Holder of such Allowed Secured Claim shall be reinstated. The Consolidated Holdco Liquidating Trustee or Debtor and the Holder of a Class 1H Allowed Secured Claim may agree to less favorable treatment of such Class 1H Allowed Secured Claim.

**BECAUSE CLASS 1 H CLAIMS ARE NOT IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 1 H CLAIMS ARE NOT ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.2.     Class 2 H - Priority Claims, other than Priority Tax Claims: Class 2H Priority Claims are unimpaired. Any Holder of a Class 2 H Allowed Priority Non-Tax Claim shall receive the full amount of the Holder's Class 2 H Allowed Priority Non-Tax Claim in one cash payment as part of the Effective Date Distribution from Consolidated Holdco. A Class 2 H Priority Non-Tax Claim that is a Disputed Claim shall not receive any distribution unless and until such Claim becomes a Class 2 H Allowed Priority Non-Tax Claim. Upon the entry of a Final Order allowing the Class 2 H Allowed Priority Non-Tax Claim against Consolidated Holdco after the Effective Date, the Holder of that Claim shall receive the full amount of such Claim in one cash payment from the Consolidated Holdco Liquidating Trust. The Consolidated Holdco Liquidating Trustee or Debtor and the Holder of a Class 2 H Allowed Priority Non-Tax Claim may agree to less favorable treatment of such Class 2 H Allowed Priority Non-Tax Claim.

**BECAUSE CLASS 2 H CLAIMS ARE NOT IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 2 H CLAIMS ARE NOT ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.3.     Class 3 H - General Unsecured Claims against Consolidated Holdco: The Class 3H Claims are impaired. Holders of Class 3 H Allowed Claims shall receive a Pro Rata Share of interests in the Consolidated Holdco Liquidating Trust and are entitled to receive distributions equal to their Pro Rata Share of any distributions of Consolidated Holdco Liquidating Trust Assets made by the Consolidated Holdco Liquidating Trustee out of the Consolidated Holdco Liquidating Trust in accordance with the Consolidated Holdco Liquidating Trust Agreement and the Plan. In calculating the distribution to the Holders of Class 3 H Claims, the Pro Rata Share shall include in the calculation the Allowed Claims and Disputed Claims included in Class 3 H, 4 H, 5 H and 7 H.

In the event of entry of a Final Order determining a Disputed Claim to be an Allowed Claim, the Holder of the subject claim shall receive its Pro Rata Share of interests in the Consolidated Holdco Liquidating Trust and the Consolidated Holdco Liquidating Trustee, in his

sole discretion, may make an Interim Distribution to the Holder of such Allowed Claim from the Consolidated Holdco Liquidating Trust Reserve, or may release funds from the Consolidated Holdco Liquidating Trust Reserve to such Holder in a Subsequent Distribution. The Holders of Class 3 H Allowed Claims shall thereafter receive their Pro Rata Share of Subsequent Distributions from the Consolidated Holdco Liquidating Trust.

Upon full administration of the Assets vested in the Consolidated Holdco Liquidating Trust, the Consolidated Holdco Liquidating Trustee shall make the Final Distribution, and all obligations under the Plan of the Consolidated Holdco Liquidating Trustee to the Holders of Class 3 H Allowed Claims shall be satisfied. In the event that the Holders of Class 3 H Allowed Claims are paid in full, together with interest thereon from the Petition Date through the date on which such claim is paid in full calculated at the federal judgment rate in effect as of the Petition Date, any funds remaining in the Consolidated Holdco Liquidating Trust Account, net of expenses, shall be distributed to the Holders of the Class 4 H and 5 H Claims, and potentially Class 7 H Claims, in accordance with the provisions of the Plan.

In the event Class 3 H votes in favor of the Plan, the payment of Class 4 H Claims will be subordinated and junior to the payment of Class 3 H Claims and Class 4 H Claims shall not receive any distribution until Class 3 H Claims are paid in full under the Plan.

**BECAUSE CLASS 3 H CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 3 H CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.4. <u>Class 4 H - Unsecured Claims Against Consolidated Holdco held by LSF-MRA, LLC.</u> The Class 4 H Claims <u>are</u> impaired. Subject to the provisions of this Section 4.4 of the Plan, Holders of Class 4 H Allowed Claims shall receive a Pro Rata Share of interests in the Consolidated Holdco Liquidating Trust. In calculating the distribution to the Holder of Class 4 H Claims, the Pro Rata Share shall include in the calculation the Allowed Claims and Disputed Claims included in Class 3 H, 4 H, 5 H, and 7 H. Until the Holders of the Class 4 H Allowed Claims are satisfied in full with interest thereon from the Petition Date through the date on which such Claim is paid in full calculated at the federal judgment rate in effect as of the Petition Date, the Holder of Class 4 H Allowed Claims shall be entitled to receive its Pro Rata Share of the proceeds of the Consolidated Holdco Liquidating Trust.

Notwithstanding the foregoing, in the event Class 3 H votes in favor of the Plan, the payment of Class 4 H Claims will be subordinated to the payment of Class 3 H Claims and Class 4 H Claims shall not receive any distribution until Class 3 H Claims are paid in full as provided under the Plan.

Further, in the event Class 5 H votes in favor of the Plan and does not object to confirmation of the Plan, the payment of Class 4 H Claims will be subordinated to the payment of Class 5 H Claims.

Pursuant to the terms of the Trust Preferred Indenture and related documents, Class 7 H Claims are subordinated to the Class 4 H Claims and any payment attributable to Class 7 H Claims are to be paid to the Holders of, <u>inter alia</u>, Allowed Class 4 H Claims on a pro rata basis

to the extent provided under the Trust Preferred Indenture and related documents. Notwithstanding the foregoing, in the event that Class 7 H votes to accept the Plan, and the Holders of Class 7 H Claims do not object to confirmation of the Plan, payment of Class 4 H shall be subordinated to payment of the Allowed Class 7 H Claims.

Notwithstanding the foregoing, the subordination of claims of the Lone Star Entities, against Consolidated Holdco including, but not limited to, claims of the Lone Star Entities that are Class 4 H Claims, and as set forth herein, shall not in any way affect or be deemed to affect the availability of such claims for use as setoff or any other defenses of the Lone Star Entities to or against claims against the Lone Star Entities asserted by Consolidated Holdco or the Consolidated Holdco Liquidating Trust.

**BECAUSE CLASS 4 H CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 4 H CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.5.    <u>Class 5 H - Unsecured Claims Held By the REIT</u>. The Class 5 H Claims <u>are</u> impaired. The Class 5 H Claim of the REIT shall be fixed and Allowed in the amount of Twenty Million Dollars ($20,000,000) and, on account of such claim, the Holder of the Allowed Class 5 H Claim shall receive its Pro Rata Share of interests in the Consolidated Holdco Liquidating Trust. In calculating the distribution to the Holder of Class 5 H Claims, the Pro Rata Share shall include in the calculation the Allowed Claims and Disputed Claims included in Class 3 H, 4 H, 5 H, and 7 H. Until the Class 5 H Claim is satisfied in full with interest thereon from the Petition Date through the date on which such Claim is paid in full calculated at the federal judgment rate in effect as of the Petition Date, the Holder of Allowed Class 5 H Unsecured Claims shall be entitled to Pro Rata Share of the proceeds of the Consolidated Holdco Liquidating Trust. The Holder of Allowed Class 5 H Claim will waive its right to enforce any subordination provisions relating to Class 7 H Claims, and in the event Class 5 H votes in favor of the Plan and does not object to confirmation of the Plan, payment of Class 4 H Claims will be subordinated to the payment of Class 5 H Claims.

**BECAUSE CLASS 5 H CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 5 H CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.6.    <u>Class 6 H - Convenience Class Claims</u>. The Class 6 H Claims are impaired. Each Holder of an Allowed Consolidated Holdco Convenience Claim in Class 6 H shall receive seventy-five percent (75%) of the Holder's Allowed Class 6 H Convenience Claim in one cash payment as part of the Effective Date Distribution from Consolidated Holdco, or such other, less favorable treatment as is agreed upon by Consolidated Holdco and the Holder of such Consolidated Holdco Convenience Claim.

**BECAUSE CLASS 6 H CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 6 H CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.7.    Class 7 H - Claims against Consolidated Holdco relating to Accredited Preferred Securities Trust I.  The Class 7 H Claims are impaired.  Class 7 H consists of Allowed Claims against Holdco that relate to the Trust Preferred Securities, Trust Preferred Notes, and the Trust Preferred Note Claims.  Holders of Allowed Class 7 H Claims shall receive their Pro Rata Share of interests in the Consolidated Holdco Liquidating Trust subject to the enforcement of the applicable subordination provisions as described herein to the extent provided under the Trust Preferred Indenture and related documents and the Plan.

Pursuant to the terms of the Trust Preferred Indenture, the Class 7 H Claims are subordinated to the Class 4 H and 5 H Claims and any payments attributable to Class 7 H Claims are to be paid to the Holders of Class 4 H and 5 H Claims.  If Class 7 H votes to reject the Plan, then, until distributions are made in an amount sufficient to pay Holders of Allowed Class 4 H Claims, in full with interest thereon, from the Petition Date through the date on which such Claim is paid in full calculated at the federal judgment rate in effect as of the Petition Date, the subordination provisions relating to Class 7 H will be enforced and the Pro Rata Share attributable to Class 7 H shall be distributed pursuant to the terms of §4.4 of the Plan.

Notwithstanding the foregoing, if Class 7 H votes in favor of confirmation of the Plan and the Holders of Allowed Class 7 H Claims do not object to confirmation of the Plan, then the payment of the holders of the Class 4 H Claims shall be subordinated to the payment of Class 7 H Claims and Holders of Allowed 7 H Claims will receive distributions as provided in this §4.7 of the Plan.

**BECAUSE CLASS 7 H CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 7 H CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.8.    Class 8 H – REIT Preferred Holders' Subordinated Guaranty Claims:  The Class 8 H Claims are impaired.  Unless otherwise agreed to by the Creditors Committee and the REIT Committee, on the Effective Date (i) the Holders of Allowed Class 8 H Claims shall not receive beneficial interests in the Consolidated Holdco Liquidating Trust or be deemed to be beneficial holders of the Consolidated Holdco Liquidating Trust until all beneficial holders with Allowed Claims in Classes 3 H, 4 H, 5 H, and 7 H have been paid in full as provided under the Plan prior to the termination of the Consolidated Holdco Liquidating Trust, (ii) the Holders of Allowed Class 8 H Claims shall not be entitled to any reports or notices from the Consolidated Holdco Liquidating Trustee until they receive beneficial interests in the Consolidated Holdco Liquidating Trust and are beneficial holders of the Consolidated Holdco Liquidating Trust, and (iii) the Consolidated Holdco Liquidating Trust Agreement shall be drafted in a manner that avoids any material adverse consequences to the Consolidated Holdco Liquidating Trust under applicable securities and tax laws.  If the Holders of Class 3 H, 4 H, 5 H, and 7 H Claims who are beneficial holders of the Consolidated Holdco Liquidating Trust are not paid in full as provided under the Plan, or if the Consolidated Holdco Liquidating Trust is terminated prior to the time when such senior unsecured creditors who are beneficial holders are paid in full, then the Holders of Allowed Class 8H Claims shall not receive any distribution under the Plan.  If the Holders of Class 3 H, 4 H, 5 H, and 7 H Claims who are beneficial holders of the Consolidated Holdco Liquidating Trust are paid in full as provided under the Plan prior to the termination of the Consolidated Holdco Liquidating Trust, then Holders of Allowed Class 8 H Claims shall

receive beneficial interests in the Consolidated Holdco Liquidating Trust as provided under the Plan.

**BECAUSE CLASS 8 H CLAIMS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTIONS UNDER THE PLAN, THE HOLDERS OF CLASS 8 H CLAIMS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

4.9.    Class 9 H - Subordinated Claims against Consolidated Holdco:  The Class 9 H Claims are impaired.  Class 9 H consists of claims against Consolidated Holdco that are not separately classified and are subordinated for any reason under § 510 of the Bankruptcy Code. Holders of Class 9 H Claims shall not receive any distributions until the Holders of Class 3 H, 4 H, 5 H and 7 H Claims against Consolidated Holdco have been paid in full with interest as provided under the Plan, in which event the holders of Class 9 H Claims shall receive their Pro Rata Share of Subsequent Distributions from the Consolidated Holdco Liquidating Trust and their Pro Rata Share of the Residual Assets, as applicable.

**BECAUSE CLASS 9 H CLAIMS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTIONS UNDER THE PLAN, THE HOLDERS OF CLASS 9 H CLAIMS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

4.10.    Class 10 H- Interests:  The Class 10 H Claims are impaired.  Class 10 H consists of the Interests in Consolidated Holdco, including those Interests held by the Lone Star Entities. All Interests, including those Interests held by the Lone Star Entities, shall be canceled as of the Effective Date and the Holders thereof shall receive no distribution under the Plan, unless Holders of all Class 8 H and 9 H Claims against Consolidated Holdco are paid in full with interest as provided under the Plan, in which event the holders of Class 10 H Interests shall receive their Pro Rata Share of Subsequent Distributions from the Consolidated Holdco Liquidating Trust and their Pro Rata Share of the Residual Assets, as applicable.

**BECAUSE CLASS 10 H INTERESTS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTIONS UNDER THE PLAN, THE HOLDERS OF CLASS 10 H INTERESTS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

## 5.    TREATMENT OF CLASSES OF CLAIMS AND INTERESTS UNDER THE CONSOLIDATED DEBTORS PLAN

5.1.    Class 1 C - Secured Claims.  Class 1C Secured Claims are unimpaired.  Any Holder of a Class 1C Allowed Secured Claim shall, at the sole option of the Consolidated Debtors, receive (a) the full amount of the Holder's Allowed Class 1C Secured Claim in one cash payment as part of the Effective Date Distribution from the Consolidated Debtors, (b) all or a portion of the Assets securing the Allowed Secured Claim or (c) subject to the requirements of §

1124(2) of the Bankruptcy Code, the legal, equitable and contractual rights of the Holder of such Allowed Secured Claim shall be reinstated. A Class 1C Secured Claim that is a Disputed Claim shall not receive any distribution unless and until such Claim becomes an Allowed Class 1C Secured Claim. Upon the entry of a Final Order allowing the Allowed Class 1C Secured Claim against the Consolidated Debtors after the Effective Date, the Holder of that Claim shall, at the sole option of the Consolidated Debtors Liquidating Trustee, receive (a) the full amount of such Claim in one cash payment from the Consolidated Debtors Liquidating Trust, (b) all or a portion of the Assets securing the Allowed Secured Claim, or (c) subject to the requirements of § 1124(2) of the Bankruptcy Code, the reinstatement of the legal, equitable and contractual rights of the Holder of such Allowed Secured Claim. The Consolidated Debtors Liquidating Trustee or Consolidated Debtors and the Holder of an Allowed Class 1C Secured Claim may agree to less favorable treatment of such Allowed Class 1C Secured Claim.

**BECAUSE CLASS 1 C CLAIMS ARE NOT IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 1 C CLAIMS ARE NOT ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

5.2.     Class 2 C - Priority Claims, other than Priority Tax Claims.  The Class 2C Claims are unimpaired. Any Holder of a Class 2 C Allowed Priority Non-Tax Claim shall receive the full amount of the Holder's Class 2 C Allowed Priority Non-Tax Claim in one cash payment as part of the Effective Date Distribution from the Consolidated Debtors.  A Class 2 C Priority Non-Tax Claim that is a Disputed Claim shall not receive any distribution unless and until such Claim becomes a Class 2 C Allowed Priority Non-Tax Claim.  Upon the entry of a Final Order allowing the Class 2 C Allowed Priority Non-Tax Claim against the Consolidated Debtors after the Effective Date, the Holder of that Claim shall receive the full amount of such Claim in one cash payment from the Consolidated Debtors Liquidating Trust.  The Consolidated Debtors Liquidating Trustee or Debtor and the Holder of a Class 2 C Allowed Priority Non-Tax Claim may agree to less favorable treatment of such Class 2 C Allowed Priority Non-Tax Claim.

**BECAUSE CLASS 2 C CLAIMS ARE NOT IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 2 C CLAIMS ARE NOT ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

5.3.     Class 3 C - General Unsecured Claims against the Consolidated Debtors.  The Class 3 C Claims are impaired.  Holders of Allowed Class 3 C and 4 C Claims shall be entitled to receive a Pro Rata Share of interests in the Consolidated Debtors Liquidating Trust and are entitled to receive distributions equal to their Pro Rata Share of any distributions of the Consolidated Debtors Liquidating Trust Assets made by the Consolidated Debtors Liquidating Trustee out of the Consolidated Debtors Liquidating Trust in accordance with the Consolidated Debtors Liquidating Trust Agreement, and continuing on the dates of Subsequent Distributions, equal to their Pro Rata Share of any distributions of Consolidated Debtors Liquidating Trust Assets made by the Consolidated Debtors Liquidating Trustee out of the Consolidated Debtors Liquidating Trust, as provided under the Plan.

In addition to the distributions described above, Holders of Class 3 C General Unsecured Claims shall be entitled to receive a Pro Rata Share of the Lone Star Settlement Payment subject

to the terms of this Plan. Holders of Class 3 C General Unsecured Claims and Class 6 C Convenience Claims are deemed to have accepted the Creditor Release.

In the event of entry of a Final Order determining a Disputed Claim to be an Allowed Claim, the Holder of the subject claim shall receive its Pro Rata Share of interests in the Consolidated Debtors Liquidating Trust and the Consolidated Debtors Liquidating Trustee, in his sole discretion, may make an Interim Distribution to the Holder of such Allowed Claim from the Consolidated Debtors Liquidating Trust Reserve, or may release funds from the Consolidated Debtors Liquidating Trust Reserve to such Holder in a Subsequent Distribution. The Holders of Class 3 C Allowed Claims shall thereafter receive their Pro Rata Share of Subsequent Distributions from the Consolidated Debtors Liquidating Trust.

Upon full administration of the Assets vested in the Consolidated Debtors Liquidating Trust, the Consolidated Debtors Liquidating Trustee shall make the Final Distribution, and all obligations under the Plan of the Consolidated Debtors Liquidating Trustee to the Holders of Allowed Class 3 C Claims shall be satisfied. In the event that the Holders of Allowed Class 3 C Claims are paid in full, together with interest thereon from the Petition Date through the date on which such claim is paid in full calculated at the federal judgment rate in effect as of the Petition Date, any funds remaining in the Consolidated Debtors Liquidating Trust Account, net of expenses, shall be distributed first to the Holders of the Allowed Class 4C and then to the Holders of Allowed Class 7 C Claims in accordance with the provisions of the Plan.

**BECAUSE CLASS 3 C CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 3 C CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

5.4. <u>Class 4 C - General Unsecured Claims against the Consolidated Debtors opting out of the Creditor Release</u>. The Class 4 C Claims <u>are</u> impaired. Holders of Allowed Class 3 C and 4 C Claims shall be entitled to receive a Pro Rata Share of interests in the Consolidated Debtors Liquidating Trust and are entitled to receive distributions equal to their Pro Rata Share of any distributions of the Consolidated Debtors Liquidating Trust Assets made by the Consolidated Debtors Liquidating Trustee out of the Consolidated Debtors Liquidating Trust in accordance with the Consolidated Debtors Liquidating Trust, and continuing on each Subsequent Distribution Date, equal to their Pro Rata Share of any distributions of Consolidated Debtors Liquidating Trust Assets made by the Consolidated Debtors Liquidating Trustee out of the Consolidated Debtors Liquidating Trust.

For the avoidance of doubt, Holders of Allowed Class 4 C Claims opting out of the Creditor Release shall not be entitled to receive any distributions from the Lone Star Settlement Payment.

Upon full administration of the Assets vested in the Consolidated Debtors Liquidating Trust, the Consolidated Debtors Liquidating Trustee shall make the Final Distribution, and all obligations under the Plan of the Consolidated Debtors Liquidating Trustee to the Holders of Allowed Class 4 C Claims shall be satisfied. In the event that the Holders of Allowed Class 4C Claims are paid in full, together with interest thereon from the Petition Date through the date on which such claim is paid in full calculated at the federal judgment rate in effect as of the Petition

Date, any funds remaining in the Consolidated Debtors Liquidating Trust Account, net of expenses, shall be distributed to the Holders of Allowed Class 7 C Claims in accordance with the provisions of the Plan.

**BECAUSE CLASS 4 C CLAIMS ARE IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 4 C CLAIMS ARE ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

5.5. Class 5 C - Unsecured Claims Against the Consolidated Debtors held by the Lone Star Entities. The Class 5 C Claims are impaired. The Claims of the Lone Star Entities against the Consolidated Debtors shall be waived and shall receive no distributions under this Plan.

**BECAUSE CLASS 5 C CLAIMS ARE IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 5 C CLAIMS ARE ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

5.6. Class 6 C - Convenience Class Claims. The Class 6 C Claims are impaired. On the Effective Date, or as soon as practicable thereafter, each Holder of an Allowed Consolidated Debtor Convenience Claim in Class 6 C shall receive seventy-five percent (75%) of the Holder's Allowed Class 6 C Convenience Claim in one cash payment as part of the Effective Date Distribution from the Consolidated Debtors, or such other less favorable treatment as is agreed upon by the Consolidated Debtors and the Holder of such Allowed Consolidated Debtor Convenience Claim.

Holders of Class 6 C Convenience Claims are deemed to have accepted the Creditor Release and will be entitled to receive distributions from the Lone Star Settlement Payment.

An Allowed Unsecured Claim against any of the Consolidated Debtors that has a face amount equal to or less than $25,000 shall be treated as a Class 6 C Claim, provided, however that a Holder of such a Claim may opt for that Claim to be treated as a Class 4 C Claim by making that designation on a properly cast Ballot.

**BECAUSE CLASS 6 C CLAIMS ARE IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 6 C CLAIMS ARE ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

5.7. Class 7 C - Subordinated Claims against the Consolidated Debtors. The Class 7 C Claims are impaired. Class 7 C consists of Subordinated Claims against the Consolidated Debtors, including the subordinated claim of the REIT in the amount of Fifteen Million Dollars ($15,000,000), that is being allowed pursuant to Section 10.8 of this Plan (the "REIT Junior Claims"). Holders of Class 7 C Subordinated Claims shall receive no distribution under the Plan unless the Holders of Allowed Class 3 C and 4 C Allowed Claims are paid in full, as provided under the Plan, in which event the holders of Class 7 C Claims shall receive their Pro Rata Share of Subsequent Distributions from the Consolidated Holdco Liquidating Trust and their Pro Rata Share of the Residual Assets, as applicable.

**BECAUSE CLASS 7 C CLAIMS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTIONS UNDER THE PLAN, THE HOLDERS OF CLASS 7 C CLAIMS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

5.8.     Class 8 C - Interests. The Class 8 C Claims are impaired. Class 8 C consists of the Interests in the Consolidated Debtors. All Interests shall be canceled as of the Effective Date and the Holders thereof shall receive no distribution under the Plan, unless Holders of all Class 7 C Allowed Subordinated Claims against the Consolidated Debtors are paid in full with interest as provided under the Plan, in which event the holders of Class 8 C Interests shall receive their Pro Rata Share of Subsequent Distributions from the Consolidated Holdco Liquidating Trust and their Pro Rata Share of the Residual Assets, as applicable.

**BECAUSE CLASS 8 C INTERESTS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTIONS UNDER THE PLAN, THE HOLDERS OF CLASS 8 C INTERESTS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

## 6.     INTERCOMPANY CLAIMS

6.1.     Inter-Debtor Waivers. By virtue of the compromises and settlement of the issues set forth in the Plan, on the Effective Date, (i) AHL Canada shall pay and satisfy the Claims of the Consolidated Debtors against AHL Canada and after giving effect to such payment, (ii) each Debtor shall waive any defense, including, without limitation, defenses arising under §502(d) and 553(a) of the Bankruptcy Code, to Intercompany Claims asserted by another Debtor and such claims shall be deemed Allowed Claims, (iii) Intercompany Claims between Debtors shall be deemed to be mutual claims arising prior to the Petition Date for purposes of setoff, (iv) except as provided in Section 3.1 of the Plan, each Debtor shall waive its right to receive any distribution on any Claims and Causes of Action such Debtor may have against another Debtor, and (v) except as provided in Section 3.1 of the Plan, each Debtor shall waive and forever release any right, Claim or Cause of Action which has been or could have been asserted by such Debtor against any other Debtor.

6.2.     Non-Debtor Subsidiary Waivers. By virtue of the compromises and settlement of the issues set forth in the Plan and except as otherwise provided in this Plan, on the Effective Date, (i) AHL Canada shall pay and satisfy the Claims of the Consolidated Debtors against AHL Canada and after giving effect to such payment, (ii) each Non-Debtor Subsidiary, except REIT and AHL Canada, shall waive any defense, including, without limitation, defenses arising under § 502(d) and 553(a) of the Bankruptcy Code, to Intercompany Claims asserted by another Debtor or Non-Debtor Subsidiary against any Debtor and such claims shall be deemed Allowed Claims, (iii) Intercompany Claims between Debtors and Non-Debtor Subsidiaries, except REIT and AHL Canada, shall be deemed to be mutual claims arising prior to the Petition Date for purposes of setoff, (iv) each Non-Debtor Subsidiary, except REIT, shall waive its right to receive any distribution on any Claims and Causes of Action such Non-Debtor Subsidiary may have against any Debtor, except that the Debtors shall not waive or release any Non-Debtor Subsidiary for

any Avoidance Actions, and (v) except as provided in this Section 6.2 of the Plan, each Non-Debtor Subsidiary, except REIT, shall waive and forever release any right, Claim or Cause of Action which has been or could have been asserted by such Non-Debtor Subsidiary against any Debtor.

6.3.   Asset Allocation. The allocation of certain Assets is an integral component of the comprehensive compromise and settlement concerning Intercompany Claims and intra-Debtor issues as determined in light of a number of facts, including, but not limited to, (i) respective legal claims, rights and entitlements of the Debtors, (ii) validity and enforceability of Intercompany Claims, (iii) Intercompany Claims not reflected as inter-company payables or receivables in the Debtors' books and records, (iv) relative value of Assets under administration in each Debtor, (v) Intercompany Claims for contribution or reimbursement, (vi) the necessity of resolving inter-Estate and inter-Debtor issues and disputes through the Plan, and (vii) administration and liquidation of Trust Assets unfettered or effected by inter-Estate or inter-Debtor conflicts of interest or multiple claims.

## 7.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1.   Assumption and Rejection. All executory contracts and unexpired leases, other than those executory contracts and unexpired leases which (i) were executed subsequent to the Petition Date, or (ii) have not expired by their own terms prior to the Confirmation Date, and other than those executory contracts and unexpired leases regarding which an Order has been entered prior to the Effective Date authorizing assumption thereof, shall be deemed rejected upon the Confirmation Date except for any executory contract or unexpired lease that is specifically designated to be assumed or has been assumed or assumed and assigned.

7.2.   Indemnification Agreements. The obligations of the Consolidated Debtors to indemnify any person having served as an officer or director of the Consolidated Debtors, to the extent provided in any of the Consolidated Debtors' corporate governance documents or by written or other agreement or applicable law, shall be terminated and extinguished and, to any extent necessary, deemed an executory contract, terminated and rejected under the Plan. Notwithstanding the foregoing, this provision will not limit or modify any indemnification obligations approved by this Court.

7.3.   Claims Relating to Assumption or Rejection. Any party to an executory contract or unexpired lease not previously assumed or rejected and to which no bar date has been established, which is assumed or rejected pursuant to this Plan or is the subject of a pending rejection motion, is required under the terms of this Plan to file a claim for amounts due as a result of such assumption or rejection by the Rejection Bar Date; provided, however, if a motion seeking assumption or rejection is not heard and determined prior to the Effective Date, any Claim based thereon shall be filed within thirty (30) days of entry of an Order ruling on the motion. Any Allowed Claim relating to the rejection of executory contracts or leases shall be treated as a Class 3 H or 3 C Unsecured Claim depending on the Debtor counter-party to such executory contract or unexpired lease. Any Allowed Cure Claim relating to the assumption of executory contracts or leases pursuant to the Plan shall be paid in full from the Effective Date Distribution to the extent Finally Determined as of the Effective Date, or, to the extent thereafter, from an Interim Distribution or Subsequent Distribution by the applicable Liquidating Trustee.

Any such claim not filed by the Rejection Bar Date as provided in the Plan shall be forever barred and shall not be enforceable against the Debtors or their properties or the Liquidating Trusts and the Debtors and Liquidating Trusts shall have no obligation to pay the same.

7.4. <u>Insurance Policies</u>. To the extent that any and all insurance policies including the D&O Policies are considered executory contracts, then notwithstanding anything contained in the Plan to the contrary, such insurance policies shall be deemed assumed and assigned to the respective Liquidating Trust. Unless otherwise determined by the Bankruptcy Court, pursuant to a Final Order, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such policy. For the avoidance of any doubt, all rights under any insurance policy, including the D&O Policies, that is not an executory contract, and all rights under any other insurance policies under which the Debtors may be beneficiaries, shall be preserved and shall vest with the respective Liquidating Trust; and, nothing herein shall alter or adversely affect the rights of any non-Debtor beneficiaries of or covered persons under such insurance policies.

## 8. LONE STAR SETTLEMENT

8.1. <u>Incorporation of Settlement</u>. The Plan is deemed to be a motion pursuant to §363 and 1123 of the Bankruptcy Code and Fed. R. Bankr. P 9019 to authorize a settlement between the Consolidated Debtors and the Lone Star Entities. The Plan incorporates and is expressly conditioned upon approval of the Plan Support Agreement and Term Sheet in the Confirmation Order. The provisions of the Plan are intended to implement the Plan Support Agreement and Term Sheet, and the Plan Support Agreement and Term Sheet provides that it shall be effected through the Plan and is contingent upon confirmation of the Plan. All provisions of the Plan Support Agreement and Term Sheet are to be considered non-severable and the Plan and the Plan Support Agreement and Term Sheet are to be considered non-severable. The terms of the Plan Support Agreement and Term Sheet set forth below are for the purpose of summary and convenience only, and are not intended to take precedence over the terms of the Plan Support Agreement and Term Sheet. To the extent the summary provided below conflicts with the terms of the Plan Support Agreement and Term Sheet, the Plan Support Agreement and Term Sheet shall control.

8.2. <u>Terms of the Lone Star Settlement</u>. As more fully set forth in the Plan Support Agreement and Term Sheet, attached hereto as Exhibit "A" the general terms of the Lone Star Settlement are as follows:

(a) Provided that less than 25% in amount of the general unsecured claims against the Consolidated Debtors eligible to vote on the plan elect treatment as Class 4 C Creditors (rather than class 3 C Creditors) and to withhold releases of direct and personal claims under the Plan:

(i) one or more of the Lone Star Entities (other than LSF MRA, LLC) shall make the Lone Star Settlement Payment to the Consolidated Debtors on or before the Effective Date, which shall be made available for distribution pursuant to the terms of this Plan to creditors who grant releases as set forth in Section 8.2(b) of the Plan;

(ii)     the Lone Star Entities shall be deemed to have waived, for purposes of the Plan and receiving distributions hereunder, all Claims against the Consolidated Debtors or their respective properties, including those asserted in the Lone Star Proofs of Claim; and

(iii)     the Lone Star Entities shall be deemed to have subordinated, for purposes of the Plan and receiving distributions hereunder, all claims asserted against Consolidated Holdco in favor of Classes 3 H, 5 H, and 7 H, if those applicable Classes do not vote to reject the Plan, to the extent such claims of the Lone Star Entities are not disallowed, so that any distributions that would be made to the Lone Star Entities on account of claims against Consolidated Holdco (the "Subordinated Distributions") will first be distributed to such non-rejecting Classes until such claims are paid in full (which Subordinated Distributions shall not be subject to disgorgement); provided, however, that subordination of the Claims of the Lone Star Entities against Consolidated Holdco as set forth herein shall not in any way affect or be deemed to affect the availability of such claims for use as setoff or any other defenses of the Lone Star Entities to or against claims against the Lone Star Entities asserted by Consolidated Holdco (including by Consolidated Holdco as assignee of the REIT Releasors (see Section 8.2(b) below)), and provided, further, however, that claims and Causes of Action, if any, that may be brought by the Consolidated Holdco Estate or the Consolidated Holdco Liquidating Trustee against any of the Lone Star Entities must be brought within Lone Star Commencement Deadline unless further extended either by the written consent of the Lone Star Entities or by order of the Court not to exceed an additional one hundred twenty (120) days; and still further provided, that in the event of any Consolidated Holdco distributions to non-rejecting creditors on account of the Claims of the Lone Star Entities, the Claims of the Lone Star Entities shall remain available for use by the Lone Star Entities for set-off or as defenses, to the extent applicable, as if such distributions had not been made.  The Lone Star Entities agree to execute the Tolling Agreement, and to use reasonable efforts to cause the REIT, Holdco and AHL Canada directors and officers that are also employed by the Lone Star Entities to execute the Tolling Agreement.  The Consolidated Holdco Liquidating Trustee shall distribute the Subordinate Distributions pursuant to the terms of §4.3, 4.4, 4.5, and 4.7 of the Plan and the Consolidated Holdco Liquidating Trust Agreement.

**(b)     Subject to Section 12.3 of the Plan, upon the Effective Date of the Plan, the Lone Star Releasees shall receive a full release of all claims from the Estates of the Consolidated Debtors and of all direct and personal claims relating to the Consolidated Debtors and their businesses from individual creditors of the Consolidated Debtors (other than from REIT) that elect to receive a distribution from the Lone Star Settlement Payment by not electing to withhold releases of direct and personal claims as of the Effective Date; provided, however, that the foregoing shall not operate as a waiver or release of the Lone Star Releasees' obligations under the Plan or Plan Support Agreement and Term Sheet.**

**(c)     The direct and personal claims of REIT Releasors  shall be treated as follows:**

(i)     The REIT Releasors shall release the Lone Star Releasees and the current and former officers and directors (including trustees) of the Debtors but not the current and former directors and officers (including trustees) with respect to the REIT or the Lone Star Releasees in their capacities as REIT Directors and Officers of all direct and personal claims, including but not limited to, any derivative claims held by the REIT which are assertable on behalf of the REIT Preferred Security Holders; provided, however, the foregoing release shall not apply to any claims or causes of action assigned pursuant to Section 8.2(c)(ii).

(ii)    The REIT and the members of the REIT Committee shall assign to Consolidated Holdco (or the Consolidated Holdco Liquidating Trust) all direct and personal claims with respect to the REIT (including, but not limited to, any derivative claims held by the REIT that are assertable on behalf of the REIT Preferred Holders) and of such REIT Committee members against the REIT Directors and Officers; provided, however, that REIT, the members of the REIT Committee and Consolidated Holdco (and the Consolidated Holdco Liquidating Trust and Consolidated Holdco Liquidating Trustee), as assignee, shall be permitted to satisfy any judgment, settlement or other obligation due on account of any such claims against (i) the personal property or individual assets of any individual REIT Directors and Officers up to REIT Litigation Recovery Sources. The rights of any insured or actual or prospective claimant against the policies shall not be altered by the terms of these provisions. For the avoidance of doubt, the rights of the REIT, the members of the REIT Committee (and Consolidated Holdco as assignee of the REIT claims) and the REIT Directors and Officers against any of the policies are fully preserved.

(d)     The Consolidated Debtors and Consolidated Liquidating Trustee agree and covenant not to make, assert or pursue any claim or commence any action or litigation against the Lone Star Releasees or the current and former directors and officers of the Debtors released as set forth herein or under or against the D&O Policies; provided, however, this covenant and any release of current or former Directors and Officers of the Debtors as set forth herein shall be conditioned on such officer or director granting a full release of claims against the Consolidated Debtors and their respective properties (including all claims under or that could be asserted under filed proofs of claim, which claims shall be deemed expunged and relinquished).

(e)     The REIT, the members of the REIT Committee, Holdco and the Consolidated Holdco Liquidating Trust and Trustee agree not to satisfy or attempt to satisfy any judgment, settlement or other obligation due on account of any claims of the REIT or a member of the REIT Committee against the REIT Directors and Officers from any source other than from the Litigation Recovery Sources.

(f)     Upon or after the Effective Date, the Consolidated Debtors or the Consolidated Debtors Liquidating Trustee will comply, without cost or expense to them, with any reasonable requests received from the Lone Star Releasees for separate documents acknowledging the releases contemplated herein.

# 9. **LIQUIDATING TRUSTS**

9.1. <u>Rules of Construction</u>. Except where specifically provided otherwise, the terms of this Article 9 shall apply to both the Consolidated Debtors Liquidating Trust and the Consolidated Holdco Liquidating Trust and shall be construed according to the understanding that these trusts are receiving parallel treatment. Thus, for example, where Article 9.4(c) states, "[a]ll costs and expenses associated with the administration of the Liquidating Trust shall be the responsibility of and paid by the Liquidating Trust from the Liquidating Trust Assets," this provision of the Plan should be interpreted as if it states both (a) "[a]ll costs and expenses associated with the administration of the Consolidated Holdco Liquidating Trust shall be the responsibility of and paid by the Consolidated Holdco Liquidating Trust from the Consolidated Holdco Liquidating Trust Assets" and (b) "[a]ll costs and expenses associated with the administration of the Consolidated Debtors Liquidating Trust shall be the responsibility of and paid by the Consolidated Debtors Liquidating Trust from the Consolidated Debtors Liquidating Trust Assets."

9.2. <u>Appointment of Liquidating Trustee</u>.

(a) On or before the Plan Supplement Filing Date, the Consolidated Debtors Liquidating Trustee shall be selected by the Committee and be reasonably acceptable to the Consolidated Debtors and REIT, and the Consolidated Holdco Liquidating Trustee shall be selected by the Committee and be reasonably acceptable to Wells Fargo Bank, as indenture trustee under the Trust Preferred Indenture, and the REIT; <u>provided</u>, <u>however</u>, that none of the Lone Star Entities or their affiliates, officers, directors or employees shall serve as Liquidating Trustee. Prior to the Confirmation Date, the person(s) designated as Liquidating Trustee shall file an affidavit demonstrating that such person is disinterested. If approved by the Bankruptcy Court in the Confirmation Order, the person so designated shall become the Liquidating Trustee of the respective Liquidating Trust on the Effective Date.

(b) The Liquidating Trustee shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Liquidating Trust Agreement.

9.3. <u>Funding of the Consolidated Holdco Liquidating Trust</u>. The Consolidated Holdco Liquidating Trust will be funded initially by a contribution to the Consolidated Holdco Liquidating Trust Account by Consolidated Holdco equal to its Effective Date Balance less any payments made to the Holders of Allowed Administrative Claims, Holders of Allowed Secured Claims, Holders of Allowed Priority Claims, Holders of Allowed Priority Tax Claims, and Holders of Allowed Convenience Claims against Consolidated Holdco on the Effective Date. The Consolidated Holdco Liquidating Trust shall subsequently be funded from any amounts recovered from the other Proceeds of the Consolidated Holdco Assets.

9.4. <u>Funding of the Consolidated Debtors Liquidating Trust</u>. The Consolidated Debtors Liquidating Trust will be funded initially by a contribution to the Consolidated Debtors Liquidating Trust Account by the Consolidated Debtors equal to their Effective Date Balance less any payments made to the Holders of Allowed Administrative Claims, Holders of Allowed Secured Claims, Holders of Allowed Priority Claims, Holders of Allowed Priority Tax Claims, and Holders of Allowed Convenience Claims against the Consolidated Debtors on the Effective

Date.  The Consolidated Debtors Liquidating Trust shall subsequently be funded from the other Proceeds of Consolidated Debtors Assets.

9.5.    Transfer of Liquidating Trust Assets to the Liquidating Trust.  On the Effective Date, the Debtors shall transfer and shall be deemed to have irrevocably transferred to the Liquidating Trust, for and on behalf of the beneficiaries of the Liquidating Trust, with no reversionary interest in the Debtors, the Liquidating Trust Assets.  For the avoidance of any doubt, the Consolidated Debtors shall transfer and convey the Consolidated Debtors Liquidating Trust Assets to the Consolidated Debtors Liquidating Trustee and the Consolidated Holdco shall transfer and convey the Consolidated Holdco Liquidating Trust Assets to the Consolidated Holdco Liquidating Trust.

9.6.    The Liquidating Trust.

(a)    Without any further action of the directors or shareholders of the Debtors, on the Effective Date, the Liquidating Trust Agreement for the Liquidating Trust, substantially in the form included in the Plan Supplement, shall become effective.  On or before the Effective Date, the Debtors and the Liquidating Trustee shall execute the Liquidating Trust Agreements and shall take such other necessary steps to establish the Liquidating Trusts.  The Liquidating Trustee shall accept the Liquidating Trust Assets and sign the Liquidating Trust Agreement on the Effective Date and the Liquidating Trust will then be deemed created and effective.

(b)    The Liquidating Trustee shall have full authority to take any steps necessary to administer the Liquidating Trust Assets and the Lone Star Settlement Payment, as applicable, including, without limitation, the duty and obligation to liquidate Liquidating Trust Assets, and to pursue and settle any other trust claims, subject to the approval of the Liquidating Trust Advisory Board and to the procedures in the Liquidating Trust Agreement.  Upon such transfer (which, as stated above, shall occur on the Effective Date), the Debtors and their Estates shall have no other rights or obligations with respect to the Liquidating Trusts.

(c)    All costs and expenses associated with the administration of the Liquidating Trust shall be the responsibility of and paid by the Liquidating Trust from the Liquidating Trust Assets.

(d)    The Liquidating Trustee may retain such law firms, accounting firms, experts, advisors, consultants, investigators, appraiser, auctioneers or other professionals as it may deem necessary (collectively, the "Liquidating Trustee Professionals"), in its sole discretion, and at the sole expense of the Liquidating Trust, to aid in the performance of its responsibilities pursuant to the terms of this Plan including, without limitation, the liquidation and distribution of Liquidating Trust Assets and the Lone Star Settlement Payment, as applicable.

(e)    Distribution of Liquidating Trust Assets:  The Liquidating Trustee is required to distribute to the holders of Allowed Claims on account of their interests in the Liquidating Trust , on a periodic basis, and at least once per year, all unrestricted Cash on hand (including any Cash received from the applicable Debtors on the Effective Date, and treating any permissible investment as Cash for purposes of this Section 9.6(e)), except such amounts (i) as have been reserved on account of Disputed Claims, or are otherwise part of the claims reserve established

by the Liquidating Trustee, (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (iii) as are necessary to pay reasonable incurred or anticipated expenses (including, but not limited to, any taxes imposed on or payable by the Debtors or the Liquidating Trust or in respect of the Liquidating Trust Assets), or (iv) as are necessary to satisfy other liabilities incurred or anticipated by the Liquidating Trust in accordance with the Plan or the Liquidating Trust Agreement; provided, however, that the Liquidating Trustee shall not be required to make a distribution pursuant to this Section 9.6(e) if the aggregate, net amount of unrestricted Cash available for distribution (taking into account the above listed exclusions) is such as would make the distribution impracticable as reasonably determined by the Liquidating Trustee; and provided further that nothing in this Plan shall compel the Liquidating Trustee to treat any tentative Tax Refund(s) obtained pursuant to Tax Code Section 6411 as unrestricted cash until completion of the associated audit by the relevant authorities.

(f)     For federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under Treasury Regulation section 301.7701-4 and that such trust be owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution of an undivided interest in the Liquidating Trust Assets and then contributed such interests to the Liquidating Trust. The Liquidating Trust Agreement shall (i) state that the primary purpose of the Liquidating Trust is to liquidate the Liquidating Trust Assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, its liquidating purpose and (ii) contain a fixed or determinable termination date that is not more than five (5) years from the date of creation of the Liquidating Trust, which termination date may be extended for one or more finite terms subject to the approval of the Bankruptcy Court upon a finding that the extension is necessary to its liquidating purpose. Each such extension must be approved by the Bankruptcy Court within two (2) months before the beginning of the extended term.

(g)     The Liquidating Trustee shall be responsible for filing all federal, state and local tax returns for the Liquidating Trust. The Liquidating Trustee shall file all federal tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4. The Liquidating Trustee also will annually send to each holder of a Liquidating Trust Interest a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holder's underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns. The Liquidating Trustee shall also file (or cause to be filed) any other statement, return or disclosure relating to the Liquidating Trust that is required by any governmental unit.

(h)     Tax Reporting for Liquidating Trust:

(i)     On or before the Effective Date, the Debtors shall provide the Liquidating Trustee with a good-faith valuation of the Tax Refunds as of the Effective Date. As soon as practical after the Effective Date, the Liquidating Trustee shall determine the fair market value, as of the Effective Date, of

all other Liquidating Trust Assets, and shall make all such values (including the Tax Refunds value) available from time to time, to the extent relevant, and such values shall be used consistently by all parties to the Liquidating Trust (including, without limitation, the Debtors, the Liquidating Trustee, and Liquidating Trust Beneficiaries) for all United States federal income tax purposes.

(ii)    Allocations of Liquidating Trust taxable income among the Liquidating Trust beneficiaries shall be determined by reference to the manner in which an amount of cash representing such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value) to the holders of the Liquidating Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust. Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets. The tax book value of the Liquidating Trust Assets for purpose of this paragraph shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(iii)   Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee shall (A) timely elect to treat any Liquidating Trust Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, and (B) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including the Liquidating Trustee, the Debtors, and the Liquidating Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(iv)    The Liquidating Trustee shall be responsible for payment, out of the Liquidating Trust Assets, of any Taxes imposed on the trust or its assets, including the Liquidating Trust Claims Reserve. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Liquidating Trust Claims Reserve is insufficient to pay the portion of any such Taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such Taxes shall be (A) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (B) to the extent such Disputed Claims have