# EXHIBIT B

# Accredited Home Lenders Holding Co., et al.

DISCLOSURE STATEMENT
EXHIBIT

*LIQUIDATION ANALYSIS*

The accompanying notes are an integral part of the Best Interests Analysis

## Accredited Home Lenders Holding Co., et al.
## Liquidation Analysis
## Introduction

Overview
Pursuant to section 1129(a)(7) of the Bankruptcy Code, a Chapter 11 plan cannot be confirmed unless the Bankruptcy Court determines that the plan is in the "best interests" of all holders of claims and interests that are impaired by the plan. The "best interests" test requires a Bankruptcy Court to find either that (i) all members of an impaired class of claims or interests have accepted the plan or (ii) the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under Chapter 7 of the Bankruptcy Code.

The Debtors prepared this Liquidation Analysis (the "Analysis"). The Analysis consists of a separate liquidation analysis for both (i) Accredited Home Lenders Holding, Inc. and its wholly owned subsidiary Vendor Management Services, LLC (collectively, "Consolidated Holdco") and (ii) AHL, Inc., Inzura Insurance Services, Inc. and Windsor Management Co. (collectively, the "Consolidated Debtors" and together with Holdco, the "Debtors"). All capitalized terms not defined in this Analysis have the meanings ascribed to them in the Plan and Disclosure Statement.

The Analysis, which is based on the Debtors' balance sheets as of July 31, 2010 (except as indicated), reflects the estimated net value of the Debtors' assets, if the Debtors were liquidated under the provisions of Chapter 7 of the Bankruptcy Code and the net proceeds of the liquidation (net of liquidation-related costs) were distributed to creditors pursuant to the provisions of Chapter 7. The value available for distribution to creditors as of the date of an actual liquidation may differ from the value used in this Analysis, potentially by a material amount.

The Debtors believe that the Plan meets the "best interest of creditors" test as set forth in section 1129(a)(7) of the Bankruptcy Code because holders of allowed claims in each impaired class will either accept the Plan or receive at least as much under the Plan as they would if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.

The Plan reflects the results of extensive negotiations among the Debtors, the Unsecured Creditors' Committee, the Lone Star Entities, and the REIT, which negotiations have resulted in a number of compromises that provide benefits to the Debtors and their creditors. If the Plan is not confirmed, a number of beneficial compromises will be lost including:

Benefits of the Plan to Creditors of the Consolidated Debtors vs. Chapter 7 Liquidation
A conversion to Chapter 7 would result in the loss of the following benefits in the Plan:
  (1) the $15.6M cash payment from the Lone Star Entities to the Consolidated Debtors,
  (2) the waiver of the Lone Star Entities' claims against the Consolidated Debtors,
  (3) a forgiveness of inter-company claims,
  (4) the resolution of inter-debtor disputes,
  (5) the resolution of inter-creditor disputes,
  (6) the resolution of various material claims, and
  (7) the resolution of administrative claims amongst the Debtors.

Benefits of the Plan to Creditors of Consolidated Holdco vs. Chapter 7 Liquidation
A conversion to Chapter 7 would result in the loss of the following benefits in the Plan:
  (1) the transfer of AHL Canada to the Consolidated Holdco Trust,
  (2) the subordination of the claims of the Lone Star Entities against Consolidated Holdco,
  (3) the assignment of certain of the REIT's causes of action into the Consolidated Holdco Liquidating Trust,
  (4) the resolution of competing claims against the D&O policies,
  (5) the resolution of inter-creditor disputes,
  (6) the resolution of various material claims, and
  (7) the resolution of administrative claims amongst the Debtors.

Additional Costs Incurred and Reduction in Asset Values in a Chapter 7 Liquidation
Conversion of these cases to Chapter 7 would likely result in substantial additional costs to the Estates. Protracted litigation (i) among the Debtors, (ii) between the Consolidated Debtors and the Lone Star Entities and (iii) between Consolidated Holdco and the Lone Star Entities could last years and cost millions of dollars. Certain material claims that are being resolved as part of the Plan would also result in additional litigation costs under a Chapter 7 liquidation.

Litigation among the Debtors would only serve to reduce the total assets available to all creditors. Any further litigation between the Consolidated Debtors and the Lone Star Entities would likely result in no net recovery in excess of the Lone Star Settlement. Certain Holdco creditors have expressed a desire to litigate with the Lone Star Entities and these rights have been preserved (and enhanced) under the Plan.

Furthermore, the costs of liquidation under Chapter 7 of the Bankruptcy Code may include additional costs related to the extension of theses cases including (i) compensation of the trustees, (ii) compensation of counsel and other professionals retained by the trustees, and (iii) additional recurring operating costs (including payroll, rent, IT costs, storage, etc.)

The value of the Debtors' remaining assets would also likely erode, if the assets are sold in a liquidation environment as opposed to monetized in a more established and orderly process. For example, the assets of AHL Canada likely would not yield their maximum value, if sold in a Chapter 7 liquidation.

Assumptions and Limitations
The Analysis is based on management's good faith assumptions believed to be reasonable in light of the circumstances under which they are based. For purposes of this Analysis, management assumes a liquidation would take place as part of an orderly liquidation sale. Unless explicitly stated elsewhere, recoveries are net of necessary liquidation expenses. Such estimates and assumptions, although considered reasonable by management, are inherently subject to significant uncertainties and contingencies beyond management's control.

If actual results were lower than those shown, or if the assumptions used in formulating the Analysis were not realized, distribution to each member of each class of Claims could be affected adversely. Accordingly, there can be no assurance that the results shown would be realized if the Debtors were liquidated, and actual results in such case could vary materially from those presented.

The underlying financial information in this Analysis has not been examined, compiled or reviewed by independent accountants in accordance with standards promulgated by the American Institute of Certified Public Accountants. No independent appraisals were conducted in preparing this Analysis.

Accredited Home Lenders Holding Co., et al.
Liquidation Analysis
Assumptions - Consolidated Holdco

**H1. Cash and Equivalents**
Consolidated Holdco has approximately $4.9M of cash, consisting of $1.2M at Holdco, $1.5M at VMS (of which $0.6M is related to escheatment funds) and $2.2M at AHL Canada. Because escheatment claims are treated as unsecured claims in bankruptcy, the escheatment cash is available for general creditors.

Pursuant to the terms of the Plan, AHL Canada's cash will be used to pay creditors of Consolidated Holdco. In a Chapter 7 liquidation scenario, AHL Canada's cash would ultimately be used to pay the creditors of the Consolidated Debtors.

**H2. Intercompany Receivable**
Pursuant to the terms of the Plan, intercompany balances will be waived. However, in a Chapter 7 liquidation scenario, Consolidated Holdco may have an $18M claim against the Consolidated Debtors (based on the Debtors books and records) and a potential litigation claim relating to the transfer of AHL Canada by Holdco to AHL. The recovery on these claims would be dependent on the recovery of unsecured creditors of the Consolidated Debtors in the liquidation scenario. In any case, the recovery would be less than the value provided by the Consolidated Debtors to Consolidated Holdco under the Plan.

**H3. AHL Canada (excluding Cash)**
Pursuant to the terms of the Plan, the proceeds of the liquidation of AHL Canada will be used to pay creditors of Consolidated Holdco. AHL Canada's assets consist generally of (i) $2.2M of cash (which is included in the Cash balance in Note 1 above), (ii) Deutsche Bank subordinated bonds, and (iii) Bank of Montreal residuals. The subordinated bonds and residuals are not currently cash flowing, but are expected to do so in the near term. Based on a detailed analysis of the underlying loans, the estimated value of the subordinated bonds and residuals is approximately $21-27M. The ultimate value will be largely dependent on the (i) ability of the underlying borrowers to refinance their homes and (ii) loss severity for those borrowers who are unsuccessful in refinancing. These assets are offset by certain Canadian tax liabilities that will likely range from $2-3M.

In a Chapter 7 liquidation scenario, AHL Canada would remain an asset of the Consolidated Debtors.

**H4. Lone Star Settlement**
Because the Plan preserves any potential claims that Consolidated Holdco may have against Lone Star, the Debtors have not estimated the recovery in any scenario.

**H5. Avoidance Actions/ Other Litigation**
Because the Plan preserves all of Consolidated Holdco's claims and avoidance actions against other third parties, the Debtors have not estimated the recoveries in any scenario. Such recoveries are likely not material.

**H6. Professional Fees and Corporate Expenses**
This Analysis assumes all inter-debtor payments are settled as discussed in note H7. A Chapter 7 liquidation scenario would likely result in additional costs to Consolidated Holdco, including litigation costs related to the claims of LSF MRA and the REIT. Such costs have not been incorporated herein.

**H7. Inter-Debtor Payment**
This Analysis assumes a $5M payment from Consolidated Holdco to the Consolidated Debtors on the Effective Date for administrative costs pursuant to the Plan. Such a claim would exist in an unliquidated amount in a Chapter 7 liquidation, but would likely approximate $5M.

**H8. Chapter 7 Trustee**
Chapter 7 Trustee Fees have been calculated based on 3% of estimated assets available for distribution, which is a simplification of section 326 of the Bankruptcy Code.

**H9. Secured Claims**
The Debtors do not expect any material secured claims against Consolidated Holdco.

**H10. Priority Claims**
The Debtors do not expect any material priority claims against Consolidated Holdco.

**H11. Unsecured Claims:**
The Debtors estimate the following ranges for unsecured claims against Consolidated Holdco. These estimates may differ substantially from actual allowed claims due to the timing of the claims resolution process.

Class 3H: $1.1M to $1.4M consisting largely of fees related to the Atlas and other litigation matters, as well as VMS escheatment claims.

Class 4H: LSF MRA has asserted $97M of claims against Holdco related to the MRA transaction. The precise amount of this claim is disputed, but the Lone Star Entities have agreed to subordinate this claim under the Plan. In a Chapter 7, the Chapter 7 trustee would likely incur significant expenses related to the litigation with LSF MRA about this claim.

Class 5H: The Debtors scheduled a $227M claim against Holdco for the REIT. As part of the Plan, the REIT has agreed to reduce this claim to $20M. If a settlement is not reached as part of the Plan, the claim may range between $20M and $227M under a Chapter 7 liquidation. In a Chapter 7, the Chapter 7 trustee would likely incur significant expenses related to the litigation with the REIT about this claim.

Class 6H: Under the Plan, claimants under $25K would receive 75%. This Analysis assumes that no creditors over $25K elect to be treated under this class.

Class 7H: Represents the $60M claim of the trust preferred claimants, which are subordinated to classes 4H and 5H. Under the Plan, class 4H and 5H will not assert their subordination rights.

Class 8H: Represents the subordinated guarantee claims of the REIT preferred shareholders.

Class 9H: The Debtors are not aware of any other subordinated claims.

Class 10H: The interests in Holdco will be cancelled pursuant to the Plan.

Accredited Home Lenders - Consolidated Holdco
Liquidation Analysis
($ in 000s)

## I. CALCULATION OF NET ESTIMATED PROCEEDS AVAILABLE FOR ALLOCATION

| | Consolidated Holdco Balances @ 7/31/2010 | The Plan (Chapter 11 Liquidation) Estimated Recovery on Assets | | Chapter 7 Liquidation Estimated Recovery on Assets | | See Note |
|---|---|---|---|---|---|---|
| | | Low | High | Low | High | |
| Cash and Equivalents | $ 4,850 | $ 4,850 | $ 4,850 | $ 2,599 | $ 2,599 | H1 |
| Intercompany Receivable | n/a | - | - | 7,657 | 22,100 | H2 |
| AHL Canada (excluding Cash) | n/a | 19,800 | 24,600 | - | - | H3 |
| Subtotal | | 24,650 | 29,450 | 10,256 | 24,699 | |
| Lone Star Settlement | | - | - | - | - | H4 |
| Avoidance Actions / Other Litigation | | TBD | TBD | TBD | TBD | H5 |
| Total Litigation | | - | - | - | - | |
| **Net Estimated Proceeds Available for Allocation** | | **$ 24,650** | **$ 29,450** | **$ 10,256** | **$ 24,699** | |
| Chapter 7 and 11 Administrative Claims | | | | | | |
| Professional Fees and Corporate Expenses | | - | - | - | - | H6 |
| Inter-Debtor Payment | | 5,000 | 5,000 | 5,000 | 5,000 | H7 |
| Chapter 7 Trustee Fees (3% of Gross Proceeds) | | N/A | N/A | 308 | 741 | H8 |
| Total | | 5,000 | 5,000 | 5,308 | 5,741 | |
| Secured Claims | | - | - | - | - | H9 |
| Priority Claims | | - | - | - | - | H10 |
| **Net Estimated Proceeds Available for Unsecured Creditors** | | **$ 19,650** | **$ 24,450** | **$ 4,948** | **$ 18,958** | |
| Unsecured Claims | | | | | | |
| 3H. General Unsecured Claims Against Consolidated Holdco | | 1,380 | 1,080 | 1,380 | 1,080 | |
| 4H. LSF-MRA, LLC Claims Against Consolidated Holdco | | - | - | 97,000 | 97,000 | |
| 5H. REIT Claims Against Consolidated Holdco | | 20,000 | 20,000 | 227,000 | 20,000 | |
| 6H. Consolidated Holdco Convenience Claims | | 20 | 20 | 20 | 20 | |
| 7H. Trust Preferred Claims Against Consolidated Holdco | | 60,362 | 60,362 | 60,362 | 60,362 | |
| 8H. REIT Pref. Sub. Claims Against Consolidated Holdco | | 102,000 | 102,000 | 102,000 | 102,000 | |
| 9H. Other Subordinated Claims Against Consolidated Holdco | | - | - | - | - | |
| 10H. Interests in Consolidated Holdco | | - | - | - | - | |
| Total | | $ 183,762 | $ 183,462 | $ 487,762 | $ 280,462 | H11 |
| Recovery Waterfall | | | | | | |
| 6H. Consolidated Holdco Convenience Claims | | 15 | 15 | 0 | 2 | |
| 3H. General Unsecured Claims Against Consolidated Holdco | | 332 | 324 | 18 | 115 | |
| 4H. LSF-MRA, LLC Claims Against Consolidated Holdco | | - | - | 1,476 | 15,621 | |
| 5H. REIT Claims Against Consolidated Holdco | | 4,804 | 6,001 | 3,454 | 3,221 | |
| 7H. Trust Preferred Claims Against Consolidated Holdco | | 14,499 | 18,110 | - | - | |
| 8H. REIT Pref. Sub. Claims Against Consolidated Holdco | | - | - | - | - | |
| 9H. Other Subordinated Claims Against Consolidated Holdco | | - | - | - | - | |
| 10H. Interests in Consolidated Holdco | | - | (0) | - | - | |
| Total | | $ 19,650 | $ 24,450 | $ 4,948 | $ 18,958 | |
| 6H. Consolidated Holdco Convenience Claims | | 75.0% | 75.0% | 1.3% | 10.6% | |
| 3H. General Unsecured Claims Against Consolidated Holdco | | 24.0% | 30.0% | 1.3% | 10.6% | |
| 4H. LSF-MRA, LLC Claims Against Consolidated Holdco | | n/a | n/a | 1.5% | 16.1% | |
| 5H. REIT Claims Against Consolidated Holdco | | 24.0% | 30.0% | 1.5% | 16.1% | |
| 7H. Trust Preferred Claims Against Consolidated Holdco | | 24.0% | 30.0% | 0.0% | 0.0% | |
| 8H. REIT Pref. Sub. Claims Against Consolidated Holdco | | 0.0% | 0.0% | 0.0% | 0.0% | |
| 9H. Other Subordinated Claims Against Consolidated Holdco | | n/a | n/a | n/a | n/a | |
| 10H. Interests in Consolidated Holdco | | n/a | n/a | n/a | n/a | |

The accompanying notes are an integral part of the Best Interests Analysis

## Accredited Home Lenders Holding Co., et al.
## Liquidation Analysis
## Assumptions - Consolidated Debtors

**C1. Cash and Equivalents**
The Consolidated Debtors have cash of approximately $8.6M, consisting of $6.1M at Inc (of which $0.9M is related to escheatment funds), and $2.5M at Windsor. Because escheatment claims are treated as unsecured claims in bankruptcy, the escheatment cash is available for general creditors. $1.25M of the Consolidated Debtors' cash relates to proceeds from the litigation with SPS. Although LSFS Mortgage Line has asserted liens against the SPS settlement proceeds, LSFS Mortgage Line would waive the liens it asserts in this cash under the Plan.

**C2. AHL Canada (excluding cash)**
Pursuant to the terms of the Plan, AHL Canada will be transferred by the Consolidated Debtors to Consolidated Holdco. In a Chapter 7 liquidation scenario, AHL Canada would remain an asset of the Consolidated Debtors.

**C3. Advances & Other Receivables**
The Consolidated Debtors are owed approximately $1.8M from certain Lone Star entities for advances and for miscellaneous receivables. The amounts owed by the Lone Star Entities will be compromised as part of the Lone Star settlement under the Plan. Such receivables/advances may be subject to setoff and other defenses.

**C4. Prepaid, Deferred Charges & Deposits**
The Consolidated Debtors have approximately $2.1M of prepaid expenses, deferred charges and deposits. Of this amount, approximately $0.6M relates to retainers to professionals, which will be returned at the end of the case or applied to final fee awards. These amounts are reflected in the administrative fees below. The remaining amounts represent prepaid insurance and software contracts, which likely have no value.

**C5. Goodwill / Intangible Assets**
There is likely no value to any of the Debtors' goodwill or intangible assets.

**C6. Investment in Non Debtor Subsidiaries**
Although the Debtors own the common equity in various entities, the Canada and REIT subsidiaries are the only entities that have assets. Pursuant to the terms of the Plan, the proceeds of the liquidation of Canada will be used to pay creditors of Consolidated Holdco. The REIT's assets consist of cash and various residuals and subordinated bonds related to prior securitizations. Due to the $102M of preferred equity that is senior to the common equity that the Debtors own in the REIT, the Debtors do not expect to receive any value through its common equity ownership interest in the REIT.

In a Chapter 7 liquidation, the proceeds of the liquidation of AHL Canada will be available to pay creditors of the Consolidated Debtors.

**C7. Net PP&E**
The Debtors have sold the vast majority of the Net PP&E throughout the bankruptcy process. The remaining assets (furniture and fixtures, software, phone equipment, computer equipment, etc.) will likely yield less than $50k.

**C8. State Tax Refunds**
The Consolidated Debtors are owed approximately $0.4M for various state tax refunds, the largest of which is owed by Georgia. The Consolidated Debtors expect to receive these refunds over the next twelve months. The Debtors are reviewing other potential state tax refund opportunities, especially related to California, that have not been quantified yet.

**C9. Federal Tax Refund**
Due to the recent changes in the Net Operating Loss ("NOL") carryback laws, the Consolidated Debtors have requested for a refund of previously paid taxes in the amount of $57.3M. The IRS will reduce this amount by the $4.1M that the Consolidated Debtors owe for 2007 taxes resulting in a net receivable of approximately $53.1M. The Debtors expect this refund to be paid in late 2010 after the completion of an IRS audit on 2007 tax year. The funds may not be available for distribution until the completion of any potential 2008 audits.

**C10. AMT Refund**
The IRS has recently informed the Consolidated Debtors of a $2.4M overpayment related to the Alternative Minimum Tax ("AMT") for 2005 and 2006. The Debtors expect this refund to be paid in late 2010 after the completion of an IRS audit on 2007 tax year.

**C11. Amended Federal Tax Refund**
The Consolidated Debtors are in the process of preparing an amended 2008 tax return. This amended return is expected to increase the net operating loss carryback by between $9M and $51M, which is the maximum amount available.

**C12. Lone Star Settlement**
Under the Plan, the Lone Star Entities will pay $15.6M to the Consolidated Debtors to settle potential claims that may be asserted by the Consolidated Debtors. This settlement will include a waiver of all of the Lone Star Entities' claims against the Consolidated Debtors. The Lone Star Settlement is only available as part of the Plan and would not be available in a Chapter 7 liquidation. Furthermore, any potential recoveries in a Chapter 7 liquidation would likely be offset by an increase in litigation costs resulting in no incremental recovery to creditors.

**C13. Avoidance Actions/ Other Litigation**
Because the Plan preserves all of the Consolidated Debtor's claims and avoidance actions against other third parties (except those explicitly released per the Lone Star Settlement), the Debtors have not estimated the recoveries in any scenario.

# Accredited Home Lenders Holding Co., et al.
# Liquidation Analysis
# Assumptions - Consolidated Debtors

**C14. Professional Fees Incurred but not Paid as of 7/31/10**
The Debtors owed approximately $2.8M to professionals as of July 31, 2010, related to invoices that have not yet been paid pending approval by the court (including holdbacks) and estimates of unbilled fees and expenses.

**C15. Other Expenses Incurred but not Paid as of 7/31/10**
The Debtors owe approximately $0.7M for unpaid expenses including rent, payroll, IT costs, and other related administrative expenses.

**C16. Professional Fees Incurred Post-7/31/10**
The amount of future professional fees is highly dependent on the decisions made with regard to the pursuit of the various potential claims against the Lone Star Entities and other third parties. This Analysis assumes that the Debtors' expenses will reduce monthly until the final resolution of these cases.

In a Chapter 7 liquidation scenario, Holdco and the Consolidated Debtors would likely incur additional professional and corporate expenses, which have not been estimated in this Analysis.

**C17. Corporate Expenses Incurred Post -7/31/10**
The Debtors incur approximately $0.1M per month for rent, storage, and other costs. In addition, the Debtors estimate that winding down the Estates will cost approximately $0.6M for items such as termination of data storage, destruction of documents, lease termination and severance. The Debtors are also estimating a $0.8M payment related to D&O insurance in October.

**C18. Inter-Debtor Payment**
The Plan provides for a $5M payment from Consolidated Holdco to the Consolidated Debtors on the Effective Date to reimburse the Consolidated Debtors for administrative expenses previously paid by the Consolidated Debtors. Such a claim would exist in an unliquidated amount in a Chapter 7 liquidation, but would still likely approximate $5M.

**C19. Chapter 7 Trustee**
Chapter 7 Trustee Fees have been calculated based on the 3% of estimated assets available for distribution, which is a simplification of section 326 of the Bankruptcy Code.

**C20. Secured Claims**
Other than de minimis ad valorem tax claims ($79K), the Debtors do not believe that there are any valid secured claims. The Lone Star Entities are releasing its alleged lien on the SPS settlement proceeds pursuant to the Plan.

**C21. Priority Claims**
The Debtors estimate $0.2M of priority claims largely related to employee claims. The Internal Revenue Service ("IRS") has asserted a $4.1M claim for amounts due in 2007 ($3.7M plus interest). Based on the status of the pending audit, this Analysis assumes that the IRS claim will be netted against the federal tax refund discussed in note 9 above.

**C22. Unsecured Claims:**
The Debtors estimate the following ranges for unsecured claims. These estimates may differ substantially from actual allowed claims due to the timing of the claims resolution process.

Class 3C: The Debtors estimate the following ranges of estimates of general unsecured claims
- Accounts Payable: $7M - $12M based on scheduled and filed proofs of claims.
- Lease and Contract Rejection: $15M based on claims adjusted for the caps pursuant to 502(b)(6).
- Litigation: Approximately $15M - $17M based on the current status of negotiations. Many claims have been settled verbally.
- Repurchase: $27M - $36M based on the current status of negotiations. The largest claim has been settled verbally.
- REIT: The Debtors scheduled a $227M claim for the REIT. As part of the Plan, the REIT has agreed to reduce this claim to a $37.5M general unsecured claim and a $15M subordinated claim. If a settlement is not reached as part of the Plan, the claim may range between $52.5M and $227M under a Chapter 7 liquidation.
- Intercompany: In a Chapter 7 liquidation scenario, Consolidated Holdco may have a net $18M claim against the Consolidated Debtors based on pre-petition inter-company activity and an unliquidated claim against the Consolidated Debtors based on the transfer of AHL Canada by Holdco to AHL.
- Other: Approximately $4M - $5M estimate for other miscellaneous claims.

Class 4C: Analysis assumes that all creditors vote for the Plan.

Class 5C: LSF MRA has asserted $97M of claims against Inc related to the MRA transaction. Although the precise amount of this claim is disputed, Lone Star has agreed to waive this claim under the Plan. The Lone Star Entities have also asserted claims related to Caliber and the contested SPS proceeds, which would also be waived under the Plan.

Class 6C: Under the Plan, claimants under $25K would receive 75%. This analysis assumes that no creditors over $25K elect to be treated under this class.

Class 7C: Analysis assumes that there are no subordinated claims.

Class 8C: Analysis assumes that interests in the Consolidated Debtors receive no distribution under either scenario.

Accredited Home Lenders - Consolidated Debtors
Liquidation Analysis
($ in 000s)

### I. CALCULATION OF NET ESTIMATED PROCEEDS AVAILABLE FOR ALLOCATION

| | Consolidated Debtors Balances @ 7/31/2010 | The Plan (Chapter 11 Liquidation) Estimated Recovery on Assets | | Chapter 7 Liquidation Estimated Recovery on Assets | | See Note |
|---|---|---|---|---|---|---|
| | | Low | High | Low | High | |
| Cash and Equivalents | $ 8,592 | $ 8,592 | $ 8,592 | $ 10,843 | $ 10,843 | C1 |
| AHL Canada (excluding Cash) | - | - | - | 19,800 | 24,600 | C2 |
| Advances and Other Receivables | 1,856 | - | - | - | - | C3 |
| Prepaid, Deferred Charges & Deposits | 2,067 | - | - | - | - | C4 |
| Goodwill | - | - | - | - | - | C5 |
| Investment in Non-Debtors | - | - | - | - | - | C6 |
| Net PP&E | - | 25 | 50 | 25 | 50 | C7 |
| State Tax Refunds | 436 | 436 | 436 | 436 | 436 | C8 |
| Federal Tax Refund | 53,100 | 53,100 | 53,100 | 53,100 | 53,100 | C9 |
| AMT Refund | - | 2,400 | 2,400 | 2,400 | 2,400 | C10 |
| Amended Federal Tax Refund | - | 9,300 | 51,300 | 9,300 | 51,300 | C11 |
| Subtotal | 66,050 | 73,853 | 115,878 | 95,904 | 142,729 | |
| | | | | | | |
| Lone Star Settlement | | 15,600 | 15,600 | - | - | C12 |
| Avoidance Actions / Other Litigation | | TBD | TBD | TBD | TBD | C13 |
| Total Litigation | | 15,600 | 15,600 | - | - | |
| | | | | | | |
| **Net Estimated Proceeds Available for Allocation** | | **$ 89,453** | **$ 131,478** | **$ 95,904** | **$ 142,729** | |
| | | | | | | |
| **Chapter7 and 11 Administrative Claims** | | | | | | |
| Professional Fees Incurred but not Paid as of 7/31/10 | | 2,782 | 2,782 | 2,782 | 2,782 | C14 |
| Other Expenses Incurred but not Paid as of 7/31/10 | | 716 | 716 | 716 | 716 | C15 |
| Professional Fees Incurred Post 7/31/10 | | 5,295 | 5,295 | 5,295 | 5,295 | C16 |
| Corporate Expenses Incurred Post 7/31/10 | | 3,074 | 3,074 | 3,074 | 3,074 | C17 |
| Inter-Debtor Payment | | (5,000) | (5,000) | (5,000) | (5,000) | C18 |
| Chapter 7 Trustee Fees (3% of Gross Proceeds) | | N/A | N/A | 2,877 | 4,282 | C19 |
| Total | | 6,867 | 6,867 | 9,744 | 11,149 | |
| | | | | | | |
| Secured Claims | | 80 | 80 | 80 | 80 | C20 |
| | | | | | | |
| Priority Claims | | 157 | 157 | 157 | 157 | C21 |
| | | | | | | |
| **Net Estimated Proceeds Available for Unsecured Creditors** | | **$ 82,349** | **$ 124,374** | **$ 85,923** | **$ 131,344** | |
| | | | | | | |
| **Unsecured Claims** | | | | | | |
| 3C. General Unsecured Claims Against Consolidated Debtors | | 121,486 | 108,486 | 351,237 | 168,337 | |
| 4C. General Unsecured Claims Opting Out of the Creditor Release | | - | - | - | - | |
| 5C. Lone Star Entities Claims Against Consolidated Debtors | | - | - | 97,000 | 97,000 | |
| 6C. Consolidated Debtors Convenience Claims | | 1,214 | 1,214 | 1,214 | 1,214 | |
| 7C. Subordinated Claims Against the Consolidated Debtors | | 15,000 | 15,000 | - | - | |
| 8C. Interests in Consolidated Debtors | | - | - | - | - | |
| Total | | $ 137,700 | $ 124,700 | $ 449,451 | $ 266,551 | C22 |
| | | | | | | |
| **Recovery Waterfall** | | | | | | |
| 6C. Consolidated Debtors Convenience Claims | | 911 | 911 | 232 | 598 | |
| 3C. General Unsecured Claims Against Consolidated Debtors | | 81,439 | 108,486 | 67,147 | 82,948 | |
| 4C. General Unsecured Claims Opting Out of the Creditor Release | | - | - | - | - | |
| 5C. Lone Star Entities Claims Against Consolidated Debtors | | - | - | 18,544 | 47,797 | |
| 7C. Subordinated Claims Against the Consolidated Debtors | | - | 14,978 | - | - | |
| 8C. Interests in Consolidated Debtors | | - | - | - | - | |
| Total | | $ 82,349 | $ 124,374 | $ 85,923 | $ 131,344 | |
| | | | | | | |
| 6C. Consolidated Debtors Convenience Claims | | 75.0% | 75.0% | 19.1% | 49.3% | |
| 3C. General Unsecured Claims Against Consolidated Debtors | | 67.0% | 100.0% | 19.1% | 49.3% | |
| 4C. General Unsecured Claims Opting Out of the Creditor Release | | n/a | n/a | n/a | n/a | |
| 5C. Lone Star Entities Claims Against Consolidated Debtors | | n/a | n/a | 19.1% | 49.3% | |
| 7C. Subordinated Claims Against the Consolidated Debtors | | 0.0% | 99.9% | n/a | n/a | |
| 8C. Interests in Consolidated Debtors | | n/a | n/a | n/a | n/a | |

The accompanying notes are an integral part of the Best Interests Analysis