of Class 3 C and 4 C Allowed Claims are paid in full with interest **as provided under the Plan, and in such event shall receive any Residual Assets upon termination and dissolution of the Liquidating Trust as provided under the Plan**.

**BECAUSE CLASS 7 C SUBORDINATED CLAIMS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTION, THE HOLDERS OF CLASS 7 C SUBORDINATE CLAIMS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

Class 8 C - Interests: Class 8 C consists of the Interests in the Consolidated Debtors. All Interests shall be canceled as of the Effective Date and the Holders thereof shall receive no distribution under the Plan, unless Holders of all Class 7 C Allowed Subordinated Claims against the Consolidated Debtors are paid in full with interest **as provided under the Plan, and in such event shall receive any remaining Residual Assets upon termination and dissolution of the Liquidating Trust as provided under the Plan**.

**BECAUSE CLASS 8 C INTERESTS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTION, THE HOLDERS OF CLASS 8 C INTERESTS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN, AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

4. Intercompany Claims

(a) Inter-Debtor Waivers

By virtue of the compromises and settlement of the issues set forth in the Plan, on the Effective Date, (i) AHL Canada shall pay and satisfy the Claims of the Consolidated Debtors against AHL Canada and after giving effect to such payment, (ii) each Debtor shall waive any defense, including, without limitation, defenses arising under § 502(d) and 553(a) of the Bankruptcy Code, to Intercompany Claims asserted by another Debtor and such claims shall be deemed Allowed Claims, (iii) Intercompany Claims between Debtors shall be deemed to be mutual claims arising prior to the Petition Date for purposes of setoff, (iv) except as provided in Section 3.1 of the Plan, each Debtor shall waive its right to receive any distribution on any Claims and Causes of Action such Debtor may have against another Debtor, and (v) except as provided in Section 3.1 of the Plan, each Debtor shall waive and forever release any right, Claim or Cause of Action which has been or could have been asserted by such Debtor against any other Debtor.

(b) Non-Debtor Subsidiary Waivers

By virtue of the compromises and settlement of the issues set forth in the Plan and except as otherwise provided in this Plan, on the Effective Date, (i) AHL Canada shall pay and satisfy the Claims of the Consolidated Debtors against AHL Canada and after giving effect to such payment, (ii) each Non-Debtor Subsidiary, except REIT and AHL Canada, shall waive any defense, including, without limitation, defenses arising under § 502(d) and 553(a) of the

40

Bankruptcy Code, to Intercompany Claims asserted by another Debtor or Non-Debtor Subsidiary against any Debtor and such claims shall be deemed Allowed Claims, (iii) Intercompany Claims between Debtors and Non-Debtor Subsidiaries, except REIT and AHL Canada, shall be deemed to be mutual claims arising prior to the Petition Date for purposes of setoff, (iv) each Non-Debtor Subsidiary, except REIT, shall waive its right to receive any distribution on any Claims and Causes of Action such Non-Debtor Subsidiary may have against any Debtor, except that the Debtors shall not waive or release any Non-Debtor Subsidiary for any Avoidance Actions, and (v) except as provided in Section 6.2 of the Plan, each Non-Debtor Subsidiary, except REIT, shall waive and forever release any right, Claim or Cause of Action which has been or could have been asserted by such Non-Debtor Subsidiary against any Debtor.

## B.  Convenience Classes

As discussed above, Holders of Convenience Claims will be paid 75% of their Allowed Claims in full in cash upon the Effective Date. However, in exchanged for this favorable treatment, such Holders will not be entitled to receive any further distributions. Holders of Allowed Claims against Consolidated Holdco that are greater than $25,000 must vote to accept the Plan and agree to reduce to their claims to $25,000 in order to receive this favorable treatment. Holders of Allowed Claims against the Consolidated Debtors must agree to reduce their claims to $25,000 (if such Claims are greater than $25,000), vote to accept the Plan, and not opt out of the Creditor Release in order to receive this favorable treatment. Eligible Creditors will have the opportunity to elect for this treatment on the Ballot they receive as part of the process of voting upon the Plan.

## C.  Allowance and Disallowance of Claims and Interests

No distribution shall be made with respect to any Disputed Claim, even if a portion of the Claim is not disputed, until the entire Claim is resolved by a Final Order. At such time as a Disputed Claim becomes an Allowed Claim, the Holder of such Allowed Claim shall receive the cash and/or other distributions to which such Holder is then entitled to under the Plan, but in no event prior to the later of (i) the Distribution Date, (ii) the date that an order regarding such Claim becomes a Final Order or (iii) in accordance therewith when assets become available for distribution to the Holder of such Claim under the Plan.

The Liquidating Trustee shall file objections to Claims or Interests within one hundred eight (180) days of the Effective Date. The Liquidating Trustee may obtain an extension of this date by filing a motion in the Bankruptcy Court, based upon a showing of "cause." Once a Claim or Interest becomes an Allowed Claim or Interest, it will receive the treatment afforded by this Plan.

The deadline for filing with the Bankruptcy Court any and all Claims against the Debtor, other than Administrative Claims and Claims arising from the assumption or rejection of any executory contract or unexpired lease pursuant to the Plan, was October 6, 2009. Any such Claim that was not filed prior to that time, except as otherwise set forth in the Plan or order entered by the Court, is forever barred and shall be conclusively deemed discharged and disallowed for purposes of voting on this Plan or receiving any distributions hereunder.

74392.000009 EMF_US 29471070v11112

**D.     Subordination**

Pursuant to § 510(a) of the Bankruptcy Code, except as otherwise agreed to by a creditor, class of creditors, or as otherwise provided under the Plan, nothing in this Plan is intended to affect the terms or enforceability of any subordination agreement entered into prior to the Effective Date by any creditor or group of creditors in favor of any other creditors of the Debtors in respect of any obligations owing by the Debtors.

**E.     Deemed Consent**

By submitting a Ballot or receiving a Distribution under or any benefit pursuant to the Plan and not electing to withhold consent as provided under the Plan prior to the Confirmation Date, each Holder of a Claim or Interest shall be deemed to have specifically consented to the terms of the Plan, including the releases and treatment contained in the Plan.

**F.     Liquidating Trust**

Except where specifically provided otherwise, the terms of below shall apply to both the Consolidated Debtors Liquidating Trust and the Consolidated Holdco Liquidating Trust and shall be construed according to this principle. Thus, for example, where this Disclosure Statement states, "[t]he Liquidating Trustee for the Liquidating Trust shall be selected by the Debtors," this provision of the Plan should be interpreted as if it states both (a) "[t]he Consolidated Debtors Liquidating Trustee for the Consolidated Debtors Liquidating Trust shall be selected by the Consolidated Debtors" and (b) "[t]he Consolidated Holdco Liquidating Trustee for the Consolidated Holdco Liquidating Trust shall be selected by Consolidated Holdco."

1.     Appointment of Liquidating Trustee

(a)     On or before the Plan Supplement Filing Date, the Consolidated Debtors Liquidating Trustee shall be selected by the Creditors Committee and be reasonably acceptable to the Consolidated Debtors and REIT, and the Holdco Liquidating Trustee shall be selected by the Creditors Committee and be reasonably acceptable to Wells Fargo Bank, as indenture trustee under the Trust Preferred Indenture, and the REIT; provided, however, that none of the Lone Star Entities or their affiliates, officers, directors or employees shall serve as Liquidating Trustee. Prior to the Confirmation Date, the person(s) designated as Liquidating Trustee shall file an affidavit demonstrating that such person is disinterested. If approved by the Bankruptcy Court in the Confirmation Order, the person so designated shall become the Liquidating Trustee of the respective Liquidating Trust on the Effective Date.

(b)     The Liquidating Trustee shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Liquidating Trust Agreement.

2.  Funding of the Holdco Liquidating Trust

The Consolidated Holdco Liquidating Trust will be funded initially by a contribution to the Consolidated Holdco Liquidating Trust Account by Consolidated Holdco equal to its Effective Date Balance less any payments made to the Holders of Allowed Administrative Claims, Holders of Allowed Secured Claims, Holders of Allowed Priority Claims, Holders of Allowed Priority Tax Claims, and Holders of Allowed Convenience Claims against Consolidated Holdco on the Effective Date. The Consolidated Holdco Liquidating Trust shall subsequently be funded from any amounts recovered from the other Proceeds of the Holdco Assets.

3.  Funding of the Consolidated Debtors Liquidating Trust

The Consolidated Debtors Liquidating Trust will be funded initially by a contribution to the Consolidated Debtors Liquidating Trust Account by the Consolidated Debtors equal to their Effective Date Balance less any payments made to the Holders of Allowed Administrative Claims, Holders of Allowed Secured Claims, Holders of Allowed Priority Claims, Holders of Allowed Priority Tax Claims, and Holders of Allowed Convenience Claims against the Consolidated Debtors on the Effective Date. The Consolidated Debtors Liquidating Trust shall subsequently be funded from the other Proceeds of Consolidated Debtors Assets.

4.  Transfer of Liquidating Trust Assets to the Liquidating Trust

On the Effective Date, the Debtors shall transfer and shall be deemed to have irrevocably transferred to the Liquidating Trusts, for and on behalf of the beneficiaries of the Liquidating Trusts, with no reversionary interest in the Debtors, the Liquidating Trust Assets. For the avoidance of doubt, the Consolidated Debtors shall transfer and convey the Consolidated Debtors Liquidating Trust Assets to the Consolidated Debtors Liquidating Trust and Consolidated Holdco shall transfer and convey the Consolidated Holdco Assets to the Consolidated Holdco Liquidating Trust.

5.  The Liquidating Trust

(a)     Without any further action of the directors or shareholders of the Debtors, on the Effective Date, the Liquidating Trust Agreement for the Liquidating Trust, substantially in the form included in the Plan Supplement, shall become effective. On or before the Effective Date, the Debtors and the Liquidating Trustee shall execute the Liquidating Trust Agreements and shall take such other necessary steps to establish the Liquidating Trusts. The Liquidating Trustee shall accept the Liquidating Trust Assets and sign the Liquidating Trust Agreement on the Effective Date and the Liquidating Trust will then be deemed created and effective.

(b)     The Liquidating Trustee shall have full authority to take any steps necessary to administer the Liquidating Trust Assets and the Lone Star Settlement Payment, as applicable, including, without limitation, the duty and obligation to liquidate Liquidating Trust Assets, and to pursue and settle any other trust claims, subject to the approval of the Liquidating Trust Advisory Board and the procedures in the Liquidating Trust Agreements. Upon such transfer (which, as stated above, shall occur on the Effective Date), the Debtors and their Estates shall have no other rights or obligations with respect to the Liquidating Trusts.

74392.000009 EMF_US 29471070v11̶12

(c)     All costs and expenses associated with the administration of the Liquidating Trust shall be the responsibility of and paid by the Liquidating Trust from the Liquidating Trust Assets.

(d)     The Liquidating Trustee may retain such law firms, accounting firms, experts, advisors, consultants, investigators, appraiser, auctioneers or other professionals as it may deem necessary (collectively, the "Liquidating Trustee Professionals"), in its sole discretion, and at the sole expense of the Liquidating Trust, to aid in the performance of its responsibilities pursuant to the terms of this Plan including, without limitation, the liquidation and distribution of Liquidating Trust Assets and the Lone Star Settlement Payment, as applicable.

(e)     The Liquidating Trustee is required to distribute to the holders of Allowed Claims on account of their interests in the Liquidating Trust , on a periodic basis, and at least one per year, all unrestricted Cash on hand (including any Cash received from the applicable Debtors on the Effective Date, and treating any permissible investment as Cash for purposes of this Section 9.6(e)), except such amounts (i) as have been reserved on account of Disputed Claims, or are otherwise part of the claims reserve established by the Liquidating Trustee, (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (iii) as are necessary to pay reasonable incurred or anticipated expenses (including, but not limited to, any taxes imposed on or payable by the Debtors or the Liquidating Trust or in respect of the Liquidating Trust Assets), or (iv) as are necessary to satisfy other liabilities incurred or anticipated by the Liquidating Trust in accordance with the Plan or the Liquidating Trust Agreement; provided, however, that the Liquidating Trustee shall not be required to make a distribution pursuant to this Section 9.6(e) if the aggregate, net amount of unrestricted Cash available for distribution (taking into account the above listed exclusions) is such as would make the distribution impracticable as reasonably determined by the Liquidating Trustee; and provided further that nothing in this Plan shall compel the Liquidating Trustee to treat any tentative Tax Refund(s) obtained pursuant to Tax Code Section 6411 as unrestricted cash until completion of the associated audit by the relevant authorities.

(f)     For federal tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under Treasury Regulation Section 301.7701-4 and that the trust beneficiaries will be treated as grantors and deemed owners of the trust. Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution of an undivided interest in the Liquidating Trust Assets and then contributed such interests to the Liquidating Trust. The Liquidating Trust Agreement shall (i) state that the sole purpose of the Liquidating Trust is to liquidate the Liquidating Trust Assets with no objective to continue or engage in the conduct of a trade or business and (ii) contain a fixed or determinable termination date that is not more than five (5) years from the date of creation of the Liquidating Trust, which termination date may be extended for one or more finite terms subject to the approval of the Bankruptcy Court upon a finding that the extension is necessary to its liquidating purpose. Each such extension must be approved by the Bankruptcy Court within six (6) months before the beginning of the extended term..

(g)     The Liquidating Trustee shall be responsible for filing all federal, state and local tax returns for the Liquidating Trust. The Liquidating Trustee shall file all federal tax returns for

74392.000009 EMF_US 29471070v1112

the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4. The Liquidating Trustee also will annually send to each holder of a Liquidating Trust Interest a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holder's underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns. The Liquidating Trustee shall also file (or cause to be filed) any other statement, return or disclosure relating to the Liquidating Trust that is required by any governmental unit.

(h)     On or before the Effective Date, the Debtors shall provide the Liquidating Trustee with a good-faith valuation of the Tax Refunds as of the Effective Date. As soon as practical after the Effective Date, the Liquidating Trustee shall determine the fair market value, as of the Effective Date, of all other Liquidating Trust Assets, and shall make all such values (including the Tax Refunds value) available from time to time, to the extent relevant, and such values shall be used consistently by all parties to the Liquidating Trust (including, without limitation, the Debtors, the Liquidating Trustee, and Liquidating Trust Beneficiaries) for all United States federal income tax purposes.

(i)     The Consolidated Debtors Liquidating Trustee shall have full and exclusive authority and responsibility with respect to all Tax Refunds to the same extent as if the Consolidated Debtors Liquidating Trustee were Consolidated Holdco, the Consolidated Debtors, debtors, or debtors-in-possession, including the filing of tax returns (including amended tax returns), or requests for refunds for one or more of the Debtors. Without limiting the foregoing, each of the Debtors shall execute, on or prior to the Effective Date, a power of attorney authorizing the Consolidated Debtors Liquidating Trustee to correspond with any tax authority on behalf of such Debtor and to sign, collect, negotiate, settle, and administer the Tax Refunds, tax payments and tax returns. The Consolidated Debtors (and the Consolidated Debtors Liquidating Trustee, as assignee) shall be entitled to the amount of the Tax Refunds. For the avoidance of doubt, Holdco hereby waives and relinquishes any right or interest to the Tax Refunds and the Tax Refunds shall be and is hereby deemed assets and property of the Consolidated Debtors.

6.     Limitation of Liability for Liquidating Trustee

Upon the Effective Date and execution of the Liquidating Trust, the Liquidating Trustee as trustee of the Liquidating Trust, and not personally, shall be vested in all right, title and interest in all Liquidating Trust Assets, and shall have all rights to enforce orders of the Bankruptcy Court entered in this Bankruptcy Proceeding. The Liquidating Trustee shall liquidate the Liquidating Trust Assets and distribute the proceeds thereof in accordance with this Plan and the Liquidating Trust Agreement.

7.     The Liquidating Trust Advisory Boards

(a)     The Liquidating Trust Advisory Boards shall be comprised of up to three (3) members selected by the Creditors' Committee, be reasonably acceptable to the Consolidated

Debtors and the REIT and, in the case of the Holdco Liquidating Trust Advisory Board, be reasonably acceptable to Wells Fargo, as indenture trustee under the Trust Preferred Indenture; provided, however, that none of the Lone Star Entities or their affiliates, officers, directors or employees shall serve on either of the Liquidating Trust Advisory Boards. Written notice of the identities of such members shall be filed with the Bankruptcy Court by the Plan Supplement Filing Date. The Liquidating Trust Advisory Board shall adopt such by-laws as it may deem appropriate. In the event written notice is not filed prior to the Plan Supplement Filing Date, there will be no Liquidating Trust Advisory Board. The Liquidating Trustee shall consult regularly with the Liquidating Trust Advisory Board when carrying out the purpose and intent of the Liquidating Trust. Members of the Liquidating Trust Advisory Board shall be entitled to reimbursement of the reasonable and necessary expenses incurred by them in carrying out the purpose of the Liquidating Trust Advisory Board. Reimbursement of the reasonable and necessary expenses of the members of the Liquidating Trust Advisory Board shall be payable by the Liquidating Trust.

(b)     The Liquidating Trust Advisory Board shall advise and approve the actions of the Liquidating Trustee and have the right and duties as more particularly set forth in the Liquidating Trust Agreements, including, but not limited to, (a) authorize the Liquidating Trustee to commence, continue to prosecute or abandon any Causes of Action; (b) approve the settlement or compromise of any Cause of Action if the amount sought to be recovered in the complaint or other pleadings or documents initiating, evidencing, or stating such Cause of Action exceeds $1,000,000; (c) approve the sale, assignment, or other conveyance or abandonment of any Trust Asset for an amount exceeding $1,000,000 or an asset that has a value in excess of $1,000,000; (d) approve the allowance of any Disputed Claim, if the asserted amount of such claim exceeds $250,000; (e) with respect to the Consolidated Debtors Liquidating Trust, all matters concern the Tax Refunds, and (f) review, contest, or challenge to fees and expenses of the Liquidating Trustee and its professionals.

(c)     In the case of an inability or unwillingness of any member of the Liquidating Trust Advisory Board to serve, such member shall be replaced by designation of the remaining members of the Liquidating Trust Advisory Board. If the Liquidating Trust Advisory Board has only one member and any position on the Liquidating Trust Advisory Board remains vacant for more than thirty (30) days, such vacancy shall be filed within fifteen (15) days thereafter by the designation of the Liquidating Trustee without the requirement of a vote by the other members of the Liquidating Trust Advisory Board.

(d)     Upon the certification by the Liquidating Trustee that all Liquidating Trust Assets have been distributed, abandoned or otherwise disposed of, the members of the Liquidating Trust Advisory Board shall resign their positions, whereupon they shall be discharged from further duties and responsibilities.

(e)     The Liquidating Trust Advisory Board, in its discretion, may remove the Liquidating Trustee by majority vote. In the event the requisite approval is not obtained, the Liquidating Trustee may be removed by the Bankruptcy Court for cause shown. In the event of the resignation or removal of the Liquidating Trustee, the Liquidating Trust Advisory Board shall, by majority vote, designate a person to serve as successor Liquidating Trustee. In the

event the Liquidating trust Advisory Board does not designate a person to serve as successor Liquidating Trustee, the Bankruptcy Court shall make such selection.

(f)     Notwithstanding anything to the contrary in this Plan, neither the Liquidating Trust Advisory Board nor any of its members, designees, or any duly designated agent or representative of any such party shall be liable for the act, default or misconduct of any other member of the Liquidating Trust Advisory Board, nor shall any member be liable for anything other than such member's own gross negligence or willful misconduct. The Liquidating Trust Advisory Board may, in connection with the performance of its duties, and in its sole and absolute discretion, consult with its counsel, accountants or other professionals, and shall not be liable for anything done or omitted or suffered to be done in accordance with such advice or opinions. If the Liquidating Trust Advisory Board determines not to consult with its counsel, accountants or other professionals, that fact alone shall not be deemed to impose any liability on the Liquidating Trust Advisory Board, or its members and/or designees.

(g)     To the extent the Liquidating Trust Advisory Board adopts by-laws, no provisions of such by-laws shall supersede any express provision of the Plan.

### 8.   Transferability

The Debtors shall cause the interests in the Liquidating Trust to be non-transferrable and any such transfer shall be disregarded by the applicable Liquidating Trustee except with respect to a transfer by will or under laws of descent and distribution; provided, however, such transfer will not be effective until and unless the Liquidating Trustee receives written notice of such transfer under the law of descent and distribution.

### 9.   Final Administration of Liquidating Trusts

Upon full administration of the Assets vested in the Liquidating Trust, and the satisfaction as far as possible of all remaining liabilities of the Liquidating Trust, in accordance with the Plan, the Liquidating Trustee, shall: (i) terminate the Liquidating Trust, by filing written notice of termination with the Bankruptcy Court and providing such notice to the Beneficiaries and the United States Trustee; (ii) as soon as practicable after termination of the Liquidating Trust, provide to the United States Trustee, and file with the Bankruptcy Court, a final account and report of Liquidating Trust administration; and (iii) thereupon be forever discharged of and released from all power, duties and responsibilities under the Liquidating Trust Agreement and the Plan. Every effort shall be made to effectuate such termination no later than the time reasonably necessary to accomplish the Liquidating Trust's purpose of liquidating the Trust Assets and distributing the proceeds thereof to the Beneficiaries in accordance with the Liquidating Trust Agreement and the Plan, and in no event shall the Liquidating Trust continue for more than five (5) years after the Effective Date without further order of the Bankruptcy Court.

## G.   Lone Star Settlement

The Plan is deemed to be a motion pursuant to Fed. R. Bankr. P 9019 to authorize a settlement between the Consolidated Debtors and the Lone Star Entities. The provisions of the

Plan are intended to implement the Plan Support Agreement and Term Sheet, and the Plan Support Agreement and Term Sheet provides that it shall be effected through the Plan and is contingent upon confirmation of the Plan and approval of the Plan Support Agreement and Term Sheet in the Confirmation Order. The Plan Support Agreement and Term Sheet as attached hereto to the Plan and all terms therein are to be considered part of the Plan and are incorporated into the Plan by reference, whether or not specifically enumerated elsewhere in the Plan.

All provisions of the Plan Support Agreement and Term Sheet are to be considered non-severable and the Plan and the Plan Support Agreement and Term Sheet are to be considered non-severable. The terms of the Plan Support Agreement and Term Sheet set forth below are for the purpose of summary and convenience only, and are not intended to take precedence over the terms of the Plan Support Agreement and Term Sheet. To the extent the summary provided below conflicts with the terms of the Plan Support Agreement and Term Sheet, the Plan Support Agreement and Term Sheet shall control.

1.    Terms of the Lone Star Settlement. As more fully set forth in the Plan Support Agreement and Term Sheet, attached to the Plan, the general terms of the Lone Star Settlement are:

(a)    Provided that less than 25% in amount of the general unsecured claims against the consolidated debtors eligible to vote on the plan elect treatment as Class 4C Creditors (rather than Class 3C Creditors) and to withhold releases of direct and personal claims (the "Release Requirement"), under the Plan:

(i)    one or more of the Lone Star Entities (other than LSF MRA, LLC) shall make a payment to the Consolidated Debtors in the amount of $15.6 million (the "Lone Star ~~Plan~~Settlement Payment") to be made available to those unsecured creditors (including the REIT) who grant releases as set forth in Section 5.3 of the Plan**, with the Lone Star Settlement Payment being first used to pay Holders of Class 6 C Consolidated Debtor Convenience Claims, and then Holders of Class 3 C General Unsecured Claims against the Consolidated Debtors, and then being transferred into the Consolidated Debtors' Liquidating Trust when the remaining amount is less than $200,000**;

(ii)   the Lone Star Entities shall be deemed to have waived, for purposes of the Plan and receiving distributions hereunder, all claims against the Consolidated Debtors or their respective properties, including those asserted in their Proofs of Claim; and

(iii)  the Lone Star Entities shall be deemed to have subordinated, for purposes of the Plan and receiving distributions thereunder, all claims asserted against Consolidated Holdco in favor of those holders of allowed nonpriority unsecured claims that do not vote to reject the Plan, to the extent such claims of the Lone Star Entities are not disallowed, so that any distributions to the Lone Star Entities on account of claims against Consolidated Holdco will first be distributed to such non-rejecting claims until such claims are paid in full (which distributions shall not be subject to disgorgement); provided, however, that subordination of the claims of the Lone Star Entities against

48

Consolidated Holdco shall not in any way affect or be deemed to affect the availability of such claims for use as setoff or any other defenses of the Lone Star Entities to or against claims against the Lone Star Entities asserted by Consolidated Holdco (including by Consolidated Holdco as assignee of the REIT Releasors), and further provided, that claims, if any, that may be brought by the Consolidated Holdco estates or Consolidated Holdco Liquidating Trustee against any of the Lone Star Entities must be brought within 120 days of the Effective Date unless further extended either by the written consent of the Lone Star Entities or by order of the court not to exceed an additional 120 days; and still further provided, that in the event of any distributions to non-rejecting creditors on account of the claims of the Lone Star Entities, the claims of the Lone Star Entities shall remain available for use by the Lone Star Entities for set off or as defenses, to the extent applicable, as if such distributions had not been made. The Lone Star Entities agree to toll any applicable statute of limitations with respect to any Consolidated Holdco claims set forth in this Paragraph to the end of such 120 day period (and the additional 120 days, if applicable).

(b)     Upon the Effective Date of the Plan, the Lone Star Entities and current and former affiliates and all their respective officers, agents, employees, directors, attorneys, representatives, insurers, predecessors, successors and assigns (other than any Debtor, the REIT or a non-debtor subsidiary of any Debtor) but excluding any attorneys, accountants, auditors, investment bankers, financial or other advisors, consultants or agents that provided professional, accounting, audit or other services to the REIT, Debtors, and non-debtor subsidiaries of any of the Debtors, and further excluding any insurers who provided insurance to the Debtors or any non-debtor subsidiary of the Debtors including the REIT (collectively with the current and former Officers and Directors of the Debtors set forth in the Plan, the "Lone Star Releasees") shall receive a full release of all claims from the estates of the Consolidated Debtors and of all direct and personal claims relating to the Consolidated Debtors and their businesses from individual creditors of the Consolidated Debtors (other than from the REIT) that elect to receive a distribution from the Plan Payment by not electing to withhold releases of direct and personal claims as of the Effective Date. The direct and personal claims of the REIT Releasors shall be treated as follows:

(i)     REIT and the members of the REIT Committee shall release the Lone Star Releasees and the current and former officers and directors (including trustees) of the Debtors but not the current and former directors and officers (including trustees) of the REIT or the Lone Star Releasees in their capacities as directors or officers (or trustees) of the REIT (the "REIT Ds and Os") of all direct and personal claims including any derivative claims held by the REIT that are assertable on behalf of the REIT Preferred Holders.

(ii)     The REIT and the members of the REIT Committee shall assign to Consolidated Holdco (or the Consolidated Holdco Liquidating Trust) all direct and personal claims of the REIT (including any derivative claims held by the REIT that are assertable on behalf of the REIT Preferred Holders) and of such REIT Committee Members against the REIT Ds and Os; provided, however, that the REIT, the members of the REIT Committee and Consolidated Holdco (and the Consolidated Holdco Liquidating Trust and Consolidated Holdco Liquidating Trustee), as assignee, shall be permitted to

satisfy any judgment, settlement or other obligation due on account of any such claims against (i) the personal property or individual assets of any individual REIT Ds and Os up to an aggregate of $5,000,000 for all such claims and (ii) from the proceeds of any insurance policies that provide or are otherwise legally or contractually obligated to provide coverage with respect to the claims against the REIT Ds and Os or from any insurance company that has issued such policy ((i) and (ii) collectively, the "Litigation Recovery Sources"). The rights of any insured or actual or prospective claimant against the policies shall not be altered by the terms of these provisions. For the avoidance of doubt, the rights of the REIT, the members of the REIT Committee (and Consolidated Holdco as assignee of the REIT claims) and the REIT Ds and Os against any of the policies are fully preserved.

(c) The Consolidated Debtors and Consolidated Liquidating or Litigation Trustee agree and covenant not to make, assert or pursue any claim or commence any action or litigation against the Lone Star Releasees or the current and former Directors and Officers of the Debtors released as set forth herein or under or against the D&O Policies. Any release of current or former Directors and Officers of the Debtors as set forth herein shall also be conditioned on such officer or director granting a full release of claims against the Consolidated Debtors and their respective properties (including all claims under or that could be asserted under filed proofs of claim, which claims shall be deemed expunged and relinquished).

(d) The REIT, the members of the REIT Committee, Consolidated Holdco and the Consolidated Holdco Liquidating Trust and Trustee shall agree not to satisfy or attempt to satisfy any judgment, settlement or other obligation due on account of any claims of the REIT or a member of the REIT Committee against the REIT Ds and Os from any source other than from the Litigation Recovery Sources.

## H. Means for Implementation of the Plan

### 1. Substantive Consolidation

Substantive consolidation is an equitable remedy that the Bankruptcy Court may be asked to apply in cases that involve affiliated debtors. As contrasted with procedural consolidation, substantive consolidation may affect the substantive rights and obligations of creditors and debtors. Substantive consolidation involves the pooling and merging of the assets and liabilities of the debtors in the substantively consolidated group; all of the debtors in that group are treated as if they were a single corporate and economic entity for purposes of the plan. The consolidated assets create a single fund from which all claims against each of the consolidated debtors is satisfied. Consequently, a creditor of one of the substantively consolidated debtors is treated as a creditor of the substantively consolidated group of debtors and issues of corporate ownership of property and individual corporate liability on obligations are ignored. However, substantive consolidation does not affect the debtors' separate corporate existence or independent ownership of property for any purposes other than for making distributions of property under a plan of reorganization or otherwise as necessary to implement the plan.

The power to substantively consolidate interrelated bankruptcy estates arises from the general equitable powers of a Bankruptcy Court established in section 105(a) of the Bankruptcy Code. Within this framework, the principal factors to which courts have looked to determine the propriety of substantive consolidation include: (i) whether creditors dealt with the debtor entities as a single economic unit and did not rely on their separate identities in extending credit, and (ii) whether the affairs of the debtors are so entangled that the consolidation will benefit all creditors of the debtors' estates. Additional factors to be considered include: (i) the presence or absence of consolidated financial statements; (ii) the existence of inter-company guaranties or loans; (iii) the unity of interest and ownership between the various corporate entities; (iv) the transfer of assets without formal observance of corporate formalities; (v) the degree of difficulty in segregating and ascertaining individual assets and liabilities; (vi) common directors and/or officers shared by the parents, affiliates and subsidiaries; (vii) a parent or its affiliates financing one another; and (viii) commingling of assets and business functions.

The Plan provides for the Estates of AHL, Inc., Inzura Services, Inc., and Windsor Management Co., d/b/a AHL Foreclosure Services Co. to be substantively consolidated for purposes related to the Plan and any distributions made thereunder. The Plan also provides for the Estate of Accredited Home Lenders Holding Co. to be substantively consolidated with the Estate of its wholly-owned subsidiary, Vendor Management Services, L.L.C, d/b/a Inzura Settlement Services. As discussed above, Intercompany Claims amongst the Estates being consolidated shall be released, all Claims against any of the Estates being consolidated shall be deemed filed against the relevant consolidated Estate, which shall be deemed a single obligation of the relevant Estate, and the Estates shall be effectively treated as one entity for purposes of distribution. The Debtors believe that the substantive consolidation of these Estates in this manner will facilitate confirmation of the Plan, foster similarity and fairness of treatment of Holders of Claims of similar priority, and will not have a materially adverse impact upon the distributions to unsecured creditors.

2. Settlement Amongst the Estates

The allocation of certain Assets is an integral component of the comprehensive compromise and settlement concerning Intercompany Claims and intra-Debtor issues as determined in light of a number of facts, including, but not limited to, (i) respective legal claims, rights and entitlements of the Debtors, (ii) validity and enforceability of Intercompany Claims, (iii) Intercompany Claims not reflected as inter-company payables or receivables in the Debtors' books and records, (iv) relative value of Assets under administration in each Debtor, (v) Intercompany Claims for contribution or reimbursement, (vi) the necessity of resolving inter-Estate and inter-Debtor issues and disputes through the Plan, and (vii) administration and liquidation of Trust Assets unfettered or effected by inter-Estate or inter-Debtor conflicts of interest or multiple claims. **As part of the process of settling the Intercompany Claims and intra-Debtor issues, AP Services performed an analysis of the administrative claims incurred by the Debtors on a project by project basis, the results of which have been factored into the proposed settlement among the estates.**

74392.000009 EMF_US 29471070v1112

In order to facilitate an orderly wind down of these estates, the Debtors have agreed to settle a number of disputes that may exist among the Debtors. Among the disputes that exist are the following:

- The potential cause of action between Holdco and AHL, Inc. relating to the transfer of ownership of AHL Canada from Holdco to AHL, Inc. and the transfer of ownership of the REIT from AHL, Inc. and Holdco;

- Intercompany Claims between AHL, Inc. and Holdco, including the scheduled Claim of Holdco against AHL, Inc.;

- A potential dispute among the Debtors over the ownership of the Tax Refunds;

- A potential dispute over the allocation of professional fees and administrative expenses among the various Debtors.

The general terms of the settlement set forth in the Plan include the following:

- The interests of AHL, Inc. in AHL Canada, the subsidiaries thereof, and the proceeds therefrom shall be transferred to the Consolidated Holdco Liquidating Trust, after AHL Canada satisfies the Claims of the Consolidated Debtors against AHL Canada. By unwinding this transfer without litigation, AHL Canada's assets, which have an estimated value of $19M to $27M, will be distributed to the Consolidated Holdco Creditors;

- All cash held by Vendor Management Services, Inc. will be transferred to the Consolidated Holdco Liquidating Trust;

- All of the Debtors' rights in the D&O Policies and the proceeds thereof shall be transferred to the Consolidated Holdco Liquidating Trust;

- The REIT shall transfer (i) its direct and personal claims against the REIT Ds and Os and (ii) its interest in the D&O Policies to the Consolidated Holdco Liquidating Trust, subject to the cap on those individuals' liability of $5,000,000 per-person, as provided in the Plan;

- The Consolidated Debtors shall be responsible for 75% of Professional Fee Administrative Claims and CRO fees and expenses, and Consolidated Holdco shall be responsible for 25% of such claims and costs;

- Any Tax Refunds received by the Debtors, any rights to receive any Tax Refunds, whether contingent, disputed, or unliquidated, and any proceeds of any Tax Refunds, shall be vested in the Consolidated Debtors Liquidating Trust and shall be paid to the Consolidated Debtors Liquidating Trust in the same manner that such Tax Refunds would be paid to the Debtors or original taxpayers, and shall be distributed to the Consolidated Debtor's Creditors;

- The Common Securities in the Accredited Preferred Securities Trust I shall be transferred by Holdco to the Consolidated Debtors Liquidating Trust;

- **The equity interest in the REIT held by Holdco shall be abandoned;** and

- All rights and interests in the First American Trust FSB Deferred Compensation Trust settlement payment shall be transferred to the Consolidated Debtors Liquidating Trust.

Further, except for any claims related to the payment of Professional Fee Claims and CRO fees and expenses, as set forth above, all intercompany claims between and among the Debtors shall be released.

3. Injunction

Since the Petition Date, the Debtors and their Assets have enjoyed the protection of the "automatic stay," a provision in section 362 of the Bankruptcy Code. The automatic stay prohibits, among other things, the commencement or continuation of a judicial, administrative, or other action or proceeding against the Debtors. The automatic stay also prohibits the enforcement of any judgment against the Debtors, any act to obtain possession of the Debtors' property or to exercise control over the Debtors' property, and any act to collect, assess, or recover a Claim against the Debtor. The automatic stay channels the Claims of Creditors through the bankruptcy process, thereby ensuring that equally-situated creditors receive equal treatment.

Under the Plan, the Court will enter an Injunction that will continue to provide the Debtors, the Liquidating Trust, the Liquidating Trustee, and their agents, successors, and assigns with the protections of the automatic stay until all distributions are made from the Liquidating Trust and the Bankruptcy Proceeding is closed.

However, this continuing Injunction shall not prohibit the commencement or continuation of any proceedings against the Debtors or real property in which the Debtors may have an interest, provided that those proceedings do not affect or give rise to any enforceable Claims against the Debtors, the Liquidating Trust, the Liquidating Trustee, their respective agents, successors, and assigns, and their property. To the extent an un-stayed legal proceeding does give rise to a judgment, order, declaration, or claim that affects the Debtors, the Liquidating Trusts, the Liquidating Trustees, their respective agents, successors, and assigns, and their property, such judgment, order, declaration, or claim shall be void.

This exception to the Injunction is designed to allow legal proceedings in which the Debtors must be included as nominal parties to continue as normal without further order of the Bankruptcy Court, while protecting the Assets of the Debtors and the Liquidating Trusts and ensuring that similarly-situated Claim Holders continue to receive equal treatment.

4. United States Trustee Fees

On and after the Effective Date, all fees payable to the United States Trustee shall be paid as and when due by the Liquidating Trustee, which payments shall be considered a reasonable expense of the Liquidating Trust.

5. REIT Adversary

The Plan is deemed to be a motion pursuant to Sections 363 and 1123 of the Bankruptcy Code and Fed. R. Bankr. P. 9019 to authorize a settlement between the Creditors Committee, the Debtors and REIT resolving the REIT Adversary as more particularly described in the Plan Support Agreement and Term Sheet. The Confirmation Order shall include approval of the settlement of the REIT Adversary, and, upon the Effective Date, the REIT Adversary shall be resolved and the REIT shall have as Allowed Claims: (1) an Allowed Unsecured Claim against the Consolidated Debtors in the amount of $37.5 Million, which Claim shall be included in and receive the same treatment as Class 3 C; (2) an Allowed subordinated Unsecured Claim against the Consolidated Debtors in the amount of $15 Million, which Claim shall be included in and receive the same treatment as Class 7 C; and (3) an Allowed Unsecured Claim against Consolidated Holdco in the amount of $20 Million, which Claim shall be included in and receive the same treatment as Class 5 H.

6. Debtors' Continued Cooperation

On or after the Effective Date, the Debtors shall provide such reasonable cooperation to effectuate the provisions of the Plan the Liquidating Trustee might reasonably request, including, but not limited to, executing such documents as might be reasonably requested to carry out the terms of the Plan.

7. Debtors' Continued Cooperation

From and after the Effective Date, the Debtors shall remain in existence for the sole purpose of winding up the Debtors' businesses and transferring the Assets to the applicable Liquidating Trust. Upon the completion of such liquidation and the entry of the Final Decree, the Liquidating Trustee may file a certificate of dissolution as to each of the Debtors. The Liquidating Trustee shall not be compelled to dissolve any Debtor if to do so would unduly burden the Liquidating Trust. On the Effective Date, the officers and the directors of the Debtors shall cease to serve and the Liquidating Trustee, as applicable, or their respective designee, shall be deemed the sole director and officer of each Debtor for all purposes.

8. Debtors' Continued Existence

On or after the Effective Date, the Debtors shall provide such reasonable cooperation to effectuate the provisions of the Plan the Liquidating Trustee might reasonably request, including, but not limited to, executing such documents as might be reasonably requested to carry out the terms of the Plan.

9. Debtors' Books and Records

On the Effective Date, the Debtors' books and records, in any form, including all electronic records, shall be transferred to the respective Liquidating Trust. Such Liquidating Trustee shall be free, in his or her discretion, to abandon, destroy, or otherwise dispose of those books and records in compliance with applicable non-bankruptcy law, provided, however that, in the Liquidating Trustee's discretion, these books and records may be destroyed or disposed of beginning two (2) year after the Effective Date notwithstanding any applicable laws, rules, or regulations that would have required the Debtors to retain such books and records. While these

books and records are retained, each Liquidating Trustee shall take all reasonable steps necessary to comply with requests of the other Liquidating Trustee to share the information contained therein with or provide copies of those books and records to the other Liquidating Trustee, at the expense of the requesting entity.

10. Privileges

All Privileges shall be transferred, assigned and delivered to the Liquidating Trusts, without waiver or release, and shall vest with the Liquidating Trustee. The Liquidating Trustee shall hold and be the beneficiary of all Privileges and entitled to assert all Privileges. No Privilege shall be waived by disclosures to the Liquidating Trustees of the Debtors' documents, information or communications subject to attorney-client privileges, work product protections or immunities or protections from disclosure jointly held by the Debtors and the Creditors Committee.

11. Dissolution of Creditors Committee

On the fifth (5th) Business Date following the Effective Date, and provided the Liquidating Trusts have become effective as provided under the Plan, the Creditors Committee will be dissolved and the Creditors Committee and its members shall be released and discharged from the rights and duties arising from or related to these chapter 11 cases and the retention or employment of the Creditors Committee professionals shall terminate, except with respect to final applications for professionals' compensation, provided that the Creditors Committee shall continue for the sole purpose of reviewing and taking any appropriate action (including, without limitation, filing objections thereto) in connection with Professional Fee Claims. The professionals retained by the Creditors' Committee and the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered or expenses incurred after the fifth (5th) Business Day following the Effective Date, except for (i) services rendered and expenses incurred in connection with any applications by such professionals or Creditors Committee members for allowance of compensation and reimbursement of expenses pending on the Effective Date or timely Filed after the Effective Date as provided in this Plan, as approved by the Court, (ii) services rendered and expenses incurred as requested by the Creditors Committee in connection with Professional Fee Claims and (iii) services rendered or expenses incurred with respect to implementation or enforcement of the Plan. Notwithstanding the foregoing, the Creditors Committee may, at its own discretion, continue or resume its duties arising from or related to any pending litigation, contested matter, adversary proceeding or appeal to which it is a party and, in such a case, the Liquidating Trustee shall compensate the post-Effective Date fees and expenses of the Creditors Committee's professionals.

**12. Accredited Preferred Securities Trust I Termination.**

**On the Effective Date all of the agreements and other documents evidencing the claim or right of any Holder against the Debtors pursuant to or related to the Trust Preferred Common Securities, Trust Preferred Guarantee, Trust Preferred Indenture, Trust Preferred Note, Trust Preferred Note Claims, and/or Trust Preferred Securities shall be (i) automatically cancelled, discharged, terminated, and of no further force and effect,**

**and (ii) deemed surrendered without any further act by the Debtors or the Trust Preferred Indenture Trustee under any applicable agreement, law, regulation, order, or rule. However, the Trust Preferred Common Securities, Trust Preferred Guarantee, Trust Preferred Indenture, Trust Preferred Note, Trust Preferred Note Claims, and Trust Preferred Securities shall continue in effect solely for the purposes of (A) (i) permitting the Trust Preferred Indenture Trustee to make any distributions on account of Allowed Class 7 H Claims pursuant to this Plan and perform such other necessary administrative functions with respect thereto, (ii) permitting the Trust Preferred Indenture Trustee to receive any payments it is entitled to under the Trust Preferred Indenture and exercise any rights it is entitled to exercise under the Trust Preferred Indenturs; and (B) permitting Kodiak CDO I Ltd., Kodiak CDO II Ltd., and the Trust Preferred Indenture Trustee (i) to continue to participate in the prosecution, mediation, or settlement of the Trust Preferred Adversary Proceeding, or to appeal any order or decision arising from the Trust Preferred Adversary Proceeding, and (ii) to bring any other action, suit, or proceeding against the Lone Star Entities or any other persons or entities (other than the Debtors) relating to, arising from, or in connection with the Trust Preferred Common Securities, Trust Preferred Guarantee, Trust Preferred Indenture, Trust Preferred Note, Trust Preferred Note Claims, and/or Trust Preferred Securities, and to participate in the prosecution, mediation, and/or settlement of such action, suit, or proceeding, or to appeal any order or decision in such action, suit, or proceeding, provided that such action is not a Consolidated Holdco Asset or Consolidated Debtors Asset.**

## I.  Executory Contracts and Unexpired Leases

The following shall be the treatment of Executory Contracts:

1.  Rejection of Certain Executory Contracts

All executory contracts and unexpired leases, other than those executory contracts and unexpired leases which (i) were executed subsequent to the Petition Date, or (ii) have not expired by their own terms prior to the Confirmation Date, and other than those executory contracts and unexpired leases regarding which an Order has been entered prior to the Effective Date authorizing assumption thereof, shall be deemed rejected upon the Confirmation Date except for any executory contract or unexpired lease that is specifically designated to be assumed or has been assumed or assumed and assigned.

2.  Indemnification Agreements.

The obligations of the Consolidated Debtors to indemnify any person having served as an officer or director of the Consolidated Debtors, to the extent provided in any of the Consolidated Debtors' corporate governance documents or by written or other agreement or applicable law, shall be terminated and extinguished and, to any extent necessary, deemed an executory contract, terminated and rejected under the Plan.  Notwithstanding the foregoing, this provision will not limit or modify any indemnification obligations approved by this Court.

3.  Employee Agreements.

On or before the Plan Supplement Filing Date, the Debtors will negotiate employment or consulting contracts with any current employees necessary to wind down the Debtors' Estates, such contracts to be reasonably acceptable to the Creditors Committee. On the Effective Date, the Debtors' remaining employees will receive a payment equal to ~~three~~five (~~3~~5) months salary, which payment shall be in satisfaction of any prior arrangements, agreement or employment policies with the Debtors.

4.    Insurance Policies.

To the extent that any and all insurance policies including the D&O Policies are considered executory contracts, then notwithstanding anything contained in the Plan to the contrary, such insurance policies shall be deemed assumed and assigned to the respective Liquidating Trust. Unless otherwise determined by the Bankruptcy Court, pursuant to a Final Order, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such policy. For the avoidance of any doubt, all rights under any insurance policy, including the D&O Policies, that is not an executory contract, and all rights under any other insurance policies under which the Debtors may be beneficiaries, shall be preserved and shall vest with the respective Liquidating Trust; and, nothing herein shall alter or adversely affect the rights of any non-Debtor beneficiaries of or covered persons under such insurance policies  .

5.    Bar Date For Rejection Damage Claims

Any party to an executory contract or unexpired lease not previously assumed or rejected and to which no bar date has been established, which is assumed or rejected pursuant to this Plan or is the subject of a pending rejection motion, is required under the terms of this Plan to file a claim for amounts due as a result of such assumption or rejection by the Rejection Bar Date; provided, however, if a motion seeking assumption or rejection is not heard and determined prior to the Effective Date, any Claim based thereon shall be filed within thirty (30) days of entry of an Order ruling on the motion. Any Allowed Claim relating to the rejection of executory contracts or leases shall be treated as a Class 3H or 3C Unsecured Claim depending on the Debtor counter-party to such executory contract or unexpired lease. Any Allowed Cure Claim relating to the assumption of executory contracts or leases pursuant to the Plan shall be paid in full from the Effective Date Distribution to the extent Finally Determined as of the Effective Date, or, to the extent thereafter, from an Interim Distribution or Subsequent Distribution by the applicable Liquidating Trustee. Any such claim not filed by the Rejection Bar Date as provided in the Plan shall be forever barred and shall not be enforceable against the Debtors or their properties or the Liquidating Trusts and the Debtors and Liquidating Trusts shall have no obligation to pay the same.

J.    **Vesting of Assets**

1.    Consolidated Debtors

Except as otherwise provided in this Plan, the Consolidated Debtors Liquidating Trustee shall be vested, as of the Effective Date, with all of the Consolidated Debtors Liquidating Trust

Assets free and clear of all claims, liens, encumbrances, charges, and other interests of holders of Claims against, or Interests in, the Debtors and their Property.

2.    Consolidated Holdco

Except as otherwise provided in this Plan, the Consolidated Holdco Liquidating Trustee shall be vested, as of the Effective Date, with all of Consolidated Holdco Liquidating Trust Assets free and clear of all claims, liens, encumbrances, charges, and other interests of Holders of Claims against, or Interests in, the Debtors and their Property.

3.    ~~Consolidated Holdco~~Unclaimed Property

Notwithstanding any local, state, federal, or other laws or regulations regarding unclaimed property or escheatment of property, all funds or other property possessed by the Debtors on the Effective that is unclaimed, subject to escheatment, or potentially subject to escheatment shall be treated as Assets of such Debtors under this Plan, and shall accordingly be transferred to, vested with, and become the property of the applicable Liquidating Trustee to be held and distributed pursuant to the terms of this Plan free and clear of all such laws or regulations, and free and clear of any other claims, liens, encumbrances, charges, and other interests in such property.

## K.    Distributions

As set forth in the Plan, the Debtors or the Liquidating Trustee shall make all distributions under the Plan. To the extent required by applicable law, distributions that are cash shall be in compliance with all tax withholding and reporting requirements imposed by any governmental unit, and all distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Debtors or the Liquidating Trustee may withhold the entire cash distribution due to any holder of an Allowed Claim or Allowed Interest until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit.

1.    Manner of Cash Payments Under this Plan

Cash payments to domestic persons holding Allowed Claims or Allowed Interests will be tendered in United States dollars and will be made by checks drawn on a United States domestic bank or by wire transfer from a United States domestic bank. Any domestic person holding a Claim or Interest that wishes to receive a Cash payment by wire transfer shall provide wire instructions to the Debtors or the Liquidating Trustee. In any such case, the Debtors or the Liquidating Trustee shall make the Cash payment(s) by wire transfer in accordance with the wire instructions, provided that the costs of such wire transfer shall be deducted from such entity's distribution. Payments made to foreign creditors holding Allowed Claims or Allowed Interests may be paid or be caused to be paid, at the option of the Debtors or the Liquidating Trustee, as applicable, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

2.   No *De Minimis* Distributions

Notwithstanding anything to the contrary in this Plan, no cash payment of less than $50 will be made to any person. No consideration will be provided in lieu of the *de minimis* distributions that are not made under Section 10.14(b) of the Plan, and the Debtors or the respective Liquidating Trustee shall be authorized to remit such amounts to a charitable organization that is a tax exempt organization under § 501(c)(3) of the Internal Revenue Code.

3.   Distributions to Holders as of the Distribution Record Date

At the close of business on the Distribution Record Date, the claims register shall be closed, and there shall be no further changes in the record Holder of any Claim or Interest. The Debtors or the Liquidating Trustee or any other party responsible for making distributions under this Plan shall have no obligation to recognize any transfer of any Claim or Interest occurring after the Distribution Record Date; and shall instead be authorized and entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the claims register and stock transfer books as of the close of business on the Distribution Record Date.

4.   Delivery of Distributions and Undeliverable/Unclaimed Distributions

(a)   Delivery of Distributions in General.

The Debtors or the Liquidating Trustee shall make distributions to each Holder of an Allowed Claim by mail as follows: (a) to the address set forth on the proof of claim filed by such holder of an Allowed Claim; (b) to the address set forth in any written notice of address change delivered to the Debtors or the Liquidating Trustee after the date of any related proof of claim; and (c) to the address reflected in the Schedules if no proof of claim is filed and the Debtors or the Liquidating Trustee has not received a written notice of a change of address.

The Debtors or the Liquidating Trustee may withhold the entire distribution due to any Holder of an Allowed Claim or Allowed Interest until such time as the holder provides the Debtors or the Liquidating Trustee with the information necessary to make a distribution to such holder in accordance with this Plan and applicable law, and Holders of Allowed Claims or Allowed Interests who do not provide such information may be barred from participating in distributions under the Plan.

(b)   Undeliverable and Unclaimed Distributions.

If the distribution to the Holder of any Allowed Claim or Allowed Interest is returned as undeliverable, no further distribution shall be made to such Holder unless and until the Liquidating Trustee is notified in writing of such Holder's then current address. Insofar as a distribution is returned to the Liquidating Trustee as undeliverable, the Liquidating Trustee shall remit the undeliverable distribution back to the account established by the Liquidating Trustee as soon as is practicable. Subject to the other provisions of the Plan, undeliverable distributions shall remain in the possession of the Liquidating Trustee until such time as a distribution becomes deliverable. All undeliverable Cash distributions will be held in unsegregated, interest-bearing bank accounts for the benefit of the entities entitled to the distributions. These entities

59

will be entitled to any interest actually earned on account of the undeliverable distributions. The bank account will be maintained in the name of the Liquidating Trustee, but it will be accounted for separately.

Any Holder of an Allowed Claim or Allowed Interest who does not assert a claim in writing for any undeliverable distribution within one (1) year after such distribution was first made shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any distributions under this Plan, or from asserting a Claim against or Interest in the Debtors, the Estate, or their respective property, and the Claim or Interest giving rise to the undeliverable distribution will be barred.

Any undeliverable distributions that are not claimed under this Section will be transferred to the account maintained by the Liquidating Trustee to be paid or caused to be paid to the other holders of Allowed Claims or Allowed Interests.

## L.    Releases & Exculpations

### 1.    Creditor Releases

**Subject to Section 12.3 of the Plan, upon the Effective Date of the Plan, the Lone Star Entities and current and former affiliates and all their respective officers, agents, employees, directors, attorneys, representatives, insurers, predecessors, successors and assigns (other than any Debtor, the REIT or a non-debtor subsidiary of any Debtor) but excluding any attorneys, accountants, auditors, investment bankers, financial or other advisors, consultants or agents that provided professional, accounting, audit or other services to the REIT, the Debtors and the Non-Debtor Subsidiaries, and further excluding any insurers who provided insurance to the Debtors or any non-debtor subsidiary of the Debtors including the REIT (collectively the "Lone Star Releasees," with the current and former officers and directors of the Debtors set forth on Exhibit "B" attached to the Plan) shall receive a full release of all claims from the Estates of the Consolidated Debtors and of all direct and personal claims relating to the Consolidated Debtors and their businesses from individual creditors of the Consolidated Debtors (other than from REIT) that elect to receive a distribution from the Lone Star Settlement Payment by not electing to withhold releases of direct and personal claims as of the Effective Date, which shall be the Holders of Claims in Class 3 C and Class 6 C.**

### 2.    Consolidated Debtors Covenant Not to Sue

**The Consolidated Debtors and Consolidated Liquidating Trustee agree and covenant not to make, assert or pursue any claim or commence any action or litigation against the Lone Star Releasees or the current and former directors and officers of the Debtors released as set forth in the Plan or under or against the D&O Policies; provided, however, this covenant and any release of current or former Directors and Officers of the Debtors as set forth in the Plan shall be conditioned on such officer or director granting a full release of claims against the Consolidated Debtors and their respective properties**

(including all claims under or that could be asserted under filed proofs of claim, which claims shall be deemed expunged and relinquished).

3. Exculpation

Neither the Debtors and their officers, directors, managers, employees or professionals, the Creditors Committee and its professionals and advisors and members in their capacity as members of the Creditors Committee and their respective professionals and advisors, the Consolidated Debtors Liquidating Trust, the Consolidated Debtors Liquidating Trustee, the Consolidated Holdco Liquidating Trust, nor the Consolidated Holdco Liquidating Trustee will have or incur any liability to any Holder of a Claim or Interest or any other entity for any act or omission in connection with, or arising out of, the Bankruptcy Proceeding, including but not limited to the formulation, preparation, dissemination, approval, confirmation, administration, or consummation of the Plan Support Agreement and Term Sheet, the Plan, or the Disclosure Statement, the solicitation of votes for or confirmation of the Plan, or implementation, consummation, or administration of the Plan or the property to be distributed under the Plan, or any compromises and settlements under the Plan, except for liability arising from conduct constituting willful misconduct or gross negligence pursuant to a Final Order. The foregoing parties will be entitled to rely upon the advice of counsel in all respects regarding their duties and responsibilities under the Plan.

M. Preservation of Debtors' Causes of Action

The Plan provides for the establishment of the Liquidating Trusts to, in part, prosecute or settle and reduce to cash Debtor and estate claims not released under the Plan. The assets of the Liquidating Trust will include Debtor and estate claims. The resolution and recovery of these Debtor and estate claims and the process and mechanisms to litigate or settle these claims are significant and important aspects of the Plan. These claims include, but are not limited to, Debtor and estate claims against non-released officers and directors of the Debtors, professionals of the Debtors, accountants and auditors of the Debtors and affiliates and insiders of the Debtors. Unless a claim against a Creditor or other Entity or Cause of Action is expressly waived, relinquished, released, compromised or settled in this Plan, or any Final Order, the Debtors expressly reserve such claim or Cause of Action for later enforcement by the Liquidating Trusts (including, without limitation, claims and Causes of Action not specifically identified or which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances which may change or be different from those which the Debtors no believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the confirmation or consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, expect where such claims or Causes of Action have been expressly released in this Plan or other Final Order. In addition, the Liquidating Trusts expressly reserve the right to pursue or adopt any claim, crossclaim or counterclaims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any person or entity,

61

including, without limitation, the plaintiffs or co-defendants in such lawsuits, subject to the provisions of this Plan or any Final Order.

## N. Plan Injunction

From and after the Confirmation Date, and as provided for by the Confirmation Order, there shall be in place with regard to the Liquidating Trust, the Assets, and any Claims, the Injunction, which shall have the same extent and with the same effect as the stay imposed by § 362 of the Bankruptcy Code, as modified by orders entered by the Bankruptcy Court in this Bankruptcy Proceeding. The Injunction will remain in effect until the Bankruptcy Proceeding is closed pursuant to § 350 of the Bankruptcy Code except as otherwise expressly provided herein. Except as provided elsewhere in this Plan, all Holders of Claims or Interests shall be precluded and enjoined by the Injunction from asserting any Claim against the Debtors, the Consolidated Debtors Liquidating Trust, the Consolidated Debtors Liquidating Trustee, the Consolidated Holdco Liquidating Trust, the Consolidated Holdco Liquidating Trustee, and their respective agents, successors, and assigns, and also from asserting any other and further Claim based on any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, against the Debtors, the Consolidated Debtors Liquidating Trust, the Consolidated Debtors Liquidating Trustee, the Consolidated Holdco Liquidating Trust, and the Consolidated Holdco Liquidating Trustee, as representatives of the Estate, as well as their successors or their respective agents, successors, and assigns, whether or not the holder filed a proof of claim. Nothing herein shall prohibit action against the Debtors and only the Debtors and their assets after dissolution of the Injunction.

Notwithstanding the rest of this Plan, the Injunction imposed in the Plan shall not apply to prevent the commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtors or any real property in which the Debtors may have an interest; provided, however, that any order entered or judgment, fine, sanction, penalty, declaration, determination, or monetary award assessed against the Debtors in such an action proceeding may not be enforced against the Debtors, the Consolidated Debtors Liquidating Trust, the Consolidated Debtors Liquidating Trustee, the Consolidated Holdco Liquidating Trust, the Consolidated Holdco Liquidating Trustee, and their respective agents, successors, and assigns, that such an award or determination shall not give rise to an Allowed Claim, and that any judgment, fine, sanction, penalty, declaration, determination, award, or other action which affects property of the Debtors, the Consolidated Debtors Liquidating Trust, the Consolidated Debtors Liquidating Trustee, the Consolidated Holdco Liquidating Trust, or the Consolidated Holdco Liquidating Trustee, creates personal liability for the agents, successors, and assigns of the Debtors, or creates personal liability for the Consolidated Debtors Liquidating Trust, the Consolidated Debtors Liquidating Trustee, the Consolidated Holdco Liquidating Trust, the Consolidated Holdco Liquidating Trustee, and their respective agents, successors, and assigns, shall be void. Nothing in the Plan shall prevent the Court from modifying the Injunction at the request of any party, upon notice and a hearing.

74392.000009 EMF_US 29471070v1112

**O.    Conditions Precedent to Effective Date of Plan.**

The occurrence of the Effective Date and the substantial consummation of the Plan are subject to the satisfaction of the following conditions precedent:

(a)    The receipt by the Consolidated Debtors of the Lone Star Settlement Payment;

(b)    Assignment of the REIT Claims to the Consolidated Holdco Liquidating Trust;

(c)    The Confirmation Order shall be entered by the Court;

(d)    The Confirmation Order shall be in form and substance reasonably acceptable to the Debtors, the Creditors Committee, the REIT, and the Lone Star Entities;

(d)    The Plan Support and Term Sheet shall not have terminated by its terms;

(e)    The Debtors shall have sufficient cash and assets to permit compliance with the terms and conditions of the Plan, including, projected fees and expenses; and

(f)    The Liquidating Trusts are created pursuant to the terms of the Plan once the Bankruptcy Court has approved the indemnity provisions and appointed the Liquidating Trustees and approved the Liquidating Trust Agreements in form and substance acceptable to the Creditors Committee.

To the extent practicable and legally permissible, each of the conditions, other than 11.1(a), (b), (c), and (d) may be waived, in whole or in part, by the Debtors, subject to approval of the Creditors Committee and the Lone Star Entities.

**P.    Retention of Jurisdiction**

1.    General Scope of Retention of Jurisdiction

Following the Effective Date, the Bankruptcy Court shall retain jurisdiction over these Cases to the extent legally permissible, including without limitation such jurisdiction as is necessary to ensure that the purposes and intent of the Plan are carried out.

2.    Claims and Actions

The Bankruptcy Court shall retain jurisdiction (a) to classify, resolve objections to, and determine or estimate pursuant to Bankruptcy Code § 502(c) all Claims against, and Interests in, the Debtors and (b) to adjudicate and enforce all claims and causes of action owned by the Debtors or either Liquidating Trust.

3.  Specific Jurisdiction

Without in any way limiting the scope of the Bankruptcy Court's retention of jurisdiction over these Cases as otherwise set forth in the Plan, the Bankruptcy Court shall retain jurisdiction for the following specific purposes:

(a)  To determine the classification, allowance or disallowance of all Claims or Interests, including, without limitation, Claims and objections relating to the assumption or rejection of executory contracts or unexpired leases pursuant to this Plan, and to hear and determine any and all objections to such Claims or Interests including, without limitation, Claims and objections relating to the assumption of executory contracts or unexpired leases pursuant to the Plan;

(b)  To enable the Liquidating Trustees to commence, prosecute, settle, compromise, abandon or consummate any and all claims or causes of action of the Debtors against any Person or entity;

(c)  To adjudicate all Claims to a security or ownership interest in any Property of the Debtors or in any proceeds thereof;

(d)  To liquidate damages or estimate Claims in connection with any Disputed Claims or contingent or unliquidated Claims;

(e)  To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, consummation, or performance of the Plan including, but not limited to, any matters related to the Plan Support Agreement and Term Sheet, as well as all controversies, suits, and disputes that may be pending before the Bankruptcy Court on or before the Confirmation Date or may be brought thereafter;;

(f)  To determine and allow all expenses of administration of the Bankruptcy Proceeding, including, without limitation, all requests for Professional Fees for periods prior to the Effective Date;

(g)  To recover all Assets and Property of the Debtors, wherever located;

(h)  To interpret, construe or enforce the Plan, the Confirmation Order or any order previously entered by the Bankruptcy Court in this case;

(i)  To hear, determine and enforce any and all Causes of Action, to set aside liens or encumbrances, to recover any transfers, assets or damages to which the Estates may be entitled, to avoid or recover any preferences, fraudulent conveyances or obligations, or other obligations or transfers voidable or subject to avoidance under applicable provisions of the Bankruptcy Code or other federal, state or local law, or to subordinate or disallow, in whole or in part, any Claim, under applicable provisions of the Bankruptcy Code or other federal state or local law;

74392.000009 EMF_US 29471070v1112

(j)    To consider and determine any proposed modification or amendment of the Plan;

(k)    To make any determination necessary or appropriate under Section 505 of the Bankruptcy Code or other determination relating to taxes paid or payable by the Debtors, and tax returns filed or to be filed by the Debtors, for all periods through the end of the fiscal year in which the Effective Date occurs;

(l)    To implement the provisions of this Plan and enter any orders in aid of its implementation or in furtherance of its purposes and intent;

(m)    To make such orders as the Bankruptcy Court deems necessary or appropriate to carry out the provisions, purposes or intent of this Plan;

(n)    To adjudicate any dispute with respect to any obligations of the Liquidating Trusts, including any fees requested by professionals employed by the Liquidating Trusts; and

(o)    To determine such other matters and for such other purposes as may be provided in the Confirmation Order.

4.    <u>Failure of Bankruptcy Court to Exercise Jurisdiction</u>

If the Bankruptcy Court abstains from exercising, declines to exercise, or is otherwise without jurisdiction over any matter arising out of the Cases, the provisions of the Plan shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

74392.000009 EMF_US 29471070v1<del>11</del>12

5.    <u>Modification of the Plan</u>

At any time before the Confirmation Date, the Plan or Plan Supplement may be modified by the Debtors, subject to the consent of the Creditors Committee and the Lone Star Entities, which, to the extent such modifications do not adversely affect the rights, treatment, benefits or obligations of the respective parties or constituencies, shall not be unreasonably withheld, upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of §1122 & 1123 of the Bankruptcy Code. In the event that there is a modification of the Plan, then the Plan as modified shall become the Plan.

At any time after the Confirmation Date, but before substantial consummation of the Plan, the Plan or Plan Supplement may be modified by the Debtors, subject to the consent of the Creditors Committee and the Lone Star Entities, which, to the extent such modifications do not adversely affect the rights, treatment, benefits or obligations of the respective parties or constituencies, shall not be unreasonably withheld, upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of §1122 &1123 of the Bankruptcy Code. The Plan, as modified under this section, becomes a Plan only if the Court, after notice and hearing, confirms such Plan, as modified, under §1129 of the Bankruptcy Code.

At any time after the Confirmation Date, the applicable Debtors may, without the approval of the Court, remedy any defect or omission, or reconcile any such inconsistencies in the Plan or Plan Supplement or in the Confirmation Order, as such matters may be necessary to carry out the purposes, intent, and effect of this Plan, provided that they do not materially or adversely affect the interests of creditors or other entities, subject to the terms of the Lone Star Settlement and the Plan Support and Term Sheet and upon consultation with the Creditors Committee.

6.    <u>Revocation and Withdrawal of the Plan</u>

The Debtors reserve the right to revoke or withdraw the Plan at any time before entry of a Confirmation Order. If the Debtors, or one of the individual Debtors, as the case may be, revoke or withdraw the Plan prior to the Confirmation Date, or if the confirmation or the Effective Date does not occur with respect to one or more of the Debtors, then the Plan shall be deemed to be null and void as to that Estate. In such event, nothing contained herein, in the Plan or in any document relating to the Plan shall be deemed to constitute an admission of validity, waiver or release of any Claims by or against the Debtors or any Person or to prejudice in any manner the rights of the Debtors or any Person in any proceeding involving the Debtors.

7.    <u>Sections 1145 and 1146(a) Exemption</u>

To the maximum extent provided by §1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance under the Plan of the beneficial interests in the Liquidating Trusts will be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder.

Pursuant to Bankruptcy Code §1146(a), the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in

implementation of, or as contemplated by the Plan, or the re-vesting, transfer or sale of any real or personal property of the Debtors or the Liquidating Trust pursuant to, in implementation of, or as contemplated by the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.

8. No Admission of Liability.

The submission of the Plan is not intended to be, nor shall it be construed as, an admission or evidence in any pending or subsequent suit, action, proceeding or dispute of any liability, wrongdoing, or obligation whatsoever (including as to the merits of any claim or defense) by any Entity with respect to any of the matters addressed in the Plan.

None of the Plan (including, without limitation, the Exhibits thereto), or any settlement entered, act performed or document executed in connection with the Plan: (i) is or may be deemed to be or may be used as an admission or evidence of the validity of any claim, or any allegation made in any of the related actions or of any wrongdoing or liability of any Entity; (ii) is or may be deemed to be or may be used as an admission or evidence of any liability, fault or omission of any Entity in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; or (iii) is or may be deemed to be or used as an admission or evidence against the Debtors, or any other Person or Entity with respect to the validity of any Claim. None of the Plan or any settlement entered, act performed or document executed in connection with the Plan shall be admissible in any proceeding for any purposes, except to carry out the terms of the Plan Support Agreement and Term Sheet and the Plan, and except that, once confirmed, any Entity may file the Plan in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on the principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense of counterclaim.

9. Plan Governs

To the extent that the terms of this Disclosure Statement or the Plan are inconsistent with the terms of any agreement or instrument concerning any Claim, any Interest or any other matter, the terms of this Plan shall control.

10. Governing Law

Expect to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent any document entered into in connection with the Plan so provides, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of Delaware, without giving effect to the principles of conflicts of law.

## VI. CONFIRMATION AND CONSUMMATION PROCEDURE

## A. Disclosure and Solicitation

This Disclosure Statement is presented to the Holders of Claims and Interests that are entitled to vote on the Plan to satisfy the requirements Sections 1125 and 1126 of the Bankruptcy Code. Section 1125 of the Bankruptcy Code requires that full disclosure be made to all Holders of Claims and Interests in impaired Classes that receive or retain property pursuant to a plan at the time, or before, solicitation of acceptances of such plan is commenced.

**B.    Acceptance of the Plan**

As more fully stated in Section III of this Disclosure Statement, the Bankruptcy Code defines acceptance of a plan by a Class of creditors or interest-holders as acceptance by holders of more than two-thirds in dollar amount and more than one-half in number of the Claims of that Class that have timely voted on a plan. A vote may be disregarded if the Court determines, after notice and a hearing, that such acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

A vote to accept or reject the Plan can only occur by proper submission of a duly executed Ballot. Failure of a holder to vote does not constitute a vote to reject the Plan by that holder. Each Holder of a Claim or Interest should seek such independent legal and/or business advice as it deems appropriate regarding whether to vote to accept or reject the Plan.

**C.    Classification**

The Debtors are required under Section 1122 of the Bankruptcy Code to classify the Claims and Interests into Classes that contain Claims and Interests that are substantially similar to the other Claims or Interests in such Class. The Plan can be confirmed so long as there is at least one consenting Class of impaired Claims under the Plan (not including the votes of insiders), and so long as the other requirements for confirmation are met.

**D.    Confirmation**

The Bankruptcy Code requires the Court, after notice, to hold a Confirmation Hearing. At the Confirmation Hearing, the Court will confirm the Plan only if all the requirements of Section 1129 of the Bankruptcy Code are met. Among the requirements for Confirmation of a plan are that the Plan be (i) accepted by all impaired Classes of Claims and Interests or, if rejected by an impaired Class, that the Plan "not discriminate unfairly" and be "fair and equitable" as to such impaired Class; (ii) feasible; and (iii) in the "best interests" of rejecting Holders of Claims and Interest impaired under the Plan.

1.    Acceptance

In order for the Plan to be Confirmed, one impaired class of Consolidated Holdco and one impaired class of the Consolidated Debtors (not including the votes of insiders) must accept the Plan. For classes of claims that have rejected the Plan, the Court must determine that the Plan is "fair and equitable" with respect to the rejecting classes. The "fair and equitable" test is described below under the heading *Confirmation Without Acceptance by All Impaired Classes*.

2.    Feasibility

74392.000009 EMF_US 29471070v~~11~~12

Under Section 1129(a)(11) of the Bankruptcy Code, to confirm the Plan, the Court must find that the Plan is feasible—that is, that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization unless such liquidation or reorganization is proposed in the Plan. Since the Plan proposes liquidation, and since the Liquidating Trust will have the assets necessary to accomplish this liquidation, the Debtors believe that the Plan is feasible.

3.     Best Interests Test

With respect to each impaired Class, confirmation of the Plan requires that each Holder of an Allowed Claim or Allowed Interest in such Class either (i) accepts the Plan or (ii) receives or retains under the Plan property of a value, as of the Effective Date, that is not less than the value such Holder would receive or retain if Debtors were liquidated under Chapter 7 of the Bankruptcy Code.

Under the Debtor's Liquidation Analysis attached as Exhibit B hereto, the Debtors estimate that each class of creditors will receive at least as much property under this Plan as they would receive in a Chapter 7. See Section IX, *Alternatives to Confirmation and Consummation of the Plan*, and the Debtors' Liquidation Analysis attached as Exhibit B hereto for a further discussion of why Debtors believe that the Plan is in the best interests of Holders of Claims and Interests.

4.     Confirmation Without Acceptance By All Impaired Classes

The Bankruptcy Code provides that, so long as at least one Class of Claims that is impaired under the Plan accepts the Plan (without respect to the votes cast by insiders), the Debtors may seek confirmation of the Plan over the objections of any non-consenting Class, provided that the Debtors demonstrate that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting Classes. These "cramdown" provisions for confirmation of the Plan, despite the non-acceptance of one or more impaired Classes of Claims or Interests, are set forth in Bankruptcy Code§1129(b).

The Bankruptcy Code establishes different "fair and equitable" tests for Holders of Secured Claims, Unsecured Claims and Interests. The respective tests are as follows:

(a)     Secured Creditors

Either (i) each impaired Holder of Secured Claim of the rejecting Class (a) retains its liens in the collateral securing such Claim or in the proceeds thereof to the extent of the allowed amount of the Secured Claim and (b) receives deferred cash payments in at least the allowed amount of such Secured Claim with a present value at the Effective Date at least equal to such creditor's interest in its collateral or in the proceeds thereof or (ii) the Plan provides each impaired Holder of a Secured Claim with the "indubitable equivalent" of its Secured Claim.

(b)     Unsecured Creditors

69

Either (i) each impaired Holder of an Unsecured Claim of the rejecting Class receives or retains under the Plan property of a value equal to the amount of its Allowed Claim or (ii) the Holders of Claims and Interests that are junior to the Claims of the dissenting Class do not receive or retain any property under the Plan.

(c)     Interest Holders

Either (i) each Interest Holder of the rejecting Class receives or retains under the Plan property of a value equal to the greater of (a) the fixed liquidation preference or redemption prices, if any, of the Interest it holds or (b) the value of such Interest or (ii) the Holders of Interests that are junior to such Interest do not receive or retain any property under the Plan.

The Debtors believe that the Plan meets the applicable tests described above, even in the event that it is rejected by the Holders of one or more Classes of Claims and Interests.

## VII.  CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The following discussion is a general summary of certain material U.S. federal income tax consequences of the Plan to the Debtors and the Holders of certain Claims and Interests. This discussion is based on current provisions of the Internal Revenue Code of 1986, as amended (the "Tax Code"), applicable Treasury Department regulations promulgated thereunder ("Treasury Regulations"), judicial authority and current administrative rulings and pronouncements of the Internal Revenue Service (the "Service"). There can be no assurance that the Service will not take a contrary view. No ruling from the Service has been or will be sought nor will any counsel provide a legal opinion as to any of the expected tax consequences set forth below.

Legislative, judicial or administrative changes or interpretations may be forthcoming that could alter or modify the statements and conclusions set forth herein. Any such changes or interpretations may or may not be retroactive and could affect the tax consequences to the Holders of Claims or Interests and the Debtors. It cannot be predicted whether any tax legislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the tax consequences to Holders of Claims or Interests and the Debtors.

The following discussion is for general information only. The tax treatment of a Holder of a Claim or Interest may vary depending upon such Holder's particular situation. In addition, this summary does not address foreign, state or local tax consequences of the Plan, nor does it address federal income tax consequences of the Plan to special classes of taxpayers (such as foreign taxpayers, broker-dealers, banks, mutual funds, insurance companies, other financial institutions, small business investment companies, regulated investment companies, real estate investment trusts, U.S. persons whose functional currency is not the U.S. dollar, traders that mark-to-market their securities, taxpayer subject to the alternative minimum tax, tax-exempt organizations (including, without limitation, certain pension funds), persons holding an equity interest as part of an integrated constructive sale, hedge, conversion transaction or straddle, pass-

70

through entities and investors in pass-through entities). Furthermore, this summary does not address U.S. federal taxes other than income taxes.

**EACH HOLDER OF A CLAIM OR INTEREST SHOULD CONSULT ITS TAX ADVISOR AS TO THE PARTICULAR TAX CONSEQUENCES TO IT OF THE PLAN, INCLUDING THE APPLICABILITY OF ANY U.S. FEDERAL, STATE, LOCAL OR FOREIGN TAX LAWS.**

## INTERNAL REVENUE SERVICE CIRCULAR 230 DISCLOSURE

**TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE INTERNAL REVENUE SERVICE, THE HOLDERS OF CLAIMS OR INTERESTS ARE HEREBY NOTIFIED THAT: (A) ANY UNITED STATES FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS OR INTERESTS FOR THE PURPOSE OF AVOIDING UNITED STATES FEDERAL TAX PENALTIES, (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE DEBTORS OF THE TRANSACTION OR MATTERS ADDRESSED HEREIN AND (C) HOLDERS OF CLAIMS OR INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISER.**

A.      **Tax Treatment of the Liquidating Trusts**

 1.      Tax Treatment of the Consolidated Holdco Liquidating Trust

The Consolidated Holdco Liquidating Trust is intended to be treated for federal income tax purposes as a grantor trust. Assuming the Consolidated Holdco Liquidating Trust qualifies as a grantor trust for federal income tax purposes, the Holders of Class 3 H Claims, Class 4 H Claims, Class 5 H Claims, and Class 7 H Claims may be treated as the grantors of the Consolidated Holdco Liquidating Trust, the Consolidated Holdco Liquidating Trust should be disregarded for tax purposes as an entity separate from the grantors and the grantors would report the income and loss from the Consolidated Holdco Liquidating Trust. Under the Plan, the transfer of cash and any remaining assets of Consolidated Holdco to the Consolidated Holdco Liquidating Trust may be treated for federal income tax purposes as if the Debtors of Consolidated Holdco distributed an interest in each of the assets transferred directly to the Holders of Class 3 H Claims, Class 4 H Claims, Class 5 H Claims and Class 7 H Claims in exchange for their outstanding Claims against Consolidated Holdco. The Holders of Class 3 H Claims, Class 4 H Claims, Class 5 H Claims and Class 7 H Claims would then be deemed to contribute their interest in these assets to the Consolidated Holdco Liquidating Trust.

If the Consolidated Holdco Liquidating Trust is not treated for federal income tax purposes as a grantor trust, then the Consolidated Holdco Liquidating Trust may be classified as a partnership for federal income tax purposes, in which case the Holders of Claims that will be satisfied Class 3 H Claims, Class 4 H Claims, Class 5 H Claims and Class 7 H Claims would be treated as partners in the partnership. Unlike a grantor trust, the partnership would be treated as

an entity required to compute income and loss, file tax returns, and make tax elections, but income and loss would pass through to the partners to be reported by them on their separate tax returns. If the Consolidated Holdco Liquidating Trust is treated as a partnership for federal income tax purposes, the transfer of cash and any remaining assets of Consolidated Holdco to the Consolidated Holdco Liquidating Trust under the Plan may be treated for federal income tax purposes as if Consolidated Holdco had distributed an interest in each of the assets so transferred directly to the Holders of Class 3 H Claims, Class 4 H Claims, Class 5 H Claims and Class 7 H Claims in exchange for their outstanding claims against the assets or stock of Consolidated Holdco. The Holders of Class 3 H Claims, Class 4 H Claims, Class 5 H Claims and Class 7 H Claims would then be deemed to contribute their interest in these assets to the Consolidated Holdco Liquidating Trust in for an interest in the Consolidated Holdco Liquidating Trust.

### 2. Tax Treatment of the Consolidated Debtors Liquidating Trust

The Consolidated Debtors Liquidating Trust is intended to be treated for federal income tax purposes as a grantor trust. Assuming the Consolidated Debtors Liquidating Trust qualifies as a grantor trust for federal income tax purposes, the Holders of Class 3 C Claims, Class 4 C Claims and Class 5 C Claims may be treated as the grantors of the Consolidated Debtors Liquidating Trust, the Consolidated Debtors Liquidating Trust should be disregarded for tax purposes as an entity separate from the grantors and the grantors would report the income and loss from the Consolidated Debtors Liquidating Trust. Under the Plan, the transfer of cash and any remaining assets of the Consolidated Debtors to the Consolidated Debtors Liquidating Trust may be treated for federal income tax purposes as if the Consolidated Debtors distributed an interest in each of the assets transferred directly to the Holders of Class 3 C Claims, Class 4 C Claims and Class 5 C Claims in exchange for their outstanding Claims against the Consolidated Debtors. The Holders of Class 3 C Claims, Class 4 C Claims and Class 5 C Claims would then be deemed to contribute their interest in these assets to the Consolidated Debtors Liquidating Trust.

If the Consolidated Debtors Liquidating Trust is not treated for federal income tax purposes as a grantor trust, then the Consolidated Debtors Liquidating Trust may be classified as a partnership for federal income tax purposes, in which case the Holders of Class 3 C Claims, Class 4 C Claims, and Class 5 C Claims would be treated as partners in the partnership. Unlike a grantor trust, the partnership would be treated as an entity required to compute income and loss, file tax returns, and make tax elections, but income and loss would pass through to the partners to be reported by them on their separate tax returns. If the Consolidated Debtors Liquidating Trust is treated as a partnership for federal income tax purposes, the transfer of cash and any remaining assets of the Consolidated Debtors to the Consolidated Debtors Liquidating Trust under the Plan may be treated for federal income tax purposes as if the Consolidated Debtors had distributed an interest in each of the assets so transferred directly to the Holders of Class 3 C Claims, Class 4 C Claims and Class 5 C Claims in exchange for their outstanding claims against the assets or stock of the Consolidated Debtors. The Holders of Class 3 C Claims, Class 4 C Claims and Class 5 C Claims would then be deemed to contribute their interest in these assets to the Consolidated Debtors Liquidating Trust in for an interest in the Consolidated Debtors Liquidating Trust.

74392.000009 EMF_US 29471070v+++12

## B. Federal Income Tax Consequences of the Plan to the Debtors

Generally, a debtor will recognize gain or loss on the sale of its assets in an amount equal to the sum of the cash and the fair market value of property received less the debtor's adjusted tax basis in the assets sold. A debtor that transfers an asset in payment for a debt will be treated for federal income tax purposes as having sold the asset for its fair market value. Under the Plan, each of the Debtors will recognize gain or loss the transfer of its assets to the Holders of Claims to the extent that the difference between fair market value of the assets transferred and that Debtor's tax basis in such assets.

In addition, a taxpayer recognizes cancellation of indebtedness ("COD") income upon satisfaction of its outstanding indebtedness for less than its adjusted issue price. The amount of COD income is, in general, the excess of (i) the amount of the indebtedness satisfied, over (ii) the amount of cash and the fair market value of any other consideration (including any new indebtedness issued by the taxpayer or stock of the taxpayer) given in exchange for the indebtedness satisfied. Under this rule, Consolidated Holdco would recognize COD income under the Plan to the extent the amount of the Consolidated Holdco debt cancelled exceeds the sum of the fair market value of the assets (including cash) contributed to the Consolidated Holdco Liquidating Trust and the fair market value of the assets (including cash) used to pay the Holders of Class 6 H Claims. Similarly under this rule, the Consolidated Debtors would recognize COD income under this Plan to the extent the amount of Consolidated Debtors' debt cancelled exceeds the sum of the fair market value of the assets (including cash) contributed to the Consolidated Debtors Trust and the fair market value of the assets (including cash) used to by the Holders of Class 6 C Claims. However, COD income is not included in gross income to a debtor if the discharge occurs in a formal Title 11 bankruptcy case. The Plan, if approved, would enable both Consolidated Holdco and the Consolidated Debtors to qualify for this bankruptcy exclusion rule with respect to any COD income triggered by the Plan.

If debt is discharged in a formal Title 11 bankruptcy case, however, certain tax attributes otherwise available and of value to the debtor are reduced, in most cases by the principal amount of the indebtedness forgiven. Tax attributes subject to reduction include: (a) NOLs and NOL carryforwards; (b) most credit carryforwards, including the general business credit and minimum tax credit; and (c) capital losses and capital loss carryforwards. Attribute reduction is calculated only after the tax for the year of discharge has been determined.

The Debtors anticipate that none of the Debtors will not incur any taxable income for federal income tax purposes as a result of the transfer of assets as provided in the Plan that will not be offset by NOLs. Accordingly, the implementation of the Plan should not result in any federal income tax liability (other than AMT liability) to any of Debtors.

In general, an alternative minimum tax ("AMT") is imposed on a corporation to the extent such corporation's tentative minimum tax, determined by multiplying its "alternative minimum taxable income" by the corporate AMT rate of 20%, exceeds the corporation's regular federal income tax. For purposes of computing taxable income for AMT purposes, certain tax deductions and other beneficial allowances are modified or eliminated. In particular, even though a corporation otherwise might be able to offset all of its taxable income for regular tax

74392.000009 EMF_US 29471070v1~~11~~12

purposes by available NOL carryovers, only 90% of a corporation's taxable income for AMT purposes may be offset by available NOL carryovers (as computed for AMT purposes) and subject to the AMT at a 20% rate, yielding an effective rate of 2% (calculated by multiplying the 20% tax rate by the 10% of alternative minimum taxable income not offset by NOL carryovers). The Debtors do not anticipate that the Plan will generate a significant amount, if any, of federal AMT liability.

## C.     Federal Income Tax Consequences of the Plan to Holders of Claims or Interests

In general, Holders of Claims or Interests will recognize income, gain or loss on their Claims or Interests as set forth below. The character of any gain or loss as capital or ordinary gain or loss (or ordinary income) and, in the case of capital gain or loss, as short-term or long-term, will depend on a number of factors, including: (i) the nature and origin of the Claim or Interest; (ii) the tax status of the Holder of the Claim or Interest; (iii) whether the Claim or Interest has been held for more than one year; and (iv) the extent to which the Holder previously claimed a loss or bad debt deduction with respect to the Claim.

### 1.     Consequences to Holders of Claims Against Consolidated Holdco

(a)     Consequences to Holders of Class 1 H  and Class 2 H Claims

Holders of Class 1 H or Class 2 H Claims may receive specified fixed amounts from Consolidated Holdco in exchange for these Claims on the date of payment thereof. Accordingly, the Debtors believe that a Holder of a Class 1 H or Class 2 H Claim should generally recognize gain or loss in an amount equal to the cash received (plus the fair market value of other property received, if any) with respect to its Claim (other than any amounts attributable to accrued by unpaid interest) less its adjusted tax basis in its Claim (other than for accrued but unpaid interest).

(b)     Consequences to Holders of Class 3 H Claims, Class 4 H Claims, Class 5 H Claims, and Class 7 H Claims

The Debtors believe that a Holder of a Class 3 H Claim, Class 4 H Claim, Class 5 H Claim or Class 7 H Claim (collectively, a "Consolidated Holdco Trust Claim") as of the Effective Date should be treated as receiving from Consolidated Holdco their share of the respective assets transferred to the Consolidated Holdco Liquidating Trust in satisfaction of each such Consolidated Holdco Trust Claim and simultaneously transferring such assets to the Consolidated Holdco Liquidating Trust. Assuming the Consolidated Holdco Liquidating Trust is taxed as a grantor trust or as a partnership for federal income tax purposes, under the Plan, a Holder of a Consolidated Holdco Trust Claim may recognize a taxable loss (or gain) to the extent the amount realized by such Holder in respect of its Consolidated Holdco Trust Claim, excluding accrued interest, is less (or greater) than the Holder's tax basis in such Consolidated Holdco Trust Claim, excluding any claim for accrued interest. The amount realized by a Holder of a Consolidated Holdco Trust Claim should be equal to the amount of cash and the fair market value of any other consideration received pursuant to the Plan. If a Holder of a Consolidated Holdco Trust Claim receives distributions from the Consolidated Holdco Liquidating Trust in

more than one tax year, such Holder should consult with its own tax advisor as to the timing of the recognition of income, gain, or loss. Additionally, the Debtors believe that Holders of Consolidated Holdco Trust Claims should recognize their allocable share of taxable income on the assets transferred to the Consolidated Holdco Liquidating Trust on an annual basis.

Notwithstanding the foregoing, it is possible that the Service may assert that any income, gain, or loss by Holders of Consolidated Holdco Trust Claims should be deferred until the Consolidated Holdco Liquidating Trustee makes the final distributions from the Consolidated Holdco Liquidating Trust. In addition, a Holder's ultimate share of the assets of the Consolidated Holdco Liquidating Trust based on its Consolidated Holdco Trust Claim may differ from the initial estimates thereof. This may result in a Holder having to recognize additional or offsetting income or gain or loss if, and to the extent, that, the aggregate amount of cash and the fair market value of property received by that Holder from the Consolidated Holdco Liquidating Trust differs from the amount used in initially determining that Holder's any income, gain or loss. Holders of Consolidated Holdco Trust Claims should consult their own tax advisors regarding the possibility that the recognition of income, gain or loss may be accelerated or deferred.

(c)     Consequences to Holders of Class 6 H Claims

Holders of Class 6 H Claims will receive specified fixed amounts from Consolidated Holdco in an amount equal to 50% of each such Claim in exchange for these Claims on the date of payment thereof. Accordingly, the Debtors believe that a Holder of a Class 6 H Claim should generally recognize gain or loss in an amount equal to the cash received (plus the fair market value of other property received, if any) with respect to its Claim (other than any amounts attributable to accrued by unpaid interest) less its adjusted tax basis in its Claim (other than for accrued but unpaid interest).

(d)     Consequences to Holders of Class 8 H and 9 H Claims

Under the Plan, Holders of Class 8 H and 9 H Claims will recognize a taxable loss (or gain) to the extent that amount realized by each such Holder in exchange for their Class 8 H or 9 H Claim is less (or greater) than such Holder's tax basis in their Class 8 H or 9 H Claim exchanged therefor. The amount realized by a Holder of a Class 8 H or 9 H Claim should be equal to the amount of cash and the fair market value of any other consideration received from the Consolidated Holdco Liquidating Trust, if any, pursuant to the Plan, in the event the Holders of Class 3 H, Class 4 H, Class 5 H, and Class 7 H Claims are paid in full.

(e)     Consequences to Holders of Class 10 H Interests

Under the Plan, Holders of Class 10 H Interests will recognize a taxable loss (or gain) to the extent the amount realized by each such Holder in exchange for their Interest is less (or greater) than such Holder's tax basis in their Interest exchanged therefore. The amount realized by the Holder of a Class 9 H Interest should be equal to the amount of cash and the fair market value of any other consideration received from the Consolidated Holdco Liquidating Trust, if any, pursuant to the Plan, in the event the Holders of Class 3 H, Class 4 H, Class 5 H, Class 7 H,

Class 8 H, and Class 9 H Claims are paid in full. The gain or loss should be a capital gain provided the Holder held their Class 10 H Interest as a capital assets within the meaning of Tax Code Section 1221 at the effective time of the Plan.

> 2. Consequences to Holders of Claims Against Consolidated Debtors

> (a) Consequences to Holders of Class 1 C and Class 2 C Claims

Holders of Class 1 C or Class 2 C Claims may receive specified fixed amounts from Consolidated Debtors in exchange for these Claims on the date of payment thereof. Accordingly, the Debtors believe that a Holder of a Class 1 C or Class 2 C Claim should generally recognize gain or loss in an amount equal to the cash received (plus the fair market value of other property received, if any) with respect to its Claim (other than any amounts attributable to accrued by unpaid interest) less its adjusted tax basis in its Claim (other than for accrued but unpaid interest).

> (b) Consequences to Holders of Class 3 C Claims

The Debtors believe that a Holder of a Class 3 C Claim as of the Effective Date should be treated as receiving from the Consolidated Debtors their share of the respective assets transferred to the Consolidated Debtors Liquidating Trust in satisfaction of each such Class 3 C Claim and simultaneously transferring such assets to the Consolidated Debtors Liquidating Trust. Assuming the Consolidated Debtors Liquidating Trust is taxed as a grantor trust or as a partnership for federal income tax purposes, under the Plan, a Holder of a Class 3 C Claim may recognize a taxable loss (or gain) to the extent the amount realized by such Holder in respect of its Class 3 C Claim, excluding accrued interest, is less (or greater) than the Holder's tax basis in such Class 3 C Claim, excluding any claim for accrued interest. The amount realized by a Holder of a Class 3 C Claim should be equal to the amount of cash and the fair market value of any other consideration received pursuant to the Plan (including any amounts received from the Lone Star Settlement Payment). If a Holder of a Class 3 C Claim receives distributions from the Consolidated Debtors Liquidating Trust in more than one tax year, such Holder should consult with its own tax advisor as to the timing of the recognition of income, gain, or loss. Additionally, the Debtors believe that Holders of Class 3 C Claims should recognize their allocable share of taxable income on the assets transferred to the Consolidated Debtors Liquidating Trust on an annual basis.

Notwithstanding the foregoing, it is possible that the Service may assert that any income, gain, or loss by Holders of Class 3 C Claims should be deferred until the Consolidated Debtors Liquidating Trustee makes the final distributions from the Consolidated Debtors Liquidating Trust. In addition, a Holder's ultimate share of the assets of the Consolidated Debtors Liquidating Trust based on its Class 3 C Claim may differ from the initial estimates thereof. This may result in a Holder having to recognize additional or offsetting income or gain or loss if, and to the extent, that, the aggregate amount of cash and the fair market value of property received by that Holder from the Consolidated Debtors Liquidating Trust differs from the amount used in initially determining that Holder's any income, gain or loss. Holders of Class 3

74392.000009 EMF_US 29471070v1112

Claims should consult their own tax advisors regarding the possibility that the recognition of income, gain or loss may be accelerated or deferred.

(c)     Consequences to Holders of Class 4 C Claims

The Debtors believe that a Holder of a Class 4 C Claim as of the Effective Date should be treated as receiving from the Consolidated Debtors their share of the respective assets transferred to the Consolidated Debtors Liquidating Trust in satisfaction of each such Class 4 C Claim and simultaneously transferring such assets to the Consolidated Debtors Liquidating Trust. Assuming the Consolidated Debtors Liquidating Trust is taxed as a grantor trust or as a partnership for federal income tax purposes, under the Plan, a Holder of a Class 4 C Claim may recognize a taxable loss (or gain) to the extent the amount realized by such Holder in respect of its Class 4 C Claim, excluding accrued interest, is less (or greater) than the Holder's tax basis in such Class 4 C Claim, excluding any claim for accrued interest. The amount realized by a Holder of a Class 4 C Claim should be equal to the amount of cash and the fair market value of any other consideration received pursuant to the Plan. If a Holder of a Class 4 C Claim receives distributions from the Consolidated Debtors Liquidating Trust in more than one tax year, such Holder should consult with its own tax advisor as to the timing of the recognition of income, gain, or loss. Additionally, the Debtors believe that Holders of Class 4 C Claims should recognize their allocable share of taxable income on the assets transferred to the Consolidated Debtors Liquidating Trust on an annual basis.

Notwithstanding the foregoing, it is possible that the Service may assert that any income, gain, or loss by Holders of Class 4 C Claims should be deferred until the Consolidated Debtors Liquidating Trustee makes the final distributions from the Consolidated Debtors Liquidating Trust. In addition, a Holder's ultimate share of the assets of the Consolidated Debtors Liquidating Trust based on its Class 4 C Claim may differ from the initial estimates thereof. This may result in a Holder having to recognize additional or offsetting income or gain or loss if, and to the extent, that, the aggregate amount of cash and the fair market value of property received by that Holder from the Consolidated Debtors Liquidating Trust differs from the amount used in initially determining that Holder's any income, gain or loss. Holders of Class 4 Claims should consult their own tax advisors regarding the possibility that the recognition of income, gain or loss may be accelerated or deferred.

(d)     Consequences to Holders of Class 5 C Claims

The Debtors believe that a Holder of a Class 5 C Claim as of the Effective Date should be treated as receiving from the Consolidated Debtors their share of the respective assets transferred to the Consolidated Debtors Liquidating Trust in satisfaction of each such Class 5 C Claim and simultaneously transferring such assets to the Consolidated Debtors Liquidating Trust. Assuming the Consolidated Debtors Liquidating Trust is taxed as a grantor trust or as a partnership for federal income tax purposes, under the Plan, a Holder of a Class 5 C Claim may recognize a taxable loss (or gain) to the extent the amount realized by such Holder in respect of its Class 5 C Claim, excluding accrued interest, is less (or greater) than the Holder's tax basis in such Class 5 C Claim, excluding any claim for accrued interest. The amount realized by a Holder of a Class 5 C Claim should be equal to the amount of cash and the fair market value of

74392.000009 EMF_US 29471070v++12

any other consideration received from the Consolidated Debtors Liquidating Trust, if any, pursuant to the Plan in the event the Holders of Class 3 C and Class 4 C Claims are paid in full. If a Holder of a Class 5 C Claim receives distributions from the Consolidated Debtors Liquidating Trust in more than one tax year, such Holder should consult with its own tax advisor as to the timing of the recognition of income, gain, or loss. Additionally, the Debtors believe that Holders of Class 5 C Claims should recognize their allocable share of taxable income on the assets transferred to the Consolidated Debtors Liquidating Trust on an annual basis.

Notwithstanding the foregoing, it is possible that the Service may assert that any income, gain, or loss by Holders of Class 5 C Claims should be deferred until the Consolidated Debtors Liquidating Trustee makes the final distributions from the Consolidated Debtors Liquidating Trust. In addition, a Holder's ultimate share of the assets of the Consolidated Debtors Liquidating Trust based on its Class 5 C Claim may differ from the initial estimates thereof. This may result in a Holder having to recognize additional or offsetting income or gain or loss if, and to the extent, that, the aggregate amount of cash and the fair market value of property received by that Holder from the Consolidated Debtors Liquidating Trust differs from the amount used in initially determining that Holder's any income, gain or loss. Holders of Class 5 Claims should consult their own tax advisors regarding the possibility that the recognition of income, gain or loss may be accelerated or deferred.

(e)     Consequences to Holders of Class 6 C Claims

Holders of Class 6 C Claims will receive specified fixed amounts from Consolidated Holdco in an amount equal to 75% of each such Claim in exchange for these Claims on the date of payment thereof. Accordingly, the Debtors believe that a Holder of a Class 6 C Claim should generally recognize gain or loss in an amount equal to the cash received (plus the fair market value of other property received, if any) with respect to its Claim (other than any amounts attributable to accrued by unpaid interest) less its adjusted tax basis in its Claim (other than for accrued but unpaid interest).

(f)     Consequences to Holders of Class 7 C Claims

Under the Plan, Holders of Class 7 C Claims will recognize a taxable loss (or gain) to the extent that amount realized by each such Holder in exchange for their Class 7 C Claim is less (or greater) than such Holder's tax basis in their Class 7 C Claim exchanged therefor. The amount realized by a Holder of a Class 7 C Claim should be equal to the amount of cash and the fair market value of any other consideration received from the Consolidated Debtors Liquidating Trust, if any, pursuant to the Plan, in the event the Holders of Class 3 C, Class 4 C, and Class 5 C Claims are paid in full.

(g)     Consequences to Holders of Class 8 C Interests

Under the Plan, Holders of Class 8 C Interests will recognize a taxable loss (or gain) to the extent the amount realized by each such Holder in exchange for their Interest is less (or greater) than such Holder's tax basis in their Interest exchanged therefore. The amount realized by the Holder of a Class 8 C Interest should be equal to the amount of cash and the fair market

value of any other consideration received from the Consolidated Debtors Liquidating Trust, if any, pursuant to the Plan, in the event the Holders of Class 3 C, Class 4 C, Class 5 C, and Class 7 C Claims are paid in full. The gain or loss should be a capital gain provided the Holder held their Class 8 C Interest as a capital assets within the meaning of Tax Code Section 1221 at the effective time of the Plan.

3.    Interest Income

Taxable interest income earned on the assets held by the Consolidated Holdco Liquidating Trust will be reported as taxable income to the Holders of Consolidated Holdco Trust Claims on an annual basis and will be taxable to such Holders in accordance with their method of tax accounting. Taxable interest income earned on the assets held by the Consolidated Debtors Liquidating Trust will be reported as taxable income to the Holders of Class 3 C, Class 4 C and Class 5 C Claims on an annual basis and will be taxable to such Holders in accordance with their method of tax accounting. In addition, Holders of Claims will be treated as receiving a payment of interest (includible in income in accordance with the Holder's method of accounting for tax purposes) to the extent that any cash or other property received (or deemed received) pursuant to the Plan is attributable to accrued but unpaid interest, if any, on such Claim. Each Holder should consult its own tax advisor regarding the determination of the amount of consideration received under the Plan that is attributable to interest (if any).

4.    Gain or Loss from Subsequent Sales

Any taxable gains or losses on a subsequent sale of assets (other than cash) held by the Consolidated Debtors Liquidating Trust will be reported as taxable gain or taxable loss to the Holders of the Consolidated ~~Holdco~~**Debtors** Trust Claims on an annual basis and will be taxable to such Holders in accordance with their method of tax accounting. The amount of such gain or loss realized by each Holder with respect to each such sale will be the difference between the portion of the amount realized on such sale allocable to such Holder and the portion of the tax basis in such asset sold allocable to such Holder. Each Holder should consult its own tax advisor regarding the possibility of recognizing gain or loss on any assets (other than cash) owned by the Consolidated Debtors Liquidating Trust and the timing and character of any income or loss recognized with respect to any such sales.

5.    Backup Withholding and Information Reporting

In general, a Holder of a Claim may be subject to backup withholding at the applicable rate with respect to any "reportable" payments received pursuant to the Plan unless (i) such Holder is a corporation or comes within certain other exempt categories and, when required, demonstrates this fact or (ii) provides to the Debtor and/or the applicable Liquidating Trust (i.e. Consolidated Holdco Liquidating Trust with respect to a Holder of a Claim against the Consolidated Holdco Liquidating Trust or the Consolidated Debtors Liquidating Trust with respect to a Holder of a Claim against the Consolidated Debtors Liquidating Trust) (on IRS Form W-9) a correct taxpayer identification number, certifies as to no loss of exemption from backup withholding and complies with applicable requirements of backup withholding rules. A Holder that does not provide a correct taxpayer identification number may be subject to penalties

79

imposed by the Service. Amounts withheld under the backup withholding rules may be credited against a Holder's tax liability, and a Holder may obtain a refund of any excess amounts withheld under the backup withholding rules by filing the appropriate claim for refund with the Service.

The Consolidated Holdco Liquidating Trust Trustee will report annually to each Holder of a Consolidated Holdco Trust Claim such Holder's share of income, gains and losses of the Consolidated Holdco Liquidating Trust during the calendar year to the extent required by law. The Consolidated Debtors Liquidating Trust Trustee will report annually to each Holder of a Class 3 C, Class 4 C , Class 5 C, and Class 7 C Claim such Holder's share of income, gains and losses of the Consolidated Liquidating Trust during the calendar year to the extent required by law.

The Debtors, the Consolidated Holdco Liquidating Trust and the Consolidated Debtors Liquidating Trust will withhold from distributions provided under the Plan any amount which is required by law to be withheld, and will also comply with all applicable reporting requirements of the United States Tax Code and other applicable law. In order to receive distributions, creditors must provide the Debtors and/or the Consolidated Holdco and Consolidated Debtors Liquidating Trusts with the information needed to allow the Debtors and/or the Consolidated Holdco and Consolidated Debtors Liquidating Trusts to comply with applicable law.

## VIII. CERTAIN RISK FACTORS AND OTHER CONSIDERATIONS

### A. Forward Looking Statements in this Disclosure Statement May Prove to be Inaccurate

Many of the statements included in this Disclosure Statement contain forward-looking statements and information relating to the Debtors. These forward-looking statements are generally identified by the use of terminology such as "may," "will," "could," "should," "potential," "continue," "expect," "intend," "plan," "estimate," "project," "forecast," "anticipate," "believe," or similar phrases or the negatives of such terms. These statements are based on the beliefs of management as well as assumptions made using information currently available to management. Such statements are subject to risks, uncertainties and assumptions, as well as other matters not yet known or not currently considered material by management. Should one or more of these risks or uncertainties materialize, or should underlying assumptions prove incorrect, actual results may vary materially from those anticipated, estimated or projected. Given these risks and uncertainties, you are cautioned not to place undue reliance on such forward-looking statements. Forward-looking statements do not guarantee future performance. You should recognize these statements for what they are and not rely on them as facts. None of the Debtors undertakes any obligation to update or revise any of these forward-looking statements to reflect new events or circumstances after the date of this Disclosure Statement.

## IX. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

74392.000009 EMF_US 29471070v11112

If the Plan is not confirmed or consummated, the alternatives include, in addition to dismissal of the Cases, (i) liquidation of the Debtors under chapter 7 of the Bankruptcy Code or (ii) an alternative chapter 11 plan.

## A.     Liquidation Under Chapter 7

If no plan can be confirmed or the Court determines other cause exists for conversion, the bankruptcy cases may be converted to cases under chapter 7 of the Bankruptcy Code. In this event, a chapter 7 trustee would be elected or appointed to liquidate the assets of the Debtors for distribution to creditors in accordance with priorities established by the Bankruptcy Code.

The Debtors believe that conversion to chapter 7 and the appointment of a**one or more** chapter 7 trustee**trustees** would result in substantial additional Administrative Claims related to the attorneys and other professionals necessary to assist such trustee**(s)** and their need to study extensively these bankruptcy cases in order to fulfill their fiduciary duties, as well as the significant delays attendant to the chapter 7 trustee's need to analyze issues and research the background of the Debtors, their assets, ~~and~~ their liabilities,**, their intra-debtor claims,** and make a recovery analysis. Indeed, the Debtors' Liquidation Analysis concludes that under a chapter 7 liquidation, creditors would not recover as much as they would under the Plan. **If the cases were converted the intra-debtor and inter-estate claims and issues would not be resolved. The Debtors believe that there would be additional costs and expense and risks and uncertainties with respect to intra-debtor and intra-estate disputes and issues that would need to be resolved or litigated.** A copy of the Liquidation Analysis is Annexed hereto as Exhibit B.

## B.     Alternative Plan(s) of Reorganization

If the Debtors' exclusive period to file a plan of reorganization and solicit acceptances of a plan of reorganization expires pursuant to § 1121 of the Bankruptcy Code, other parties could propose their own plans of reorganization for the Debtors. The Debtors believe that the transactions reflected in the Plan and this Disclosure Statement will result in quicker and higher recoveries for all constituencies than any alternative scenario.

The Debtors believe that confirmation and implementation of the Plan are preferable to either of the above-described alternatives and recommend that all Creditors vote in favor of the Plan.

## X. CONCLUSION

The Debtors believe that acceptance of the Plan is in the best interest of Creditors and recommend that you vote to accept the Plan.

**PACHULSKI STANG ZIEHL & JONES LLP**

---

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:    ljones@pszjlaw.com
          joneill@pszjlaw.com
          kmakowski@pszjlaw.com

-and-

**HUNTON & WILLIAMS LLP**

Gregory G. Hesse (Texas Bar No. 09549419)
Lynnette R. Warman (Texas Bar No. 20867940)
Jesse T. Moore (Texas Bar No. 24056001)
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Telephone: (214) 979-3000
Telecopy: (214) 880-0011
Email:    ghesse@hunton.com
          lwarman@hunton.com
          jtmoore@hunton.com

ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION

Document comparison done by Workshare DeltaView on Friday, October 29, 2010
3:29:06 PM

| Input: | |
|---|---|
| Document 1 | interwovenSite://EMF_US/HW_US/29471070/11 |
| Document 2 | interwovenSite://EMF_US/HW_US/29471070/12 |
| Rendering set | H&W |

| Legend: | |
|---|---|
| **Insertion** | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 200 |
| Deletions | 103 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 303 |