# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ACCREDITED HOME LENDERS | § | Case No. 09-11516 (MFW) |
| HOLDING CO., et. al. | § | |
| | § | |
| Debtors[1] | § | JOINTLY ADMINISTERED |
| | § | *Related Dockets No. 1040,* |
| | § | *1120, 1130, 1131, 1142, 1159,* |
| | § | *2018, 2103, 2145* |

## OBJECTION OF PAMELA J. PEERCE-LANDERS AND BRUCE K. LANDERS TO "SECOND AMENDED DISCLOSURE STATEMENT WITH RESPECT TO THE DEBTORS' FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION"

We, Pamela J. Peerce-Landers and Bruce K. Landers, members of Class 8H, hereby file this objection ("the Objection") to the "Second Amended Disclosure Statement With Respect To The Debtors' First Amended Chapter 11 Plan Of Liquidation" [Docket No. 2145], ("the Second Amended Disclosure Statement.") The Objection is based upon information and belief that the Second Amended Disclosure Statement:

1. Does not provide "adequate information" of a kind and in sufficient detail to enable a holder of a claim or interest to make an informed judgment about the plan as specified in § 1125(a) of the Bankruptcy Code; and,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Accredited Home Lenders Holding Co., a Delaware corporation (9482), Accredited Home Lenders, Inc., a California corporation (6859), Vendor Management Services, LLC d/b/a Inzura Settlement Services, a Pennsylvania limited liability company (8047), Inzura Settlement Services, Inc., a Delaware corporation (7089), and Windsor Management Co., d/b/a AHL Foreclosure Services Co., a California corporation (4056). The address for all the Debtors is 9915 Mira Mesa Blvd., Ste. 100, San Diego, CA 92131. The bankruptcy cases for these debtors and debtors-in-possession are jointly administered under the bankruptcy case and style referenced above.

2. Does not satisfy §1122(a) and § 1123(a)(4) of the Bankruptcy Code governing the classification and equal treatment of similar claims.

In support of the Objection, we respectfully represent as follows. (Please note that unless otherwise specified, all **bold** emphasis is ours. Direct quotes from referenced documents are italicized.)

## I. LACK OF "ADEQUATE INFORMATION"

The Estimated Allowed Claims for Class 8H in the Debtors' Second Amended Disclosure Statement is: **$102,000,000**. Claims submitted by the shareholders of Accredited Mortgage Loan REIT Trust ("the REIT Trust") 9.75% Series A Perpetual Cumulative Preferred Shares (Liquidation Preference $25 per share) Fully and Unconditionally Guaranteed by Accredited Home Lenders Holding Co. ("the REIT Trust's Series A Preferred Shares") never exceeded 15% of this figure. In fact, nearly a year ago, Debtors reduced the maximum figure to just 2% of the $102,000,000 reported in their Second Amended Disclosure Statement.

Errors of 48-fold are not minor or immaterial. They are troubling and any disinterested party would seriously question the accuracy of the Debtors' accounting with respect to all other creditors' classes. Erroneous recovery estimates could certainly impact a creditor's decision about whether to accept or reject the Plan. Exaggerated "Estimated Allowed Claims" could also cause some creditors to be excluded from voting because the Debtors incorrectly concluded

2

that these creditors would receive nothing. We respectfully offer the following in support:

. 1.　In the "Debtors' Second (Substantive) Omnibus Objection to Claims Pursuant to 11 U.S.C. § 502(b) and Bankruptcy Rule 3007" ("Debtors' Second Omnibus Objection") [Docket No. 1040], Debtors sought to disallow all claims of the Series A Preferred Shareholders of the REIT Trust on the basis that: "Claim improperly asserts ownership of stock in a non-Debtor entity." Exhibit A in the original version of the Debtors' Second Omnibus Objection contained 191 claims and a total claimed amount of **$14,869,197.55.**

2.　Debtors subsequently revised Exhibit A, removing 71 claims, reducing the total claimed amount to **$2,105,107.93.** A line by line comparison of the two versions of the Debtors' Exhibit A, sorted by Claim No., is shown in Exhibit A. (Claimants' addresses were not included for brevity.) We include this Exhibit because the Debtors' revised version was not docketed and therefore, is not in the Court's records.

3,　The revised Debtors' Second Omnibus Objection was sent to the remaining claimants. Debtors required claimants to respond by December 11, 2009 or risk having their claims disallowed. Only 4 claimants with a total of 5 claims responded by the deadline.

4.　Debtors subsequently filed their "Certification of Counsel Regarding Debtors' Second (Substantive) Omnibus Objection to Claims Pursuant to 11 U.S.C. § 502(b) and Bankruptcy Rule 3007" dated December 16, 2009 [Docket No. 1159] requesting that the 115 claims for which no responses were received

3

be **DISALLOWED** in their entirety. Had the Court ruled on their Proposed Order, the total amount claimed by the REIT Trust's Preferred Shareholders would have been reduced to only **$182,561.28 or less than 0.2% of the Estimated Allowed Claims** reported in the Debtors' Second Amended Disclosure Statement. However, at the December 18, 2009 hearing, it was agreed to continue all action on the Debtors' Second Omnibus Objection until the end of the case.

5. Subsequent amendments to these original claims have potentially reduced the Estimated Allowed Claims for Class 8H to just $166,425.73 (see Exhibit B). In particular, we reduced our own claims by $16,135.55 to just $3135.23.

6. Despite Debtors' access to up-to-date information regarding the total amount of all allowed claims from Alix Partners and Kurtzman Carson LLC, Debtors have inexplicably continued to erroneously report that the Estimated Allowed Claims for Class 8H is $102,000,000—about 48 times more than the amount in their revised Second Omnibus Objection.

7. Debtors' large overestimation of the size of Class 8H is more than just academic. It raises questions about the accuracy of Debtors' accounting with regard to the Estimated Allowed Claims of the other classes of creditors that any disinterested party would find troubling. The errors may not be as large, but they well may be significant.

8. Similar errors in the Debtors' Estimated Allowed Claims for the other claim classes may have resulted in erroneous Estimated Recoveries and

even the exclusion of some classes from eligibility to vote on the Plan because Debtors incorrectly estimated these classes would receive nothing.

9. Significant errors in the Estimated Recovery for a class in the Debtors' Second Amended Disclosure Statement could alter a creditor's decision about whether to vote to approve or reject the Plan.

10. As a result, we believe that Debtors' Second Amended Disclosure Statement does not satisfy the requirement for providing "adequate information" as described in 11 U.S.C. § 1125(a).

## II. UNEQUAL TREATMENT OF CLAIMS

Debtors have classified the claims of the Trust Preferred Security Holders (Class 7H) senior to those of the REIT Trust's Series A Preferred Shareholders (Class 8H). Were the REIT Trust's Series A Preferred Shares just typical preferred stock, there would be no argument. However, the REIT Trust's Series A Preferred Shares are unique.

Upon information and belief, we assert that the Series A Preferred Shares are equal, if not senior in rank to the Trust Preferred Securities because of their unique and superior guarantee, specific language in the Trust Preferred Guarantee which appears to subordinate it, as it pertains to the Trust Preferred Securities, to the REIT Trust's Series A Preferred Shares and their Guarantee, and the numerous shared characteristics of these two preferred securities, which distinguish both of them from typical preferred securities. We respectfully offer the following to support our position.

## A. Definitions of the REIT Trust's Series A Preferred Shares' Guarantee and the Trust Preferred Securities' Guarantee

1.    The Guarantee for the REIT Trust's Series A Preferred Shares from p. S-110 of the Prospectus dated August 9, 2004 (Exhibit C) is as follows (bold headings are from the referenced document, the rest is ours):

*"General*

*Accredited will irrevocably and unconditionally agree to pay in full to the holders of each share of the Series A Preferred Shares, the guarantee payments* (as described below) (except to the extent paid by REIT and except as otherwise described in this prospectus supplement), *as and when due, regardless of any defense, right of set-off or counterclaim which REIT or Accredited may have or assert.* The following guarantee payments, if not paid by REIT, will be subject to the guarantee, without duplication: (i) all accrued and unpaid dividends (whether or not declared) payable on REIT's Series A Preferred Shares, (ii) the redemption price (including all accrued and unpaid dividends) payable with respect to any of the Series A Preferred Shares redeemed by REIT and (iii) the liquidation preference payable with respect to any of REIT's Series A Preferred Shares as described under "Description of REIT's Series A Preferred Shares — Liquidation Distribution." Accredited's obligation to make a guarantee payment may be satisfied by direct

6

*payment of the required amounts by Accredited or by causing REIT to pay such amounts.* ***If payments on the guarantee and Accredited's preferred shares that rank on parity with the guarantee cannot be paid in full, payments will be made pro rata based on the liquidation preference and the amount then payable on such preferred shares.***"

**"Subordination**

**The guarantee will constitute an unsecured obligation of Accredited and will rank junior to all other liabilities of Accredited, effectively pari passu with the most senior preferred stock,** *if any, issued by Accredited and senior to Accredited's common stock".*

2. The Trust Preferred Guarantee" as defined in the Debtors' Second Amended Disclosure Statement is:

"*The guarantee by Holdco to satisfy all amounts pursuant to the Trust Preferred Indenture and Trust Declaration.*"

3. While this definition suggests that the Trust Preferred Guarantee, as it pertains to the Trust Preferred Securities, represents a liability of Holdco, all evidence suggests that this guarantee is very limited and is not a liability of Holdco. Moreover, it is also subordinated.

### B. Uniqueness and Superiority of the REIT Trust's Series A Preferred Shares Guarantee vs. the Trust Preferred Guarantee

1. **The Guarantee of the REIT Trust's Series A Preferred Shares is unique and superior** to the Trust Preferred Securities' Guarantee, **because** unlike the Trust Preferred Guarantee and the guarantees for all 159 outstanding,

7

publicly traded, Trust Preferred Securities today, **it is not conditional on the solvency of the Issuer or Trust.**

2.　On pp. S-98 to S-99 of the Prospectus Supplement dated August 9, 2004, for the REIT Trust's Series A Preferred Shares (Exhibit C) it states [bold emphasis is ours]:

*"No dividends on REIT's Series A Preferred Shares shall be declared by REIT or paid or set apart for payment by REIT at such time as the terms and provisions of any of REIT's agreements, including any agreements relating to REIT's indebtedness, prohibit such declaration, payment or setting apart for payment or provide that such declaration, payment or setting apart for payment would constitute a breach of, or a default under, any agreement or if such declaration or payment shall be restricted or prohibited by law.*

**Notwithstanding the foregoing, dividends on REIT's Series A Preferred Shares will accrue and be payable under Accredited's guarantee <u>whether or not</u> current payment of dividends is prohibited, <u>whether or not</u> REIT has earnings, <u>whether or not</u> there are funds legally available for the payment of such dividends and <u>whether or not</u> such dividends are declared. Accrued but unpaid dividends on REITs' Series A Preferred Shares will accumulate as of the dividend payment date on which they first become payable."**

3.　Since the placement of these Trust Preferred Securities was private, we do not have access to their offering circular. However, we do have

8

the next best thing—a publicly available copy of the Offering Circular dated July 6, 2007 from the investment firms, Kodiak CDO II Ltd. and Kodiak CDO II Corp. (collectively, "Kodiak"). (Pertinent sections are included in Exhibit D). Kodiak planned to purchase Accredited's Trust Preferred Securities. Kodiak would have access to the information provided to private investors about Accredited's Trust Preferred Securities.

4. It is important to note that Kodiak specifically mentions Accredited's Trust Preferred Securities twice in their Offering Circular (see pp. 48-49 and 152 of the Offering Circular in Exhibit D). They specifically mention only one other security by name. Therefore, their descriptions of the terms and guarantees for the trust preferred securities they planned to purchase are directly relevant to Accredited's Trust Preferred Securities.

5. The following quotes from Kodiak's Offering Circular are all from the section, "Description of the Trust Preferred Securities," which begins on p. 152. At the beginning of the subsection, "Terms of the Trust Preferred Securities," Kodiak notes:

> " *The following brief summary of certain terms and provisions that are **typical of Trust Preferred Securities refers only to the Trust Preferred Securities to be acquired by the Issuer on the Closing Date.**"*

The Issuer referred to here is Kodiak CDO II Ltd. and one of the Trust Preferred Securities to be acquired by them is Accredited's Trust Preferred Securities.

6. Whereas Holdco guarantees payment of the dividends on the REIT Trust's Series A Preferred Shares:

> "***...whether or not current payment of dividends is prohibited, whether or not REIT has earnings, whether or not there are funds legally available for the payment of such dividends and whether or not such dividends are declared,***"

on p. 153, of Kodiak's Offering Circular, it states:

> "***Distributions on the Trust Preferred Securities will be payable only to the extent the related Trust Preferred Securities Issuer* [in this case, Accredited Preferred Securities Trust I] *has funds legally available therefor.***"

7. Although Kodiak specifically mentions the Trust Preferred Securities twice because of their higher risk, there is no mention of any exceptional feature in Accredited's guarantee which would mitigate this risk. Why? Probably, because Accredited's guarantee is not exceptional. It is the same as all those for 159 publicly traded trust preferred securities outstanding today. What they do say on p. 153 is:

> *"The Parent Guarantee, when taken together with the Collateral Entity's obligations under the Corresponding Debentures, the indenture relating to such Corresponding Debentures (each such indenture, a "**TRUPs Indenture**") and the related Trust Agreement, will provide a full and unconditional guarantee **on a subordinated basis** by such Collateral*

*Entity of amounts due on the Trust Preferred Securities of the subsidiary Trust Preferred Securities Issuer."*

For clarity, in this quote Holdco would be both the Parent and the Collateral Entity and Accredited Preferred Securities Trust I, the Trust Preferred Securities Issuer.

8. Wells Fargo is the Trustee for the Trust Preferred Securities. A comparison of the wording of the above statements from Kodiak's Offering Circular about trust preferred securities' distributions and guarantees with the guarantee provided by Wells Fargo for their enhanced trust preferred securities issued by Wells Fargo Capital XI (Prospectus dated May 16, 2007, pp. S-8 and 47) shows them to be essentially identical. This Wells Fargo guarantee is typical of all those for all trust preferred securities.

From p. S-8:

*"Guarantee by Wells Fargo*

*We will **fully and unconditionally guarantee payment** of amounts due under the capital securities **on a subordinated basis and to the extent the trust has funds available for payment** of those amounts. We refer to this obligation as the "guarantee." **However, the guarantee does not cover payments if the trust does not have sufficient funds to make the distribution payments**, including, for example, if we have failed to pay to the trust amounts due under the junior subordinated debentures or if we elect to defer payment of interest on the junior subordinated debentures."*

11

From p. 47:

> *"The trust preferred securities guarantee, when taken together with our obligation under the junior subordinated debt securities, the junior subordinated indenture and the applicable trust agreement, including our obligation to pay cost, expenses, debts and liabilities of the applicable trust, other than those relating to trust securities, will provide a full and unconditional guarantee on a subordinated basis of payments due on the trust preferred securities."*

9. I, Pamela J. Peerce-Landers, under penalty of perjury, do hereby swear that I personally examined the descriptions and terms of the guarantees in each of the Prospectuses for the 159 publicly-traded, guaranteed Trust Preferred Securities outstanding as of October 25, 2010. Upon information and belief, all of these guarantees are limited to the parent's ensuring that the trust will pay distributions if the trust has the funds. Some are further limited by legal requirements to maintain minimum capital ratios. In no case, is the trust preferred securities guarantee accepted by the Parent company as a company liability. My findings are detailed in Exhibit E.

## C. The Trust Preferred Guarantee Is Not a Liability of Holdco.  The REIT Trust's Series A Preferred Shares Is an Unsecured Liability of Holdco

1. The Subordination Clause in the Guarantee for the REIT Trust's Series A Preferred Shares (see Exhibit C) clearly states that the guarantee is an unsecured obligation of Holdco:

12

*"Subordination*

***The guarantee will constitute an unsecured obligation of Accredited*** *and will rank junior to all other liabilities of Accredited, effectively pari passu with the most senior preferred stock, if any, issued by Accredited and senior to Accredited's common stock".*

2. The definition of the Trust Preferred Guarantee in the Debtors' Second Amended Disclosure Statement does not state that the guarantee, as it pertains to the Trust Preferred Securities, is an obligation of Holdco, secured or unsecured.

3. Upon information and belief, nothing in Kodiak's Offering Circular, or in Wells Fargo's trust preferred securities' guarantees or in any of the 159 descriptions of trust preferred securities' guarantees which I, Pamela J. Peerce-Landers personally examined, states that the trust preferred security's guarantee is a liability of the parent company making the guarantee.

4. Since the Trust Preferred Guarantee as it pertains to the Trust Preferred Securities is not a liability of Holdco, the Trust Preferred Securities cannot rank senior to the REIT Trust's Series A Preferred Shares. As stated above, The Series A Preferred Shares only rank junior to Accredited's liabilities and pari passu with the most senior preferred stock.

### D. The Trust Preferred Guarantee, As It Pertains to the Trust Preferred Securities, Is Subordinate to REIT Trust's Series A Preferred Shares and Their Guarantee

1.   Kodiak's Offering Circular also provides the following information about the guarantees of the trust preferred securities it is purchasing (see p. 54 in Exhibit D):

> "Furthermore, **the Parent Guarantee will be effectively subordinated to all existing and future preferred equity** and **unsecured and secured liabilities of and guarantees issued by the Parent Collateral Entity's subsidiaries**, including the related Collateral Entity."

2.   Thus, even if the Trust Preferred Guarantee, as it pertains to the Trust Preferred Securities, were an obligation of Holdco, it would be subordinated to **existing preferred equity issued by Holdco's subsidiaries, in particular, the REIT Trust's Series A Preferred Shares and their guarantee.**

## E. The Trust Preferred Securities and the REIT Trust's Series A Preferred Shares Have Many Characteristics in Common

1.   The proceeds from the sales of both the Trust Preferred Securities and the REIT Trust's Series A Preferred Shares were used to buy debt. Accredited Preferred Securities Trust I bought junior notes from Holdco. The REIT Trust used its proceeds to make investments in mortgage assets, specifically Holdco's mortgage loans.

2.   The REIT Trust was also permitted to invest in a variety of capital preservation investments, including short-term, interest-bearing instruments such

14

as U.S. government securities. These are higher quality notes than the junior notes Accredited Preferred Securities Trust I was required to buy from Holdco.

3. The income of both trusts was interest received on their debt purchases.

4. Both trusts were totally dependent on Holdco.

5. The Trust Preferred Securities' distributions are not eligible for the 15% tax rate because Holdco deducted the interest it paid to the Preferred Trust on its junior notes from its income taxes.

6. The REIT Trust's dividends are not eligible for the 15% tax rate because REIT's do not pay income tax. Typical preferred dividends are eligible for the 15% tax rate because they are paid from the parent company's after-tax earnings.

7. Only 6% of the outstanding non-trust preferred securities today have guarantees, whereas, 98% of the trust preferred securities have guarantees.

8. In conclusion, the REIT Trust's Series A Preferred Shares have much more in common with the Trust Preferred Securities than they do with typical preferred stock.

**WHEREAS,**

1. The guarantee for REIT Trust's Series A Preferred Shares is clearly superior to the guarantee for the Trust Preferred Securities from the investor's viewpoint in that Holdco is required to pay distributions to the Series A Preferred

Shareholders even when the REIT has no earnings but is not required to pay the Trust Preferred Securities Holders if the trust has no funds;

2. The strength of the REIT Trust's Series A Guarantee makes its Series A Preferred Shares unique among all 653 preferred securities, including all 159 outstanding, guaranteed trust preferred securities;

3. The Trust Preferred Guarantee, as it pertains to the Trust Preferred Security Holders, is not a liability of Holdco and the guarantee for the REIT Trust's Series A Preferred Shares and the Series A Preferred Shares themselves are only subordinate to Holdco's liabilities, the Trust Preferred Guarantee and consequently, the Trust Preferred Securities, are not senior to the REIT Trust's Guarantee or the REIT Trust's Series A Preferred Shares;

4. The Trust Preferred Guarantee, as it pertains to the Trust Preferred Security Holders, is effectively subordinated to all existing and future preferred equity and unsecured and secured liabilities of and guarantees issued by the Holdco's subsidiaries, in particular, the REIT Trust's Series A Preferred Shares and their Guarantee; and,

5. The characteristics of the REIT Trust's Series A Preferred Shares have more in common with those of the Trust Preferred Securities than they do with traditional preferred stock

**WE** believe, upon information and belief, that:

1. The Debtors' Second Amended Disclosure Statement does not conform with § 1122(a) and § 1123(a)(4) of the Bankruptcy Code because it

misclassifies the REIT Trust's Series A Preferred Shares;

2. Our information supports ranking the REIT Trust's Series A Preferred Shares senior to the Trust Preferred Securities;

3. At a minimum, the REIT Trust's Series A Preferred Shares should not be ranked junior to the Trust Preferred Securities.

Respectively submitted, this 12th day of November, 2010

Pamela J. Peerce-Landers and Bruce K. Landers
550 N. Sanatoga Rd.
Sanatoga, PA 19464-2738
Telephone: 610-327-4736
E-Mail: pplanders@msn.com