**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ACCREDITED HOME LENDER | ) | |
| HOLDING CO., et al., | ) | Case No. 09-11516 (MFW) |
| | ) | |
| Debtor. | ) | |

## **OPINION**[1]

Before the Court is the Debtors' objection to the claim of Eugene C. Smalls ("Smalls"). For the following reasons, the Court will overrule the Debtors' objection and allow the claim as a general unsecured claim in the amount of $116,052.04.

I. BACKGROUND

On May 1, 2009, Accredited Home Lenders Holding Co., and four of it affiliates (collectively "the Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors were mortgage lenders largely in the sub-prime market. Post-petition, the Debtors sold their last loan portfolios and their servicing business.

On June 12, 2009, Eugene C. Smalls filed a general unsecured claim in the amount of $850,000 for fraud, wrongful foreclosure, and violations of various state and federal laws relating to a

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, which is made applicable to contested matters by Rule 9014 of the Federal Rules of Bankruptcy Procedure.

mortgage he obtained from the Debtors in January 2005 (the "Mortgage"). On May 20, 2010, the Debtors filed the Thirteenth Substantive Omnibus Objection to Claims pursuant to 11 U.S.C. § 502(b) and Bankruptcy Rule 3007. (D.I. # 1555.) Among the claims addressed by the Thirteenth Omnibus Objection was Mr. Smalls' claim. (Id. at Ex. B.) The basis of the objection to his claim was that the Debtors had "no liability to the claimant under any applicable law." (Id.) Mr. Smalls filed a reply to the Thirteenth Omnibus Objection on June 14, 2010. (D.I. # 1636.)

A hearing on the objection to Mr. Smalls' claim was held on June 21, 2010, at which time Mr. Smalls appeared and represented himself. He presented both oral and documentary evidence in support of his claim. The Debtors presented documentary evidence in response. At the conclusion of the hearing the Court directed the filing of additional documents by Mr. Smalls. (Tr. 6/21/10 at 54.) Mr. Smalls filed the additional documents on June 29, 2010. (D.I. # 1706.) The Debtors filed a post-hearing brief on July 9, 2010. (D.I. # 1726.)

On July 19, 2010, Mr. Smalls filed a motion to strike the Debtors' post-hearing brief, contending that the Court had not authorized any additional filing by the Debtors. (D.I. # 1751.) At the hearing held on October 20, 2010, the Court denied the motion to strike. (Tr. 10/20/10 at 8-10.) At that hearing,

however, the Debtors objected to the Court considering a report prepared by Ms. Marlowe Moreland of Florida Mortgage Audits, which was attached to an affidavit submitted by Mr. Smalls on August 24, 2010.  (D.I. # 1891 at Ex. A.)  The Court overruled the objection and permitted Mr. Smalls to present the testimony of Ms. Moreland at that hearing, subject to cross examination by the Debtors.  (Id. at 14-15.)

The record has now been closed, and the matter is ripe for decision.

II. JURISDICTION

The Court has jurisdiction over this core matter pursuant to 28 U.S.C. §§ 1334 & 157(b)(2)(A), (B) & (O).

III. DISCUSSION

In his reply to the Thirteenth Omnibus Objection, Mr. Smalls asserted that the Debtors had improperly commenced foreclosure proceedings against him, had not applied payments he had made on his Mortgage, were unable to produce the original loan documents, had coerced him into signing a forbearance agreement (which was never signed by the Debtors), had charged attorneys' fees that were not collectable under state law and were in excess of the actual charges of its attorneys, illegally listed his home as being in foreclosure causing him emotional distress, provided

inaccurate information to the credit reporting agencies, coerced him into refinancing at a higher interest rate and charged him a pre-payment penalty when he did. (D.I. # 1636.) Pre-petition, Mr. Smalls had commenced an action against the Debtors in the United States District Court for the Middle District of Florida alleging violations of the Real Estate Settlement Procedures Act, the Truth in Lending Act, and the Florida Mortgage Foreclosure Act, breach of contract, breach of fiduciary duty, invasion of privacy, unfair trade practices, and other counts. (D.I. # 1636 at Ex. 16.)[2] The Florida Court had denied the Debtors' motion to dismiss and the parties had briefed Mr. Smalls' motion for summary judgment at the time of the Debtors' bankruptcy filing, which stayed the action. (Id. at Exs. 19 to 22.)

    A.    HUD Violations

Mr. Smalls asserts that the Debtors violated various HUD regulations by, among other things, commencing foreclosure before Mr. Smalls was three months in arrears, failing to apply partial and late payments sent by Mr. Smalls, failing to give sufficient notice (90 days) of his delinquency, and failing to follow HUD's mitigation procedures. (D.I. # 1636 at 2-4, 10-14 (citing 24 CFR § 203.330 et seq.).)

---

[2] Citations to exhibits attached to pleadings are "D.I. # at Ex. [letter or number]." Citations to the Debtors' exhibits admitted into evidence at the June 21, 2010, hearing are "Ex. A" to "Ex. E." Citations to the transcripts are "Tr. [date] at [page]."

4

The Debtors respond that the HUD regulations are not applicable because the Mortgage was not insured by HUD. They further note that even if it were, the HUD regulations do not provide any right of private action for a violation. See, e.g., Miller v. GE Capital Mortgage Servs., Inc. (In re Miller), 124 Fed. Appx. 152 (4th Cir. 2005) (holding that private right of action did not exist for lender's violations of loss mitigation and related HUD regulations); Three Rivers Ctr. for Indep. Living v. Hous. Auth. of City of Pittsburgh, 382 F.3d 412, 424 (3d Cir. 2004) (affirming dismissal of private lawsuit asserting causes of action for City's failure to comply with HUD regulations mandating handicapped access to public housing).

The Court agrees with the Debtors. First, there is no evidence that the Mortgage in question was issued under HUD. (Ex. B.) Second, even if it were, there is no express or implied private cause of action for any HUD violations that Mr. Smalls may have against the Debtors. Miller, 124 Fed. Appx. at 155 (noting that the "statutory remedies at the disposal of [HUD] are extensive and their inclusion indicates that Congress did not intend to create a private right of action for mortgagors"). Consequently, the Court concludes that Mr. Smalls does not have any valid claim for HUD violations that the Debtors may have committed.

B.  <u>Release</u>

The Debtors also contend that Mr. Smalls has no claim because he signed a Forbearance Agreement dated June 26, 2006, releasing all claims he had against the Debtors.  (Ex. D at § 5.) Mr. Smalls testified that he was coerced into signing the Forbearance Agreement.  (Tr. 6/21/10 at 29, 32-34, 39.)  Mr. Smalls also noted that the Forebearance Agreement was never signed by the Debtors.  (<u>Id.</u> at 28-29; Ex. D.)

1.  <u>Failure to sign Forbearance Agreement</u>

The only copy of the Forbearance Agreement offered into evidence is signed by Mr. Smalls and not by the Debtors.  (Ex. D; Tr. 6/21/10 at 28-29.)  Mr. Smalls, therefore, asserts that the Forbearance Agreement is not binding.  (D.I. # 1636 at 8; D.I. # 1706 at 7 (<u>citing</u> Ind. Code §§ 32-2-1.5-5, <u>repealed by</u> 2002 Ind. Legis. Serv. P.L. 2-2002 (S.E.A. 57)).)

The Court concludes that the failure of the Debtors to sign the Forbearance Agreement does not mean that it is not valid and binding.  The citation to Indiana law by Mr. Smalls is puzzling because there is no indication that the Mortgage was governed by Indiana law; in fact the Mortgage provides that it is governed by the law of the jurisdiction where the property is located (in this case, Florida).  (Ex. B. at § 16.)[3]

---

[3] Further, the provision of Indiana law cited by Mr. Smalls has been repealed.  <u>See, e.g.,</u> 2002 Ind. Legis. Serv. P.L. 2-2002 (S.E.A. 57).

6

While the Court has found Third Circuit precedent holding that failure of a party to sign a contract may make it unenforceable by that party, the case is distinguishable. See, e.g., Infocomp, Inc. v. Electra Prods, Inc., 109 F.3d 902 (3d Cir. 1997) (relying on Pennsylvania law and contract provision which expressly stated that contract was not effective until seller signed it). Further, that ruling does not appear to be the majority view. See, e.g., Synnex Corp. v. ADT Sec. Servs., Inc., 928 A.2d 37, 42 n. 1 (N.J. Super. 2007) (noting that prevailing case law suggests that a party can waive - by partial performance for example - provision of contract that requires home office approval); Commerce Bank/Pennsylvania v. First Union Nat'l Bank, 911 A.2d 133, (Super. Ct. Pa. 2006) (concluding that parties reached an agreement though a formal writing was never signed by both and distinguishing InfoComp because agreement contained no express provision that it was not effective until signed).

The Debtors have cited Florida law that follows the prevailing view that the Forbearance Agreement is enforceable by the Debtors against Mr. Smalls because Mr. Smalls signed it. See, e.g., Consol. Res. Healthcare Fund I, Ltd. v. Fenelus, 853 So. 2d 500, 504 (Fla. Dist. Ct. App. 2003) ("A party normally is bound by a contract that the party signs unless the party can demonstrate that he or she was prevented from reading it or

induced by the other party to refrain from reading it."); <u>Dodge of Winter Park, Inc. v. Morley</u>, 756 So. 2d 1085, 1085-86 (Fla. Dist. Ct. App. 2000) ("Generally, it is enough that the party against whom the contract is sought to be enforced signs it.").

Thus, the Court concludes that the lack of a signature by the Debtors on the Forbearance Agreement is not fatal to its enforceability by the Debtors against Mr. Smalls.

    2.   <u>Duress</u>

Mr. Smalls contends nonetheless that the Forbearance Agreement is not enforceable because he signed it under duress. Mr. Smalls testified that he only signed the Forebearance Agreement after the Debtors threatened to take his home and refused to deal with him unless he signed. (Tr. 6/21/10 at 29, 32-34, 39; D.I. # 1636 at 8.)

The Debtors argue that these conclusory statements by Mr. Smalls are insufficient to invalidate the Forbearance Agreement. <u>See, e.g.</u>, <u>McLaughlin v. State Dept. of Natural Res.</u>, 526 So. 2d 934, 936 (Fla. Dist. Ct. App. 1988) (holding that to prove duress a party must show "(1) that one side involuntarily accepted the terms of another, (2) that circumstances permitted no other alternative, and (3) that said circumstances were the result of coercive acts of the opposite party."). The Debtors argue that the circumstances giving rise to the Forbearance Agreement were not coercive. They assert that they acted within their legal

rights as set forth in the Mortgage by commencing the foreclosure action. They contend that Mr. Smalls had an alternative to signing the Forbearance Agreement: he could have defended the foreclosure action.

The Court finds, however, that Mr. Smalls has presented enough evidence to demonstrate that he signed the Forbearance Agreement under duress. (Tr. 6/21/10 at 29, 32-34, 39.) He was not represented by counsel at the time. He was under the care of a physician for post traumatic stress syndrome. (Ex. E.) He was facing the loss of his home even though he believed that he had made sufficient payments to keep the Mortgage current. (D.I. # 1636 at Ex. 2C; D.I. # 1706 at Exs. B, F, G, H & I.). Therefore, the Court concludes that the release in the Forbearance Agreement is not a bar to Mr. Smalls' claims.

    C.    Breach of Contract

As noted above, Mr. Smalls' claim is premised on various alleged violations of the Mortgage by the Debtors.

        1.    Failure to provide adequate notice

Mr. Smalls asserts that the Debtors failed to provide sufficient notice of their intent to foreclose. Mr. Smalls testified that the first notice from the Debtors he received was dated June 8, 2006, which demanded payment on that same date of alleged arrears and attorneys' fees totaling $7,036.92. (D.I. # 1636 at Ex. 1.) Mr. Smalls contends that, according to the

9

Mortgage, he should have had at least 30 days notice to cure any amounts due. (Ex. B at § 22.)

In their post-trial brief, the Debtors contend that notice of intent to foreclose was provided in April 2006. (D.I. # 1726 at Ex. 2.) The Debtors, however, presented no evidence that the notice was in fact sent to Mr. Smalls. (Tr. 6/21/10 at 46.) The Court finds that the Debtors' reliance on argument alone is insufficient to establish that the notice was sent. Cf. In re Hill, 437 B.R. 503, 515 (W. D. Pa. 2010) (finding sanctions were warranted because of counsel's reliance on change-in-payment letters from client's files without advising court and opposing counsel that those letters had not been sent on date indicated but instead were printed after-the-fact). Given Mr. Smalls uncontradicted testimony that he did not receive the April 18 notice, the Court concludes that the Debtors did not provide Mr. Smalls with sufficient notice of their intent to foreclose to enable him to cure his defaults as required by the Mortgage. (Tr. 6/21/10 at 28; D.I. # 1636 at 1; Ex. B at § 22.)

### 2. Failure to credit payments

Mr. Smalls also contends that the Debtors failed to credit many payments sent by him and that, in fact, he was not in default of the Mortgage in the Spring of 2006 when the Debtors threatened to foreclose. Mr. Smalls presented the testimony of Ms. Moreland who conducted an audit of the loan history of Mr.

Smalls' Mortgage. (D.I. # 1636 at Ex. 17.) Ms. Moreland testified that based on the Debtors' own records, very early in the parties' relationship Mr. Smalls was at least one month ahead on payments on his Mortgage. (Tr. 10/20/10 at 17-21; D.I. # 1636 at Ex. 17; D.I. # 1891 at Ex. M.) This resulted from Mr. Smalls sending in several payments in response to notice that one of his checks had bounced. One of those payments (sent on June 30, 2005) was not applied by the Debtors as a monthly payment but was erroneously applied to the principal. (Tr. 10/20/10 at 21.) Ms. Moreland testified that Mr. Smalls thereafter continued to make payments on the Mortgage through March, 2007. (Id. at 21-28.) Though some of the payments did not clear, they were replaced with good funds. (Id.) Therefore, Ms. Moreland testified that the Debtors' records showed that Mr. Smalls was not delinquent as of April 2006, when the Debtors contended he was in default. (Id. at 24-26.)

In addition, Ms. Moreland testified that the Debtors' records also do not reflect certain payments made by Mr. Smalls in May and June of 2006. (Id. at 27-28.) Specifically, Mr. Smalls presented evidence that he sent a partial payment in the amount of $888 on May 25, 2006, which was received by the Debtors on May 27, 2006, and sent two $500 money orders on June 1, 2006, which were received by the Debtors on June 6, 2006. (D.I. # 1636 at 2 & Exs. 24 & 25.) In addition, Ms. Moreland testified

11

that the Debtors' records reflect an additional payment of $1,448 made by Mr. Smalls on June 22, 2006, which the Debtors did not apply. (Tr. 10/20/10 at 27-28.)

The Debtors argued that the Mortgage allowed them to "return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current." (Ex. B at § 1.) The Debtors' loan history evidences that the Debtors did return the May payment in the amount of $888 and the June payments totaling $1,000 because the Debtors stated they were insufficient to bring the account current. (D.I. # 1636 at Ex. 2E.) However, no notice was provided to Mr. Smalls (until the letter sent on June 8, 2006) that the payments were being held as unapplied funds or that the Debtors would not accept partial payments unless all arrears were cured. (Tr. 6/2/10 at 28.) Further, as testified by Ms. Moreland, Mr. Smalls was not in default as of May 2006 because the Debtors had erroneously applied a payment made by him in 2005. (Tr. 10/20/10 at 17-21.)

Therefore, the Court finds that the Debtors were in breach of the Mortgage by failing to apply payments made by Mr. Smalls and by contending that he was delinquent in June 2006.

### 3. Attorneys' fees

Mr. Smalls asserts that under the Forbearance Agreement the Debtors required that he pay the Debtors' attorneys' fees in violation of Florida law which allows attorneys' fees only for

12

the prevailing party. (D.I. # 1636 at 6 (citing Nolan v. Altman, 449 So. 2d 898 (Fla. Dist. Ct. App. 1984); Burnstein v. 5838 Condominium, Inc., 430 So. 2d 572 (Fla. Dist. Ct. App. 1983)).)

The Court finds that the authority cited by Mr. Smalls is distinguishable because those cases dealt with the Florida statute which authorizes attorneys' fees to prevailing parties in civil litigation. See Fla. Stat. § 501.2105. In this case, the Debtors did not seek attorneys' fees under that statute but instead under the terms of the parties' agreement. The Mortgage authorizes the Debtors to charge Mr. Smalls for any fees incurred in protecting their interests in the property, including attorneys' fees. (Ex. B at §§ 14 & 22.)

As noted above, however, the Court concludes that Mr. Smalls was not in default of his Mortgage as of June 2006. Therefore, the Debtors did not need counsel to protect their interests. As a result, the Court will allow Mr. Smalls' claim in the amount of the attorneys' fees he paid to the Debtors which were not returned ($2,071).[4]  (D.I. # 1636 at Ex. 6.)

---

[4] Mr. Smalls also complains that he was required to pay attorneys' fees in excess of the amount that the Debtors actually incurred. (D.I. # 1636 at Ex. 6.) In a letter dated March 2, 2007, the Debtors acknowledged that their estimate of attorneys' fees and costs was excessive and returned that excess ($803) to Mr. Smalls. (Id.) Because the Court is awarding Mr. Smalls a claim for the attorneys' fees he paid which were not returned to him, it is not necessary to address this claim.

Mr. Smalls seeks interest at the rate of 10% on the attorneys' fees he paid. (Ex. F at 4.) There is nothing in the Mortgage, however, that requires the payment of interest by the Debtors to Mr. Smalls at that (or any other) rate. Further, unmatured interest on unsecured claims is not allowable under the Bankruptcy Code. 11 U.S.C. §502(b)(2). Therefore, the Court will disallow any claim for interest on the attorneys' fees paid but will allow the claim for attorneys' fees paid of $2,071. (D.I. # 1636 at Ex. 6.)

    4. <u>Pre-payment penalty</u>

Mr. Smalls also asserts that he was improperly charged a pre-payment penalty of $5,263.33 in July 2007 when he refinanced the Mortgage. (Ex. F at Answer to Interrogatory 8.) Mr. Smalls contends that he was forced to refinance because of the Debtors' continued harassment of him. (Tr. 6/21/10 at 15-16, 18.)

The Debtors argue that Mr. Smalls was not required to refinance the Mortgage and that he did it of his own accord, apparently in order to obtain excess funds. (D.I. # 1720 at Ex. M.) The Note signed by Mr. Smalls expressly requires the payment of a pre-payment penalty of 5% of the balance if the Mortgage is repaid within 3 years. (D.I. # 1636 at Ex. 2.) In this case, Mr. Smalls refinanced in August 2007 within 3 years of the Mortgage dated January 26, 2005. (Ex. B; D.I. # 1636 at Ex. 2.)

The Court finds that the Debtors' actions in not properly applying Mr. Small's payments and threatening foreclosure when he was not in default caused Mr. Smalls to believe that he had to refinance to avoid future problems.  As explained by Ms. Moreland, the history of the loan through June 2006 when foreclosure was threatened supports this.  Further, even after Mr. Smalls signed the Forbearance Agreement, it appears that the Debtors continued to take actions against him and his house. Though the Forebearance Agreement was signed by Mr. Smalls in June 2006, the Debtors filed a motion for summary judgment in the foreclosure action in July 2006, necessitating an answer and other pleadings by Mr. Small.  (D.I. # 1706 at Ex. K.)  The Debtors did not file a notice of dismissal of that action until March 7, 2007.  (Id. at Ex. A.)  Mr. Smalls refinanced shortly thereafter on August 14, 2007.

The Court finds that the Debtors' continued actions against Mr. Smalls, even after he signed the Forebearance Agreement to save his house, warranted his refinancing.  Therefore, the Court finds that the imposition of a pre-payment penalty by the Debtors in these circumstances is unconscionable.  The Court will allow Mr. Smalls' claim for the pre-payment penalty in the amount of $5,263.33.  (Ex. F at Answer to Interrogatory 8.)

5.   <u>Increased interest payment</u>

Mr. Smalls also asserts that when he was compelled to refinance in order to stop the Debtors' harassment, his interest increased from the 8.99% the Debtors were charging to 13.09%. (<u>Compare</u> D.I. # 1636 at Ex. 2, <u>with</u> D.I. # 1720 at Ex. M.)

Because the Court finds that the Debtors' actions did force Mr. Smalls to refinance, the Court will allow Mr. Smalls' claim for the difference in interest he incurred in that refinance. It appears, however, that Mr. Smalls borrowed more than the balance due to the Debtors.  Therefore, the Court will limit the claim to the present value of the increased interest that Mr. Smalls will have to pay on the balance that was due to the Debtors at the time of the refinance.  (D.I. # 1720.)  <u>See, e.g.</u>, <u>Pension Benefit Guar. Corp. v. Belfance (In re CSC Indus.)</u>, (noting that the bankruptcy court is obligated to "reduce claims for future payment to present value. . . .").

To calculate the present value the Court starts with the amount of Mr. Smalls' monthly payment that is attributable to the increased interest rate on the refinanced balance that was due to the Debtors.  This number is found by multiplying the 4.01% increased interest by $111,718.90 (the balance owed to the Debtors at the time of refinancing) and dividing by twelve, to arrive at an increase in Mr. Smalls' monthly payment of $381.71. Over the thirty-year life of the refinance, the increase in Mr.

Smalls' payments attributable to the balance due to the Debtors totals $137,033.89.

To calculate the present value of that number, the Court must apply an appropriate discount rate. There is no mandated method for the determination of the discount rate to reduce a claim to its present value. In re Mirant Corp., 332 B.R. 139, 156 (Bankr. N.D. Tex 2005) (citing St. Louis Sw. Ry. Co. v. Dickerson, 470 U.S. 409, 412 (1985)). In situations involving future earnings, however, courts have used a risk-free discount rate to ensure that the rate does not reflect "the market's premium for investors who are willing to accept some risk of default." Jones & Laughlin Steel Corp. v. Pheifer, 462 U.S. 523, 537-38 (1983). See also, Ramirez v. New York City Off-Track Betting Corp., 112 F.3d 38, 41 (2d Cir. 1997) (applying 2% discount rate in absence of any other testimony).

The same analysis applies here where the Court is compensating Mr. Smalls for the actions of the Debtors in forcing him to refinance, not his own investment decision. This results in a net present value of $102,507.23.[5] Therefore, the Court finds Mr. Smalls is entitled to a claim of $102,507.23 for being

---

[5] The correct method is to apply to the additional interest paid each month a discount factor of $1/(1 + i)^n$, where i is the interest rate and n is the month for which present value is sought. See, e.g., Doca v. Marina Mercante Nicaraguense, S.A., 634 F.2d 30, 34 n.4 (2d Cir. 1980).

17

required to pay an additional interest charge when he refinanced his Mortgage.

      6.   <u>Emotional distress and invasion of privacy</u>

Mr. Smalls also seeks damages for emotional distress and invasion of privacy because of the Debtors' actions. He complains that the publication of notice of foreclosure (including on his credit report) invaded his privacy and put him in a false light in the public eye. To support his emotional distress claim, he offered letters from his treating physician. (D.I. # 1636 at Ex. 7; D.I. # 1706 at Ex. E.)

At the first hearing on the objection to his claim, the Court directed that the Debtors correct Mr. Smalls' credit report to show that their loan had been refinanced and was not in foreclosure. However, Mr. Smalls is still pressing his claim for emotional distress.

The Debtors respond that the physician's letters offered by Mr. Smalls proves that Mr. Smalls' emotional distress was a pre-existing condition as early as April 16, 2006, before the Debtors took any action to foreclose.

The Court disagrees with the Debtors' assertion. The physician's letters do demonstrate that Mr. Smalls' condition grew worse as a result of the Debtors' actions. Therefore, the Court will award damages for emotional distress. Mr. Smalls presented evidence that he incurred out-of-pocket costs for

medication and counseling for his emotional distress in the amount of $4,907.08 from July 2006 through March of 2009. (Ex. F at Answer to Interrogatory 8.) The Court will award Mr. Smalls a general unsecured claim in that amount ($4,907.08).

       7.   <u>Miscellaneous damages</u>

Mr. Smalls also asserted miscellaneous damages, including out-of-pocket expenses for mailings and costs associated with defending the foreclosure action. (Ex. F at Answer to Interrogatory 8.) These total $1,303.40 which the Court will award as part of Mr. Smalls' claim.

IV.  <u>CONCLUSION</u>

For the foregoing reasons the Court sustains in part and overrules in part the Debtor's objection to the claim of Eugene C. Smalls and allows that claim as a general unsecured claim in the amount of $116,052.04.

An appropriate Order is attached.

                                            BY THE COURT:

Dated: January 28, 2011                    _____
                                            Mary F. Walrath
                                            United States Bankruptcy Judge