# EXHIBIT B

# Accredited Home Lenders Holding Co., et al.

DISCLOSURE STATEMENT

EXHIBIT

*LIQUIDATION ANALYSIS*

The accompanying notes are an integral part of the Best Interests Analysis

# Accredited Home Lenders Holding Co., et al.
# Liquidation Analysis
# Introduction

Overview
Pursuant to section 1129(a)(7) of the Bankruptcy Code, a Chapter 11 plan cannot be confirmed unless the Bankruptcy Court determines that the plan is in the "best interests" of all holders of claims and interests that are impaired by the plan.  The "best interests" test requires a Bankruptcy Court to find either that (i) all members of an impaired class of claims or interests have accepted the plan or (ii) the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under Chapter 7 of the Bankruptcy Code.

The Debtors prepared this Liquidation Analysis (the "Analysis").  The Analysis consists of a separate liquidation analysis for both (i) Accredited Home Lenders Holding, Inc.  and its wholly owned subsidiary Vendor Management Services, LLC (collectively, "Consolidated Holdco") and (ii) AHL, Inc ., Inzura Insurance Services, Inc. and Windsor Management Co.  (collectively, the "Consolidated Debtors" and together with Consolidated Holdco, the "Debtors").   All capitalized terms not defined in this Analysis have the meanings ascribed to them in the Plan and Disclosure Statement.

The Analysis, which is based on the Debtors' balance sheets as of January 31, 2011 (except as indicated), reflects the estimated net value of the Debtors' assets, if the Debtors were liquidated under the provisions of Chapter 7 of the Bankruptcy Code and the net proceeds of the liquidation (net of liquidation-related costs) were distributed to creditors pursuant to the provisions of Chapter 7.  The value available for distribution to creditors as of the date of an actual liquidation may differ from the value used in this Analysis, potentially by a material amount.

The Debtors believe that the Plan meets the "best interest of creditors" test as set forth in section 1129(a)(7) of the Bankruptcy Code because holders of allowed claims in each impaired class will either accept the Plan or receive at least as much under the Plan as they would if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.

The Plan reflects the results of extensive negotiations among the Debtors, the Unsecured Creditors' Committee, the Lone Star Entities, the TruPS Entities, the REIT, the REIT Committee and Citigroup, which negotiations have resulted in a number of compromises that provide benefits to the Debtors and their creditors.   If the Plan is not confirmed, a number of beneficial compromises will be lost including:

Benefits of the Plan to Creditors of the Consolidated Debtors vs. Chapter 7 Liquidation
A conversion to Chapter 7 would result in the loss of the following benefits in the Plan:
 (1) the $15.75M cash payment from the Lone Star Entities to the Consolidated Debtors,
 (2) the waiver of the Lone Star Entities' claims against the Consolidated Debtors,
 (3) the resolution of inter-company claims,
 (4) the resolution of inter-debtor disputes,
 (5) the resolution of inter-creditor disputes,
 (6) the resolution of various material claims, and
 (7) the resolution of administrative claims amongst the Debtors.

Benefits of the Plan to Creditors of Consolidated Holdco vs. Chapter 7 Liquidation
A conversion to Chapter 7 would result in the loss of the following benefits in the Plan:
 (1) the $30M cash payment from the Lone Star Entities and certain insurers to the TruPS Entities for the benefit of Consolidated Holdco
 (2) the transfer of AHL Canada to Consolidated Holdco,
 (3) the subordination of the claims of the Lone Star Entities against Consolidated Holdco,
 (4) the resolution of inter-company claims,
 (5) the resolution of inter-debtor disputes,
 (5) the resolution of inter-creditor disputes,
 (6) the resolution of various material claims, and
 (7) the resolution of administrative claims amongst the Debtors.

Additional Costs Incurred and Reduction in Asset Values in a Chapter 7 Liquidation
Conversion of these cases to Chapter 7 would likely result in substantial additional costs to the Estates.  Protracted litigation (i) among the Debtors, (ii) between the Consolidated Debtors and the Lone Star Entities and (iii) between Consolidated Holdco and the Lone Star Entities could last years and cost millions of dollars.  Certain material claims that are being resolved as part of the Plan would also result in additional litigation costs under a Chapter 7 liquidation.

Litigation among the Debtors would only serve to reduce the total assets available to all creditors.  Any further litigation between any of the Debtors and the Lone Star Entities would likely result in no net recovery in excess of the Lone Star Settlement.

Furthermore, the costs of liquidation under Chapter 7 of the Bankruptcy Code may include additional costs related to the extension of these cases including (i) compensation of the trustees, (ii) compensation of counsel and other professionals retained by the trustees,  and (iii) additional recurring operating costs (including payroll, rent, IT costs, storage, etc.)

The value of the Debtors' remaining assets would also likely erode, if the assets were sold in a liquidation environment as opposed to monetized in a more orderly process.  For example, the assets of AHL Canada likely would not yield their maximum value, if sold in a Chapter 7 liquidation.

Assumptions and Limitations
The Analysis is based on management's good faith assumptions, which are believed to be reasonable in light of the circumstances under which they are based.  For purposes of this Analysis, management assumes a liquidation would take place as part of an orderly liquidation sale.  Unless explicitly stated elsewhere, recoveries are net of necessary liquidation expenses.  Such estimates and assumptions, although considered reasonable by management, are inherently subject to significant uncertainties and contingencies beyond management's control.

If actual results were lower than those shown, or if the assumptions used in formulating the Analysis were not realized, distribution to each member of each class of Claims could be affected adversely.  Accordingly, there can be no assurance that the results shown would be realized if the Debtors were liquidated, and actual results in such case could vary materially from those presented.

The underlying financial information in this Analysis has not been examined, compiled or reviewed by independent accountants in accordance with standards promulgated by the American Institute of Certified Public Accountants.   No independent appraisals were conducted in preparing this Analysis.

Accredited Home Lenders Holding Co., et al.
Liquidation Analysis
Assumptions - Consolidated Holdco

**H1. Cash and Equivalents**
Consolidated Holdco has approximately $1.5M of cash, consisting of $0.1 at Holdco, $1.4 at VMS (of which $0.6M is related to escheatment funds). Because escheatment claims are treated as unsecured claims in bankruptcy, the escheatment cash is available for general creditors.

**H2. AHL Canada Cash**
AHL Canada has $10.5M of cash. Pursuant to the terms of the Plan, AHL Canada's cash will be used to pay creditors of Consolidated Holdco. In a Chapter 7 liquidation scenario, AHL Canada's cash would ultimately be used to pay the creditors of the Consolidated Debtors.

**H3. Intercompany Receivable**
Pursuant to the terms of the Plan, intercompany balances will be waived. However, in a Chapter 7 liquidation scenario, Consolidated Holdco may have (i) an $18M claim against the Consolidated Debtors (based on the Debtors books and records) and (ii) a potential litigation claim relating to the transfer of AHL Canada by Holdco to AHL. The recovery on these claims would depend on the recovery of unsecured creditors of the Consolidated Debtors in the liquidation scenario. In any case, the recovery would be less than the value provided by the Consolidated Debtors to Consolidated Holdco under the Plan.

**H4. Amended Return Allocation**
Pursuant to the terms of the Plan, $2M of the Tax Refunds will be made available to the TruPS Entities (for the benefit of Consolidated Holdco.) In a Chapter 7 liquidation scenario, the Consolidated Debtors would likely retain all of the Tax Refunds.

**H5. AHL Canada (excluding Cash)**
Pursuant to the terms of the Plan, the proceeds of the liquidation of AHL Canada will be used to pay creditors of Consolidated Holdco. In a Chapter 7 liquidation scenario, AHL Canada would remain an asset of the Consolidated Debtors.

AHL Canada's assets consist generally of: (i) $10.5M of cash, which is included above in H2, (ii) Deutsche Bank subordinated bonds, which are expected to start cashflowing in late 2011, and (iii) Bank of Montreal ("BMO") residuals, which are now effectively a whole loan portfolio as all of the related BMO debt has been repaid.

Based on a detailed analysis of the underlying loans, the estimated remaining value of the subordinated bonds and residuals is approximately $20-26M. The ultimate value will be largely dependent on (i) the ability of the underlying borrowers to refinance their homes and (ii) the loss severity for those borrowers who are unsuccessful in refinancing. Certain of these amounts will likely be received before the Effective Date. These assets are offset by certain Canadian tax and withholdings liabilities that will likely range from $5-6M.

**H6. Lone Star and Insurance Settlement**
Under the Plan, the Lone Star Entities and certain insurance carriers will pay $30M to the TruPS Entities (for the benefit of Consolidated Holdco) to settle potential claims that may be asserted by Consolidated Holdco. This settlement will include the subordination of all of the Lone Star Entities' claims against Consolidated Holdco. The Lone Star and Insurance Settlement is only available as part of the Plan and would not be available in a Chapter 7 liquidation. Furthermore, any potential recoveries in a Chapter 7 liquidation would likely be offset by an increase in litigation costs resulting in no incremental recovery to creditors.

**H7. Avoidance Actions/ Other Litigation**
Because the Plan preserves all of Consolidated Holdco's claims and avoidance actions against other third parties (except those explicitly released per the Lone Star and Insurance Settlement), the Debtors have not estimated the recoveries in any scenario.

**H8. Professional Fees and Corporate Expenses**
This Analysis assumes all inter-debtor payments are settled as discussed below in note H9. A Chapter 7 liquidation scenario would likely result in additional costs to Consolidated Holdco, including litigation costs related to the claims of LSF MRA and the REIT. Such costs have not been incorporated herein.

**H9. Inter-Debtor Payment**
The Plan provides for a $2M payment from Consolidated Holdco to the Consolidated Debtors on the Effective Date to reimburse the Consolidated Debtors for administrative expenses previously paid by the Consolidated Debtors. Such a claim would exist in an unliquidated amount in a Chapter 7 liquidation and would likely approximate or exceed $5M.

**H10. Chapter 7 Trustee**
Chapter 7 Trustee Fees have been calculated based on 3% of estimated assets available for distribution, which is a simplification of section 326 of the Bankruptcy Code.

**H11. Secured Claims**
The Debtors do not expect any material secured claims against Consolidated Holdco in Class 1H

**H12. Priority Claims**
The Debtors do not expect any material priority claims against Consolidated Holdco in Class 2H

**H13. Unsecured Claims:**
The Debtors estimate the following ranges for unsecured claims against Consolidated Holdco. These estimates may differ substantially from actual allowed claims due to the timing of the claims resolution process.

Class 3H: The Debtors do not expect any claims against Consolidated Holdco in Class 3H.

Class 4H: Analysis assumes that all creditors vote for the Plan.

Class 5H: LSF MRA has asserted $97M of claims against Holdco related to the MRA transaction. The precise amount of this claim is disputed, but the Lone Star Entities have agreed to subordinate this claim under the Plan. In a Chapter 7, the Chapter 7 trustee would likely incur significant expenses related to the litigation with LSF MRA about this claim.

Class 6H: The Debtors scheduled a $227M claim against Holdco for the REIT. As part of the Plan, the REIT has agreed to reduce this claim to $20M. If a settlement is not reached as part of the Plan, the claim may range between $20M and $227M under a Chapter 7 liquidation. In a Chapter 7, the Chapter 7 trustee would likely incur significant expenses related to the litigation with the REIT about this claim.

Class 7H: Under the Plan, claimants under $1M would receive 65% at the Effective Date. This Analysis assumes that no creditors over $1M elect to be treated under this class. The Debtors estimate $1.9M- $ 2.0M of claims consisting largely of fees related to Atlas, Viera and other litigation matters, as well as VMS escheatment claims.

Class 8H: Represents the $60M claim of the trust preferred claimants. Under the Plan, the TruPS Entities will receive $40M at the Effective Date and $2M from the Tax Refunds. In a Chapter 7, these claims would be subordinated to classes 5H and 6H.

**Accredited Home Lenders - Consolidated Holdco**
**Liquidation Analysis**
($ in 000s)

*I. CALCULATION OF NET ESTIMATED PROCEEDS AVAILABLE FOR ALLOCATION*

| | Consolidated Holdco Balances @ 1/31/2011 | The Plan (Chapter 11 Liquidation) Estimated Recovery on Assets | | Chapter 7 Liquidation Estimated Recovery on Assets | | See Note |
|---|---|---|---|---|---|---|
| | | Low | High | Low | High | |
| Cash and Equivalents | $ 1,535 | $ 1,535 | $ 1,535 | $ 1,535 | $ 1,535 | H1 |
| AHL Canada Cash | 10,500 | 10,500 | 10,500 | - | - | H2 |
| Intercompany Receivable | n/a | - | - | 11,725 | 22,052 | H3 |
| Amended Return Allocation | n/a | 2,000 | 2,000 | - | - | H4 |
| AHL Canada (excluding Cash) | n/a | 15,000 | 19,500 | - | - | H5 |
| Subtotal | | 29,035 | 33,535 | 13,260 | 23,587 | |
| Lone Star and Insurance Settlement | | 30,000 | 30,000 | - | - | H6 |
| Avoidance Actions / Other Litigation | | TBD | TBD | TBD | TBD | H7 |
| Total Litigation | | 30,000 | 30,000 | - | - | |
| **Net Estimated Proceeds Available for Allocation** | | $ 59,035 | $ 63,535 | $ 13,260 | $ 23,587 | |
| *Chapter 7 and 11 Administrative Claims* | | | | | | |
| Professional Fees and Corporate Expenses | | 1,000 | 1,000 | 1,000 | 1,000 | H8 |
| Inter-Debtor Payment | | 2,000 | 2,000 | 5,000 | 5,000 | H9 |
| Chapter 7 Trustee Fees (3% of Gross Proceeds) | | N/A | N/A | 398 | 708 | H10 |
| Total | | 3,000 | 3,000 | 6,398 | 6,708 | |
| Secured Claims | | - | - | - | - | H11 |
| Priority Claims | | - | - | - | - | H12 |
| **Net Estimated Proceeds Available for Unsecured Creditors** | | $ 56,035 | $ 60,535 | $ 6,862 | $ 16,879 | |
| **Unsecured Claims** | | | | | | |
| *General Unsecured Claims* | | | | | | |
| 3H. General Unsecured Claims Against Consolidated Holdco | | - | - | - | - | |
| 4H. General Unsecured Claims Opting Out of the Creditor Release | | - | - | - | - | |
| 5H. LSF-MRA, LLC Claims Against Consolidated Holdco | | - | - | 97,000 | 97,000 | |
| 6H. REIT Claims Against Consolidated Holdco | | 20,000 | 20,000 | 227,000 | 20,000 | |
| 7H. Consolidated Holdco Convenience Claims | | 2,000 | 1,900 | 2,000 | 1,900 | |
| 8H. Trust Preferred Claims Against Consolidated Holdco | | 60,362 | 60,362 | 60,362 | 60,362 | |
| Subtotal | | 82,362 | 82,262 | 386,362 | 179,262 | |
| *Subordinated Claims* | | | | | | |
| 9H. REIT Pref. Sub. Claims Against Consolidated Holdco | | 102,000 | 102,000 | 102,000 | 102,000 | |
| 10H. Other Subordinated Claims Against Consolidated Holdco | | - | - | - | - | |
| 11H. Interests in Consolidated Holdco | | - | - | - | - | |
| Grand Total | | $ 184,362 | $ 184,262 | $ 488,362 | $ 281,262 | H13 |
| **Recovery Waterfall** | | | | | | |
| *General Unsecured Claims* | | | | | | |
| 7H. Consolidated Holdco Convenience Claims | | 1,300 | 1,235 | 36 | 179 | |
| 3H. General Unsecured Claims Against Consolidated Holdco | | - | - | - | - | |
| 4H. General Unsecured Claims Opting Out of the Creditor Release | | - | - | - | - | |
| 5H. LSF-MRA, LLC Claims Against Consolidated Holdco | | - | - | 2,044 | 13,846 | |
| 6H. REIT Claims Against Consolidated Holdco | | 12,735 | 17,300 | 4,783 | 2,855 | |
| 8H. Trust Preferred Claims Against Consolidated Holdco | | 42,000 | 42,000 | - | - | |
| Subtotal | | 56,035 | 60,535 | 6,862 | 16,879 | |
| *Subordinated Claims* | | | | | | |
| 9H. REIT Pref. Sub. Claims Against Consolidated Holdco | | - | - | (0) | - | |
| 10H. Other Subordinated Claims Against Consolidated Holdco | | - | - | - | - | |
| 11H. Interests in Consolidated Holdco | | - | - | - | - | |
| Grand Total | | $ 56,035 | $ 60,535 | $ 6,862 | $ 16,879 | |
| *General Unsecured Claims* | | | | | | |
| 7H. Consolidated Holdco Convenience Claims | | 65.0% | 65.0% | 1.8% | 9.4% | |
| 3H. General Unsecured Claims Against Consolidated Holdco | | n/a | n/a | n/a | n/a | |
| 4H. General Unsecured Claims Opting Out of the Creditor Release | | n/a | n/a | n/a | n/a | |
| 5H. LSF-MRA, LLC Claims Against Consolidated Holdco | | n/a | n/a | 2.1% | 14.3% | |
| 6H. REIT Claims Against Consolidated Holdco | | 63.7% | 86.5% | 2.1% | 14.3% | |
| 8H. Trust Preferred Claims Against Consolidated Holdco | | 69.6% | 69.6% | 0.0% | 0.0% | |
| *Subordinated Claims* | | | | | | |
| 9H. REIT Pref. Sub. Claims Against Consolidated Holdco | | 0.0% | 0.0% | 0.0% | 0.0% | |
| 10H. Other Subordinated Claims Against Consolidated Holdco | | n/a | n/a | n/a | n/a | |
| 11H. Interests in Consolidated Holdco | | n/a | n/a | n/a | n/a | |

The accompanying notes are an integral part of the Best Interests Analysis

**Accredited Home Lenders Holding Co., et al.**
**Liquidation Analysis**
**Assumptions - Consolidated Debtors**

**C1. Cash and Equivalents**
The Consolidated Debtors have cash of approximately $59.7M, consisting of $57.1M at Inc (of which $0.8M is related to escheatment funds and $54.4M relates to the tax refund previously received), and $2.5M at Windsor. Because escheatment claims are treated as unsecured claims in bankruptcy, the escheatment cash is available for general creditors.

The $54.4M tax refund, which was received in November 2010, consists of $57.3M requested for previously paid taxes due to the change in the Net Operating Loss ("NOL") carryback law less $4.1M owed for 2007 taxes plus applicable interest. Because the IRS has filed a protective claim, these funds may not be available for distribution until the completion of any potential 2008 audits.

$1.25M of the Consolidated Debtors' cash relates to proceeds from the litigation with SPS. Although LSF5 Mortgage Line has asserted liens against the SPS settlement proceeds, LSF5 Mortgage Line is waiving such liens under the Plan.

**C2. AHL Canada Cash**
AHL Canada has $10.5M of cash. Pursuant to the terms of the Plan, AHL Canada's cash will be used to pay creditors of Consolidated Holdco. In a Chapter 7 liquidation scenario, AHL Canada's cash would ultimately be used to pay the creditors of the Consolidated Debtors.

**C3. AHL Canada (excluding cash)**
Pursuant to the terms of the Plan, AHL Canada will be transferred by the Consolidated Debtors to Consolidated Holdco. In a Chapter 7 liquidation scenario, AHL Canada would remain an asset of the Consolidated Debtors.

**C4. Advances & Other Receivables**
The Consolidated Debtors are owed approximately $1.8M from certain Lone Star Entities for advances and for miscellaneous receivables. The amounts owed by the Lone Star Entities will be compromised as part of the Lone Star settlement under the Plan. Such receivables/advances may be subject to setoff and other defenses.

**C5. Prepaid, Deferred Charges & Deposits**
The Consolidated Debtors have approximately $1.7M of prepaid expenses, deferred charges and deposits. Of this amount, approximately $0.5M relates to retainers to professionals, which will be returned at the end of the case or applied to final fee awards. These amounts are reflected in the administrative fees below. The remaining amounts represent prepaid insurance and software contracts, which likely have no value.

**C6. Goodwill / Intangible Assets**
There is likely no value to any of the Debtors' goodwill or intangible assets.

**C7. Investment in Non Debtor Subsidiaries**
Although the Debtors own the common equity in various entities, the Canada and REIT subsidiaries are the only entities that have assets. Pursuant to the terms of the Plan, the proceeds of the liquidation of Canada will be used to pay creditors of Consolidated Holdco. In a Chapter 7 liquidation, the proceeds of the liquidation of AHL Canada will be available to pay creditors of the Consolidated Debtors.

The REIT's assets consist of cash and various residuals and subordinated bonds related to prior securitizations. Due to the $102M of preferred equity that is senior to the common equity that the Debtors own in the REIT, the Debtors do not expect to receive any value through its common equity ownership interest in the REIT.

**C8. Net PP&E**
The Debtors have sold the vast majority of the Net PP&E throughout the bankruptcy process. The remaining assets (furniture and fixtures, software, phone equipment, computer equipment, etc.) will likely yield less than $25k.

**C9. State Tax Refunds**
The Consolidated Debtors are owed approximately $0.7M for various state tax refunds, the largest of which is owed by Georgia. The Consolidated Debtors expect to receive these refunds over the next twelve months. The Debtors are reviewing other potential state tax refund opportunities that have not been quantified yet.

Accredited Home Lenders Holding Co., et al.
Liquidation Analysis
Assumptions - Consolidated Debtors

**C10. AMT Refund**
The IRS has informed the Consolidated Debtors of a $2.4M overpayment related to the Alternative Minimum Tax ("AMT") for 2005 and 2006. The Debtors expect to receive this refund over the next few months.

**C11. Amended Federal Tax Refund**
In November 2010, the Consolidated Debtors filed amended 2004, 2007, and 2008 tax returns requesting an additional $39.8M in tax refunds. These refunds were made possible due to the recent changes to the NOL carryback laws and are largely dependent on the value of AHL's loans held for sale as of December 31, 2008. Although the Debtors believe that the loan valuation is conservative and supported by the facts, the IRS may challenge this valuation or other positions in an audit. Such an IRS audit could last 12-24 months and delay the ultimate recovery to non-convenience class creditors.

The Consolidated Debtors may also identify additional adjustments, which could increase the tax refunds. However, the maximum additional return available to the Consolidated Debtors is $51M.

Pursuant to the terms of the Plan, $2M of the Tax Refunds will be made available to the TruPS Entities (for the benefit of Consolidated Holdco.) In a Chapter 7 liquidation scenario, the Consolidated Debtors would likely retain all of the Tax Refunds.

**C12. Lone Star Settlement**
Under the Plan, the Lone Star Entities will pay $15.75M to the Consolidated Debtors to settle potential claims that may be asserted by the Consolidated Debtors. This settlement will include a waiver of all of the Lone Star Entities' claims against the Consolidated Debtors. The Lone Star Settlement is only available as part of the Plan and would not be available in a Chapter 7 liquidation. Furthermore, any potential recoveries in a Chapter 7 liquidation would likely be offset by an increase in litigation costs resulting in no incremental recovery to creditors.

**C13. Avoidance Actions/ Other Litigation**
Because the Plan preserves all of the Consolidated Debtor's claims and avoidance actions against other third parties (except those explicitly released per the Lone Star Settlement), the Debtors have not estimated the recoveries in any scenario.

**C14. Fees & Expenses Incurred but not Paid as of January 31, 2011**
The Debtors owe approximately $6.1M as of January 31, 2011, of which approximately $5.5M related to unpaid professional fees (including invoices that have not been paid, holdbacks pending court approval, and estimates of unbilled fees and expenses).

**C15. Fees & Expenses Incurred after January 31, 2011**
The amount of future fees and expenses is largely dependent on the timing of the confirmation of the Plan, decisions made with regard to the pursuit of potential claims against third parties, and the degree to which the IRS challenges the Amended Tax Return, if at all. The $4M estimate includes both pre and post-effective date costs and includes estimates for items such as professional fees, rent, data storage, eventual document destruction, and severance.

In a Chapter 7 liquidation scenario, Holdco and the Consolidated Debtors would likely incur additional professional and corporate expenses, which have not been estimated in this Analysis.

**C16. Inter-Debtor Payment**
The Plan provides for a $2M payment from Consolidated Holdco to the Consolidated Debtors on the Effective Date to reimburse the Consolidated Debtors for administrative expenses previously paid by the Consolidated Debtors. Such a claim would exist in an unliquidated amount in a Chapter 7 liquidation, but would still likely approximate or exceed $5M.

**C17. Chapter 7 Trustee**
Chapter 7 Trustee Fees have been calculated based on the 3% of estimated assets available for distribution, which is a simplification of section 326 of the Bankruptcy Code.

**C18. Secured Claims**
Other than de minimis ad valorem tax claims ($80K), the Debtors do not believe that there are any valid secured claims. The Lone Star Entities are releasing its alleged lien on the SPS settlement proceeds pursuant to the Plan.

# Accredited Home Lenders Holding Co., et al.
# Liquidation Analysis
# Assumptions - Consolidated Debtors

**C19. Priority Claims**
The Debtors estimate $0.3M of priority claims largely related to employee claims. The Internal Revenue Service ("IRS") netted its $4.1M claim for amounts due in 2007 ($3.7M plus interest) against the Tax Return discussed above.

**C20. Unsecured Claims:**
The Debtors estimate the following ranges for unsecured claims. These estimates may differ substantially from actual allowed claims due to the timing of the claims resolution process.

Class 3C: The Debtors estimate the following ranges of estimates of general unsecured claims
- Accounts Payable: $6.6M - $7M based on scheduled and filed proofs of claims.
- Lease Rejection: $15.5M based on claims adjusted for the caps pursuant to 502(b)(6).
- Litigation: Approximately $13.9M - $15.3M based on the current status of negotiations. Many claims have been settled verbally.
- Repurchase: $30.5M - $31.5M based on the current status of negotiations. Many claims have been settled.
- REIT: The Debtors scheduled a $227M claim for the REIT. As part of the Plan, the REIT has agreed to reduce this claim to a $37.5M general unsecured claim and a $15M subordinated claim. If a settlement is not reached as part of the Plan, the claim may range between $52.5M and $227M under a Chapter 7 liquidation.
- Intercompany: In a Chapter 7 liquidation scenario, Consolidated Holdco may have a net $18M claim against the Consolidated Debtors based on pre-petition inter-company activity and an unliquidated claim against the Consolidated Debtors based on the transfer of AHL Canada by Holdco to AHL.

Class 4C: Analysis assumes that all creditors vote for the Plan.

Class 5C: LSF MRA has asserted $97M of claims against Inc related to the MRA transaction. Although the precise amount of this claim is disputed, Lone Star has agreed to waive this claim under the Plan. The Lone Star Entities have also asserted claims related to Caliber and the contested SPS proceeds, which would also be waived under the Plan.

Class 6C: Under the Plan, claimants under $25K would receive 75% at the Effective Date. This analysis assumes that no creditors over $25K elect to be treated under this class.

Class 7C: Represents the $15M REIT Junior Claim

Class 8C: The Debtors are not aware of any other subordinated claims.

Class 9C: Represents the $5M Trust Preferred Junior Claim

Class 10C: Analysis assumes that interests in the Consolidated Debtors receive no distribution under either scenario.

# Accredited Home Lenders - Consolidated Debtors
## Liquidation Analysis
($ in 000s)

**I. CALCULATION OF NET ESTIMATED PROCEEDS AVAILABLE FOR ALLOCATION**

| | Consolidated Debtors Balances @ 1/31/2011 | The Plan (Chapter 11 Liquidation) Estimated Recovery on Assets | | Chapter 7 Liquidation Estimated Recovery on Assets | | See Note |
|---|---:|---:|---:|---:|---:|---|
| | | Low | High | Low | High | |
| Cash and Equivalents | $ 59,652 | $ 59,652 | $ 59,652 | $ 59,652 | $ 59,652 | C1 |
| AHL Canada Cash | - | - | - | 10,500 | 10,500 | C2 |
| AHL Canada (excluding Cash) | - | - | - | 15,000 | 19,500 | C3 |
| Advances and Other Receivables | 1,856 | - | - | - | - | C4 |
| Prepaid, Deferred Charges & Deposits | 1,661 | - | - | - | - | C5 |
| Goodwill | - | - | - | - | - | C6 |
| Investment in Non-Debtors | - | - | - | - | - | C7 |
| Net PP&E | - | 25 | 25 | 25 | 25 | C8 |
| State Tax Refunds | 700 | 700 | 700 | 700 | 700 | C9 |
| AMT Refund | 2,425 | 2,425 | 2,425 | 2,425 | 2,425 | C10 |
| Amended Federal Tax Refund | 39,773 | 37,773 | 37,773 | 39,773 | 39,773 | C11 |
| Subtotal | 106,067 | 100,575 | 100,575 | 128,075 | 132,575 | |
| | | | | | | |
| Lone Star Settlement | | 15,750 | 15,750 | - | - | C12 |
| Avoidance Actions / Other Litigation | | TBD | TBD | TBD | TBD | C13 |
| Total Litigation | | 15,750 | 15,750 | - | - | |
| | | | | | | |
| **Net Estimated Proceeds Available for Allocation** | | $ 116,325 | $ 116,325 | $ 128,075 | $ 132,575 | |
| | | | | | | |
| Chapter 7 and 11 Administrative Claims | | | | | | |
| Fees & Expenses Incurred but not Paid as of 1/31/11 | | 6,100 | 6,100 | 6,100 | 6,100 | C14 |
| Fees & Expenses Incurred Post 1/31/11 | | 4,000 | 4,000 | 4,000 | 4,000 | C15 |
| Inter-Debtor Payment | | (2,000) | (2,000) | (5,000) | (5,000) | C16 |
| Chapter 7 Trustee Fees (3% of Gross Proceeds) | | N/A | N/A | 3,842 | 3,977 | C17 |
| Total | | 8,100 | 8,100 | 8,942 | 9,077 | |
| | | | | | | |
| Secured Claims | | 80 | 80 | 80 | 80 | C18 |
| | | | | | | |
| Priority Claims | | 290 | 290 | 290 | 290 | C19 |
| | | | | | | |
| **Net Estimated Proceeds Available for Unsecured Creditors** | | $ 107,856 | $ 107,856 | $ 118,764 | $ 123,129 | |

**Unsecured Claims**

*General Unsecured Claims*

| | Low | High | Low | High | |
|---|---:|---:|---:|---:|---|
| 3C. General Unsecured Claims Against Consolidated Debtors | 106,800 | 104,200 | 339,800 | 167,200 | |
| 4C. General Unsecured Claims Opting Out of the Creditor Release | - | - | - | - | |
| 5C. Lone Star Entities Claims Against Consolidated Debtors | - | - | 97,000 | 97,000 | |
| 6C. Consolidated Debtors Convenience Claims | 3,811 | 3,811 | 3,811 | 3,811 | |
| Subtotal | 110,611 | 108,011 | 440,611 | 268,011 | |

*Subordinated Claims*

| | Low | High | Low | High | |
|---|---:|---:|---:|---:|---|
| 7C. REIT Junior Claim | 15,000 | 15,000 | - | - | |
| 8C. Subordinated Claims Against the Consolidated Debtors | - | - | - | - | |
| 9C. Trust Preferred Junior Claim | 5,000 | 5,000 | - | - | |
| 10C. Interests in Consolidated Debtors | - | - | - | - | |
| Grand Total | $ 130,611 | $ 128,011 | $ 440,611 | $ 268,011 | C20 |

**Recovery Waterfall**

*General Unsecured Claims*

| | Low | High | Low | High |
|---|---:|---:|---:|---:|
| 6C. Consolidated Debtors Convenience Claims | 2,858 | 2,858 | 1,027 | 1,751 |
| 3C. General Unsecured Claims Against Consolidated Debtors | 104,997 | 104,200 | 91,591 | 76,814 |
| 4C. General Unsecured Claims Opting Out of the Creditor Release | - | - | - | - |
| 5C. Lone Star Entities Claims Against Consolidated Debtors | - | - | 26,146 | 44,563 |
| Subtotal | 107,856 | 107,058 | 118,764 | 123,129 |

*Subordinated Claims*

| | Low | High | Low | High |
|---|---:|---:|---:|---:|
| 7C. REIT Junior Claim | - | 797 | - | - |
| 8C. Subordinated Claims Against the Consolidated Debtors | - | - | - | - |
| 9C. Trust Preferred Junior Claim | - | - | - | - |
| 10C. Interests in Consolidated Debtors | - | - | - | - |
| Grand Total | $ 107,856 | $ 107,856 | $ 118,764 | $ 123,129 |

*General Unsecured Claims*

| | Low | High | Low | High |
|---|---:|---:|---:|---:|
| 6C. Consolidated Debtors Convenience Claims | 75.0% | 75.0% | 27.0% | 45.9% |
| 3C. General Unsecured Claims Against Consolidated Debtors | 98.3% | 100.0% | 27.0% | 45.9% |
| 4C. General Unsecured Claims Opting Out of the Creditor Release | n/a | n/a | n/a | n/a |
| 5C. Lone Star Entities Claims Against Consolidated Debtors | n/a | n/a | 27.0% | 45.9% |

*Subordinated Claims*

| | Low | High | Low | High |
|---|---:|---:|---:|---:|
| 7C. REIT Junior Claim | 0.0% | 5.3% | n/a | n/a |
| 8C. Subordinated Claims Against the Consolidated Debtors | n/a | n/a | n/a | n/a |
| 9C. Trust Preferred Junior Claim | 0.0% | 0.0% | n/a | n/a |
| 10C. Interests in Consolidated Debtors | n/a | n/a | n/a | n/a |

The accompanying notes are an integral part of the Best Interests Analysis