**EXHIBIT A**

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ACCREDITED HOME LENDERS | § | Case No. 09-11516 (MFW) |
| HOLDING CO., et al. | § | |
| | § | JOINTLY ADMINISTERED |
| Debtors.[1] | § | |

## ORDER (I) APPROVING THE DISCLOSURE STATEMENT; (II) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT THE PLAN; (III) ESTABLISHING DEADLINE AND PROCEDURES FOR FILING OBJECTIONS; (IV) APPROVING PUBLICATION NOTICE REGARDING THE PLAN AND OTHER DEADLINES; AND (V) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and

debtors-in-possession (collectively, the "Debtors") for the entry of an order, pursuant to §§ 1125

and 1126 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 2002,

3016, 3017, and 3020, and Local Rules 3017-1(a) and 3017-1(b), (i) approving the Disclosure

Statement, as amended, as containing "adequate information" as that term is defined in

§ 1125(a)(1) of the Bankruptcy Code; (ii) establishing procedures for solicitation and tabulation

of votes to accept or reject the Plan, including (a) approving the form and manner of the

Solicitation Packages, (b) approving the form and manner of notice of the Confirmation Hearing,

(c) establishing a record date and approving procedures for distributing Solicitation Packages,

(d) approving the forms of Ballots, (e) establishing the deadline for the receipt of Ballots, and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Accredited Home Lenders Holding Co., a Delaware corporation (9482), Accredited Home Lenders, Inc., a California corporation (6859), Vendor Management Services, LLC d/b/a Inzura Settlement Services, a Pennsylvania limited liability company (8047), Inzura Insurance Services, Inc., a Delaware corporation (7089), and Windsor Management Co., d/b/a AHL Foreclosure Services Co., a California corporation (4056). The address for all Debtors is 9915 Mira Mesa Blvd., Ste. 100, San Diego, CA 92131. The bankruptcy cases for these debtors and debtors-in-possession are jointly administered under the bankruptcy case and style referenced above.

[2] Unless otherwise defined in herein, all capitalized terms shall have the respective meanings ascribed to them in the Motion.

(f) approving procedures for tabulating acceptances and rejections of the Plan; (iii) establishing the deadline and procedures for filing objections to confirmation of the Plan, including the third-party creditor, interest holders and other parties releases and waivers provided under the Plan; (iv) granting related relief; and it appearing that adequate and sufficient notice of the Motion has been given under the circumstances; and it further appearing that adequate and sufficient notice pursuant to Bankruptcy Rule 2002(b) of the hearing to approve the Disclosure Statement has been given; and it further appearing that that the contents of the solicitation packages comply with Bankruptcy Rules 2002 and 3017 and § 1125 of the Bankruptcy Code, constitute sufficient notice to all interested parties and is appropriate and reasonable under the circumstances for creditors to make an informed decisions to accept or reject the Plan; and after due deliberation and upon the Court's determination that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors and other parties in interest; and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. The Disclosure Statement, as most recently amended, is approved as containing adequate information within the meaning of § 1125 of the Bankruptcy Code, and any objections to the adequacy of the information contained in the Disclosure Statement not otherwise withdrawn with prejudice or consensually resolved are overruled.

3. The Debtors shall mail or caused to be mailed to the Voting Parties no later than ▓▓▓▓, 2011, a solicitation package containing: (i) written notice (the "Confirmation Hearing Notice"), substantially in the form annexed hereto as Exhibit 1, of (a) the Court's approval of the Disclosure Statement, (b) the deadline for voting on the Plan, (c) the date of the Confirmation

Hearing, and (d) the deadline and procedures for filing objections to confirmation of the Plan, which Confirmation Hearing Notice is approved; (ii) the Plan (either by paper copy or in "pdf" format on a CD-Rom, at the Debtors' discretion); (iii) the Disclosure Statement, substantially in the form approved by the Court (either by paper copy or in "pdf" format on a CD-Rom, at the Debtors' discretion; (iv) the appropriate Ballot (substantially in the form annexed hereto as Exhibit 3) and ballot return envelope; (v) a letter from the Committee substantially in the form of the letter attached to the *Notice of Filing of Form of Plan Support Letter by Creditors Committee*, Docket No. ▓▓▓▓; (vi) an official Internal Revenue Service W-9 Form (substantially in the form annexed hereto as Exhibit 4); and (vii) such other information as the Court may direct or approve (collectively, the "Solicitation Package"). The Solicitation Package is approved as described above. The Solicitation Package and the manner of service of the Solicitation Package satisfies the requirements of Bankruptcy Rule 3017(d).

4. With respect to Solicitation Packages to be distributed to Holders of Claims in Class 8 H, the Debtors shall distribute or cause to be distributed Solicitation Packages, including Ballots, to record Holders of the securities in that class, including without limitation, brokers, banks, commercial banks, trust companies, dealers, other agents or nominees, or their mailing agents, or such other person or entity agreed to by the Debtors (collectively, the "Voting Nominees"), and each Voting Nominee shall be entitled to receive reasonably sufficient numbers of Solicitation Packages (including Beneficial Ballots) to distribute to the beneficial owners of the Claims for whom such Voting Nominee acts (including the Trust Preferred Holders) (collectively, the "Beneficial Owners"), and, upon request, the Debtors shall be responsible for each such Voting Nominee's documented, reasonable, actual, and customary out-of-pocket expenses associated with the distribution of the Solicitation Packages to the Beneficial Owners

of such Claims and Interests, the tabulation of the Beneficial Ballots, and the completion of Master Ballots.

5. The Debtors are authorized to distribute or cause to be distributed Master Ballots to the Voting Nominees in Class 7 H in accordance with customary procedures.

6. Each Voting Nominee is required to forward the Solicitation Packages to Beneficial Owners, receive returned Ballots from the Beneficial Owners, tabulate the results according to the instructions set forth in the Master Ballots, and (i) return such results in a Master Ballot, aid (ii) retain the underlying Ballots received from the Beneficial Owners for inspection for a period of one year following the Voting Deadline (defined below).

7. In order to cast its vote, the Beneficial Owner should return its Beneficial Ballot to the Voting Nominee so that it is received by the Voting Nominee no later than three (3) business days prior to the Voting Deadline.

8. A transferee of a scheduled claim shall be entitled to receive a solicitation package only if all actions necessary to comply with Bankruptcy Rule 3003(e) have been completed by the Record Date. Where a claim is transferred after the transferor has completed a Ballot, the transferee of such claim shall be bound by any vote (and the consequences thereof) made on the Ballot by the holder of such transferred claim as of the Record Date.

9. The Debtors shall mail or cause to be mailed to each of the known counterparties to the Rejected Executory Contracts a Confirmation Hearing Notice as well as copies of the Disclosure Statement and the Plan (either by paper copy or in "pdf" format on a CD-Rom, at the Debtors' discretion).

10.     The Debtors are not required to transmit a Solicitation Package to the Non-Voting Parties.[3] By ▓▓▓▓, 2011, the Debtors shall mail or cause to be mailed to each Non-Voting Party the Non-Voting Creditor Notice substantially in the form attached hereto as Exhibit 2.

11.     The Debtors are not required to transmit any notices to persons or entities who were not scheduled as creditors and who have not filed proofs of claims as of the Record Date, regardless of whether such persons or entities have received other notices in these cases.

12.     Pursuant to Bankruptcy Rule 2002(l), the Debtors shall publish notice of the Bar Dates in substantially the form attached hereto as Exhibit 5 (the "Publication Notice") once, in the national edition of *The Wall Street Journal* at least 25 days prior to the Confirmation Objection Deadline, which publication is hereby approved and, if the Plan is approved, shall be deemed good, adequate and sufficient publication notice of the Confirmation Hearing, the Confirmation Objection Deadline, the Administrative Claims and Rejection Claims Bar Dates, and the Plan's automatic subordination of all Claims that were not filed by the applicable bar dates, unless and until the Court enters an order allowing such Claims.

13.     March 24, 2011 is established as the record date (the "Record Date") for the purposes of determining the creditors and interest holders entitled to receive the Solicitation Package and to vote on the Plan, and for the purpose of determining the creditors and interest holders entitled to receive the Non-Voting Creditor Notice.

---

[3] [3]The Non-Voting Parties include (i) Unimpaired Creditors holding Administrative Claims, Priority Tax Claims, Secured Claims in Classes 1 H and 1 C, and Priority Claims Claims in Classes 2 H and 2 C, (ii) the holders of claims in the Deemed Rejecting Classes, namely of Subordinated Claims in Classes 8 H, 9 H, and 7 C, and Interests in Classes 10 H and 8 C, and (iii) the holders of Disallowed and Unallowed Claims, namely, Claims that (i) have been disallowed in full, (ii) are the subject of a pending objection seeking to disallow them in full, (iii) were scheduled as liquidated, contingent, or disputed without a timely proof of claim being filed relating to such potential Claim, or (iv) were not timely filed and not otherwise allowed by agreement or Order of the Court, unless and until the Court enters an order permitting such claims to vote.

14. Each Ballot will state the amount of the Creditor's allowed claim as of the Record Date.

15. Kurtzman Carson Consultants, LLC ("KCC") shall tabulate the ballots and certify to the Court the results of the balloting.

16. The Debtors are permitted to dispense with the mailing of Solicitation Packages or Non-Voting Creditor Notices to addresses and entities to which the notice of the Disclosure Statement Hearing was returned by the United States Postal Service as undeliverable, unless the Debtors are provided with an accurate address.

17. The Ballots, substantially in the form annexed hereto as <u>Exhibit 3</u>, are hereby approved.

18. All Ballots must be properly executed, completed and delivered to the Voting Agent at Accredited Home Lenders Ballot Processing, Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245, so that the Ballots are actually received on or before ▓▓▓▓, 2011 at 4:00 p.m. (prevailing Pacific Time) (the "<u>Voting Deadline</u>"), unless extended by the Debtors. Ballots cast by facsimile, email or other electronic transmission will not be counted unless approved in advance by the Debtors in writing.

19. For purposes of voting on the Plan, the amount of a claim held by a creditor shall be determined pursuant to the following guidelines:

    a.    The amount of the Claim listed in a Debtor's schedule of liabilities, provided that (i) such claim is not scheduled as contingent, unliquidated, undetermined or disputed, and (ii) no proof of claim has been timely filed (or otherwise deemed timely filed by the Court under applicable law).

    b.    The noncontingent and liquidated amount specified in a proof of claim timely filed with the Court or KCC (or otherwise deemed timely filed by the Court under applicable law) to the extent the proof of claim is not the subject of an objection, or an objection by the Debtor to a claim amount solely for voting purposes, filed no later than ▓▓▓▓, 2011 (the "<u>Vote Objection Deadline</u>") (or, if such claim has

been resolved pursuant to a stipulation or order entered by the Court, or otherwise resolved by the Court, the amount set forth in such stipulation or order).

c.    The amount temporarily allowed by the Court for voting purposes, pursuant to Bankruptcy Rule 3018(a), provided that a motion is brought, notice is provided and a hearing is held at or prior to the Confirmation Hearing, in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

d.    Except as otherwise provided in subsection (c) hereof, with respect to ballots cast by alleged creditors whose Claims (i) are not listed on a Debtor's schedule of liabilities, or (ii) are listed as disputed, contingent and/or unliquidated on a Debtor's schedule of liabilities, but who have timely filed proofs of claim in wholly unliquidated or unknown amounts that are not the subject of an objection filed before the Vote Objection Deadline, such ballots shall be counted as votes in determining whether the numerosity requirement of § 1126(c) of the Bankruptcy Code has been met, but shall not be counted in determining whether the aggregate claim amount requirement has been met.

20.    If a creditor casts a ballot and has timely filed a proof of claim (or has otherwise had a proof of claim deemed timely filed by the Court under applicable law), but the creditor's claim is the subject of an objection (either generally to the applicable claim, or solely for purposes of determining the amount of the applicable claim for voting purposes) filed no later than the Vote Objection Deadline, then the creditor's ballot shall not be counted, unless such claim is temporarily allowed by the Court for voting purposes, pursuant to Bankruptcy Rule 3018(a), after a Claims Estimation Motion is brought by such creditor, notice is provided and a hearing is held at or prior to the Confirmation Hearing. Notwithstanding the foregoing, if an objection to a claim requests that such claim be reclassified and/or allowed in a fixed, reduced amount, then such claimant's ballot shall be counted as if such objection had been sustained, and if an objection to a claim requests that such claim be disallowed against certain Debtors and allowed against a different Debtor, then such claimant's ballot shall be counted as if such objection had been sustained.

21.    Creditors seeking to have a claim temporarily allowed for purposes of voting to accept or reject the Plan pursuant to Bankruptcy Rule 3018(a) (and without prejudice to the

rights of the Debtors in any other context) must file and serve notice of a hearing on, and a Claims Estimation Motion, no later than ████████, 2011. The Court will schedule a hearing on such Claims Estimation Motion to be heard at or prior to the Confirmation Hearing. If a Claims Estimation Motion is timely filed, the Debtors shall be required to send a provisional ballot to such claimant (unless such claimant has already been provided with a ballot).

22. The following voting procedures and standard assumptions shall be used in tabulating the Ballots:

a. For purposes of the numerosity requirement of § 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular class will be aggregated as if such creditor held one claim against the Debtors in such class, and the votes related to such Claims will be treated as a single vote to accept or reject the Plan.

b. Creditors must vote all of their Claims within a particular class either to accept or reject the Plan and may not split their vote. Accordingly, a ballot (or multiple ballots with respect to multiple Claims within a single class) that partially rejects and partially accepts the Plan will be counted as accepting the Plan.

c. Ballots that fail to indicate an acceptance or rejection of the Plan or that indicate both acceptance and rejection of the Plan, but which are otherwise properly executed and received prior to the Voting Deadline, will counted as accepting the Plan.

d. Only ballots that are timely received with original signatures will be counted. Unsigned ballots will not be counted.

e. Ballots postmarked prior to the Voting Deadline, but received after the Voting Deadline, will not be counted.

f. Ballots that are illegible, or contain insufficient information to permit the identification of the creditor, will not be counted.

g. Whenever a creditor casts more than one ballot voting the same claim prior to the Voting Deadline, the last ballot received prior to the Voting Deadline shall be deemed to reflect the voter's intent and supersede any prior ballots.

h. If a creditor simultaneously casts inconsistent duplicate ballots, with respect to the same claim, the ballot rejecting the Plan shall not be counted.

i. Creditors who select both Convenience Class treatment and opt in to Classes 3 H, 4 H, 3 C, or 4 C will deemed to have made the Consolidated Debtors or Consolidated Holdco Convenience Class Election, as applicable.

8

j.    Each creditor shall be deemed to have voted the full amount of its claim. Unless otherwise ordered by the Court, questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of ballots shall be determined by the Voting Agent and the Debtors, which determination shall be final and binding.

23.    With respect to the tabulation of Master Ballots and Beneficial Ballots cast by Voting Nominees and Beneficial Owners, the amount that will be used to tabulate acceptance or rejection of the Plan will be the principal amount held by such Voting Nominees and Beneficial Owners as of the Record Date. The following additional rules apply to the tabulation of Master Ballots and Beneficial Ballots cast by Voting Nominees and Beneficial Owners:

a.    Votes cast by Beneficial Owners through a Voting Nominee will be applied against the positions held by such entities in the applicable security of the Debtors as of the Record Date, as evidenced by the record and depository listings. Votes submitted by a Voting Nominee, pursuant to a Master Ballot, will not be counted in excess of the Record Amount of the applicable securities held by such Voting Nominee.

b.    To the extent that conflicting votes or "overvotes" are submitted by a Voting Nominee, the Voting Agent, in good faith, will attempt to reconcile discrepancies with the applicable Voting Nominees.

c.    To the extent that overvotes on a Master Ballot are not reconcilable prior to the preparation of the vote certification, the Voting Agent will apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot that contained the overvote, but only to the extent of the Voting Nominee's position in the applicable security.

d.    Where a Beneficial Owner holds securities through more than one Voting Nominee, it must execute a separate Ballot for each block of debt securities owned by such Beneficial Owner. However, such Holder must vote all of its Claims in each Class in the sane manner, to either accept or reject the Plan. Accordingly, if such Holder returns more than one Ballot to more than one Voting Nominee voting different Claims within each Class under the Plan and the Ballots are not voted in the same manner, as reflected on such separate Master Ballots, such votes will not be counted.

24.    Parties opposing the Plan, including the Plan's provisions relating to the releases of various claims amongst the Debtors, certain creditors, and certain parties-in-interest and the Plan's provisions relating to the Plan's waiver of various contractual subordination and

subrogation rights, must file a timely objection to the confirmation of the Plan in accordance with this Order.. Any objection, comment or response to confirmation of the Plan (including any supporting memoranda) must (a) be in writing, (b) state the name and address of the objecting party and the nature of the claim or interest of such party, (c) state with specificity the legal and factual bases for and nature of any objection to the Plan, and (d) be served on the parties identified below, and filed with the Court, together with proof of service, such that the foregoing are received by such parties and the Court on or before ███████ 2011 at 4:00 p.m. (prevailing Eastern Time) (the "Confirmation Objection Deadline"). The Court shall consider only timely filed written objections that comply with the terms of this Order. All objections to the Plan and its provisions, including its releases and waivers, that are not timely filed and served in accordance with the provisions of this Motion are hereby deemed waived. Objections to confirmation of the Plan should provide proposed language to remedy such objections and shall be served on the following parties:

The Debtors: (i) Hunton & Williams LLP, 1445 Ross Ave., Suite 3700, Dallas, TX 75202, attn: Gregory G. Hesse, Tel: (214) 979-3000, Fax: (214) 880-0011, and (ii) Pachulski Stang Ziehl & Jones LLP, North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705, attn: Kathleen Makowski, Tel: (302) 652-4100, Fax: (302) 652-4400;

The Creditors Committee: (i) Arent Fox LLP, 1675 Broadway, New York, NY 10019, attn: Andrew I. Silfen, Tel: (212) 484-3900, Fax: (212) 484-3990., and (ii) Elliott Greenleaf, 1105 Market St., Suite 1700, Wilmington, DE 19801, attn: Rafael X. Zahralddin-Aravena, Tel.: (302) 384-9400, Fax: (302) 384-9399; and

The Office of the United States Trustee: 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, attn: T. Patrick Tinker, Tel.: (302) 573-6491, Fax: (302) 573-6497.

25.     Any party supporting the Plan shall be afforded an opportunity to file a response to any objection to confirmation of the Plan, prior to the Confirmation Hearing.

26.     A hearing shall be held before this Court on ███████, 2011 at ██████.m. (**prevailing Eastern time**), at the United States Bankruptcy Court for the District of Delaware, 824 N. Market St., 5th Floor, Wilmington, Delaware 19801, or as soon thereafter as counsel can be heard, to consider confirmation of the Plan (the "Confirmation Hearing").

27.     The Confirmation Hearing may be adjourned from time to time without further notice to creditors and other parties-in-interest, other than an announcement of the adjourned date at the Confirmation Hearing or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors.

28.     Prior to mailing the Disclosure Statement, Solicitation Packages, Non-Voting Creditor Notices, or the Cure Notice, the Debtors may fill in any missing dates and other information, correct any typographical errors and make such other non-material, non-substantive changes as they deem appropriate.

29.     The Debtors are authorized to take or refrain from taking an action necessary or appropriate to implement the terms of and the relief granted in this Order without seeking further Order of the Court.

30.     This Court shall retain jurisdiction over all matters related to or arising from the Motion or the interpretation or implementation of this Order.

Wilmington, Delaware
Date: March _____, 2011

_____
The Honorable Mary F. Walrath
United States Bankruptcy Judge

**EXHIBIT 1**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ACCREDITED HOME LENDERS | § | Case No. 09-11516 (MFW) |
| HOLDING CO., et al. | § | |
| | § | |
| Debtors.[1] | § | JOINTLY ADMINISTERED |

**NOTICE OF (i) APPROVAL OF DISCLOSURE STATEMENT, (ii) DEADLINE
FOR VOTING ON THE DEBTORS' FIRST AMENDED CHAPTER 11 PLAN OF
LIQUIDATION, (iii) HEARING TO CONSIDER CONFIRMATION OF THE PLAN,
AND (iv) LAST DATE AND PROCEDURES FOR FILING OBJECTIONS TO
CONFIRMATION OF THE PLAN**

TO:    ALL HOLDERS OF CLAIMS IN CLASSES 3 H, 4 H, 5 H, 6 H, 7 H, AND 8 H, AND
       CLASSES 3 C, 4 C, 5 C, 6 C, AND 7 C, AND CERTAIN OTHER PARTIES

**PLEASE TAKE NOTICE THAT IF THIS NOTICE IS ACCOMPANIED BY A BALLOT, YOUR
VOTE IS BEING SOLICITED IN CONNECTION WITH THE FIRST AMENDED CHAPTER
11 PLAN OF LIQUIDATION (THE "PLAN") OF ACCREDITED HOME LENDERS HOLDING
CO., ACCREDITED HOME LENDERS, INC., VENDOR MANAGEMENT SERVICES, LLC
D/B/A INZURA SETTLEMENT SERVICES, INZURA INSURANCE SERVICES, INC., AND
WINDSOR MANAGEMENT CO., D/B/A AHL FORECLOSURE SERVICES CO.
(COLLECTIVELY, THE "DEBTORS").    YOU SHOULD CAREFULLY REVIEW THE
MATERIAL SET FORTH IN THE DISCLOSURE STATEMENT (AND IN THE EXHIBITS
ATTACHED THERETO) IN ORDER TO MAKE AN INDEPENDENT DETERMINATION AS
TO WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN.**

**THE DEBTORS RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.**

**APPROVAL OF DISCLOSURE STATEMENT**

PLEASE TAKE FURTHER NOTICE that, by Order dated March ▓▓▓▓, 2011 (the "Disclosure
Statement Order"), the United States Bankruptcy Court for the District of Delaware (the "Court")
approved the *Third Amended Disclosure Statement with Respect to the Debtors' Second Amended
Chapter 11 Plan of Liquidation*, dated February 23, 2011 (as amended, the "Disclosure Statement"), as
containing adequate information within the meaning of section 1125 of title 11 of the United States Code
(the "Bankruptcy Code").

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are
Accredited Home Lenders Holding Co., a Delaware corporation (9482), Accredited Home Lenders, Inc., a
California corporation (6859), Vendor Management Services, LLC d/b/a Inzura Settlement Services, a Pennsylvania
limited liability company (8047), Inzura Insurance Services, Inc., a Delaware corporation (7089), and Windsor
Management Co., d/b/a AHL Foreclosure Services Co., a California corporation (4056). The address for all Debtors
is 9915 Mira Mesa Blvd., Ste. 100, San Diego, CA 92131. The bankruptcy cases for these debtors and debtors-in-
possession are jointly administered under the bankruptcy case and style referenced above.

## DEADLINE FOR RECORD DATE FOR VOTING PURPOSES

PLEASE TAKE FURTHER NOTICE that the Record Date for voting on the Plan is ▓▓▓▓, **2011.**

## DEADLINE FOR VOTING ON THE PLAN

PLEASE TAKE FURTHER NOTICE that, pursuant to the Disclosure Statement Order, the Court established ▓▓▓▓, **2011 at 4:00 p.m. prevailing Pacific Time** (the "Voting Deadline") as the deadline by which Ballots[2] accepting or rejecting the Plan must be actually received by the Debtors' voting and tabulation agent, Kurtzman Carson Consultants, LLC. To be counted, your original signed Ballot (a Ballot to be completed by you may be enclosed herewith) must actually be received on or before the Voting Deadline by Kurtzman Carson Consultants, LLC (the "Voting Agent"), at Accredited Home Lenders Ballot Processing, Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245. Ballots received by facsimile, e-mail or other means of electronic transmission will not be counted.

## CONFIRMATION HEARING

PLEASE TAKE FURTHER NOTICE that on ▓▓▓▓, **2011 at** ▓▓▓▓**.m. prevailing Eastern Time** or as soon thereafter as counsel may be heard, a hearing will be held before the Honorable Mary F. Walrath, at the United States Bankruptcy Court for the District of Delaware, 824 N. Market St., 5th Floor, Wilmington, Delaware 19801 to consider confirmation of the Plan and approval of related matters, as the same may be further amended or modified, and for such other and further relief as may be just and proper (the "Confirmation Hearing").

PLEASE TAKE FURTHER NOTICE that the Confirmation Hearing may be adjourned from time to time by the Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Bankruptcy Court. Additionally, the Plan may be modified in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and other applicable law, without further notice, prior to or as a result of the Confirmation Hearing.

PLEASE TAKE FURTHER NOTICE that the Plan may be modified, if necessary or required, prior to, during, or as a result of the Confirmation Hearing.

## RELEASE, INJUNCTION AND EXCULPATION PROVISIONS CONTAINED IN PLAN

PLEASE TAKE FURTHER NOTICE THAT THE PLAN CONTAINS CERTAIN RELEASE, INJUNCTION AND EXCULPATION PROVISIONS:

Full Satisfaction, Discharge and Release.

The payments, distributions and other treatment afforded to Holders of Allowed Claims and Interests under the Plan shall be in full and complete satisfaction, discharge and release of such Allowed Claims or Interests.

Releases

---

[2] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Plan.

**Release of Settling Parties' Claims against the Lone Star Releasees**: Upon the Effective Date of the Plan, for good and valuable consideration, pursuant to the Plan, the Lone Star Releasees shall be released from all claims, potential claims, suits, debts, liens, contracts, agreements, promises, liabilities, demands, rights, costs, expenses, actions, causes of action, and damages of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, which any releasor identified below has or may have, or which have been asserted or could be asserted in the future, which are based upon, arise out of, or in any way relate to the Debtors or their business or operations (including the business or operations of the REIT and the other Non-Debtor Subsidiaries and any claims under Chapter 5 of the Bankruptcy Code or similar State or Federal law), by (i) the estates of the Consolidated Debtors and Consolidated Holdco, (ii) the non-debtor Affiliates of the Debtors, (iii) the REIT (subject to the carveout for certain insurance coverage claims set forth in the Plan), and (iv) the Committee.

**Release of Creditors' Claims against the Lone Star Releasees**: Upon the Effective Date of the Plan, for good and valuable consideration, pursuant to the Plan, the Lone Star Releasees shall be released from all claims, potential claims, suits, debts, liens, contracts, agreements, promises, liabilities, demands, rights, costs, expenses, actions, causes of action, and damages of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, which any releasor identified below has or may have, or which have been asserted or could be asserted in the future, which are based upon, arise out of, or in any way relate to the Debtors or their business or operations (including the business or operations of the REIT and the other Non-Debtor Subsidiaries and any claims under Chapter 5 of the Bankruptcy Code or similar State or Federal law), by (i) individual creditors of the Consolidated Debtors in Class 3 C, (ii) individual creditors of Consolidated Holdco in Class 3 H, (iii) individual creditors making the Consolidated Debtors Convenience Class Election, and (iv) individual creditors making the Consolidated Holdco Convenience Class Election.

**Mutual Releases Amongst Settling Parties**: Upon the Effective Date, for good and valuable consideration, each of the Trust Preferred Holders, the Trust Preferred Indenture Trustee, the REIT, the Lone Star Entities, the Debtors, the Non-Debtor Subsidiaries, the Committee, members of the Committee acting in their capacity as such, the REIT Committee, the members of the REIT Committee acting in their capacity as such, and Citigroup Global Markets Realty Corp., effective pursuant to the Confirmation Order, shall grant a full and complete release to each of the Lone Star Releasees, the Trust Preferred Holders, the Trust Preferred Indenture Trustee, the REIT, the Debtors, the Non-Debtor Subsidiaries, the Committee, the members of the Committee acting in their capacity as such, the REIT Committee, the members of the REIT Committee acting in their capacity as such, and Citigroup Global Markets Realty Corp. and to their predecessor entities, Affiliates, successors and assigns and their respective professionals and advisors from all claims, potential claims, suits, debts, liens, contracts, agreements, promises, liabilities, demands, rights, costs, expenses, actions, causes of action, and damages of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, which the releasor has or may have, or which have been asserted or may be asserted in the future, that are based upon, arise out of, or in any way relate to the Debtors or their business or operations related to the Debtors and their businesses (including related to the REIT and any other Non-Debtor Subsidiaries and Affiliates of the Debtors and their business or operations and any claims under Chapter 5 of the Bankruptcy Code or similar State or Federal law), including without limitation any and all claims or causes of action that were set forth or could have been set forth in any complaint or pleading filed by any of the foregoing in the Trust Preferred Adversary Proceeding, the REIT Adversary Proceedings or elsewhere; provided, however, that nothing contained herein or therein shall release any releasor's rights and claims under the Plan or the Allowed Claims granted to it under the Plan.

**Injunction.**

The Plan provides that the occurrence of the Effective Date shall serve to satisfy all Claims or Causes of Action arising out of any Claim addressed by the terms of the Plan and will operate as an injunction, until the Bankruptcy Proceeding is closed, precluding and enjoining all Holders of Claims or Interests from asserting any Claim against the Debtors, the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Assets, the Consolidated Debtors, the Consolidated Debtors Assets, the Plan Administrator, Consolidated Holdco, Consolidated Holdco Assets, and their respective agents, successors, and assigns, and also from asserting any other and further Claim based on any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, against the Debtors, the Liquidating Trust, the Liquidating Trustee, and the Plan Administrators, as representatives of the Estates, as well as their successors or their respective agents, successors, and assigns, whether or not the holder filed a proof of claim, and also from commencing or continuing, directly or indirectly, in any manner, any action or proceeding of any kind on any such Claim or Interest, or the enforcement, attachment, collection, or recovery by any manner or means, or creating, perfecting, or enforcing any encumbrance.

**Exculpation.**

The Plan provides that neither the Debtors nor their officers, directors, managers, employees, professionals, restructuring advisors, or the Committee and its professionals and advisors and members in their capacity as members of the Committee and their respective professionals and advisors, the Liquidating Trust, the Liquidating Trustee, nor the Plan Administrator will have or incur any liability to any holder of a Claim or Interest or any other entity for any act or omission in connection with, in preparation for, or arising out of, the Bankruptcy Proceeding or the cases, including but not limited to the formulation, preparation, dissemination, approval, confirmation, execution, administration, or consummation of the Plan Support Agreement and Term Sheet, the Plan or the Disclosure Statement, the solicitation of votes for or confirmation of the Plan, or implementation, consummation, or administration of the Plan or the property to be distributed under the Plan, or any compromises and settlements under the Plan, except for liability arising from conduct constituting willful misconduct or gross negligence pursuant to a Final Order.

PLEASE TAKE FURTHER NOTICE that if you do not object to the Plan or your objections are overruled or not in compliance with the Federal Rules of Bankruptcy Procedures, the Local Rules of the Bankruptcy Court and any applicable Order entered in the Debtors' cases, the releases, exculpations and injunctions set forth in the Plan will be binding.

## IMPORTANT TAX INFORMATION REQUIRED - POTENTIAL WITHHOLDING

Federal law requires withholding for potential income tax from distributions to creditors. Creditors are receiving a Substitute W-9 Form in this Solicitation Package. Creditors must return this W-9 form in order to receive any distributions. Distributions to holders of Claims by the Debtors, the Liquidating Trustee, and the Plan Administrator, and any subsequent amounts received by the Liquidating Trust allocable to a holder, are subject to any applicable tax withholding. Under U.S. federal income tax law, interest and other reportable payments may, under certain circumstances, be subject to "backup withholding" at the then applicable backup withholding rate (currently 28%). Backup withholding generally applies if the holder (a) fails to furnish its social security number or other taxpayer identification number ("TIN"). (b) furnishes an incorrect TIN, (c) fails properly to report interest or dividends, or (d) under certain circumstances, fails to provide a certified statement, signed under penalty

of perjury, that the TIN provided is its correct number and that it is a United States person that is not subject to backup withholding. Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax and the appropriate information is supplied to the IRS. Certain persons are exempt from backup withholding including, in certain circumstances, corporations aid financial institutions. In addition, in the case of any Liquidating Trust beneficiaries that are not U.S. persons, the Liquidating Trustee may be required to withhold up to 30% of the income or proceeds allocable to such persons, depending on the circumstances (including whether the type of income is subject to a lower treaty rate). Such withholding is not dependent on the Liquidating Trust distributing any cash or other proceeds. To avoid unnecessary withholding, each U.S. holder is required to properly complete and return a Substitute Form W-9, certifying that such holder is a U.S. person, that the TIN provided is correct, and that such holder is not subject to backup withholding, as per its instructions. Exempt persons should indicate their exempt status on the Substitute Form W-9 as per its instructions. Each non-U.S. holder is required to complete and return the applicable IRS Form W-8 (W-SBEN, W-SECI or W-SIMY, as applicable), signed under penalties of perjury, certifying the holder's foreign status. These forms are being mailed with the Solicitation Package, and may be obtained from the IRS website (http://www.irs.gov). Holders should consult their tax advisors as to any qualification for exemption from backup withholding, or a lower rate of U.S. withholding under an applicable treaty or exemption, and the procedure for obtaining such exemption.

## DEADLINE AND PROCEDURES FOR OBJECTIONS TO CONFIRMATION OF THE PLAN

PLEASE TAKE FURTHER NOTICE that objections, if any, to confirmation of the Plan, (including approval of the releases and waivers provided under the Plan), including any supporting memoranda, must be in writing, must be filed with the Clerk of the United States Bankruptcy Court of the District of Delaware, 3rd Floor, 824 North Market Street, Wilmington, Delaware 19801 together with proof of service, and shall state the name and address of the objector, all grounds for the objection and the amount of the Claim(s) or other Interest(s) held by the objector, and shall provide proposed language to remedy such objections. Any such objection must be filed with the Court and served so that it is actually received by the Court, the following parties, and all other parties requesting or entitled to receive notice in these cases, on or before ▒▒▒▒, 2011 at ▒▒▒▒.m. prevailing Eastern Time:

The Debtors:  (i) Hunton & Williams LLP, 1445 Ross Ave., Suite 3700, Dallas, TX 75202, attn: Gregory G. Hesse, Tel: (214) 979-3000, Fax: (214) 880-0011, and (ii) Pachulski Stang Ziehl & Jones LLP, North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705, attn: Kathleen Makowski, Tel: (302) 652-4100, Fax: (302) 652-4400;

The Creditors Committee:  (i) Arent Fox LLP, 1675 Broadway, New York, NY 10019, attn: Andrew I. Silfen, Tel: (212) 484-3900, Fax: (212) 484-3990., and (ii) Elliott Greenleaf, 1105 Market St., Suite 1700, Wilmington, DE 19801, attn: Rafael X. Zahralddin-Aravena, Tel.: (302) 384-9400, Fax:  (302) 384-9399; and

The Office of the United States Trustee: 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, attn: T. Patrick Tinker, Tel.: (302) 573-6491, Fax: (302) 573-6497.

Any objection not filed and served as set forth above will be deemed waived and will not be considered by the Court.

## COPIES OF THE PLAN AND DISCLOSURE STATEMENT

PLEASE TAKE FURTHER NOTICE that to the extent not enclosed herewith, copies of the Plan and Disclosure Statement have been filed with the Bankruptcy Court and may be obtained by parties in

interest at the Debtors' expense upon written request to Accredited Home Lenders, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245. In addition, copies of the Disclosure Statement and the Plan may be found online at www.kccllc.net/accredited and on the Bankruptcy Court's website, www.deb.uscourts.gov, and are on file with the Clerk of the Bankruptcy Court, 3rd Floor, 824 North Market Street, Wilmington, Delaware 19801.

Dated: March ___, 2011.

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:       ljones@pszjlaw.com
             joneill@pszjlaw.com
             kmakowski@pszjlaw.com

-and-

HUNTON & WILLIAMS LLP

Gregory G. Hesse (Texas Bar No. 09549419)
Lynnette R. Warman (Texas Bar No. 20867940)
Jesse T. Moore (Texas Bar No. 24056001)
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Telephone: (214) 979-3000
Telecopy: (214) 880-0011
Email:       ghesse@hunton.com
             lwarman@hunton.com
             jtmoore@hunton.com

ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION

**EXHIBIT 2**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ACCREDITED HOME LENDERS | § | Case No. 09-11516 (MFW) |
| HOLDING CO., et al. | § | |
| | § | |
| Debtors.[1] | § | JOINTLY ADMINISTERED |

**NOTICE OF (i) APPROVAL OF DISCLOSURE STATEMENT, (ii) HEARING TO
CONSIDER CONFIRMATION OF THE PLAN, (iii) LAST DATE AND
PROCEDURES FOR FILING OBJECTIONS TO CONFIRMATION OF THE PLAN,
AND (iv) LAST DATE AND PROCEDURES FOR FILING A CLAIMS
ESTIMATION MOTION**

TO:    ALL HOLDERS OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

ALL HOLDERS OF CLAIMS AND INTERESTS IN CLASSES 1 H, 2 H, 9 H, 10 H, and 11 H,
AND CLASSES 1 C, 2 C, 8 C, 9 C, AND 10 C

ALL HOLDERS CLAIMS THAT (i) HAVE BEEN DISALLOWED IN FULL, (ii) MADE THE
SUBJECT OF A PENDING OBJECTION SEEKING TO DISALLOW SUCH CLAIMS IN
FULL, (iii) WERE SCHEDULED AS LIQUIDATED, CONTINGENT, OR DISPUTED
WITHOUT A TIMELY PROOF OF CLAIM BEING FILED RELATING TO SUCH
POTENTIAL CLAIM, OR (iv) NOT TIMELY FILED, AND NOT OTHERWISE ALLOWED
BY AGREEMENT OR ORDER OF THE COURT

**APPROVAL OF DISCLOSURE STATEMENT**

PLEASE TAKE NOTICE that, by Order dated March ▆▆▆▆, 2011 (the "Disclosure Statement
Order"), the United States Bankruptcy Court for the District of Delaware (the "Court") approved the
*Third Amended Disclosure Statement with Respect to the Debtors' Second Amended Chapter 11 Plan of
Liquidation*, dated February 23, 2011 (as amended, the "Disclosure Statement"), as containing adequate
information within the meaning of section 1125 of title 11 of the United States Code (the "Bankruptcy
Code").

**COPIES OF THE PLAN AND DISCLOSURE STATEMENT**

PLEASE TAKE FURTHER NOTICE that copies of the Plan and Disclosure Statement have been
filed with the Bankruptcy Court and may be obtained by parties in interest at the Debtors' expense upon

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are
Accredited Home Lenders Holding Co., a Delaware corporation (9482), Accredited Home Lenders, Inc., a
California corporation (6859), Vendor Management Services, LLC d/b/a Inzura Settlement Services, a Pennsylvania
limited liability company (8047), Inzura Insurance Services, Inc., a Delaware corporation (7089), and Windsor
Management Co., d/b/a AHL Foreclosure Services Co., a California corporation (4056). The address for all Debtors
is 9915 Mira Mesa Blvd., Ste. 100, San Diego, CA 92131. The bankruptcy cases for these debtors and debtors-in-
possession are jointly administered under the bankruptcy case and style referenced above.

written request to Accredited Home Lenders, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245. In addition, copies of the Disclosure Statement and the Plan may be found on the internet at www.kccllc.net/accredited and on the Bankruptcy Court's website, www.deb.uscourts.gov, and are on file with the Clerk of the Bankruptcy Court, 3rd Floor, 824 North Market Street, Wilmington, Delaware 19801.

## CONFIRMATION HEARING

PLEASE TAKE FURTHER NOTICE that on ▓▓▓▓, 2011 at ▓▓▓▓.m. prevailing Eastern Time or as soon thereafter as counsel may be heard, a hearing will be held before the Honorable Mary F. Walrath, at the United States Bankruptcy Court for the District of Delaware, 824 N. Market St., 5th Floor, Wilmington, Delaware 19801 to consider confirmation of the Plan and approval of related matters, as the same may be further amended or modified, and for such other and further relief as may be just and proper (the "Confirmation Hearing").

PLEASE TAKE FURTHER NOTICE that the Confirmation Hearing may be adjourned from time to time by the Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Bankruptcy Court. Additionally, the Plan may be modified in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and other applicable law, without further notice, prior to or as a result of the Confirmation Hearing.

PLEASE TAKE FURTHER NOTICE that the Plan may be modified, if necessary or required, prior to, during, or as a result of the Confirmation Hearing.

## CLASSES OF CLAIMS AND INTERESTS NOT ENTITLED TO VOTE

PLEASE TAKE FURTHER NOTICE that, in accordance with the terms of the Plan and the Bankruptcy Code, (i) holders of Administrative Claims,[2] Priority Tax Claims, and Secured and Priority Claims in Classes 1 H, 2 H, 1 C, and 2 C are unimpaired, are conclusively presumed to have accepted the Plan and, thus, are not entitled to vote on the Plan and a (ii) the holders of Subordinated Claims in Classes 9 H, 10 H, 8 C, and 9 C, and holders of Interests in Classes 11 H and 10 C will not receive any distributions under the Plan and are presumed to have rejected the Plan.

PLEASE TAKE FURTHER NOTICE that, in accordance with the terms of the Plan, the Bankruptcy Code, and orders of this Court, the holders of Claims that (i) have been disallowed in full, (ii) are the subject of a pending objection seeking to disallow them in full, (iii) were scheduled as liquidated, contingent, or disputed without a timely proof of claim being filed relating to such potential Claim, and (iv) were not timely filed and not otherwise allowed by agreement or Order of the Court ("Disallowed and Unallowed Claims") shall not be entitled to have their votes counted unless they file a Claims Estimation Motion (as defined below) and obtain an order from the Court permitting to them to vote.

PLEASE TAKE FURTHER NOTICE that the Plan may be modified, if necessary or required, prior to, during, or as a result of the Confirmation Hearing.

## SUMMARY OF PLAN TREATMENT OF CLAIMS AND INTERESTS

PLEASE TAKE FURTHER NOTICE that the Plan proposes to modify the rights of certain creditors and equity securities holders of the Debtors. Under the Plan, the assets of Debtors Accredited

---

[2] Undefined capitalized terms herein are ascribed the definitions provided in the Plan.

Home Lenders Holding Company and Vendor Management Services LLC ("Consolidated Holdco") will be consolidated and vested in Consolidated Holdco, and the assets of the other Debtors (the "Consolidated Debtors") will be transferred to a Liquidating Trust. General unsecured creditors of the Consolidated Debtors will receive interests in and distributions from the Liquidating Trust, and general unsecured creditors of Consolidated Holdco will receive claims distributions from Consolidated Holdco, as described below. The Plan establishes the following classes of Claims and Interests with the following treatment:[3]

## Unclassified Administrative Claims & Professional Fee Claims

Administrative Claims include all Claims for the costs and expenses of administering the Cases having priority under § 507(a)(2) of the Bankruptcy Code, including without limitation costs and expenses allowed under § 503(b) of the Bankruptcy Code, the actual and necessary costs and expenses of preserving the Debtors' bankruptcy Estates and operating the business of the Debtors, any fees or charges assessed against the Estates under 28 U.S.C. § 1930, Professional Fee Claims, and any Claims allowed pursuant to § 507(b) of the Bankruptcy Code.

Any Holder of an Allowed Administrative Claim shall receive the full amount of the Holder's Allowed Administrative Claim in one Cash payment from the Consolidated Debtors, or Consolidated Holdco, as applicable, as part of the Effective Date Distribution. An Administrative Claim that is a Disputed Claim shall not receive any distribution unless and until such Claim becomes an Allowed Administrative Claim. Upon the entry of a Final Order allowing an Administrative Claim, the Holder of that Claim shall receive the full amount of such Claim in one Cash payment from the Liquidating Trust or Consolidated Holdco, as applicable. The Debtor, Liquidating Trustee, or Plan Administrator, as applicable, may agree to less favorable treatment of such Allowed Administrative Claim. An Administrative Claim not filed prior to the first Business Day that is thirty (30) days after the Effective Date (the "Administrative Claim Bar Date") as provided in the Plan shall be deemed forever waived and barred, the Holder thereof shall not be entitled to a distribution under the Plan, and the Debtors, their Estates, the Plan Administrator, and the Liquidating Trustee shall have no obligation with respect thereto.

Unless otherwise expressly provided in the Plan, a Professional Fee Claim will be Allowed only if: (i) on or before forty-five (45) days after the Effective Date (the "Professional Fee Claim Bar Date"), the entity holding such Professional Fee Claim files with the Court a final fee application and serves the application on counsel to the Debtors, counsel to the Committee, the Liquidating Trustee, and the U.S. Trustee; and (ii) the Court enters a Final Order allowing such Claim.

Any party in interest, including the Liquidating Trustee, but excluding the Plan Administrator, may file an objection to such application within the time provided by the Bankruptcy Rules or within any other period that the Bankruptcy Court establishes, except that the Lone Star Entities, the Trust Preferred Indenture Trustee, and the Trust Preferred Holders waive their right to object to or challenge the allowance or award of any Professional Fee Claims. Entities holding Professional Fee Claims that do not timely file and serve a fee application will be forever barred from asserting such Professional Fee Claim against the Debtors, the Estates, the Liquidating Trust, or their respective property.

With regard to fees and expenses owed by the Debtors in connection with services provided by AP Services, LLC ("APS"), including those provided by the Chief Restructuring Officer (collectively the "CRO Expenses"), since the Petition Date, such CRO Expenses shall be paid pursuant to the terms of the *Order Under Bankruptcy Code Sections 105(a) and 363(B) Authorizing the Retention and Employment of AP Services, LLC to Provide Interim Management and Restructuring Services and Designating Meade*

---

[3] For a complete description of the Plan provisions, reference should be made to the Plan and Disclosure Statement, copies of which can be obtained by the methods described at the beginning of this Notice.

*Monger as Chief Restructuring Officer and Michael Murphy as Chief Administrative Officer to the Debtors, Nunc Pro Tunc to the Petition Date* entered by the Bankruptcy Court on or about July 2, 2009, Docket No. 282.

The Consolidated Debtors or the Liquidating Trustee, as applicable, will pay or cause to be paid an Allowed Professional Fee Claim, in Cash, within five (5) days after the entry of a Final Order allowing such Allowed Professional Fee Claims. The Consolidated Debtors shall pay CRO Expenses. In return, the Consolidated Debtors will receive the Consolidated Holdco Professional Fee Claim Payment from Consolidated Holdco.

### Unclassified Priority Tax Claims & IRS Priority Tax Claims

Any Holder of an Allowed Priority Tax Claim shall receive the full amount of the Holder's Allowed Priority Tax Claim in one Cash payment from Consolidated Holdco or the Consolidated Debtors, as applicable, as part of the Effective Date Distribution. A Priority Tax Claim that is a Disputed Claim shall not receive any distribution unless and until such Claim becomes an Allowed Priority Tax Claim. Upon the entry of a Final Order allowing an Priority Tax Claim after the Effective Date, the Holder of that Claim shall receive the full amount of such Claim in one Cash payment from Consolidated Holdco or the Liquidating Trust, as applicable, except as otherwise provided under Section 3.3 of the Plan. The applicable Liquidating Trustee, Plan Administrator, or Debtor and the Holder of an Allowed Priority Tax Claim may agree to less favorable treatment of such Allowed Priority Tax Claim. To the extent that some or all of an Allowed Secured Claim for taxes does not qualify as a Priority Tax Claim, it will be classified as a Class 1 Secured Claim.

The Holder of the IRS Priority Tax Claims shall be paid in full from the Tax Refunds. The IRS Priority Tax Claims shall be treated as an obligation of the Consolidated Debtors or the Liquidating Trust.

### Class 1 H and 1 C - Secured Claims

Any Holder of a Class 1 H or 1 C Allowed Secured Claim shall at the sole option of the applicable Debtors receive (a) the full amount of the Holder's Allowed Secured Claim in one cash payment as part of the Effective Date Distribution from the applicable Debtor, (b) all or a portion of the Assets securing the Allowed Secured Claim, or (c) subject to the requirements of § 1124(2) of the Bankruptcy Code, the legal, equitable and contractual rights of the Holder of such Allowed Secured Claim shall be reinstated. A Class 1 H or 1 C Secured Claim that is a Disputed Claim shall not receive any distribution unless and until such Claim becomes Allowed. Upon the entry of a Final Order allowing the Class 1 H or 1 C Secured Claim after the Effective Date, the Holder of that Claim shall receive (a) the full amount of such Claim in one cash payment from the Liquidating Trust or Consolidated Holdco, as applicable, (b) all or a portion of the Assets securing the Allowed Secured Claim, or (c) subject to the requirements of § 1124(2) of the Bankruptcy Code, the legal, equitable and contractual rights of the Holder of such Allowed Secured Claim shall be reinstated. The applicable Liquidating Trustee, Debtor, or Plan Administrator and the Holder of a Allowed Secured Claim may agree to less favorable treatment of such claim.

### Class 2 H and 2 C - Priority Claims Other Than Priority Tax Claims

Any Holder of a Class 2 H or Class 2 C Allowed Priority Non-Tax Claim shall receive the full amount of such claim in one cash payment as part of the Effective Date Distribution from the applicable Debtors. A Class 2 H or 2 C Priority Non-Tax Claim that is a Disputed Claim shall not receive any distribution unless and until such Claim becomes a Class 2 H or Class 2 C Allowed Priority Non-Tax Claim. Upon the entry of a Final Order allowing such claim after the Effective Date, the Holder of that

Claim shall receive the full amount of such Claim in one cash payment from the Liquidating Trust or Consolidated Holdco, as applicable. The applicable Liquidating Trustee, Debtor, or Plan Administrator and the Holder of an Class 2 H or Class 2 C Allowed Priority Non-Tax Claim may agree to less favorable treatment of such claim.

### Class 3 H - General Unsecured Claims against Consolidated Holdco Accepting the Creditor Release

Class 3 H consists of Allowed Unsecured Claims against Consolidated Holdco whose Holders cast a timely Ballot accepting the Creditor Release or provide written consent for the Creditor Release to Consolidated Holdco. Subject to the Plan, Holders of Class 3 H Allowed Claims shall receive distributions equal to their Pro Rata Share of any distributions of Consolidated Holdco Assets made by the Plan Administrator in accordance with the Plan, and continuing on each Subsequent Distribution Date. In calculating the distribution to the Holders of Class 3 H Claims, the Pro Rata Share shall include in the calculation the Allowed Claims and Disputed Claims included in Class 3 H, 4 H, 5 H, and 6 H. Until the Holders of the Class 3 H Allowed Claims are satisfied in full with interest thereon from the Petition Date through the date on which such Claim is paid in full calculated at the federal judgment rate in effect as of the Petition Date, the Holder of Class 3 H Allowed Claims shall be entitled to receive their Pro Rata Share of distributions made by the Plan Administrator in accordance with the Plan.

In the event of entry of a Final Order determining a Disputed Claim to be an Allowed Claim, the Plan Administrator in his sole discretion, may make an Interim Distribution to the Holder of such Allowed Claim from the Consolidated Holdco Assets. The Holders of Class 3 H Allowed Claims shall thereafter receive their Pro Rata Share of Subsequent Distributions from Consolidated Holdco.

In the event Class 3 H votes in favor of the Plan, the payment of Class 5 H Claims will be subordinated and junior to the payment of Class 3 H Claims, any distributions that would have been made to Holders of Class 5 H Claims shall instead be made to Holders of Class 3 H Claims and Class 6 H Claims (if Class 6 H also votes to in favor of the Plan) on a Pro Rata Basis, and Class 5 H Claims shall not receive any distribution until Class 3 H Claims are paid in full under the Plan, and all subrogation rights of Class 5 H shall be deemed waived and released.

### Class 4 H - General Unsecured Claims against Consolidated Holdco, except for separately classified Claims

Class 4 H consists of Allowed Unsecured Claims against Consolidated Holdco that are not separately classified under the Plan. Subject to the Plan, Holders of Class 4 H Allowed Claims shall receive distributions equal to their Pro Rata Share of any distributions of Consolidated Holdco Assets made by the Plan Administrator in accordance with the Plan, and continuing on each Subsequent Distribution Date. In calculating the distribution to the Holders of Class 4 H Claims, the Pro Rata Share shall include in the calculation the Allowed Claims and Disputed Claims included in Class 3 H, 4 H, 5 H, and 6 H. Until the Holders of the Class 4 H Allowed Claims are satisfied in full with interest thereon from the Petition Date through the date on which such Claim is paid in full calculated at the federal judgment rate in effect as of the Petition Date, the Holder of Class 4 H Allowed Claims shall be entitled to receive their Pro Rata Share of distributions made by the Plan Administrator in accordance with the Plan.

In the event of entry of a Final Order determining a Disputed Claim to be an Allowed Claim, the Plan Administrator in his sole discretion, may make an Interim Distribution to the Holder of such Allowed Claim from the Consolidated Holdco Assets. The Holders of Class 4 H Allowed Claims shall thereafter receive their Pro Rata Share of Subsequent Distributions from Consolidated Holdco.

For the avoidance of doubt, Holders of Allowed Class 4 H Claims opting out of the Creditor Release shall not be entitled to receive any distributions that would have been made to Holders of Class 5 H Claims.

### Class 5 H - General Unsecured Claims against Consolidated Holdco held by LSF-MRA, LLC

Class 5 H is the Claim of LSF-MRA, LLC in the amount of $96,764,904.97. Subject to the provisions of §§ 3.1, 3.2, 4.3, 4.5 and 4.6 of the Plan, Holders of Class 5 H Allowed Claims shall receive a Pro Rata Share of any distributions of Consolidated Holdco Assets made by the Plan Administrator in accordance with the Plan, and continuing on each Subsequent Distribution Date. In calculating the distribution to the Holder of Class 5 H Claims, the Pro Rata Share shall include in the calculation the Allowed Claims and Disputed Claims included in Class 3 H, 4 H, 5 H, and 6 H. Until the Holders of the Class 5 H Allowed Claims are satisfied in full with interest thereon from the Petition Date through the date on which such Claim is paid in full calculated at the federal judgment rate in effect as of the Petition Date, the Holder of Class 5 H Allowed Claims shall be entitled to receive their Pro Rata Share of distributions made by the Plan Administrator in accordance with the Plan.

Notwithstanding the foregoing, in the event Class 3 H votes in favor of the Plan, the payment of Class 5 H Claims will be subordinated and junior to the payment of Class 3 H Claims, and Class 5 H Claims shall not receive any distribution until Class 3 H Claims are paid in full or paid as otherwise provided under the Plan, and such distributions shall be treated and distributed as provided under the Plan.

In the event Class 6 H votes in favor of the Plan and does not object to the Plan, the payment of Class 5 H Claims will be subordinated and junior to the payment of Class 6 H Claims and Class 5 H Claims shall not receive any distribution until Class 6 H Claims are paid in full under the Plan, and such distributions shall be treated and distributed as provided under the Plan and all subrogation rights of Class 5 H Claims shall be deemed waived and released.

### Class 6 H - Unsecured Claims against Consolidated Holdco Held by the REIT

The Class 6 H Claim of Accredited Mortgage Loan REIT Trust (the "REIT") shall be fixed and Allowed as an Unsecured Claim against Consolidated Holdco in the amount of Twenty Million Dollars ($20,000,000) and, on account of such Claim, the Holder of the Allowed Class 6 H Claim shall receive a Pro Rata Share of any distributions of Consolidated Holdco Assets made by the Plan Administrator in accordance with the Plan, and continuing on each Subsequent Distribution Date. In calculating the distribution to the Holder of Class 6 H Claims, the Pro Rata Share shall include in the calculation the Allowed Claims and Disputed Claims included in Class 3 H, 4 H, 5 H, and 6 H. The Holder of Allowed Class 6 H Claims will waive its right to enforce any subordination provisions relating to Class 8 H Claims.

In the event Class 6 H votes in favor of the Plan, the payment of Class 5 H Claims will be subordinated and junior to the payment of Class 6 H Claims, any distributions that would have been made to Holders of Class 5 H Claims shall instead be made to Holders of Class 6 H Claims and Class 3 H Claims (if Class 3 H also votes to in favor of the Plan) on a Pro Rata Basis, and Class 5 H Claims shall not receive any distribution until Class 3 H and Class 6 H Claims are paid in full under the Plan.

### Class 7 H - Consolidated Holdco Convenience Class Claims

Each Holder of an Allowed Consolidated Holdco Convenience Claim in Class 7 H shall receive

sixty-five percent (65%) of the Holder's Allowed Class 7 H Convenience Claim in one Cash payment as part of the Effective Date Distribution from Consolidated Holdco, or such other, less favorable treatment as is agreed upon by Consolidated Holdco and the Holder of such Consolidated Holdco Convenience Claim. Any Holder of an Allowed General Unsecured Claim against Consolidated Holdco, other than Claims in Class 4 H, 5 H, 6 H, 8 H, and 9 H, may make the Consolidated Holdco Convenience Class Election. Such election must be made on a Ballot that is properly and timely cast in accordance with applicable law and orders of the Bankruptcy Court.

### Class 8 H – Claims against Consolidated Holdco relating to Accredited Preferred Securities Trust I

Class 8 H consists of Allowed Claims against Holdco that relate to the Trust Preferred Securities, Trust Preferred Notes, and the Trust Preferred Note Claims, Claims held or asserted or that could be asserted by the Trust Preferred Indenture Trustee, and Claims held or asserted or that could be asserted by the Trust Preferred Holders. The Claims of Holders of Allowed Class 8 H Claims shall be fixed and Allowed as a single Unsecured Claim in favor of the Trust Preferred Indenture Trustee against Consolidated Holdco, and shall be deemed fully satisfied and paid in full by the Lone Star Trust Preferred Settlement Payment and the Trust Preferred Holdco Distributions to the Trust Preferred Indenture Trustee.

### Class 9 H - REIT Preferred Holders' Subordinated Guaranty Claims against Consolidated Holdco

Class 9 H consists of all Claims against any of the Debtors relating to the guaranty claims of the REIT Preferred Security Holders. Unless otherwise agreed to by the Committee and the REIT Committee, on the Effective Date (i) the Holders of Allowed Class 9 H Claims shall not be entitled to receive any direct distributions from Consolidated Holdco until all Holders of Allowed Claims in Classes 3 H, 4 H, 5 H, and 6 H have been paid in full as provided under the Plan prior to the Consolidated Holdco Assets being fully administered, and (ii) the Holders of Allowed Class 9 H Claims shall not be entitled to any reports or notices from Consolidated Holdco or the Plan Administrator, until the Plan Administrator determines that such holders are likely to receive a direct distribution. If the Holders of Class 3 H, 4 H, 5 H, and 6 H Claims are not paid in full as provided under the Plan, or if the Consolidated Holdco Assets are fully administered prior to the time when such senior unsecured Claims are paid in full, then the Holders of Allowed Class 9 H Claims shall not receive any distribution under the Plan. After the Holders of Class 3 H, 4 H, 5 H, and 6 H Claims are paid in full as provided under the Plan prior to the full administration of the Consolidated Holdco Assets, the Holders of Allowed Class 9 H Claims shall receive a Pro Rata Share of any Subsequent Distributions made after such time, and their Pro Rata Share of the Consolidated Holdco Residual Assets, as applicable.

Under the Plan, the REIT itself will be receiving large distributions from both Consolidated Holdco and the Consolidated Debtors. These distributions will pass through the REIT and be distributed to the REIT's shareholders in accordance with the contracts governing the REIT and its shareholders. The REIT is not a Debtor in the Bankruptcy Cases. The REIT has separate management and legal counsel. Nothing in the Plan affects or modifies the REIT's obligations to the REIT Preferred Shareholders.

### Class 10 H - Subordinated Claims against Consolidated Holdco

Class 10 H consists of Claims against Consolidated Holdco that are not separately classified and are subordinated for any reason under § 510 of the Bankruptcy Code, and Late Filed Claims. Holders of Class 10 H Claims shall not receive any distributions until the Holders of Class 3 H, 4 H, 5 H, 6 H, and 9

H Claims against Consolidated Holdco have been paid in full with interest as provided under the Plan, in which event the holders of Class 10 H Claims shall receive their Pro Rata Share of Subsequent Distributions and their Pro Rata Share of the Consolidated Holdco Residual Assets, as applicable.

### Class 11 H- Interests in Consolidated Holdco

Class 11 H consists of the Interests in Consolidated Holdco, including those Interests held by the Lone Star Entities. All Interests, including those Interests held by the Lone Star Entities, shall be canceled after the Effective Date and in accordance with the terms of the Plan, and the Holders thereof shall receive no distribution under the Plan, unless Holders of all Class 10 H Claims against Consolidated Holdco are paid in full with interest as provided under the Plan, in which event the holders of Class 11 H Interests shall receive their Pro Rata Share of Subsequent Distributions and their Pro Rata Share of the Consolidated Holdco Residual Assets, as applicable.

### Class 3 C - General Unsecured Claims against Consolidated Debtors Accepting the Creditor Release

Class 3 C consists of Allowed Unsecured Claims against the Consolidated Debtors whose Holders cast a timely Ballot accepting the Creditor Release. Holders of Allowed Class 3 C and 4 C Claims shall be entitled to receive a Pro Rata Share of interests in the Liquidating Trust and are entitled to receive distributions equal to their Pro Rata Share of any distributions of the Liquidating Trust Assets made by the Liquidating Trustee out of the Liquidating Trust in accordance with the Liquidating Trust Agreement and the Plan, and continuing on the dates of Subsequent Distributions, equal to their Pro Rata Share of any Subsequent Distributions of Liquidating Trust Assets made by the Liquidating Trustee out of the Liquidating Trust, as provided under the Plan.

In addition to the distributions described above, Holders of Class 3 C General Unsecured Claims shall be entitled to receive a Pro Rata Share of the Lone Star Creditor Release Settlement Payment subject to the terms of the Plan. Holders of Class 3 C General Unsecured Claims must accept the Creditor Release. The Liquidating Trustee shall hold and distribute the Lone Star Creditor Release Settlement Payment pursuant to the terms of the Plan.

In the event of entry of a Final Order determining a Disputed Claim to be an Allowed Claim, the Holder of the subject Claim shall receive its Pro Rata Share of interests in the Liquidating Trust, and the Liquidating Trustee, in his sole discretion, may make an Interim Distribution to the Holder of such Allowed Claim from the Liquidating Trust Reserve, or may release funds from the Liquidating Trust Reserve to such Holder in a Subsequent Distribution. The Holders of Allowed Class 3 C Claims shall thereafter receive their Pro Rata Share of Subsequent Distributions from the Liquidating Trust.

Upon full administration of the Assets vested in the Liquidating Trust, the Liquidating Trustee shall make the Final Distribution, and all obligations under the Plan of the Liquidating Trustee to the Holders of Allowed Class 3 C Claims shall be satisfied. In the event that the Holders of Allowed Class 3 C Claims are paid in full, together with interest thereon from the Petition Date through the date on which such Claim is paid in full calculated at the federal judgment rate in effect as of the Petition Date, any funds remaining in the Liquidating Trust Account, net of expenses, shall be distributed first to the Holders of the Allowed Class 4 C Claims and then to the Holders of Allowed Class 7 C Claims in accordance with the provisions of the Plan.

### Class 4 C - General Unsecured Claims against the Consolidated Debtors, except for separately classified Claims

Class 4 C consists of Allowed Unsecured Claims against the Consolidated Debtors that are not separately classified under the Plan. Holders of Allowed Class 3 C and 4 C Claims shall be entitled to receive a Pro Rata Share of interests in the Liquidating Trust and are entitled to receive distributions equal to their Pro Rata Share of any distributions of the Liquidating Trust Assets made by the Liquidating Trustee out of the Liquidating Trust in accordance with the Liquidating Trust Agreement, and continuing on each Subsequent Distribution Date, equal to their Pro Rata Share of any Subsequent Distributions of Liquidating Trust Assets made by the Liquidating Trustee out of the Liquidating Trust.

For the avoidance of doubt, Holders of Allowed Class 4 C Claims opting out of the Creditor Release shall not be entitled to receive any distributions from the Lone Star Creditor Release Settlement Payment.

Upon full administration of the Assets vested in the Liquidating Trust, the Liquidating Trustee shall make the Final Distribution, and all obligations under the Plan of the Liquidating Trustee to the Holders of Allowed Class 4 C Claims shall be satisfied. In the event that the Holders of Allowed Class 4C Claims are paid in full, together with interest thereon from the Petition Date through the date on which such Claim is paid in full calculated at the federal judgment rate in effect as of the Petition Date, any funds remaining in the Liquidating Trust Account, net of expenses, shall be distributed to the Holders of Allowed Class 7 C Claims in accordance with the provisions of the Plan.

### Class 5 C - General Unsecured Claims Against the Consolidated Debtors held by the Lone Star Entities

The Claims of the Lone Star Entities against the Consolidated Debtors shall be waived, released, and expunged, and shall receive no distributions under the Plan.

### Class 6 C - Convenience Class Claims against Consolidated Debtors

On the Effective Date, or as soon as practicable thereafter, each Holder of an Allowed Consolidated Debtor Convenience Claim in Class 6 C shall receive seventy-five percent (75%) of the Holder's Allowed Class 6 C Convenience Claim in one Cash payment as part of the Effective Date Distribution from the Consolidated Debtors, or such other less favorable treatment as is agreed upon by the Consolidated Debtors and the Holder of such Allowed Consolidated Debtor Convenience Claim. Any Holder of an Allowed General Unsecured Claim against the Consolidated Debtors, other than Claims in Class 4 C, 5 C, 7 C, and 8 C, may make the Consolidated Debtors Convenience Class Election. Such election must be made on a Ballot that is properly and timely cast in accordance with applicable law and orders of the Bankruptcy Court.

### Class 7 C - REIT Junior Claim against the Consolidated Debtors

Class 7 C consists of the REIT Junior Claim, which is fixed and Allowed as a Class 7 C Claim in the amount of Fifteen Million Dollars ($15,000,000) held by the REIT. Holders of Allowed Class 7 C Claims shall receive their Pro Rata Share of interests in the Liquidating Trust subject to the enforcement of the applicable subordination provisions as described herein.

Pursuant to the terms of the Plan, the Class 7 C Claims are subordinated and junior to the Class 3 C and 4 C Claims, and Holders of Class 7 C Claims will not receive any distributions until all Claims in such classes are paid in full, as provided under the Plan, in which event the holders of Class 7 C Claims shall receive their Pro Rata Share of any Subsequent Distributions made by the after such time, and their Pro Rata Share of the Liquidating Trust Residual Assets, as applicable..

### Class 8 C - Subordinated Claims against the Consolidated Debtors

Class 8 C consists of Subordinated Claims against the Consolidated Debtors, including Late Filed Claims. Holders of Class 8 C Subordinated Claims shall receive no distribution under the Plan unless the Holders of Allowed Class 3 C, 4 C and 7 C Claims are paid in full, as provided under the Plan, in which event the holders of Class 8 C Claims shall receive their Pro Rata Share of any Subsequent Distributions made after such time, and their Pro Rata Share of the Liquidating Trust Residual Assets, as applicable.

### Class 9 C - Claims against Consolidated Debtors relating to Accredited Preferred Securities Trust I

Class 9 C consists of Allowed Claims against the Consolidated Debtors that relate to the Trust Preferred Securities, Trust Preferred Notes, and the Trust Preferred Note Claims. All such Claims are reduced, fixed, and Allowed as the Trust Preferred Note Junior Claim, which is a Class 9 C Claim in the amount of Five Million Dollars ($5,000,000) held by the Trust Preferred Indenture Trustee. Holders of Allowed Class 9 C Claims shall receive their Pro Rata Share of interests in the Liquidating Trust subject to the enforcement of the applicable subordination provisions as described herein.

Pursuant to the terms of the Plan, the Class 9 C Claims are subordinated and junior to the Class 3 C, 4 C, 7 C and 8 C Claims, and Holders of Class 9 C Claims will not receive any distributions until all Claims in such classes are paid in full, as provided under the Plan, in which event the holders of Class 9 C Claims shall receive their Pro Rata Share of any Subsequent Distributions made after such time, and their Pro Rata Share of the Liquidating Trust Residual Assets, as applicable.

### Class 10 C - Consolidated Debtors Interests

Class 10 C consists of the Interests in the Consolidated Debtors. All Interests shall be canceled as of the Effective Date and the Holders thereof shall receive no distribution under the Plan, unless Holders of all Class 9 C Claims against the Consolidated Debtors are paid in full with interest and the Liquidating Trust is terminated, as provided under the Plan, in which event the holders of Class 10 C Interests shall receive their Pro Rata Share of the Liquidating Trust Residual Assets.

## RELEASE, INJUNCTION AND EXCULPATION PROVISIONS CONTAINED IN PLAN

**PLEASE TAKE FURTHER NOTICE THAT THE PLAN CONTAINS CERTAIN RELEASE, INJUNCTION AND EXCULPATION PROVISIONS:**

### Full Satisfaction, Discharge and Release.

The payments, distributions and other treatment afforded to Holders of Allowed Claims and Interests under the Plan shall be in full and complete satisfaction, discharge and release of such Allowed Claims or Interests.

### Releases

**Release of Settling Parties' Claims against the Lone Star Releasees:** Upon the Effective Date of the Plan, for good and valuable consideration, pursuant to the Plan, the Lone Star Releasees shall be released from all claims, potential claims, suits, debts, liens, contracts, agreements, promises, liabilities, demands, rights, costs, expenses, actions, causes of action, and damages of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, which any releasor identified below has or may have, or which have been asserted or

could be asserted in the future, which are based upon, arise out of, or in any way relate to the Debtors or their business or operations (including the business or operations of the REIT and the other Non-Debtor Subsidiaries and any claims under Chapter 5 of the Bankruptcy Code or similar State or Federal law), by (i) the estates of the Consolidated Debtors and Consolidated Holdco, (ii) the non-debtor Affiliates of the Debtors, (iii) the REIT (subject to the carveout for certain insurance coverage claims set forth in the Plan), and (iv) the Committee.

Release of Creditors' Claims against the Lone Star Releasees: Upon the Effective Date of the Plan, for good and valuable consideration, pursuant to the Plan, the Lone Star Releasees shall be released from all claims, potential claims, suits, debts, liens, contracts, agreements, promises, liabilities, demands, rights, costs, expenses, actions, causes of action, and damages of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, which any releasor identified below has or may have, or which have been asserted or could be asserted in the future, which are based upon, arise out of, or in any way relate to the Debtors or their business or operations (including the business or operations of the REIT and the other Non-Debtor Subsidiaries and any claims under Chapter 5 of the Bankruptcy Code or similar State or Federal law), by (i) individual creditors of the Consolidated Debtors in Class 3 C, (ii) individual creditors of Consolidated Holdco in Class 3 H, (iii) individual creditors making the Consolidated Debtors Convenience Class Election, and (iv) individual creditors making the Consolidated Holdco Convenience Class Election.

Mutual Releases Amongst Settling Parties: Upon the Effective Date, for good and valuable consideration, each of the Trust Preferred Holders, the Trust Preferred Indenture Trustee, the REIT, the Lone Star Entities, the Debtors, the Non-Debtor Subsidiaries, the Committee, members of the Committee acting in their capacity as such, the members of the REIT Committee acting in their capacity as such, and Citigroup Global Markets Realty Corp., effective pursuant to the Confirmation Order, shall grant a full and complete release to each of the Lone Star Releasees, the Trust Preferred Holders, the Trust Preferred Indenture Trustee, the REIT, the Debtors, the Non-Debtor Subsidiaries, the Committee, the members of the Committee acting in their capacity as such, the REIT Committee, the members of the REIT Committee acting in their capacity as such, and Citigroup Global Markets Realty Corp. and to their predecessor entities, Affiliates, successors and assigns and their respective professionals and advisors from all claims, potential claims, suits, debts, liens, contracts, agreements, promises, liabilities, demands, rights, costs, expenses, actions, causes of action, and damages of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, which the releasor has or may have, or which have been asserted or may be asserted in the future, that are based upon, arise out of, or in any way relate to the Debtors or their business or operations related to the Debtors and their businesses (including related to the REIT and any other Non-Debtor Subsidiaries and Affiliates of the Debtors and their business or operations and any claims under Chapter 5 of the Bankruptcy Code or similar State or Federal law), including without limitation any and all claims or causes of action that were set forth or could have been set forth in any complaint or pleading filed by any of the foregoing in the Trust Preferred Adversary Proceeding, the REIT Adversary Proceedings or elsewhere; provided, however, that nothing contained herein or therein shall release any releasor's rights and claims under the Plan or the Allowed Claims granted to it under the Plan.

Injunction.

The Plan provides that the occurrence of the Effective Date shall serve to satisfy all Claims or Causes of Action arising out of any Claim addressed by the terms of the Plan and will operate as an injunction, until the Bankruptcy Proceeding is closed, precluding and enjoining all Holders of

Claims or Interests from asserting any Claim against the Debtors, the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Assets, the Consolidated Debtors, the Consolidated Debtors Assets, the Plan Administrator, Consolidated Holdco, Consolidated Holdco Assets, and their respective agents, successors, and assigns, and also from asserting any other and further Claim based on any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, against the Debtors, the Liquidating Trust, the Liquidating Trustee, and the Plan Administrators, as representatives of the Estates, as well as their successors or their respective agents, successors, and assigns, whether or not the holder filed a proof of claim, and also from commencing or continuing, directly or indirectly, in any manner, any action or proceeding of any kind on any such Claim or Interest, or the enforcement, attachment, collection, or recovery by any manner or means, or creating, perfecting, or enforcing any encumbrance.

Exculpation.

The Plan provides that neither the Debtors nor their officers, directors, managers, employees, professionals, restructuring advisors, or the Committee and its professionals and advisors and members in their capacity as members of the Committee and their respective professionals and advisors, the Liquidating Trust, the Liquidating Trustee, nor the Plan Administrator will have or incur any liability to any holder of a Claim or Interest or any other entity for any act or omission in connection with, in preparation for, or arising out of, the Bankruptcy Proceeding or the cases, including but not limited to the formulation, preparation, dissemination, approval, confirmation, execution, administration, or consummation of the Plan Support Agreement and Term Sheet, the Plan or the Disclosure Statement, the solicitation of votes for or confirmation of the Plan, or implementation, consummation, or administration of the Plan or the property to be distributed under the Plan, or any compromises and settlements under the Plan, except for liability arising from conduct constituting willful misconduct or gross negligence pursuant to a Final Order.

PLEASE TAKE FURTHER NOTICE that if you do not object to the Plan or your objections are overruled or not in compliance with the Federal Rules of Bankruptcy Procedures, the Local Rules of the Bankruptcy Court and any applicable Order entered in the Debtors' cases, the releases, exculpations and injunctions set forth in the Plan will be binding.

## IMPORTANT TAX INFORMATION REQUIRED - POTENTIAL WITHHOLDING

Distributions to holders of Claims by the Debtors, the Liquidating Trustee, and the Plan Administrator, and any subsequent amounts received by the Liquidating Trust allocable to a holder, are subject to any applicable tax withholding. Under U.S. federal income tax law, interest and other reportable payments may, under certain circumstances, be subject to "backup withholding" at the then applicable backup withholding rate (currently 28%). Backup withholding generally applies if the holder (a) fails to furnish its social security number or other taxpayer identification number ("TIN"). (b) furnishes an incorrect TIN, (c) fails properly to report interest or dividends, or (d) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the TIN provided is its correct number and that it is a United States person that is not subject to backup withholding. Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax and the appropriate information is supplied to the IRS. Certain persons are exempt from backup withholding including, in certain circumstances, corporations aid financial institutions. In addition, in the case of any Liquidating Trust beneficiaries that are not U.S. persons, the Liquidating Trustee may be required to withhold up to 30% of the income or proceeds allocable to such persons, depending on the circumstances (including whether the type of income is subject to a lower treaty rate). Such withholding is not dependent on the Liquidating Trust

distributing any cash or other proceeds. To avoid unnecessary withholding, each U.S. holder is required to properly complete and return a Substitute Form W-9, certifying that such holder is a U.S. person, that the TIN provided is correct, and that such holder is not subject to backup withholding, as per its instructions. Exempt persons should indicate their exempt status on the Substitute Form W-9 as per its instructions. Each non-U.S. holder is required to complete and return the applicable IRS Form W-8 (W-SBEN, W-SECI or W-SIMY, as applicable), signed under penalties of perjury, certifying the holder's foreign status. These forms are being mailed with the Solicitation Package, and may be obtained from the IRS website (http://www.irs.gov). Holders should consult their tax advisors as to any qualification for exemption from backup withholding, or a lower rate of U.S. withholding under an applicable treaty or exemption, and the procedure for obtaining such exemption.

## DEADLINE AND PROCEDURES FOR OBJECTIONS TO CONFIRMATION OF THE PLAN

PLEASE TAKE FURTHER NOTICE that objections, if any, to confirmation of the Plan (including approval of the releases and waivers provided under the Plan), including any supporting memoranda, must be in writing, must be filed with the Clerk of the United States Bankruptcy Court of the District of Delaware, 3rd Floor, 824 North Market Street, Wilmington, Delaware 19801 together with proof of service, and shall state the name and address of the objector, all grounds for the objection and the amount of the Claim(s) or other Interest(s) held by the objector, and shall provide proposed language to remedy such objections. Any such objection must be filed with the Court and served so that it is actually received by the Court, the following parties, and all other parties requesting or entitled to receive notice in these cases, on or before ▓▓▓▓▓, 2011 at 4:00 p.m. prevailing Eastern Time:

The Debtors: (i) Hunton & Williams LLP, 1445 Ross Ave., Suite 3700, Dallas, TX 75202, attn: Gregory G. Hesse, Tel: (214) 979-3000, Fax: (214) 880-0011, and (ii) Pachulski Stang Ziehl & Jones LLP, North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705, attn: Kathleen Makowski, Tel: (302) 652-4100, Fax: (302) 652-4400;

The Creditors Committee: (i) Arent Fox LLP, 1675 Broadway, New York, NY 10019, attn: Andrew I. Silfen, Tel: (212) 484-3900, Fax: (212) 484-3990., and (ii) Elliott Greenleaf, 1105 Market St., Suite 1700, Wilmington, DE 19801, attn: Rafael X. Zahralddin-Aravena, Tel.: (302) 384-9400, Fax: (302) 384-9399; and

The Office of the United States Trustee: 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, attn: T. Patrick Tinker, Tel.: (302) 573-6491, Fax: (302) 573-6497.

Any objection not filed and served as set forth above will be deemed waived and will not be considered by the Court.

## DEADLINE AND PROCEDURES FOR CLAIMS ESTIMATION MOTIONS

PLEASE TAKE FURTHER NOTICE that if you wish to have your Claim temporarily allowed for voting purposes only, you must serve on the Debtors and file with the Bankruptcy Court a motion for an order pursuant to Bankruptcy Rule 3018(a) (and without prejudice to the rights of the Debtors in any other context) temporarily allowing such Claim for purposes of voting (the "Claims Estimation Motion"). A Claims Estimation Motion must set forth with particularly the amount and classification of which you believe your Claim should be allowed for voting purposes, and the evidence in support of your belief. In respect of any timely-filed Claims Estimation Motion, the Ballot in question shall be counted (a) in the amount established by the Bankruptcy Court in an order entered on or before the Confirmation Hearing or (b) if such an order has not been entered by the Confirmation Hearing and unless the Debtors and you have come to an agreement as to the relief requested in the 3018 Motion, you shall not have a Ballot

counted at all. The Court will schedule a hearing on such motion to be heard at or prior to the Confirmation Hearing. Any such Claims Estimation Motion must be filed with the Court and served so that it is actually received by the Court, the following parties, and all other parties requesting or entitled to receive notice in these cases, on or before ▰▰▰▰▰, **2011 at 4:00 p.m. prevailing Eastern Time**:

The Debtors: (i) Hunton & Williams LLP, 1445 Ross Ave., Suite 3700, Dallas, TX 75202, attn: Gregory G. Hesse, Tel: (214) 979-3000, Fax: (214) 880-0011, and (ii) Pachulski Stang Ziehl & Jones LLP, North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705, attn: Kathleen Makowski, Tel: (302) 652-4100, Fax: (302) 652-4400;

The Creditors Committee: (i) Arent Fox LLP, 1675 Broadway, New York, NY 10019, attn: Andrew I. Silfen, Tel: (212) 484-3900, Fax: (212) 484-3990., and (ii) Elliott Greenleaf, 1105 Market St., Suite 1700, Wilmington, DE 19801, attn: Rafael X. Zahralddin-Aravena, Tel.: (302) 384-9400, Fax: (302) 384-9399; and

The Office of the United States Trustee: 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, attn: T. Patrick Tinker, Tel.: (302) 573-6491, Fax: (302) 573-6497.

PLEASE TAKE FURTHER NOTICE that Any Claims Estimation Motion not filed and served as set forth above will be deemed waived and will not be considered by the Court.

Dated: March ___, 2011.

**PACHULSKI STANG ZIEHL & JONES LLP**

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:  ljones@pszjlaw.com
        joneill@pszjlaw.com
        kmakowski@pszjlaw.com

-and-

**HUNTON & WILLIAMS LLP**

Gregory G. Hesse (Texas Bar No. 09549419)
Lynnette R. Warman (Texas Bar No. 20867940)
Jesse T. Moore (Texas Bar No. 24056001)
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Telephone: (214) 979-3000
Telecopy: (214) 880-0011
Email:  ghesse@hunton.com
        lwarman@hunton.com
        jtmoore@hunton.com

**ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION**