**Andrey Mutchnik**
17, de la Poudrière # 105
Montreal, Quebec, Canada H4G 3J5
Email: andre.mutchnik@hotmail.com

PRO SE

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| In re | Case No. 09-11516 (MFW) |
|---|---|
| **ACCREDITED HOME LENDERS HOLDING CO., et al.** | Chapter 11 |
| Debtors. | **OBJECTION TO DEBTORS' MOTION FOR ORDER (I) APPROVING THE DISCLOSURE STATEMENT; (II) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT THE PLAN; (III) ESTABLISHING DEADLINE AND PROCEDURES FOR FILING OBJECTIONS; (IV) APPROVING PUBLICATION NOTICE REGARDING THE PLAN AND OTHER DEADLINES; AND (V) GRANTING RELATED RELIEF [DOCKET 2445]** |
| | <u>Time and Place of Hearing</u> |
| | Date: March 30, 2011<br>Time: 2:00 pm (EDT) |

-1-

Andrey Mutchnik, a holder of preferred shares of Accredited Mortgage Loan REIT Trust ("REIT"), hereby objects to the adequacy of the information contained in Debtors' Fourth Amended Disclosure Statement With Respect to the Debtors' Second Amended Chapter 11 Plan of Liquidation ("Disclosure Statement")[1].

## 1. Introduction and context of the present Objection

On March 17, 2011, an informal objection was sent to the Counsel for the Debtors (but not filed with the Court), which requested the following information:

*1. The Disclosure Statement should clarify the evolution of the intercompany claim of the REIT over time, with a brief description of each variation of the REIT intercompany (e.g. cash advance by the REIT, dividend by the REIT, repayment by Accredited, etc). In addition, the Disclosure Statement should discuss the Administration and Servicing Agreement between the REIT and Accredited, dated October 1, 2004;*

*2. The Disclosure Statement should discuss the circumstances surrounding the transfer of the REIT from Accredited to Holdco and, in particular, clarify:*

> *a. Whether the promissory note issued by Accredited in the amount of $224.6 million mentioned in paragraph 37 of the REIT Adversary was in consideration of the amounts due to the REIT pursuant to the Administration and Servicing*

---

[1] The disclosure Statement has not been filed yet. Counsel for the Debtors informed me that the Disclosure Statement would be filed on Monday.

*Agreement and, as such, recognized that the amounts due under the Administration and Servicing Agreement constituted valid debt of Accredited. A copy of the above-mentioned promissory note should be annexed;*

*b. More details should be provided regarding the Stock Purchase Agreement mentioned in paragraph 37 of the REIT Adversary pursuant to which Holdco bought from Accredited all of the outstanding common shares of the REIT. A copy of the Stock Purchase Agreement should be annexed. This will allow parties in interest to assess the consideration received by Holdco in exchange for REIT's common shares.*

*3. Regarding AHL Canada, the Disclosure Statement simply states that AHL Canada was transferred from Accredited to Holdco in September 2008 and that it was contributed as capital1. The Disclosure Statement should explain, in detail, the circumstances surrounding the transfer of AHL Canada from Holdco to REIT and annex copies of any agreement pursuant to which AHL Canada was transferred from Accredited to Holdco.*

<u>*I reserve the right to request additional information.*</u>

Since March 17, 2011, several emails and documents were exchanged between Counsel for the Debtors and myself. In addition, a conference call took place on March 21, 2010. From the outset, I wish to acknowledge that Debtors' Counsel was cooperative and made *bona fide* efforts to promptly provide the requested information, and to thank Debtors' Counsel for its cooperation. Nevertheless, certain extremely important issues remain outstanding – hence the present Objection.

## 2. Intercompany claims

Claims between the Debtors and its non-debtor affiliates ("Intercompany claims") are of the utmost importance, as they may determine the distributions that are receivable by the various stakeholders involved. Despite that fact, the Disclosure Statement fails to provide meaningful information with respect to the intercompany claims and their evolution over time, and merely provides that, subject to the other provisions of the Plan, all intercompany claims will essentially be waived[2]. The Disclosure Statement does not, however, provide a meaningful justification for such treatment of intercompany claims.

On March 21, 2011, I received (via email), from Debtors' Counsel Mr. Gregory G. Hesse documents with respect to a Note issued by Accredited that responded to my March 17, 2011 Informal Objection[3], which documents included the Written Consent of the Board of Directors of Accredited Home Lenders, Inc. dated December 31, 2008 ("Written Consent") stating that (emphasis is mine):

> *WHEREAS Holding's assumption of the Company's obligations under the REIT Note would be in consideration of (i) Holding's purchase of the Common Shares, (ii) **Holding's satisfaction of $56,051,718 of indebtedness owed to the Company**, and (iii) a promissory note in the principal amount of $18,275,245 to be executed and delivered by the Company to Holding (the "<u>Company Note</u>");*

---

[2] Disclosure Statement, V.A.4.
[3] The documents related to the December 31, 2008 Note are annexed to the Present Objection.

Thus, the Written Consent disclosed the fact that Holding owed $56,051,718 to Accredited prior to December 31, 2008. **To the best of my knowledge, that fact that has never been disclosed by the Debtors, in their latest version of the Disclosure Statement[4] or otherwise.** Indeed, the latest Disclosure Statement merely states, at IV.D.7:

> *Additionally, as a result of the December 31, 2008, transaction, AHL, Inc. and Holdco made adjustments in the intercompany liabilities between each other.*

The December 31, 2008 transaction appears to me to be a prime candidate for a fraudulent conveyance. Indeed, in exchange for common stock of the REIT (which was way "out of the money" then and still is now), *$56,051,718* of intercompany indebtedness of Holdco to Accredited was allegedly – assuming that the December 31, 2008 transactions were valid in the first place[5] – forgiven by Accredited. And, as if that wasn't enough, Accredited now owed $18,275,245 to Holdco.

Debtors should be in position to determine the relevant inter-company claims over time with relative ease. In the Motion for Order Authorizing (1) Maintenance of Existing Bank Accounts and Business forms, and (2) Continued Use of Existing Cash Management System [Docket 11], Debtors state (paragraph 12, emphasis is mine):

---

[4] Counsel for the Debtors informed me via email on March 25, 2011 that they intend to file the latest version of the Disclosure Statement on Monday, March 28, 2011.

[5] The Disclosure Statement says at IV.D.7: "Holdco assumed AHL, Inc.'s obligation to the REIT under the terms of the promissory note". That statement is questionable at best. Indeed, the Written Consent of the Board of Trustees of Accredited Mortgage Loan REIT Trust ("REIT Written Consent") merely <u>authorized</u> any officer of the REIT to effect further <u>lawful</u> actions to accomplish the purposes outlined in the REIT Written Consent.

However, the Note itself is not signed by any officer of the REIT, with the only signatory of the Note being Greg Strong, Executive Treasurer <u>of Accredited Home Lenders, Inc.</u>

> *The Debtors maintain a complex cash management system, utilizing six (6) different groups of accounts to manage cash flow, make payments, and pay employees.* **Separate sets of accounts are generally maintained for each debtor or non-debtor affiliate, with little interplay or tie-in between the account groups.**

By tracking the cash advances made by various affiliates and by analyzing the books and records of each affiliate, I believe that Debtors should be in a position to paint a fairly accurate portrait of the evolution of intercompany liabilities.

In short, Debtors should, at the very least, provide (with the information going as far back as is practically and reasonably possible) a section with respect to the intercompany liabilities which:
1. Lists the changes in intercompany liabilities;
2. Provides a narrative to explain such changes;
3. Provide supporting documents for such changes (if applicable).

### 3. Lone Star settlement and Brown & Osborne Objections

Objection of Joshua A. Weiss to Third Amended Disclosure Statement with Respect to the Debtors' Second Amended Chapter 11 Plan of Liquidation [Docket 2427] ("Weiss Objection") states the following, at paragraph 4:

> *At this stage of the proceeding, however, the Disclosure Statement should not be approved as proposed, as it does not provide nearly enough information for voting creditors to evaluation the reasonableness of the Lone Star portion of the Plan Settlement and to decide for themselves whether to vote in favor of the Plan and release potentially significant third-party claims.*

I agree with this assessment and join the Weiss Objection on that point. I also agree with paragraph 5 of the Weiss Objection, and, in particular, I believe that the allegations made by Messrs. Brown & Osborn Objections should be addressed by the Debtors.

### 4. Miscellaneous issues

In addition to the issues identified above, I believe that the Disclosure Statement should address several other questions:

1. The Disclosure Statement should discuss in more detail the difference between the Trust Preferred Securities (TruPS), the Junior Subordinated Notes, and the functioning of the Accredited Preferred Securities Trust I (including Common shares and preferred shares of the Trust);

2. The Disclosure Statement should make it clear and explicit whether the subordination provisions of the Junior Notes are being waived as part of the Plan[6];

3. Disclosure Statement should disclose the name and contact information of the present REIT Trustee. The Disclosure Statement should also disclose his qualifications as well as whether the REIT Trustee is a Lone Star employee;

4. The Disclosure Statement should provide a narrative as to what kind of analysis was done by the Ad Hoc Committee of Preferred Shareholders of the Accredited Mortgage Loan REIT Trust with respect to the settlements embodied in the Plan.

---

[6] It is my understanding that this is the case. Furthermore, it appears to me that the Junior Notes are actually being paid ahead of the general unsecured claims of Holdco, and are being paid directly by Lone Star (sections 1.93 and 8.2 (d) (iv) of the Plan).

-7-

The issues outlined above are arguably of lesser importance than those outlined in points 2 and 3. Nevertheless, Debtors' Plan is relatively complex, and I believe that providing the information requested in this point 4 would help the stakeholders to better understand Debtors' Plan.

I remain available to assist Debtors' Counsel in order to resolve the issues outlined in the present Objection in an informal fashion. That said, I reserve the right to request additional information if necessary.

Respectfully submitted on March 28, 2011,

*/s/ A. Mutchnik*

Andrey Mutchnik