**Annex – documents provided by the Debtors' in response to the Informal Objections**

**Accredited Home Lenders-REIT**
**Intercompany transactions - A/C 1900**

**between REIT and AHL Inc**

| | 2004 | 2005 | 2006 | 2007 | 2008 | 1-1-09 to 5-1-09 | 5-2-09 to 10-31-09 |
|---|---|---|---|---|---|---|---|
| Beginning balance | | 15,213,849 | 99,642,119 | 112,419,435 | 191,561,044 | (0) | 5,550 |
| Management fees | (7,176,361) | (25,692,933) | (35,601,636) | (35,604,192) | (26,875,103) | (5,835,542) | |
| Interest charged to AHL | 99,284 | 4,007,833 | 11,734,874 | 11,153,121 | 7,291,112 | | |
| Common dividend paid to AHL | (50,000,000) | (202,700,000) | (211,500,000) | | 0 | | |
| Cash transfers/expenses paid for REIT/other | 72,290,926 | 308,813,369 | 248,144,077 | 103,592,681 | 54,020,756 | 5,829,695 | (9,404) |
| Transfer to Holding Co(A) | | | | | (225,997,810) | | |
| Ending balance | 15,213,849 | 99,642,119 | 112,419,435 | 191,561,044 | (0) | 5,550 | (3,854) |

**between REIT and Holding Co**

| | 2008 | 1-1-09 to 5-1-09 | 5-2-09 to 10-31-09 |
|---|---|---|---|
| Beginning balance | 0 | 225,997,810 | 227,301,080 |
| Transfer to Holding Co as of 12.31.08(A) | 225,997,810 | | |
| Interest charged to Holdings | | 1,303,270 | |
| Common dividend paid to AHL | | | |
| Cash transfers/expenses paid for REIT/other | | | |
| Ending balance | 225,997,810 | 227,301,080 | 227,301,080 |
| Total Receivable | 15,213,849 | 99,642,119 | 112,419,435 |

| | 2007 | 2008 | 1-1-09 to 5-1-09 | 5-2-09 to 10-31-09 |
|---|---|---|---|---|
| Total Receivable | 191,561,044 | 225,997,810 | 227,306,630 | 227,297,226 |

Accredited Home Lenders
REIT Management Fee by Month

| | | | |
|---|---|---|---|
| 30/06/2004 | $343,975.00 | 31/07/2008 | $2,113,106.00 |
| 31/07/2004 | $587,789.80 | 31/08/2008 | $2,187,059.00 |
| 31/08/2004 | $868,273.48 | 30/09/2008 | $2,145,891.00 |
| 30/09/2004 | $860,192.15 | 31/10/2008 | $2,102,002.00 |
| 29/10/2004 | $1,036,459.68 | 30/11/2008 | $2,011,416.00 |
| 30/11/2004 | $1,768,547.00 | 31/12/2008 | $1,993,162.00 |
| 31/12/2004 | $1,711,124.13 | 31/01/2009 | $1,964,635.00 |
| 31/01/2005 | $1,668,351.70 | 28/02/2009 | $1,929,399.00 |
| 28/02/2005 | $1,668,351.70 | 31/03/2009 | $1,941,508.00 |
| 31/03/2005 | $2,009,606.59 | Total | $136,785,767.08 |
| 30/04/2005 | $2,009,606.59 | | |
| 31/05/2005 | $1,889,984.01 | | |
| 30/06/2005 | $2,251,393.77 | | |
| 31/07/2005 | $2,175,625.57 | | |
| 31/08/2005 | $2,097,434.85 | | |
| 30/09/2005 | $2,476,783.78 | | |
| 31/10/2005 | $2,393,743.26 | | |
| 30/11/2005 | $2,318,712.18 | | |
| 31/12/2005 | $2,733,338.75 | | |
| 31/01/2006 | $2,683,039.32 | | |
| 28/02/2006 | $2,590,958.04 | | |
| 31/03/2006 | $2,525,674.86 | | |
| 30/04/2006 | $2,855,286.77 | | |
| 31/05/2006 | $2,776,355.10 | | |
| 30/06/2006 | $2,690,334.00 | | |
| 31/07/2006 | $3,041,354.00 | | |
| 31/08/2006 | $3,032,545.00 | | |
| 30/09/2006 | $2,998,184.00 | | |
| 30/11/2006 | $4,007,253.00 | | |
| 31/12/2006 | $3,483,208.00 | | |
| 31/12/2006 | $2,917,444.00 | | |
| 31/01/2007 | $3,147,977.00 | | |
| 28/02/2007 | $3,379,577.00 | | |
| 31/03/2007 | $3,278,655.00 | | |
| 30/04/2007 | $3,185,839.00 | | |
| 31/05/2007 | $3,106,004.00 | | |
| 30/06/2007 | $3,020,581.00 | | |
| 31/07/2007 | $2,930,330.00 | | |
| 31/08/2007 | $2,841,976.00 | | |
| 30/09/2007 | $2,762,252.00 | | |
| 31/10/2007 | $2,708,993.00 | | |
| 30/11/2007 | $2,648,621.00 | | |
| 31/12/2007 | $2,593,387.00 | | |
| 31/01/2008 | $2,536,130.00 | | |
| 29/02/2008 | $2,348,387.00 | | |
| 31/03/2008 | $2,442,597.00 | | |
| 31/05/2008 | $2,329,506.00 | | |
| 31/05/2008 | $2,390,199.00 | | |
| 30/06/2008 | $2,275,648.00 | | |

## WRITTEN CONSENT OF
## THE BOARD OF TRUSTEES OF
## ACCREDITED MORTGAGE LOAN REIT TRUST

### December 31, 2008

The undersigned, representing all of the members of the board of trustees (the "Board") of Accredited Mortgage Loan REIT Trust, a Maryland real estate investment trust (the "REIT"), acting pursuant to Section 10 of Article III of the Amended and Restated Bylaws of the REIT, hereby consent to, approve and adopt, by written consent, the following resolutions of the REIT, with the same force and effect as if the resolutions had been approved at a meeting of the Board:

### REIT Note and Assignment and Assumption

WHEREAS, Accredited Home Lenders Holding Co., a Delaware corporation ("Holding"), owns 100% of the outstanding common stock, $0.001 par value per share, of Accredited Home Lenders, Inc., a California corporation ("AHL Inc.")

WHEREAS, AHL Inc. owns 100% of the outstanding common shares of beneficial interest, $0.01 par value per share (the "Common Shares"), of the REIT;

WHEREAS, AHL Inc. desires to transfer, assign and convey ownership of the Common Shares to Holding pursuant to a Stock Purchase Agreement, of even date herewith, between AHL Inc. and Holding (the "Purchase Agreement");

WHEREAS, the REIT has made loans to AHL Inc. in the amount of $224,622,003 (the "Loan"), with the Loan being evidenced by accounting entries in the books and records of the REIT and AHL Inc.;

WHEREAS, AHL Inc. and the REIT desire to memorialize the Loan by AHL Inc.'s execution and delivery to the REIT of a Promissory Note (the "REIT Note");

WHEREAS, AHL Inc. desires to assign, and Holding desires to assume, AHL Inc.'s obligations under the REIT Note pursuant to the Purchase Agreement (the "Assignment and Assumption");

WHEREAS, Holding's assumption of the AHL Inc.'s obligations under the REIT Note would be in consideration of (i) Holding's purchase of the Common Shares, (ii) Holding's satisfaction of $56,051,718 of indebtedness owed to AHL Inc., and (iii) a promissory note in the principal amount of $18,275,245 to be executed and delivered by AHL Inc. to Holding (the "Company Note"); and

WHEREAS, the Board deems it advisable and in the best interest of the REIT and its stockholder to memorialize the Loan through the REIT Note and to authorize and approve the Assignment and Assumption.

RESOLVED, that the memorialization of the Loan through the REIT Note be, and it hereby is, authorized, adopted and approved in all respects; and

RESOLVED, that the Assignment and Assumption be, and it hereby is, authorized and approved in all respects.

## General Authorizations

RESOLVED, that any officer of the REIT (the "Appropriate Officers") be, and each (acting alone) hereby is, authorized and empowered, for and on behalf of the REIT and in the name of the REIT, to take such further lawful actions as they may deem necessary or appropriate to effect the intent and accomplish the purposes of the foregoing resolutions; and

RESOLVED, that any and all lawful actions taken by any Appropriate Officer prior to the date of adoption of the foregoing resolutions that would have been authorized by the foregoing resolutions but for the fact that such actions were taken prior to such date be, and each hereby is, ratified, approved, confirmed and adopted as a duly authorized act of the REIT in all respects and for all purposes.

[Signature Page Follows]

IN WITNESS WHEREOF, the undersigned have executed this written consent to be effective as of the date first written above.

_____
MIKE PRUSHAN

_____
MARC LIPSHY

_____
JEFF WALTON

IN WITNESS WHEREOF, the undersigned have executed this written consent to be effective as of the date first written above.

_____
MIKE PRUSHAN


_____
MARC LIPSHY


_____
JEFF WALTON

SIGNATURE PAGE TO
WRITTEN CONSENT OF
THE BOARD OF TRUSTEES OF
ACCREDITED MORTGAGE LOAN REIT TRUST

ADMINISTRATION AND SERVICING AGREEMENT

dated as of October 1, 2004

between

ACCREDITED MORTGAGE LOAN REIT TRUST

and

ACCREDITED HOME LENDERS, INC.

ADMINISTRATION AND SERVICING AGREEMENT dated as of October 1, 2004 (the "Agreement"), between ACCREDITED MORTGAGE LOAN REIT TRUST, a Maryland real estate investment trust, ("REIT") and ACCREDITED HOME LENDERS, INC., a California corporation, as the Administrator (in such capacity, the "Administrator") and as the Servicer (in such capacity, the "Servicer").

## W I T N E S S E T H:

WHEREAS, REIT is a Maryland real estate investment trust (the "REIT") within the meaning of the Maryland REIT Law; and

WHEREAS, REIT has sold its 9.75% Series A Perpetual Cumulative Preferred Shares (the "Preferred Shares") to the public, has participated in securitizations and entered into interim warehouse credit facilities; and

WHEREAS, REIT has entered into certain agreements in connection with the issuance of the Preferred Shares, the participation in securitizations and entering into interim warehouse credit facilities (the "Related Agreements"); and

WHEREAS, pursuant to the Related Agreements, REIT is required to perform certain duties;

WHEREAS, REIT desires to have the Administrator and the Servicer, respectively, perform certain of the duties of REIT referred to in the preceding clause, and to provide such additional services consistent with the terms of this Agreement and the Related Agreements as REIT may from time to time request; and

WHEREAS, the Administrator and the Servicer have the capacity to provide the respective services required hereby and are willing to perform such services for REIT on the terms set forth herein;

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

Section 1.     <u>Representations and Warranties of the Administrator and the Servicer</u>.

The Administrator and the Servicer hereby represents and warrants to REIT that, as of the date of this Agreement:

(i)     It is duly organized, validly existing and in good standing under the laws of its state of incorporation and has the power to own its assets and to transact the business in which it is currently engaged. It is duly qualified to do business as a foreign corporation and is in good standing in each jurisdiction in which the performance of its

obligations hereunder requires such qualification and in which the failure so to qualify could reasonably be expected to have a material adverse effect on the performance of its obligations hereunder.

(ii)     It has the power and authority to make, execute, deliver and perform this Agreement and all of the transactions contemplated under this Agreement, and has taken all necessary corporate action to authorize the execution, delivery and performance of this Agreement, and assuming the due authorization, execution and delivery hereof by the REIT constitutes, or will constitute, the legal, valid and binding obligation of it, enforceable in accordance with its terms, except as enforcement of such terms may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws relating to or affecting the rights of creditors generally, and by general equity principles (regardless of whether such enforcement is considered in a proceeding in equity or at law).

(iii)    It is not required to obtain the consent of any other party or any consent, license, approval or authorization from, or registration or declaration with, any governmental authority, bureau or agency which consent already has not been obtained in connection with the execution, delivery, performance, validity or enforceability of this Agreement, except such as have been obtained.

(iv)    The execution, delivery and performance of this Agreement by it will not violate any provision of any existing law or regulation or any order or decree of any court or its charter or bylaws, or constitute a breach of any mortgage, indenture, contract or other Agreement to which it is a party or by which it may be bound.

(v)     There is no action, suit, proceeding or investigation pending or its knowledge threatened against it which would draw into question the validity of this Agreement or which would be likely to impair materially its ability to perform its obligations hereunder.

Section 2.     Representations and Warranties of REIT.

REIT hereby represents and warrants to the Administrator and the Servicer that, as of the date of this Agreement:

(i)     It is duly organized, validly existing and in good standing under the laws of its state of incorporation and has the power to own its assets and to transact the business in which it is currently engaged. It is duly qualified to do business as a foreign corporation and is in good standing in each jurisdiction in which the performance of its obligations hereunder requires such qualification and in which the failure so to qualify could reasonably be expected to have a material adverse effect on the performance of its obligations hereunder.

(ii)     It has the power and authority to make, execute, deliver and perform this Agreement and all of the transactions contemplated under this Agreement, and has taken all necessary corporate action to authorize the execution, delivery and performance of

2

this Agreement, and assuming the due authorization, execution and delivery hereof by the REIT constitutes, or will constitute, the legal, valid and binding obligation of it, enforceable in accordance with its terms, except as enforcement of such terms may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws relating to or affecting the rights of creditors generally, and by general equity principles (regardless of whether such enforcement is considered in a proceeding in equity or at law).

(iii)    It is not required to obtain the consent of any other party or any consent, license, approval or authorization from, or registration or declaration with, any governmental authority, bureau or agency which consent already has not been obtained in connection with the execution, delivery, performance, validity or enforceability of this Agreement, except such as have been obtained.

(iv)    The execution, delivery and performance of this Agreement by it will not violate any provision of any existing law or regulation or any order or decree of any court or its charter or bylaws, or constitute a breach of any mortgage, indenture, contract or other Agreement to which it is a party or by which it may be bound

(v)    There is no action, suit, proceeding or investigation pending or its knowledge threatened against it which would draw into question the validity of this Agreement or which would be likely to impair materially its ability to perform its obligations hereunder.

Section 3.    Duties of the Administrator.

The Administrator shall perform certain treasury, accounting, tax and other administrative services for REIT as may be needed from time to time under applicable law or the Related Agreements; including without limitation, money and investment management services and portfolio hedging (which will be consistent with the manner in which the Administrator hedges its own portfolio of mortgage loans).

Section 4.    Records.

The Administrator shall maintain appropriate books of account and records with respect to the business operations of REIT and relating to services performed hereunder.

Section 5.    Duties of the Servicer.

(a)    The Servicer shall service all mortgage loans owned by REIT and shall continue to service such mortgage loans after they have been transferred by REIT to the related securitization trust. The Servicer shall service the mortgage loans using the same care as it customarily employs in servicing and administering mortgage loans for its own account, in accordance with accepted mortgage servicing practices of prudent lending institutions. The Servicer will collect and remit principal and interest payments, administer mortgage escrow

3

accounts, submit and pursue insurance claims and initiate and supervise foreclosure proceedings on the mortgage loans it services. The Servicer will also provide accounting and reporting services for such mortgage loans. The Servicer will follow such collection procedures as are customary in the industry, including contacting delinquent borrowers and supervising foreclosures and property disposition in the event of un-remedied defaults. The Servicer may, in its discretion, arrange with a defaulting borrower a schedule for the liquidation of delinquencies. The Servicer may from time to time subcontract all or a portion of its servicing obligations to unrelated third parties. The Servicer will not, in connection with subcontracting any of its servicing obligations, be discharged or relieved in any respect from its servicing obligations.

(b) The Servicer will be required to pay all expenses related to the performance of its duties as servicer. The Servicer will be required to make advances of taxes and required insurance premiums that are not collected from borrowers with respect to any mortgage loan serviced by it, unless it determines that such advances are non-recoverable from the mortgagor, insurance proceeds or other sources with respect to such mortgage loan. If such advances are made, the Servicer generally will be reimbursed on a priority basis out of proceeds related to such mortgage loan. The Servicer also will be entitled to reimbursement for expenses incurred by it in connection with the liquidation of defaulted mortgage loans serviced by it and in connection with the restoration of mortgaged property. The Servicer may institute foreclosure proceedings, exercise any power of sale contained in any mortgage or deed of trust, obtain a deed in lieu of foreclosure or otherwise acquire title to a mortgaged property underlying a mortgage loan by operation of law or otherwise in accordance with its servicing practices.

(c) To the extent that mortgage loans have been securitized by REIT, the servicing of the securitized mortgage loans will be governed by the servicing agreement related to that securitization transaction.

(d) The Servicer will hold all collections on the mortgage loans on behalf of REIT. These collections will be paid by the Servicer to REIT on a quarterly basis, as described below in Section 6(c), subject to the offset provisions thereof.

Section 6. **Payment of Collections and Compensation.**

(a) Compensation of Administrator and Servicer. The Administrator will perform the duties and provide the services called for under Sections 3, and 4. The Servicer will perform the duties and provide the services called for under Section 5. In consideration for the services provided to REIT, the Administrator/Servicer shall be paid a fee equal to 0.50% per annum on the monthly outstanding principal balance of the loans serviced, plus miscellaneous fee income collected from mortgagors, including late payment charges, assumption fees and similar items. Additionally, the Administrator/Servicer shall be entitled to reimbursement for all monies advanced on behalf of REIT.

(b) Frequency of Payment. Subject to paragraph (d) below, the compensation described in this section shall be earned and accrued on a monthly basis. The settlement of the earned compensation shall be done periodically, at the request of either the Administrator/Servicer or REIT.

4

(c) **Offset and Accrual of Interest.** REIT, on the one hand, and the Servicer/Administrator, on the other hand, may offset any balance or amount due from one party to the other under this Agreement or any other contract heretofore or hereafter entered into between such parties. Therefore, on each settlement date, there shall be a single payment payable by REIT to the Servicer/Administrator or by the Servicer/Administrator to REIT (such payment, the "Intercompany Receivable". Interest will accrue on such Intercompany Receivable as it accrues, through the date of payment, calculated on the amount of such Intercompany Receivable outstanding at a per annum rate equal to six-month LIBOR plus 1.0%.

Section 7. Term of Agreement; Resignation and Removal of Administrator or Servicer.

(a) The Administrator or the Servicer may resign its respective duties hereunder by providing REIT with at least 30 days' prior written notice.

(b) REIT may remove the Administrator or the Servicer without cause by providing the Administrator or the Servicer with at least 30 days' prior written notice.

Section 8. Action upon Termination, Resignation or Removal of the Administrator or the Servicer.

Promptly upon the effective date of termination of this Agreement pursuant to Section 7(a) or the resignation or removal of the Administrator or the Servicer pursuant to Section 7(b), the Administrator or the Servicer shall be entitled to be paid all reimbursable expenses accruing to it to the date of such termination, resignation or removal. The Administrator or the Servicer shall forthwith upon such termination pursuant to Section 7(a) deliver to REIT all property and documents of or relating to the Collateral then in the custody of the Administrator or the Servicer and, in the event of the resignation or removal of the Administrator or the Servicer pursuant to Section 7(b), the Administrator or the Servicer shall cooperate with REIT and take all reasonable steps requested to assist REIT in making an orderly transfer of the duties of the Administrator or the Servicer.

Section 9. Effectiveness.

This Agreement, and the obligations of the parties hereunder, shall be effective as of June 1, 2004.

Section 10. Notices.

Any notice, report or other communication given hereunder shall be in writing and addressed as follows:

(a) if to REIT, to

5

Accredited Mortgage Loan REIT Trust
15090 Avenue of Science
San Diego, California 92128
Attention: General Counsel
Facsimile number:     (858) 676-8165
Telephone number:    (858) 676-2100

    (b)    if to the Administrator or to the Servicer, to

Accredited Home Lenders, Inc.
15090 Avenue of Science
San Diego, California 92128
Attention: General Counsel
Facsimile number:     (858) 676-8165
Telephone number:    (858) 676-2100

or to such other address, telecopy number or telephone number as any party shall have provided to the other parties in writing. Any notice required to be in writing hereunder shall be deemed given upon receipt, if such notice is mailed by certified mail, postage prepaid, or hand delivered to the address of such party as provided above and, in the case of notices provided by facsimile transmission (with a copy delivered by overnight courier), upon telephone confirmation of receipt thereof.

Section 11.    Amendments.

This Agreement may be amended from time to time by a written amendment duly executed and delivered by REIT, the Administrator and the Servicer.

Section 12.    Governing Law.

THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

Section 13.    Headings.

The section headings hereof have been inserted for convenience of reference only and shall not be construed to affect the meaning, construction or effect of this Agreement.

Section 14.    Counterparts.

6

This Agreement may be executed in any number of counterparts, each of which when so executed shall together constitute but one and the same agreement.

Section 15.    Severability.

Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

[SIGNATURE PAGE FOLLOWS]

LA1 212460v4

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed and delivered as of the day and year first above written.

ACCREDITED MORTGAGE LOAN REIT TRUST

By: _____
    Name:    James A. Konrath
    Title:    Chief Executive Officer


ACCREDITED HOME LENDERS, INC.,
  as the Servicer and as the Administrator

By: _____
    Name:    David E. Hertzel
    Title:    General Counsel

## WRITTEN CONSENT OF
## THE BOARD OF DIRECTORS OF
## ACCREDITED HOME LENDERS, INC.

### December 31, 2008

The undersigned, representing all of the members of the board of directors (the "Board") of Accredited Home Lenders, Inc., a California corporation (the "Company"), acting pursuant to Section 307(b) of the California Corporations Code, hereby consent to, approve and adopt, by written consent, the following resolutions of the Company, with the same force and effect as if the resolutions had been approved at a meeting of the Board:

### Approval of Purchase Agreement, REIT Note and Company Note

WHEREAS, Accredited Home Lenders Holding Co., a Delaware corporation ("Holding"), owns 100% of the outstanding shares of common stock, $0.001 par value per share, of the Company;

WHEREAS, the Company owns 100% of the outstanding common shares of beneficial interest, $0.01 par value per share (the "Common Shares"), of Accredited Mortgage Loan REIT Trust, a Maryland real estate investment trust (the "REIT");

WHEREAS, the Company desires to sell, transfer, assign and convey ownership of the Common Shares to Holding pursuant to a Stock Purchase Agreement, of even date herewith, between the Company and Holding (the "Purchase Agreement");

WHEREAS, the REIT has made loans to the Company in the amount of $224,622,003 (the "Loan"), with the Loan being evidenced by accounting entries in the books and records of the REIT and the Company;

WHEREAS, the Company and the REIT desire to memorialize the Loan by the Company's execution and delivery to the REIT of a promissory note (the "REIT Note");

WHEREAS, the Company desires to assign its obligations under the REIT Note to Holding pursuant to the Purchase Agreement;

WHEREAS, Holding's assumption of the Company's obligations under the REIT Note would be in consideration of (i) Holding's purchase of the Common Shares, (ii) Holding's satisfaction of $56,051,718 of indebtedness owed to the Company, and (iii) a promissory note in the principal amount of $18,275,245 to be executed and delivered by the Company to Holding (the "Company Note"); and

WHEREAS, the Board deems it advisable and in the best interest of the Company and its stockholder to (i) execute and deliver to the REIT the REIT Note, (ii) sell the Common Shares and assign the Company's obligations under the REIT Note pursuant to the Purchase Agreement, and (iii) execute and deliver to Holding the Company Note pursuant to the Purchase Agreement.

RESOLVED, that the REIT Note, Purchase Agreement, and the Company Note be, and they hereby are, authorized, adopted and approved in all respects; and

RESOLVED, that any officer of the Company (the "Appropriate Officers") be, and each (acting alone) hereby is, authorized and empowered, for and on behalf of the Company, to (i) execute and deliver to the REIT the REIT Note, (ii) execute, deliver to Holding and perform the Purchase Agreement, and (iii) execute and deliver to Holding the Company Note, each in any form consistent with the material terms reviewed by the Board, with such changes therein as any of them may deem necessary, appropriate or advisable and in the best interest of the Company and its stockholder, the execution of the REIT Note, Purchase Agreement, and the Company Note with any such changes to be conclusive evidence that the Appropriate Officers deemed those changes to meet that standard.

## General Authorizations

RESOLVED, that the Appropriate Officers be, and each (acting alone) hereby is, authorized and empowered, for and on behalf of the Company and in the name of the Company, to take such further lawful actions as they may deem necessary or appropriate to effect the intent and accomplish the purposes of the foregoing resolutions; and

RESOLVED, that any and all lawful actions taken by any Appropriate Officer prior to the date of adoption of the foregoing resolutions that would have been authorized by the foregoing resolutions but for the fact that such actions were taken prior to such date be, and each hereby is, ratified, approved, confirmed and adopted as a duly authorized act of the Company in all respects and for all purposes.

[Signature Page Follows]

IN WITNESS WHEREOF, the undersigned have executed this written consent to be effective as of the date first written above.

_____
MIKE PRUSHAN

_____
MARC LIPSHY

_____
JEFF WALTON

IN WITNESS WHEREOF, the undersigned have executed this written consent to be effective as of the date first written above.

_____
MIKE PRUSHAN

_____
MARC LIPSHY

_____
JEFF WALTON

## WRITTEN CONSENT OF
## THE BOARD OF DIRECTORS OF
## ACCREDITED HOME LENDERS HOLDING CO.

### December 31, 2008

The undersigned, representing all of the members of the board of directors (the "Board") of Accredited Home Lenders Holding Co., a Delaware corporation (the "Company"), acting pursuant to Section 141(f) of the Delaware General Corporation Law, hereby consent to, approve and adopt, by written consent, the following resolutions of the Company, with the same force and effect as if the resolutions had been approved at a meeting of the Board:

### Transfer of REIT Common Shares

WHEREAS, Accredited Home Lenders, Inc., a California corporation and wholly owned subsidiary of the Company ("AHL Inc."), owns 100% of the outstanding common shares of beneficial interest, $0.01 par value per share (the "Common Shares"), of Accredited Mortgage Loan REIT Trust, a Maryland real estate investment trust (the "REIT");

WHEREAS, AHL Inc. desires to sell, transfer, assign and convey ownership of the Common Shares to the Company pursuant to a Stock Purchase Agreement, of even date herewith, between AHL Inc. and the Company (the "Purchase Agreement");

WHEREAS, the REIT has made loans to AHL Inc. in the amount of $224,622,003 (the "Loan"), with the Loan being evidenced by accounting entries in the books and records of the REIT and AHL Inc.;

WHEREAS, AHL Inc. and the REIT have memorialized the Loan by AHL Inc.'s execution and delivery to the REIT of a promissory note (the "REIT Note");

WHEREAS, AHL Inc. desires to assign its obligations under the REIT Note to the Company pursuant to the Purchase Agreement;

WHEREAS, the Company's assumption of AHL Inc.'s obligations under the REIT Note would be in consideration of (i) the Company's purchase of the Common Shares, (ii) the Company's satisfaction of $56,051,718 owed to AHL Inc., and (iii) a promissory note in the principal amount of $18,275,245 to be executed and delivered by AHL Inc. to the Company (the "Company Note"); and

WHEREAS, the Board deems it advisable and in the best interest of the Company and its stockholder to purchase the Common Shares and assume AHL Inc.'s obligations under the REIT Note pursuant to the Purchase Agreement.

RESOLVED, that the Purchase Agreement be, and it hereby is, authorized, adopted and approved in all respects; and

RESOLVED, that any officer of the Company (the "Appropriate Officers") be, and each (acting alone) hereby is, authorized and empowered, for and on behalf of the Company, to

execute, deliver to AHL Inc. and perform the Purchase Agreement, in any form consistent with the material terms reviewed by the Board, with such changes therein as any of them may deem necessary, appropriate or advisable and in the best interest of the Company and its stockholder, the execution of the Purchase Agreement with any such changes to be conclusive evidence that the Appropriate Officers deemed those changes to meet that standard.

## General Authorizations

RESOLVED, that the Appropriate Officers be, and each (acting alone) hereby is, authorized and empowered, for and on behalf of the Company and in the name of the Company, to take such further lawful actions as they may deem necessary or appropriate to effect the intent and accomplish the purposes of the foregoing resolutions; and

RESOLVED, that any and all lawful actions taken by any Appropriate Officer prior to the date of adoption of the foregoing resolutions that would have been authorized by the foregoing resolutions but for the fact that such actions were taken prior to such date be, and each hereby is, ratified, approved, confirmed and adopted as a duly authorized act of the Company in all respects and for all purposes.

[Signature Page Follows]

IN WITNESS WHEREOF, the undersigned have executed this written consent to be effective as of the date first written above.

_____
MIKE PRUSHAN

_____
MARC LIPSHY

## PROMISSORY NOTE

$224,622,003.00               DALLAS, TEXAS               December 31, 2008

FOR VALUE RECEIVED, Accredited Home Lenders, Inc., a California corporation ("**Maker**" or "**AHL**"), promises to pay to the order of Accredited Mortgage Loan REIT Trust, a Maryland real estate investment trust ("**Payee**"), the principal sum of TWO HUNDRED TWENTY FOUR MILLION, SIX HUNDRED TWENTY TWO THOUSAND, THREE DOLLARS ($224,622,003.00), without interest thereon, payable on or before December 31, 2019.

All sums called for, payable or to be paid hereunder shall be paid in lawful money of the United States of America that at the time of payment is legal tender for the payment of public and private debts therein.

If default is made in the payment of this Note at maturity or the same is placed in the hands of an attorney for collection, or if suit is filed hereon, or proceedings are had in bankruptcy, probate, receivership, reorganization, or other judicial proceedings for the establishment of collection of any amount called for hereunder, or any amount payable or to be payable hereunder is collected through any such proceedings, Maker agrees to pay the holder of this Note a reasonable amount as attorneys or collection fees.

Maker hereby waives presentment and demand for payment, notice of intent to accelerate maturity, notice of acceleration of maturity, protest or notice of protest and non-payment, bringing of suit and diligence in taking any action to collect any sums owing hereunder and in proceeding against any rights and properties at any time securing payment hereof, and agrees that its liability on this Note shall not be affected by any release of or change in any security for the payment of this Note.

This Note shall be governed by, and construed in accordance with, the laws of the State of Texas.

By its acceptance of this Note, Payee, or any other holder of this Note, hereby consents to the assignment by Maker to, and the assumption by, Accredited Home Lenders Holding Co., a Delaware corporation ("**Holding**"), of all of Maker's obligations and duties of every nature whatsoever hereunder, whereupon Holding shall be deemed to be Maker for all purposes hereunder. Upon any such assignment and assumption, AHL shall have no further, and shall be released from, all liabilities, obligations and/or duties hereunder.

1

EXECUTED as of the date and year first above written.

ACCREDITED HOME LENDERS, INC.

By: _____
Greg Strong
Executive Treasurer

## STOCK PURCHASE AGREEMENT

This STOCK PURCHASE AGREEMENT, dated December 31, 2008 (this "Agreement"), is made and entered into between Accredited Home Lenders, Inc., a California corporation ("Seller"), and Accredited Home Lenders Holding Co., a Delaware corporation and the owner of all of the outstanding capital stock of Seller ("Buyer").

### RECITALS

A.      Seller owns all of the outstanding common shares of beneficial interest, $0.01 par value per share (the "Shares"), of Accredited Mortgage Loan REIT Trust, a Maryland real estate investment trust (the "REIT").

B.      Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, the Shares upon the terms and subject to the conditions set forth herein.

C.      The REIT has made loans to Seller in the principal amount of $224,622,003 (collectively, the "REIT Loan"), with the REIT Loan being evidenced by accounting entries in the books and records of the REIT and Seller.

D.      Seller and the REIT have memorialized the REIT Loan by Seller's execution and delivery to the REIT of a promissory note evidencing the REIT Loan (the "REIT Note").

E.      Seller has made loans to Buyer in the principal amount of $56,051,718 (collectively, the "Buyer Loans"), with the Buyer Loans being evidenced by accounting entries in the books and records of Buyer and Seller.

F.      Seller desires to assign to Buyer, and Buyer desires to assume from Seller, Seller's obligations under the REIT Note as consideration for the Shares, repayment of the Buyer Loans and Seller's execution and delivery to Buyer of a promissory note, in the form attached hereto as Exhibit A, in the principal amount of $18,275,245 (the "Seller Note").

### AGREEMENTS

NOW, THEREFORE, in consideration of the respective covenants, agreements and conditions hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

### ARTICLE 1

1.1      Purchase and Sale of the Shares.  Upon the terms and subject to the conditions set forth in this Agreement, Seller hereby sells to Buyer, and Buyer hereby purchases from Seller, the Shares, free and clear of all liens, security interests, claims, charges, rights of another, defects in title and encumbrances of any kind or character, in consideration for Buyer's assumption of $150,295,040 in principal amount of the REIT Note.

1.2     Satisfaction of Indebtedness.  Upon the terms and subject to the conditions set forth in this Agreement, Buyer hereby repays the Buyer Loans to Seller by Buyer's assumption of $56,051,718 in principal amount of the REIT Note.

1.3     Delivery of Seller Note.  Upon the terms and subject to the conditions set forth in this Agreement, Buyer hereby assumes $18,275,245 in principal amount of the REIT Note in consideration of Seller's execution and delivery to Buyer of the Seller Note.

1.4     Assignment and Assumption.  Buyer hereby agrees to assume and be bound by the REIT Note and to be the Maker thereunder and further agrees that Seller shall have no further, and shall be released from, all liabilities, obligations and/or duties thereunder.

ARTICLE 2

2.1     Additional Documents.  Buyer and Seller each hereby agree to execute and deliver any and all additional documents that each may reasonably request in order to more fully effect the agreements set forth in this Agreement.

2.1     Entire Agreement.  This Agreement (which terms shall be deemed to include the other certificates, documents and instruments delivered hereunder) constitutes the entire agreement of the parties hereto and supersedes all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof.

2.2     Governing Law; Choice of Forum.  THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS. ANY SUIT OR PROCEEDING BROUGHT HEREUNDER SHALL BE SUBJECT TO THE EXCLUSIVE JURISDICTION OF THE FEDERAL OR STATE COURTS LOCATED IN TEXAS.  The parties hereto irrevocably submit to the jurisdiction of any state or federal court in Texas with respect to any action or proceeding arising out of or relating to this Agreement.

2.3     Counterparts.  This Agreement may be executed and delivered (including by facsimile transmission) in one or two counterparts, both of which shall be considered one and the same agreement and shall become effective when one or two counterparts have been signed by each of the parties and delivered to the other party, it being understood that both parties need not sign the same counterpart.

2.4     Assignment; Amendment.  Neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by either of Seller or Buyer, whether by operation of law or otherwise without the prior written consent of the other party hereto. No amendment, waiver of compliance with any provision or condition hereof or consent pursuant to this Agreement shall be effective unless evidenced by an instrument in writing signed by the party against whom enforcement of any waiver, amendment or consent is sought.

2.5     Severability.  Buyer and Seller agree that if one or more provisions contained in this Agreement shall be deemed or held to be invalid, illegal or unenforceable in any respect under any applicable law, this Agreement shall be construed with the invalid,

illegal or unenforceable provision deleted, and the validity, legality and enforceability of the remaining provisions contained herein shall not be affected or impaired thereby.

[Signature Page Follows]

IN WITNESS WHEREOF, the undersigned have executed this Agreement to be effective as of the date first written above.

**Buyer:**

ACCREDITED HOME LENDERS HOLDING CO.

By: _____
    Greg Strong
    Executive Treasurer

**Seller:**

ACCREDITED HOME LENDERS, INC.

By: _____
    Greg Strong
    Executive Treasurer

## Exhibit A

[See Attached]

# ACCREDITED HOME LENDERS HOLDING CO.

## UNANIMOUS WRITTEN CONSENT
## OF
## THE BOARD OF DIRECTORS
## IN LIEU OF MEETING

The undersigned, being all of the members of the Board of Directors (the "Board") of Accredited Home Lenders Holding Co., a Delaware corporation (the "Corporation"), do hereby consent in writing, in accordance with Section 141(f) of the Delaware General Corporation Law and Article 2, Section 8 of the Corporation's By-Laws, to the adoption of the following resolutions as the duly adopted resolutions of the Board of Directors, said resolutions to be and read as follows:

WHEREAS, the Corporation owns one hundred percent (100%) of the ownership interst in Accredited Home Lenders Canada, Inc., a corporation duly incorporated and existing under the laws of British Columbia ("AHLCI"); and

WHEREAS, Accredited Home Lenders, Inc, a California corporation ("AHL Inc.") is a wholly-owned subsidiary of Corporation; and

WHEREAS, the Corporation desires to contribute all of its ownership interests in AHLCI to AHL Inc. (the "Contribution"); and

WHEREAS, as part of and in order to effectuate the Contribution, the Board desires to enter into a Contribution Agreement with AHL Inc. to be effective September 30, 2008 (the "Contribution Agreement") under which the Corporation will transfer 35,000,001 common shares of AHLCI to AHL Inc.

IT IS THEREFORE RESOLVED, that the Contribution Agreement, in the form presented to the Board of the Corporation and annexed hereto as Exhibit A; and the transactions provided for therein shall be, and they are, hereby approved by the Board as being in the best interests of the Corporation; and be it further

RESOLVED that the officers of the Corporation be, and they hereby are, authorized and directed to take or cause to be taken all such further actions and to execute and deliver or cause to be executed and delivered the Contribution Agreement and any other agreement, certificate, instrument and document in the name and on behalf of the Corporation, as in their judgment shall be necessary or advisable in order to carry out fully the intent and purposes of the foregoing resolution; and be it further

RESOLVED that any and all such actions heretofore taken and any and all documents, agreements, instruments, certificates or instruments heretofore executed and delivered or filed and recorded, as the case may be, on behalf of the Corporation, by the officers of the Corporation, in order to carry into effect the purposes and intent of the foregoing resolutions or

the transactions contemplated therein or thereby are hereby ratified, confirmed, adopted and approved in all respects.

RESOLVED, that the proper officers of the Corporation and its subsidiaries are hereby authorized to execute and deliver all such agreements, consents, documents, instruments and certificates, and to take all such other actions and do all things, including without limitation any regulatory filings, filings and applications, as they deem necessary, convenient or appropriate in connection with the transactions contemplated by or in furtherance of these resolutions or the intent thereof, the authority therefore to be conclusively evidenced by such execution or the taking of such action.

This unanimous written consent may be executed in separate counterparts, each of which when so executed shall be an original, but all counterparts shall together constitute one and the same document, and all signatures need not appear on any one counterpart. It is directed that this unanimous written consent be filed with the minutes of proceedings of the Board of Directors.

IN WITNESS WHEREOF, the undersigned have executed this unanimous written consent as of the 30ᵗʰ day of Sept, 2008.

Mike Proshan, Director

Marc Lipshy, Director

# CONTRIBUTION AGREEMENT

This Contribution Agreement (the "Agreement") is made and entered into effective as of September 30, 2008 (the "Effective Date"), by and between Accredited Home Lenders Holding Co., a Delaware corporation ("Parent"), and Accredited Home Lenders, Inc. a California corporation ("Operating Subsidiary").

## RECITALS

WHEREAS, Parent is the owner of all the issued and outstanding shares of capital stock (the "Shares") and certain assets and liabilities ("Assets") of Accredited Home Lenders Canada, Inc., a corporation duly incorporated an existing under the laws of British Columbia ("AHLCI");

WHEREAS, Parent desires to make a capital contribution of the Shares and the Assets to Operating Subsidiary under the terms and conditions set forth herein;

WHEREAS, the total adjusted tax basis of the assets transferred hereunder exceeds the liabilities assumed; and

WHEREAS, Parent owns all of the issued and outstanding shares of capital stock of Operating Subsidiary.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the parties to this Agreement hereto agree as follows:

## AGREEMENT

1. <u>Capital Contribution</u>. Parent hereby transfers all of its right, title and interest in the Shares and Assets to Operating Subsidiary as of the Effective Date. The Parent shall deliver a duly executed stock transfer together with the original stock certificates of AHLCI to Operating Subsidiary to reflect Operating Subsidiary's ownership of the Shares. As soon as practical after the Effective Date, AHLCI shall issue a new share certificate to Operating Subsidiary. Parent shall execute and file any further documentation as may be required to reflect the transfer of the Assets to Operating Subsidiary on the Effective Date.

2. <u>Tax Consequences of Transaction</u>. The parties acknowledge and agree that the transfer of the Shares and Assets to the Capital of Operating Subsidiary as described herein is to occur as of the Effective Date and is intended to comply with the provisions of Internal Revenue Code Section 351(a).

3. <u>Amendment</u>. No amendment or modification of the terms or conditions of this Agreement shall be valid unless in writing and signed by all the parties hereto.

4. <u>Necessary Acts</u>. Each party to this Agreement agrees to perform any further acts and to execute and deliver any further documents that may be reasonably necessary to carry out the provisions of this Agreement.

5.      Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of California.

6.      Counterpart Execution.  This Agreement may be executed by facsimile and in counterparts which shall constitute one Agreement, and shall be equivalent to a signed original for all purposes.


IN WITNESS WHEREOF, the parties have executed this Agreement to be effective as of the Effective Date.


ACCREDITED HOME LENDERS HOLDING CO.

BY: _____
ITS: _____

ACCREDITED HOME LENDERS, INC.

BY: _____
ITS: _____

## ACCREDITED HOME LENDERS CANADA, INC.

The undersigned, being all the directors of ACCREDITED HOME LENDERS CANADA, INC., hereby sign the following resolution:

<u>TRANSFER OF SHARES</u>

RESOLVED that the following share transfer is approved:

| <u>Transferor</u> | <u>Transferee</u> | <u>No. of Common Shares</u> |
|---|---|---|
| Accredited Home Lenders Holding Co. | Accredited Home Lenders, Inc. | 35,000,001 |

DATED as of September 30, 2008.

_____
Jeffrey N. Walton

_____
Mark Tamminga

NUMBER OF SHARES _____ 35,000,001

CERTIFICATE NUMBER _____ 7

CLASS _____ Common

DATE OF ISSUE _____ September 30, 2008

CORPORATION _____ ACCREDITED HOME LENDERS CANADA, INC.

REGISTERED HOLDER _____ Accredited Home Lenders, Inc.

TRANSFER (ALLOTMENT) FROM
Transfer from Accredited Home Lenders
Holding Co. (Cert. 5 and 6)

CERTIFICATE RECEIVED

DATE _____ , 20 _____

SIGNATURE _____

---

7

Share Certificate
Number

Common

Class of Shares

35,000,001

Number of shares

THIS CERTIFIES THAT   Accredited Home Lenders, Inc.

is the registered holder of the above described fully paid shares in the capital of

# ACCREDITED HOME LENDERS CANADA, INC.

The class of shares that this certificate represents has rights, privileges, restrictions or conditions attached thereto and the Corporation will furnish a full copy thereof, on demand and without charge.

Incorporated under the "Canada Business Corporations Act"

IN WITNESS WHEREOF the Corporation has caused this Certificate to be signed by its duly authorized officer(s) this 30th day of   September   , 2008 .

Title:   President

# SHARE TRANSFER

FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfers unto Accredited Home Lenders, Inc., 35,000,001 Common Shares registered in the name of the undersigned in the capital stock of ACCREDITED HOME LENDERS CANADA, INC. represented by share certificate number 7.

DATED as of September 30, 2008.

ACCREDITED HOME LENDERS HOLDING CO.

Per: _____

Name:

Title: