# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ACCREDITED HOME LENDERS | § | Case No. 09-11516 (MFW) |
| HOLDING CO., et al. | § | |
| | § | |
| Debtors.[1] | § | JOINTLY ADMINISTERED |

## DEBTORS' ~~SECOND~~THIRD AMENDED CHAPTER 11 PLAN OF LIQUIDATION

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

**HUNTON & WILLIAMS LLP**
Gregory G. Hesse
Lynnette R. Warman
Jesse T. Moore
Caroline R. Penninck
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Telephone: (214) 979-3000
Telecopy: (214) 880-0011

ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Accredited Home Lenders Holding Co., a Delaware corporation (9482), Accredited Home Lenders, Inc., a California corporation (6859), Vendor Management Services, LLC d/b/a Inzura Settlement Services, a Pennsylvania limited liability company (8047), Inzura Insurance Services, Inc., a Delaware corporation (7089), and Windsor Management Co., d/b/a AHL Foreclosure Services Co., a California corporation (4056). The address for all Debtors is 9915 Mira Mesa Blvd., Ste. ~~100.~~**120.** San Diego, CA 92131. The bankruptcy cases for these debtors and debtors-in-possession are jointly administered under the bankruptcy case and style referenced above.

# TABLE OF CONTENTS

1. DEFINITIONS ....................................................................................................................8
   1.1. Accredited Preferred Securities Trust I ....................................................................8
   1.2. Administrative Claim ................................................................................................8
   1.3. Administrative Claim Bar Date .................................................................................8
   1.4. Affiliate .....................................................................................................................8
   1.5. AHL ...........................................................................................................................8
   1.6. AHL Canada ..............................................................................................................8
   1.7. Allowed Administrative Claim ..................................................................................8
   1.8. Allowed .................................................................................................................~~8~~**9**
   1.9. Amended 2008 Tax Return .........................................................................................9
   1.10. Assets .........................................................................................................................9
   1.11. Avoidance Actions .....................................................................................................9
   1.12. Ballot .........................................................................................................................9
   1.13. Bankruptcy Code ........................................................................................................9
   1.14. Bankruptcy Court .......................................................................................................9
   1.15. Bankruptcy Proceeding ..............................................................................................9
   1.16. Bankruptcy Rules .......................................................................................................9
   1.17. Bar Date .................................................................................................................~~9~~**10**
   1.18. Bar Date Order .......................................................................................................~~9~~**10**
   1.19. Business Day ............................................................................................................10
   1.20. Canadian Equity .......................................................................................................10
   1.21. Cash ..........................................................................................................................10
   1.22. Causes of Action .......................................................................................................10
   1.23. ~~Claim~~**Citigroup** ..........................................................................................................10
   1.24. Claim ~~Holder~~ ..........................................................................................................10
   1.25. Claim **Holder** ........................................................................................................**10**
   **1.26. Claim** Register ........................................................................................................10
   ~~1.26. Class~~ ........................................................................................................................10
   1.27. ~~Committee~~**Class** ...................................................................................................10
   1.28. Committee **11**
   **1.29. Committee** Counsel ..................................................................................................~~10~~
   ~~1.29. Confirmation Date~~ ...................................................................................................11
   1.30. Confirmation ~~Order~~**Date** .......................................................................................11
   1.31. ~~Consolidated Debtors~~**Confirmation Order** .........................................................11
   1.32. Consolidated Debtors ~~Assets~~ .................................................................................11
   1.33. Consolidated Debtors ~~Convenience Claim~~**Assets** .................................................11
   1.34. Consolidated Debtors Convenience ~~Class Election~~**Claim** .....................................11
   1.35. Consolidated ~~Holdco~~**Debtors Convenience Class Election** ................................11
   1.36. Consolidated ~~Holdco Assets~~ .......................................~~11~~**Debtors Professional Fee Claim**          **12**
   1.37. Consolidated Holdco ~~Distributable Cash~~ ...............................................................12
   1.38. Consolidated Holdco ~~Convenience Claim~~**Assets** .................................................12
   1.39. Consolidated Holdco ~~Convenience Class Election~~**Distributable Cash** ................12
   1.40. Consolidated Holdco ~~Plan Administration Expenses~~**Convenience Claim** ...........12
   1.41. Consolidated Holdco ~~Professional Fee Claim Payment~~**Convenience Class Election** ....................................................................................................................12

1.42. Consolidated Holdco ~~Reserves~~ .....................~~13~~**Plan Administration Expenses 12**

1.43. Consolidated Holdco ~~Residual Assets~~**Professional Fee Claim Payment**............13

1.44. ~~Creditor~~**Consolidated Holdco Reserves** .................................................**13**

1.45. ~~Creditor Release~~**Consolidated Holdco Residual Assets** .....................................13

1.46. **Creditor** ............................................................................................................**13**

1.47. **Creditor Release** .............................................................................................**13**

1.48. CRO Expenses ......................................................................................................13

~~1.47.~~**1.49.** ......................................................................................Cure Claim     13

~~1.48.~~**1.50.** ......................................................................................D&O Policies     13

~~1.49.~~**1.51.** ................................................................................................ Debtor     ~~13~~**14**

~~1.50.~~**1.52.** ....................................................Deferred Compensation Settlement Proceeds     14

~~1.51.~~**1.53.** ..................................................................................... Disclosure Statement     14

**1.54. Disbursing Agent** ..........................................................................................**14**

~~1.52.~~**1.55.** .....................................................................Disclosure Statement Approval Date     14

~~1.53.~~**1.56.** ....................................................................................... Disputed Claim     14

1.54. ~~Distribution~~ .....................................................................................................14

1.55. ~~Distribution Date~~ ..............................................................................................14

1.56. ~~Distribution Date Balance~~ .................................................................................14

1.57. Distribution ~~Record Date~~ ................................................................................14

1.58. ~~Effective~~**Distribution** Date ...........................................................................14

1.59. ~~Effective~~**Distribution** Date Balance ..............................................................14

1.60. ~~Effective Date~~ Distribution **Record Date** .......................................................14

1.61. ~~Entity~~**Effective Date** ...................................................................................14

1.62. ~~Estate~~**Effective Date Balance** ......................................................................14

1.63. ~~Final Decree~~ .....................................................~~15~~**Effective Date Distribution**     **14**

1.64. ~~Final Distribution~~**Entity** .............................................................................15

1.65. ~~Final Order~~**Estate** .......................................................................................15

1.66. ~~Finally Determined~~**Final Decree** .................................................................15

1.67. ~~Holdco~~**Final Distribution** ...........................................................................15

1.68. ~~Holder~~**Final Order** .....................................................................................15

1.69. **Finally Determined** ........................................................................................**15**

1.70. **Holdco** ...........................................................................................................**15**

1.71. **Holder** ...........................................................................................................**15**

1.72. Initial Deposit ...................................................................................................15

~~1.70.~~**1.73.** .......................................................................................... Injunction     15

~~1.71.~~**1.74.** ................................................................................Intercompany Claims     15

~~1.72.~~**1.75.** ...............................................................................................Interest     15

~~1.73.~~**1.76.** .............................................................................. Interim Distribution     ~~15~~**16**

~~1.74.~~**1.77.** ................................................................................IRS Priority Tax Claims     16

~~1.75.~~**1.78.** .....................................................................................Late Filed Claims     16

~~1.76.~~**1.79.** ...................................................................................Lien or Liens     16

1.77. ~~Liquidating Trust~~ ............................................................................................16

1.78. ~~Liquidating Trust Account~~ ...............................................................................16

1.79. ~~Liquidating Trust Advisory Board~~ ...................................................................16

1.80. Liquidating Trust ~~Agreement~~ ........................................................................16

1.81. Liquidating Trust ~~Assets~~**Account** ...............................................................16

1.82.     Liquidating Trust ~~Expenses~~**Advisory Board** ........................................16

1.83.     Liquidating Trust ~~Professionals~~............................................~~17~~**Agreement**     **16**

1.84.     Liquidating Trust ~~Reserve~~.....................................................~~17~~**Assets**     **16**

1.85.     Liquidating Trust ~~Residual Assets~~**Expenses** .......................................17

1.86.     Liquidating ~~Trustee~~**Trust Professionals** ..............................................17

1.87.     ~~Lone Star Advance~~**Liquidating Trust Reserve** ......................................17

1.88.     ~~Lone Star Consolidated Debtors Settlement Payment~~**Liquidating Trust Residual Assets** ..............................................................17

1.89.     ~~Lone Star Creditor Release Settlement Payment~~**Liquidating Trustee**.................17

1.90.     Lone Star ~~Entities~~**Advance** ...............................................................17

1.91.     Lone Star ~~Proofs of Claim ...........~~ ~~18~~**Consolidated Debtors Settlement Payment**     **17**

1.92.     Lone Star ~~Releasees ...............~~ ~~18~~**Creditor Release Settlement Payment**     **17**

1.93.     Lone Star ~~Trust Preferred Settlement Payment~~**Entities** ........................................18

**1.94.**     **Lone Star Proofs of Claim**........................................................**18**

**1.95.**     **Lone Star Releasees**.................................................................**18**

**1.96.**     **Lone Star Trust Preferred Settlement Payment**.......................**18**

**1.97.**     Net Proceeds .................................................................................18

~~1.95.~~**1.98.**     .............................................................Non-Debtor Subsidiary     18

~~1.96.~~**1.99.**     ..............................................Officer and Director Causes of Action     18

~~1.97.~~**1.100.**     .................................................................................Person     ~~18~~**19**

~~1.98.~~**1.101.**     ........................................................................Petition Date     ~~18~~**19**

~~1.99.~~**1.102.**     ...................................................................................... Plan     ~~18~~**19**

~~1.100.~~**1.103.**     ..............................................................Plan Administrator     19

~~1.101.~~**1.104.**     ........................Plan Administrator Retention Agreement     19

~~1.102.~~**1.105.**     ...........................................................Plan Supplement     19

~~1.103.~~**1.106.**     ............................................ Plan Supplement Filing Date     19

~~1.104.~~**1.107.**     .....................Plan Support Agreement and Term Sheet     19

~~1.105.~~**1.108.**     ....................................................................Priority Claim     19

~~1.106.~~**1.109.**     .............................................................. Priority Tax Claim     19

~~1.107.~~**1.110.**     ...............................................................................Privilege     19

~~1.108.~~     ~~Proceeds~~..........................................................................19

~~1.109.~~     ~~Professionals~~...................................................................19

~~1.110.~~     ~~Professional Fee Claim~~.................................................19

1.111.     ~~Professional Fee Claim Bar Date~~.................................~~20~~**Pro Rata Share**     **19**

1.112.     ~~Property~~**Proceeds** ...................................................................20

1.113.     ~~Pro Rata Share~~**Professionals**...................................................20

1.114.     ~~Receivables~~**Professional Fee Claim** ......................................20

1.115.     ~~REIT~~**Professional Fee Claim Bar Date** ................................20

1.116.     ~~REIT Adversary~~**Property**......................................................20

1.117.     ~~REIT Committee~~**Receivables** ................................................20

1.118.     REIT ~~First Distribution~~.........................................................20

1.119.     REIT ~~Junior Claim~~**Adversary** ...............................................20

1.120.     REIT ~~Preferred Securities~~**Committee** ...................................20

1.121.     REIT ~~Preferred Security Holder~~**First Distribution** ..............20

1.122.     REIT **Junior Claim**.................................................................**20**

**1.123.**     **REIT Preferred Securities** ..................................................**20**

**1.124. REIT Preferred Security Holder** ..................................................................**20**

**1.125. REIT** ~~Preferred Holders' Subordinated Guaranty Claims~~..........................20

~~1.123. Rejection Claim~~ .......................................................................................20

~~1.124. Rejection Claim Bar Date~~ ..........................................................................20

~~1.125. Schedules~~ .................................................................................................21

1.126. ~~Secured~~**Rejection** Claim ...........................................................................21

1.127. ~~Subordinated~~**Rejection** Claim **Bar Date** ...................................................21

1.128. **Schedules**.................................................................................................**21**

**1.129. Secured Claim** ........................................................................................**21**

**1.130. Subordinated Claim** ...............................................................................**21**

**1.131.** Subsequent Distributions ........................................................................21

~~1.129.~~**1.132.**..........................................................................................Tax Code     21

~~1.130.~~**1.133.**.......................................................................................Tax Refunds     21

~~1.131.~~**1.134.**...................................................................................Tentative Refund     21

~~1.132.~~**1.135.**.....................................................................................Trust Declaration     21

~~1.133.~~**1.136.**.........................................................Trust Preferred Adversary Proceeding     21

~~1.134.~~**1.137.**......................................................Trust Preferred Common Securities     ~~21~~**22**

~~1.135.~~**1.138.**.....................................................................Trust Preferred Guarantee     ~~21~~

~~1.136. Trust Preferred Indenture~~ ......................................................................22

~~1.137. Trust Preferred Indenture Trustee~~ .........................................................22

~~1.138. Trust Preferred Note~~ ..............................................................................22

1.139. Trust Preferred ~~Note Claim~~**Holdco Distributions** ...................................22

1.140. Trust Preferred ~~Note Junior Claim~~**Holders** ...........................................22

1.141. Trust Preferred ~~Holdco Distributions~~**Indenture** ....................................22

1.142. Trust Preferred ~~Holders~~**Indenture Trustee** ...........................................22

1.143. Trust Preferred ~~Securities~~**Note** ............................................................22

1.144. ~~Unsecured~~**Trust Preferred Note** Claim ....................................................23

1.145. ~~Vendor~~**Trust Preferred Note Junior Claim** ............................................23

1.146. **Trust Preferred Securities**......................................................................**23**

**1.147. Unsecured Claim**....................................................................................**23**

**1.148. Vendor**...................................................................................................**23**

**1.149.** Vendor Cash .........................................................................................23

~~1.147.~~**1.150.**................................................................................. Viera Claims **23**

**1.151. Viera Settlement**...................................................................................23

2.     DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS .............................~~23~~**24**

  2.1.     Unclassified Claims:  Administrative Claims and Priority Tax Claims ...........~~23~~**24**

  2.2.     Classified Claims of Consolidated Holdco ..................................................~~23~~**24**

  2.3.     Classification of Claims against the Consolidated Debtors............................~~24~~**25**

  2.4.     Subordination and Subrogation Rights and Claims of Subordination and Subrogation ...................................................................................................25

3.     TREATMENT OF UNCLASSIFIED CLAIMS..............................................~~25~~**26**

  3.1.     Administrative Claims .................................................................................~~25~~**26**

    (a)     Non-Professional Fee Administration Claims .......................................~~25~~**26**

    (b)     Professional Fee Claims........................................................................26

    (c)     Consolidated Holdco Professional Fee Payment ...................................~~26~~**27**

  3.2.     Priority Tax Claims .....................................................................................~~26~~**27**

| | | |
|---|---|---|
| 3.3. | IRS Priority Tax Claims | 27 |
| 4. | TREATMENT OF CLASSES OF CLAIMS AND INTERESTS UNDER THE CONSOLIDATED HOLDCO PLAN | 27 |
| 4.1. | Class 1 H - Secured Claims | 27 |
| 4.2. | Class 2 H - Priority Claims, other than Priority Tax Claims | 27~~28~~ |
| 4.3. | Class 3 H - General Unsecured Claims against Consolidated Holdco Accepting the Creditor Release | 28 |
| 4.4. | Class 4 H - General Unsecured Claims against Consolidated Holdco, except for separately classified Claims | ~~28~~ **29** |
| 4.5. | Class 5 H - Unsecured Claims Against Consolidated Holdco held by LSF-MRA, LLC | ~~29~~**30** |
| 4.6. | Class 6 H - Unsecured Claims against Consolidated Holdco Held by the REIT | 30 |
| 4.7. | Class 7 H - Consolidated Holdco Convenience Class Claims | ~~30~~**31** |
| 4.8. | Class 8 H - Claims against Consolidated Holdco relating to Accredited Preferred Securities Trust I | ~~30~~**31** |
| 4.9. | Class 9 H -~~-~~ REIT Preferred Holders' Subordinated Guaranty Claims | ~~31~~**32** |
| 4.10. | Class 10 H - Subordinated Claims against Consolidated Holdco ~~31~~ **(including Late Filed Claims)** | **32** |
| 4.11. | Class 11 H- Interests in Consolidated Holdco | ~~32~~**33** |
| 5. | TREATMENT OF CLASSES OF CLAIMS AND INTERESTS UNDER THE CONSOLIDATED DEBTORS PLAN | ~~32~~**33** |
| 5.1. | Class 1 C - Secured Claims against the Consolidated Debtors | ~~32~~**33** |
| 5.2. | Class 2 C - Priority Claims, other than Priority Tax Claims, against the Consolidated Debtors | ~~32~~**34** |
| 5.3. | Class 3 C - General Unsecured Claims against the Consolidated Debtors Accepting the Creditor Release | ~~33~~**34** |
| 5.4. | Class 4 C - General Unsecured Claims against the Consolidated Debtors, except for separately classified Claims | ~~34~~**35** |
| 5.5. | Class 5 C - Unsecured Claims Against the Consolidated Debtors held by the Lone Star Entities | ~~34~~**36** |
| 5.6. | Class 6 C - Consolidated Debtors Convenience Class Claims. ~~34~~ **The Class 6 C Claims are impaired** | **36** |
| 5.7. | Class 7 C - REIT Junior Claim | ~~35~~**36** |
| 5.8. | Class 8 C - Subordinated Claims against the Consolidated Debtors ~~35~~ **(including Late Filed Claims)** | **36** |
| 5.9. | Class 9 C - Claims against Consolidated Debtors relating to Accredited Preferred Securities Trust I | ~~35~~**37** |
| 5.10. | Class 10 C - Interests in the Consolidated Debtors | ~~36~~**37** |
| 6. | INTERCOMPANY CLAIMS | ~~36~~**38** |
| 6.1. | Inter-Debtor Waivers | ~~36~~**38** |
| 6.2. | Non-Debtor Subsidiary Waivers | ~~37~~**38** |
| 6.3. | Asset Allocation | ~~37~~**38** |
| 7. | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | ~~37~~**38** |
| 7.1. | Assumption and Rejection | ~~37~~**38** |
| 7.2. | Indemnification Agreements | ~~37~~**39** |

| | | | |
|---|---|---|---|
| 7.3. | Claims Relating to Assumption or Rejection | ......................... | 3839 |
| 7.4. | Insurance Policies | .......................................................... | 3839 |
| 8. | GLOBAL SETTLEMENT AND COMPROMISE OF DISPUTES | ................. | 3840 |
| 8.1. | Incorporation of Settlement | .......................................... | 3840 |
| 8.2. | Terms of the Global Settlement | ..................................... | 3940 |
| | (a) | REIT Adversary Settlement | .......................... 3940 |
| | (b) | Citigroup Settlement | ................................... 3940 |
| | (c) | Trust Preferred Settlement | .......................... 3940 |
| | (d) | Lone Star Settlement | ................................... 3941 |
| | (e) | Release of Settling Parties' Claims against the Lone Star Releasees | ...................... 4042 |
| | (f) | Release of Creditors' Claims against the Lone Star Releasees | ............ 4042 |
| | (g) | Mutual Releases Amongst Settling Parties. | ........................... 4143 |
| 9. | LIQUIDATING TRUST | ....................................................... | 4345 |
| 9.1. | Appointment of Liquidating Trustee. | ............................. | 4345 |
| 9.2. | Funding of the Liquidating Trust | .................................. | 4345 |
| 9.3. | Transfer of Liquidating Trust Assets to the Liquidating Trust | ......... | 4345 |
| 9.4. | The Liquidating Trust. | ................................................ | 4345 |
| 9.5. | Limitation of Liability for Liquidating Trustee | .............. | 4750 |
| 9.6. | Transferability | .......................................................... | 4750 |
| 9.7. | The Liquidating Trust Advisory Board | ........................... | 4750 |
| 9.8. | Final Administration of Liquidating Trust | ..................... | 4851 |
| 10. | MEANS OF IMPLEMENTING THE PLAN | ................................ | 4952 |
| 10.1. | Consolidated Holdco Plan Administrator. | ...................... | 4952 |
| 10.2. | Substantive Consolidation of Consolidated Debtors Estates | ........... | 5053 |
| 10.3. | Substantive Consolidation of Consolidated Holdco Estates | ........... | 5053 |
| 10.4. | Lone Star Creditor Release Settlement Payment | ............... | 5053 |
| 10.5. | Lone Star Consolidated Debtors Settlement Payment | ........ | 5154 |
| 10.6. | Consolidated Holdco Distributions | ............................... | 5154 |
| 10.7. | Trust Preferred Holdco Distributions Shortfall | .............. | 5154 |
| 10.8. | Consolidated Holdco Priority Administrative Claims | ........ | 5154 |
| 10.9. | Effective Date Distribution | ......................................... | 5255 |
| 10.10. | Transfer Assets to Consolidated Holdco | ....................... | 5255 |
| 10.11. | Transfer of Assets to Liquidating Trust | ........................ | 5255 |
| 10.12. | Abandonment of REIT Equity | ...................................... | 5255 |
| 10.13. | Payment of Fees to United States Trustee | ..................... | 5255 |
| 10.14. | Continued Cooperation | ............................................... | 5255 |
| 10.15. | Consolidated Debtors' Continued Existence | .................. | 5356 |
| 10.16. | Consolidated Holdco's Continued Existence | ................. | 5356 |
| 10.17. | Debtors' Books and Records | ....................................... | 5356 |
| 10.18. | Accredited Preferred Securities Trust I Termination | ...... | 5457 |
| 10.19. | Employee Agreements | ................................................ | 5457 |
| 10.20. | Closing of Debtors' Cases | ........................................... | 5457 |
| | (a) | Consolidated Holdco Estates. | ....................... 5457 |
| | (b) | Consolidated Debtors Estates. | ....................... 5457 |
| 10.21. | Distribution of Property Under this Plan. | ...................... | 5558 |

| | | | |
|---|---|---|---|
| (a) | Manner of Cash Payments Under this Plan. | 5558 | |
| (b) | No De Minimis Distributions. | 5558 | |
| (c) | Allowance of Claims and Interests. | 5558 | |
| (d) | Distributions to Holders as of the Distribution Record Date. | 5659 | |
| (e) | Deemed Distributions to Subordinated Creditors. | 5659 | |
| (f) | Delivery of Distributions and Undeliverable/Unclaimed Distributions. | 5659 | |
| (g) | Distributions of Consolidated Holdco Residual Assets and Liquidating Trust Residual Assets | 5861 | |
| (h) | Fees and Expenses Incurred in Distributing Consolidated Holdco Residual Assets and Liquidating Trust Residual Assets. | 5861 | |

**10.22. Allocation of Distribution Between Principal and Interest**.............................**61**

| | | | |
|---|---|---|---|
| 11. | CONDITIONS PRECEDENT TO EFFECTIVE DATE OF PLAN | 5861 | |
| 11.1. | Conditions Precedent to Effective Date of Plan | 5861 | |
| 11.2. | Waiver of Conditions Precedent | 5962 | |
| 11.3. | Nonoccurrence of Conditions to Consummation | 5962 | |
| 12. | MISCELLANEOUS PROVISIONS | 5963 | |
| 12.1. | No Discharge of Debtors | 5963 | |
| 12.2. | Post-Confirmation Injunction | 5963 | |
| 12.3. | Exculpation | 6063 | |
| 12.4. | Permissible Continuation of Actions | 6164 | |
| 12.5. | Vesting of Assets. | 6164 | |
| | (a) | Consolidated Debtors. | 6164 |
| | (b) | Consolidated Holdco. | 6164 |
| 12.6. | Unclaimed Property | 6164 | |
| 12.7. | Reasonable Efforts to Collect Tax Refunds | 6165 | |
| 12.8. | Privileges. | 6265 | |
| 12.9. | Preservation of All Rights of Action Not Expressly Settled or Released | 6265 | |
| 12.10. | Waiver of Taxes | 6266 | |
| 12.11. | Plan Governs | 6266 | |
| 12.12. | Business Days | 6266 | |
| 12.13. | Dissolution of the Committee | 6366 | |
| 12.14. | Evidence | 6366 | |
| 12.15. | Taxpayer Identification | 6366 | |
| 12.16. | Forfeiture of Payment | 6367 | |
| 12.17. | Subordination of Late Filed Claims | 6467 | |
| 12.18. | Exemption from Securities Laws | 6467 | |
| 12.19. | Deemed Consent | 6467 | |
| 12.20. | Governing Law | 6467 | |
| 12.21. | Notice | 6467 | |
| 13. | MODIFICATION OF THE PLAN | 6669 | |
| 13.1. | Pre-Confirmation Modification | 6669 | |
| 13.2. | Pre-Consummation Modifications | 6669 | |
| 13.3. | Non-Material Modifications | 6669 | |
| 14. | RETENTION OF JURISDICTION | 6670 | |
| 15. | REQUEST FOR CONFIRMATION | 6871 | |

TO THE HONORABLE MARY F. WALRATH, U.S. BANKRUPTCY JUDGE:

The Debtors and Debtors-in-Possession in the above-captioned Chapter 11 cases (the "Debtors"), hereby propose this Debtors' ~~Second~~**Third** Amended Chapter 11 Plan of Liquidation (the "Plan") to creditors and equity holders of the Debtors, pursuant to § 1121(a) of the United States Bankruptcy Code.

This Plan is a liquidating plan. It does not contemplate the continuation of the Debtors' collective businesses, although it does contemplate the continuation of Consolidated Holdco (defined below) for the limited purposes provided for under the Plan. The Plan:

(i) incorporates and implements the Plan Support Agreement and Term Sheet (defined below);

(ii) substantively consolidates the assets and liabilities of Accredited Home Lenders Holding Co. ("Holdco") with those of its wholly owned subsidiary, Vendor Management Services, LLC (collectively referred to herein with Holdco as "Consolidated Holdco");

(iii) substantively consolidates the assets and liabilities of Accredited Home Lenders, Inc., Inzura Insurance Services, Inc. and Windsor Management Co. (collectively referred to herein as the "Consolidated Debtors");

(iv) appoints a Plan Administrator to liquidate Consolidated Holdco's assets, distribute the proceeds of those assets to creditors of Consolidated Holdco pursuant to the terms of this Plan, and wind down and dissolve the Consolidated Holdco entities;

(v) establishes a liquidating trust that will acquire the Liquidating Trust Assets (as defined herein), liquidate those assets, and distribute the proceeds of those assets to the creditors of the Consolidated Debtors pursuant to the terms of this Plan;

(vi) resolves the intercompany claims of the Consolidated Debtors and Consolidated Holdco and other inter-Estate and inter-Debtor issues; and

(vii) settles all Claims that the Debtors may have against the Lone Star ~~Entities~~**Releasees** in exchange for Cash payments from the Lone Star Entities and/or their insurers and insurers of the Debtors to various Debtors and creditors, along with the waivers of Claims held by the Lone Star Entities against certain Debtors.

## 1. DEFINITIONS

1.1. <u>Accredited Preferred Securities Trust I.</u> The certain trust established pursuant to the Amended and Restated Trust Agreement among Accredited Home Lenders Holding Co., as depositor, Wells Fargo Bank, N.A., as Property Trustee, Wells Fargo Delaware Trust Company, as Delaware Trustee and the administrative trustees named therein dated January 11, 2007.

1.2.    Administrative Claim.  A Claim, including, but not limited to Professional Fee Claims, entitled to payment as an administrative expense as specified in § 503(b) of the Bankruptcy Code that is entitled to priority under § 507(a)(2) of the Bankruptcy Code, which Claim must be filed by the Administrative Claim Bar Date or the Professional Fee Claim Bar Date, as applicable.

1.3.    Administrative Claim Bar Date.  For all Administrative Claims except Professional Fee Claims, the first Business Day that is thirty (30) days following the Effective Date.

1.4.    Affiliate.  With respect to any specified Entity, any other Entity or Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such specified Entity.

1.5.    AHL.  Accredited Home Lenders, Inc., a California corporation.

1.6.    AHL Canada.  Accredited Home Lenders Canada, Inc.

1.7.    Allowed Administrative Claim.  An Administrative Claim as to which no objection to the allowance thereof has been interposed prior to the forty-fifth (45th) day following the Administrative Claim Bar Date or the Professional Fee Claim Bar Date, as applicable, or as to which an objection has been filed and such Claim has been Allowed by Final Order.

1.8.    Allowed.  "Allowed" means, with respect to a Claim of any sort, including but not limited to secured, unsecured, ~~administrative,~~ priority, or subordinated, a Claim (a) for which a proof of claim was timely filed, in the manner prescribed by the Bankruptcy Court, either within the Bar Date or as extended upon motion, or (b) if no proof of claim has been timely filed, which was listed by any of the Debtors in their Schedules as undisputed, noncontingent, or liquidated; and, in any such case, as to which Claim no objection has been timely interposed, or as to which an objection or request for estimation has been filed and such objection or request for estimation has been resolved by a Final Order.

1.9.    Amended 2008 Tax Return.  The amended income tax return that the Debtors filed with the Internal Revenue Service dated November 18, 2010.

1.10.    Assets.  All property that is property of the applicable Debtor and that Debtor's estate under § 541 of the Bankruptcy Code of every kind and character, whether such property is now existing or hereafter arising or acquired, wherever located and whether real, personal, tangible or intangible including, without limitation, all Cash, Causes of Action and all proceeds of and recoveries on Causes of Action, all accounts, contract rights, chattel paper, general intangibles, instruments, securities, furniture, fixtures, machinery, equipment, inventory intellectual property, domain names, and interest in real estate.

1.11.    Avoidance Actions.  Any and all rights to recover or avoid transfers under Chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, §§ 522, 541, 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code, to avoid any lien under § 506(d) of the Bankruptcy Code, or otherwise to exercise the avoidance powers provided under the Bankruptcy Code.

1.12.   <u>Ballot</u>.   The ballot distributed to each eligible Creditor, on which ballot such Creditor may, among other things, vote to accept or reject this Plan, make another election for treatment of such Claim as provided under the Plan, including the Convenience Class Election, and ~~opt out of~~**elect to provide** the Creditor Release.

1.13.   <u>Bankruptcy Code</u>.   Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as amended and in effect as of the Petition Date.

1.14.   <u>Bankruptcy Court</u>.   The United States Bankruptcy Court for the District of Delaware having jurisdiction of the above-captioned Chapter 11 cases.

1.15.   <u>Bankruptcy Proceeding</u>.   The Debtors' jointly administered bankruptcy cases, filed under Chapter 11 of the Bankruptcy Code on the Petition Date, pending in the Bankruptcy Court as Accredited Home Lenders Holding Co.

1.16.   <u>Bankruptcy Rules</u>.   The Federal Rules of Bankruptcy Procedure, as amended and in effect as of the Petition Date.

1.17.   <u>Bar Date</u>.   October 6, 2009 with respect to all Claims other than (a) Administrative Claims, (b) Claims subject to the Governmental Bar Date (as defined in the Bar Date Order), ~~and~~ (c) Rejection Claims**, and (d) REIT Preferred Security Holder's Subordinated Guaranty Claims**.

1.18.   <u>Bar Date Order</u>.   That certain order entered by the Bankruptcy Court on July 27, 2009, Docket No. 478, establishing the Bar Date and certain procedures for filing proofs of claims.

1.19.   <u>Business Day</u>.   A day other than a Saturday, Sunday, or any other day on which commercial banking institutions in New York, New York are required or authorized to close by law or executive order.

1.20.   <u>Canadian Equity</u>.   All equity interests owned by any of the Debtors in AHL Canada.

1.21.   <u>Cash</u>.   Lawful currency of the United States, including but not limited to bank deposits, checks representing good funds, and other similar items.

1.22.   <u>Causes of Action</u>.   Any and all claims, actions, causes of action, suits, judgments, third-party claims, counterclaims, cross-claims, or other rights of recovery, whether asserted or unasserted or pending as of the Effective Date or direct, indirect, derivative or otherwise, or known or unknown, or asserted or unasserted, that are held by the applicable Debtor or Estate against any person, entity, or property, wherever located, from the beginning of the world to the Effective Date, including Avoidance Actions as well as Officer and Director Causes of Action and claims for malpractice, negligence, breach of contract, fraud, aiding and abetting, inducement as well as claims against attorneys, auditors, investment bankers, financial consultants, agents, or other advisors that provided professional, accounting, audit, or other services to the Debtors and Non-Debtor Subsidiaries (including, without limitation, REIT) prior to the Petition Date.

**1.23.** **Citigroup. Citigroup and Citigroup Global Markets Realty Corp., Citigroup Mortgage Loan Trust Inc., Citigroup Global Markets Inc., Citigroup Mortgage Loan Trust AHL-1, Citigroup Mortgage Loan Trust AHL-2 and Citigroup Mortgage Loan Trust AHL-3, all creditors of AHL.**

**1.24.** ~~1.23.~~ Claim. All claims, as defined in § 101(5) of the Bankruptcy Code, against the applicable Debtor, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, including, without limitation, all claims arising from that Debtor's rejection of an executory contract or unexpired lease.

**1.25.** ~~1.24.~~ Claim Holder. Any Entity that holds a Claim against the estates, whether Finally Determined or Disputed.

**1.26.** ~~1.25.~~ Claim Register. The official register of Claims in this Bankruptcy Proceeding.

**1.27.** ~~1.26.~~ Class. A group of Claims or Interests which are substantially similar to each other, as described in Article 2 and 3 hereof.

**1.28.** ~~1.27.~~ Committee. The Official Committee of Unsecured Creditors appointed in the Bankruptcy Proceeding by the United States Trustee, namely Citigroup Global Markets Realty Corp., Transcontinental Valuations, Inc., Kodiak CDO I, Ltd., Patricia Howell, and Carrie Luft.[2]

**1.29.** ~~1.28.~~ Committee Counsel. The law firms of Arent Fox, LLP, and Elliott Greenleaf.

**1.30.** ~~1.29.~~ Confirmation Date. The date on which the Bankruptcy Court enters an order confirming this Plan.

**1.31.** ~~1.30.~~ Confirmation Order. The order entered by the Bankruptcy Court confirming this Plan, which includes the approval of the settlements **and compromises** set forth in ~~the Plan Support Agreement and Term Sheet~~**and under this Plan**.

**1.32.** ~~1.31.~~ Consolidated Debtors. Accredited Home Lenders, Inc., a California corporation, Inzura Insurance Services, Inc., a Delaware corporation, and Windsor Management of Washington, Inc., d/b/a AHL Foreclosure Services Company, a Washington corporation.

**1.33.** ~~1.32.~~ Consolidated Debtors Assets. All Assets of the Consolidated Debtors and the Consolidated Debtors' ~~estates~~**Estates**, whether such property is now existing or hereafter arising or acquired and wherever located including, without limitation, the Tax Refunds, all

---

[2] The Claim of Carrie Luft has been disallowed in full. *See* Docket No. 1430. Transcontinental Valuations, Inc. has transferred its Claim to a different entity. *See* Docket No. 2122. The Debtors have been advised that pursuant to the Committee's by-laws, Luft and Transcontinental, with their consent, no longer participate as members of the Committee.

Causes of Action and all proceeds of and recoveries on Causes of Action, all Cash, accounts, contract rights, chattel paper, general intangibles, instruments, securities, furniture, fixtures, machinery, equipment, inventory, intellectual property, domain names, and interest in real estate. For the avoidance of any doubt, the Consolidated Debtor Assets shall not include any Consolidated Holdco Assets, Assets of AHL Canada, **except payments due from AHL Canada to the Consolidated Debtors on account of inter-company claims,** Canadian Equity, Vendor Cash, or Consolidated Holdco's entitlement to the portion of the Tax Refunds designated in this Plan for the Trust Preferred Holdco Distributions.

**1.34.** ~~1.33.~~ Consolidated Debtors Convenience Claim. Any Allowed Unsecured Claim against any of the Consolidated Debtors (a) for which the Claim Holder has properly made the Consolidated Debtors Convenience Class Election on a properly cast Ballot, or (b) that has a face amount equal to or less than $25,000, unless such Holder has opted out of the Class 6 C on a properly cast Ballot~~; provided, however, that if a Holder of such a Claim and its Affiliates hold Unsecured Claims against the Consolidated Debtors in an aggregate face amount greater than $25,000, then such Claim shall not be a Consolidated Debtors Convenience Claim unless the Holder and its Affiliates make the Consolidated Debtors Convenience Class Election~~.

**1.35.** ~~1.34.~~ Consolidated Debtors Convenience Class Election. The election available to a ~~Claim~~ Holder of ~~one or more~~**an** Allowed Unsecured ~~Claims~~**Claim** against the Consolidated Debtors ~~and such Holder's Affiliates~~ to opt into Class 6 C~~, as applicable,~~ and have ~~all of~~ such **Claim treated as a** ~~Claims treated as a single~~ Consolidated Debtors Convenience Claim; _provided, however,_ that in making such election, the ~~Holders~~**Holder** of such Unsecured Claim~~(s)~~ ~~and its Affiliates who are Holders of Unsecured Claims against the Consolidated Debtors (i) have~~ **(i) has** agreed to reduce the face amount of such Claim~~(s)~~ for purposes of voting and distributions under this Plan to ~~a single~~ Claim against the Consolidated Debtors in an amount equal to ~~$25,000 if the aggregate face amount of such Claim(s) is greater than~~ $25,000; (ii) have voted all Claims held by such ~~Claim Holders~~**Holder** in favor of this Plan; and (iii) have **affirmatively** accepted the Creditor Release **on a properly cast Ballot.**

**1.36. Consolidated Debtors Professional Fee Claim. The Allowed Administrative Expense Claim held by the Consolidated Debtors against Consolidated Holdco in the amount of Two Million Dollars ($2,000,000), which claim is for the payment of that portion of the Professional Fees attributable to Consolidated Holdco**.

**1.37.** ~~1.35.~~ Consolidated Holdco. Holdco and Vendor.

**1.38.** ~~1.36.~~ Consolidated Holdco Assets. All Assets of Consolidated Holdco and Consolidated Holdco's Estates, whether such property is now existing or hereafter arising or acquired and wherever located including, without limitation, the Canadian Equity, the Vendor Cash, all of Consolidated Holdco's Causes of Action and all Proceeds of and recoveries on such Causes of Action, and all Cash, accounts, contract rights, chattel paper, general intangibles, instruments, securities, furniture, fixtures, machinery, equipment, inventory, intellectual property, domain names, and interest in real estate; _provided, however,_ that Consolidated Holdco Assets do not include the Tax Refunds, except for Consolidated Holdco's entitlement to the portion of the Tax Refunds designated in this Plan for the Trust Preferred Holdco Distributions,

and do not include any other Assets or Property specifically indentified in this Plan as Consolidated Debtors Assets.

**1.39.** ~~1.37.~~ Consolidated Holdco Distributable Cash. Any Cash collected by the Plan Administrator, including dividends or other distributions on account of the Canadian Equity, or any release of any Consolidated Holdco Reserves, from and after the Effective Date, after the full payment of or funding of (i) the Consolidated Holdco Reserves, (ii) the Lone Star Trust Preferred Settlement Payment and the first $10,000,000 of the Trust Preferred Holdco Distributions to the Trust Preferred Indenture Trustee, ~~and~~ (iii) the REIT First Distribution**; and (iv) Allowed Administrative Claims against Consolidated Holdco**.

**1.40.** ~~1.38.~~ Consolidated Holdco Convenience Claim. Any Allowed Unsecured Claim against Consolidated Holdco (a) for which the Claim Holder has properly made the Consolidated Holdco Convenience Class Election on a properly cast Ballot, or (b) that has a face amount equal to or less than $1,000,000, unless such Holder has opted out of the Class 7 H on a properly cast Ballot~~; provided, however, that if a Holder of such a Claim and its Affiliates hold Unsecured Claims against Consolidated Holdco in an aggregate face amount greater than $1,000,000, then such Claim shall not be a Consolidated Holdco Convenience Claim unless the Holder and its Affiliates make the Consolidated Holdco Convenience Class Election~~.

**1.41.** ~~1.39.~~ Consolidated Holdco Convenience Class Election. The election available to a ~~Claim~~ Holder of ~~one or more~~**an** Allowed Unsecured ~~Claims~~**Claim** against Consolidated Holdco ~~and such Holder's Affiliates~~ to opt into Class 7 H~~, as applicable,~~ and have ~~all of~~ such ~~Claims~~**Claim** treated as a ~~single~~ Consolidated Holdco Convenience Claim; provided, however, that in making such election, the ~~Holders~~**Holder** of such Unsecured Claim~~(s) and its Affiliates who are Holders of Unsecured Claims against Consolidated Holdco (i) have~~ **(i) has** agreed to reduce the face amount of such Claim~~(s)~~ for purposes of voting and distributions under this Plan to ~~a single~~ Claim against ~~Consolidated~~ Holdco in an amount equal to $~~25,000 if the aggregate face amount of such Claim(s) is greater than $25,000~~**1,000,000**; (ii) have voted all Claims held by such ~~Claim Holders~~**Holder** in favor of this Plan; and (iii) have **affirmatively** accepted the Creditor Release **on a properly cast Ballot**.

**1.42.** ~~1.40.~~ Consolidated Holdco Plan Administration Expenses. Any reasonable expenses and fees incurred after the Effective Date in connection with the administration of Consolidated Holdco, by the Plan Administrator, including, but not limited to, claims for fees of professionals employed by the Plan Administrator, tax liabilities of Consolidated Holdco, quarterly fees due to the Office of the United States Trustee, and costs relating to the completion of the liquidation of the Assets including, without limitation, the resolution of all Disputed Claims asserted against Consolidated Holdco.

**1.43.** ~~1.41.~~ Consolidated Holdco Professional Fee Claim Payment. The Cash payment in the amount of Two Million Dollars ($2,000,000)~~, less any amounts owed by AHL Canada to~~ **on account of** the Consolidated Debtors ~~on the Effective Date,~~**Professional Fee Claim** to be made by Consolidated Holdco to the Consolidated Debtors on the Effective Date.

**1.44.** ~~1.42.~~ Consolidated Holdco Reserves. The Consolidated Holdco Reserves shall consist of (i) an amount not to exceed Two Million ~~Five Hundred Thousand~~ Dollars

($~~2,500,000~~**2,000,000**) to fund the Consolidated Holdco Professional Fee Claim Payment ~~and the payment of the Viera Claims against Consolidated Holdco~~; (ii) an amount, not to exceed One Million Dollars ($1,000,000), or such other amount as agreed to by the REIT, the Lone Star Entities and the Holdco Plan Administrator after the Effective Date, calculated by the Plan Administrator to satisfy anticipated Consolidated Holdco Plan Administration Expenses and to pay anticipated tax liabilities of Consolidated Holdco **and AHL Canada (to the extent such taxes of AHL Canada are not otherwise reserved)**; (iii) an amount, not to exceed One Million **Five Hundred Thousand** Dollars ($~~1,000,000~~**1,500,000**), sufficient to fund distributions to holders of Consolidated Holdco Convenience Claims, ~~excluding~~**including** the Viera Claims, in accordance with this Plan~~;~~ and (iv) an amount**, not to exceed One Million Dollars ($1,000,000), for the Plan Administrator to hold in reserve** for distribution to Creditors ~~holding Disputed Claims against~~**of** Consolidated Holdco **holding Disputed Claims (if any)** upon such Claims becoming Allowed Claims and ~~Rejection Claims, such that holders of such Claims, upon allowance of such Claims, shall receive the same Pro Rata Share as do Creditors in the same Class holding Claims that are not Disputed Claims or~~ Rejection Claims.

**1.45.** ~~1.43.~~ Consolidated Holdco Residual Assets.  The remaining Consolidated Holdco Assets administered by the Plan Administrator after all Claims in Class 3 H, 4 H, and 6 H have been satisfied as provided in the Plan, which Assets shall be distributed by the Plan Administrator as provided under the Plan.

**1.46.** ~~1.44.~~ Creditor.  Any Entity holding a Claim or Claims of any character whatsoever, whether unsecured or secured by assets of any of the Debtors, against one or more of the Debtors.

**1.47.** ~~1.45.~~ Creditor Release.  The release of claims and causes of action against the Lone Star Releasees by certain creditors as set forth in Section 8.2 of the Plan.

**1.48.** ~~1.46.~~ CRO Expenses.  Has the same meaning ascribed thereto in Section 3.1 of the Plan.

**1.49.** ~~1.47.~~ Cure Claim.  Those payments and assurances required upon assumption of an executory contract or unexpired lease pursuant to § 365(b)(1) of the Bankruptcy Code.

**1.50.** ~~1.48.~~ D&O Policies.  Those certain directors and officers insurance policies issued at the request of LSF5 Accredited Investments, LLC by (i) XL Specialty Insurance Company, Policy No. ELU 107630-08, (ii) Arch Insurance Company, Policy No. PCD 0023435-01; (iii) RSUI Indemnity Company, Policy No. NHS630845; and (iv) XL Specialty Insurance Company, Policy No. ELU 107631-08, and any other insurance policies with respect to the Debtors' current and former directors and officers as well as any renewals thereof.

**1.51.** ~~1.49.~~ Debtor.  As applicable, Holdco, AHL, Vendor, Inzura Insurance Services, Inc., a Delaware corporation, or Windsor Management of Washington, Inc., d/b/a AHL Foreclosure Services Company, a Washington corporation (collectively the "Debtors");

**1.52.** ~~1.50.~~ Deferred Compensation Settlement Proceeds.  The proceeds received by the Debtors as a result of that certain settlement relating to the First American Trust, FSB Deferred Compensation Plan, as approved by the Court on February 17, 2010, Docket No. 1307.

**1.53.** ~~1.51.~~ Disclosure Statement. The Disclosure Statement proposed in connection with this Plan, as approved by the Bankruptcy Court pursuant to § 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, and as modified and amended, including all exhibits and attachments thereto.

**1.54.** **Disbursing Agent. The Liquidating Trustee.**

**1.55.** ~~1.52.~~ Disclosure Statement Approval Date. The date on which the Bankruptcy Court enters an order approving the Disclosure Statement.

**1.56.** ~~1.53.~~ Disputed Claim. Any Claim as to which an objection has been interposed, or which is listed in the applicable Debtor's schedules as disputed, or which is identified in the Disclosure Statement as being the subject of an anticipated objection, or to which an objection or request for estimation has been interposed, which objection or request for estimation has not been Finally Determined as of the Effective Date.

**1.57.** ~~1.54.~~ Distribution. As applicable, payment by the Liquidating Trustee out of the Liquidating Trust Account, or a payment by the Plan Administrator out of the Consolidated Holdco Assets, to holders of Allowed Unsecured Claims **or payment by the Disbursing Agent, as provided under the Plan**.

**1.58.** ~~1.55.~~ Distribution Date. A date on which either the Effective Date Distribution and/or any Subsequent Distribution occurs.

**1.59.** ~~1.56.~~ Distribution Date Balance. All funds on deposit in the Liquidating Trust Account from any source whatsoever as of a Distribution Date.

**1.60.** ~~1.57.~~ Distribution Record Date. The Effective Date.

**1.61.** ~~1.58.~~ Effective Date. The first (1st) Business Day upon which the conditions set forth in § 11.1 of this Plan have been satisfied, subject to any waiver or modification of such conditions pursuant to § 11.2 of this Plan.

**1.62.** ~~1.59.~~ Effective Date Balance. All Cash, including funds on deposit in the applicable Debtor's bank accounts from any source whatsoever as of the Effective Date.

**1.63.** ~~1.60.~~ Effective Date Distribution. A Cash distribution to be made by the applicable Debtors on the Effective Date or as soon thereafter as is practicable, from the Effective Date Balance pursuant to the terms of the Plan.

**1.64.** ~~1.61.~~ Entity. Entity shall have the meaning ascribed in § 101(15) of the Bankruptcy Code.

**1.65.** ~~1.62.~~ Estate. The bankruptcy estate of the applicable Debtor created or constituted under the provisions of the Bankruptcy Code and applicable law.

**1.66.** ~~1.63.~~ Final Decree. An order entered by the Bankruptcy Court closing the Bankruptcy Proceeding.

**1.67.** ~~1.64.~~ Final Distribution.  As applicable, the last Distribution to be made by the Plan Administrator from the Consolidated Holdco Assets upon the full administration of those Assets, or the last Distribution to be made by the Liquidating Trustee out of the Liquidating Trust Account upon the full administration of the Assets vested in the Liquidating Trust.

**1.68.** ~~1.65.~~ Final Order.  An unstayed order or judgment of the Bankruptcy Court or other court having jurisdiction over any matter, provided that such order would be considered "final" for the purposes of § 158(a)(1) of Title 28 of the United States Code, provided that such order has not been reversed, stay, or vacated, that the time to appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing has expired, and that no appeal, petition for certiorari, or other proceeding seeking a new trial, re-argument, or rehearing is pending, or, if an appeal, writ of certiorari, new trial, re-argument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest Court to which such order or judgment was appealed, certiorari shall have been denied, or a new trial, re-argument or rehearing shall have been denied.

**1.69.** ~~1.66.~~ Finally Determined.  Entry of a Final Order resolving a Claim to which an objection or request for estimation has been filed, or which is listed in the Schedules as contingent, unliquidated, or disputed, or which is identified in the Disclosure Statement as being the subject of an anticipated objection.

**1.70.** ~~1.67.~~ Holdco.  Accredited Home Lenders Holding Co., a Delaware corporation.

**1.71.** ~~1.68.~~ Holder.  An Entity holding a Claim or Interest or any authorized agent who has completed, executed and delivered a Ballot in accordance with the applicable voting instructions.

**1.72.** ~~1.69.~~ Initial Deposit.  A deposit to be made to the Liquidating Trust Account on the Effective Date in an amount consisting of the applicable Effective Date Balance less the amount of the applicable Effective Date Distribution.

**1.73.** ~~1.70.~~ Injunction.  The post-confirmation injunction set forth in Section 11.2 of the Plan.

**1.74.** ~~1.71.~~ Intercompany Claims.  Any Claim or Causes of Action held by any Debtor or Non-Debtor Subsidiary against any Debtor accruing before or after the Petition Date, including, but not limited to, any Claim for reimbursement, payment as guarantor or surety, any Claim for contribution and expenses that were allocable between multiple Debtors.

**1.75.** ~~1.72.~~ Interest.  Any equity interest in any Debtor, including, without limitation, common, preferred or other stock of such Debtor or option, warrant or right to acquire or purchase any such interest issued on or before the Petition Date, and any Claim (a) arising from the rescission of a purchase or sale of any such equity interest; (b) for damages arising from the purchase or sale of any such equity interest; or (c) for reimbursement or contribution allowed under § 502 of the Bankruptcy Code on account of such Claim.

**1.76.** ~~1.73.~~ Interim Distribution.  A distribution to be made by the Plan Administrator from the Consolidated Holdco Assets, or by the Liquidating Trustee out of the Liquidating Trust

Account from the Liquidating Trust Reserve, to any holder of an Allowed Claim whose Claim was not Allowed or was Disputed as of the Effective Date Distribution and whose Claim became Finally Determined subsequent to the Effective Date, but prior to the immediately proceeding Subsequent Distribution Date**, provided that no Interim Distribution on account of an Allowed Claim that became Finally Determined subsequent to the Effective Date shall be greater than the Distributions that would have been made on account of such Claim if such Claim had been Allowed as of the Effective Date**.

**1.77.** ~~1.74.~~ IRS Priority Tax Claims.  The Claims asserted by the Internal Revenue Service, which shall be satisfied in full from the Tax Refunds.

**1.78.** ~~1.75.~~ Late Filed Claims.  Any Claim that was not filed prior to the applicable Bar Date, Rejection Claim Bar Date, Administrative Claim Bar Date, or Professional Fee Claim Bar Date, except for those Claims that are Allowed as timely under this Plan or under a Final Order entered by the Bankruptcy Court.

**1.79.** ~~1.76.~~ Lien or Liens.  Any lien, security interest, mortgage, or similar encumbrance on property of the applicable Debtor that secured payment of a debt or obligation, which lien, interest, mortgage, or similar encumbrance is valid, perfected, and enforceable against such property or the proceeds thereof and is non-avoidable.

**1.80.** ~~1.77.~~ Liquidating Trust.  A trust for the benefit of the Holders of Allowed Claims against the Consolidated Debtors that is to be formed and governed by the Liquidating Trust Agreement.

**1.81.** ~~1.78.~~ Liquidating Trust Account.  An account to be established by the Liquidating Trustee at a depository institution listed as an approved institution of the United States Trustee for the District of Delaware.

**1.82.** ~~1.79.~~ Liquidating Trust Advisory Board.  The post-confirmation committee formed on the Effective Date, whose members shall be ~~selected by~~**as provided under** the ~~Committee~~**Plan**, shall be reasonably acceptable to the REIT, and shall be indentified by the Debtors in the Plan Supplement.

**1.83.** ~~1.80.~~ Liquidating Trust Agreement.  The certain trust agreement that is to govern the Liquidating Trust, in substantially the form of such document included in the Plan Supplement, pursuant to which, among other things, the Liquidating Trust Assets shall initially be conveyed to the Liquidating Trust and shall ultimately be distributed pursuant to the terms of this Plan.

**1.84.** ~~1.81.~~ Liquidating Trust Assets.  All of the Consolidated Debtors' Assets not transferred on or prior to the Effective Date of the Plan, including, but not limited to, the Proceeds of any Consolidated Debtors Assets, the funds held in the Consolidated Debtors' bank accounts (after the Consolidated Debtors make the Effective Date Distribution), the Tax Refunds (excluding any amounts ~~needed~~ to **which the Consolidated Debtors are entitled that are designated in this Plan** for the Trust Preferred Holdco Distributions **as provided under the Plan**), the Trust Preferred Common Securities, the Deferred Compensation Settlement Proceeds, promissory notes, Receivables, all Causes of Action belonging to the Consolidated Debtors, to

the extent such Causes of Action have not been previously settled or released pursuant to this Plan, but not including the Lone Star Creditor Release Settlement Payment, except as provided in § 10.4 of the Plan.

**1.85.** ~~1.82.~~ Liquidating Trust Expenses. Any reasonable expenses and fees incurred in connection with the administration of the Liquidating Trust, by the Liquidating Trustee, including, but not limited to, Claims for fees of professionals employed by the Liquidating Trustee and the Liquidating Trust Advisory Board and quarterly fees due to the Office of the United States Trustee, and costs relating to the completion of the liquidation of the Assets including, without limitation, the resolution of all Disputed Claims.

**1.86.** ~~1.83.~~ Liquidating Trust Professionals. Professionals retained by the Liquidating Trustee, including without limitation, attorneys, accountants, advisors, consultants, investigators, appraiser, auctioneers, engineers, agents, real estate brokers, tax specialists, clerical and stenographic assistants, and other professionals.

**1.87.** ~~1.84.~~ Liquidating Trust Reserve. An amount determined by the Liquidating Trustee to be held in reserve for distribution to Creditors holding Disputed Claims upon such Claims becoming Allowed Claims and Rejection Claims, such that holders of such Claims, upon allowance of such Claims, shall receive the same Pro Rata Share as do Creditors in the same Class holding Claims that are not Disputed Claims or Rejection Claims. The Liquidating Trust Reserve shall also include an amount calculated by the Liquidating Trustee to satisfy anticipated Liquidating Trust Expenses and to pay anticipated tax liabilities of the Liquidating Trust.

**1.88.** ~~1.85.~~ Liquidating Trust Residual Assets. The assets remaining in the Liquidating Trust after ~~all respective beneficiaries of such entity have been paid in full as provided under the Plan and all expenses of such entity have been paid and satisfied~~**the Liquidating Trust has been terminated pursuant to § 9.8 of this Plan**, which assets shall be distributed by the Liquidating Trustee upon termination and dissolution of the Liquidating Trust as provided under the Plan.

**1.89.** ~~1.86.~~ Liquidating Trustee. The trustee of the Liquidating Trust, who shall be selected by the Committee, shall be reasonably acceptable to the Debtors and the REIT, and shall be identified in the Plan Supplement.

**1.90.** ~~1.87.~~ Lone Star Advance. The non-interest bearing advance, in Cash, in the amount not to exceed Four Million Dollars ($4,000,000), to be provided to Consolidated Holdco, which shall be used and repaid in accordance with the terms of this Plan.

**1.91.** ~~1.88.~~ Lone Star Consolidated Debtors Settlement Payment. The payment, in Cash, in the amount of One Hundred Fifty Thousand Dollars ($150,000) to be made by one or more of the Lone Star Entities, other than LSF MRA, LLC, to the Consolidated Debtors on the Effective Date.

**1.92.** ~~1.89.~~ Lone Star Creditor Release Settlement Payment. The payment, in Cash, in the amount of Fifteen Million, Six Hundred Thousand Dollars ($15,600,000), to be provided to the Consolidated Debtors on the Effective Date, which amount shall be used in accordance with the terms of this Plan.

**1.93.** ~~1.90.~~ Lone Star Entities. LSF5 Mortgage Line, LLC, LSF MRA, LSF5 Affiliate Finance, LLC, LSF5 Accredited Investments, Vericrest Financial, Inc., Caliber Funding LLC, **and** Hudson Advisors ~~and any Entity that controls, is controlled by or is under common control with any foregoing party.  The term "control" and correlative terms shall have the meanings ascribed to them in Rule 405 under the Securities Act of 1933, as amended.  The term Lone Star Entities shall not include, however, the Debtors or any of their subsidiaries including, but not limited to, REIT~~**, LLC**.

**1.94.** ~~1.91.~~ Lone Star Proofs of Claim.  The Proofs of Claim filed by the Lone Star Entities, which are specified in the Claims Register as Claim Nos. 802, 804, and 877.

**1.95.** ~~1.92.~~ Lone Star Releasees.  The Lone Star Entities and their current and former subsidiaries and Affiliates (**including LSF5 Mortgage Line2, LLC, LSF5 Mortgage Holding Tech, LLC, LSF5 Mortgage Tech, LLC, LSF5 Affiliate Finance Co., Ltd., LSF5 US Finance Co., Ltd., LSF6 Service Operations, LLC, LSF6 Bond Investments, LLC, LSF5 Mortgage Holding Operations, LLC, LSF5 Super REO Holdings, LLC, LSF5 REO Pool II Holdings, LLC, LSF5 Accredited Holdings, LLC, Lone Star Fund V (U.S.) L.P., LSF V International Finance, LP, Lone Star Fund VI (U.S.), LP, LSF VI International, LP, Hudson Americas, LLC, Lone Star U.S. Acquisitions LLC and LSF5 Accredited Merger Co., Inc., and** including the Non-Debtor Subsidiaries but excluding the Debtors themselves), and all such entities' respective current and former officers, directors, agents, employees, attorneys, other professionals, representatives, predecessors, successors and assigns, (including current and former officers and directors and pre-petition agents, attorneys and other professionals and restructuring advisors of the Debtors and the Non-Debtor Subsidiaries) and the insurers of the Lone Star Entities and of the Debtors (with such insurers included among the Lone Star Releasees set forth on Schedule B to the Plan Support Agreement and Term Sheet and the current and former Officers and Directors of the Debtors included among the Lone Star Releasees set forth on Schedule C to the Plan Support Agreement and Term Sheet).

**1.96.** ~~1.93.~~ Lone Star Trust Preferred Settlement Payment.  The payment to be made on the Effective Date to the Trust Preferred Indenture Trustee, which shall be in the amounts in Cash of (a) Twenty Six Million, Nine Hundred Fifty Thousand Dollars ($26,950,000), from certain insurers of the Lone Star Entities and the Debtors pursuant to confidential agreements between such insurers and the Lone Star Entities, plus (b) Three Million, Fifty Thousand Dollars ($3,050,000) from one or more of the Lone Star Entities.

**1.97.** ~~1.94.~~ Net Proceeds.  The Proceeds realized by the applicable Estate from the sale, lease, or other disposition of an Asset after satisfaction of any Secured Claims encumbering that Asset, less costs of collection including, but not limited to, the fees and expenses of any attorneys, accountants, auctioneers, brokers, or similar professional incurred in the sale, lease, prosecution, adjudication, or other disposition of an Asset.

**1.98.** ~~1.95.~~ Non-Debtor Subsidiary.  Any subsidiary of any Debtor that is not a debtor in the Bankruptcy Proceeding.

**1.99.** ~~1.96.~~ Officer and Director Causes of Action.  Any and all claims, actions, Causes of Action, or other rights of recovery, whether asserted or unasserted or pending as of the

Effective Date or direct, indirect, derivative or otherwise or known or unknown, that are held by the applicable Debtor against any of its current or former officers and directors from the beginning of the world to the Effective Date.

**1.100.** ~~1.97.~~ Person.  Any individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, limited liability limited partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, or other Entity.

**1.101.** ~~1.98.~~ Petition Date.  May 1, 2009, the date on which the Debtors filed their Chapter 11 petitions with the Bankruptcy Court.

**1.102.** ~~1.99.~~ Plan.  This Debtors' Second Amended Chapter 11 Plan of Liquidation, in its present form and as it may be amended or modified from time to time.

**1.103.** ~~1.100.~~ Plan Administrator.  The post-confirmation administrator of the Consolidated Holdco entities **and the Consolidated Holdco Estates**, who shall be selected by the REIT and the Committee, and shall be indentified by the Debtors in the Plan Supplement.

**1.104.** ~~1.101.~~ Plan Administrator Retention Agreement.  The certain retention agreement that is to govern the retention of the Plan Administrator by Consolidated Holdco, in substantially the form of such document included in the Plan Supplement.

**1.105.** ~~1.102.~~ Plan Supplement.  The supplement to the Plan that will be filed with the Bankruptcy Court on or before the Plan Supplement Filing Date and will, among other things, contain the form of the Liquidating Trust Agreement **and the Plan Administration Retention Agreement**, identify the Liquidating Trustee,  the Liquidating Trust Advisory Board, and the Plan Administrator, and identify the executory contracts and unexpired leases being assumed and assigned by this Plan.

**1.106.** ~~1.103.~~ Plan Supplement Filing Date.  The date by which the Plan Supplement and any Exhibits or Plan Schedules not filed with the Plan, shall be filed with the Bankruptcy Court, which date shall be at least ten (10) days prior to the deadline for casting ~~ballots~~**Ballots** on the Plan.

**1.107.** ~~1.104.~~ Plan Support Agreement and Term Sheet.  The *Comprehensive Global Settlement Between Debtors, Lone Star, the REIT, the REIT Committee, the TRuP Entities, and the Committee Relating to a Consensual Plan of Liquidation*, dated February 14, 2011 and attached hereto as Exhibit A.

**1.108.** ~~1.105.~~ Priority Claim.  A Claim or portion of a Claim entitled to priority under §§ 507(a)(3) through 507(a)(7) of the Bankruptcy Code.

**1.109.** ~~1.106.~~ Priority Tax Claim.  A Claim or portion of a Claim entitled to priority under § 507(a)(8) of the Bankruptcy Code.

**1.110.** ~~1.107.~~ Privilege.  All attorney-client privileges, work product protections and other immunities or protections from disclosure held by the Debtors.

**1.111.** **Pro Rata Share. The ratio (expressed as a percentage) of (i) the amount of any Allowed Claim in a particular Class or Classes, as applicable, to (ii) the sum of (x) the aggregate amount of all Allowed Claims in such Class or Classes, as applicable, and (y) the aggregate amount of Disputed Claims in such Class or Classes, as applicable.**

**1.112.** ~~1.108.~~ Proceeds. The funds realized by the applicable Estate from the sale, lease, settlement, adjudication, or other disposition of an Asset, including any recovery from a Cause of Action.

**1.113.** ~~1.109.~~ Professionals. Those persons (a) retained pursuant to an order of the Bankruptcy Court in accordance with §§ 327, 1103 and/or 1106 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to §§ 327, 328, 329, 330 and/or 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to §§ 330 and 503(b)(2) of the Bankruptcy Code.

**1.114.** ~~1.110.~~ Professional Fee Claim. A Claim under (a) §§ 327, 331, 503(b), 1103 or 1106 of the Bankruptcy Code for compensation for professional services rendered or expenses incurred prior to the Effective Date on the Estates' behalf; or (b) § 503(b)(4) of the Bankruptcy Code for compensation for professional services rendered.

**1.115.** ~~1.111.~~ Professional Fee Claim Bar Date. Shall have the meaning specified in Section 3.1 of the Plan.

**1.116.** ~~1.112.~~ Property. The applicable Debtor's legal, possessory, equitable, or other interests in any property or Assets, whether real, personal, tangible, intangible or mixed, as defined in § 541 of the Bankruptcy Code.

~~1.113. Pro Rata Share. The ratio (expressed as a percentage) of (i) the amount of any Allowed Claim in a particular Class or Classes, as applicable, to (ii) the sum of (x) the aggregate amount of all Allowed Claims in such Class or Classes, as applicable, and (y) the aggregate amount of Disputed Claims in such Class or Classes, as applicable.~~

**1.117.** ~~1.114.~~ Receivables. Accounts receivable of the applicable Debtor.

**1.118.** ~~1.115.~~ REIT. Accredited Mortgage Loan REIT Trust, a Maryland real estate investment trust.

**1.119.** ~~1.116.~~ REIT Adversary. That certain adversary proceeding commenced by the Committee against, among others, the REIT, styled as *Official Committee of Unsecured Creditors v. Accredited Mortgage Loan REIT Trust*, Adversary Proceeding No. 10-50980.

**1.120.** ~~1.117.~~ REIT Committee. That certain Ad Hoc Committee of certain REIT Preferred **Security** Holders, the members of which are identified in Schedule A to the Plan Support Agreement and Term Sheet.

**1.121.** 1.118. REIT First Distribution. The distribution to be made to the REIT by Consolidated Holdco on the Effective Date or as soon as practicable thereafter in accordance with the terms of this Plan.

**1.122.** 1.119. REIT Junior Claim. The Fifteen Million Dollar ($15,000,000) junior Claim of the REIT against the Consolidated Debtors, which **shall be classified as a Class 7 C Claim and** shall be liquidated, Allowed, and treated in accordance with the terms of **§ 5.7 of** this Plan.

**1.123.** 1.120. REIT Preferred Securities. The preferred securities issued by the REIT.

**1.124.** 1.121. REIT Preferred Security Holder. Any Entity that holds any of the REIT Preferred Securities.

**1.125.** 1.122. REIT Preferred Holders' Subordinated Guaranty Claims. All Claims against any of the Debtors relating to the guaranty claims of the REIT Preferred Security Holders.

**1.126.** 1.123. Rejection Claim. Any Claim for amounts due as a result of the rejection of any executory contract or unexpired lease which is rejected by the Debtors pursuant to the Plan, which Claim must be filed by the Rejection Claim Bar Date.

**1.127.** 1.124. Rejection Claim Bar Date. Thirty (30) days after the Effective Date; provided, however, if a motion seeking assumption or rejection is not heard and determined prior to the Effective Date, any Claim based thereon shall be filed within thirty (30) days of entry of an Order ruling on such a motion.

**1.128.** 1.125. Schedules. The schedules of assets and liabilities filed by the Debtors in accordance with § 521 of the Bankruptcy Code, as such schedules may be amended from time to time.

**1.129.** 1.126. Secured Claim. The portion of a Claim secured by liens, security interests, encumbrances, charges against, or interests in any property in which any of the Debtors have an interest, to the extent of the value (determined in accordance with § 506(a) of the Bankruptcy Code) of the interest of the holder of such Claim in the Debtors' interest in such property.

**1.130.** 1.127. Subordinated Claim. A Claim or portion of a Claim subject to subordination under § 510 of the Bankruptcy Code, and Late Filed Claims.

**1.131.** 1.128. Subsequent Distributions. Any distribution to be made subsequent to the Effective Date Distribution, in Cash, by the Liquidating Trustee or the Plan Administrator.

**1.132.** 1.129. Tax Code. The Internal Revenue Code of 1986, as amended from time to time.

**1.133.** 1.130. Tax Refunds. All refunds of tax that may be paid to any of the Debtors, their subsidiaries, and consolidated, combined or unitary tax group, whether Federal, state or local, including, but not limited to, as a result of a carryback (including a carryback pursuant to

an election under Tax Code Section 172(b)(1)(H)) by the Debtors and/or their subsidiaries of NOLs and alternative minimum tax NOLs incurred in recent years, including 2008 and/or 2009, the amount and timing of any such refund(s) being uncertain as of the date hereof**, including, but not limited to, the Tentative Refund**.

**1.134.** ~~1.131.~~ Tentative Refund. That certain tax refund in the approximate amount of Fifty-Four Million Dollars ($54,000,000) received by the Debtors on November 4, 2010.

**1.135.** ~~1.132.~~ Trust Declaration. The Amended and Restated Trust Agreement among Accredited Home Lenders Holding Co., as depositor, Wells Fargo Bank, N.A., as Property Trustee, Wells Fargo Delaware Trust Company, as Delaware Trustee and the administrative trustees named therein dated January 11, 2007.

**1.136.** ~~1.133.~~ Trust Preferred Adversary Proceeding. That certain adversary proceeding commenced by the trustee under the Trust Preferred Indenture against certain Lone Star Entities, styled as *Wells Fargo Bank, N.A., Indenture Trustee vs. LSF5 Accredited Investments LLC*, Adversary Proceeding No. 09-53276.

**1.137.** ~~1.134.~~ Trust Preferred Common Securities. The common securities issued by the Accredited Preferred Statutory Trust I, which terms are governed by the provisions of the Trust Declaration.

**1.138.** ~~1.135.~~ Trust Preferred Guarantee. The guarantee by Holdco to satisfy all amounts owed pursuant to the Trust Preferred Indenture and Trust Declaration.

**1.139.** **Trust Preferred Holdco Distributions. The (A) Ten Million Dollar ($10,000,000) distribution to be made to the Trust Preferred Indenture Trustee by Consolidated Holdco on the Effective Date, plus (B) the first payments from the Tax Refund, not to exceeed Two Million Dollars ($2,000,000), which shall be made by the Plan Administrator to the Trust Preferred Indenture Trustee upon the later of (i) the Effective Date, if the Tax Refund shown as due on line 12 of the Amended 2008 Tax Return (but, for the avoidance of doubt, not including any amounts shown thereon as an overpayment taken into account in determining the amount of refund shown due on line 12) is final, not subject to further disgorgement or audit, and received after December 1, 2010 but prior to the Effective Date, or (ii) the date of the first receipts by the Liquidating Trustee of amounts on account of any Tax Refund shown as due on line 12 of the Amended 2008 Tax Return (but, for the avoidance of doubt, not including any amounts shown thereon as an overpayment taken into account in determining the amount of refund shown due on line 12), which are final, not subject to further disgorgement or audit, and received after December 1, 2010 by the Consolidated Debtors or the Liquidating Trustee, as applicable; provided, further, however, that if the final Tax Refund shown as due on line 12 of the Amended 2008 Tax Return (but, for the avoidance of doubt, not including any amounts shown thereon as an overpayment taken into account in determining the amount of refund shown due on line 12), after audit and final determination by the Internal Revenue Service, is less than Two Million Dollars ($2,000,000), neither the Trust Preferred Indenture Trustee nor any holder of the Trust Preferred Securities shall be entitled to receive additional Cash from any assets of the Liquidating Trust or from the Consolidated Holdco**

**Assets on account of any claims asserted against Consolidated Holdco, except as provided in § 5.8 of the Plan.  For the avoidance of doubt, the distribution is from the amounts, if any, received in excess of the Tentative Refund and shall not be paid from the Tentative Refund, and the Liquidating Trustee shall pay such amounts to the Plan Administrator upon when it becomes available for distribution pursuant to the terms described above.**

**1.140.   Trust Preferred Holders.  The holder of the Trust Preferred Securities.**

**1.141.**  ~~1.136.~~  Trust Preferred Indenture.   That certain Junior Subordinated Indenture between Accredited Home Lenders Holding Co. and Wells Fargo Bank, N.A., as trustee, dated as of January 11, 2007.

**1.142.**  ~~1.137.~~ Trust Preferred Indenture Trustee.  Wells Fargo Bank, N.A.

**1.143.**  ~~1.138.~~ Trust Preferred Note.  The junior subordinated note issued pursuant to the Trust Preferred Indenture.

**1.144.**  ~~1.139.~~ Trust Preferred Note Claim.  Any Claim for principal and interest under or on account of the obligations owed to the Trust Preferred Indenture Trustee or any Trust Preferred Holder asserted by the Trust Preferred Indenture Trustee by and through a proof of claim, which claim includes, but is not limited to, principal and interest as of the Petition Date and, if applicable, post-petition interest.

**1.145.**  ~~1.140.~~ Trust Preferred Note Junior Claim.  The Five Million Dollar ($5,000,000) Trust Preferred Note Claim against the Consolidated Debtors, which shall be liquidated, Allowed, and treated in accordance with the terms of this Plan.

~~1.141.   Trust Preferred Holdco Distributions.   The (A) Ten Million Dollar ($10,000,000) distribution to be made to the Trust Preferred Indenture Trustee by Consolidated Holdco on the Effective Date, plus (B) a subsequent distribution of up to Two Million Dollars ($2,000,000), which shall be made by the Plan Administrator to the Trust Preferred Indenture Trustee upon the later of (i) the Effective Date, if the Tax Refund shown as due on line 12 of the Amended 2008 Tax Return (but, for the avoidance of doubt, not including any amounts shown thereon as an overpayment taken into account in determining the amount of refund shown due on line 12) is final, not subject to further disgorgement or audit, and received after December 2010 but prior to the Effective Date, or (ii) the date of the first receipts by the Liquidating Trustee of amounts on account of any Tax Refund shown as due on line 12 of the Amended 2008 Tax Return (but, for the avoidance of doubt, not including any amounts shown thereon as an overpayment taken into account in determining the amount of refund shown due on line 12), which are final, not subject to further disgorgement or audit, and received after December 2010; provided, further, however, that if the final Tax Refund shown as due on line 12 of the Amended 2008 Tax Return (but, for the avoidance of doubt, not including any amounts shown thereon as an overpayment taken into account in determining the amount of refund shown due on line 12), after audit and final determination by the Internal Revenue Service, is less than Two Million Dollars ($2,000,000), neither the Trust Preferred Indenture Trustee nor any holder of the Trust Preferred Securities shall be entitled to receive additional Cash from any assets of the Liquidating Trust on account of any claims asserted against Consolidated Holdco, except as provided in § 5.8 of the Plan.  For~~

the avoidance of doubt, the distribution is from the amounts received in excess of the Tentative Refund and shall not be paid from the Tentative Refund.

1.142.  Trust Preferred Holders.  The holder of the Trust Preferred Securities.

**1.146.** 1.143. Trust Preferred Securities.  The preferred securities issued by the Accredited Preferred Statutory Trust I, which terms are governed by the provisions of the Trust Declaration.

**1.147.** 1.144. Unsecured Claim.  Each Claim, without interest or costs, that is not a Secured Claim, an Administrative Claim, a Priority Claim, a Priority Tax Claim, or a Subordinated Claim.

**1.148.** 1.145. Vendor.  Vendor Management Services, LLC, d/b/a Inzura Settlement Services, a Pennsylvania limited liability company, which entity shall be consolidated with Holdco pursuant to this Plan.

**1.149.** 1.146. Vendor Cash.  All Cash and other Assets held by Vendor.

**1.150.** 1.147. Viera Claims.  The Claims asserted by class representatives Michael Viera, Lori Scott, Helen Hayes and Aaron Smith, on their own behalf and on behalf of a certified class of former employees of Accredited Home Lenders, Inc., and the Claims of the members of that certified class, including Claims relating to professional fees incurred by counsel for such certified class **as provided under the Viera Settlement.**

**1.151.  Viera Settlement.  The settlement of the Claims asserted by class representatives Michael Viera, Lori Scott, Helen Hayes and Aaron Smith, on their own behalf and on behalf of a certified class of former employees of Accredited Home Lenders, Inc., and the Claims of the members of that certified class, including Claims relating to professional fees incurred by counsel for such certified class, as approved by the Bankruptcy Court upon the motion filed on November 29, 2010 and subsequently amended**.

Any capitalized terms used in the Plan, but not defined above, that are used in the Bankruptcy Code or Bankruptcy Rules shall have the meanings ascribed to them in the Bankruptcy Code or in the Bankruptcy Rules.

Whenever the context requires, references in this Plan to any person shall be deemed to be references to or to include, as appropriate, its respective successors, transferees and assigns. Terms shall include the plural as well as the singular.  Terms denoting any gender shall be deemed to include all genders.  Any accounting terms and phrases used herein and not otherwise defined herein shall have the meanings ascribed to such terms in conformity with generally accepted accounting principles.

The words, "this Plan," "hereto," "herein," "hereunder," "hereof," and expressions of similar import refer to this Plan as a whole, together with any appendices, schedules and exhibits hereto, and not to any particular article, section, subsection, clause or other portion of this Plan. References in this Plan to any agreement, instrument or other document (including references to

this Plan) shall be deemed to include references to such agreement, instrument or other document as amended, modified, varied, supplemented or replaced from time to time in accordance with its terms, the Bankruptcy Code or the Bankruptcy Rules, as may be applicable.

## 2. DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

For the purpose of this Plan, Claims are divided into the following Classes.  A proof of claim asserting a Claim which is properly included in more than one Class is included in each such Class to the extent that it qualifies within the description of such Class.

### 2.1.    Unclassified Claims:  Administrative Claims and Priority Tax Claims

Administrative Claims and Priority Tax Claims are not classified for purposes of voting or receiving distributions under the Plan.  Rather, all such Claims are treated separately as unclassified Claims pursuant to the terms set forth in Article 3 of this Plan.

### 2.2.    Classified Claims of Consolidated Holdco

Class 1 H:      Secured Claims against Consolidated Holdco (***Unimpaired***)

Class 2 H:      All Allowed Unsecured Claims against Consolidated Holdco entitled to priority under §§ 507(a)(3) through (a)(7) of the Bankruptcy Code (***Unimpaired***)

Class 3 H:      All Allowed Unsecured Claims against Consolidated Holdco **affirmatively agreeing to and** accepting the Creditor Release (***Impaired***)

Class 4 H:      All Allowed Unsecured Claims against Consolidated Holdco, except for separately classified Claims (***Impaired***)

Class 5 H:      All Allowed Unsecured Claims against Consolidated Holdco held by LSF-MRA, LLC (***Impaired***)

Class 6 H:      All Allowed Unsecured Claims against Consolidated Holdco held by the REIT (***Impaired***)

Class 7 H:      All Consolidated Holdco Convenience Claims (***Impaired***)

Class 8 H:      All Claims against Consolidated Holdco arising from or related to Trust Preferred Note, Trust Preferred Note Claim, **the Trust Preferred Guarantee,** or the Trust Preferred Securities (***Impaired***)

Class 9 H:      The REIT Preferred Holders Subordinated Guaranty Claims (***Impaired***)

Class 10 H:     All other Subordinated Claims against Consolidated Holdco, except for the Claims separately classified (***Impaired***)

Class 11 H:     All Interests in Consolidated Holdco (***Impaired***)

2.3.    Classification of Claims against the Consolidated Debtors.

Class 1 C:      Secured Claims against the Consolidated Debtors (*Unimpaired*)

Class 2 C:      All Allowed Unsecured Claims against the Consolidated Debtors entitled to priority under §§ 507(a)(3) through (a)(7) of the Bankruptcy Code (*Unimpaired*)

Class 3 C:      All Allowed Unsecured Claims against the Consolidated Debtors **affirmatively agreeing to and** accepting the Creditor Release (*Impaired*)

Class 4 C:      All Allowed Unsecured Claims against the Consolidated Debtors, except for separately classified Claims (*Impaired*)

Class 5 C:      All Allowed Unsecured Claims against the Consolidated Debtors held by the Lone Star Entities (*Impaired*)

Class 6 C:      All Consolidated Debtors Convenience Claims (*Impaired*)

Class 7 C:      The REIT Junior Claim (*Impaired*)

Class 8 C:      All Subordinated Claims against the Consolidated Debtors (*Impaired*)

Class 9 C:      All Claims against the Consolidated Debtors arising from or related to Trust Preferred Note, Trust Preferred Note Claims, or the Trust Preferred Securities (*Impaired*)

Class 10 C:     All Interests in the Consolidated Debtors (*Impaired*)

2.4.    Subordination and Subrogation Rights and Claims of Subordination and Subrogation.  Pursuant to § 510(a) of the Bankruptcy Code, except as otherwise agreed to by a creditor, Class of creditors, or as otherwise provided under the Plan, nothing in this Plan is intended to affect the terms or enforceability of any subordination or subrogation agreement entered into prior to the Effective Date by any creditor or group of creditors in favor of any other creditors **or group of creditors** of the Debtors in respect of any obligations owing by the Debtors; provided, however, that any disagreement with the priorities or distributions set forth in the Plan Support Agreement and Term Sheet or in the Plan shall be raised prior to, ahead of and decided at the hearing on confirmation of the Plan; that, absent any timely objections or challenges, such priorities and distributions (including the waiver or subordination and subrogation) shall be deemed binding on such creditors and Classes of creditors; and, that if the decisions of the Bankruptcy Court relating to confirmation of this Plan differ from the priorities or treatment under the Plan, then all issues with respect to contractual subrogation and subordination shall be governed pursuant to such decision.  To the extent that the priorities set forth in the Plan conflict with the contractual subordination and subrogation provisions of any Holders of Class of Claims, the Plan shall govern and control.

## 3.    TREATMENT OF UNCLASSIFIED CLAIMS

3.1.    Administrative Claims

(a)     Non-Professional Fee Administration Claims

Any Holder of an Allowed Administrative Claim shall receive the full amount of the Holder's Allowed Administrative Claim in one Cash payment from the Consolidated Debtors, or Consolidated Holdco, **Liquidating Trustee, or Plan Administrator,** as applicable, as part of the Effective Date Distribution.  An Administrative Claim that is a Disputed Claim shall not receive any distribution unless and until such Claim becomes an Allowed Administrative Claim.  Upon the entry of a Final Order allowing an Administrative Claim, the Holder of that Claim shall receive the full amount of such Claim in one Cash payment  from the Liquidating Trust**, Plan Administrator, Consolidated Debtors,** or Consolidated Holdco, as applicable.   The ~~Debtor~~**Debtors**, Liquidating Trustee, or Plan Administrator, as applicable, may agree to less favorable treatment of such Allowed Administrative Claim.  An Administrative Claim not filed prior to the Administrative Claim Bar Date as provided in this Plan shall be deemed forever waived and barred, the Holder thereof shall not be entitled to a distribution under the Plan, and the Debtors, their Estates, the Plan Administrator, and the Liquidating Trustee shall have no obligation with respect thereto.

With regard to fees and expenses owed by the Debtors in connection with services provided by AP Services, LLC ("APS"), including those provided by the Chief Restructuring Officer (collectively the "CRO Expenses"), since the Petition Date, such CRO Expenses shall be paid pursuant to the terms of the *Order Under Bankruptcy Code Sections 105(a) and 363(B) Authorizing the Retention and Employment of AP Services, LLC to Provide Interim Management and Restructuring Services and Designating Meade Monger as Chief Restructuring Officer and Michael Murphy as Chief Administrative Officer to the Debtors,* Nunc Pro Tunc *to the Petition Date* entered by the Bankruptcy Court on or about July 2, 2009, Docket No. 282.

(b)     Professional Fee Claims

Unless otherwise expressly provided in the Plan, a Professional Fee Claim will be Allowed only if:  (i) on or before forty-five (45) days after the Effective Date (the "Professional Fee Claim Bar Date"), the entity holding such Professional Fee Claim files with the Court a final fee application and serves the application on counsel to the Debtors, counsel to the Committee, the Liquidating Trustee, and the U.S. Trustee; and (ii) the Court enters a Final Order allowing such Claim.

Any party in interest, including the Liquidating Trustee, but excluding the Plan Administrator, may file an objection to such application within the time provided by the Bankruptcy Rules or within any other period that the Bankruptcy Court establishes **and as provided under the Plan**, except that the Lone Star Entities, the Trust Preferred Indenture Trustee, and the Trust Preferred Holders waive their right to object to or challenge the allowance or award of any Professional Fee Claims.  Entities holding Professional Fee Claims that do not timely file and serve a fee application will be forever barred from asserting such Professional Fee Claim against the Debtors, the Estates, the Liquidating Trust**, the Plan Administrator,** or their respective property.

The Consolidated Debtors or the Liquidating Trustee, as applicable, will pay or cause to be paid an Allowed Professional Fee Claim, in Cash, within the later of (i) five (5) days after the conditions specified in this Section 3.1(b) of the Plan are satisfied, or (ii) five (5) days after the entry of a Final Order allowing such Allowed Professional Fee Claims.

(c)     Consolidated Holdco Professional Fee Payment

On the Effective Date, Consolidated Holdco shall make the Consolidated Holdco Professional Fee Claim Payment to the Consolidated Debtors, which shall fully satisfy Consolidated Holdco's liabilities for Professional Fee Claims and CRO Expenses. Consolidated Holdco shall not be entitled to any refund of the Professional Fee Claim Payment based on any reductions **or disallowance** of such Claims.

3.2.    Priority Tax Claims

Any Holder of an Allowed Priority Tax Claim shall receive the full amount of the Holder's Allowed Priority Tax Claim in one Cash payment from Consolidated Holdco or the Consolidated Debtors, as applicable, as part of the Effective Date Distribution. A Priority Tax Claim that is a Disputed Claim shall not receive any distribution unless and until such Claim becomes an Allowed Priority Tax Claim. Upon the entry of a Final Order allowing an Priority Tax Claim after the Effective Date, the Holder of that Claim shall receive the full amount of such Claim in one Cash payment from Consolidated Holdco or the Liquidating Trust, as applicable, except as otherwise provided under Section 3.3 of the Plan. The applicable Liquidating Trustee, Plan Administrator, or Debtor and the Holder of an Allowed Priority Tax Claim may agree to less favorable treatment of such Allowed Priority Tax Claim. To the extent that some or all of an Allowed Secured Claim for taxes does not qualify as a Priority Tax Claim, it will be classified as a Class 1 Secured Claim.

3.3.    IRS Priority Tax Claims.

The Holder of the IRS Priority Tax Claims shall be paid in full from the Tax Refunds. The IRS Priority Tax Claims shall be treated as an obligation of the Consolidated Debtors or the Liquidating Trust. For the avoidance of doubt, the "protective" administrative priority claims filed by the IRS, including Claim No. 1123 in the approximate amount of $54 million, are Disputed Claims pending resolution of issues relating to the Debtors' Amended 2008 Tax Return.

4.      **TREATMENT OF CLASSES OF CLAIMS AND INTERESTS UNDER THE CONSOLIDATED HOLDCO PLAN**

4.1.    Class 1 H - Secured Claims. Class 1 H Secured Claims are unimpaired. Any Holder of a Class 1H Allowed Secured Claim shall, at the sole option of Consolidated Holdco, receive (a) the full amount of the Holder's Class 1 H Allowed Secured Claim in one Cash payment as part of the Effective Date Distribution from Consolidated Holdco, (b) all or a portion of the Assets securing the Allowed Secured Claim, or (c) subject to the requirements of § 1124(2) of the Bankruptcy Code, the legal, equitable, and contractual rights of the Holder of such Allowed Secured Claim shall be reinstated. A Class 1 H Secured Claim that is a Disputed Claim

shall not receive any Distribution unless and until such Claim becomes a Class 1 H Allowed Secured Claim. Upon the entry of a Final Order allowing the Class 1 H Allowed Secured Claim against Consolidated Holdco after the Effective Date, the Holder of that Claim shall receive, at the sole option of the Plan Administrator, (a) the full amount of such Claim in one Cash payment from Consolidated Holdco, (b) all or a portion of the Assets securing the Allowed Secured Claim, or (c) subject to the requirements of § 1124(2) of the Bankruptcy Code, the legal, equitable and contractual rights of the Holder of such Allowed Secured Claim shall be reinstated. Consolidated Holdco or the Plan Administrator and the Holder of a Class 1 H Allowed Secured Claim may agree to less favorable treatment of such Class 1 H Allowed Secured Claim.

**BECAUSE CLASS 1 H CLAIMS ARE NOT IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 1 H CLAIMS ARE NOT ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.2.    Class 2 H - Priority Claims, other than Priority Tax Claims.  Class 2H Priority Claims are unimpaired.  Subject to §§ 3.1 and 3.2 of the Plan, any Holder of a Class 2 H Allowed Priority Non-Tax Claim shall receive the full amount of the Holder's Class 2 H Allowed Priority Non-Tax Claim in one Cash payment as part of the Effective Date Distribution from Consolidated Holdco.  A Class 2 H Priority Non-Tax Claim that is a Disputed Claim shall not receive any distribution unless and until such Claim becomes a Class 2 H Allowed Priority Non-Tax Claim.  Upon the entry of a Final Order allowing the Class 2 H Allowed Priority Non-Tax Claim against Consolidated Holdco after the Effective Date, the Holder of that Claim shall receive the full amount of such Claim in one Cash payment from Consolidated Holdco. Consolidated Holdco or the Plan Administrator and the Holder of a Class 2 H Allowed Priority Non-Tax Claim may agree to less favorable treatment of such Class 2 H Allowed Priority Non-Tax Claim.

**BECAUSE CLASS 2 H CLAIMS ARE NOT IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 2 H CLAIMS ARE NOT ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.3.    Class 3 H - General Unsecured Claims against Consolidated Holdco Accepting the Creditor Release.  The Class 3 H Claims are impaired.  Class 3 H consists of Allowed Unsecured Claims against Consolidated Holdco whose Holders cast a timely Ballot **affirmatively** accepting **and agreeing to** the Creditor Release or provide written consent ~~for~~ **to** the Creditor Release to Consolidated Holdco.  Subject to §§ 3.1 and 3.2 of the Plan, Holders of Class 3 H Allowed Claims shall receive distributions equal to their Pro Rata Share of any distributions of Consolidated Holdco Assets made by the Plan Administrator in accordance with the Plan, and continuing on each Subsequent Distribution Date.  In calculating the distribution to the Holders of Class 3 H Claims, the Pro Rata Share shall include in the calculation the Allowed Claims and Disputed Claims included in Class 3 H, 4 H, 5 H, and 6 H.  Until the Holders of the Class 3 H Allowed Claims are satisfied**,** in full ~~with interest thereon from the Petition Date through the date on which such Claim is paid in full calculated at the federal judgment rate in effect as of the Petition Date~~**without any post-petition interest thereon**, the Holder of Class 4~~3~~ H Allowed Claims shall be entitled to receive their Pro Rata Share of distributions made by the Plan Administrator in accordance with the Plan.

In the event of entry of a Final Order determining a Disputed Claim to be an Allowed Claim, the Plan Administrator in his sole discretion, may make an Interim Distribution to the Holder of such Allowed Claim from the **reserve established for such Disputed Claim, with the balance of the reserve, if any, held for such Disputed Claim to be released from the reserve and made part of** Consolidated Holdco Assets **available for general distribution under the Plan**. The Holders of Class 3 H Allowed Claims shall thereafter receive their Pro Rata Share of Subsequent Distributions from Consolidated Holdco.

In the event Class 3 H votes in favor of the Plan, the payment of Class 5 H Claims will be subordinated and junior to the payment of Class 3 H Claims, any distributions that would have been made to Holders of **Allowed** Class 5 H Claims shall instead be made to Holders of Class 3 H Claims and Class 6 H Claims (if Class 6 H also votes to in favor of the Plan) on a Pro Rata Basis, and **Holders of Allowed** Class 5 H Claims shall not receive any distribution until Class 3 H Claims **(and possibly Classes 6H and 9H claims)** are paid in full under the Plan, and all subrogation rights of Class 5 H shall be deemed waived and released. **In calculating, for a Holder of an Allowed Class 3 H Claim, its Pro Rata Share of the distribution to which Holders of Class 5 H Claim would be entitled, the Plan Administrator or Consolidated Holder, as applicable shall aggregate the total amount of the Class 3 H and Class 6 H Claims, whether Allowed or Disputed, on the Effective Date.**

**BECAUSE CLASS 3 H CLAIMS ARE IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 3 H CLAIMS ARE ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.4.     Class 4 H - General Unsecured Claims against Consolidated Holdco, except for separately classified Claims. The Class 4 H Claims are impaired. Class 4 H consists of Allowed Unsecured Claims against Consolidated Holdco that are not separately classified under the Plan. Subject to §§ 3.1 and 3.2 of the Plan, Holders of Class 4 H Allowed Claims shall receive distributions equal to their Pro Rata Share of any distributions of Consolidated Holdco Assets made by the Plan Administrator in accordance with the Plan, and continuing on each Subsequent Distribution Date. In calculating the distribution to the Holders of Class 4 H Claims, the Pro Rata Share shall include in the calculation the Allowed Claims and Disputed Claims included in Class 3 H, 4 H, 5 H, and 6 H. Until the Holders of the Class 4 H Allowed Claims are satisfied in full ~~with interest thereon from the Petition Date through the date on which such Claim is paid in full calculated at the federal judgment rate in effect as of the Petition Date~~**, without any post-petition interest thereon**, the Holder of Class 4 H Allowed Claims shall be entitled to receive their Pro Rata Share of distributions made by the Plan Administrator in accordance with the Plan.

In the event of entry of a Final Order determining a Disputed Claim to be an Allowed Claim, the Plan Administrator in his sole discretion, may make an Interim Distribution to the Holder of such Allowed Claim from the **reserve established for such Disputed Claim, with the balance of the reserve, if any, held for such Disputed Claim to be released from the reserve and made part of** Consolidated Holdco Assets **available for general distribution under the Plan**. The Holders of Class 4 H Allowed Claims shall thereafter receive their Pro Rata Share of Subsequent Distributions from Consolidated Holdco.

For the avoidance of doubt, Holders of Allowed Class 4 H Claims opting out of the Creditor Release shall not be entitled to receive any distributions that would have been made to Holders of **Allowed** Class 5 H Claims.

**BECAUSE CLASS 4 H CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 4 H CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN**.

4.5.    <u>Class 5 H - Unsecured Claims Against Consolidated Holdco held by LSF-MRA, LLC</u>.  The Class 5 H Claims <u>are</u> impaired.  Class 5 H is the **Allowed** Claim of LSF-MRA, LLC in the amount of $96,764,904.97.  Subject to the provisions of §§ 3.1, 3.2, 4.3, 4.5 and 4.6 of the Plan, Holders of **Allowed** Class 5 H ~~Allowed~~  Claims shall receive a Pro Rata Share of any distributions of Consolidated Holdco Assets made by the Plan Administrator in accordance with the Plan, and continuing on each Subsequent Distribution Date.  In calculating the distribution to the Holder of Class 5 H Claims, the Pro Rata Share shall include in the calculation the Allowed Claims and Disputed Claims included in Class 3 H, 4 H, 5 H, and 6 H.  Until the Holders of the Class 5 H Allowed Claims are satisfied in full ~~with interest thereon from the Petition Date through the date on which such Claim is paid in full calculated at the federal judgment rate in effect as of the Petition Date~~**, without any post-petition interest thereon**, the Holder of Class 5 H Allowed Claims shall be entitled to receive their Pro Rata Share of distributions made by the Plan Administrator in accordance with the Plan.

Notwithstanding the foregoing, in the event Class 3 H votes in favor of the Plan, the payment of **Allowed** Class 5 H Claims will be subordinated and junior to the payment of Class 3 H Claims, and **Holders of Allowed** Class 5 H Claims shall not receive any distribution until **Holders of Allowed** Class 3 H Claims are paid in full or paid as otherwise provided under the Plan, and such distributions shall be treated and distributed as provided under this Plan.

In the event Class 6 H votes in favor of the Plan and does not object to the Plan, the payment of **Allowed** Class 5 H Claims will be subordinated and junior to the payment of Class 6 H Claims and **Holders of Allowed** Class 5 H Claims shall not receive any distribution until **Holders of** Class 6 H Claims **(and potentially Class 3 H  and Class 9 H Claims)** are paid in full under the Plan, and such distributions shall be treated and distributed as  provided under this Plan and all subrogation rights of Class 5 H Claims shall be deemed waived and released.  **In calculating, for a Holder of an Allowed Class 3 H or Allowed Class 6 H Claim, its Pro Rata Share of the Distribution to which Holders of Class 5 H Claims would be entitled, the Plan Administrator or Consolidated Holdco, as applicable, shall aggregate the total amount of Class 3 H and Class 6 H Claims, whether Allowed or Disputed, on the Effective Date.**

**The Holders of Class 5 H Claims shall be deemed to have waived any rights of subrogation with respect to the subordination of their Class 5 H Claims.**

**BECAUSE CLASS 5 H CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 5 H CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.6.   Class 6 H - Unsecured Claims against Consolidated Holdco Held by the REIT. The Class 6 H ~~Claims are~~**Claim is** impaired.  The Class 6 H Claim of the REIT shall be fixed and Allowed as an Unsecured Claim against Consolidated Holdco in the amount of Twenty Million Dollars ($20,000,000) and, on account of such Claim, the Holder of the Allowed Class 6 H Claim shall receive a Pro Rata Share of any distributions of Consolidated Holdco Assets made by the Plan Administrator in accordance with the Plan, and continuing on each Subsequent Distribution Date.  In calculating the distribution to the Holder of Class 6 H ~~Claims~~**Claim**, the Pro Rata Share shall include in the calculation the Allowed Claims and Disputed Claims included in Class 3 H, 4 H, 5 H~~,~~ and 6 H**.  Until the Holder of the Class 6 H Claim is satisfied in full, without any post-petition interest thereon, the Holder of the Class 6 Claim shall be entitled to receive its Pro Rata Share of distributions made by the Plan Administrator in accordance with the Plan**.  The Holder of Allowed Class 6 H Claims will waive its right to enforce any subordination provisions relating to Class 8 H Claims.

In the event Class 6 H votes in favor of the Plan, the payment of **Allowed** Class 5 H Claims will be subordinated and junior to the payment of **the** Class 6 H ~~Claims~~**Claim**, any distributions that would have been made to Holders of **Allowed** Class 5 H Claims shall instead be made to ~~Holders~~**Holder** of **the** Class 6 ~~Claims~~ **Claim (**and Class 3 H Claims (if Class 3 H also votes in favor of the Plan) **and Class 9 H Claims)** on a Pro Rata Basis, and Class 5 H Claims shall not receive any distribution until Class 3 H ~~and~~**,** Class 6 H**, and Class 9 H** Claims are paid in full under the Plan.  **In calculating, for a Holder of an Allowed Class 6 H Claim, its Pro Rata Share of the Distribution to which Holders of Class 5 H Claims would be entitled, the Plan Administrator or Consolidated Holdco, as applicable, shall aggregate the total amount of Class 3 H and Class 6 H Claims, whether Allowed or Disputed, on the Effective Date.**

**BECAUSE CLASS 6 H CLAIMS ARE IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 6 H CLAIMS ARE ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN**.

4.7.   Class 7 H - Consolidated Holdco Convenience Class Claims.  The Class 7 H Claims are impaired.  Each Holder of an Allowed Consolidated Holdco Convenience Claim in Class 7 H shall receive **the lesser of (a)** sixty-five percent (65%) of the Holder's Allowed Class 7 H Convenience Claim in one Cash payment as part of the Effective Date Distribution from Consolidated Holdco **or (b) their Pro Rata Share of One Million Five Hundred Thousand Dollars ($1,500,000)**, or such other, less favorable treatment as is agreed upon by Consolidated Holdco and the Holder of such Consolidated Holdco Convenience Claim.  Any Holder of an Allowed General Unsecured Claim against Consolidated Holdco, other than Claims in Class 4 H, 5 H, 6 H, 8 H, and 9 H, may make the Consolidated Holdco Convenience Class Election.  Such election must be made on a Ballot that is properly and timely cast in accordance with applicable law and orders of the Bankruptcy Court.

**BECAUSE CLASS 7 H CLAIMS ARE IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 7 H CLAIMS ARE ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.8.    Class 8 H - Claims against Consolidated Holdco relating to Accredited Preferred Securities Trust I.  The Class 8 H Claims are impaired.  Class 8 H consists of Allowed Claims against Holdco that relate to the Trust Preferred Securities, Trust Preferred Notes, **Trust Preferred Guarantee,** and the Trust Preferred Note Claims, Claims held or asserted or that could be asserted by the Trust Preferred Indenture Trustee, and Claims held or asserted or that could be asserted by the Trust Preferred Holders **or other Person**.  The Claims of Holders of Allowed Class 8 H Claims shall be fixed and  Allowed as a single Unsecured Claim in favor of the Trust Preferred Indenture Trustee against Consolidated Holdco, and shall be deemed fully satisfied and paid in full by the Lone Star Trust Preferred Settlement Payment and the Trust Preferred Holdco Distributions to the Trust Preferred Indenture Trustee.

**BECAUSE CLASS 8 H CLAIMS ARE IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 8 H CLAIMS ARE ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.9.    Class 9 H –-: REIT Preferred Holders' Subordinated Guaranty Claims.  The Class 9 H Claims are impaired.  Unless otherwise agreed to by the Committee and the REIT Committee, on the Effective Date (i) the Holders of Allowed Class 9 H Claims shall not be entitled to receive any direct distributions from Consolidated Holdco until all Holders of Allowed Claims in Classes 3 H, 4 H, ~~5 H,~~ and 6 H have been paid in full as provided under the Plan prior to the Consolidated Holdco Assets being fully administered, and (ii) the Holders of Allowed Class 9 H Claims shall not be entitled to any reports or notices from Consolidated Holdco or the Plan Administrator, until the Plan Administrator determines that such holders are likely to receive a direct distribution.  If the Holders of Class 3 H, 4 H,  ~~5 H,~~ and 6 H Claims are not paid in full as provided under the Plan, or if the Consolidated Holdco Assets are fully administered  prior to the time when such senior unsecured Claims are paid in full, then the Holders of Allowed Class 9 H Claims shall not receive any distribution under the Plan.  ~~After the Holders of Class 3 H, 4 H, 5 H, and 6 H Claims are paid in full as provided under the Plan prior to the full administration of the Consolidated Holdco Assets, the Holders of Allowed Class 9 H Claims shall receive a Pro Rata Share of any Subsequent Distributions made after such time, and their Pro Rata Share of the Consolidated Holdco Residual Assets, as applicable.~~

**In the event the Plan Administrator determines that the Holders of Class 9 H Claims are likely to receive a direct distribution, the Plan Administrator shall seek an order of the Bankruptcy Court setting a bar date for the filing of proofs of Subordinated Guaranty Claims by REIT Preferred Security Holders. Such proofs of Subordinated Guaranty Claims shall contain a Creditor Release provision pursuant to which REIT Preferred Security Holders may elect to provide the Creditor Release.**

**After the Holders of Class 3 H, 4 H, and 6 H Claims are paid in full as provided under the Plan prior to the full administration of the Consolidated Holdco Assets, the Holders of Allowed Class 9 H Claims shall receive a Pro Rata Share of any Subsequent Distributions made after such time, and their Pro Rata Share of the Consolidated Holdco Residual Assets, as applicable.**

**The payment of Class 5 H Claims will be subordinated and junior to payments Holders of Class 9 H Claims who elect to provide the Creditor Release.  Any distributions**

**that would have been made on a Pro Rata basis to Holders Class 5 H Claims shall instead be made to such Holders of Class 9 H Claims who elect to provide the Creditor Release, and Class 5 H Claims shall not receive any distribution until such Class 9 H Claims are paid in full under the Plan.**

**In the event the REIT Committee shall advise the Debtors in writing not later than five (5) days before the Confirmation Hearing of their request to transfer title to the common stock of the REIT Pro Rata to the REIT Preferred Security Holders and the Debtors and the Committee consent to such request, Holdco shall abandon and transfer title to the common stock of the REIT Pro Rata to the REIT Preferred Shareholders.**

**BECAUSE CLASS 9 H CLAIMS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTIONS UNDER THE PLAN, THE HOLDERS OF CLASS 9 H CLAIMS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

4.10.  Class 10 H - Subordinated Claims against Consolidated Holdco **(including Late Filed Claims)**.  The Class 10 H Claims are impaired.  Class 10 H consists of Claims against Consolidated Holdco that are not separately classified and are subordinated for any reason under § 510 of the Bankruptcy Code, and**or are** Late Filed Claims.  Holders of Class 10 H Claims shall not receive any distributions until the Holders of Class 3 H, 4 H, 5 H, 6 H, and 9 H Claims against Consolidated Holdco have been ~~paid in full with~~**satisfied, without any post-petition** interest **thereon,** as provided under the Plan, in which event the holders of Class 10 H Claims shall receive their Pro Rata Share of Subsequent Distributions and their Pro Rata Share of the Consolidated Holdco Residual Assets, as applicable.

**BECAUSE CLASS 10 H CLAIMS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTIONS UNDER THE PLAN, THE HOLDERS OF CLASS 10 H CLAIMS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

4.11.  Class 11 H- Interests in Consolidated Holdco.  The Class 11 H Claims are impaired.  Class 11 H consists of the Interests in Consolidated Holdco, including those Interests held by the Lone Star Entities.  All Interests, including those Interests held by the Lone Star Entities, shall be canceled after the Effective Date and in accordance with the terms of the Plan, and the Holders thereof shall receive no distribution under the Plan, unless Holders of all Class 10 H Claims against Consolidated Holdco are ~~paid in full with~~**satisfied, without any post-petition** interest **thereon,** as provided under the Plan, in which event the holders of Class 11 H Interests shall receive their Pro Rata Share of Subsequent Distributions and their Pro Rata Share of the Consolidated Holdco Residual Assets, as applicable.

**BECAUSE CLASS 11 H INTERESTS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTIONS UNDER THE PLAN, THE HOLDERS OF CLASS 11 H INTERESTS ARE CONCLUSIVELY PRESUMED TO HAVE**

**REJECTED THE PLAN AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

## 5. TREATMENT OF CLASSES OF CLAIMS AND INTERESTS UNDER THE CONSOLIDATED DEBTORS PLAN

5.1. <u>Class 1 C - Secured Claims against the Consolidated Debtors</u>. Class 1 C Secured Claims are unimpaired. Any Holder of a Class 1C Allowed Secured Claim shall, at the sole option of the Consolidated Debtors, receive (a) the full amount of the Holder's Allowed Class 1 C Secured Claim in one Cash payment as part of the Effective Date Distribution from the Consolidated Debtors, (b) all or a portion of the Assets securing the Allowed Secured Claim, or (c) subject to the requirements of § 1124(2) of the Bankruptcy Code, the legal, equitable, and contractual rights of the Holder of such Allowed Secured Claim shall be reinstated. A Class 1 C Secured Claim that is a Disputed Claim shall not receive any Distribution unless and until such Claim becomes an Allowed Class 1 C Secured Claim. Upon the entry of a Final Order allowing the Allowed Class 1C Secured Claim against the Consolidated Debtors after the Effective Date, the Holder of that Claim shall, at the sole option of the Liquidating Trustee, receive (a) the full amount of such Claim in one Cash payment from the Liquidating Trust, (b) all or a portion of the Assets securing the Allowed Secured Claim, or (c) subject to the requirements of § 1124(2) of the Bankruptcy Code, the reinstatement of the legal, equitable and contractual rights of the Holder of such Allowed Secured Claim. The Liquidating Trustee or Consolidated Debtors and the Holder of an Allowed Class 1 C Secured Claim may agree to less favorable treatment of such Allowed Class 1 C Secured Claim.

**BECAUSE CLASS 1 C CLAIMS ARE NOT IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 1 C CLAIMS ARE NOT ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

5.2. <u>Class 2 C - Priority Claims, other than Priority Tax Claims, against the Consolidated Debtors</u>. The Class 2 C Claims are unimpaired. Any Holder of a Class 2 C Allowed Priority Non-Tax Claim shall receive the full amount of the Holder's Class 2 C Allowed Priority Non-Tax Claim in one Cash payment as part of the Effective Date Distribution from the Consolidated Debtors. A Class 2 C Priority Non-Tax Claim that is a Disputed Claim shall not receive any distribution unless and until such Claim becomes a Class 2 C Allowed Priority Non-Tax Claim. Upon the entry of a Final Order allowing the Class 2 C Allowed Priority Non-Tax Claim against the Consolidated Debtors after the Effective Date, the Holder of that Claim shall receive the full amount of such Claim in one Cash payment from the Liquidating Trust. The Liquidating Trustee or Debtor and the Holder of a Class 2 C Allowed Priority Non-Tax Claim may agree to less favorable treatment of such Class 2 C Allowed Priority Non-Tax Claim.

**BECAUSE CLASS 2 C CLAIMS ARE NOT IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 2 C CLAIMS ARE NOT ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

5.3. <u>Class 3 C - General Unsecured Claims against the Consolidated Debtors Accepting the Creditor Release</u>. The Class 3 C Claims <u>are</u> impaired. Class 3 C consists of

Allowed Unsecured Claims against the Consolidated Debtors whose Holders cast a timely Ballot **affirmatively** accepting **and agreeing to** the Creditor Release. Holders of Allowed Class 3 C and 4 C Claims shall be entitled to receive a Pro Rata Share of interests in the Liquidating Trust and are entitled to receive distributions equal to their Pro Rata Share of any distributions of the Liquidating Trust Assets made by the Liquidating Trustee out of the Liquidating Trust in accordance with the Liquidating Trust Agreement and the Plan, and continuing on the dates of Subsequent Distributions, equal to their Pro Rata Share of any Subsequent Distributions of Liquidating Trust Assets made by the Liquidating Trustee out of the Liquidating Trust, as provided under the Plan.

In addition to the distributions described above, Holders of **Allowed** Class 3 C ~~General Unsecured~~ Claims **as of the Effective Date** shall be entitled to receive a Pro Rata Share of the Lone Star Creditor Release Settlement Payment subject to the terms of this Plan. ~~Holders of Class 3 C General Unsecured Claims must accept the Creditor Release.~~ The Liquidating Trustee **and the Disbursing Agent** shall hold and distribute the Lone Star Creditor Release Settlement Payment pursuant to the terms of this Plan.

In the event of entry of a Final Order determining a Disputed Claim to be an Allowed Claim, the Holder of the subject Claim shall receive its Pro Rata Share of interests in the Liquidating Trust, and the Liquidating Trustee, in his sole discretion, may make an Interim Distribution to the Holder of such Allowed Claim from the Liquidating Trust Reserve, or may release funds from the Liquidating Trust Reserve to such Holder in a Subsequent Distribution. The Holders of Allowed Class 3 C Claims shall thereafter receive their Pro Rata Share of Subsequent Distributions from the Liquidating Trust.

Upon full administration of the Assets vested in the Liquidating Trust, the Liquidating Trustee shall make the Final Distribution, and all obligations under the Plan of the Liquidating Trustee to the Holders of Allowed Class 3 C Claims shall be satisfied. In the event that the Holders of Allowed Class 3 C Claims are paid in full, ~~together with interest thereon from the Petition Date through the date on which such Claim is paid in full calculated at the federal judgment rate in effect as of the Petition Date~~**without any post-petition interest**, any funds remaining in the Liquidating Trust Account, net of expenses, shall be distributed first to the Holders of the Allowed Class 4 C Claims and then to the ~~Holders~~**Holder** of **the** Allowed Class 7 C ~~Claims~~**Claim** in accordance with the provisions of the Plan.

**BECAUSE CLASS 3 C CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 3 C CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

5.4.    <u>Class 4 C - General Unsecured Claims against the Consolidated Debtors, except for separately classified Claims</u>. The Class 4 C Claims <u>are</u> impaired. Class 4 C consists of Allowed Unsecured Claims against the Consolidated Debtors that are not separately classified under this Plan. Holders of Allowed Class 3 C and 4 C Claims shall be entitled to receive a Pro Rata Share of interests in the Liquidating Trust and are entitled to receive distributions equal to their Pro Rata Share of any distributions of the Liquidating Trust Assets made by the Liquidating Trustee out of the Liquidating Trust in accordance with the Liquidating Trust Agreement, and continuing on each Subsequent Distribution Date, equal to their Pro Rata Share of any

Subsequent Distributions of Liquidating Trust Assets made by the Liquidating Trustee out of the Liquidating Trust.

For the avoidance of doubt, Holders of Allowed Class 4 C Claims opting out of the Creditor Release shall not be entitled to receive any distributions from the Lone Star Creditor Release Settlement Payment.

**In the event of entry of a Final Order determining a Disputed Claim to be an Allowed Claim, the Holder of the subject Claim shall receive its Pro Rata Share of interests in the Liquidating Trust, and the Liquidating Trustee, in his sole discretion, may make an Interim Distribution to the Holder of such Allowed Claim from the Liquidating Trust Reserve, or may release funds from the Liquidating Trust Reserve to such Holder in a Subsequent Distribution. The Holders of Allowed Class 4 C Claims shall thereafter receive their Pro Rata Share of Subsequent Distributions from the Liquidating Trust.**

Upon full administration of the Assets vested in the Liquidating Trust, the Liquidating Trustee shall make the Final Distribution, and all obligations under the Plan of the Liquidating Trustee to the Holders of Allowed Class 4 C Claims shall be satisfied. In the event that the Holders of Allowed Class 4C Claims are paid in full, ~~together with~~**without any post-petition** interest thereon ~~from the Petition Date through the date on which such Claim is paid in full calculated at the federal judgment rate in effect as of the Petition Date~~, any funds remaining in the Liquidating Trust Account, net of expenses, shall be distributed to the Holders of Allowed Class 7 C Claims in accordance with the provisions of the Plan.

**BECAUSE CLASS 4 C CLAIMS _ARE_ IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 4 C CLAIMS _ARE_ ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

5.5.     Class 5 C - Unsecured Claims Against the Consolidated Debtors held by the Lone Star Entities. The Class 5 C Claims are impaired. The Claims of the Lone Star Entities against the Consolidated Debtors shall be waived, released, and expunged, and shall receive no distributions under this Plan.

**BECAUSE CLASS 5 C CLAIMS _ARE_ IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 5 C CLAIMS _ARE_ ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

5.6.     Class 6 C - Consolidated Debtors Convenience Class Claims. The Class 6 C Claims are impaired. On the Effective Date, or as soon as practicable thereafter, each Holder of an Allowed Consolidated Debtor Convenience Claim in Class 6 C shall receive seventy-five percent (75%) of the Holder's Allowed Class 6 C Convenience Claim in one Cash payment as part of the Effective Date Distribution from the Consolidated Debtors, or such other less favorable treatment as is agreed upon by the Consolidated Debtors and the Holder of such Allowed Consolidated Debtor Convenience Claim. Any Holder of an Allowed General Unsecured Claim against the Consolidated Debtors, other than Claims in Class ~~4 C,~~ 5 C, 7 C, and 8 C, may make the Consolidated Debtors Convenience Class Election. Such election must be

made on a Ballot that is properly and timely cast in accordance with applicable law and orders of the Bankruptcy Court.

**BECAUSE CLASS 6 C CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 6 C CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

5.7.    <u>Class 7 C - REIT Junior Claim</u>.  The Class 7 C Claims <u>are</u> impaired.  Class 7 C consists of the REIT Junior Claim, which is ~~fixed and~~ Allowed as a Class 7 C Claim in the **fixed** amount of Fifteen Million Dollars ($15,000,000) held by the REIT.  Holders of Allowed Class 7 C ~~Claims~~**Claim** shall receive ~~their~~**its** Pro Rata Share of interests in the Liquidating Trust subject to the enforcement of the applicable subordination provisions as described herein.

Pursuant to the terms of this Plan, the Class 7 C ~~Claims are~~**Claim is** subordinated and junior to the Class 3 C ~~and~~**,** 4 C **and 6 C** Claims, and ~~Holders~~**the Holder** of Class 7 C Claims will not receive any distributions until all **Allowed** Claims in ~~such classes~~**Classes 3 C and 4 C** are paid in full, **without any post-petition interest thereon,** as provided under the Plan, **and the Holders of Class 6 C Claims receive the distribution they are entitled to receive under the Plan,** in which event the ~~holders~~**holder** of **the** Class 7 C ~~Claims~~**Claim** shall receive ~~their~~**its** Pro Rata Share of any Subsequent Distributions made by the **Liquidating Trustee** after such time, and ~~their~~**its** Pro Rata Share of the Liquidating Trust Residual Assets, as applicable.

**BECAUSE CLASS 7 C CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 7 C CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

5.8.    <u>Class 8 C - Subordinated Claims against the Consolidated Debtors</u> **(including Late Filed Claims)**.  The Class 8 C Claims <u>are</u> impaired.  Class 8 C consists of Subordinated Claims against the Consolidated Debtors, including Late Filed Claims.  Holders of Class 8 C Subordinated Claims shall receive no distribution under the Plan unless the Holders of Allowed Class 3 C, 4 C and 7 C Claims are paid in full **as provided under the Plan and the Liquidating Trust is terminated**, as provided under the Plan, in which event the holders of Class 8 C Claims shall receive their Pro Rata Share of ~~any Subsequent Distributions made after such time, and their Pro Rata Share of~~ the Liquidating Trust Residual Assets, ~~as applicable~~**which distributions shall be made by the Disbursing Agent**.

**BECAUSE CLASS 8 C CLAIMS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTIONS UNDER THE PLAN, THE HOLDERS OF CLASS 8 C CLAIMS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

5.9.    <u>Class 9 C - Claims against Consolidated Debtors relating to Accredited Preferred Securities Trust I</u>.  The Class 9 C Claims <u>are</u> impaired.  Class 9 C consists of Allowed Claims against the Consolidated Debtors that relate to the Trust Preferred Securities, Trust Preferred Notes, **Trust Preferred Guarantee,** and the Trust Preferred Note Claims.  All such Claims are reduced, fixed, and Allowed as the Trust Preferred Note Junior Claim, which is a Class 9 C

Claim in the amount of Five Million Dollars ($5,000,000) held by the Trust Preferred Indenture Trustee. Holders of Allowed Class 9 C Claims shall receive their Pro Rata Share of interests in the Liquidating Trust subject to the enforcement of the applicable subordination provisions as described herein.

Pursuant to the terms of this Plan, the Class 9 C Claims are subordinated and junior to the Class 3 C, 4 C, **6 C,** 7 C**,** and 8 C Claims, and Holders of Class 9 C Claims will not receive any distributions until all Claims in ~~such classes~~**Classes 3 C, 4 C, 7 C, and 8 C** are paid in full **and the Liquidating Trust is terminated**, as provided under the Plan, in which event the holders of Class 9 C Claims shall receive ~~their Pro Rata Share of any Subsequent Distributions made after such time, and~~ their Pro Rata Share of the Liquidating Trust Residual Assets, ~~as applicable~~**which distributions shall be made by the Disbursing Agent**.

**BECAUSE CLASS 9 C CLAIMS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTIONS UNDER THE PLAN, THE HOLDERS OF CLASS 9 C CLAIMS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

5.10. <u>Class 10 C - Interests in the Consolidated Debtors</u>. The Class 10 C Interests <u>are</u> impaired. Class 10 C consists of the Interests in the Consolidated Debtors. All Interests shall be canceled ~~as of~~**after** the Effective Date and the Holders thereof shall receive no distribution under the Plan, unless Holders of all Class 9 C Claims against the Consolidated Debtors are paid in full with interest and the Liquidating Trust is terminated, as provided under the Plan, in which event the holders of Class 10 C Interests shall receive their Pro Rata Share of the Liquidating Trust Residual Assets**, which distributions shall be made by the Disbursing Agent**.

**BECAUSE CLASS 10 C INTERESTS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTIONS UNDER THE PLAN, THE HOLDERS OF CLASS 10 C INTERESTS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

## 6. <u>INTERCOMPANY CLAIMS</u>

6.1. <u>Inter-Debtor Waivers</u>. By virtue of the compromises and settlement of the issues set forth in the Plan, on the Effective Date, (i) AHL Canada shall pay and satisfy the claims of the Consolidated Debtors against AHL Canada, and, after giving effect to such payments, (ii) each Debtor shall waive any defense, including, without limitation, defenses arising under §§ 502(d) and 553(a) of the Bankruptcy Code, to Intercompany Claims asserted by another Debtor and such Claims shall be deemed Allowed Claims, (iii) Intercompany Claims between Debtors shall be deemed to be mutual claims arising prior to the Petition Date for purposes of setoff, (iv) except as provided in Section 3.1 of the Plan, each Debtor shall waive its right to receive any distribution on any Claims and Causes of Action such Debtor may have against another Debtor, and (v) except as provided in Section 3.1 of the Plan, each Debtor shall waive and forever release any right, Claim, or Cause of Action which has been or could have been asserted by such Debtor against any other Debtor.

6.2.    Non-Debtor Subsidiary Waivers.  By virtue of the compromises and settlement of the issues set forth in the Plan and except as otherwise provided in this Plan, on the Effective Date, (i) AHL Canada shall pay and satisfy the claims of the Consolidated Debtors against AHL Canada, and, after giving effect to such payments, (ii) each Non-Debtor Subsidiary shall waive any defense, including, without limitation, defenses arising under §§ 502(d) and 553(a) of the Bankruptcy Code, to Intercompany Claims asserted by another Debtor or Non-Debtor Subsidiary against any Debtor and such Claims shall be deemed Allowed Claims, (iii) Intercompany Claims between Debtors and Non-Debtor Subsidiaries shall be deemed to be mutual claims arising prior to the Petition Date for purposes of setoff, (iv) each Non-Debtor Subsidiary, shall waive its right to receive any distribution on any Claims and Causes of Action such Non-Debtor Subsidiary may have against any Debtor, (v) except as provided in this Section 6.2 of the Plan, each Non-Debtor Subsidiary, except REIT, shall waive and forever release any right, Claim or Cause of Action which has been or could have been asserted by such Non-Debtor Subsidiary against any Debtor, and (vi) each Debtor shall waive its right to receive any distribution on any Claims and Causes of Action such Debtor may have against any Non-Debtor Subsidiary, provided, however, that AHL Canada shall pay all amounts owing to the Consolidated Debtors on the Effective Date. **Notwithstanding anything contained in this section to the contrary, the REIT shall have the Allowed Claims against the Debtors specified in Section 8.2 of the Plan and shall be entitled to distributions thereon as set forth in this Plan.**

6.3.    Asset Allocation.  The allocation of certain Assets is an integral component of the comprehensive compromise and settlement concerning Intercompany Claims and intra-Debtor issues as determined in light of a number of facts, including, but not limited to, (i) respective legal claims, rights and entitlements of the Debtors, (ii) validity and enforceability of Intercompany Claims, (iii) Intercompany Claims not reflected as inter-company payables or receivables in the Debtors' books and records, (iv) relative value of Assets under administration in each Debtor, (v) Intercompany Claims for contribution or reimbursement, (vi) the necessity of resolving inter-Estate and inter-Debtor issues and disputes through the Plan, and (vii) administration and liquidation of Trust Assets unfettered or effected by inter-Estate or inter-Debtor conflicts of interest or multiple claims.

## 7.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1.    Assumption and Rejection.  All executory contracts and unexpired leases, other than those executory contracts and unexpired leases which (i) were executed subsequent to the Petition Date, (ii) have not expired by their own terms prior to the Confirmation Date, (iii) were assumed prior to the Effective Date pursuant to an order of the Bankruptcy Court, or (iv) were identified in the Plan Supplement as being assumed and assigned under this Plan, shall be deemed rejected upon the Effective Date.  Upon the Effective Date, all executory contracts and unexpired leases that (i) were executed subsequent to the Petition Date, (ii) were assumed prior to the Effective Date pursuant to ~~an order~~**a Final Order** of the Bankruptcy Court, or (iii) were identified in the Plan Supplement as being assumed and assigned under this Plan, shall either (i) be assumed by Consolidated Holdco, if such leases and contracts are with Consolidated Holdco, or (ii) be assumed **by the Consolidated Debtors** and assigned to the Liquidating Trust, if such leases and contracts are with the Consolidated Debtors.  Unless otherwise agreed to by the parties to such lease or contract, or required by an Order of the Court, there shall be no cure

costs or adequate protection payments required in connection with the assumption and assignment of such leases and contracts.

7.2.    Indemnification Agreements.  The obligations of the Consolidated Debtors to indemnify any Person having served as an officer or director of the Consolidated Debtors, to the extent provided in any of the Consolidated Debtors' corporate governance documents or by written or other agreement or applicable law, shall be terminated and extinguished and, to any extent necessary, deemed an executory contract, terminated and rejected under the Plan, and such Person's rights to assert rejection damages claims arising there from, if any, shall be governed by Section 7.3 of the Plan.  Notwithstanding the foregoing, this provision will not limit, release or modify any indemnification obligations to those persons who have served, during the period from and after the Petition Date, as officers of the Debtors pursuant to a court-approved retention or engagement letter (the "Retained Advisor Indemnification Obligations").  Notwithstanding any provision herein, no person making a claim with respect to indemnification obligation approved by the Bankruptcy Court shall be required to file a proof of claim with respect to such Retained Advisor Indemnification Obligations, and any right to payment with respect to such Retained Advisor Indemnification Obligations shall not be impacted by this Plan.

7.3.    Claims Relating to Assumption or Rejection.  Any party to an executory contract or unexpired lease not previously assumed or rejected and to which no bar date has been established, which is assumed or rejected pursuant to this Plan or is the subject of a pending rejection motion, is required under the terms of this Plan to file a proof of claim for amounts due as a result of such assumption or rejection by the Rejection Bar Date; provided, however, if a motion seeking assumption or rejection is not heard and determined prior to the Effective Date, any Claim based thereon shall be filed within thirty (30) days of entry of an Order ruling on the motion.  Any Allowed Cure Claim relating to the assumption of executory contracts or leases pursuant to the Plan shall be paid in full from the Effective Date Distribution to the extent Finally Determined as of the Effective Date, or, to the extent thereafter, from an Interim Distribution or Subsequent Distribution by the Liquidating Trustee or Plan Administrator.  Any such Claim not filed by the Rejection Bar Date as provided in the Plan shall be forever barred and shall not be enforceable against the Debtors or their properties or the Liquidating Trust, and the Debtors and Liquidating Trust shall have no obligation to pay the same.

7.4.    Insurance Policies.   To the extent that any and all insurance policies are considered executory contracts, then notwithstanding anything contained in the Plan to the contrary, such insurance policies that are policies of the Consolidated Debtors shall be deemed assumed and assigned to the   Liquidating Trust, and such policies that are policies of Consolidated Holdco shall be assumed by Consolidated Holdco.  Unless otherwise determined by the Bankruptcy Court, pursuant to a Final Order, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such policy. For the avoidance of any doubt, all rights under any insurance policy that is not an executory contract, and all rights under any other insurance policies under which the Debtors may be beneficiaries, shall be preserved, and, nothing herein shall alter or adversely affect the rights of any non-Debtor beneficiaries of or covered persons under such insurance policies.

# 8. GLOBAL SETTLEMENT AND COMPROMISE OF DISPUTES

8.1. <u>Incorporation of Settlement</u>. The Plan is deemed to be a motion pursuant to §§ 363, 502, and 1123 of the Bankruptcy Code and Fed. R. Bankr. P 9019 to approve the settlements provided for in § 8.2 of the Plan between and among the Debtors, their major creditor constituencies, including the Trust Preferred Holders and the Trust Preferred Indenture Trustee, the REIT, the REIT Committee, and the Lone Star Entities. Upon the occurrence of the Effective Date, the Plan Support Agreement and Term Sheet shall be deemed superseded by the confirmed Plan and Confirmation Order and shall have no further force or effect.

8.2. <u>Terms of the Global Settlement</u>. The terms of this settlement are as follows:

(a) <u>REIT Adversary Settlement</u>. The Confirmation Order shall include approval of the settlement of the REIT Adversary, and, upon the Effective Date, the REIT Adversary shall be ~~resolved~~**dismissed or withdrawn with prejudice** and the REIT shall have as Allowed Claims: (1) an Allowed Unsecured Claim against the Consolidated Debtors in the amount of $37.5 Million**, which Claim shall be included in and receive the treatment provided for** in Class 3 C; (2) the REIT Junior Claim in the amount of $~~5~~**15** Million in Class 7 C; **which Claim shall be included in and receive the treatment provided for in Class 7 C;** and (3) an Allowed Unsecured Claim against Consolidated Holdco in the amount of $20 Million in Class 6 H, which Claim shall receive the treatment provided under the Plan, including the REIT First Distribution. **The REIT Committee shall continue to have the right to file a Claim for its substantial contribution in these proceedings pursuant to Sec. 503(b) of the Bankruptcy Code, which application shall be provided to the Debtors and the Committee prior to filing for review. Nothing contained in the Plan shall prohibit any party-in-interest from filing an objection to such Claim.** To the extent the Claims of the REIT, or any Claims asserted by other Persons on behalf of the REIT, against the Debtors, the Estates, and the Assets of the Debtors, are not otherwise Allowed under this § 8.2(a), such Claims are disallowed, expunged, and released.

(b) <u>Citigroup Settlement</u>. The Confirmation Order shall include approval of the settlement of the Claims of Citigroup, and, upon the Effective Date, Citigroup ~~Global Markets Realty Corp.~~ shall have an Allowed Unsecured Claim against Debtor AHL in the amount of $~~12,100,000.~~**12.1 Million,** which Claim shall be ~~included in and receive the same treatment as Class 3 C. To the extent the Claims of Citigroup Global Markets Realty Corp. and its Affiliates against the Debtors are not Allowed under this § 8.2(b), such Claims are disallowed, expunged, and released, provided however, Citigroup Global Markets Realty Corp.~~**classified as an Allowed Class 3 C Claim. Citigroup** shall continue to have the right to file a Claim **for its substantial contribution in these proceedings** pursuant to ~~Sec.~~**§** 503(b) of the Bankruptcy Code ~~and the~~**which Application shall be provided to** Debtors~~, the Committee, the Liquidating Trustee and the Plan Administer shall have the right to object to all or part of any such Claim, if one is filed~~ **and the Committee prior to filing for review. Nothing contained in the Plan shall prohibit any party-in-interest from filing an objection to such Claim. Except as to its Claim under § 503(b) of the Bankruptcy Code, Citigroup shall not have the right to otherwise amend their Proof of Claim or file or assert any new Claims against the Debtors and the Claims of Citigroup and its affiliates against the Debtors that are not otherwise Allowed under this Plan, such Claims are disallowed, released, and expunged**.

(c)     Trust Preferred Settlement.  The Confirmation Order shall include approval of the settlement of the Claims relating to the Trust Preferred Securities, Trust Preferred Notes, **the Trust Preferred Guarantee,** and the Trust Preferred Note Claims **(which includes any claims that have been or could be asserted by the Trust Preferred Holders or the Trust Preferred Indenture Trustee)**, and, upon the Effective Date, all such Claims against Consolidated Holdco, whether direct, indirect, or derivative, **including any claims by the Trust Preferred Indenture Trustee for compensation and indemnity under the Trust Preferred Indenture, Trust Declaration, and Trust Preferred Guarantee** shall be deemed satisfied and paid in full by the Lone Star Trust Preferred Settlement Payment and the Trust Preferred Holdco Distributions, all such Claims against the Consolidated Debtors, whether direct, indirect, or derivative, shall be reduced, consolidated, subordinated, and Allowed as a Class 9 C Claim in the amount of Five Million Dollars ($5,000,000) held by the Trust Preferred Indenture Trustee.  **Accordingly, upon the Effective Date, all scheduled claims and proofs of claim held by Wells Fargo Bank, N.A., in its capacity as Indenture Trustee and Property Trustee, Kodiak CDO I, Ltd., Kodiak CDO II, Ltd., and/or JP Morgan Funding LLC will be satisfied, discharged, and expunged in accordance with this Global Settlement and the Plan.  Further, the Trust Preferred Adversary Proceeding shall be dismissed or withdrawn, with prejudice.  Further, the Trust Preferred Indenture Trustee and the Trust Preferred Holders waive any right, claim, or entitlement to seek reimbursement of any fees and expenses incurred in connection with these Chapter 11 Cases from the Debtors or their Estates (including the Liquidating Trustee or Plan Administrator) under § 503(b) of the Bankruptcy Code or any other applicable section of the Bankruptcy Code or applicable law.**

(d)     Lone Star Settlement.  Provided that less than 25% in amount of the estimated Allowed Unsecured Claims against the Consolidated Debtors eligible to vote on the Plan as of the Confirmation Date elect treatment as Class 4 C Creditors (rather than Class 3 C Creditors) and to withhold releases of direct and personal claims under the Plan:

(i)     one or more of the Lone Star Entities (other than LSF MRA, LLC) shall make the Lone Star Creditor Release Settlement Payment to the Consolidated Debtors on or before the Effective Date;

(ii)     one or more of the Lone Star Entities (other than LSF MRA, LLC) shall make the Lone Star Advance to Consolidated Holdco on or before the Effective Date;

(iii)     one or more of the Lone Star Entities (other than LSF MRA, LLC) shall pay the Lone Star Consolidated Debtors Settlement Payment to the Consolidated Debtors on or before the Effective Date;

(iv)     one or more of the Lone Star Entities (other than LSF MRA, LLC), their insurers, and the Debtors' insurers **under the D&O Policies** shall make their respective portion of the Lone Star Trust Preferred Settlement Payment, as provided under the Trust Preferred Indenture and related documents, to the Trust Preferred Indenture Trustee on behalf of the Trust Preferred Holders in satisfaction of the Claims of the Trust Preferred Indenture Trustee, the Trust Preferred Holders or any other Person holding a Claim arising under or related**, directly or indirectly,** to the Trust Preferred Indenture and related documents against Holdco **(including any claims that have been asserted or**

**could be asserted by the Trust Preferred Indenture Trustee or the Trust Preferred Holders)** as provided under the Plan;

(v) the Lone Star Entities and their Affiliates shall be deemed to have waived, for purposes of the Plan and receiving distributions under the Plan, either directly or indirectly, all Claims against the Consolidated Debtors or their respective properties, including those asserted in the Lone Star Proofs of Claim and all such Claims shall be expunged, discharged and released; and

(vi) the Lone Star Entities and their Affiliates shall be deemed to have subordinated, for purposes of the Plan and receiving distributions hereunder, all Claims asserted against Consolidated Holdco in favor of Classes 3 H and 6 H, if those applicable Classes do not vote to reject the Plan, **and potentially Class 9 H,** to the extent such Claims of the Lone Star Entities are not disallowed, so that any distributions that would be made to the Lone Star Entities on account of Claims against Consolidated Holdco **on a pro rata basis** (the "Subordinated Distributions") will first be distributed **in accordance with this Plan** to such non-rejecting Classes**, or, with respect to the Holders of Class 9 H Claims, to Holders who elect to provide the Creditor Release,** until such Claims are paid in full (which Subordinated Distributions shall not be subject to disgorgement). The Plan Administrator shall distribute the Subordinate Distributions pursuant to the terms of the Plan and the Lone Star Entities and Affiliates have waived any rights of subrogation.

**(e)      Release of Settling Parties' Claims against the Lone Star Releasees.**

Upon the Effective Date of the Plan, for good and valuable consideration, pursuant to the Plan**, except as otherwise specifically provided for in the Plan,** the Lone Star Releasees shall be released from all claims, potential claims, suits, debts, liens, contracts, agreements, promises, liabilities, demands, rights, costs, expenses, actions, causes of action, and damages of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, which any releasor identified below has or may have, or which have been asserted or could be asserted in the future, which are based upon, arise out of, or in any way relate to the Debtors or their business or operations (including the business or operations of the REIT and the other Non-Debtor Subsidiaries and any claims under Chapter 5 of the Bankruptcy Code or similar State or Federal law), by (i) the estates of the Consolidated Debtors and Consolidated Holdco, (ii) the non-debtor Affiliates of the Debtors, (iii) the REIT (subject to the carveout for certain insurance coverage claims set forth below), and (iv) the Committee.

**(f)      Release of Creditors' Claims against the Lone Star Releasees.**

Upon the Effective Date of the Plan, for good and valuable consideration, pursuant to the Plan**, except as otherwise specifically provided for in the Plan,** the Lone Star Releasees shall be released from all claims, potential claims, suits, debts, liens, contracts, agreements, promises, liabilities, demands, rights, costs, expenses, actions, causes of action, and damages of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, which any releasor identified below has or may have, or which have been asserted or could be asserted in the future, which are based upon, arise

out of, or in any way relate to the Debtors or their business or operations (including the business or operations of the REIT and the other Non-Debtor Subsidiaries and any claims under Chapter 5 of the Bankruptcy Code or similar State or Federal law), by (i) individual creditors of the Consolidated Debtors in Class 3 C, (ii) individual creditors of Consolidated Holdco in Class 3 H and, if applicable, Class 9 H, (iii) individual creditors making the Consolidated Debtors Convenience Class Election, and (iv) individual creditors making the Consolidated Holdco Convenience Class Election.

(g)     **Mutual Releases Amongst Settling Parties.**

Upon the Effective Date, for good and valuable consideration, each of the Trust Preferred Holders, the Trust Preferred Indenture Trustee, the REIT, the Lone Star Entities, the Debtors, the Non-Debtor Subsidiaries, the Committee, members of the Committee acting in their capacity as such, the REIT Committee, the members of the REIT Committee acting in their capacity as such, and Citigroup, ~~Global Markets Realty Corp.~~ effective pursuant to the Confirmation Order, shall, except as otherwise specifically provided for in the Plan, grant a full and complete release to each of the Lone Star Releasees, the Trust Preferred Holders, the Trust Preferred Indenture Trustee, the REIT, the Debtors, the Non-Debtor Subsidiaries, the Committee, the members of the Committee acting in their capacity as such, the REIT Committee, the members of the REIT Committee acting in their capacity as such, and Citigroup ~~Global Markets Realty Corp.~~ and to their predecessor entities, Affiliates, successors and assigns and their respective professionals and advisors from all claims, potential claims, suits, debts, liens, contracts, agreements, promises, liabilities, demands, rights, costs, expenses, actions, causes of action, and damages of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, which the releasor has or may have, or which have been asserted or may be asserted in the future, that are based upon, arise out of, or in any way relate to the Debtors or their business or operations related to the Debtors and their businesses (including related to the REIT and any other Non-Debtor Subsidiaries and Affiliates of the Debtors and their business or operations and any claims under Chapter 5 of the Bankruptcy Code or similar State or Federal law), including without limitation any and all claims or causes of action that were set forth or could have been set forth in any complaint or pleading filed by any of the foregoing in the Trust Preferred Adversary Proceeding, the REIT Adversary Proceedings or elsewhere; provided, however, that nothing contained herein or therein shall release any releasor's rights and claims under this Plan or the Allowed Claims granted to it under the Plan.

(h)     Notwithstanding any other provisions of the Plan, no current or former officer or director of any of the Lone Star Entities or of their Affiliates or subsidiaries or of the Debtors shall receive a release from the Debtors without providing (i) a mutual release to the Debtors and their estates, and (ii) a full release to the insurers set forth in Schedule B to the Plan Support Agreement and Term Sheet, the REIT and the other non-debtor subsidiaries of the Debtors for the matters released in this § 8.2 of this Plan, which for the convenience of the officers and directors shall be deemed granted as of the Effective Date of the Plan unless such officer or director objects on or prior to the hearing ~~on~~to consider confirmation of this Plan and a Final Order is entered sustaining such objection; provided, however, that restructuring advisors

retained as officers of the Debtors pursuant to an order entered by the Bankruptcy Court shall retain any claims against the Insurers pursuant to any valid insurance policy.

(i)     Notwithstanding any other provisions of the Plan, the release of the Debtors' pre- and post-petition professionals and restructuring advisors retained or employed pursuant to §§ 363 and 327 of the Bankruptcy Code set forth above in this § 8.2 shall not include the release (i) of any claim for the avoidance of a preferential transfer under § 547 of the Bankruptcy Code, (ii) of any claim for the return of an unused retainer, or (iii) of any postpetition claim against a restructuring advisor employed under § 363 or an estate professional retained under § 327 and compensated under § 330 of the Bankruptcy Code (which restructuring advisors and retained professionals shall received the benefit of **and the corresponding exclusion to** the exculpation set forth in § 12.3 of the Plan).

(j)     Notwithstanding any other provisions of the Plan, it is expressly understood and agreed that, except for the transactions contemplated by the Plan and the Plan Support Agreement Term Sheet and the claims and potential claims (and associated expenses) released pursuant to thereto, the proposed releases shall in no way release, limit or impair the REIT's and any of the past, future, or present rights of the trustee of the REIT to coverage as an insured pursuant to any policy of insurance issued by any of the insurers set forth on Schedule B to the Plan Support Agreement and Term Sheets that lists Accredited Home Lenders Holding Co. as a named insured and provides coverage for the REIT or any of its Trustees, and it is expressly understood that all such rights are expressly reserved.

(k)     Notwithstanding any other provisions of the Plan, the foregoing releases shall not be construed to release any claims, rights or causes of action that any professional or restructuring advisor retained pre- or post-petition by the Debtors or their non-debtor Affiliates may have against its current or former employees.

(l)     Nothing in this § 8.2 of the Plan shall release any party from any of its obligations under the Plan.

(m)     Upon or after the Effective Date, the Liquidating Trustee, the Plan Administrator, and the parties to the Plan Support Agreement and Term Sheet will comply, without cost or expense to them, with any reasonable requests received from each other for written confirmation of the effectiveness of the releases as set forth herein.

(o**n**)     The Consolidated Debtors, the Liquidating Trustee, Consolidated Holdco, and the Holdco Plan Administrator shall agree and covenant not to make, assert or pursue any claim or commence any action or litigation against the Lone Star Releasees or the current and former directors and officers of the Debtors released as set forth herein or under or against the applicable D&O Policies; provided, however, that any release of current or former Directors and Officers of the Debtors as set forth herein shall also be conditioned on such officer or director granting a full release of claims against the Consolidated Debtors and their respective properties (including all claims under or that could be asserted under filed proofs of claim, which claims shall be deemed expunged and relinquished). Notwithstanding the foregoing, this provision will not limit, release or modify any Retained Advisor Indemnification Obligations or any rights of a restructuring advisor retained pursuant to an order of the Bankruptcy Court to coverage from an insurance

policy of the Debtors for acts occurring during the period from the Petition Date through and including the Confirmation Date.

(p**q**) Each of the release provisions in this § 8.2 is an integral part of the Plan and is essential to its implementation. **These release provisions shall be effective as of the Effective Date pursuant to the Confirmation Order, without any further action.**

## 9. LIQUIDATING TRUST

9.1. Appointment of Liquidating Trustee.

(a) On or before the Plan Supplement Filing Date, the Liquidating Trustee shall be selected by the Committee and be reasonably acceptable to the Debtors and REIT; provided, however, that none of the Lone Star Entities, the Trust Preferred Holders, the Trust Preferred Indenture Trustee, or their Affiliates, officers, directors, or employees shall serve as Liquidating Trustee. Prior to the Confirmation Date, the Person(s) designated as Liquidating Trustee shall file an affidavit demonstrating that such ~~person~~**Person** is disinterested. If approved by the Bankruptcy Court in the Confirmation Order, the person so designated shall become the Liquidating Trustee of the Liquidating Trust on the Effective Date.

(b) The Liquidating Trustee shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Liquidating Trust Agreement and the Plan.

(c) The Liquidating Trustee shall be deemed a party in interest and have standing to seek disgorgement or challenge or object to the allowance or payment of Professionals under any interim or final fee application and with respect to challenging any Claims for substantial contribution made under § 503(b) of the Bankruptcy Code or similar claims.

**(d)** **The Liquidating Trustee shall be the Disbursing Agent as provided under the Plan.**

9.2. Funding of the Liquidating Trust. The Liquidating Trust shall consist of the Liquidating Trust Assets. The Liquidating Trust will be funded initially by a contribution to the Liquidating Trust Account by the Consolidated Debtors equal to their Effective Date Balance less any payments made to the Holders of Allowed Administrative Claims, Holders of Allowed Secured Claims, Holders of Allowed Priority Claims, Holders of Allowed Priority Tax Claims, and Holders of Allowed Convenience Claims against the Consolidated Debtors on the Effective Date. The Liquidating Trust shall subsequently be funded from the other Proceeds of Consolidated Debtors Assets.

9.3. Transfer of Liquidating Trust Assets to the Liquidating Trust. On the Effective Date, the Debtors shall transfer and shall be deemed to have irrevocably transferred the Liquidating Trust Assets to the Liquidating Trust, for payment of Claims as provided in this Plan, and, after payment of such Claims, on behalf of the beneficiaries of the Liquidating Trust, with no reversionary interest in the Debtors.

9.4. The Liquidating Trust.

(a)     Without any further action of the directors or shareholders of the Debtors, on the Effective Date, the Liquidating Trust Agreement for the Liquidating Trust, substantially in the form included in the Plan Supplement, shall become effective.  On or before the Effective Date, the Debtors and the Liquidating Trustee shall execute the Liquidating Trust Agreement and shall take such other necessary steps to establish the Liquidating Trust.  The Liquidating Trustee shall accept the Liquidating Trust Assets and sign the Liquidating Trust Agreement on the Effective Date and the Liquidating Trust will then be deemed created and effective.

(b)     The Liquidating Trustee shall have full authority to take any steps necessary to administer the Liquidating Trust Assets and the Lone Star Creditor Release Settlement Payment, as applicable, including, without limitation, the duty and obligation to liquidate Liquidating Trust Assets, and to pursue and settle any other trust claims, subject to the approval of the Liquidating Trust Advisory Board and to the procedures in the Liquidating Trust Agreement.  Upon such transfer (which, as stated above, shall occur on the Effective Date), the Debtors and their Estates shall have no other rights or obligations with respect to the Liquidating Trusts.

(c)     All Liquidating Trust Expenses shall be the responsibility of and paid by the Liquidating Trust from the Liquidating Trust Assets.  Liquidating Trust Expenses may not exceed Two Million Dollars ($2,000,000), except pursuant to an order from the Bankruptcy Court approving an increase in this limit, which order may be obtained by the Liquidating Trustee with the consent of the Liquidating Trust Advisory Board and a showing of cause for such increase to the Bankruptcy Court.

(d)     The Liquidating Trustee may retain Liquidating Trust Professionals, in its sole discretion, and at the sole expense of the Liquidating Trust, to aid in the performance of its responsibilities pursuant to the terms of this Plan including, without limitation, the liquidation and distribution of Liquidating Trust Assets and the Lone Star Creditor Release Settlement Payment, as applicable.

(e)     Distribution of Liquidating Trust Assets:  The Liquidating Trustee is required to distribute to the holders of Allowed Claims on account of their interests in the Liquidating Trust, on a periodic basis, and at least once per year, all unrestricted Cash on hand (including any Cash received from the applicable Debtors on the Effective Date, and treating any permissible investment as Cash for purposes of this Section 9.4(e)), except such amounts (i) as has been reserved on account of Disputed Claims, or are otherwise part of the claims reserve established by the Liquidating Trustee, (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (iii) as are necessary to pay reasonable incurred or anticipated expenses (including, but not limited to, any taxes imposed on or payable by the Debtors or the Liquidating Trust or in respect of the Liquidating Trust Assets), or (iv) as are necessary to satisfy other liabilities incurred or anticipated by the Liquidating Trust in accordance with the Plan or the Liquidating Trust Agreement; provided, however, that the Liquidating Trustee shall not be required to make a distribution pursuant to this Section 9.4(e) if the aggregate, net amount of unrestricted Cash available for distribution (taking into account the above listed exclusions) is such as would make the distribution impracticable as reasonably determined by the Liquidating Trustee; and provided further that nothing in this Plan shall compel the Liquidating Trustee to treat any tentative Tax Refund(s) obtained pursuant to Tax

Code Section 6411 as unrestricted Cash until completion of the associated audit by the relevant authorities.

(f)     For federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under Treasury Regulation section 301.7701-4 and that such trust be owned by its beneficiaries.  Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution of an undivided interest in the Liquidating Trust Assets and then contributed such interests to the Liquidating Trust.  The Liquidating Trust Agreement shall (i) state that the primary purpose of the Liquidating Trust is to liquidate the Liquidating Trust Assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, its liquidating purpose and (ii) contain a fixed or determinable termination date that is not more than five (5) years from the date of creation of the Liquidating Trust, which termination date may be extended for one or more finite terms subject to the approval of the Bankruptcy Court upon a finding that the extension is necessary to its liquidating purpose.  Each such extension must be approved by the Bankruptcy Court within two (2) months before the beginning of the extended term.

(g)     The Liquidating Trustee shall be responsible for filing all federal, state and local tax returns for the Liquidating Trust.  The Liquidating Trustee shall file all federal tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4.  The Liquidating Trustee also will annually send to each holder of a Liquidating Trust Interest a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holder's underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns.  The Liquidating Trustee shall also file (or cause to be filed) any other statement, return or disclosure relating to the Liquidating Trust that is required by any governmental unit.

(h)     Tax Reporting for Liquidating Trust:

(i)     On or before the Effective Date, the Debtors shall provide the Liquidating Trustee with a good-faith valuation of the Tax Refunds as of the Effective Date.  As soon as practical after the Effective Date, the Liquidating Trustee shall determine the fair market value, as of the Effective Date, of all other Liquidating Trust Assets, and shall make all such values (including the Tax Refunds value) available from time to time, to the extent relevant, and such values shall be used consistently by all parties to the Liquidating Trust (including, without limitation, the Debtors, the Liquidating Trustee, and Liquidating Trust Beneficiaries) for all United States federal income tax purposes.

(ii)    Allocations of Liquidating Trust taxable income among the Liquidating Trust beneficiaries shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if,

immediately prior to such deemed distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value) to the holders of the Liquidating Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust. Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets. The tax book value of the Liquidating Trust Assets for purpose of this paragraph shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(iii)    Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee shall (A) timely elect to treat any Liquidating Trust Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, and (B) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including the Liquidating Trustee, the Debtors, and the Liquidating Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(iv)    The Liquidating Trustee shall be responsible for payment, out of the Liquidating Trust Assets, of any Taxes imposed on the trust or its assets, including the Liquidating Trust Claims Reserve. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Liquidating Trust Claims Reserve is insufficient to pay the portion of any such Taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such Taxes shall be (A) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (B) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the Liquidating Trustee as a result of the resolution of such Disputed Claims.

(i)  **Payments and Distributions on Disputed Claims:**

(i)    **Disputed Claims Holdback. From and after the Effective Date, and until such time as each Disputed Claim has been compromised and settled, estimated by the Bankruptcy Court in an amount constituting the allowed amount, or allowed or disallowed by Final Order of the Bankruptcy Court, the Liquidating Trustee shall retain, for the**

**benefit of each holder of a Disputed Claim, interests in the Liquidating Trust and any dividends, gains or income attributable thereto, in an amount equal to the Pro Rata Share of distributions that would have been made to the holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the liquidated amount set forth in the filed Proof of Claim relating to such Disputed Claim, (ii) the amount in which the Disputed Claim shall be estimated by the Bankruptcy Court pursuant to Section 502 of the Bankruptcy Code constitutes and represents the maximum amount in which such Claim may ultimately become an Allowed Claim, or (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and the Liquidating Trustee. Any interest in the Liquidating Trust Interests retained and held for the benefit of a holder of a Disputed Claim shall be treated as a payment and reduction on account of such Disputed Claim for purposes of computing any additional amounts to be paid in Cash or distributed in interests in the Liquidating Trust in the event the Disputed Claim ultimately becomes an Allowed Claim. Such dividends, gains or income paid on account of the interests in the Liquidating Trust (if any) retained for the benefit of holders of Disputed Claims shall be retained by the Liquidating Trust for the benefit of such holders pending determination of their entitlement thereto under the terms of the Plan.**

**(ii)     Allowance of Disputed Claims. At such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the Liquidating Trustee shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the Plan, together with any earnings that has accrued on the amount of interests in the Liquidating Trust Interests so retained (net of any expenses, including any taxes, relating thereto), but only to the extent that such earnings are attributable to the amount of the Allowed Claim. Such distribution, if any, shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim becomes a Final Order, but in no event later than the next Subsequent Distribution date. The balance of any interests in the Liquidating Trust previously retained but not distributed to a Disputed Claim holder shall be included in future calculations of Cash, and interests in the Liquidating Trust, respectively, to holders of Allowed Claims.**

**(iii)     Tax Treatment of Retained Assets. The Liquidating Trustee shall treat any Assets retained pursuant to this Section 9.4 as part of the Liquidating Trust Claims Reserve.**

**(j)** The Liquidating Trustee shall have full and exclusive authority and responsibility with respect to all Tax Refunds to the same extent as if the Liquidating Trustee were the same

entity as, as applicable, the Consolidated Debtors, Consolidated Holdco, debtors, or debtors-in-possession, including the filing of tax returns (including amended tax returns), or requests for refunds for one or more of the Debtors. Without limiting the foregoing, each of the Debtors shall execute, on or prior to the Effective Date, a power of attorney authorizing the Liquidating Trustee to correspond with any tax authority on behalf of such Debtor and to sign, collect, negotiate, settle, and administer the Tax Refunds, tax payments and tax returns. The Consolidated Debtors (and the Liquidating Trustee, as assignee) shall be entitled to the Tax Refunds, other than the entitlement to a portion of the Tax Refunds **from the Amended 2008 Tax Returns** designated in this Plan for the Trust Preferred Holdco Distributions. For the avoidance of doubt, Consolidated Holdco hereby waives and relinquishes any right or interest to the Tax Refunds and the Tax Refunds shall be and is hereby deemed assets and property of the Consolidated Debtors, other than the entitlement of that portion of Tax Refunds **from the Amended 2008 Tax Returns** designated in this Plan for the Trust Preferred Holdco Distributions.

9.5. <u>Limitation of Liability for Liquidating Trustee</u>. Upon the Effective Date and execution of the Liquidating Trust Agreement, the Liquidating Trustee as trustee of the Liquidating Trust, and not personally, shall be vested in all right, title and interest in all Liquidating Trust Assets, and all rights to enforce orders of the Bankruptcy Court entered in this Bankruptcy Proceeding. The Liquidating Trustee shall liquidate the Liquidating Trust Assets and distribute the proceeds thereof in accordance with this Plan and the Liquidating Trust Agreement.

9.6. <u>Transferability</u>. The Debtors shall cause the interests in the Liquidating Trust to be non-transferrable and any such transfer shall be disregarded by the Liquidating Trustee, except with respect to a transfer by will or under laws of descent and distribution; provided, however, such transfer will not be effective until and unless the Liquidating Trustee receives written notice of such transfer under the law of descent and distribution.

9.7. <u>The Liquidating Trust Advisory Board</u>.

(a) The Liquidating Trust Advisory Boards shall be comprised of up to three (3) members selected by the Committee, and shall be reasonably acceptable to the Consolidated Debtors and the REIT; provided, however, that none of the Lone Star Entities**Releasees**, the Trust Preferred Holders, or the Trust Preferred Indenture Trustee, or their Affiliates, officers, directors or employees shall serve on the Liquidating Trust Advisory Board. Written notice of the identities of such members shall be filed with the Bankruptcy Court by the Plan Supplement Filing Date. The Liquidating Trust Advisory Board shall adopt such by-laws as it may deem appropriate. In the event written notice is not filed prior to the Plan Supplement Filing Date, there will be no Liquidating Trust Advisory Board, and compliance with the reporting, consulting and consent requirements under the Plan shall not be required and such terms shall be removed or deemed removed from the Trust Agreement and Plan. The Liquidating Trustee shall consult regularly with the Liquidating Trust Advisory Board when carrying out the purpose and intent of the Liquidating Trust. Members of the Liquidating Trust Advisory Board shall be entitled to reimbursement of the reasonable and necessary expenses incurred by them in carrying out the purpose of the Liquidating Trust Advisory Board. Reimbursement of the reasonable and

necessary expenses of the members of the Liquidating Trust Advisory Board shall be payable by the Liquidating Trust.

(b)     The Liquidating Trust Advisory Board shall advise and approve the material actions of the Liquidating Trustee and have the right and duties as more particularly set forth in the Liquidating Trust Agreements, including, but not limited to, (a) authorize the Liquidating Trustee to commence, continue to prosecute or abandon any Causes of Action; (b) approve the settlement or compromise of any Cause of Action if the amount sought to be recovered in the complaint or other pleadings or documents initiating, evidencing, or stating such Cause of Action exceeds $1,000,000; (c) approve the sale, assignment, or other conveyance or abandonment of any Liquidating Trust Asset, for an amount exceeding $1,000,000, or that has a value in excess of $1,000,000; (d) approve the allowance of any Disputed Claim, if the asserted amount of such Claim exceeds $250,000; (e) consult upon and approve all matters concerning the Tax Refunds, (f) review, contest, or challenge to fees and expenses of the Liquidating Trustee and its professionals, and (g) approve any increase in the budget for Liquidating Trust Expenses.

(c)     In the case of an inability or unwillingness of any member of the Liquidating Trust Advisory Board to serve, such member shall be replaced by designation of the remaining members of the Liquidating Trust Advisory Board.  If the Liquidating Trust Advisory Board has only one member and any position on the Liquidating Trust Advisory Board remains vacant for more than thirty (30) days, such vacancy shall be filled within fifteen (15) days thereafter by the designation of the Liquidating Trustee without the requirement of a vote by the other members of the Liquidating Trust Advisory Board.

(d)     Upon the certification by the Liquidating Trustee that all Liquidating Trust Assets have been distributed, abandoned or otherwise disposed of, the members of the Liquidating Trust Advisory Board shall resign their positions, whereupon they shall be discharged from further duties and responsibilities.

(e)     The Liquidating Trust Advisory Board, in its discretion, may remove the Liquidating Trustee by a majority vote.  In the event the requisite approval is not obtained, the Liquidating Trustee may be removed by the Bankruptcy Court for cause shown.  In the event of the resignation or removal of the  Liquidating Trustee, the Liquidating Trust Advisory Board shall, by majority vote, designate a person to serve as successor Liquidating Trustee.  In the event the Liquidating ~~trust~~**Trust** Advisory Board does not designate a person to serve as successor Liquidating Trustee, the Bankruptcy Court shall make such selection.

(f)     Notwithstanding anything to the contrary in this Plan, neither the Liquidating Trust Advisory Board nor any of its members, designees, or any duly designated agent or representative of any such party shall be liable for the act, default or misconduct of any other member of the Liquidating Trust Advisory Board, nor shall any member be liable for anything other than such member's own gross negligence or willful misconduct.  The Liquidating Trust Advisory Board may, in connection with the performance of its duties, and in its sole and absolute discretion, consult with its counsel, accountants or other professionals, and shall not be liable for anything done or omitted or suffered to be done in accordance with such advice or opinions.  If the Liquidating Trust Advisory Board determines not to consult with its counsel,

accountants or other professionals, that fact alone shall not be deemed to impose any liability on the Liquidating Trust Advisory Board, or its members and/or designees.

(g)     To the extent the Liquidating Trust Advisory Board adopts by-laws, no provisions of such by-laws shall supersede any express provision of the Plan.

9.8.    <u>Final Administration of Liquidating Trust</u>.  Upon **the earlier of (i) payment in full of the Holders of Class 7 C Claims, or (ii)** full administration of the Assets vested in the Liquidating Trust~~,~~ and the satisfaction as far as possible of all remaining liabilities of the Liquidating Trust, in accordance with the Plan, the Liquidating Trustee, shall: (i) terminate the Liquidating Trust, notwithstanding any  applicable law, solely by filing written notice of termination with the Bankruptcy Court and providing such notice to the Beneficiaries and the United States Trustee; (ii) as soon as practicable after termination of the Liquidating Trust, provide to the United States Trustee, and file with the Bankruptcy Court, a final account and report of Liquidating Trust administration; and (iii) thereupon distribute the Liquidating Trust Residual Assets and be forever discharged of and released from all power, duties, and responsibilities arising under the Liquidating Trust Agreement and the Plan or relating to the Debtors or their Estates.  Every effort shall be made to effectuate such termination no later than the time reasonably necessary to accomplish the Liquidating Trust's purpose of liquidating the Liquidating Trust Assets and distributing the proceeds thereof to the Beneficiaries in accordance with the Liquidating Trust Agreement and the Plan, and in no event shall the Liquidating Trust continue for more than five (5) years after the Effective Date without further order of the Bankruptcy Court.

## 10.     **MEANS OF IMPLEMENTING THE PLAN**

10.1.    <u>Consolidated Holdco Plan Administrator</u>.

(a)     On or before the Plan Supplement Filing Date, the Plan Administrator shall be selected by the REIT and the Committee; <u>provided</u>, <u>however</u>, that none of the Lone Star Entities, Trust Preferred Holders, or Trust Preferred Indenture Trustee, or their Affiliates, officers, directors or employees shall serve as Plan Administrator.  Prior to the Confirmation Date, the ~~person~~**Person**(s) designated as Plan Administrator shall file an affidavit demonstrating that such ~~person~~**Person** is disinterested.  If approved by the Bankruptcy Court in the Confirmation Order, the ~~person~~**Person** so designated shall become the Plan Administrator and be deemed sole director and officer of the Consolidated Holdco entities on the Effective Date, and shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Plan Administrator Retention Agreement.

(b)     The Plan Administrator shall have full authority to take any steps necessary to administer and distribute the Consolidated Holdco Assets, including, without limitation, the duty and obligation to liquidate Consolidated Holdco Assets, and to pursue and settle any other Estate claims and Causes of Action constituting Consolidated Holdco Assets **and as provided under the Plan Administration Agreement.**

**(c)** **Without further action of the directors or shareholders of Consolidated Holdco, on the Effective Date, the Plan Administration Agreement, substantially in the form included in the Plan Supplement, shall become effective**.

**(d)** ~~(c)~~ Consolidated Holdco Plan Administration Expenses shall be the responsibility of and paid by Consolidated Holdco from Consolidated Holdco Assets.

**(e)** ~~(d)~~ The Plan Administrator may retain professionals, in its sole discretion, and at the sole expense of Consolidated Holdco, to aid in the performance of its responsibilities pursuant to the terms of this Plan including, without limitation, the liquidation and distribution of Consolidated Holdco Assets.

**(f)** ~~(e)~~ Except as provided in § 9.4(h) of the Plan, the Plan Administrator shall be responsible for filing all federal, state and local tax returns for Consolidated Holdco.

~~(f)      After the Effective Date, all Claims against Consolidated Holdco shall be non-transferrable and any such transfer shall be disregarded by the Plan Administrator, except with respect to a transfer by will or under laws of descent and distribution; provided, however, such transfer will not be effective until and unless the Plan Administrator receives written notice of such transfer under the law of descent and distribution.~~

(g)      Upon full administration of the Consolidated Holdco Assets, and the satisfaction as far as possible of all remaining liabilities of Consolidated Holdco, in accordance with the Plan, the Plan Administrator, shall: (i) dissolve and terminate Consolidated Holdco, notwithstanding any applicable law, solely by filing written notice of termination with the Bankruptcy Court and providing such notice to the Holders of Allowed Claims against Consolidated Holdco and the United States Trustee; (ii) as soon as practicable after termination and dissolution of Consolidated Holdco, provide to the United States Trustee, and file with the Bankruptcy Court, a final account and report of the administration of the Consolidated Holdco Assets; and (iii) thereupon distribute the Consolidated Holdco Residual Assets and be forever discharged of and released from all power, duties and responsibilities arising under the Plan or relating to the Debtors or their Estates. Every effort shall be made to effectuate such termination no later than the time reasonably necessary to accomplish the purpose of liquidating the Consolidated Holdco Assets and distributing the proceeds thereof to the creditors of Consolidated Holdco in accordance the Plan, and in no event shall Consolidated Holdco continue for more than five (5) years after the Effective Date without further order of the Bankruptcy Court.

10.2.    Substantive Consolidation of Consolidated Debtors Estates. Upon the Effective Date, the Estates of the Consolidated Debtors shall be deemed substantively consolidated for purposes of administration, as well as distribution to Creditors and Interest holders under the Plan.

10.3.    Substantive Consolidation of Consolidated Holdco Estates. Upon the Effective Date, the Estates of Consolidated Holdco shall be deemed substantively consolidated for purposes of administration, as well as distribution to Creditors and Interests Holders under the Plan.

10.4.    Lone Star Creditor Release Settlement Payment.    Prior to or on the Effective Date, in the event that the Plan is confirmed, the Lone Star Entities shall cause the Lone Star Creditor Release Settlement Payment to be delivered to the Consolidated Debtors~~.~~ **or at the direction of the Consolidated Debtors to the Disbursing Agent.** The Consolidated Debtors **and/or the Disbursing Agent** shall use the Lone Star Creditor Release Settlement Payment to provide Holders of Allowed Class 3 C Claims with their Pro Rata Share of the Lone Star Creditor Release Settlement Payment, and then shall transfer the remainder of the Lone Star Creditor Release Settlement Payment to the Liquidating Trustee, who shall hold the Lone Star Creditor Release Settlement payment in trust in a segregated account for the benefit of Holders of Allowed Class 3 C Claims.  If necessary, the Lone Star Creditor Release Settlement Payment shall be used by the Consolidated Debtors on the Effective Date or by the Liquidating Trustee **or the Disbursing Agent** subsequent to the Effective Date to pay Allowed Administrative Claims against the Consolidated Debtors, provided that, prior to making any Subsequent Distributions to any Unsecured Claims, the Liquidating Trustee shall fully repay any amounts used to pay Allowed Administrative Claims to the Lone Star Creditor Release Settlement Payment with Liquidating Trust Assets as funds become available.  The Liquidating Trustee **or Disbursing Agent** shall hold the remaining Lone Star Creditor Release Settlement Payment in a segregated account in trust for the benefit of the remaining Holders of Class 3 C Claims.  The Liquidating Trustee **or Disbursing Agent** shall use the remaining Lone Star Creditor Release Settlement Payment to fund Subsequent Distributions, in the same manner as set forth in this Plan, to Holders of Allowed Class 3 C Claims, with Holders of Allowed Class 3 C Claims continuing to receive their Pro Rata Share of the remaining Lone Star Creditor Release Settlement Payment.  When the remaining Lone Star Creditor Release Settlement Payment is equal to or less than $200,000, it shall be transferred to the Liquidating Trust and deemed a Liquidating Trust Asset.

10.5.    Lone Star Consolidated Debtors Settlement Payment.    On or before the Effective Date, one or more of the Lone Star Entities, other than LSF MRA, LLC, shall pay the Lone Star Consolidated Debtors Settlement Payment to the Consolidated Debtors.

10.6.    Consolidated Holdco Distributions.    Upon the Effective Date, the Cash of Consolidated Holdco (excluding any Cash belonging to Consolidated Debtors, including, but not limited to the Tax Refunds **and the Lone Star Consolidated Debtors Settlement Payment**), including the Lone Star Trust Preferred Settlement Payment, shall be used to make (i) payment of or reserve for the Consolidated Holdco Professional Fee Claim Payment ~~and the Viera Claims~~ in an ~~aggregate~~ amount not to exceed Two Million ~~Five Hundred Thousand~~ Dollars (~~$2,500,000) combined~~**2,000,000)**, (ii) an appropriate reserve for Consolidated Holdco Plan Administration Expenses not to exceed One Million Dollars ($1,000,000) (unless after the Effective Date some other amount is agreed upon by the REIT, the Lone Star Entities, and the Plan Administrator), (iii) distributions to Holders of Class 7 H Consolidated Holdco Convenience Claims (~~other than~~**including the** Viera Claims **against Holdco**) in an amount not to exceed One Million **Five Hundred Thousand Dollars ($1,500,000), and (iv) reserves, in an amount, not to exceed One Million** Dollars ($1,000,000), ~~and (iv) payment of~~**for** other Claims **against Consolidated Holdco (if any)** as provided under the Plan.  The balance of the Cash of Consolidated Holdco, including the Lone Star Trust Preferred Settlement Payment, shall be distributed Pro Rata (after adjusting for the Lone Star Trust Preferred Settlement Payment to the Trust Preferred Indenture Trustee as if it were part of such distribution) on account of (a) the Allowed Class 8 H Claim of the Trust Preferred Indenture Trustee (not to exceed a total

distribution upon such Claim, including the Lone Star Trust Preferred Settlement Payment, of $40 million), and (b) the Allowed Class 6 H Claim of the REIT, provided that REIT First Distribution shall not exceed Nine Million Dollars ($9,000,000) unless the Allowed Class 8 H Claim of the Trust Preferred Indenture Trustee has been ~~paid in full~~**Forty Million Dollars ($40,000,000) (including the Lone Star Trust Preferred Settlement Payment)**.

10.7.  <u>Trust Preferred Holdco Distributions Shortfall</u>.   To the extent that the aggregate amount of the Trust Preferred Holdco Distributions plus the Lone Star Trust Preferred Settlement Payment is less than $40 million, such shortfall shall be paid to the Trust Preferred Indenture Trustee on the Effective Date from the following sources in the following priority (x) first, from any amount by which the REIT First Distribution would otherwise exceed Nine Million Dollars ($9,000,000), (y) next, to the extent of any remaining shortfall, up to a maximum amount of Eight Million Dollars ($8,000,000), 50% from the Lone Star Advance (not to exceed Four Million Dollars ($4,000,000)), and 50% from the REIT First Distribution (not to exceed Four Million Dollars ($4,000,000), and (z) thereafter, to the extent of any remaining shortfall, from the REIT First Distribution.

10.8.  <u>Consolidated Holdco Priority Administrative Claims</u>.   From and after the Effective Date, and after the payment of or funding of (i) the Consolidated Holdco Reserves, (ii) the Lone Star Trust Preferred Settlement Payment and the first $10,000,000 of the Trust Preferred Holdco Distributions to the Trust Preferred Indenture Trustee, (iii) the REIT First Distribution, and (iv) other payments due under the Plan, any funds collected by the Plan Administrator from any source constituting Consolidated Holdco Assets shall be distributed on a monthly basis in the following order and priority:  (a) first, to the REIT on account of any unpaid portion of the REIT First Distribution, if any, until paid in full; (b) next, 50% to the Lone Star Entities that funded the Lone Star Advance to repay the Lone Star Advance until it is repaid in full, and 50% to Holders of Allowed Class 3 H, 4 H, and 6 H Claims, which shall be divided on a Pro Rata basis amongst such Holders; and (c) once the Lone Star Advance has been repaid in full, to Holders of Allowed Class 3 H, 4 H, and 6 H Claims, which shall be divided on a Pro Rata basis amongst such Holders until such Claims have been paid in full; and (d) the balance, if any, shall be used in accordance with the terms of this Plan.  Subject to the distribution priorities set forth above, including the payment of or reserve for the Consolidated Holdco Reserves, the claims for (a) repayment of the Lone Star Advance, and (b) payment of the unpaid deficiency from the REIT First Distribution shall be entitled to an Administrative Claim against the Consolidated Holdco Distributable Cash under § 503 of the Bankruptcy Code with priority over any and all administrative expenses of the kind specified in §§ 503(b) or 507(b) of the Bankruptcy Code.

10.9.  <u>Effective Date Distribution</u>.  Upon the Effective Date, or as soon thereafter as practicable, the Debtors shall make the Effective Date Distribution**, subject to the terms of the Plan**.

10.10.  <u>Transfer Assets to Consolidated Holdco</u>.  Upon the Effective Date, (a) the Canadian Equity shall be transferred back to Consolidated Holdco, and (b) all Vendor Cash will be transferred to Consolidated Holdco.

10.11.  Transfer of Assets to Liquidating Trust.  Upon the Effective Date and thereafter, (a) any Tax Refunds received by the Debtors, **Consolidated Holdco, or the Plan Administrator, or any other Person, and** any rights to receive any Tax Refunds, whether contingent, disputed, or unliquidated, and any proceeds of any Tax Refunds, shall be vested in the Liquidating Trust and shall be paid **or transferred** to the Liquidating Trust, except for the ~~portion of~~**first payments from** the Tax Refunds**, not to exceed Two Million Dollars ($2,000,000), which are** designated in this Plan for the Trust Preferred Holdco Distributions, (b) the Trust Preferred Common Securities shall be transferred by Consolidated Holdco to the Liquidating Trust; and (c) all rights and interests in the Deferred Compensation Settlement shall be transferred to the Liquidating Trust.

10.12.  Abandonment of REIT Equity.  On the Effective Date, Consolidated Holdco shall, pursuant to § 554 of the Bankruptcy Code, abandon all equity interests in the REIT**, provided however, that in the event the REIT Committee shall advise the Debtors in writing not later than five (5) days before the Confirmation Hearing of their request to transfer title to the common stock of the REIT Preferred Security Holders and the Debtors and the Committee agree to such request, Consolidated Holdco shall abandon and transfer title to the common stock of the REIT Pro Rata to the REIT Preferred Security Holders**.

10.13.  Payment of Fees to United States Trustee.  On and after the Effective Date, all fees payable to the United States Trustee shall be paid as and when due by the Liquidating Trustee or the Plan Administrator, as applicable, and shall be considered a reasonable expense of the Liquidating Trust or Consolidated Holdco, as applicable.

10.14.  Continued Cooperation.  On or after the Effective Date, the Debtors, the Liquidating Trust, the Plan Administrator, the **Disbursing Agent, the** Lone Star ~~Entities~~**Releasees**, the REIT, the REIT Committee, the Trust Preferred Indenture Trustee, and the Trust Preferred Holders shall provide each other with such reasonable cooperation to effectuate the provisions of the Plan as may be reasonably requested, including, but not limited to, executing such documents as may be reasonably requested to carry out the terms of the Plan.

10.15.  Consolidated Debtors' Continued Existence.  From and after the Effective Date, the Consolidated Debtors shall remain in existence for the sole purpose of winding up the Debtors' businesses and transferring the Assets to the applicable Liquidating Trust and the Liquidating Trustee or its nominee shall be appointed officer and director of the Consolidated Debtors.  Upon **or before** the completion of such liquidation, the Liquidating Trustee may file a certificate of dissolution as to each of the Consolidated Debtors.  The Liquidating Trustee shall not be compelled to dissolve any Debtor if to do so would unduly burden the Liquidating Trust, notwithstanding any applicable law.  On the Effective Date, the officers and the directors of the Debtors shall cease to serve and the Liquidating Trustee shall be deemed the sole director and officer of each Consolidated Debtor for all purposes.  On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders or directors of one or more of the Debtors or Consolidated Holdco or Consolidated Debtors, shall be authorized and approved in all respects, in each case without further action under applicable law, regulation, order or rule.  Without limiting the foregoing, from and after the Effective Date, Consolidated Holdco or the Consolidated Debtors shall take any and all actions deemed necessary or

appropriate to consummate the transactions under the Plan, and such Entities shall not require the affirmative vote of the Holders of Interests in order to take any corporate action.

10.16.  _Consolidated Holdco's Continued Existence_.  From and after the Effective Date, Consolidated Holdco shall remain in existence for the sole purpose of winding up the Debtors' businesses, liquidating Consolidated Holdco Assets, and making distributions in accordance with this Plan.  Upon **or before** the completion of such liquidation, the Plan Administrator may file a certificate of dissolution as to each of the Consolidated Holdco entities.  The Plan Administrator shall not be compelled to dissolve any Debtor if to do so would unduly burden Consolidated Holdco, notwithstanding any applicable law.  On the Effective Date, the officers and the directors of the Consolidated Holdco shall cease to serve and the Plan Administrator shall be deemed the sole director and officer of each Consolidated Holdco entity for all purposes.  On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders or directors of one or more of the Debtors or Consolidated Holdco or Consolidated Debtors, shall be authorized and approved in all respects, in each case without further action under applicable law, regulation, order or rule.  Without limiting the foregoing, from and after the Effective Date, Consolidated Holdco or the Consolidated Debtors shall take any and all actions deemed necessary or appropriate to consummate the transactions under the Plan, and such Entities shall not require the affirmative vote of the Holders of Interests in order to take any corporate action.

10.17.  _Debtors' Books and Records_.  On the Effective Date, the Consolidated Debtors' books and records, in any form, including all electronic records, shall be transferred to the Liquidating Trust, and the Consolidated Holdco books and records shall be vested with ~~Consolidated Holdco~~**the Plan Administrator**.  Books and records that cannot be allocated amongst the Debtors shall be vested with the Consolidated Debtors.  The Liquidating Trustee or the Plan Administrator shall be free, in his or her discretion, to abandon, destroy, or otherwise dispose of those books and records in compliance with applicable non-bankruptcy law, <u>provided, however</u> that, in the sole discretion of the Plan Administrator or the Liquidating Trustee, as applicable, these books and records may be destroyed or disposed of beginning two (2) years after the Effective Date notwithstanding any applicable laws, rules, or regulations that would have required the Debtors to retain such books and records.  While these books and records are retained, the Liquidating Trustee and the Plan ~~Administration~~**Administrator** shall take all reasonable steps necessary to comply with requests of the other to share the information contained therein with or provide copies of those books and records, at the expense of the requesting party.

10.18.  _Accredited Preferred Securities Trust I Termination_.  On the Effective Date, except to the extent provided elsewhere in this Plan, all of the agreements and other documents evidencing the claim or right of any Holder against the Debtors pursuant to or related to the Trust Preferred Common Securities, Trust Preferred Guarantee, Trust Preferred Indenture, Trust Preferred Note, Trust Preferred Note Claims, and/or Trust Preferred Securities shall be (i) automatically cancelled, discharged, terminated, and of no further force and effect, and (ii) deemed surrendered without any further act by the Debtors or the Trust Preferred Indenture Trustee under any applicable agreement, law, regulation, order, or rule; <u>provided, however</u>, that the Trust Preferred Common Securities, Trust Preferred Guarantee, Trust Preferred Indenture, Trust Preferred Note, Trust Preferred Note Claims, and Trust Preferred Securities shall continue

in effect solely for the purposes of (A) (i) permitting the Trust Preferred Indenture Trustee to make any distributions on account of Claims pursuant to this Plan and perform such other necessary administrative functions with respect thereto, (ii) permitting the Trust Preferred Indenture Trustee to receive any payments it is entitled to under the Trust Preferred Indenture and exercise any rights it is entitled to exercise under the Trust Preferred Indenture; and (B) permitting Kodiak CDO I Ltd., Kodiak CDO II Ltd., and the Trust Preferred Indenture Trustee to bring any other action, suit, or proceeding (other than against the Debtors or any other parties being released under the Plan and the Plan Support Agreement and Term Sheet) relating to, arising from, or in connection with the Trust Preferred Common Securities, Trust Preferred Guarantee, Trust Preferred Indenture, Trust Preferred Note, Trust Preferred Note Claims, and/or Trust Preferred Securities, and to participate in the prosecution, mediation, and/or settlement of such action, suit, or proceeding, or to appeal any order or decision in such action, suit, or proceeding, provided that such action is not a Consolidated Holdco Asset or Consolidated Debtors Asset.

10.19. <u>Employee Agreements</u>. On or before the Plan Supplement Filing Date, the Debtors will negotiate employment or consulting contracts with any current employees necessary to wind down the Debtors' Estates, with such contracts to be reasonably acceptable to the Committee. On the Effective Date, the Debtors' remaining employees will receive a payment equal to five (5) months' salary from the Consolidated Debtors, which payment shall be in satisfaction of any prior arrangements, agreements, or employment policies with the Debtors.

10.20. <u>Closing of Debtors' Cases</u>

(a) <u>Consolidated Holdco Estates</u>.

After the Consolidated Holdco Estates have been fully administered, the Plan Administrator shall file the final account and report with the Bankruptcy Court. At such time, if the Liquidating Trustee has already filed a final account and report with the Bankruptcy Court, the Plan Administrator shall move for the Bankruptcy Court to enter a Final Decree closing the Bankruptcy Proceeding pursuant to § 350 of the Bankruptcy Code and Bankruptcy Rule 3022.

(b) <u>Consolidated Debtors Estates</u>.

After the Liquidating Trust Assets have been fully administered, the Liquidating Trustee shall file the final account and report with the Bankruptcy Court. At such time, if the Plan Administrator has already filed a final account and report with the Bankruptcy Court, the Liquidating Trustee shall move for the Bankruptcy Court to enter a Final Decree closing the Bankruptcy Proceeding pursuant to § 350 of the Bankruptcy Code and Bankruptcy Rule 3022.

10.21. <u>Distribution of Property Under this Plan</u>.

The following procedures set forth in this Plan apply to distributions made pursuant to this Plan by Consolidated Holdco, the Consolidated Debtors, **the Disbursing Agent,** the Liquidating Trustee, and the Plan Administrator. As set forth in the Plan, the Debtors, the Liquidating Trustee, or the Plan Administrator shall make all distributions under this Plan. To the extent required by applicable law, distributions that are Cash shall be in compliance with all tax withholding and reporting requirements imposed by any governmental unit, and all

distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Debtors, **the Disbursing Agent,** the Liquidating Trustee, and the Plan Administrator may withhold the entire Cash distribution due to any holder of an Allowed Claim or Allowed Interest until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit.

(a)     Manner of Cash Payments Under this Plan.

Cash payments to domestic persons holding Allowed Claims or Allowed Interests will be tendered in United States dollars and will be made by checks drawn on a United States domestic bank or by wire transfer from a United States domestic bank. Any domestic person holding a Claim or Interest that wishes to receive a Cash payment by wire transfer shall provide wire instructions to the Debtors, the Liquidating Trustee, **the Disbursing Agent,** or the Plan Administrator. In any such case, the Debtors, the Liquidating Trustee, **the Disbursing Agent,** or the Plan Administrator shall make the Cash payment(s) by wire transfer in accordance with the wire instructions, provided that the costs of such wire transfer shall be deducted from such entity's distribution. Payments made to foreign creditors holding Allowed Claims or Allowed Interests may be paid or caused to be paid, at the option of the Debtors, **the Disbursing Agent,** the Plan Administrator, or the Liquidating Trustee, as applicable, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

(b)     No *De Minimis* Distributions.

Notwithstanding anything to the contrary in this Plan, no Cash payment of less than Fifty Dollars ($50) will be made to any Person. No consideration will be provided in lieu of the *de minimis* distributions that are not made under this provision, and the Debtors, the Liquidating Trustee after consultation with the Liquidating Trust Advisory Board, **the Disbursing Agent,** or the Plan Administrator shall be authorized to pay such amounts to the other holders of Allowed Claims or Allowed Interests.

(c)     Allowance of Claims and Interests.

(i)     Objections to Claims

Except as otherwise provided under the Plan, the Liquidating Trustee and the Plan Administrator shall file objections to Claims or Interests within one hundred eighty (180) days of the Effective Date. The Liquidating Trustee and the Plan Administrator may obtain an extension of this date by filing a motion in the Bankruptcy Court, based upon a showing of "cause." Once a Claim or Interest becomes an Allowed Claim or Interest, it will receive the treatment afforded by this Plan.

(ii)     Disallowance of Claims.

All Claims held by persons against whom the Debtors (including, without limitation, their successors and assigns) have asserted an Avoidance Action shall be deemed disallowed pursuant to § 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distribution under the Plan or vote to accept or reject this Plan, both consequences to be in effect until such time as such causes of action against

that entity have been settled or resolved by a Final Order and all sums due to the related Debtor(s) by that entity, if any, are turned over to Debtor(s) or, after the Effective Date, the Liquidating Trustee or Plan Administrator.

(iii)    Allowance of Claims and Interests.

Except as expressly provided in this Plan, no Claim or Interest shall be deemed Allowed by virtue of this Plan or entry of the Confirmation Order, unless and until such Claim or Interest is deemed Allowed under the Bankruptcy Code or the Bankruptcy Court enters a Final Order in the Case allowing such Claim or Interest.

(d)    Distributions to Holders as of the Distribution Record Date.

At the close of business on the Distribution Record Date, the claims register shall be closed, and there shall be no further changes in the record holder of any Claim or Interest. The Debtors, the Liquidating Trustee, **the Disbursing Agent,** the Plan Administrator, or any other party responsible for making distributions under this Plan shall have no obligation to recognize any transfer of any Claim or Interest occurring after the Distribution Record Date except as otherwise provided under the Plan; and shall instead be authorized and entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the claims register and stock transfer books as of the close of business on the Distribution Record Date.

(e)    Deemed Distributions to Subordinated Creditors.

Wherever this Plan effectuates contractual or Plan subordination rights by requiring distributions that would be made to subordinated creditors to be distributed to other creditors, including, but not limited to, the provisions in Article 4 of this Plan, those distributions shall be deemed to have been made to the subordinated creditors and then transferred by those subordinated creditors to the creditors receiving those distributions pursuant to this Plan.

(f)    Delivery of Distributions and Undeliverable/Unclaimed Distributions.

(i)    Delivery of Distributions in General.

The Debtors, the Plan Administrator, **the Disbursing Agent,** or the Liquidating Trustee shall make distributions to each holder of an Allowed Claim by mail as follows: (a) at the address set forth on the proof of claim filed by such holder of an Allowed Claim; (b) at the address set forth in any written notice of address change delivered **to counsel** to the Debtors, the Plan Administrator, or the Liquidating Trustee**, as applicable,** after the date of any related proof of claim; and (c) at the address reflected in the Schedules if no proof of claim is filed and the Debtors, the Plan Administrator**, the Disbursing Agent**, or the Liquidating Trustee has not received a written notice of of a change of address; provided, however, that the distributions to the Trust Preferred Holders shall be made to the Trust Preferred Indenture Trustee.

The Debtors, the Plan Administrator, or the Liquidating Trustee may withhold the entire distribution due to any holder of an Allowed Claim or Allowed Interest until such time as the holder provides the Debtors, the Plan Administrator, or the Liquidating

Trustee with the information necessary to make a distribution to such holder in accordance with this Plan and applicable law, and Holders of Allowed Claims or Allowed Interests who do not provide such information may be barred from participating in distributions under the Plan.

(ii)     Undeliverable and Unclaimed Distributions.

If the distribution to the Holder of any Allowed Claim or Allowed Interest is returned as undeliverable, no further distribution shall be made to such Holder unless and until the Liquidating Trustee**, the Disbursing Agent,** or the Plan Administrator is notified in writing of such Holder's then current address.  Insofar as a distribution is returned to the Liquidating Trustee as undeliverable, the Liquidating Trustee**, the Disbursing Agent,** or the Plan Administrator shall remit the undeliverable distribution back to the account established by the Liquidating Trustee or the Plan Administrator as soon as is practicable.  Subject to the other provisions of this Plan, undeliverable distributions shall remain in the possession of the Liquidating Trustee**, the Disbursing Agent,** or the Plan Administrator pursuant to this Section until such time as a distribution becomes deliverable.  All undeliverable Cash distributions will be held in unsegregated, interest-bearing bank accounts for the benefit of the entities entitled to the distributions.  These entities will be entitled to any interest actually earned on account of the undeliverable distributions.  The bank account will be maintained in the name of the Liquidating Trustee**, the Disbursing Agent,** or the Plan Administrator, but it will be accounted for separately.

Any holder of an Allowed Claim or Allowed Interest who does not assert a claim in writing for any undeliverable distribution within one (1) year after such distribution was first made shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any distributions under this Plan, or from asserting a Claim against or Interest in the Debtors, the Estate, or their respective property, and the Claim or Interest giving rise to the undeliverable distribution will be barred.

Any undeliverable distributions that are not claimed under this Section will be transferred to the account maintained by the Liquidating Trustee**, the Disbursing Agent,** or the Plan Administrator  to be paid or caused to be paid to the other holders of Allowed Claims or Allowed Interests.

(g)     Distributions of Consolidated Holdco Residual Assets and Liquidating Trust Residual Assets

The Plan Administrator shall hold the Consolidated Holdco Residual Assets in trust for the Holders of Claims against and Interests in Consolidated Holdco who are entitled to receive the same.  The Plan Administrator shall hold no economic or beneficial interests in the Consolidated Holdco Residual Assets.  The Liquidating Trustee shall hold the Liquidating Trust Residual Assets in trust for the Holders of Claims against and Interests in the Liquidating Trust and Consolidated Debtors, as applicable, who are entitled to receive the same. The Liquidating Trustee shall hold no economic or beneficial interests in the Liquidating Trust Residual Assets.  With regard to these Residual Assets,

the Plan Administrator and Liquidating Trustee shall be empowered to (i) take all steps and execute all documents and instruments necessary to effectuate the Plan, (ii) make distributions contemplated by the Plan, (iii) comply with the Plan and obligations thereunder, and (iv) exercise such powers as may be vested by the Plan, order of the Bankruptcy Court, or deemed by the Plan Administrator or Liquidating Trustee to be necessary and proper to implement the provisions of the Plan.

(h)    <u>Fees and Expenses Incurred in Distributing Consolidated Holdco Residual Assets and Liquidating Trust Residual Assets</u>.

The reasonable fees and expenses incurred by the Plan Administrator, including, without limitation, reasonable fees and expenses of counsel, in disbursing the Consolidated Holdco Residual Assets shall be paid in Cash from such assets without further application to or approval from the Bankruptcy Court. The reasonable fees and expenses incurred by the Liquidating Trustee, including, without limitation, reasonable fees and expenses of counsel, in disbursing the Liquidating Trust Residual Assets shall be paid in Cash from such assets without further application to or approval from the Bankruptcy Court.

## 11.    CONDITIONS PRECEDENT TO EFFECTIVE DATE OF PLAN

11.1.   <u>Conditions Precedent to Effective Date of Plan</u>.  The occurrence of the Effective Date and the substantial consummation of the Plan are subject to the satisfaction of the following conditions precedent:

(a)    The receipt by the Consolidated Debtors**, the Disbursing Agent, or the Liquidating Trustee** of (i) the Lone Star Creditor Release Settlement Payment, (ii) the Lone Star Consolidated Debtors Settlement Payment, and (iii) the Consolidated Holdco Professional Fee Claim Payment;

(b)    The receipt by Consolidated Holdco **or the Plan Administrator** of the Lone Star Advance;

(c)    The Confirmation Order shall be entered by the Bankruptcy Court;

(d)    The Confirmation Order shall be in form and substance reasonably acceptable to the Debtors, the Committee, the REIT, and the Lone Star Entities;

(e)    The Plan Support Agreement and Term Sheet shall not have terminated by its terms;

(f)    The Bankruptcy Court shall have determined that the compromises and settlements set forth in the Plan are appropriate, reasonable, and fair, and ~~should be~~**such compromises and settlements have been** approved;

(g)    The Debtors and the parties to the Plan Support Agreement and Term Sheet shall have sufficient Cash and assets to permit compliance with the terms and conditions of the Plan, including but not limited to projected fees and expenses, and payment of the Trust

Preferred Holdco Distributions plus the Lone Star Trust Preferred Settlement Payment in an amount equal to Forty Million Dollars ($40,000,000);

(h)     The Bankruptcy Court shall have approved **and authorized** the documents and agreements in the Plan Supplement;

(i)     The Liquidating Trust is created pursuant to the terms of the Plan once the Bankruptcy Court has appointed the Liquidating Trustee and approved the Liquidating Trust Agreement in form and substance acceptable to the Committee;

(j)     The Bankruptcy Court has appointed the Plan Administrator and approved the Plan Administrator Retention Agreement in form and substance acceptable to the Committee **and the REIT**; and

(k)     All other actions and documents necessary to implement the Plan shall have been executed and effected.

11.2.     <u>Waiver of Conditions Precedent</u>.     To the extent practicable and legally permissible, each of the conditions, other than 11.1(a), (b), (c), (d), ~~and~~ (e)**, and (f)** may be waived, in whole or in part, by the Debtors, subject to approval of the Committee ~~and~~**,** the Lone Star Entities**, the REIT, and the Trust Preferred Indenture Trustee**.

11.3.     <u>Nonoccurrence of Conditions to Consummation</u>.  If each of the conditions to the occurrence of the Effective Date has not been satisfied or duly and properly waived on or before the first Business Day that is one hundred, eighty (180) days after the Confirmation Date, or such later date as agreed to by the Debtors and the Committee, the Confirmation Order shall be deemed vacated and the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute a waiver or release of any Claims.

## 12.     **MISCELLANEOUS PROVISIONS**

12.1.     <u>No Discharge of Debtors</u>.     Pursuant to § 1141(d)(3) of the Bankruptcy Code, confirmation of this Plan will not discharge the Debtors.  Other than as set forth in Article 12.3 below, no non-Debtors shall receive a discharge under the Plan or the Confirmation Order.

12.2.     **Post-Confirmation Injunction.  From and after the Confirmation Date, and as provided for by the Confirmation Order, there shall be in place with regard to the Debtors, the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Assets, the Consolidated Debtors, the Consolidated Debtors Assets, the Plan Administrator, the Disbursing Agent, Consolidated Holdco, Consolidated Holdco Assets, and any Claims, the Injunction, which shall have the same extent and with the same effect as the stay imposed by § 362 of the Bankruptcy Code, as modified by orders entered by the Bankruptcy Court in this Bankruptcy Proceeding, except as provided in this Plan.  The Injunction will remain in effect until the Bankruptcy Proceeding is closed pursuant to § 350 of the Bankruptcy Code except as otherwise expressly provided herein.  Except as provided elsewhere in this Plan, all Holders of Claims or Interests shall be precluded and enjoined by the Injunction from asserting any Claim against the Debtors, the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Assets, the Consolidated Debtors, the Consolidated Debtors**

Assets, the Plan Administrator, Consolidated Holdco, Consolidated Holdco Assets, and their respective agents, successors, and assigns, and also from asserting any other and further Claim based on any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, against the Debtors, the Liquidating Trust, the Liquidating Trustee, and the Plan Administrators, as representatives of the Estates, as well as their successors or their respective agents, successors, and assigns, whether or not the holder filed a proof of claim, and shall be enjoined from commencing or continuing, directly or indirectly, in any manner, any action or proceeding of any kind on any such Claim or Interest, or the enforcement, attachment, collection, or recovery by any manner or means, or creating, perfecting, or enforcing any encumbrance.  Nothing herein shall prohibit an action against the Debtors and only the Debtors and their assets after dissolution of the Injunction.

12.3.  <u>Exculpation</u>.  Neither the Debtors nor their officers, directors, managers, employees, professionals, restructuring advisors, or the Committee and its professionals and advisors and members in their capacity as members of the Committee and their respective professionals and advisors, the Liquidating Trust, the Liquidating Trustee, <u>the Disbursing Agent,</u> nor the Plan Administrator will have or incur any liability to any holder of a Claim or Interest or any other entity for any act or omission in connection with, in preparation for, or arising out of, the Bankruptcy Proceeding or the cases, including but not limited to the formulation, preparation, dissemination, approval, confirmation, execution, administration, or consummation of the Plan Support Agreement and Term Sheet, the Plan or the Disclosure Statement, the solicitation of votes for or confirmation of the Plan, or implementation, consummation, or administration of the Plan or the property to be distributed under the Plan, or any compromises and settlements under the Plan, except for liability arising from conduct constituting willful misconduct or gross negligence pursuant to a Final Order; <u>provided, however, that</u>, <u>except as provided in Section 3.1(b) of the Plan,</u> such exculpation shall not be deemed or construed in any way to limit or impair a party in interest <s>identified in Sec. 3.1(b) above</s> to object or challenge the allowance or payment or seek disgorgement of any professional's fees and expenses in connection with any interim or final fee application including resolution or adjudication of any pending objections or reservations by any such party in interest.  The foregoing parties will be entitled to rely upon the advice of counsel in all respects regarding their duties and responsibilities under the Plan.  Notwithstanding the foregoing, this Sec. 12.3 of the Plan shall not be construed to release any claims, rights or causes of action that any professional or restructuring advisor retained pre- or post-petition by the Debtors or their non-debtor Affiliates may have against its current or former employees.

12.4.  <u>Permissible Continuation of Actions</u>.  Notwithstanding the rest of this Plan, the Injunction imposed herein shall not apply to prevent the commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtors or any real property in which the Debtors may have an interest; <u>provided, however</u>, that any order entered or judgment, fine, sanction, penalty, declaration, determination, or monetary award assessed against the Debtors in such an action proceeding may not be enforced against the Debtors, the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust, the Plan Administrator, their Assets, and their respective agents, successors, and assigns, that such an award or determination shall not give rise to an Allowed Claim, and that any judgment, fine, sanction, penalty, declaration,

determination, award, or other action which affects property of the Debtors, the Liquidating Trust, the Liquidating Trustee, or the Plan Administrator, creates personal liability for the agents, successors, and assigns of the Debtors, or creates personal liability for the Consolidated Debtors, the Liquidating Trust, the Liquidating Trustee, the Plan Administrator, and their respective agents, successors, and assigns, shall be void. Nothing herein shall prevent the Court from modifying the Injunction at the request of any party, upon notice and a hearing.

12.5.    Vesting of Assets.

(a)    Consolidated Debtors.

Except as otherwise provided in this Plan, the Liquidating Trustee shall be vested, as of the Effective Date, with all of the Liquidating Trust Assets Property free and clear of all claims, liens, encumbrances, charges, and other interests of holders of Claims against, or Interests in, the Debtors and their Property.

(b)    Consolidated Holdco.

Except as otherwise provided in this Plan, Consolidated Holdco shall be vested, as of the Effective Date, with all of the Consolidated Holdco Assets free and clear of all claims, liens, encumbrances, charges, and other interests of Holders of Claims against, or Interests in, the Debtors and their Property.

12.6.    Unclaimed Property.  Notwithstanding any local, state, federal, or other laws or regulations regarding unclaimed property or escheatment of property, all funds or other property possessed by the Debtors on the Effective Date that is unclaimed, subject to escheatment, or potentially subject to escheatment shall be treated as Assets of such Debtors under this Plan, and shall accordingly be transferred to, vested with, and become the property of the Liquidating Trustee or Plan Administrator, as applicable, to be held and distributed pursuant to the terms of this Plan free and clear of all such laws or regulations, and free and clear of any other claims, liens, encumbrances, charges, and other interests in such property.

12.7.    Reasonable Efforts to Collect Tax Refunds.  The Debtors, the Committee, the Liquidating Trust, the Plan Administrator, the Lone Star ~~Entities~~**Releasees**, the REIT, and the REIT Committee shall take such reasonable steps as may be requested by the Liquidating Trustee to cooperate with and assist in obtaining the Tax Refunds; provided, however, that none of such parties shall be obligated to incur any material liability or unreimbursed cost in connection with such assistance.  The Consolidated Debtors and the Liquidating Trustee shall take reasonable steps to collect and maximize the amount of the Tax Refunds and, if necessary, direct all taxing authorities to pay the refunds to the Liquidating Trust.  Should Consolidated Holdco, the Plan Administrator or any successor of Consolidated Holdco receive the Tax Refunds, such person shall immediately remit such Tax Refunds to the Liquidating Trust, except for the distribution of Tax Refunds **from the Amended 2008 Tax Returns** designated in this Plan for the Trust Preferred Holdco Distributions.

12.8.    Privileges.  All Privileges shall be transferred, assigned and delivered to the Liquidating Trust, or shall remain with Consolidated Holdco, as applicable without waiver or release, and shall vest with the Liquidating Trustee or Plan Administrator, as applicable.  The

Liquidating Trustee and Plan Administrator shall hold and be the beneficiary of all Privileges and entitled to assert all Privileges. No Privilege shall be waived by disclosures to the Liquidating Trustee or Plan Administrator of the Debtors' documents, information or communications subject to attorney-client privileges, work product protections or immunities or protections from disclosure jointly held by the Debtors and the Committee.

12.9. <u>Preservation of All Rights of Action Not Expressly Settled or Released</u>. Unless a claim against a Creditor or other Entity or Cause of Action is expressly waived, relinquished, released, compromised or settled in this Plan, or any Final Order, the Debtors expressly reserve such claim or Cause of Action for later enforcement by the Liquidating Trust or Consolidated Holdco (including, without limitation, claims and Causes of Action set forth in the Plan Supplement or not specifically identified or which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances which may change or be different from those which the Debtors no believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the confirmation or consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, expect where such claims or Causes of Action have been expressly released in this Plan or other Final Order. In addition, the Liquidating Trust and Consolidated Holdco expressly reserve the right to pursue or adopt any claim, crossclaim or counterclaims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any person or entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, subject to the provisions of this Plan or any Final Order.

12.10. <u>Waiver of Taxes</u>. The making or delivery of an instrument of transfer under this Plan, including, but not limited to, the issuance, transfer or exchange of any security under this Plan, may not be taxed under any law imposing a stamp or similar tax.

12.11. <u>Plan Governs</u>. To the extent that the terms of this Plan are inconsistent with the terms of any agreement or instrument concerning any Claim, any Interest or any other matter, the terms of this Plan shall control.

12.12. <u>Business Days</u>. If any payment is due or any action is required to be taken under this Plan on a day that is not a Business Day, then such payment shall be due and any action shall be required to be taken on the next Business Day.

12.13. <u>Dissolution of the Committee</u>. On the fifth (5th) Business Date following the Effective Date, and provided the Liquidating Trust has become effective as provided under the Plan, the Committee shall be dissolved and the Committee and its members shall be released and discharged from the rights and duties arising from or related to the Case, and the retention or employment of the Committee professionals shall terminate, except with respect to final applications for professionals' compensation, provided that the Committee shall continue for the sole purpose of reviewing and taking any appropriate action (including, without limitation, filing objections thereto) in connection with Professional Fee Claims. The professionals retained by the Committee and the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered or expenses incurred after the fifth (5th) Business Day

following the Effective Date, except for (i) services rendered and expenses incurred in connection with any applications by such professionals or Committee members for allowance of compensation and reimbursement of expenses pending on the Effective Date or timely Filed after the Effective Date as provided in this Plan, as approved by the Court, (ii) services rendered and expenses incurred as requested by the Committee in connection with Professional Fee Claims and (iii) services rendered or expenses incurred with respect to implementation or enforcement of the Plan. Notwithstanding the foregoing, the Committee may, at its own discretion, continue or resume its duties arising from or related to any pending litigation, contested matter, adversary proceeding or appeal to which it is a party and, in such a case, the Liquidating Trustee shall compensate the post-Effective Date fees and expenses of the Committee's professionals.

12.14. <u>Evidence</u>. In the event this Plan shall not take effect for whatever reason, nothing here shall constitute an admission or denial with respect to whether any of the Claims or Interests held by the Debtors, Creditors or holders of Interests are (a) entitled to allowance or disallowance, (b) secured or unsecured, (c) entitled to priority treatment under the Bankruptcy Code, (d) liable to subordination, or (e) liable for any claims or causes of action, including but not limited to claims under §§ 506, 510, 522, 542, 543, 544, 545, 547, 548, 549 and/or 550 of the Bankruptcy Code.

12.15. <u>Taxpayer Identification</u>. Each Claim Holder shall be required, before any distribution is made to such Holder, to return to the applicable Liquidating Trustee, Plan Administrator, or Debtors an executed IRS W-9 forms and such other appropriate taxpayer identification information necessary to allow the applicable Liquidating Trustee, Plan Administrator, or Debtors to report all required tax information under applicable law on behalf of the applicable Liquidating Trust or Debtors. If a Claim Holder fails to return to the applicable Liquidating Trustee, Plan Administrator, or Debtors any requested taxpayer identification information within sixty (60) days after a request for this information, this failure shall be deemed a waiver of all claims against the applicable Debtors and Liquidating Trusts, including the right to any and all distributions, and the funds that would otherwise have been distributed to such Claim Holder shall revert to the applicable Liquidating Trusts or Debtors to be distributed to other Claim Holders who have provided the requested taxpayer identification information. The Claim Holder shall be responsible for the payment of taxes in connection with any distributions received from the Debtors or the Liquidating Trusts.

12.16. <u>Forfeiture of Payment</u>. The Holder of a Claim or any other entity entitled to be paid under this Plan who has not claimed such Claim Holder's payment within ninety (90) days of the disbursement or attempted disbursement of such funds under this Plan shall be deemed to have forfeited such Claim Holder's right to receive such payment pursuant to the Plan. A Claim Holder shall be deemed to have failed to claim a payment if (a) a check to such Claim Holder is returned as undeliverable without a proper forwarding address, (b) such Claim Holder's check has not been cashed within ninety (90) days of the date such instrument was mailed, or (c) a check to such Claim Holder could not be mailed or delivered because of the absence of a proper address to which to mail or deliver such check. Any such unclaimed payment shall be deemed to be forfeited and, such funds will be returned to the applicable Debtor or Liquidating Trust Account and distributed in accordance with the Plan.

12.17.  <u>Subordination of Late Filed Claims</u>.  The Bar Date for filing Claims against the Debtors has passed, other than Administrative Claims**, Professional Fee Claims, REIT Preferred Security Holder Subordinated Guaranty Claims** and Claims arising from the assumption or rejection of any executory contract or unexpired lease pursuant to this Plan.  Late Filed Claims are automatically treated as Subordinated Claims, unless and until the Court enters an Final Order allowing or approving a stipulation allowing a Late Filed Claim, or the Plan allows such Claims.

12.18.  <u>Exemption from Securities Laws</u>.  To the maximum extent provided by § 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance under the Plan of the beneficial interests in the Liquidating Trusts will be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder.

12.19.  <u>Deemed Consent</u>.  By submitting a Ballot or receiving a Distribution under or any benefit pursuant to the Plan and not electing to withhold consent as provided under the Plan prior to the Confirmation Date, or by order of the Bankruptcy Court, each Holder of a Claim or Interest shall be deemed to have specifically consented to the terms of the Plan, including the releases and treatment contained herein.

12.20.  <u>Governing Law</u>.  Expect to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent any document entered into in connection with the Plan so provides, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of Delaware, without giving effect to the principles of conflicts of law.

12.21.  <u>Notice</u>.  Any notice required under this Plan shall be given to:

To the Debtors:

> Meade A. Monger
> AlixPartners
> 2101 Cedar Springs Rd., Suite 1100
> Dallas, TX 75201
> Telephone: 214-647-7500
> Facsimile: 214-647-7501
> Attn:   Meade A. Monger (mmonger@alixpartners.com)

With a copy to:

> Hunton & Williams LLP
> 1445 Ross Ave., Suit 3700
> Dallas, TX 75202
> Telephone: 214-979-3000
> Facsimile: 214-468-3599
> Attn:   Gregory G. Hesse (ghesse@hunton.com)

> -and-

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:                           (302)                   652-4100
Facsimile: (302) 652-4400
Attn: Kathleen P. Makowski (kmakowski@pszjlaw.com)

To the Committee:

Arent Fox LLP
1675 Broadway
New York, NY 10019
Telephone: 212-484-3900
Facsimile: 212-484-3990
Attn: Andrew I. Silfen (silfen.andrew@arentfox.com)
      Jeffrey N. Rothleder (rothleder.jeffrey@arentfox.com)

-and-

Elliott                                                  Greenleaf
1105            Market            St.,         Suite           1700
Wilmington,                DE                               19801
Telephone:                           (302)                   384-9400
Facsimile: (302) 384-9399
Attn: Rafael X. Zahralddin-Aravena (rxza@elliottgreenleaf.com)

To the Lone Star Entities:

Vinson & Elkins LLP
Josiah M. Daniel, III
2001 Ross Ave., Suite 3700
Dallas, TX 75201
Telephone: 214-220-7718
Facsimile: 214-999-7718
Attn: Josiah M. Daniel, III (jdaniel@velaw.com)

-and-

Young, Conaway, Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone: 302-571-6600
Facsimile: 302-576-3401
Attn: John T. Dorsey (jdorsey@ycst.com)

# 13. MODIFICATION OF THE PLAN

13.1. <u>Pre-Confirmation Modification</u>. At any time before the Confirmation Date, the Plan or Plan Supplement may be modified by the Debtors, subject to the consent of the Committee, the Lone Star Entities, the Trust Preferred Holders, the Trust Preferred Indenture Trustee, the REIT, and the REIT Committee, which consent, to the extent such modifications do not adversely affect the rights, treatment, benefits or obligations of the respective parties or constituencies, or the substance of the economic provisions set forth in the Plan, shall not be unreasonably withheld, upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of §§ 1122 & 1123 of the Bankruptcy Code. In the event that there is a modification of the Plan, then the Plan as modified shall become the Plan.

13.2. <u>Pre-Consummation Modifications</u>. At any time after the Confirmation Date, but before substantial consummation of the Plan, the Plan or Plan Supplement may be modified by the Debtors, subject to the consent of the Committee, the Lone Star Entities, the Trust Preferred Holders, the Trust Preferred Indenture Trustee, the REIT, and the REIT Committee, which consent, to the extent such modifications do not adversely affect the rights, treatment, benefits or obligations of the respective parties or constituencies, or the substance of the economic provisions set forth in the Plan, shall not be unreasonably withheld, upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of §§ 1122 &1123 of the Bankruptcy Code. The Plan, as modified under this section, becomes a Plan only if the Court, after notice and hearing, confirms such Plan, as modified, under § 1129 of the Bankruptcy Code.

13.3. <u>Non-Material Modifications</u>. At any time after the Confirmation Date, the applicable Debtors may, without the approval of the Court, remedy any defect or omission, or reconcile any such inconsistencies in the Plan or Plan Supplement or in the Confirmation Order, as such matters may be necessary to carry out the purposes, intent, and effect of this Plan, provided that they do not materially or adversely affect the interests of creditors or other entities, subject to the terms of the Plan Support Agreement and Term Sheet and upon consultation with the Committee.

# 14. RETENTION OF JURISDICTION

14.1 Notwithstanding confirmation of this Plan or the Effective Date having occurred, the Bankruptcy Court, unless it otherwise provides in the order confirming this Plan, shall retain jurisdiction to enforce**, implement, or interpret** the provisions, purposes and intent of this Plan, until the entry of the Final Decree, including, without limitation, jurisdiction with respect to the following matters:

(a) To determine the classification, allowance or disallowance of all Claims or Interests, including, without limitation, Claims and objections relating to the assumption or rejection of executory contracts or unexpired leases pursuant to this Plan, and to hear and determine any and all objections to such Claims or Interests including, without limitation, Claims and objections relating to the assumption of executory contracts or unexpired leases pursuant to this Plan;

(b)     To enable the Liquidating Trustee or Plan Administrator to commence, prosecute, settle, compromise, or abandon any and all claims or Causes of Action of the Debtors;

(c)     To adjudicate all Claims to a security or ownership interest in any Property of the Debtors or in any proceeds thereof;

(d)     To liquidate damages or estimate Claims in connection with any Disputed Claims or contingent or unliquidated Claims;

(e)     To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, consummation, or performance of this Plan including, but not limited to, any matters related to the Plan Support Agreement and Term Sheet, as well as all controversies, suits, and disputes that may be pending before the Bankruptcy Court on or before the Confirmation Date or may be brought thereafter;

(f)     To determine and Allow all expenses of administration of the Bankruptcy Proceeding, including, without limitation, all requests for Professional Fees for periods prior to the Effective Date;

(g)     To recover all Assets and Property of the Debtors, wherever located;

(h)     To interpret, construe or enforce this Plan, the Confirmation Order or any order previously entered by the Bankruptcy Court in this case;

(i)     To hear, determine and enforce any and all Causes of Action, to set aside liens or encumbrances, to recover any transfers, assets or damages to which the Estate may be entitled, to avoid or recover any preferences, fraudulent conveyances, or obligations, or other obligations or transfers voidable or subject to avoidance under applicable provisions of the Bankruptcy Code or other federal, state, or local law, or to subordinate or disallow, in whole or in part, any Claim, under applicable provisions of the Bankruptcy Code or other federal, state, or local law;

(j)     To consider and determine any proposed modification or amendment of the Plan;

(k)     To make any determination necessary or appropriate under § 505 of the Bankruptcy Code or other determination relating to taxes paid or payable by the Debtors, Plan Administrator, or Liquidating Trust, Tax Refunds due to the Debtors, Plan Administrator, or the Liquidating Trusts, and tax returns filed or to be filed by the Debtors, Plan Administrator,  or the Liquidating Trusts, for all periods through the end of the fiscal year in which the Effective Date occurs;

(l)     To implement the provisions of this Plan and enter any orders in aid of its implementation or in furtherance of its purposes and intent;

(m)     To make such orders as the Bankruptcy Court deems necessary or appropriate to carry out the provisions, purposes, or intent of this Plan;

(n)     To adjudicate any dispute with respect to any obligations of the Debtors, the Liquidating Trust, and the Plan Administrator, including any fees requested by professionals employed by the Liquidating Trust or Plan Administrator; and

(o)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order.

14.2     If the Bankruptcy Court abstains from exercising, declines to exercise, or is otherwise without jurisdiction over any matter arising out of the Cases, the provisions of the Plan shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## 15.     <u>REQUEST FOR CONFIRMATION</u>

15.1     The Debtors request confirmation of the Plan under §§ 1129(a) or 1129(b) of the Bankruptcy Code, as appropriate.

Dated: ~~February 23,~~**March____,** 2011

Wilmington, Delaware

Respectfully submitted,

**ACCREDITED HOME LENDERS HOLDING COMPANY AND VENDOR MANAGEMENT SERVICES, LLC**

By:
        Meade A. Monger
        Their: Chief Restructuring Officer

**ACCREDITED HOME LENDERS, INC., INZURA INSURANCE SERVICES, INC., and WINDSOR MANAGEMENT CO.**

By:
        Meade A. Monger
        Their: Chief Restructuring Officer

Document comparison done by Workshare DeltaView on Tuesday, March 29, 2011 2:25:45 PM

| Input: | |
|---|---|
| Document 1 | interwovenSite://EMF_US/HW_US/29688829/35 |
| Document 2 | interwovenSite://EMF_US/HW_US/29688829/38 |
| Rendering set | H&W |

| Legend: |
|---|
| **<u>Insertion</u>** |
| ~~Deletion~~ |
| ~~Moved from~~ |
| Moved to |
| Style change |
| Format change |
| ~~Moved deletion~~ |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 550 |
| Deletions | 533 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 1083 |