IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ACCREDITED HOME LENDERS | § | Case No. 09-11516 (MFW) |
| HOLDING CO., et al. | § | |
| | § | |
| Debtors.[1] | § | JOINTLY ADMINISTERED |

## DEBTORS' FOURTH AMENDED CHAPTER 11 PLAN OF LIQUIDATION

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

**HUNTON & WILLIAMS LLP**
Gregory G. Hesse
Lynnette R. Warman
Jesse T. Moore
Caroline R. Penninck
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Telephone: (214) 979-3000
Telecopy: (214) 880-0011

ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Accredited Home Lenders Holding Co., a Delaware corporation (9482), Accredited Home Lenders, Inc., a California corporation (6859), Vendor Management Services, LLC d/b/a Inzura Settlement Services, a Pennsylvania limited liability company (8047), Inzura Insurance Services, Inc., a Delaware corporation (7089), and Windsor Management Co., d/b/a AHL Foreclosure Services Co., a California corporation (4056). The address for all Debtors is 9915 Mira Mesa Blvd., Ste. 120, San Diego, CA 92131. The bankruptcy cases for these debtors and debtors-in-possession are jointly administered under the bankruptcy case and style referenced above.

# TABLE OF CONTENTS

1.  DEFINITIONS..................................................................................................1
    1.1.  Accredited Preferred Securities Trust I.............................................1
    1.2.  Administrative Claim........................................................................2
    1.3.  Administrative Claim Bar Date .........................................................2
    1.4.  Affiliate ............................................................................................2
    1.5.  AHL .................................................................................................2
    1.6.  AHL Canada .....................................................................................2
    1.7.  Allowed Administrative Claim .........................................................2
    1.8.  Allowed ............................................................................................2
    1.9.  Amended 2008 Tax Return ...............................................................2
    1.10. Assets ...............................................................................................2
    1.11. Avoidance Actions ...........................................................................2
    1.12. Ballot ...............................................................................................3
    1.13. Bankruptcy Code ..............................................................................3
    1.14. Bankruptcy Court ..............................................................................3
    1.15. Bankruptcy Proceeding .....................................................................3
    1.16. Bankruptcy Rules ..............................................................................3
    1.17. Bar Date ...........................................................................................3
    1.18. Bar Date Order ..................................................................................3
    1.19. Business Day .....................................................................................3
    1.20. Canadian Equity ................................................................................3
    1.21. Cash..................................................................................................3
    1.22. Causes of Action ..............................................................................3
    1.23. Citigroup ..........................................................................................4
    1.24. Claim.................................................................................................4
    1.25. Claim Holder .....................................................................................4
    1.26. Claim Register ...................................................................................4
    1.27. Class..................................................................................................4
    1.28. Committee..........................................................................................4
    1.29. Committee Counsel............................................................................4
    1.30. Confirmation Date .............................................................................4
    1.31. Confirmation Order............................................................................4
    1.32. Consolidated Debtors .........................................................................4
    1.33. Consolidated Debtors Assets ..............................................................4
    1.34. Consolidated Debtors Convenience Claim ..........................................5
    1.35. Consolidated Debtors Convenience Class Election..............................5
    1.36. Consolidated Debtors Professional Fee Claim ....................................5
    1.37. Consolidated Holdco..........................................................................5
    1.38. Consolidated Holdco Assets ...............................................................5
    1.39. Consolidated Holdco Distributable Cash.............................................5
    1.40. Consolidated Holdco Convenience Claim ...........................................6
    1.41. Consolidated Holdco Convenience Class Election................................6
    1.42. Consolidated Holdco Plan Administration Expenses ...........................6
    1.43. Consolidated Holdco Professional Fee Claim Payment ........................6
    1.44. Consolidated Holdco Reserves ...........................................................6

1.45.  Consolidated Holdco Residual Assets ............................................................6
1.46.  Creditor ..............................................................................................................7
1.47.  Creditor Release ................................................................................................7
1.48.  CRO Expenses ...................................................................................................7
1.49.  Cure Claim .........................................................................................................7
1.50.  D&O Policies .....................................................................................................7
1.51.  Debtor ................................................................................................................7
1.52.  Deferred Compensation Settlement Proceeds...................................................7
1.53.  Disclosure Statement ........................................................................................7
1.54.  Disbursing Agent ..............................................................................................7
1.55.  Disclosure Statement Approval Date ................................................................7
1.56.  Disputed Claim ..................................................................................................7
1.57.  Distribution .......................................................................................................7
1.58.  Distribution Date ...............................................................................................8
1.59.  Distribution Date Balance .................................................................................8
1.60.  Distribution Record Date ..................................................................................8
1.61.  Effective Date ...................................................................................................8
1.62.  Effective Date Balance .....................................................................................8
1.63.  Effective Date Distribution ..............................................................................8
1.64.  Entity .................................................................................................................8
1.65.  Estate .................................................................................................................8
1.66.  Final Decree ......................................................................................................8
1.67.  Final Distribution .............................................................................................8
1.68.  Final Order ........................................................................................................8
1.69.  Finally Determined ...........................................................................................8
1.70.  Holdco ...............................................................................................................9
1.71.  Holder ...............................................................................................................9
1.72.  Initial Deposit....................................................................................................9
1.73.  Injunction ..........................................................................................................9
1.74.  Intercompany Claims ........................................................................................9
1.75.  Interest...............................................................................................................9
1.76.  Interim Distribution ..........................................................................................9
1.77.  IRS Priority Tax Claims....................................................................................9
1.78.  Late Filed Claims ..............................................................................................9
1.79.  Lien or Liens .....................................................................................................9
1.80.  Liquidating Trust ............................................................................................10
1.81.  Liquidating Trust Account ..............................................................................10
1.82.  Liquidating Trust Advisory Board ..................................................................10
1.83.  Liquidating Trust Agreement ..........................................................................10
1.84.  Liquidating Trust Assets .................................................................................10
1.85.  Liquidating Trust Expenses ............................................................................10
1.86.  Liquidating Trust Professionals ......................................................................10
1.87.  Liquidating Trust Reserve...............................................................................10
1.88.  Liquidating Trust Residual Assets ..................................................................11
1.89.  Liquidating Trustee..........................................................................................11
1.90.  Lone Star Advance...........................................................................................11

1.91. Lone Star Consolidated Debtors Settlement Payment ...............................11
1.92. Lone Star Creditor Release Settlement Payment .................................11
1.93. Lone Star Entities................................................................11
1.94. Lone Star Proofs of Claim .......................................................11
1.95. Lone Star Releasees .............................................................11
1.96. Lone Star Trust Preferred Settlement Payment ...................................11
1.97. Net Proceeds ....................................................................12
1.98. Non-Debtor Subsidiary ...........................................................12
1.99. Officer and Director Causes of Action ..........................................12
1.100. Person..........................................................................12
1.101. Petition Date...................................................................12
1.102. Plan ...........................................................................12
1.103. Plan Administrator..............................................................12
1.104. Plan Administrator Retention Agreement.........................................12
1.105. Plan Releasees..................................................................12
1.106. Plan Supplement ................................................................13
1.107. Plan Supplement Filing Date ....................................................13
1.108. Plan Support Agreement and Term Sheet..........................................13
1.109. Priority Claim .................................................................13
1.110. Priority Tax Claim .............................................................13
1.111. Privilege ......................................................................13
1.112. Pro Rata Share..................................................................13
1.113. Proceeds .......................................................................13
1.114. Professionals ..................................................................13
1.115. Professional Fee Claim .........................................................13
1.116. Professional Fee Claim Bar Date ................................................13
1.117. Property........................................................................14
1.118. Receivables ....................................................................14
1.119. REIT ...........................................................................14
1.120. REIT Adversary .................................................................14
1.121. REIT Committee .................................................................14
1.122. REIT First Distribution ........................................................14
1.123. REIT Junior Claim ..............................................................14
1.124. REIT Preferred Securities ......................................................14
1.125. REIT Preferred Security Holder .................................................14
1.126. REIT Preferred Holders' Subordinated Guaranty Claims ...........................14
1.127. Rejection Claim ................................................................14
1.128. Rejection Claim Bar Date .......................................................14
1.129. Schedules ......................................................................14
1.130. Secured Claim ..................................................................14
1.131. Subordinated Claim .............................................................15
1.132. Subsequent Distributions .......................................................15
1.133. Tax Code........................................................................15
1.134. Tax Refunds.....................................................................15
1.135. Tentative Refund ...............................................................15
1.136. Trust Declaration ..............................................................15

1.137. Trust Preferred Adversary Proceeding..............................................15
1.138. Trust Preferred Common Securities................................................15
1.139. Trust Preferred Guarantee.........................................................15
1.140. Trust Preferred Holdco Distributions.............................................15
1.141. Trust Preferred Holders............................................................16
1.142. Trust Preferred Indenture..........................................................16
1.143. Trust Preferred Indenture Trustee.................................................16
1.144. Trust Preferred Note...............................................................16
1.145. Trust Preferred Note Claim........................................................16
1.146. Trust Preferred Note Junior Claim.................................................16
1.147. Trust Preferred Securities.........................................................16
1.148. Unsecured Claim....................................................................16
1.149. Vendor.............................................................................17
1.150. Vendor Cash........................................................................17
1.151. Viera Claims.......................................................................17
1.152. Viera Settlement...................................................................17
2.    DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS..............................17
      2.1.  Unclassified Claims: Administrative Claims and Priority Tax Claims.......17
      2.2.  Classified Claims of Consolidated Holdco...................................18
      2.3.  Classification of Claims against the Consolidated Debtors..................18
      2.4.  Subordination and Subrogation Rights and Claims of Subordination and
            Subrogation...................................................................19
3.    TREATMENT OF UNCLASSIFIED CLAIMS..............................................19
      3.1.  Administrative Claims.........................................................19
            (a)    Non-Professional Fee Administration Claims...........................19
            (b)    Professional Fee Claims................................................20
            (c)    Consolidated Holdco Professional Fee Payment.........................20
      3.2.  Priority Tax Claims...........................................................21
      3.3.  IRS Priority Tax Claims.......................................................21
4.    TREATMENT OF CLASSES OF CLAIMS AND INTERESTS UNDER THE
      CONSOLIDATED HOLDCO PLAN......................................................21
      4.1.  Class 1 H - Secured Claims...................................................21
      4.2.  Class 2 H - Priority Claims, other than Priority Tax Claims................22
      4.3.  Class 3 H - General Unsecured Claims against Consolidated Holdco
            Accepting the Creditor Release..............................................22
      4.4.  Class 4 H - General Unsecured Claims against Consolidated Holdco,
            except for separately classified Claims.....................................23
      4.5.  Class 5 H - Unsecured Claims Against Consolidated Holdco held by LSF-
            MRA, LLC......................................................................23
      4.6.  Class 6 H - Unsecured Claims against Consolidated Holdco Held by the
            REIT..........................................................................24
      4.7.  Class 7 H - Consolidated Holdco Convenience Class Claims..................25
      4.8.  Class 8 H - Claims against Consolidated Holdco relating to Accredited
            Preferred Securities Trust I.................................................25
      4.9.  Class 9 H - REIT Preferred Holders' Subordinated Guaranty Claims.........25

4.10.   Class 10 H - Subordinated Claims against Consolidated Holdco (including Late Filed Claims)...........................................................26
4.11.   Class 11 H- Interests in Consolidated Holdco ................................27
5.   TREATMENT OF CLASSES OF CLAIMS AND INTERESTS UNDER THE CONSOLIDATED DEBTORS PLAN ...................................................27
5.1.   Class 1 C - Secured Claims against the Consolidated Debtors............27
5.2.   Class 2 C - Priority Claims, other than Priority Tax Claims, against the Consolidated Debtors...........................................................28
5.3.   Class 3 C - General Unsecured Claims against the Consolidated Debtors Accepting the Creditor Release ...............................................28
5.4.   Class 4 C - General Unsecured Claims against the Consolidated Debtors, except for separately classified Claims..........................................29
5.5.   Class 5 C - Unsecured Claims Against the Consolidated Debtors held by the Lone Star Entities..........................................................30
5.6.   Class 6 C - Consolidated Debtors Convenience Class Claims. The Class 6 C Claims are impaired ........................................................30
5.7.   Class 7 C - REIT Junior Claim .................................................30
5.8.   Class 8 C - Subordinated Claims against the Consolidated Debtors (including Late Filed Claims) ....................................................30
5.9.   Class 9 C - Claims against Consolidated Debtors relating to Accredited Preferred Securities Trust I ....................................................31
5.10.   Class 10 C - Interests in the Consolidated Debtors.........................31
6.   INTERCOMPANY CLAIMS........................................................32
6.1.   Inter-Debtor Waivers .............................................................32
6.2.   Non-Debtor Subsidiary Waivers................................................32
6.3.   Asset Allocation...................................................................32
7.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES .........................33
7.1.   Assumption and Rejection .......................................................33
7.2.   Indemnification Agreements.....................................................33
7.3.   Claims Relating to Assumption or Rejection..................................33
7.4.   Insurance Policies ................................................................34
8.   GLOBAL SETTLEMENT AND COMPROMISE OF DISPUTES...................34
8.1.   Incorporation of Settlement ....................................................34
8.2.   Terms of the Global Settlement ................................................34
       (a)   REIT Adversary Settlement................................................34
       (b)   Citigroup Settlement ......................................................34
       (c)   Trust Preferred Settlement ...............................................35
       (d)   Lone Star Settlement......................................................35
       (e)   Release of Settling Parties' Claims against the Lone Star Releasees and Plan Releasees......................................................36
       (f)   Release of Creditors' Claims against the Lone Star Releasees and Plan Releasees............................................................37
       (g)   Mutual Releases Amongst Settling Parties...............................37
9.   LIQUIDATING TRUST.............................................................39
9.1.   Appointment of Liquidating Trustee. .........................................39
9.2.   Funding of the Liquidating Trust...............................................39

9.3.    Transfer of Liquidating Trust Assets to the Liquidating Trust ............................40
9.4.    The Liquidating Trust. .....................................................................................40
9.5.    Limitation of Liability for Liquidating Trustee ..............................................44
9.6.    Transferability.................................................................................................44
9.7.    The Liquidating Trust Advisory Board............................................................44
9.8.    Final Administration of Liquidating Trust......................................................46
10.    MEANS OF IMPLEMENTING THE PLAN ...............................................................46
10.1.    Consolidated Holdco Plan Administrator. .....................................................46
10.2.    Substantive Consolidation of Consolidated Debtors Estates .........................47
10.3.    Substantive Consolidation of Consolidated Holdco Estates ..........................47
10.4.    Lone Star Creditor Release Settlement Payment............................................47
10.5.    Lone Star Consolidated Debtors Settlement Payment ....................................48
10.6.    Consolidated Holdco Distributions.................................................................48
10.7.    Trust Preferred Holdco Distributions Shortfall..............................................49
10.8.    Consolidated Holdco Priority Administrative Claims .....................................49
10.9.    Effective Date Distribution .............................................................................49
10.10.    Transfer Assets to Consolidated Holdco.........................................................49
10.11.    Transfer of Assets to Liquidating Trust .........................................................49
10.12.    Abandonment of REIT Equity .........................................................................50
10.13.    Payment of Fees to United States Trustee .......................................................50
10.14.    Continued Cooperation ...................................................................................50
10.15.    Consolidated Debtors' Continued Existence ..................................................50
10.16.    Consolidated Holdco's Continued Existence...................................................51
10.17.    Debtors' Books and Records ...........................................................................51
10.18.    Accredited Preferred Securities Trust I Termination......................................51
10.19.    Employee Agreements .....................................................................................52
10.20.    Closing of Debtors' Cases ...............................................................................52
        (a)     Consolidated Holdco Estates. ..............................................................52
        (b)     Consolidated Debtors Estates. .............................................................52
10.21.    Distribution of Property Under this Plan. .......................................................52
        (a)     Manner of Cash Payments Under this Plan. ........................................53
        (b)     No De Minimis Distributions................................................................53
        (c)     Allowance of Claims and Interests. .....................................................53
        (d)     Distributions to Holders as of the Distribution Record Date. .............54
        (e)     Deemed Distributions to Subordinated Creditors. ...............................54
        (f)     Delivery of Distributions and Undeliverable/Unclaimed
                Distributions..........................................................................................54
        (g)     Distributions of Consolidated Holdco Residual Assets and
                Liquidating Trust Residual Assets .......................................................55
        (h)     Fees and Expenses Incurred in Distributing Consolidated Holdco
                Residual Assets and Liquidating Trust Residual Assets.......................56
11.    CONDITIONS PRECEDENT TO EFFECTIVE DATE OF PLAN ............................56
11.1.    Conditions Precedent to Effective Date of Plan .............................................56
11.2.    Waiver of Conditions Precedent .....................................................................57
11.3.    Nonoccurrence of Conditions to Consummation............................................57
12.    MISCELLANEOUS PROVISIONS.............................................................................57

| | | |
|---|---|---|
| 12.1. | No Discharge of Debtors | 57 |
| 12.2. | Post-Confirmation Injunction | 57 |
| 12.3. | Exculpation | 58 |
| 12.4. | Permissible Continuation of Actions | 58 |
| 12.5. | Vesting of Assets. | 59 |
| | (a) Consolidated Debtors. | 59 |
| | (b) Consolidated Holdco. | 59 |
| 12.6. | Unclaimed Property | 59 |
| 12.7. | Reasonable Efforts to Collect Tax Refunds | 59 |
| 12.8. | Privileges | 59 |
| 12.9. | Preservation of All Rights of Action Not Expressly Settled or Released | 60 |
| 12.10. | Waiver of Taxes | 60 |
| 12.11. | Plan Governs | 60 |
| 12.12. | Business Days | 60 |
| 12.13. | Dissolution of the Committee | 60 |
| 12.14. | Evidence | 61 |
| 12.15. | Taxpayer Identification | 61 |
| 12.16. | Forfeiture of Payment | 61 |
| 12.17. | Subordination of Late Filed Claims | 62 |
| 12.18. | Exemption from Securities Laws | 62 |
| 12.19. | Deemed Consent | 62 |
| 12.20. | Governing Law | 62 |
| 12.21. | Notice | 62 |
| 13. | MODIFICATION OF THE PLAN | 64 |
| 13.1. | Pre-Confirmation Modification | 64 |
| 13.2. | Pre-Consummation Modifications | 64 |
| 13.3. | Non-Material Modifications | 64 |
| 14. | RETENTION OF JURISDICTION | 64 |
| 15. | REQUEST FOR CONFIRMATION | 66 |

TO THE HONORABLE MARY F. WALRATH, U.S. BANKRUPTCY JUDGE:

The Debtors and Debtors-in-Possession in the above-captioned Chapter 11 cases (the "Debtors"), hereby propose this Debtors' Fourth Amended Chapter 11 Plan of Liquidation (the "Plan") to creditors and equity holders of the Debtors, pursuant to § 1121(a) of the United States Bankruptcy Code.

This Plan is a liquidating plan. It does not contemplate the continuation of the Debtors' collective businesses, although it does contemplate the continuation of Consolidated Holdco (defined below) for the limited purposes provided for under the Plan. The Plan:

       (i)     incorporates and implements the Plan Support Agreement and Term Sheet (defined below);

       (ii)    substantively consolidates the assets and liabilities of Accredited Home Lenders Holding Co. ("Holdco") with those of its wholly owned subsidiary, Vendor Management Services, LLC (collectively referred to herein with Holdco as "Consolidated Holdco");

       (iii)   substantively consolidates the assets and liabilities of Accredited Home Lenders, Inc., Inzura Insurance Services, Inc. and Windsor Management Co. (collectively referred to herein as the "Consolidated Debtors");

       (iv)   appoints a Plan Administrator to liquidate Consolidated Holdco's assets, distribute the proceeds of those assets to creditors of Consolidated Holdco pursuant to the terms of this Plan, and wind down and dissolve the Consolidated Holdco entities;

       (v)    establishes a liquidating trust that will acquire the Liquidating Trust Assets (as defined herein), liquidate those assets, and distribute the proceeds of those assets to the creditors of the Consolidated Debtors pursuant to the terms of this Plan;

       (vi)   resolves the intercompany claims of the Consolidated Debtors and Consolidated Holdco and other inter-Estate and inter-Debtor issues; and

       (vii)   settles all Claims that the Debtors may have against the Lone Star Releasees and the Plan Releasees in exchange for Cash payments from the Lone Star Entities and/or their insurers and insurers of the Debtors to various Debtors and creditors, along with the waivers of Claims held by the Lone Star Entities against certain Debtors.

## 1.    **DEFINITIONS**

1.1.   Accredited Preferred Securities Trust I. The certain trust established pursuant to the Amended and Restated Trust Agreement among Accredited Home Lenders Holding Co., as depositor, Wells Fargo Bank, N.A., as Property Trustee, Wells Fargo Delaware Trust Company, as Delaware Trustee and the administrative trustees named therein dated January 11, 2007.

1.2.     Administrative Claim.  A Claim, including, but not limited to Professional Fee Claims, entitled to payment as an administrative expense as specified in § 503(b) of the Bankruptcy Code that is entitled to priority under § 507(a)(2) of the Bankruptcy Code, which Claim must be filed by the Administrative Claim Bar Date or the Professional Fee Claim Bar Date, as applicable.

1.3.     Administrative Claim Bar Date.   For all Administrative Claims except Professional Fee Claims, the first Business Day that is thirty (30) days following the Effective Date.

1.4.     Affiliate.  With respect to any specified Entity, any other Entity or Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such specified Entity.

1.5.     AHL.  Accredited Home Lenders, Inc., a California corporation.

1.6.     AHL Canada.  Accredited Home Lenders Canada, Inc.

1.7.     Allowed Administrative Claim.   An Administrative Claim as to which no objection to the allowance thereof has been interposed prior to the forty-fifth (45th) day following the Administrative Claim Bar Date or the Professional Fee Claim Bar Date, as applicable, or as to which an objection has been filed and such Claim has been Allowed by Final Order.

1.8.     Allowed.  "Allowed" means, with respect to a Claim of any sort, including but not limited to secured, unsecured, priority, or subordinated, a Claim (a) for which a proof of claim was timely filed, in the manner prescribed by the Bankruptcy Court, either within the Bar Date or as extended upon motion, or (b) if no proof of claim has been timely filed, which was listed by any of the Debtors in their Schedules as undisputed, noncontingent, or liquidated; and, in any such case, as to which Claim no objection has been timely interposed, or as to which an objection or request for estimation has been filed and such objection or request for estimation has been resolved by a Final Order.

1.9.     Amended 2008 Tax Return.  The amended income tax return that the Debtors filed with the Internal Revenue Service dated November 18, 2010.

1.10.    Assets.  All property that is property of the applicable Debtor and that Debtor's estate under § 541 of the Bankruptcy Code of every kind and character, whether such property is now existing or hereafter arising or acquired, wherever located and whether real, personal, tangible or intangible including, without limitation, all Cash, Causes of Action and all proceeds of and recoveries on Causes of Action, all accounts, contract rights, chattel paper, general intangibles, instruments, securities, furniture, fixtures, machinery, equipment, inventory intellectual property, domain names, and interest in real estate.

1.11.    Avoidance Actions.  Any and all rights to recover or avoid transfers under Chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, §§ 522, 541, 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code, to avoid any lien under § 506(d) of the Bankruptcy Code, or otherwise to exercise the avoidance powers provided under the Bankruptcy Code.

1.12. <u>Ballot</u>. The ballot distributed to each eligible Creditor, on which ballot such Creditor may, among other things, vote to accept or reject this Plan, make another election for treatment of such Claim as provided under the Plan, including the Convenience Class Election, and elect to provide the Creditor Release.

1.13. <u>Bankruptcy Code</u>. Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as amended and in effect as of the Petition Date.

1.14. <u>Bankruptcy Court</u>. The United States Bankruptcy Court for the District of Delaware having jurisdiction of the above-captioned Chapter 11 cases.

1.15. <u>Bankruptcy Proceeding</u>. The Debtors' jointly administered bankruptcy cases, filed under Chapter 11 of the Bankruptcy Code on the Petition Date, pending in the Bankruptcy Court as Accredited Home Lenders Holding Co.

1.16. <u>Bankruptcy Rules</u>. The Federal Rules of Bankruptcy Procedure, as amended and in effect as of the Petition Date.

1.17. <u>Bar Date</u>. October 6, 2009 with respect to all Claims other than (a) Administrative Claims, (b) Claims subject to the Governmental Bar Date (as defined in the Bar Date Order), (c) Rejection Claims, and (d) REIT Preferred Security Holder's Subordinated Guaranty Claims.

1.18. <u>Bar Date Order</u>. That certain order entered by the Bankruptcy Court on July 27, 2009, Docket No. 478, establishing the Bar Date and certain procedures for filing proofs of claims.

1.19. <u>Business Day</u>. A day other than a Saturday, Sunday, or any other day on which commercial banking institutions in New York, New York are required or authorized to close by law or executive order.

1.20. <u>Canadian Equity</u>. All equity interests owned by any of the Debtors in AHL Canada.

1.21. <u>Cash</u>. Lawful currency of the United States, including but not limited to bank deposits, checks representing good funds, and other similar items.

1.22. <u>Causes of Action</u>. Any and all claims, actions, causes of action, suits, judgments, third-party claims, counterclaims, cross-claims, or other rights of recovery, whether asserted or unasserted or pending as of the Effective Date or direct, indirect, derivative or otherwise, or known or unknown, or asserted or unasserted, that are held by the applicable Debtor or Estate against any person, entity, or property, wherever located, from the beginning of the world to the Effective Date, including Avoidance Actions as well as Officer and Director Causes of Action and claims for malpractice, negligence, breach of contract, fraud, aiding and abetting, inducement as well as claims against attorneys, auditors, investment bankers, financial consultants, agents, or other advisors that provided professional, accounting, audit, or other services to the Debtors and Non-Debtor Subsidiaries (including, without limitation, REIT) prior to the Petition Date.

1.23.   Citigroup.   Citigroup and Citigroup Global Markets Realty Corp., Citigroup Mortgage Loan Trust Inc., Citigroup Global Markets Inc., Citigroup Mortgage Loan Trust AHL-1, Citigroup Mortgage Loan Trust AHL-2 and Citigroup Mortgage Loan Trust AHL-3, all creditors of AHL.

1.24.   Claim.   All claims, as defined in § 101(5) of the Bankruptcy Code, against the applicable Debtor, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, including, without limitation, all claims arising from that Debtor's rejection of an executory contract or unexpired lease.

1.25.   Claim Holder.   Any Entity that holds a Claim against the estates, whether Finally Determined or Disputed.

1.26.   Claim Register.   The official register of Claims in this Bankruptcy Proceeding.

1.27.   Class.   A group of Claims or Interests which are substantially similar to each other, as described in Article 2 and 3 hereof.

1.28.   Committee.   The Official Committee of Unsecured Creditors appointed in the Bankruptcy Proceeding by the United States Trustee, namely Citigroup Global Markets Realty Corp., Transcontinental Valuations, Inc., Kodiak CDO I, Ltd., Patricia Howell, and Carrie Luft.[2]

1.29.   Committee Counsel.   The law firms of Arent Fox, LLP, and Elliott Greenleaf.

1.30.   Confirmation Date.   The date on which the Bankruptcy Court enters an order confirming this Plan.

1.31.   Confirmation Order.   The order entered by the Bankruptcy Court confirming this Plan, which includes the approval of the settlements and compromises set forth in and under this Plan.

1.32.   Consolidated Debtors.   Accredited Home Lenders, Inc., a California corporation, Inzura Insurance Services, Inc., a Delaware corporation, and Windsor Management of Washington, Inc., d/b/a AHL Foreclosure Services Company, a Washington corporation.

1.33.   Consolidated Debtors Assets.   All Assets of the Consolidated Debtors and the Consolidated Debtors' Estates, whether such property is now existing or hereafter arising or acquired and wherever located including, without limitation, the Tax Refunds, all Causes of Action and all proceeds of and recoveries on Causes of Action, all Cash, accounts, contract rights, chattel paper, general intangibles, instruments, securities, furniture, fixtures, machinery, equipment, inventory, intellectual property, domain names, and interest in real estate.   For the

---

[2] The Claim of Carrie Luft has been disallowed in full.  *See* Docket No. 1430.  Transcontinental Valuations, Inc. has transferred its Claim to a different entity.  *See* Docket No. 2122.  The Debtors have been advised that pursuant to the Committee's by-laws, Luft and Transcontinental, with their consent, no longer participate as members of the Committee.

avoidance of any doubt, the Consolidated Debtor Assets shall not include any Consolidated Holdco Assets, Assets of AHL Canada, except payments due from AHL Canada to the Consolidated Debtors on account of inter-company claims, Canadian Equity, Vendor Cash, or Consolidated Holdco's entitlement to the portion of the Tax Refunds designated in this Plan for the Trust Preferred Holdco Distributions.

1.34.  <u>Consolidated Debtors Convenience Claim</u>.  Any Allowed Unsecured Claim against any of the Consolidated Debtors (a) for which the Claim Holder has properly made the Consolidated Debtors Convenience Class Election on a properly cast Ballot, or (b) that has a face amount equal to or less than $25,000, unless such Holder has opted out of the Class 6 C on a properly cast Ballot.

1.35.  <u>Consolidated Debtors Convenience Class Election</u>.  The election available to a Holder of an Allowed Unsecured Claim against the Consolidated Debtors to opt into Class 6 C and have such Claim treated as a Consolidated Debtors Convenience Claim; <u>provided, however</u>, that in making such election, the Holder of such Unsecured Claim (i) has agreed to reduce the face amount of such Claim for purposes of voting and distributions under this Plan to Claim against the Consolidated Debtors in an amount equal to $25,000; (ii) have voted all Claims held by such Holder in favor of this Plan; and (iii) have affirmatively accepted the Creditor Release on a properly cast Ballot.

1.36.  <u>Consolidated Debtors Professional Fee Claim</u>.  The Allowed Administrative Expense Claim held by the Consolidated Debtors against Consolidated Holdco in the amount of Two Million Dollars ($2,000,000), which claim is for the payment of that portion of the Professional Fees attributable to Consolidated Holdco.

1.37.  <u>Consolidated Holdco</u>.  Holdco and Vendor.

1.38.  <u>Consolidated Holdco Assets</u>.  All Assets of Consolidated Holdco and Consolidated Holdco's Estates, whether such property is now existing or hereafter arising or acquired and wherever located including, without limitation, the Canadian Equity, the Vendor Cash, all of Consolidated Holdco's Causes of Action and all Proceeds of and recoveries on such Causes of Action, and all Cash, accounts, contract rights, chattel paper, general intangibles, instruments, securities, furniture, fixtures, machinery, equipment, inventory, intellectual property, domain names, and interest in real estate; <u>provided, however</u>, that Consolidated Holdco Assets do not include the Tax Refunds, except for Consolidated Holdco's entitlement to the portion of the Tax Refunds designated in this Plan for the Trust Preferred Holdco Distributions, and do not include any other Assets or Property specifically indentified in this Plan as Consolidated Debtors Assets.

1.39.  <u>Consolidated Holdco Distributable Cash</u>.  Any Cash collected by the Plan Administrator, including dividends or other distributions on account of the Canadian Equity, or any release of any Consolidated Holdco Reserves, from and after the Effective Date, after the full payment of or funding of (i) the Consolidated Holdco Reserves, (ii) the Lone Star Trust Preferred Settlement Payment and the first $10,000,000 of the Trust Preferred Holdco Distributions to the Trust Preferred Indenture Trustee, (iii) the REIT First Distribution; and (iv) Allowed Administrative Claims against Consolidated Holdco.

1.40. <u>Consolidated Holdco Convenience Claim</u>.  Any Allowed Unsecured Claim against Consolidated Holdco (a) for which the Claim Holder has properly made the Consolidated Holdco Convenience Class Election on a properly cast Ballot, or (b) that has a face amount equal to or less than $1,000,000, unless such Holder has opted out of the Class 7 H on a properly cast Ballot.

1.41. <u>Consolidated Holdco Convenience Class Election</u>.  The election available to a Holder of an Allowed Unsecured Claim against Consolidated Holdco to opt into Class 7 H and have such Claim treated as a Consolidated Holdco Convenience Claim; <u>provided, however,</u> that in making such election, the Holder of such Unsecured Claim (i) has agreed to reduce the face amount of such Claim for purposes of voting and distributions under this Plan to Claim against Holdco in an amount equal to $1,000,000; (ii) have voted all Claims held by such Holder in favor of this Plan; and (iii) have affirmatively accepted the Creditor Release on a properly cast Ballot.

1.42. <u>Consolidated Holdco Plan Administration Expenses</u>.  Any reasonable expenses and fees incurred after the Effective Date in connection with the administration of Consolidated Holdco, by the Plan Administrator, including, but not limited to, claims for fees of professionals employed by the Plan Administrator, tax liabilities of Consolidated Holdco, quarterly fees due to the Office of the United States Trustee, and costs relating to the completion of the liquidation of the Assets including, without limitation, the resolution of all Disputed Claims asserted against Consolidated Holdco.

1.43. <u>Consolidated Holdco Professional Fee Claim Payment</u>.  The Cash payment in the amount of Two Million Dollars ($2,000,000) on account of the Consolidated Debtors Professional Fee Claim to be made by Consolidated Holdco to the Consolidated Debtors on the Effective Date.

1.44. <u>Consolidated Holdco Reserves</u>.  The Consolidated Holdco Reserves shall consist of (i) an amount not to exceed Two Million Dollars ($2,000,000) to fund the Consolidated Holdco Professional Fee Claim Payment; (ii) an amount, not to exceed One Million Dollars ($1,000,000), or such other amount as agreed to by the REIT, the Lone Star Entities and the Holdco Plan Administrator after the Effective Date, calculated by the Plan Administrator to satisfy anticipated Consolidated Holdco Plan Administration Expenses and to pay anticipated tax liabilities of Consolidated Holdco and AHL Canada (to the extent such taxes of AHL Canada are not otherwise reserved); (iii) an amount, not to exceed One Million Five Hundred Thousand Dollars ($1,500,000), sufficient to fund distributions to holders of Consolidated Holdco Convenience Claims, including the Viera Claims, in accordance with this Plan and (iv) an amount, not to exceed One Million Dollars ($1,000,000), for the Plan Administrator to hold in reserve for distribution to Creditors of Consolidated Holdco holding Disputed Claims (if any) upon such Claims becoming Allowed Claims and Rejection Claims.

1.45. <u>Consolidated Holdco Residual Assets</u>.  The remaining Consolidated Holdco Assets administered by the Plan Administrator after all Claims in Class 3 H, 4 H, and 6 H have been satisfied as provided in the Plan, which Assets shall be distributed by the Plan Administrator as provided under the Plan.

1.46.   Creditor.   Any Entity holding a Claim or Claims of any character whatsoever, whether unsecured or secured by assets of any of the Debtors, against one or more of the Debtors.

1.47.   Creditor Release.   The release of claims and causes of action against the Lone Star Releasees and Plan Releasees by certain creditors as set forth in Section 8.2 of the Plan.

1.48.   CRO Expenses.   Has the same meaning ascribed thereto in Section 3.1 of the Plan.

1.49.   Cure Claim.   Those payments and assurances required upon assumption of an executory contract or unexpired lease pursuant to § 365(b)(1) of the Bankruptcy Code.

1.50.   D&O Policies.   Those certain directors and officers insurance policies issued at the request of LSF5 Accredited Investments, LLC by (i) XL Specialty Insurance Company, Policy No. ELU 107630-08, (ii) Arch Insurance Company, Policy No. PCD 0023435-01; (iii) RSUI Indemnity Company, Policy No. NHS630845; and (iv) XL Specialty Insurance Company, Policy No. ELU 107631-08, and any other insurance policies with respect to the Debtors' current and former directors and officers as well as any renewals thereof.

1.51.   Debtor.   As applicable, Holdco, AHL, Vendor, Inzura Insurance Services, Inc., a Delaware corporation, or Windsor Management of Washington, Inc., d/b/a AHL Foreclosure Services Company, a Washington corporation (collectively the "Debtors");

1.52.   Deferred Compensation Settlement Proceeds.   The proceeds received by the Debtors as a result of that certain settlement relating to the First American Trust, FSB Deferred Compensation Plan, as approved by the Court on February 17, 2010, Docket No. 1307.

1.53.   Disclosure Statement.   The Disclosure Statement proposed in connection with this Plan, as approved by the Bankruptcy Court pursuant to § 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, and as modified and amended, including all exhibits and attachments thereto.

1.54.   Disbursing Agent.   The Liquidating Trustee.

1.55.   Disclosure Statement Approval Date.   The date on which the Bankruptcy Court enters an order approving the Disclosure Statement.

1.56.   Disputed Claim.   Any Claim as to which an objection has been interposed, or which is listed in the applicable Debtor's schedules as disputed, or which is identified in the Disclosure Statement as being the subject of an anticipated objection, or to which an objection or request for estimation has been interposed, which objection or request for estimation has not been Finally Determined as of the Effective Date.

1.57.   Distribution.   As applicable, payment by the Liquidating Trustee out of the Liquidating Trust Account, or a payment by the Plan Administrator out of the Consolidated Holdco Assets, to holders of Allowed Unsecured Claims or payment by the Disbursing Agent, as provided under the Plan.

1.58.   Distribution Date.  A date on which either the Effective Date Distribution and/or any Subsequent Distribution occurs.

1.59.   Distribution Date Balance.  All funds on deposit in the Liquidating Trust Account from any source whatsoever as of a Distribution Date.

1.60.   Distribution Record Date.  The Effective Date.

1.61.   Effective Date.  The first (1st) Business Day upon which the conditions set forth in § 11.1 of this Plan have been satisfied, subject to any waiver or modification of such conditions pursuant to § 11.2 of this Plan.

1.62.   Effective Date Balance.  All Cash, including funds on deposit in the applicable Debtor's bank accounts from any source whatsoever as of the Effective Date.

1.63.   Effective Date Distribution.  A Cash distribution to be made by the applicable Debtors on the Effective Date or as soon thereafter as is practicable, from the Effective Date Balance pursuant to the terms of the Plan.

1.64.   Entity.  Entity shall have the meaning ascribed in § 101(15) of the Bankruptcy Code.

1.65.   Estate.  The bankruptcy estate of the applicable Debtor created or constituted under the provisions of the Bankruptcy Code and applicable law.

1.66.   Final Decree.  An order entered by the Bankruptcy Court closing the Bankruptcy Proceeding.

1.67.   Final Distribution.  As applicable, the last Distribution to be made by the Plan Administrator from the Consolidated Holdco Assets upon the full administration of those Assets, or the last Distribution to be made by the Liquidating Trustee out of the Liquidating Trust Account upon the full administration of the Assets vested in the Liquidating Trust.

1.68.   Final Order.  An unstayed order or judgment of the Bankruptcy Court or other court having jurisdiction over any matter, provided that such order would be considered "final" for the purposes of § 158(a)(1) of Title 28 of the United States Code, provided that such order has not been reversed, stay, or vacated, that the time to appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing has expired, and that no appeal, petition for certiorari, or other proceeding seeking a new trial, re-argument, or rehearing is pending, or, if an appeal, writ of certiorari, new trial, re-argument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest Court to which such order or judgment was appealed, certiorari shall have been denied, or a new trial, re-argument or rehearing shall have been denied.

1.69.   Finally Determined.  Entry of a Final Order resolving a Claim to which an objection or request for estimation has been filed, or which is listed in the Schedules as contingent, unliquidated, or disputed, or which is identified in the Disclosure Statement as being the subject of an anticipated objection.

1.70.  Holdco.  Accredited Home Lenders Holding Co., a Delaware corporation.

1.71.  Holder.  An Entity holding a Claim or Interest or any authorized agent who has completed, executed and delivered a Ballot in accordance with the applicable voting instructions.

1.72.  Initial Deposit.  A deposit to be made to the Liquidating Trust Account on the Effective Date in an amount consisting of the applicable Effective Date Balance less the amount of the applicable Effective Date Distribution.

1.73.  Injunction.  The post-confirmation injunction set forth in Section 11.2 of the Plan.

1.74.  Intercompany Claims.  Any Claim or Causes of Action held by any Debtor or Non-Debtor Subsidiary against any Debtor accruing before or after the Petition Date, including, but not limited to, any Claim for reimbursement, payment as guarantor or surety, any Claim for contribution and expenses that were allocable between multiple Debtors.

1.75.  Interest.  Any equity interest in any Debtor, including, without limitation, common, preferred or other stock of such Debtor or option, warrant or right to acquire or purchase any such interest issued on or before the Petition Date, and any Claim (a) arising from the rescission of a purchase or sale of any such equity interest; (b) for damages arising from the purchase or sale of any such equity interest; or (c) for reimbursement or contribution allowed under § 502 of the Bankruptcy Code on account of such Claim.

1.76.  Interim Distribution.  A distribution to be made by the Plan Administrator from the Consolidated Holdco Assets, or by the Liquidating Trustee out of the Liquidating Trust Account from the Liquidating Trust Reserve, to any holder of an Allowed Claim whose Claim was not Allowed or was Disputed as of the Effective Date Distribution and whose Claim became Finally Determined subsequent to the Effective Date, but prior to the immediately proceeding Subsequent Distribution Date, provided that no Interim Distribution on account of an Allowed Claim that became Finally Determined subsequent to the Effective Date shall be greater than the Distributions that would have been made on account of such Claim if such Claim had been Allowed as of the Effective Date.

1.77.  IRS Priority Tax Claims.  The Claims asserted by the Internal Revenue Service, which shall be satisfied in full from the Tax Refunds.

1.78.  Late Filed Claims.  Any Claim that was not filed prior to the applicable Bar Date, Rejection Claim Bar Date, Administrative Claim Bar Date, or Professional Fee Claim Bar Date, except for those Claims that are Allowed as timely under this Plan or under a Final Order entered by the Bankruptcy Court.

1.79.  Lien or Liens.  Any lien, security interest, mortgage, or similar encumbrance on property of the applicable Debtor that secured payment of a debt or obligation, which lien, interest, mortgage, or similar encumbrance is valid, perfected, and enforceable against such property or the proceeds thereof and is non-avoidable.

1.80.   Liquidating Trust.  A trust for the benefit of the Holders of Allowed Claims against the Consolidated Debtors that is to be formed and governed by the Liquidating Trust Agreement.

1.81.   Liquidating Trust Account.  An account to be established by the Liquidating Trustee at a depository institution listed as an approved institution of the United States Trustee for the District of Delaware.

1.82.   Liquidating Trust Advisory Board.  The post-confirmation committee formed on the Effective Date, whose members shall be as provided under the Plan, shall be reasonably acceptable to the REIT, and shall be indentified by the Debtors in the Plan Supplement.

1.83.   Liquidating Trust Agreement.  The certain trust agreement that is to govern the Liquidating Trust, in substantially the form of such document included in the Plan Supplement, pursuant to which, among other things, the Liquidating Trust Assets shall initially be conveyed to the Liquidating Trust and shall ultimately be distributed pursuant to the terms of this Plan.

1.84.   Liquidating Trust Assets.  All of the Consolidated Debtors' Assets not transferred on or prior to the Effective Date of the Plan, including, but not limited to, the Proceeds of any Consolidated Debtors Assets, the funds held in the Consolidated Debtors' bank accounts (after the Consolidated Debtors make the Effective Date Distribution), the Tax Refunds (excluding any amounts to which the Consolidated Debtors are entitled that are designated in this Plan for the Trust Preferred Holdco Distributions as provided under the Plan), the Trust Preferred Common Securities, the Deferred Compensation Settlement Proceeds, promissory notes, Receivables, all Causes of Action belonging to the Consolidated Debtors, to the extent such Causes of Action have not been previously settled or released pursuant to this Plan, but not including the Lone Star Creditor Release Settlement Payment, except as provided in § 10.4 of the Plan.

1.85.   Liquidating Trust Expenses.  Any reasonable expenses and fees incurred in connection with the administration of the Liquidating Trust, by the Liquidating Trustee, including, but not limited to, Claims for fees of professionals employed by the Liquidating Trustee and the Liquidating Trust Advisory Board and quarterly fees due to the Office of the United States Trustee, and costs relating to the completion of the liquidation of the Assets including, without limitation, the resolution of all Disputed Claims.

1.86.   Liquidating Trust Professionals.  Professionals retained by the Liquidating Trustee, including without limitation, attorneys, accountants, advisors, consultants, investigators, appraiser, auctioneers, engineers, agents, real estate brokers, tax specialists, clerical and stenographic assistants, and other professionals.

1.87.   Liquidating Trust Reserve.  An amount determined by the Liquidating Trustee to be held in reserve for distribution to Creditors holding Disputed Claims upon such Claims becoming Allowed Claims and Rejection Claims, such that holders of such Claims, upon allowance of such Claims, shall receive the same Pro Rata Share as do Creditors in the same Class holding Claims that are not Disputed Claims or Rejection Claims. The Liquidating Trust Reserve shall also include an amount calculated by the Liquidating Trustee to satisfy anticipated Liquidating Trust Expenses and to pay anticipated tax liabilities of the Liquidating Trust.

1.88.   Liquidating Trust Residual Assets.   The assets remaining in the Liquidating Trust after the Liquidating Trust has been terminated pursuant to § 9.8 of this Plan, which assets shall be distributed by the Liquidating Trustee upon termination and dissolution of the Liquidating Trust as provided under the Plan.

1.89.   Liquidating Trustee.   The trustee of the Liquidating Trust, who shall be selected by the Committee, shall be reasonably acceptable to the Debtors and the REIT, and shall be identified in the Plan Supplement.

1.90.   Lone Star Advance.   The non-interest bearing advance, in Cash, in the amount not to exceed Four Million Dollars ($4,000,000), to be provided to Consolidated Holdco, which shall be used and repaid in accordance with the terms of this Plan.

1.91.   Lone Star Consolidated Debtors Settlement Payment.   The payment, in Cash, in the amount of One Hundred Fifty Thousand Dollars ($150,000) to be made by one or more of the Lone Star Entities, other than LSF MRA, LLC, to the Consolidated Debtors on the Effective Date.

1.92.   Lone Star Creditor Release Settlement Payment.   The payment, in Cash, in the amount of Fifteen Million, Six Hundred Thousand Dollars ($15,600,000), to be provided to the Consolidated Debtors on the Effective Date, which amount shall be used in accordance with the terms of this Plan.

1.93.   Lone Star Entities.   LSF5 Mortgage Line, LLC, LSF MRA, LSF5 Affiliate Finance, LLC, LSF5 Accredited Investments, Vericrest Financial, Inc., Caliber Funding LLC, and Hudson Advisors, LLC.

1.94.   Lone Star Proofs of Claim.   The Proofs of Claim filed by the Lone Star Entities, which are specified in the Claims Register as Claim Nos. 802, 804, and 877.

1.95.   Lone Star Releasees.   The Lone Star Entities and their current and former subsidiaries and Affiliates (including LSF5 Mortgage Line2, LLC, LSF5 Mortgage Holding Tech, LLC, LSF5 Mortgage Tech, LLC, LSF5 Affiliate Finance Co., Ltd., LSF5 US Finance Co., Ltd., LSF6 Service Operations, LLC, LSF6 Bond Investments, LLC, LSF5 Mortgage Holding Operations, LLC, LSF5 Super REO Holdings, LLC, LSF5 REO Pool II Holdings, LLC, LSF5 Accredited Holdings, LLC, Lone Star Fund V (U.S.) L.P., LSF V International Finance, LP, Lone Star Fund VI (U.S.), LP, LSF VI International, LP, Hudson Americas, LLC, Lone Star U.S. Acquisitions LLC and LSF5 Accredited Merger Co., Inc., but excluding the Debtors themselves), and all such entities' respective current and former officers, directors, agents, employees, attorneys, other professionals, representatives, predecessors, successors and assigns, and the insurers of the Lone Star Entities and of the Debtors (with such insurers included among the Lone Star Releasees set forth on Schedule B to the Plan Support Agreement and Term Sheet).

1.96.   Lone Star Trust Preferred Settlement Payment.   The payment to be made on the Effective Date to the Trust Preferred Indenture Trustee, which shall be in the amounts in Cash of (a) Twenty Six Million, Nine Hundred Fifty Thousand Dollars ($26,950,000), from certain insurers of the Lone Star Entities and the Debtors pursuant to confidential agreements between

such insurers and the Lone Star Entities, plus (b) Three Million, Fifty Thousand Dollars ($3,050,000) from one or more of the Lone Star Entities.

1.97. <u>Net Proceeds</u>. The Proceeds realized by the applicable Estate from the sale, lease, or other disposition of an Asset after satisfaction of any Secured Claims encumbering that Asset, less costs of collection including, but not limited to, the fees and expenses of any attorneys, accountants, auctioneers, brokers, or similar professional incurred in the sale, lease, prosecution, adjudication, or other disposition of an Asset.

1.98. <u>Non-Debtor Subsidiary</u>. Any subsidiary of any Debtor that is not a debtor in the Bankruptcy Proceeding.

1.99. <u>Officer and Director Causes of Action</u>. Any and all claims, actions, Causes of Action, or other rights of recovery, whether asserted or unasserted or pending as of the Effective Date or direct, indirect, derivative or otherwise or known or unknown, that are held by the applicable Debtor against any of its current or former officers and directors from the beginning of the world to the Effective Date.

1.100. <u>Person</u>. Any individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, limited liability limited partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, or other Entity.

1.101. <u>Petition Date</u>. May 1, 2009, the date on which the Debtors filed their Chapter 11 petitions with the Bankruptcy Court.

1.102. <u>Plan</u>. This Debtors' Fourth Amended Chapter 11 Plan of Liquidation, in its present form and as it may be amended or modified from time to time.

1.103. <u>Plan Administrator</u>. The post-confirmation administrator of the Consolidated Holdco entities and the Consolidated Holdco Estates, who shall be selected by the REIT and the Committee, and shall be indentified by the Debtors in the Plan Supplement.

1.104. <u>Plan Administrator Retention Agreement</u>. The certain retention agreement that is to govern the retention of the Plan Administrator by Consolidated Holdco, in substantially the form of such document included in the Plan Supplement.

1.105. <u>Plan Releasees</u>. The current and former subsidiaries and Affiliates of the Debtors (including the Non-Debtor Subsidiaries but excluding the Debtors themselves), and all such entities' respective current and former officers, directors, agents, employees, attorneys, other professionals, representatives, predecessors, successors and assigns (including current and former officers and directors and pre-petition agents, attorneys and other professionals and restructuring advisors of the Debtors and the Non-Debtor Subsidiaries), and the insurers of the Debtors (with such insurers included among the Plan Releasees set forth on Schedule B to the Plan Support Agreement and Term Sheet and the current and former Officers and Directors of the Debtors included among the Plan Releasees set forth on Schedule C to the Plan Support Agreement and Term Sheet).

1.106. <u>Plan Supplement</u>. The supplement to the Plan that will be filed with the Bankruptcy Court on or before the Plan Supplement Filing Date and will, among other things, contain the form of the Liquidating Trust Agreement and the Plan Administration Retention Agreement, identify the Liquidating Trustee, the Liquidating Trust Advisory Board, and the Plan Administrator, and identify the executory contracts and unexpired leases being assumed and assigned by this Plan.

1.107. <u>Plan Supplement Filing Date</u>. The date by which the Plan Supplement and any Exhibits or Plan Schedules not filed with the Plan, shall be filed with the Bankruptcy Court, which date shall be at least ten (10) days prior to the deadline for casting Ballots on the Plan.

1.108. <u>Plan Support Agreement and Term Sheet</u>. The *Comprehensive Global Settlement Between Debtors, Lone Star, the REIT, the REIT Committee, the TRuP Entities, and the Committee Relating to a Consensual Plan of Liquidation*, dated February 14, 2011 and attached hereto as Exhibit A.

1.109. <u>Priority Claim</u>. A Claim or portion of a Claim entitled to priority under §§ 507(a)(3) through 507(a)(7) of the Bankruptcy Code.

1.110. <u>Priority Tax Claim</u>. A Claim or portion of a Claim entitled to priority under § 507(a)(8) of the Bankruptcy Code.

1.111. <u>Privilege</u>. All attorney-client privileges, work product protections and other immunities or protections from disclosure held by the Debtors.

1.112. <u>Pro Rata Share</u>. The ratio (expressed as a percentage) of (i) the amount of any Allowed Claim in a particular Class or Classes, as applicable, to (ii) the sum of (x) the aggregate amount of all Allowed Claims in such Class or Classes, as applicable, and (y) the aggregate amount of Disputed Claims in such Class or Classes, as applicable.

1.113. <u>Proceeds</u>. The funds realized by the applicable Estate from the sale, lease, settlement, adjudication, or other disposition of an Asset, including any recovery from a Cause of Action.

1.114. <u>Professionals</u>. Those persons (a) retained pursuant to an order of the Bankruptcy Court in accordance with §§ 327, 1103 and/or 1106 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to §§ 327, 328, 329, 330 and/or 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to §§ 330 and 503(b)(2) of the Bankruptcy Code.

1.115. <u>Professional Fee Claim</u>. A Claim under (a) §§ 327, 331, 503(b), 1103 or 1106 of the Bankruptcy Code for compensation for professional services rendered or expenses incurred prior to the Effective Date on the Estates' behalf; or (b) § 503(b)(4) of the Bankruptcy Code for compensation for professional services rendered.

1.116. <u>Professional Fee Claim Bar Date</u>. Shall have the meaning specified in Section 3.1 of the Plan.

1.117. <u>Property</u>. The applicable Debtor's legal, possessory, equitable, or other interests in any property or Assets, whether real, personal, tangible, intangible or mixed, as defined in § 541 of the Bankruptcy Code.

1.118. <u>Receivables</u>. Accounts receivable of the applicable Debtor.

1.119. <u>REIT</u>. Accredited Mortgage Loan REIT Trust, a Maryland real estate investment trust.

1.120. <u>REIT Adversary</u>. That certain adversary proceeding commenced by the Committee against, among others, the REIT, styled as *Official Committee of Unsecured Creditors v. Accredited Mortgage Loan REIT Trust*, Adversary Proceeding No. 10-50980.

1.121. <u>REIT Committee</u>. That certain Ad Hoc Committee of certain REIT Preferred Security Holders, the members of which are identified in Schedule A to the Plan Support Agreement and Term Sheet.

1.122. <u>REIT First Distribution</u>. The distribution to be made to the REIT by Consolidated Holdco on the Effective Date or as soon as practicable thereafter in accordance with the terms of this Plan.

1.123. <u>REIT Junior Claim</u>. The Fifteen Million Dollar ($15,000,000) junior Claim of the REIT against the Consolidated Debtors, which shall be classified as a Class 7 C Claim and shall be liquidated, Allowed, and treated in accordance with the terms of § 5.7 of this Plan.

1.124. <u>REIT Preferred Securities</u>. The preferred securities issued by the REIT.

1.125. <u>REIT Preferred Security Holder</u>. Any Entity that holds any of the REIT Preferred Securities.

1.126. <u>REIT Preferred Holders' Subordinated Guaranty Claims</u>. All Claims against any of the Debtors relating to the guaranty claims of the REIT Preferred Security Holders.

1.127. <u>Rejection Claim</u>. Any Claim for amounts due as a result of the rejection of any executory contract or unexpired lease which is rejected by the Debtors pursuant to the Plan, which Claim must be filed by the Rejection Claim Bar Date.

1.128. <u>Rejection Claim Bar Date</u>. Thirty (30) days after the Effective Date; provided, however, if a motion seeking assumption or rejection is not heard and determined prior to the Effective Date, any Claim based thereon shall be filed within thirty (30) days of entry of an Order ruling on such a motion.

1.129. <u>Schedules</u>. The schedules of assets and liabilities filed by the Debtors in accordance with § 521 of the Bankruptcy Code, as such schedules may be amended from time to time.

1.130. <u>Secured Claim</u>. The portion of a Claim secured by liens, security interests, encumbrances, charges against, or interests in any property in which any of the Debtors have an

interest, to the extent of the value (determined in accordance with § 506(a) of the Bankruptcy Code) of the interest of the holder of such Claim in the Debtors' interest in such property.

1.131. <u>Subordinated Claim</u>. A Claim or portion of a Claim subject to subordination under § 510 of the Bankruptcy Code, and Late Filed Claims.

1.132. <u>Subsequent Distributions</u>. Any distribution to be made subsequent to the Effective Date Distribution, in Cash, by the Liquidating Trustee or the Plan Administrator.

1.133. <u>Tax Code</u>. The Internal Revenue Code of 1986, as amended from time to time.

1.134. <u>Tax Refunds</u>. All refunds of tax that may be paid to any of the Debtors, their subsidiaries, and consolidated, combined or unitary tax group, whether Federal, state or local, including, but not limited to, as a result of a carryback (including a carryback pursuant to an election under Tax Code Section 172(b)(1)(H)) by the Debtors and/or their subsidiaries of NOLs and alternative minimum tax NOLs incurred in recent years, including 2008 and/or 2009, the amount and timing of any such refund(s) being uncertain as of the date hereof, including, but not limited to, the Tentative Refund.

1.135. <u>Tentative Refund</u>. That certain tax refund in the approximate amount of Fifty-Four Million Dollars ($54,000,000) received by the Debtors on November 4, 2010.

1.136. <u>Trust Declaration</u>. The Amended and Restated Trust Agreement among Accredited Home Lenders Holding Co., as depositor, Wells Fargo Bank, N.A., as Property Trustee, Wells Fargo Delaware Trust Company, as Delaware Trustee and the administrative trustees named therein dated January 11, 2007.

1.137. <u>Trust Preferred Adversary Proceeding</u>. That certain adversary proceeding commenced by the trustee under the Trust Preferred Indenture against certain Lone Star Entities, styled as *Wells Fargo Bank, N.A., Indenture Trustee vs. LSF5 Accredited Investments LLC*, Adversary Proceeding No. 09-53276.

1.138. <u>Trust Preferred Common Securities</u>. The common securities issued by the Accredited Preferred Statutory Trust I, which terms are governed by the provisions of the Trust Declaration.

1.139. <u>Trust Preferred Guarantee</u>. The guarantee by Holdco to satisfy all amounts owed pursuant to the Trust Preferred Indenture and Trust Declaration.

1.140. <u>Trust Preferred Holdco Distributions</u>. The (A) Ten Million Dollar ($10,000,000) distribution to be made to the Trust Preferred Indenture Trustee by Consolidated Holdco on the Effective Date, plus (B) the first payments from the Tax Refund, not to exceeed Two Million Dollars ($2,000,000), which shall be made by the Plan Administrator to the Trust Preferred Indenture Trustee upon the later of (i) the Effective Date, if the Tax Refund shown as due on line 12 of the Amended 2008 Tax Return (but, for the avoidance of doubt, not including any amounts shown thereon as an overpayment taken into account in determining the amount of refund shown due on line 12) is final, not subject to further disgorgement or audit, and received after December 1, 2010 but prior to the Effective Date, or (ii) the date of the first receipts by the Liquidating

Trustee of amounts on account of any Tax Refund shown as due on line 12 of the Amended 2008 Tax Return (but, for the avoidance of doubt, not including any amounts shown thereon as an overpayment taken into account in determining the amount of refund shown due on line 12), which are final, not subject to further disgorgement or audit, and received after December 1, 2010 by the Consolidated Debtors or the Liquidating Trustee, as applicable; provided, further, however, that if the final Tax Refund shown as due on line 12 of the Amended 2008 Tax Return (but, for the avoidance of doubt, not including any amounts shown thereon as an overpayment taken into account in determining the amount of refund shown due on line 12), after audit and final determination by the Internal Revenue Service, is less than Two Million Dollars ($2,000,000), neither the Trust Preferred Indenture Trustee nor any holder of the Trust Preferred Securities shall be entitled to receive additional Cash from any assets of the Liquidating Trust or from the Consolidated Holdco Assets on account of any claims asserted against Consolidated Holdco, except as provided in § 5.8 of the Plan. For the avoidance of doubt, the distribution is from the amounts, if any, received in excess of the Tentative Refund and shall not be paid from the Tentative Refund, and the Liquidating Trustee shall pay such amounts to the Plan Administrator upon when it becomes available for distribution pursuant to the terms described above.

1.141. <u>Trust Preferred Holders</u>. The holder of the Trust Preferred Securities.

1.142. <u>Trust Preferred Indenture</u>. That certain Junior Subordinated Indenture between Accredited Home Lenders Holding Co. and Wells Fargo Bank, N.A., as trustee, dated as of January 11, 2007.

1.143. <u>Trust Preferred Indenture Trustee</u>. Wells Fargo Bank, N.A.

1.144. <u>Trust Preferred Note</u>. The junior subordinated note issued pursuant to the Trust Preferred Indenture.

1.145. <u>Trust Preferred Note Claim</u>. Any Claim for principal and interest under or on account of the obligations owed to the Trust Preferred Indenture Trustee or any Trust Preferred Holder asserted by the Trust Preferred Indenture Trustee by and through a proof of claim, which claim includes, but is not limited to, principal and interest as of the Petition Date and, if applicable, post-petition interest.

1.146. <u>Trust Preferred Note Junior Claim</u>. The Five Million Dollar ($5,000,000) Trust Preferred Note Claim against the Consolidated Debtors, which shall be liquidated, Allowed, and treated in accordance with the terms of this Plan.

1.147. <u>Trust Preferred Securities</u>. The preferred securities issued by the Accredited Preferred Statutory Trust I, which terms are governed by the provisions of the Trust Declaration.

1.148. <u>Unsecured Claim</u>. Each Claim, without interest or costs, that is not a Secured Claim, an Administrative Claim, a Priority Claim, a Priority Tax Claim, or a Subordinated Claim.

1.149. <u>Vendor</u>. Vendor Management Services, LLC, d/b/a Inzura Settlement Services, a Pennsylvania limited liability company, which entity shall be consolidated with Holdco pursuant to this Plan.

1.150. <u>Vendor Cash</u>. All Cash and other Assets held by Vendor.

1.151. <u>Viera Claims</u>. The Claims asserted by class representatives Michael Viera, Lori Scott, Helen Hayes and Aaron Smith, on their own behalf and on behalf of a certified class of former employees of Accredited Home Lenders, Inc., and the Claims of the members of that certified class, including Claims relating to professional fees incurred by counsel for such certified class as provided under the Viera Settlement.

1.152. <u>Viera Settlement</u>. The settlement of the Claims asserted by class representatives Michael Viera, Lori Scott, Helen Hayes and Aaron Smith, on their own behalf and on behalf of a certified class of former employees of Accredited Home Lenders, Inc., and the Claims of the members of that certified class, including Claims relating to professional fees incurred by counsel for such certified class, as approved by the Bankruptcy Court upon the motion filed on November 29, 2010 and subsequently amended.

Any capitalized terms used in the Plan, but not defined above, that are used in the Bankruptcy Code or Bankruptcy Rules shall have the meanings ascribed to them in the Bankruptcy Code or in the Bankruptcy Rules.

Whenever the context requires, references in this Plan to any person shall be deemed to be references to or to include, as appropriate, its respective successors, transferees and assigns. Terms shall include the plural as well as the singular. Terms denoting any gender shall be deemed to include all genders. Any accounting terms and phrases used herein and not otherwise defined herein shall have the meanings ascribed to such terms in conformity with generally accepted accounting principles.

The words, "this Plan," "hereto," "herein," "hereunder," "hereof," and expressions of similar import refer to this Plan as a whole, together with any appendices, schedules and exhibits hereto, and not to any particular article, section, subsection, clause or other portion of this Plan. References in this Plan to any agreement, instrument or other document (including references to this Plan) shall be deemed to include references to such agreement, instrument or other document as amended, modified, varied, supplemented or replaced from time to time in accordance with its terms, the Bankruptcy Code or the Bankruptcy Rules, as may be applicable.

## 2.  DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

For the purpose of this Plan, Claims are divided into the following Classes. A proof of claim asserting a Claim which is properly included in more than one Class is included in each such Class to the extent that it qualifies within the description of such Class.

### 2.1. <u>Unclassified Claims: Administrative Claims and Priority Tax Claims</u>

Administrative Claims and Priority Tax Claims are not classified for purposes of voting or receiving distributions under the Plan. Rather, all such Claims are treated separately as unclassified Claims pursuant to the terms set forth in Article 3 of this Plan.

### 2.2. Classified Claims of Consolidated Holdco

**Class 1 H:**    Secured Claims against Consolidated Holdco (*Unimpaired*)

**Class 2 H:**    All Allowed Unsecured Claims against Consolidated Holdco entitled to priority under §§ 507(a)(3) through (a)(7) of the Bankruptcy Code (*Unimpaired*)

**Class 3 H:**    All Allowed Unsecured Claims against Consolidated Holdco affirmatively agreeing to and accepting the Creditor Release (*Impaired*)

**Class 4 H:**    All Allowed Unsecured Claims against Consolidated Holdco, except for separately classified Claims (*Impaired*)

**Class 5 H:**    All Allowed Unsecured Claims against Consolidated Holdco held by LSF-MRA, LLC (*Impaired*)

**Class 6 H:**    All Allowed Unsecured Claims against Consolidated Holdco held by the REIT (*Impaired*)

**Class 7 H:**    All Consolidated Holdco Convenience Claims (*Impaired*)

**Class 8 H:**    All Claims against Consolidated Holdco arising from or related to Trust Preferred Note, Trust Preferred Note Claim, the Trust Preferred Guarantee, or the Trust Preferred Securities (*Impaired*)

**Class 9 H:**    The REIT Preferred Holders Subordinated Guaranty Claims (*Impaired*)

**Class 10 H:**    All other Subordinated Claims against Consolidated Holdco, except for the Claims separately classified (*Impaired*)

**Class 11 H:**    All Interests in Consolidated Holdco (*Impaired*)

### 2.3. Classification of Claims against the Consolidated Debtors.

**Class 1 C:**    Secured Claims against the Consolidated Debtors (*Unimpaired*)

**Class 2 C:**    All Allowed Unsecured Claims against the Consolidated Debtors entitled to priority under §§ 507(a)(3) through (a)(7) of the Bankruptcy Code (*Unimpaired*)

**Class 3 C:**    All Allowed Unsecured Claims against the Consolidated Debtors affirmatively agreeing to and accepting the Creditor Release (*Impaired*)

| Class 4 C: | All Allowed Unsecured Claims against the Consolidated Debtors, except for separately classified Claims (***Impaired***) |
|---|---|
| Class 5 C: | All Allowed Unsecured Claims against the Consolidated Debtors held by the Lone Star Entities (***Impaired***) |
| Class 6 C: | All Consolidated Debtors Convenience Claims (***Impaired***) |
| Class 7 C: | The REIT Junior Claim (***Impaired***) |
| Class 8 C: | All Subordinated Claims against the Consolidated Debtors (***Impaired***) |
| Class 9 C: | All Claims against the Consolidated Debtors arising from or related to Trust Preferred Note, Trust Preferred Note Claims, or the Trust Preferred Securities (***Impaired***) |
| Class 10 C: | All Interests in the Consolidated Debtors (***Impaired***) |

2.4. <u>Subordination and Subrogation Rights and Claims of Subordination and Subrogation</u>. Pursuant to § 510(a) of the Bankruptcy Code, except as otherwise agreed to by a creditor, Class of creditors, or as otherwise provided under the Plan, nothing in this Plan is intended to affect the terms or enforceability of any subordination or subrogation agreement entered into prior to the Effective Date by any creditor or group of creditors in favor of any other creditors or group of creditors of the Debtors in respect of any obligations owing by the Debtors; <u>provided</u>, <u>however</u>, that any disagreement with the priorities or distributions set forth in the Plan Support Agreement and Term Sheet or in the Plan shall be raised prior to, ahead of and decided at the hearing on confirmation of the Plan; that, absent any timely objections or challenges, such priorities and distributions (including the waiver or subordination and subrogation) shall be deemed binding on such creditors and Classes of creditors; and, that if the decisions of the Bankruptcy Court relating to confirmation of this Plan differ from the priorities or treatment under the Plan, then all issues with respect to contractual subrogation and subordination shall be governed pursuant to such decision. To the extent that the priorities set forth in the Plan conflict with the contractual subordination and subrogation provisions of any Holders of Class of Claims, the Plan shall govern and control.

## 3.    TREATMENT OF UNCLASSIFIED CLAIMS

3.1. <u>Administrative Claims</u>

(a)    <u>Non-Professional Fee Administration Claims</u>

Any Holder of an Allowed Administrative Claim shall receive the full amount of the Holder's Allowed Administrative Claim in one Cash payment from the Consolidated Debtors, Consolidated Holdco, Liquidating Trustee, or Plan Administrator, as applicable, as part of the Effective Date Distribution. An Administrative Claim that is a Disputed Claim shall not receive any distribution unless and until such Claim becomes an Allowed Administrative Claim. Upon the entry of a Final Order allowing an Administrative Claim, the Holder of that Claim shall receive the full amount of such Claim in one Cash payment from the Liquidating Trust, Plan

Administrator, Consolidated Debtors, or Consolidated Holdco, as applicable. The Debtors, Liquidating Trustee, or Plan Administrator, as applicable, may agree to less favorable treatment of such Allowed Administrative Claim. An Administrative Claim not filed prior to the Administrative Claim Bar Date as provided in this Plan shall be deemed forever waived and barred, the Holder thereof shall not be entitled to a distribution under the Plan, and the Debtors, their Estates, the Plan Administrator, and the Liquidating Trustee shall have no obligation with respect thereto.

With regard to fees and expenses owed by the Debtors in connection with services provided by AP Services, LLC, including those provided by the Chief Restructuring Officer (collectively the "CRO Expenses"), since the Petition Date, such CRO Expenses shall be paid pursuant to the terms of the *Order Under Bankruptcy Code Sections 105(a) and 363(B) Authorizing the Retention and Employment of AP Services, LLC to Provide Interim Management and Restructuring Services and Designating Meade Monger as Chief Restructuring Officer and Michael Murphy as Chief Administrative Officer to the Debtors,* Nunc Pro Tunc *to the Petition Date* entered by the Bankruptcy Court on or about July 2, 2009, Docket No. 282.

(b)     Professional Fee Claims

Unless otherwise expressly provided in the Plan, a Professional Fee Claim will be Allowed only if: (i) on or before forty-five (45) days after the Effective Date (the "Professional Fee Claim Bar Date"), the entity holding such Professional Fee Claim files with the Court a final fee application and serves the application on counsel to the Debtors, counsel to the Committee, the Liquidating Trustee, and the U.S. Trustee; and (ii) the Court enters a Final Order allowing such Claim.

Any party in interest, including the Liquidating Trustee, but excluding the Plan Administrator, may file an objection to such application within the time provided by the Bankruptcy Rules or within any other period that the Bankruptcy Court establishes and as provided under the Plan, except that the Lone Star Entities, the Trust Preferred Indenture Trustee, and the Trust Preferred Holders waive their right to object to or challenge the allowance or award of any Professional Fee Claims. Entities holding Professional Fee Claims that do not timely file and serve a fee application will be forever barred from asserting such Professional Fee Claim against the Debtors, the Estates, the Liquidating Trust, the Plan Administrator, or their respective property.

The Consolidated Debtors or the Liquidating Trustee, as applicable, will pay or cause to be paid an Allowed Professional Fee Claim, in Cash, within the later of (i) five (5) days after the conditions specified in this Section 3.1(b) of the Plan are satisfied, or (ii) five (5) days after the entry of a Final Order allowing such Allowed Professional Fee Claims.

(c)     Consolidated Holdco Professional Fee Payment

On the Effective Date, Consolidated Holdco shall make the Consolidated Holdco Professional Fee Claim Payment to the Consolidated Debtors, which shall fully satisfy Consolidated Holdco's liabilities for Professional Fee Claims and CRO Expenses. Consolidated

Holdco shall not be entitled to any refund of the Professional Fee Claim Payment based on any reductions or disallowance of such Claims.

3.2.   Priority Tax Claims

Any Holder of an Allowed Priority Tax Claim shall receive the full amount of the Holder's Allowed Priority Tax Claim in one Cash payment from Consolidated Holdco or the Consolidated Debtors, as applicable, as part of the Effective Date Distribution. A Priority Tax Claim that is a Disputed Claim shall not receive any distribution unless and until such Claim becomes an Allowed Priority Tax Claim. Upon the entry of a Final Order allowing an Priority Tax Claim after the Effective Date, the Holder of that Claim shall receive the full amount of such Claim in one Cash payment from Consolidated Holdco or the Liquidating Trust, as applicable, except as otherwise provided under Section 3.3 of the Plan. The applicable Liquidating Trustee, Plan Administrator, or Debtor and the Holder of an Allowed Priority Tax Claim may agree to less favorable treatment of such Allowed Priority Tax Claim. To the extent that some or all of an Allowed Secured Claim for taxes does not qualify as a Priority Tax Claim, it will be classified as a Class 1 Secured Claim.

3.3.   IRS Priority Tax Claims.

The Holder of the IRS Priority Tax Claims shall be paid in full from the Tax Refunds. The IRS Priority Tax Claims shall be treated as an obligation of the Consolidated Debtors or the Liquidating Trust. For the avoidance of doubt, the "protective" administrative priority claims filed by the IRS, including Claim No. 1123 in the approximate amount of $54 million, are Disputed Claims pending resolution of issues relating to the Debtors' Amended 2008 Tax Return.

4.   **TREATMENT OF CLASSES OF CLAIMS AND INTERESTS UNDER THE CONSOLIDATED HOLDCO PLAN**

4.1.   Class 1 H - Secured Claims. Class 1 H Secured Claims are unimpaired. Any Holder of a Class 1H Allowed Secured Claim shall, at the sole option of Consolidated Holdco, receive (a) the full amount of the Holder's Class 1 H Allowed Secured Claim in one Cash payment as part of the Effective Date Distribution from Consolidated Holdco, (b) all or a portion of the Assets securing the Allowed Secured Claim, or (c) subject to the requirements of § 1124(2) of the Bankruptcy Code, the legal, equitable, and contractual rights of the Holder of such Allowed Secured Claim shall be reinstated. A Class 1 H Secured Claim that is a Disputed Claim shall not receive any Distribution unless and until such Claim becomes a Class 1 H Allowed Secured Claim. Upon the entry of a Final Order allowing the Class 1 H Allowed Secured Claim against Consolidated Holdco after the Effective Date, the Holder of that Claim shall receive, at the sole option of the Plan Administrator, (a) the full amount of such Claim in one Cash payment from Consolidated Holdco, (b) all or a portion of the Assets securing the Allowed Secured Claim, or (c) subject to the requirements of § 1124(2) of the Bankruptcy Code, the legal, equitable and contractual rights of the Holder of such Allowed Secured Claim shall be reinstated. Consolidated Holdco or the Plan Administrator and the Holder of a Class 1 H Allowed Secured Claim may agree to less favorable treatment of such Class 1 H Allowed Secured Claim.

**BECAUSE CLASS 1 H CLAIMS ARE NOT IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 1 H CLAIMS ARE NOT ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.2.     Class 2 H - Priority Claims, other than Priority Tax Claims.  Class 2H Priority Claims are unimpaired.  Subject to §§ 3.1 and 3.2 of the Plan, any Holder of a Class 2 H Allowed Priority Non-Tax Claim shall receive the full amount of the Holder's Class 2 H Allowed Priority Non-Tax Claim in one Cash payment as part of the Effective Date Distribution from Consolidated Holdco.  A Class 2 H Priority Non-Tax Claim that is a Disputed Claim shall not receive any distribution unless and until such Claim becomes a Class 2 H Allowed Priority Non-Tax Claim.  Upon the entry of a Final Order allowing the Class 2 H Allowed Priority Non-Tax Claim against Consolidated Holdco after the Effective Date, the Holder of that Claim shall receive the full amount of such Claim in one Cash payment from Consolidated Holdco.  Consolidated Holdco or the Plan Administrator and the Holder of a Class 2 H Allowed Priority Non-Tax Claim may agree to less favorable treatment of such Class 2 H Allowed Priority Non-Tax Claim.

**BECAUSE CLASS 2 H CLAIMS ARE NOT IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 2 H CLAIMS ARE NOT ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.3.     Class 3 H - General Unsecured Claims against Consolidated Holdco Accepting the Creditor Release.  The Class 3 H Claims are impaired.  Class 3 H consists of Allowed Unsecured Claims against Consolidated Holdco whose Holders cast a timely Ballot affirmatively accepting and agreeing to the Creditor Release or provide written consent to the Creditor Release to Consolidated Holdco.  Subject to §§ 3.1 and 3.2 of the Plan, Holders of Class 3 H Allowed Claims shall receive distributions equal to their Pro Rata Share of any distributions of Consolidated Holdco Assets made by the Plan Administrator in accordance with the Plan, and continuing on each Subsequent Distribution Date.  In calculating the distribution to the Holders of Class 3 H Claims, the Pro Rata Share shall include in the calculation the Allowed Claims and Disputed Claims included in Class 3 H, 4 H, 5 H, and 6 H.  Until the Holders of the Class 3 H Allowed Claims are satisfied, in full without any post-petition interest thereon, the Holder of Class 3 H Allowed Claims shall be entitled to receive their Pro Rata Share of distributions made by the Plan Administrator in accordance with the Plan.

In the event of entry of a Final Order determining a Disputed Claim to be an Allowed Claim, the Plan Administrator in his sole discretion may make an Interim Distribution to the Holder of such Allowed Claim from the reserve established for such Disputed Claim, with the balance of the reserve, if any, held for such Disputed Claim to be released from the reserve and made part of Consolidated Holdco Assets available for general distribution under the Plan.  The Holders of Class 3 H Allowed Claims shall thereafter receive their Pro Rata Share of Subsequent Distributions from Consolidated Holdco.

In the event Class 3 H votes in favor of the Plan, the payment of Class 5 H Claims will be subordinated and junior to the payment of Class 3 H Claims, any distributions that would have been made to Holders of Allowed Class 5 H Claims shall instead be made to Holders of Class 3 H Claims and Class 6 H Claims (if Class 6 H also votes to in favor of the Plan) on a Pro Rata

Basis, and Holders of Allowed Class 5 H Claims shall not receive any distribution until Class 3 H Claims (and possibly Classes 6H and 9H claims) are paid in full under the Plan, and all subrogation rights of Class 5 H shall be deemed waived and released. In calculating, for a Holder of an Allowed Class 3 H Claim, its Pro Rata Share of the distribution to which Holders of Class 5 H Claim would be entitled, the Plan Administrator or Consolidated Holder, as applicable shall aggregate the total amount of the Class 3 H and Class 6 H Claims, whether Allowed or Disputed, on the Effective Date.

**BECAUSE CLASS 3 H CLAIMS ARE IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 3 H CLAIMS ARE ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.4. <u>Class 4 H - General Unsecured Claims against Consolidated Holdco, except for separately classified Claims</u>. The Class 4 H Claims <u>are</u> impaired. Class 4 H consists of Allowed Unsecured Claims against Consolidated Holdco that are not separately classified under the Plan. Subject to §§ 3.1 and 3.2 of the Plan, Holders of Class 4 H Allowed Claims shall receive distributions equal to their Pro Rata Share of any distributions of Consolidated Holdco Assets made by the Plan Administrator in accordance with the Plan, and continuing on each Subsequent Distribution Date. In calculating the distribution to the Holders of Class 4 H Claims, the Pro Rata Share shall include in the calculation the Allowed Claims and Disputed Claims included in Class 3 H, 4 H, 5 H, and 6 H. Until the Holders of the Class 4 H Allowed Claims are satisfied in full, without any post-petition interest thereon, the Holder of Class 4 H Allowed Claims shall be entitled to receive their Pro Rata Share of distributions made by the Plan Administrator in accordance with the Plan.

In the event of entry of a Final Order determining a Disputed Claim to be an Allowed Claim, the Plan Administrator in his sole discretion may make an Interim Distribution to the Holder of such Allowed Claim from the reserve established for such Disputed Claim, with the balance of the reserve, if any, held for such Disputed Claim to be released from the reserve and made part of Consolidated Holdco Assets available for general distribution under the Plan. The Holders of Class 4 H Allowed Claims shall thereafter receive their Pro Rata Share of Subsequent Distributions from Consolidated Holdco.

For the avoidance of doubt, Holders of Allowed Class 4 H Claims opting out of the Creditor Release shall not be entitled to receive any distributions that would have been made to Holders of Allowed Class 5 H Claims.

**BECAUSE CLASS 4 H CLAIMS ARE IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 4 H CLAIMS ARE ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.5. <u>Class 5 H - Unsecured Claims Against Consolidated Holdco held by LSF-MRA, LLC</u>. The Class 5 H Claims <u>are</u> impaired. Class 5 H is the Allowed Claim of LSF-MRA, LLC in the amount of $96,764,904.97. Subject to the provisions of §§ 3.1, 3.2, 4.3, 4.5 and 4.6 of the Plan, Holders of Allowed Class 5 H Claims shall receive a Pro Rata Share of any distributions of Consolidated Holdco Assets made by the Plan Administrator in accordance with the Plan, and continuing on each Subsequent Distribution Date. In calculating the distribution to the Holder of

Class 5 H Claims, the Pro Rata Share shall include in the calculation the Allowed Claims and Disputed Claims included in Class 3 H, 4 H, 5 H, and 6 H. Until the Holders of the Class 5 H Allowed Claims are satisfied in full, without any post-petition interest thereon, the Holder of Class 5 H Allowed Claims shall be entitled to receive their Pro Rata Share of distributions made by the Plan Administrator in accordance with the Plan.

Notwithstanding the foregoing, in the event Class 3 H votes in favor of the Plan, the payment of Allowed Class 5 H Claims will be subordinated and junior to the payment of Class 3 H Claims, and Holders of Allowed Class 5 H Claims shall not receive any distribution until Holders of Allowed Class 3 H Claims are paid in full or paid as otherwise provided under the Plan, and such distributions shall be treated and distributed as provided under this Plan.

In the event Class 6 H votes in favor of the Plan and does not object to the Plan, the payment of Allowed Class 5 H Claims will be subordinated and junior to the payment of Class 6 H Claims and Holders of Allowed Class 5 H Claims shall not receive any distribution until Holders of Class 6 H Claims (and potentially Class 3 H and Class 9 H Claims) are paid in full under the Plan, and such distributions shall be treated and distributed as provided under this Plan and all subrogation rights of Class 5 H Claims shall be deemed waived and released. In calculating, for a Holder of an Allowed Class 3 H or Allowed Class 6 H Claim, its Pro Rata Share of the Distribution to which Holders of Class 5 H Claims would be entitled, the Plan Administrator or Consolidated Holdco, as applicable, shall aggregate the total amount of Class 3 H and Class 6 H Claims, whether Allowed or Disputed, on the Effective Date.

The Holders of Class 5 H Claims shall be deemed to have waived any rights of subrogation with respect to the subordination of their Class 5 H Claims.

**BECAUSE CLASS 5 H CLAIMS _ARE_ IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 5 H CLAIMS _ARE_ ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.6.     Class 6 H - Unsecured Claims against Consolidated Holdco Held by the REIT. The Class 6 H Claim is impaired. The Class 6 H Claim of the REIT shall be fixed and Allowed as an Unsecured Claim against Consolidated Holdco in the amount of Twenty Million Dollars ($20,000,000) and, on account of such Claim, the Holder of the Allowed Class 6 H Claim shall receive a Pro Rata Share of any distributions of Consolidated Holdco Assets made by the Plan Administrator in accordance with the Plan, and continuing on each Subsequent Distribution Date. In calculating the distribution to the Holder of Class 6 H Claim, the Pro Rata Share shall include in the calculation the Allowed Claims and Disputed Claims included in Class 3 H, 4 H, 5 H and 6 H. Until the Holder of the Class 6 H Claim is satisfied in full, without any post-petition interest thereon, the Holder of the Class 6 Claim shall be entitled to receive its Pro Rata Share of distributions made by the Plan Administrator in accordance with the Plan. The Holder of Allowed Class 6 H Claims will waive its right to enforce any subordination provisions relating to Class 8 H Claims.

In the event Class 6 H votes in favor of the Plan, the payment of Allowed Class 5 H Claims will be subordinated and junior to the payment of the Class 6 H Claim, any distributions that would have been made to Holders of Allowed Class 5 H Claims shall instead be made to

Holder of the Class 6 H Claim (and Class 3 H Claims (if Class 3 H also votes to in favor of the Plan) and Class 9 H Claims) on a Pro Rata Basis, and Class 5 H Claims shall not receive any distribution until Class 3 H, Class 6 H, and Class 9 H Claims are paid in full under the Plan. In calculating, for a Holder of an Allowed Class 6 H Claim, its Pro Rata Share of the Distribution to which Holders of Class 5 H Claims would be entitled, the Plan Administrator or Consolidated Holdco, as applicable, shall aggregate the total amount of Class 3 H and Class 6 H Claims, whether Allowed or Disputed, on the Effective Date.

**BECAUSE CLASS 6 H CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 6 H CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.7.    <u>Class 7 H - Consolidated Holdco Convenience Class Claims</u>. The Class 7 H Claims <u>are</u> impaired. Each Holder of an Allowed Consolidated Holdco Convenience Claim in Class 7 H shall receive the lesser of (a) sixty-five percent (65%) of the Holder's Allowed Class 7 H Convenience Claim in one Cash payment as part of the Effective Date Distribution from Consolidated Holdco or (b) their Pro Rata Share of One Million Five Hundred Thousand Dollars ($1,500,000), or such other, less favorable treatment as is agreed upon by Consolidated Holdco and the Holder of such Consolidated Holdco Convenience Claim. Any Holder of an Allowed General Unsecured Claim against Consolidated Holdco, other than Claims in Class 4 H, 5 H, 6 H, 8 H, and 9 H, may make the Consolidated Holdco Convenience Class Election. Such election must be made on a Ballot that is properly and timely cast in accordance with applicable law and orders of the Bankruptcy Court.

**BECAUSE CLASS 7 H CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 7 H CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.8.    <u>Class 8 H - Claims against Consolidated Holdco relating to Accredited Preferred Securities Trust I</u>. The Class 8 H Claims <u>are</u> impaired. Class 8 H consists of Allowed Claims against Holdco that relate to the Trust Preferred Securities, Trust Preferred Notes, Trust Preferred Guarantee, and the Trust Preferred Note Claims, Claims held or asserted or that could be asserted by the Trust Preferred Indenture Trustee, and Claims held or asserted or that could be asserted by the Trust Preferred Holders or other Person. The Claims of Holders of Allowed Class 8 H Claims shall be fixed and Allowed as a single Unsecured Claim in favor of the Trust Preferred Indenture Trustee against Consolidated Holdco, and shall be deemed fully satisfied and paid in full by the Lone Star Trust Preferred Settlement Payment and the Trust Preferred Holdco Distributions to the Trust Preferred Indenture Trustee.

**BECAUSE CLASS 8 H CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 8 H CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

4.9.    <u>Class 9 H - REIT Preferred Holders' Subordinated Guaranty Claims</u>. The Class 9 H Claims <u>are</u> impaired. Unless otherwise agreed to by the Committee and the REIT Committee, on the Effective Date (i) the Holders of Allowed Class 9 H Claims shall not be entitled to receive any direct distributions from Consolidated Holdco until all Holders of Allowed Claims in

Classes 3 H, 4 H, and 6 H have been paid in full as provided under the Plan prior to the Consolidated Holdco Assets being fully administered, and (ii) the Holders of Allowed Class 9 H Claims shall not be entitled to any reports or notices from Consolidated Holdco or the Plan Administrator, until the Plan Administrator determines that such holders are likely to receive a direct distribution. If the Holders of Class 3 H, 4 H, and 6 H Claims are not paid in full as provided under the Plan, or if the Consolidated Holdco Assets are fully administered prior to the time when such senior unsecured Claims are paid in full, then the Holders of Allowed Class 9 H Claims shall not receive any distribution under the Plan.

In the event the Plan Administrator determines that the Holders of Class 9 H Claims are likely to receive a direct distribution, the Plan Administrator shall seek an order of the Bankruptcy Court setting a bar date for the filing of proofs of Subordinated Guaranty Claims by REIT Preferred Security Holders. Such proofs of Subordinated Guaranty Claims shall contain a Creditor Release provision pursuant to which REIT Preferred Security Holders may elect to provide the Creditor Release.

After the Holders of Class 3 H, 4 H, and 6 H Claims are paid in full as provided under the Plan prior to the full administration of the Consolidated Holdco Assets, the Holders of Allowed Class 9 H Claims shall receive a Pro Rata Share of any Subsequent Distributions made after such time, and their Pro Rata Share of the Consolidated Holdco Residual Assets, as applicable.

The payment of Class 5 H Claims will be subordinated and junior to payments Holders of Class 9 H Claims who elect to provide the Creditor Release. Any distributions that would have been made on a Pro Rata basis to Holders Class 5 H Claims shall instead be made to such Holders of Class 9 H Claims who elect to provide the Creditor Release, and Class 5 H Claims shall not receive any distribution until such Class 9 H Claims are paid in full under the Plan.

In the event the REIT Committee shall advise the Debtors in writing not later than five (5) days before the Confirmation Hearing of their request to transfer title to the common stock of the REIT Pro Rata to the REIT Preferred Security Holders and the Debtors and the Committee consent to such request, Holdco shall abandon and transfer title to the common stock of the REIT Pro Rata to the REIT Preferred Shareholders.

**BECAUSE CLASS 9 H CLAIMS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTIONS UNDER THE PLAN, THE HOLDERS OF CLASS 9 H CLAIMS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

4.10.  Class 10 H - Subordinated Claims against Consolidated Holdco (including Late Filed Claims). The Class 10 H Claims are impaired. Class 10 H consists of Claims against Consolidated Holdco that are not separately classified and are subordinated for any reason under § 510 of the Bankruptcy Code, or are Late Filed Claims. Holders of Class 10 H Claims shall not receive any distributions until the Holders of Class 3 H, 4 H, 5 H, 6 H, and 9 H Claims against Consolidated Holdco have been satisfied, without any post-petition interest thereon, as provided under the Plan, in which event the holders of Class 10 H Claims shall receive their Pro Rata

Share of Subsequent Distributions and their Pro Rata Share of the Consolidated Holdco Residual Assets, as applicable.

**BECAUSE CLASS 10 H CLAIMS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTIONS UNDER THE PLAN, THE HOLDERS OF CLASS 10 H CLAIMS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

4.11.    Class 11 H- Interests in Consolidated Holdco.    The Class 11 H Claims <u>are</u> impaired. Class 11 H consists of the Interests in Consolidated Holdco, including those Interests held by the Lone Star Entities. All Interests, including those Interests held by the Lone Star Entities, shall be canceled after the Effective Date and in accordance with the terms of the Plan, and the Holders thereof shall receive no distribution under the Plan, unless Holders of all Class 10 H Claims against Consolidated Holdco are satisfied, without any post-petition interest thereon, as provided under the Plan, in which event the holders of Class 11 H Interests shall receive their Pro Rata Share of Subsequent Distributions and their Pro Rata Share of the Consolidated Holdco Residual Assets, as applicable.

**BECAUSE CLASS 11 H INTERESTS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTIONS UNDER THE PLAN, THE HOLDERS OF CLASS 11 H INTERESTS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

5.    **TREATMENT OF CLASSES OF CLAIMS AND INTERESTS UNDER THE CONSOLIDATED DEBTORS PLAN**

5.1.    Class 1 C - Secured Claims against the Consolidated Debtors.    Class 1 C Secured Claims are unimpaired. Any Holder of a Class 1C Allowed Secured Claim shall, at the sole option of the Consolidated Debtors, receive (a) the full amount of the Holder's Allowed Class 1 C Secured Claim in one Cash payment as part of the Effective Date Distribution from the Consolidated Debtors, (b) all or a portion of the Assets securing the Allowed Secured Claim, or (c) subject to the requirements of § 1124(2) of the Bankruptcy Code, the legal, equitable, and contractual rights of the Holder of such Allowed Secured Claim shall be reinstated. A Class 1 C Secured Claim that is a Disputed Claim shall not receive any Distribution unless and until such Claim becomes an Allowed Class 1 C Secured Claim. Upon the entry of a Final Order allowing the Allowed Class 1C Secured Claim against the Consolidated Debtors after the Effective Date, the Holder of that Claim shall, at the sole option of the Liquidating Trustee, receive (a) the full amount of such Claim in one Cash payment from the Liquidating Trust, (b) all or a portion of the Assets securing the Allowed Secured Claim, or (c) subject to the requirements of § 1124(2) of the Bankruptcy Code, the reinstatement of the legal, equitable and contractual rights of the Holder of such Allowed Secured Claim. The Liquidating Trustee or Consolidated Debtors and the Holder of an Allowed Class 1 C Secured Claim may agree to less favorable treatment of such Allowed Class 1 C Secured Claim.

**BECAUSE CLASS 1 C CLAIMS ARE NOT IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 1 C CLAIMS ARE NOT ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

5.2.    Class 2 C - Priority Claims, other than Priority Tax Claims, against the Consolidated Debtors.  The Class 2 C Claims are unimpaired. Any Holder of a Class 2 C Allowed Priority Non-Tax Claim shall receive the full amount of the Holder's Class 2 C Allowed Priority Non-Tax Claim in one Cash payment as part of the Effective Date Distribution from the Consolidated Debtors.  A Class 2 C Priority Non-Tax Claim that is a Disputed Claim shall not receive any distribution unless and until such Claim becomes a Class 2 C Allowed Priority Non-Tax Claim.  Upon the entry of a Final Order allowing the Class 2 C Allowed Priority Non-Tax Claim against the Consolidated Debtors after the Effective Date, the Holder of that Claim shall receive the full amount of such Claim in one Cash payment from the Liquidating Trust.  The Liquidating Trustee or Debtor and the Holder of a Class 2 C Allowed Priority Non-Tax Claim may agree to less favorable treatment of such Class 2 C Allowed Priority Non-Tax Claim.

**BECAUSE CLASS 2 C CLAIMS ARE NOT IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 2 C CLAIMS ARE NOT ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

5.3.    Class 3 C - General Unsecured Claims against the Consolidated Debtors Accepting the Creditor Release.  The Class 3 C Claims are impaired.  Class 3 C consists of Allowed Unsecured Claims against the Consolidated Debtors whose Holders cast a timely Ballot affirmatively accepting and agreeing to the Creditor Release.  Holders of Allowed Class 3 C and 4 C Claims shall be entitled to receive a Pro Rata Share of interests in the Liquidating Trust and are entitled to receive distributions equal to their Pro Rata Share of any distributions of the Liquidating Trust Assets made by the Liquidating Trustee out of the Liquidating Trust in accordance with the Liquidating Trust Agreement and the Plan, and continuing on the dates of Subsequent Distributions, equal to their Pro Rata Share of any Subsequent Distributions of Liquidating Trust Assets made by the Liquidating Trustee out of the Liquidating Trust, as provided under the Plan.

In addition to the distributions described above, Holders of Allowed Class 3 C Claims as of the Effective Date shall be entitled to receive a Pro Rata Share of the Lone Star Creditor Release Settlement Payment subject to the terms of this Plan.  The Liquidating Trustee and the Disbursing Agent shall hold and distribute the Lone Star Creditor Release Settlement Payment pursuant to the terms of this Plan.

In the event of entry of a Final Order determining a Disputed Claim to be an Allowed Claim, the Holder of the subject Claim shall receive its Pro Rata Share of interests in the Liquidating Trust, and the Liquidating Trustee, in his sole discretion, may make an Interim Distribution to the Holder of such Allowed Claim from the Liquidating Trust Reserve, or may release funds from the Liquidating Trust Reserve to such Holder in a Subsequent Distribution. The Holders of Allowed Class 3 C Claims shall thereafter receive their Pro Rata Share of Subsequent Distributions from the Liquidating Trust.

Upon full administration of the Assets vested in the Liquidating Trust, the Liquidating Trustee shall make the Final Distribution, and all obligations under the Plan of the Liquidating Trustee to the Holders of Allowed Class 3 C Claims shall be satisfied. In the event that the Holders of Allowed Class 3 C Claims are paid in full, without any post-petition interest, any funds remaining in the Liquidating Trust Account, net of expenses, shall be distributed first to the Holders of the Allowed Class 4 C Claims and then to the Holder of the Allowed Class 7 C Claim in accordance with the provisions of the Plan.

**BECAUSE CLASS 3 C CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 3 C CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

5.4.     <u>Class 4 C - General Unsecured Claims against the Consolidated Debtors, except for separately classified Claims</u>.  The Class 4 C Claims <u>are</u> impaired. Class 4 C consists of Allowed Unsecured Claims against the Consolidated Debtors that are not separately classified under this Plan. Holders of Allowed Class 3 C and 4 C Claims shall be entitled to receive a Pro Rata Share of interests in the Liquidating Trust and are entitled to receive distributions equal to their Pro Rata Share of any distributions of the Liquidating Trust Assets made by the Liquidating Trustee out of the Liquidating Trust in accordance with the Liquidating Trust Agreement, and continuing on each Subsequent Distribution Date, equal to their Pro Rata Share of any Subsequent Distributions of Liquidating Trust Assets made by the Liquidating Trustee out of the Liquidating Trust.

For the avoidance of doubt, Holders of Allowed Class 4 C Claims opting out of the Creditor Release shall not be entitled to receive any distributions from the Lone Star Creditor Release Settlement Payment.

In the event of entry of a Final Order determining a Disputed Claim to be an Allowed Claim, the Holder of the subject Claim shall receive its Pro Rata Share of interests in the Liquidating Trust, and the Liquidating Trustee, in his sole discretion, may make an Interim Distribution to the Holder of such Allowed Claim from the Liquidating Trust Reserve, or may release funds from the Liquidating Trust Reserve to such Holder in a Subsequent Distribution. The Holders of Allowed Class 4 C Claims shall thereafter receive their Pro Rata Share of Subsequent Distributions from the Liquidating Trust.

Upon full administration of the Assets vested in the Liquidating Trust, the Liquidating Trustee shall make the Final Distribution, and all obligations under the Plan of the Liquidating Trustee to the Holders of Allowed Class 4 C Claims shall be satisfied. In the event that the Holders of Allowed Class 4C Claims are paid in full, without any post-petition interest thereon, any funds remaining in the Liquidating Trust Account, net of expenses, shall be distributed to the Holders of Allowed Class 7 C Claims in accordance with the provisions of the Plan.

**BECAUSE CLASS 4 C CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 4 C CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

5.5.  Class 5 C - Unsecured Claims Against the Consolidated Debtors held by the Lone Star Entities.  The Class 5 C Claims are impaired.  The Claims of the Lone Star Entities against the Consolidated Debtors shall be waived, released, and expunged, and shall receive no distributions under this Plan.

**BECAUSE CLASS 5 C CLAIMS ARE IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 5 C CLAIMS ARE ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

5.6.  Class 6 C - Consolidated Debtors Convenience Class Claims.  The Class 6 C Claims are impaired.  On the Effective Date, or as soon as practicable thereafter, each Holder of an Allowed Consolidated Debtor Convenience Claim in Class 6 C shall receive seventy-five percent (75%) of the Holder's Allowed Class 6 C Convenience Claim in one Cash payment as part of the Effective Date Distribution from the Consolidated Debtors, or such other less favorable treatment as is agreed upon by the Consolidated Debtors and the Holder of such Allowed Consolidated Debtor Convenience Claim.  Any Holder of an Allowed General Unsecured Claim against the Consolidated Debtors, other than Claims in Class 5 C, 7 C, and 8 C, may make the Consolidated Debtors Convenience Class Election.  Such election must be made on a Ballot that is properly and timely cast in accordance with applicable law and orders of the Bankruptcy Court.

**BECAUSE CLASS 6 C CLAIMS ARE IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 6 C CLAIMS ARE ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

5.7.  Class 7 C - REIT Junior Claim.  The Class 7 C Claims are impaired.  Class 7 C consists of the REIT Junior Claim, which is Allowed as a Class 7 C Claim in the fixed amount of Fifteen Million Dollars ($15,000,000) held by the REIT.  Holders of Allowed Class 7 C Claim shall receive its Pro Rata Share of interests in the Liquidating Trust subject to the enforcement of the applicable subordination provisions as described herein.

Pursuant to the terms of this Plan, the Class 7 C Claim is subordinated and junior to the Class 3 C, 4 C and 6 C Claims, and the Holder of Class 7 C Claims will not receive any distributions until all Allowed Claims in Classes 3 C and 4 C are paid in full, without any post-petition interest thereon, as provided under the Plan, and the Holders of Class 6 C Claims receive the distribution they are entitled to receive under the Plan, in which event the holder of the Class 7 C Claim shall receive its Pro Rata Share of any Subsequent Distributions made by the Liquidating Trustee after such time, and its Pro Rata Share of the Liquidating Trust Residual Assets, as applicable.

**BECAUSE CLASS 7 C CLAIMS ARE IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 7 C CLAIMS ARE ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

5.8.  Class 8 C - Subordinated Claims against the Consolidated Debtors (including Late Filed Claims).  The Class 8 C Claims are impaired.  Class 8 C consists of Subordinated Claims against the Consolidated Debtors, including Late Filed Claims.  Holders of Class 8 C

Subordinated Claims shall receive no distribution under the Plan unless the Holders of Allowed Class 3 C, 4 C and 7 C Claims are paid in full, without any post-petition interest thereon as provided under the Plan and the Liquidating Trust is terminated, as provided under the Plan, in which event the holders of Class 8 C Claims shall receive their Pro Rata Share of the Liquidating Trust Residual Assets, which distributions shall be made by the Disbursing Agent.

**BECAUSE CLASS 8 C CLAIMS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTIONS UNDER THE PLAN, THE HOLDERS OF CLASS 8 C CLAIMS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

5.9.    Class 9 C - Claims against Consolidated Debtors relating to Accredited Preferred Securities Trust I.  The Class 9 C Claims are impaired.  Class 9 C consists of Allowed Claims against the Consolidated Debtors that relate to the Trust Preferred Securities, Trust Preferred Notes, Trust Preferred Guarantee, and the Trust Preferred Note Claims.  All such Claims are reduced, fixed, and Allowed as the Trust Preferred Note Junior Claim, which is a Class 9 C Claim in the amount of Five Million Dollars ($5,000,000) held by the Trust Preferred Indenture Trustee.  Holders of Allowed Class 9 C Claims shall receive their Pro Rata Share of interests in the Liquidating Trust subject to the enforcement of the applicable subordination provisions as described herein.

Pursuant to the terms of this Plan, the Class 9 C Claims are subordinated and junior to the Class 3 C, 4 C, 6 C, 7 C, and 8 C Claims, and Holders of Class 9 C Claims will not receive any distributions until all Claims in Classes 3 C, 4 C, 7 C, and 8 C are paid in full, without any post-petition interest thereon and the Liquidating Trust is terminated, as provided under the Plan, in which event the holders of Class 9 C Claims shall receive their Pro Rata Share of the Liquidating Trust Residual Assets, which distributions shall be made by the Disbursing Agent.

**BECAUSE CLASS 9 C CLAIMS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTIONS UNDER THE PLAN, THE HOLDERS OF CLASS 9 C CLAIMS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

5.10.    Class 10 C - Interests in the Consolidated Debtors.  The Class 10 C Interests are impaired.  Class 10 C consists of the Interests in the Consolidated Debtors.  All Interests shall be canceled after the Effective Date and the Holders thereof shall receive no distribution under the Plan, unless Holders of all Class 9 C Claims against the Consolidated Debtors are paid in full, without any post-petition interest thereon and the Liquidating Trust is terminated, as provided under the Plan, in which event the holders of Class 10 C Interests shall receive their Pro Rata Share of the Liquidating Trust Residual Assets, which distributions shall be made by the Disbursing Agent.

**BECAUSE CLASS 10 C INTERESTS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTIONS UNDER THE PLAN, THE HOLDERS OF CLASS 10 C INTERESTS ARE CONCLUSIVELY PRESUMED TO HAVE**

**REJECTED THE PLAN AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

## 6. INTERCOMPANY CLAIMS

6.1. <u>Inter-Debtor Waivers</u>. By virtue of the compromises and settlement of the issues set forth in the Plan, on the Effective Date, (i) AHL Canada shall pay and satisfy the claims of the Consolidated Debtors against AHL Canada, and, after giving effect to such payments, (ii) each Debtor shall waive any defense, including, without limitation, defenses arising under §§ 502(d) and 553(a) of the Bankruptcy Code, to Intercompany Claims asserted by another Debtor and such Claims shall be deemed Allowed Claims, (iii) Intercompany Claims between Debtors shall be deemed to be mutual claims arising prior to the Petition Date for purposes of setoff, (iv) except as provided in Section 3.1 of the Plan, each Debtor shall waive its right to receive any distribution on any Claims and Causes of Action such Debtor may have against another Debtor, and (v) except as provided in Section 3.1 of the Plan, each Debtor shall waive and forever release any right, Claim, or Cause of Action which has been or could have been asserted by such Debtor against any other Debtor.

6.2. <u>Non-Debtor Subsidiary Waivers</u>. By virtue of the compromises and settlement of the issues set forth in the Plan and except as otherwise provided in this Plan, on the Effective Date, (i) AHL Canada shall pay and satisfy the claims of the Consolidated Debtors against AHL Canada, and, after giving effect to such payments, (ii) each Non-Debtor Subsidiary shall waive any defense, including, without limitation, defenses arising under §§ 502(d) and 553(a) of the Bankruptcy Code, to Intercompany Claims asserted by another Debtor or Non-Debtor Subsidiary against any Debtor and such Claims shall be deemed Allowed Claims, (iii) Intercompany Claims between Debtors and Non-Debtor Subsidiaries shall be deemed to be mutual claims arising prior to the Petition Date for purposes of setoff, (iv) each Non-Debtor Subsidiary, shall waive its right to receive any distribution on any Claims and Causes of Action such Non-Debtor Subsidiary may have against any Debtor, (v) except as provided in this Section 6.2 of the Plan, each Non-Debtor Subsidiary, except REIT, shall waive and forever release any right, Claim or Cause of Action which has been or could have been asserted by such Non-Debtor Subsidiary against any Debtor, and (vi) each Debtor shall waive its right to receive any distribution on any Claims and Causes of Action such Debtor may have against any Non-Debtor Subsidiary, <u>provided, however</u>, that AHL Canada shall pay all amounts owing to the Consolidated Debtors on the Effective Date. Notwithstanding anything contained in this section to the contrary, the REIT shall have the Allowed Claims against the Debtors specified in Section 8.2 of the Plan and shall be entitled to distributions thereon as set forth in this Plan.

6.3. <u>Asset Allocation</u>. The allocation of certain Assets is an integral component of the comprehensive compromise and settlement concerning Intercompany Claims and intra-Debtor issues as determined in light of a number of facts, including, but not limited to, (i) respective legal claims, rights and entitlements of the Debtors, (ii) validity and enforceability of Intercompany Claims, (iii) Intercompany Claims not reflected as inter-company payables or receivables in the Debtors' books and records, (iv) relative value of Assets under administration in each Debtor, (v) Intercompany Claims for contribution or reimbursement, (vi) the necessity of resolving inter-Estate and inter-Debtor issues and disputes through the Plan, and (vii)