REJECTED THE PLAN AND THEREFORE ARE NOT ENTITLED TO VOTE TO
ACCEPT OR REJECT THE PLAN.

## 6.   INTERCOMPANY CLAIMS

6.1.   Inter-Debtor Waivers.  By virtue of the compromises and settlement of the issues
set forth in the Plan, on the Effective Date, (i) AHL Canada shall pay and satisfy the claims of
the Consolidated Debtors against AHL Canada, and, after giving effect to such payments, (ii)
each Debtor shall waive any defense, including, without limitation, defenses arising under §§
502(d) and 553(a) of the Bankruptcy Code, to Intercompany Claims asserted by another Debtor
and such Claims shall be deemed Allowed Claims, (iii) Intercompany Claims between Debtors
shall be deemed to be mutual claims arising prior to the Petition Date for purposes of setoff, (iv)
except as provided in Section 3.1 of the Plan, each Debtor shall waive its right to receive any
distribution on any Claims and Causes of Action such Debtor may have against another Debtor,
and (v) except as provided in Section 3.1 of the Plan, each Debtor shall waive and forever release
any right, Claim, or Cause of Action which has been or could have been asserted by such Debtor
against any other Debtor.

6.2.   Non-Debtor Subsidiary Waivers.  By virtue of the compromises and settlement of
the issues set forth in the Plan and except as otherwise provided in this Plan, on the Effective
Date, (i) AHL Canada shall pay and satisfy the claims of the Consolidated Debtors against AHL
Canada, and, after giving effect to such payments, (ii) each Non-Debtor Subsidiary shall waive
any defense, including, without limitation, defenses arising under §§ 502(d) and 553(a) of the
Bankruptcy Code, to Intercompany Claims asserted by another Debtor or Non-Debtor Subsidiary
against any Debtor and such Claims shall be deemed Allowed Claims, (iii) Intercompany Claims
between Debtors and Non-Debtor Subsidiaries shall be deemed to be mutual claims arising prior
to the Petition Date for purposes of setoff, (iv) each Non-Debtor Subsidiary, shall waive its right
to receive any distribution on any Claims and Causes of Action such Non-Debtor Subsidiary may
have against any Debtor, (v) except as provided in this Section 6.2 of the Plan, each Non-Debtor
Subsidiary, except REIT, shall waive and forever release any right, Claim or Cause of Action
which has been or could have been asserted by such Non-Debtor Subsidiary against any Debtor,
and (vi) each Debtor shall waive its right to receive any distribution on any Claims and Causes of
Action such Debtor may have against any Non-Debtor Subsidiary, provided, however, that AHL
Canada shall pay all amounts owing to the Consolidated Debtors on the Effective Date.
Notwithstanding anything contained in this section to the contrary, the REIT shall have the
Allowed Claims against the Debtors specified in Section 8.2 of the Plan and shall be entitled to
distributions thereon as set forth in this Plan.

6.3.   Asset Allocation.  The allocation of certain Assets is an integral component of the
comprehensive compromise and settlement concerning Intercompany Claims and intra-Debtor
issues as determined in light of a number of facts, including, but not limited to, (i) respective
legal claims, rights and entitlements of the Debtors, (ii) validity and enforceability of
Intercompany Claims, (iii) Intercompany Claims not reflected as inter-company payables or
receivables in the Debtors' books and records, (iv) relative value of Assets under administration
in each Debtor, (v) Intercompany Claims for contribution or reimbursement, (vi) the necessity of
resolving inter-Estate and inter-Debtor issues and disputes through the Plan, and (vii)

administration and liquidation of Trust Assets unfettered or effected by inter-Estate or inter-Debtor conflicts of interest or multiple claims.

## 7.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1.    <u>Assumption and Rejection</u>. All executory contracts and unexpired leases, other than those executory contracts and unexpired leases which (i) were executed subsequent to the Petition Date, (ii) have not expired by their own terms prior to the Confirmation Date, (iii) were assumed prior to the Effective Date pursuant to an order of the Bankruptcy Court, or (iv) were identified in the Plan Supplement as being assumed and assigned under this Plan, shall be deemed rejected upon the Confirmation Date. Upon the Effective Date, all executory contracts and unexpired leases that (i) were executed subsequent to the Petition Date, (ii) were assumed prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court, or (iii) were identified in the Plan Supplement as being assumed and assigned under this Plan, shall either (i) be assumed by Consolidated Holdco, if such leases and contracts are with Consolidated Holdco, or (ii) be assumed by the Consolidated Debtors and assigned to the Liquidating Trust, if such leases and contracts are with the Consolidated Debtors. Unless otherwise agreed to by the parties to such lease or contract, or required by an Order of the Court, there shall be no cure costs or adequate protection payments required in connection with the assumption and assignment of such leases and contracts.

7.2.    <u>Indemnification Agreements</u>. The obligations of the Consolidated Debtors to indemnify any Person having served as an officer or director of the Consolidated Debtors, to the extent provided in any of the Consolidated Debtors' corporate governance documents or by written or other agreement or applicable law, shall be terminated and extinguished and, to any extent necessary, deemed an executory contract, terminated and rejected under the Plan, and such Person's rights to assert rejection damages claims arising there from, if any, shall be governed by Section 7.3 of the Plan. Notwithstanding the foregoing, this provision will not limit, release or modify any indemnification obligations to those persons who have served, during the period from and after the Petition Date, as officers of the Debtors pursuant to a court-approved retention or engagement letter (the "Retained Advisor Indemnification Obligations"). Notwithstanding any provision herein, no person making a claim with respect to indemnification obligation approved by the Bankruptcy Court shall be required to file a proof of claim with respect to such Retained Advisor Indemnification Obligations, and any right to payment with respect to such Retained Advisor Indemnification Obligations shall not be impacted by this Plan.

7.3.    <u>Claims Relating to Assumption or Rejection</u>. Any party to an executory contract or unexpired lease not previously assumed or rejected and to which no bar date has been established, which is assumed or rejected pursuant to this Plan or is the subject of a pending rejection motion, is required under the terms of this Plan to file a proof of claim for amounts due as a result of such assumption or rejection by the Rejection Bar Date; <u>provided, however</u>, if a motion seeking assumption or rejection is not heard and determined prior to the Effective Date, any Claim based thereon shall be filed within thirty (30) days of entry of an Order ruling on the motion. Any Allowed Cure Claim relating to the assumption of executory contracts or leases pursuant to the Plan shall be paid in full from the Effective Date Distribution to the extent Finally Determined as of the Effective Date, or, to the extent thereafter, from an Interim Distribution or Subsequent Distribution by the Liquidating Trustee or Plan Administrator. Any

such Claim not filed by the Rejection Bar Date as provided in the Plan shall be forever barred and shall not be enforceable against the Debtors or their properties or the Liquidating Trust, and the Debtors and Liquidating Trust shall have no obligation to pay the same.

7.4.    Insurance Policies.    To the extent that any and all insurance policies are considered executory contracts, then notwithstanding anything contained in the Plan to the contrary, such insurance policies that are policies of the Consolidated Debtors shall be deemed assumed and assigned to the    Liquidating Trust, and such policies that are policies of Consolidated Holdco shall be assumed by Consolidated Holdco.    Unless otherwise determined by the Bankruptcy Court, pursuant to a Final Order, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such policy. For the avoidance of any doubt, all rights under any insurance policy that is not an executory contract, and all rights under any other insurance policies under which the Debtors may be beneficiaries, shall be preserved, and, nothing herein shall alter or adversely affect the rights of any non-Debtor beneficiaries of or covered persons under such insurance policies.

## 8.    GLOBAL SETTLEMENT AND COMPROMISE OF DISPUTES

8.1.    Incorporation of Settlement.    The Plan is deemed to be a motion pursuant to §§ 363, 502, and 1123 of the Bankruptcy Code and Fed. R. Bankr. P 9019 to approve the settlements provided for in § 8.2 of the Plan between and among the Debtors, their major creditor constituencies, including the Trust Preferred Holders and the Trust Preferred Indenture Trustee, the REIT, the REIT Committee, and the Lone Star Entities.    Upon the occurrence of the Effective Date, the Plan Support Agreement and Term Sheet shall be deemed superseded by the confirmed Plan and Confirmation Order and shall have no further force or effect.

8.2.    Terms of the Global Settlement.    The terms of this settlement are as follows:

(a)    REIT Adversary Settlement.    The Confirmation Order shall include approval of the settlement of the REIT Adversary, and, upon the Effective Date, the REIT Adversary shall be dismissed or withdrawn with prejudice and the REIT shall have as Allowed Claims: (1) an Allowed Unsecured Claim against the Consolidated Debtors in the amount of $37.5 Million, which Claim shall be included in and receive the treatment provided for in Class 3 C; (2) the REIT Junior Claim in the amount of $15 Million in Class 7 C; which Claim shall be included in and receive the treatment provided for in Class 7 C; and (3) an Allowed Unsecured Claim against Consolidated Holdco in the amount of $20 Million in Class 6 H, which Claim shall receive the treatment provided under the Plan, including the REIT First Distribution. The REIT Committee shall continue to have the right to file a Claim for its substantial contribution in these proceedings pursuant to Sec. 503(b) of the Bankruptcy Code, which application shall be provided to the Debtors and the Committee prior to filing for review.    Nothing contained in the Plan shall prohibit any party-in-interest from filing an objection to such Claim.    To the extent the Claims of the REIT, or any Claims asserted by other Persons on behalf of the REIT, against the Debtors, the Estates, and the Assets of the Debtors, are not otherwise Allowed under this § 8.2(a), such Claims are disallowed, expunged, and released.

(b)    Citigroup Settlement.    The Confirmation Order shall include approval of the settlement of the Claims of Citigroup, and, upon the Effective Date, Citigroup shall have an

Allowed Unsecured Claim against Debtor AHL in the amount of $12.1 Million, which Claim shall be classified as an Allowed Class 3 C Claim. Citigroup shall continue to have the right to file a Claim for its substantial contribution in these proceedings pursuant to § 503(b) of the Bankruptcy Code which Application shall be provided to Debtors and the Committee prior to filing for review. Nothing contained in the Plan shall prohibit any party-in-interest from filing an objection to such Claim. Except as to its Claim under § 503(b) of the Bankruptcy Code, Citigroup shall not have the right to otherwise amend their Proof of Claim or file or assert any new Claims against the Debtors and the Claims of Citigroup and its affiliates against the Debtors that are not otherwise Allowed under this Plan, such Claims are disallowed, released, and expunged.

(c) Trust Preferred Settlement. The Confirmation Order shall include approval of the settlement of the Claims relating to the Trust Preferred Securities, the Trust Preferred Notes, the Trust Preferred Guarantee, and the Trust Preferred Note Claims (which includes any claims that have been or could be asserted by the Trust Preferred Holders or the Trust Preferred Indenture Trustee), and, upon the Effective Date, all such Claims against Consolidated Holdco, whether direct, indirect, or derivative, including any claims by the Trust Preferred Indenture Trustee for compensation and indemnity under the Trust Preferred Indenture, Trust Declaration, and Trust Preferred Guarantee shall be deemed satisfied and paid in full by the Lone Star Trust Preferred Settlement Payment and the Trust Preferred Holdco Distributions, all such Claims against the Consolidated Debtors, whether direct, indirect, or derivative, shall be reduced, consolidated, subordinated, and Allowed as a Class 9 C Claim in the amount of Five Million Dollars ($5,000,000) held by the Trust Preferred Indenture Trustee. Accordingly, upon the Effective Date, all scheduled claims and proofs of claim held by Wells Fargo Bank, N.A., in its capacity as Indenture Trustee and Property Trustee, Kodiak CDO I, Ltd., Kodiak CDO II, Ltd., and/or JP Morgan Funding LLC will be satisfied, discharged, and expunged in accordance with this Global Settlement and the Plan. Further, the Trust Preferred Adversary Proceeding shall be dismissed or withdrawn, with prejudice. Further, the Trust Preferred Indenture Trustee and the Trust Preferred Holders waive any right, claim, or entitlement to seek reimbursement of any fees and expenses incurred in connection with these Chapter 11 Cases from the Debtors or their Estates (including the Liquidating Trustee or Plan Administrator) under § 503(b) of the Bankruptcy Code or any other applicable section of the Bankruptcy Code or applicable law.

(d) Lone Star Settlement. Provided that less than 25% in amount of the estimated Allowed Unsecured Claims against the Consolidated Debtors eligible to vote on the Plan as of the Confirmation Date elect treatment as Class 4 C Creditors (rather than Class 3 C Creditors) and to withhold releases of direct and personal claims under the Plan:

(i) one or more of the Lone Star Entities (other than LSF MRA, LLC) shall make the Lone Star Creditor Release Settlement Payment to the Consolidated Debtors on or before the Effective Date;

(ii) one or more of the Lone Star Entities (other than LSF MRA, LLC) shall make the Lone Star Advance to Consolidated Holdco on or before the Effective Date;

(iii)    one or more of the Lone Star Entities (other than LSF MRA, LLC) shall pay the Lone Star Consolidated Debtors Settlement Payment to the Consolidated Debtors on or before the Effective Date;

(iv)    one or more of the Lone Star Entities (other than LSF MRA, LLC), their insurers, and the Debtors' insurers under the D&O Policies shall make their respective portion of the Lone Star Trust Preferred Settlement Payment, as provided under the Trust Preferred Indenture and related documents, to the Trust Preferred Indenture Trustee on behalf of the Trust Preferred Holders in satisfaction of the Claims of the Trust Preferred Indenture Trustee, the Trust Preferred Holders or any other Person holding a Claim arising under or related, directly or indirectly, to the Trust Preferred Indenture and related documents against Holdco (including any claims that have been asserted or could be asserted by the Trust Preferred Indenture Trustee or the Trust Preferred Holders) as provided under the Plan;

(v)    the Lone Star Entities and their Affiliates shall be deemed to have waived, for purposes of the Plan and receiving distributions under the Plan, either directly or indirectly, all Claims against the Consolidated Debtors or their respective properties, including those asserted in the Lone Star Proofs of Claim and all such Claims shall be expunged, discharged and released; and

(vi)    the Lone Star Entities and their Affiliates shall be deemed to have subordinated, for purposes of the Plan and receiving distributions hereunder, all Claims asserted against Consolidated Holdco in favor of Classes 3 H and 6 H if those applicable Classes do not vote to reject the Plan, and potentially Class 9 H, to the extent such Claims of the Lone Star Entities are not disallowed, so that any distributions that would be made to the Lone Star Entities on account of Claims against Consolidated Holdco on a pro rata basis (the "Subordinated Distributions") will first be distributed in accordance with this Plan to such non-rejecting Classes, or, with respect to the Holders of Class 9 H Claims, to Holders who elect to provide the Creditor Release, until such Claims are paid in full (which Subordinated Distributions shall not be subject to disgorgement). The Plan Administrator shall distribute the Subordinate Distributions pursuant to the terms of the Plan and the Lone Star Entities and Affiliates have waived any rights of subrogation.

**(e)    Release of Settling Parties' Claims against the Lone Star Releasees and Plan Releasees.**

**Upon the Effective Date of the Plan, for good and valuable consideration, pursuant to the Plan, except as otherwise specifically provided for in the Plan, the Lone Star Releasees and Plan Releasees shall be released from all claims, potential claims, suits, debts, liens, contracts, agreements, promises, liabilities, demands, rights, costs, expenses, actions, causes of action, and damages of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, which any releasor identified below has or may have, or which have been asserted or could be asserted in the future, which are based upon, arise out of, or in any way relate to the Debtors or their business or operations (including the business or operations of the REIT and the other Non-Debtor Subsidiaries and any claims under Chapter 5 of the Bankruptcy Code or**

similar State or Federal law), by (i) the estates of the Consolidated Debtors and Consolidated Holdco, (ii) the non-debtor Affiliates of the Debtors, (iii) the REIT (subject to the carveout for certain insurance coverage claims set forth below), and (iv) the Committee.

(f)     Release of Creditors' Claims against the Lone Star Releasees and Plan Releasees.

Upon the Effective Date of the Plan, for good and valuable consideration, pursuant to the Plan, except as otherwise specifically provided for in the Plan, the Lone Star Releasees and Plan Releasees shall be released from all claims, potential claims, suits, debts, liens, contracts, agreements, promises, liabilities, demands, rights, costs, expenses, actions, causes of action, and damages of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, which any releasor identified below has or may have, or which have been asserted or could be asserted in the future, which are based upon, arise out of, or in any way relate to the Debtors or their business or operations (including the business or operations of the REIT and the other Non-Debtor Subsidiaries and any claims under Chapter 5 of the Bankruptcy Code or similar State or Federal law), by (i) individual creditors of the Consolidated Debtors in Class 3 C, (ii) individual creditors of Consolidated Holdco in Class 3 H and, if applicable, Class 9 H, (iii) individual creditors making the Consolidated Debtors Convenience Class Election, and (iv) individual creditors making the Consolidated Holdco Convenience Class Election.

(g)     Mutual Releases Amongst Settling Parties.

Upon the Effective Date, for good and valuable consideration, each of the Trust Preferred Holders, the Trust Preferred Indenture Trustee, the REIT, the Lone Star Entities, the Debtors, the Non-Debtor Subsidiaries, the Committee, members of the Committee acting in their capacity as such, the REIT Committee, the members of the REIT Committee acting in their capacity as such, and Citigroup, effective pursuant to the Confirmation Order, shall, except as otherwise specifically provided for in the Plan, grant a full and complete release to each of the Lone Star Releasees, Plan Releasees, the Trust Preferred Holders, the Trust Preferred Indenture Trustee, the REIT, the Debtors, the Non-Debtor Subsidiaries, the Committee, the members of the Committee acting in their capacity as such, the REIT Committee, the members of the REIT Committee acting in their capacity as such, and Citigroup and to their predecessor entities, Affiliates, successors and assigns and their respective professionals and advisors from all claims, potential claims, suits, debts, liens, contracts, agreements, promises, liabilities, demands, rights, costs, expenses, actions, causes of action, and damages of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, which the releasor has or may have, or which have been asserted or may be asserted in the future, that are based upon, arise out of, or in any way relate to the Debtors or their business or operations related to the Debtors and their businesses (including related to the REIT and any other Non-Debtor Subsidiaries and Affiliates of the Debtors and their business or operations and any claims under Chapter 5 of the Bankruptcy Code or similar State or Federal law), including without limitation any and all claims or causes of action that were set forth or

could have been set forth in any complaint or pleading filed by any of the foregoing in the Trust Preferred Adversary Proceeding, the REIT Adversary Proceedings or elsewhere; **provided, however,** that nothing contained herein or therein shall release any releasor's rights and claims under this Plan or the Allowed Claims granted to it under the Plan.

(h)     Notwithstanding any other provisions of the Plan, no current or former officer or director of any of the Lone Star Entities or of their Affiliates or subsidiaries or of the Debtors shall receive a release from the Debtors without providing (i) a mutual release to the Debtors and their estates, and (ii) a full release to the insurers set forth in Schedule B to the Plan Support Agreement and Term Sheet, the REIT and the other non-debtor subsidiaries of the Debtors for the matters released in this § 8.2 of this Plan, which for the convenience of the officers and directors shall be deemed granted as of the Effective Date of the Plan unless such officer or director objects on or prior to the hearing to consider confirmation of this Plan and a Final Order is entered sustaining such objection; **provided, however,** that restructuring advisors retained as officers of the Debtors pursuant to an order entered by the Bankruptcy Court shall retain any claims against the Insurers pursuant to any valid insurance policy.

(i)     Notwithstanding any other provisions of the Plan, the release of the Debtors' pre- and post-petition professionals and restructuring advisors retained or employed pursuant to §§ 363 and 327 of the Bankruptcy Code set forth above in this § 8.2 shall not include the release (i) of any claim for the avoidance of a preferential transfer under § 547 of the Bankruptcy Code, (ii) of any claim for the return of an unused retainer, or (iii) of any postpetition claim against a restructuring advisor employed under § 363 or an estate professional retained under § 327 and compensated under § 330 of the Bankruptcy Code (which restructuring advisors and retained professionals shall received the benefit of and the corresponding exclusion to the exculpation set forth in § 12.3 of the Plan).

(j)     Notwithstanding any other provisions of the Plan, it is expressly understood and agreed that, except for the transactions contemplated by the Plan and the Plan Support Agreement Term Sheet and the claims and potential claims (and associated expenses) released pursuant to thereto, the proposed releases shall in no way release, limit or impair the REIT's and any of the past, future, or present rights of the trustee of the REIT to coverage as an insured pursuant to any policy of insurance issued by any of the insurers set forth on Schedule B to the Plan Support Agreement and Term Sheets that lists Accredited Home Lenders Holding Co. as a named insured and provides coverage for the REIT or any of its Trustees, and it is expressly understood that all such rights are expressly reserved.

(k)     Notwithstanding any other provisions of the Plan, the foregoing releases shall not be construed to release any claims, rights or causes of action that any professional or restructuring advisor retained pre- or post-petition by the Debtors or their non-debtor Affiliates may have against its current or former employees.

(l)     Nothing in this § 8.2 of the Plan shall release any party from any of its obligations under the Plan.

(m)     Upon or after the Effective Date, the Liquidating Trustee, the Plan Administrator, and the parties to the Plan Support Agreement and Term Sheet will comply, without cost or

expense to them, with any reasonable requests received from each other for written confirmation of the effectiveness of the releases as set forth herein.

(n)     The Consolidated Debtors, the Liquidating Trustee, Consolidated Holdco, and the Holdco Plan Administrator shall agree and covenant not to make, assert or pursue any claim or commence any action or litigation against the Lone Star **Releasees and Plan** Releasees or the current and former directors and officers of the Debtors released as set forth herein or under or against the applicable D&O Policies; provided, however, that any release of current or former Directors and Officers of the Debtors as set forth herein shall also be conditioned on such officer or director granting a full release of claims against the Consolidated Debtors and their respective properties (including all claims under or that could be asserted under filed proofs of claim, which claims shall be deemed expunged and relinquished).     Notwithstanding the foregoing, this provision will not limit, release or modify any Retained Advisor Indemnification Obligations or any rights of a restructuring advisor retained pursuant to an order of the Bankruptcy Court to coverage from an insurance policy of the Debtors for acts occurring during the period from the Petition Date through and including the Confirmation Date.

(o)     Each of the release provisions in this § 8.2 is an integral part of the Plan and is essential to its implementation.  These release provisions shall be effective as of the Effective Date pursuant to the Confirmation Order, without any further action.

## 9.     LIQUIDATING TRUST

9.1.     Appointment of Liquidating Trustee.

(a)     On or before the Plan Supplement Filing Date, the Liquidating Trustee shall be selected by the Committee and be reasonably acceptable to the Debtors and REIT; provided, however, that none of the Lone Star Entities, the Trust Preferred Holders, the Trust Preferred Indenture Trustee, or their Affiliates, officers, directors, or employees shall serve as Liquidating Trustee.  Prior to the Confirmation Date, the Person(s) designated as Liquidating Trustee shall file an affidavit demonstrating that such Person is disinterested.  If approved by the Bankruptcy Court in the Confirmation Order, the person so designated shall become the Liquidating Trustee of the Liquidating Trust on the Effective Date.

(b)     The Liquidating Trustee shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Liquidating Trust Agreement and the Plan.

(c)     The Liquidating Trustee shall be deemed a party in interest and have standing to seek disgorgement or challenge or object to the allowance or payment of Professionals under any interim or final fee application and with respect to challenging any Claims for substantial contribution made under § 503(b) of the Bankruptcy Code or similar claims.

(d)     The Liquidating Trustee shall be the Disbursing Agent as provided under the Plan.

9.2.     Funding of the Liquidating Trust.  The Liquidating Trust shall consist of the Liquidating Trust Assets.  The Liquidating Trust will be funded initially by a contribution to the Liquidating Trust Account by the Consolidated Debtors equal to their Effective Date Balance

less any payments made to the Holders of Allowed Administrative Claims, Holders of Allowed Secured Claims, Holders of Allowed Priority Claims, Holders of Allowed Priority Tax Claims, and Holders of Allowed Convenience Claims against the Consolidated Debtors on the Effective Date. The Liquidating Trust shall subsequently be funded from the other Proceeds of Consolidated Debtors Assets.

9.3. <u>Transfer of Liquidating Trust Assets to the Liquidating Trust</u>. On the Effective Date, the Debtors shall transfer and shall be deemed to have irrevocably transferred the Liquidating Trust Assets to the Liquidating Trust, for payment of Claims as provided in this Plan, and, after payment of such Claims, on behalf of the beneficiaries of the Liquidating Trust, with no reversionary interest in the Debtors.

9.4. <u>The Liquidating Trust</u>.

(a) Without any further action of the directors or shareholders of the Debtors, on the Effective Date, the Liquidating Trust Agreement for the Liquidating Trust, substantially in the form included in the Plan Supplement, shall become effective. On or before the Effective Date, the Debtors and the Liquidating Trustee shall execute the Liquidating Trust Agreement and shall take such other necessary steps to establish the Liquidating Trust. The Liquidating Trustee shall accept the Liquidating Trust Assets and sign the Liquidating Trust Agreement on the Effective Date and the Liquidating Trust will then be deemed created and effective.

(b) The Liquidating Trustee shall have full authority to take any steps necessary to administer the Liquidating Trust Assets and the Lone Star Creditor Release Settlement Payment, as applicable, including, without limitation, the duty and obligation to liquidate Liquidating Trust Assets, and to pursue and settle any other trust claims, subject to the approval of the Liquidating Trust Advisory Board and to the procedures in the Liquidating Trust Agreement. Upon such transfer (which, as stated above, shall occur on the Effective Date), the Debtors and their Estates shall have no other rights or obligations with respect to the Liquidating Trusts.

(c) All Liquidating Trust Expenses shall be the responsibility of and paid by the Liquidating Trust from the Liquidating Trust Assets. Liquidating Trust Expenses may not exceed Two Million Dollars ($2,000,000), except pursuant to an order from the Bankruptcy Court approving an increase in this limit, which order may be obtained by the Liquidating Trustee with the consent of the Liquidating Trust Advisory Board and a showing of cause for such increase to the Bankruptcy Court.

(d) The Liquidating Trustee may retain Liquidating Trust Professionals, in its sole discretion, and at the sole expense of the Liquidating Trust, to aid in the performance of its responsibilities pursuant to the terms of this Plan including, without limitation, the liquidation and distribution of Liquidating Trust Assets and the Lone Star Creditor Release Settlement Payment, as applicable.

(e) Distribution of Liquidating Trust Assets: The Liquidating Trustee is required to distribute to the holders of Allowed Claims on account of their interests in the Liquidating Trust, on a periodic basis, and at least once per year, all unrestricted Cash on hand (including any Cash received from the applicable Debtors on the Effective Date, and treating any permissible

investment as Cash for purposes of this Section 9.4(e)), except such amounts (i) as have been reserved on account of Disputed Claims, or are otherwise part of the claims reserve established by the Liquidating Trustee, (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (iii) as are necessary to pay reasonable incurred or anticipated expenses (including, but not limited to, any taxes imposed on or payable by the Debtors or the Liquidating Trust or in respect of the Liquidating Trust Assets), or (iv) as are necessary to satisfy other liabilities incurred or anticipated by the Liquidating Trust in accordance with the Plan or the Liquidating Trust Agreement; provided, however, that the Liquidating Trustee shall not be required to make a distribution pursuant to this Section 9.4(e) if the aggregate, net amount of unrestricted Cash available for distribution (taking into account the above listed exclusions) is such as would make the distribution impracticable as reasonably determined by the Liquidating Trustee; and provided further that nothing in this Plan shall compel the Liquidating Trustee to treat any tentative Tax Refund(s) obtained pursuant to Tax Code Section 6411 as unrestricted Cash until completion of the associated audit by the relevant authorities.

(f)     For federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under Treasury Regulation section 301.7701-4 and that such trust be owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution of an undivided interest in the Liquidating Trust Assets and then contributed such interests to the Liquidating Trust. The Liquidating Trust Agreement shall (i) state that the primary purpose of the Liquidating Trust is to liquidate the Liquidating Trust Assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, its liquidating purpose and (ii) contain a fixed or determinable termination date that is not more than five (5) years from the date of creation of the Liquidating Trust, which termination date may be extended for one or more finite terms subject to the approval of the Bankruptcy Court upon a finding that the extension is necessary to its liquidating purpose. Each such extension must be approved by the Bankruptcy Court within two (2) months before the beginning of the extended term.

(g)     The Liquidating Trustee shall be responsible for filing all federal, state and local tax returns for the Liquidating Trust. The Liquidating Trustee shall file all federal tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4. The Liquidating Trustee also will annually send to each holder of a Liquidating Trust Interest a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holder's underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns. The Liquidating Trustee shall also file (or cause to be filed) any other statement, return or disclosure relating to the Liquidating Trust that is required by any governmental unit.

(h)     Tax Reporting for Liquidating Trust:

(i)     On or before the Effective Date, the Debtors shall provide the Liquidating Trustee with a good-faith valuation of the Tax Refunds as of the Effective

Date. As soon as practical after the Effective Date, the Liquidating Trustee shall determine the fair market value, as of the Effective Date, of all other Liquidating Trust Assets, and shall make all such values (including the Tax Refunds value) available from time to time, to the extent relevant, and such values shall be used consistently by all parties to the Liquidating Trust (including, without limitation, the Debtors, the Liquidating Trustee, and Liquidating Trust Beneficiaries) for all United States federal income tax purposes.

(ii)     Allocations of Liquidating Trust taxable income among the Liquidating Trust beneficiaries shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value) to the holders of the Liquidating Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust. Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets. The tax book value of the Liquidating Trust Assets for purpose of this paragraph shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(iii)    Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee shall (A) timely elect to treat any Liquidating Trust Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, and (B) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including the Liquidating Trustee, the Debtors, and the Liquidating Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(iv)    The Liquidating Trustee shall be responsible for payment, out of the Liquidating Trust Assets, of any Taxes imposed on the trust or its assets, including the Liquidating Trust Claims Reserve. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Liquidating Trust Claims Reserve is insufficient to pay the portion of any such Taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such Taxes shall

be (A) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (B) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the Liquidating Trustee as a result of the resolution of such Disputed Claims.

(i)     Payments and Distributions on Disputed Claims:

    (i)     Disputed Claims Holdback.  From and after the Effective Date, and until such time as each Disputed Claim has been compromised and settled, estimated by the Bankruptcy Court in an amount constituting the allowed amount, or allowed or disallowed by Final Order of the Bankruptcy Court, the Liquidating Trustee shall retain, for the benefit of each holder of a Disputed Claim, interests in the Liquidating Trust and any dividends, gains or income attributable thereto, in an amount equal to the Pro Rata Share of distributions that would have been made to the holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the liquidated amount set forth in the filed Proof of Claim relating to such Disputed Claim, (ii) the amount in which the Disputed Claim shall be estimated by the Bankruptcy Court pursuant to Section 502 of the Bankruptcy Code constitutes and represents the maximum amount in which such Claim may ultimately become an Allowed Claim, or (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and the Liquidating Trustee.  Any interest in the Liquidating Trust Interests retained and held for the benefit of a holder of a Disputed Claim shall be treated as a payment and reduction on account of such Disputed Claim for purposes of computing any additional amounts to be paid in Cash or distributed in interests in the Liquidating Trust in the event the Disputed Claim ultimately becomes an Allowed Claim.  Such dividends, gains or income paid on account of the interests in the Liquidating Trust (if any) retained for the benefit of holders of Disputed Claims shall be retained by the Liquidating Trust for the benefit of such holders pending determination of their entitlement thereto under the terms of the Plan.

    (ii)     Allowance of Disputed Claims.  At such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the Liquidating Trustee shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the Plan, together with any earnings that has accrued on the amount of interests in the Liquidating Trust Interests so retained (net of any expenses, including any taxes, relating thereto), but only to the extent that such earnings are attributable to the amount of the Allowed Claim.  Such distribution, if any, shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim becomes a Final Order, but in no event later than the next Subsequent Distribution date.  The balance of any interests in the Liquidating Trust previously retained but not distributed to a Disputed Claim holder shall be included in future calculations of Cash,

and interests in the Liquidating Trust, respectively, to holders of Allowed Claims.

(iii)    Tax Treatment of Retained Assets. The Liquidating Trustee shall treat any Assets retained pursuant to this Section 9.4 as part of the Liquidating Trust Claims Reserve.

(j)    The Liquidating Trustee shall have full and exclusive authority and responsibility with respect to all Tax Refunds to the same extent as if the Liquidating Trustee were the same entity, as applicable, the Consolidated Debtors, Consolidated Holdco, debtors, or debtors-in-possession, including the filing of tax returns (including amended tax returns), or requests for refunds for one or more of the Debtors. Without limiting the foregoing, each of the Debtors shall execute, on or prior to the Effective Date, a power of attorney authorizing the Liquidating Trustee to correspond with any tax authority on behalf of such Debtor and to sign, collect, negotiate, settle, and administer the Tax Refunds, tax payments and tax returns.    The Consolidated Debtors (and the Liquidating Trustee, as assignee) shall be entitled to the Tax Refunds, other than the entitlement to a portion of the Tax Refunds from the Amended 2008 Tax Returns designated in this Plan for the Trust Preferred Holdco Distributions. For the avoidance of doubt, Consolidated Holdco hereby waives and relinquishes any right or interest to the Tax Refunds and the Tax Refunds shall be and is hereby deemed assets and property of the Consolidated Debtors, other than the entitlement of that portion of Tax Refunds from the Amended 2008 Tax Returns designated in this Plan for the Trust Preferred Holdco Distributions.

9.5.    Limitation of Liability for Liquidating Trustee. Upon the Effective Date and execution of the Liquidating Trust Agreement, the Liquidating Trustee as trustee of the Liquidating Trust, and not personally, shall be vested in all right, title and interest in all Liquidating Trust Assets, and all rights to enforce orders of the Bankruptcy Court entered in this Bankruptcy Proceeding. The Liquidating Trustee shall liquidate the Liquidating Trust Assets and distribute the proceeds thereof in accordance with this Plan and the Liquidating Trust Agreement.

9.6.    Transferability. The Debtors shall cause the interests in the Liquidating Trust to be non-transferrable and any such transfer shall be disregarded by the Liquidating Trustee, except with respect to a transfer by will or under laws of descent and distribution; provided, however, such transfer will not be effective until and unless the Liquidating Trustee receives written notice of such transfer under the law of descent and distribution.

9.7.    The Liquidating Trust Advisory Board.

(a)    The Liquidating Trust Advisory Boards shall be comprised of up to three (3) members selected by the Committee, and shall be reasonably acceptable to the Consolidated Debtors and the REIT; provided, however, that none of the Lone Star Releasees, **the Plan Releasees,** the Trust Preferred Holders, or the Trust Preferred Indenture Trustee, or their Affiliates, officers, directors or employees shall serve on the Liquidating Trust Advisory Board. Written notice of the identities of such members shall be filed with the Bankruptcy Court by the Plan Supplement Filing Date. The Liquidating Trust Advisory Board shall adopt such by-laws as it may deem appropriate. In the event written notice is not filed prior to the Plan Supplement

Filing Date, there will be no Liquidating Trust Advisory Board, and compliance with the reporting, consulting and consent requirements under the Plan shall not be required and such terms shall be removed or deemed removed from the Trust Agreement and Plan. The Liquidating Trustee shall consult regularly with the Liquidating Trust Advisory Board when carrying out the purpose and intent of the Liquidating Trust. Members of the Liquidating Trust Advisory Board shall be entitled to reimbursement of the reasonable and necessary expenses incurred by them in carrying out the purpose of the Liquidating Trust Advisory Board. Reimbursement of the reasonable and necessary expenses of the members of the Liquidating Trust Advisory Board shall be payable by the Liquidating Trust.

(b)     The Liquidating Trust Advisory Board shall advise and approve the material actions of the Liquidating Trustee and have the right and duties as more particularly set forth in the Liquidating Trust Agreements, including, but not limited to, (a) authorize the Liquidating Trustee to commence, continue to prosecute or abandon any Causes of Action; (b) approve the settlement or compromise of any Cause of Action if the amount sought to be recovered in the complaint or other pleadings or documents initiating, evidencing, or stating such Cause of Action exceeds $1,000,000; (c) approve the sale, assignment, or other conveyance or abandonment of any Liquidating Trust Asset, for an amount exceeding $1,000,000, or that has a value in excess of $1,000,000; (d) approve the allowance of any Disputed Claim, if the asserted amount of such Claim exceeds $250,000; (e) consult upon and approve all matters concerning the Tax Refunds, (f) review, contest, or challenge to fees and expenses of the Liquidating Trustee and its professionals, and (g) approve any increase in the budget for Liquidating Trust Expenses.

(c)     In the case of an inability or unwillingness of any member of the Liquidating Trust Advisory Board to serve, such member shall be replaced by designation of the remaining members of the Liquidating Trust Advisory Board. If the Liquidating Trust Advisory Board has only one member and any position on the Liquidating Trust Advisory Board remains vacant for more than thirty (30) days, such vacancy shall be filled within fifteen (15) days thereafter by the designation of the Liquidating Trustee without the requirement of a vote by the other members of the Liquidating Trust Advisory Board.

(d)     Upon the certification by the Liquidating Trustee that all Liquidating Trust Assets have been distributed, abandoned or otherwise disposed of, the members of the Liquidating Trust Advisory Board shall resign their positions, whereupon they shall be discharged from further duties and responsibilities.

(e)     The Liquidating Trust Advisory Board, in its discretion, may remove the Liquidating Trustee by a majority vote. In the event the requisite approval is not obtained, the Liquidating Trustee may be removed by the Bankruptcy Court for cause shown. In the event of the resignation or removal of the Liquidating Trustee, the Liquidating Trust Advisory Board shall, by majority vote, designate a person to serve as successor Liquidating Trustee. In the event the Liquidating Trust Advisory Board does not designate a person to serve as successor Liquidating Trustee, the Bankruptcy Court shall make such selection.

(f)     Notwithstanding anything to the contrary in this Plan, neither the Liquidating Trust Advisory Board nor any of its members, designees, or any duly designated agent or representative of any such party shall be liable for the act, default or misconduct of any other

member of the Liquidating Trust Advisory Board, nor shall any member be liable for anything other than such member's own gross negligence or willful misconduct. The Liquidating Trust Advisory Board may, in connection with the performance of its duties, and in its sole and absolute discretion, consult with its counsel, accountants or other professionals, and shall not be liable for anything done or omitted or suffered to be done in accordance with such advice or opinions. If the Liquidating Trust Advisory Board determines not to consult with its counsel, accountants or other professionals, that fact alone shall not be deemed to impose any liability on the Liquidating Trust Advisory Board, or its members and/or designees.

(g) To the extent the Liquidating Trust Advisory Board adopts by-laws, no provisions of such by-laws shall supersede any express provision of the Plan.

9.8. <u>Final Administration of Liquidating Trust</u>. Upon the earlier of (i) payment in full of the Holders of Class 7 C Claims, or (ii) full administration of the Assets vested in the Liquidating Trust and the satisfaction as far as possible of all remaining liabilities of the Liquidating Trust, in accordance with the Plan, the Liquidating Trustee, shall: (i) terminate the Liquidating Trust, notwithstanding any applicable law, solely by filing written notice of termination with the Bankruptcy Court and providing such notice to the Beneficiaries and the United States Trustee; (ii) as soon as practicable after termination of the Liquidating Trust, provide to the United States Trustee, and file with the Bankruptcy Court, a final account and report of Liquidating Trust administration; and (iii) thereupon distribute the Liquidating Trust Residual Assets and be forever discharged of and released from all power, duties, and responsibilities arising under the Liquidating Trust Agreement and the Plan or relating to the Debtors or their Estates. Every effort shall be made to effectuate such termination no later than the time reasonably necessary to accomplish the Liquidating Trust's purpose of liquidating the Liquidating Trust Assets and distributing the proceeds thereof to the Beneficiaries in accordance with the Liquidating Trust Agreement and the Plan, and in no event shall the Liquidating Trust continue for more than five (5) years after the Effective Date without further order of the Bankruptcy Court.

## 10.    MEANS OF IMPLEMENTING THE PLAN

10.1.  <u>Consolidated Holdco Plan Administrator</u>.

(a) On or before the Plan Supplement Filing Date, the Plan Administrator shall be selected by the REIT and the Committee; <u>provided</u>, <u>however</u>, that none of the Lone Star Entities, Trust Preferred Holders, or Trust Preferred Indenture Trustee, or their Affiliates, officers, directors or employees shall serve as Plan Administrator. Prior to the Confirmation Date, the Person(s) designated as Plan Administrator shall file an affidavit demonstrating that such Person is disinterested. If approved by the Bankruptcy Court in the Confirmation Order, the Person so designated shall become the Plan Administrator and be deemed sole director and officer of the Consolidated Holdco entities on the Effective Date, and shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Plan Administrator Retention Agreement.

(b) The Plan Administrator shall have full authority to take any steps necessary to administer and distribute the Consolidated Holdco Assets, including, without limitation, the duty and obligation to liquidate Consolidated Holdco Assets, and to pursue and settle any other Estate

claims and Causes of Action constituting Consolidated Holdco Assets and as provided under the Plan Administration Agreement.

(c)     Without further action of the directors or shareholders of Consolidated Holdco, on the Effective Date, the Plan Administration Agreement, substantially in the form included in the Plan Supplement, shall become effective.

(d)     Consolidated Holdco Plan Administration Expenses shall be the responsibility of and paid by Consolidated Holdco from  Consolidated Holdco Assets.

(e)     The Plan Administrator may retain professionals, in its sole discretion, and at the sole expense of Consolidated Holdco, to aid in the performance of its responsibilities pursuant to the terms of this Plan including, without limitation, the liquidation and distribution of Consolidated Holdco Assets.

(f)     Except as provided in § 9.4(h) of the Plan, the Plan Administrator shall be responsible for filing all federal, state and local tax returns for Consolidated Holdco.

(g)     Upon full administration of the Consolidated Holdco Assets, and the satisfaction as far as possible of all remaining liabilities of Consolidated Holdco, in accordance with the Plan, the Plan Administrator, shall: (i) dissolve and terminate Consolidated Holdco, notwithstanding any applicable law, solely by filing written notice of termination with the Bankruptcy Court and providing such notice to the Holders of Allowed Claims against Consolidated Holdco and the United States Trustee; (ii) as soon as practicable after termination and dissolution of Consolidated Holdco, provide to the United States Trustee, and file with the Bankruptcy Court, a final account and report of the administration of the Consolidated Holdco Assets; and (iii) thereupon distribute the Consolidated Holdco Residual Assets and be forever discharged of and released from all power, duties and responsibilities arising under the Plan or relating to the Debtors or their Estates.  Every effort shall be made to effectuate such termination no later than the time reasonably necessary to accomplish the purpose of liquidating the Consolidated Holdco Assets and distributing the proceeds thereof to the creditors of Consolidated Holdco in accordance the Plan, and in no event shall Consolidated Holdco continue for more than five (5) years after the Effective Date without further order of the Bankruptcy Court.

10.2.    Substantive Consolidation of Consolidated Debtors Estates.  Upon the Effective Date, the Estates of the Consolidated Debtors shall be deemed substantively consolidated for purposes of administration, as well as distribution to Creditors and Interest holders under the Plan.

10.3.    Substantive Consolidation of Consolidated Holdco Estates.  Upon the Effective Date, the Estates of Consolidated Holdco shall be deemed substantively consolidated for purposes of administration, as well as distribution to Creditors and Interests Holders under the Plan.

10.4.    Lone Star Creditor Release Settlement Payment.  Prior to or on the Effective Date, in the event that the Plan is confirmed, the Lone Star Entities shall cause the Lone Star Creditor Release Settlement Payment to be delivered to the Consolidated Debtors  or at the

direction of the Consolidated Debtors to the Disbursing Agent. The Consolidated Debtors and/or the Disbursing Agent shall use the Lone Star Creditor Release Settlement Payment to provide Holders of Allowed Class 3 C Claims with their Pro Rata Share of the Lone Star Creditor Release Settlement Payment, and then shall transfer the remainder of the Lone Star Creditor Release Settlement Payment to the Liquidating Trustee, who shall hold the Lone Star Creditor Release Settlement payment in trust in a segregated account for the benefit of Holders of Allowed Class 3 C Claims. If necessary, the Lone Star Creditor Release Settlement Payment shall be used by the Consolidated Debtors on the Effective Date or by the Liquidating Trustee or the Disbursing Agent subsequent to the Effective Date to pay Allowed Administrative Claims against the Consolidated Debtors, provided that, prior to making any Subsequent Distributions to any Unsecured Claims, the Liquidating Trustee shall fully repay any amounts used to pay Allowed Administrative Claims to the Lone Star Creditor Release Settlement Payment with Liquidating Trust Assets as funds become available. The Liquidating Trustee or Disbursing Agent shall hold the remaining Lone Star Creditor Release Settlement Payment in a segregated account in trust for the benefit of the remaining Holders of Class 3 C Claims. The Liquidating Trustee or Disbursing Agent shall use the remaining Lone Star Creditor Release Settlement Payment to fund Subsequent Distributions, in the same manner as set forth in this Plan, to Holders of Allowed Class 3 C Claims, with Holders of Allowed Class 3 C Claims continuing to receive their Pro Rata Share of the remaining Lone Star Creditor Release Settlement Payment. When the remaining Lone Star Creditor Release Settlement Payment is equal to or less than $200,000, it shall be transferred to the Liquidating Trust and deemed a Liquidating Trust Asset.

10.5.   _Lone Star Consolidated Debtors Settlement Payment_.   On or before the Effective Date, one or more of the Lone Star Entities, other than LSF MRA, LLC, shall pay the Lone Star Consolidated Debtors Settlement Payment to the Consolidated Debtors.

10.6.   _Consolidated Holdco Distributions._   Upon the Effective Date, the Cash of Consolidated Holdco (excluding any Cash belonging to the Consolidated Debtors, including, but not limited to the Tax Refunds and the Lone Star Consolidated Debtors Settlement Payment), including the Lone Star Trust Preferred Settlement Payment, shall be used to make (i) payment of or reserve for the Consolidated Holdco Professional Fee Claim Payment in an amount not to exceed Two Million Dollars ($2,000,000), (ii) an appropriate reserve for Consolidated Holdco Plan Administration Expenses not to exceed One Million Dollars ($1,000,000) (unless after the Effective Date some other amount is agreed upon by the REIT, the Lone Star Entities, and the Plan Administrator), (iii) distributions to Holders of Class 7 H Consolidated Holdco Convenience Claims (including the Viera Claims against Holdco) in an amount not to exceed One Million Five Hundred Thousand Dollars ($1,500,000), and (iv) reserves, in an amount, not to exceed One Million Dollars ($1,000,000), for other Claims against Consolidated Holdco (if any) as provided under the Plan. The balance of the Cash of Consolidated Holdco, including the Lone Star Trust Preferred Settlement Payment, shall be distributed Pro Rata (after adjusting for the Lone Star Trust Preferred Settlement Payment to the Trust Preferred Indenture Trustee as if it were part of such distribution) on account of (a) the Allowed Class 8 H Claim of the Trust Preferred Indenture Trustee (not to exceed a total distribution upon such Claim, including the Lone Star Trust Preferred Settlement Payment, of $40 million), and (b) the Allowed Class 6 H Claim of the REIT, provided that REIT First Distribution shall not exceed Nine Million Dollars ($9,000,000) unless the Allowed Class 8 H Claim of the Trust Preferred Indenture Trustee has

been Forty Million Dollars ($40,000,000) (including the Lone Star Trust Preferred Settlement Payment).

10.7. <u>Trust Preferred Holdco Distributions Shortfall</u>. To the extent that the aggregate amount of the Trust Preferred Holdco Distributions plus the Lone Star Trust Preferred Settlement Payment is less than $40 million, such shortfall shall be paid to the Trust Preferred Indenture Trustee on the Effective Date from the following sources in the following priority (x) first, from any amount by which the REIT First Distribution would otherwise exceed Nine Million Dollars ($9,000,000), (y) next, to the extent of any remaining shortfall, up to a maximum amount of Eight Million Dollars ($8,000,000), 50% from the Lone Star Advance (not to exceed Four Million Dollars ($4,000,000)), and 50% from the REIT First Distribution (not to exceed Four Million Dollars ($4,000,000), and (z) thereafter, to the extent of any remaining shortfall, from the REIT First Distribution.

10.8. <u>Consolidated Holdco Priority Administrative Claims</u>. From and after the Effective Date, and after the payment of or funding of (i) the Consolidated Holdco Reserves, (ii) the Lone Star Trust Preferred Settlement Payment and the first $10,000,000 of the Trust Preferred Holdco Distributions to the Trust Preferred Indenture Trustee, (iii) the REIT First Distribution, and (iv) other payments due under the Plan, any funds collected by the Plan Administrator from any source constituting Consolidated Holdco Assets shall be distributed on a monthly basis in the following order and priority: (a) first, to the REIT on account of any unpaid portion of the REIT First Distribution, if any, until paid in full; (b) next, 50% to the Lone Star Entities that funded the Lone Star Advance to repay the Lone Star Advance until it is repaid in full, and 50% to Holders of Allowed Class 3 H, 4 H, and 6 H Claims, which shall be divided on a Pro Rata basis amongst such Holders; and (c) once the Lone Star Advance has been repaid in full, to Holders of Allowed Class 3 H, 4 H, and 6 H Claims, which shall be divided on a Pro Rata basis amongst such Holders until such Claims have been paid in full; and (d) the balance, if any, shall be used in accordance with the terms of this Plan. Subject to the distribution priorities set forth above, including the payment of or reserve for the Consolidated Holdco Reserves, the claims for (a) repayment of the Lone Star Advance, and (b) payment of the unpaid deficiency from the REIT First Distribution shall be entitled to an Administrative Claim against the Consolidated Holdco Distributable Cash under § 503 of the Bankruptcy Code with priority over any and all administrative expenses of the kind specified in §§ 503(b) or 507(b) of the Bankruptcy Code.

10.9. <u>Effective Date Distribution</u>. Upon the Effective Date, or as soon thereafter as practicable, the Debtors shall make the Effective Date Distribution, subject to the terms of the Plan.

10.10. <u>Transfer Assets to Consolidated Holdco</u>. Upon the Effective Date, (a) the Canadian Equity shall be transferred back to Consolidated Holdco, and (b) all Vendor Cash will be transferred to Consolidated Holdco.

10.11. <u>Transfer of Assets to Liquidating Trust</u>. Upon the Effective Date and thereafter, (a) any Tax Refunds received by the Debtors, Consolidated Holdco, or the Plan Administrator, or any other Person, and any rights to receive any Tax Refunds, whether contingent, disputed, or unliquidated, and any proceeds of any Tax Refunds, shall be vested in the Liquidating Trust and

shall be paid or transferred to the Liquidating Trust, except for the first payments from the Tax Refunds, not to exceed Two Million Dollars ($2,000,000), which are designated in this Plan for the Trust Preferred Holdco Distributions, (b) the Trust Preferred Common Securities shall be transferred by Consolidated Holdco to the Liquidating Trust; and (c) all rights and interests in the Deferred Compensation Settlement shall be transferred to the Liquidating Trust.

10.12. <u>Abandonment of REIT Equity</u>. On the Effective Date, Consolidated Holdco shall, pursuant to § 554 of the Bankruptcy Code, abandon all equity interests in the REIT, provided however, that in the event **(i)** the REIT Committee shall advise the Debtors **and the Committee** in writing no later than ~~five~~**seven** (~~5~~**7**) days before the Confirmation Hearing of ~~their request to transfer title to the common stock of the REIT Preferred Security Holders and~~**its request that Consolidated Holdco transfer or assign, without liability, cost or recourse to the Debtors or their Estates or Consolidated Holdco, title and ownership to Consolidated Holdco's interest in the common equity of the REIT, and (ii)** the Debtors and the Committee agree to such request, Consolidated Holdco shall abandon ~~and transfer title to the common stock~~**, pursuant to § 554 of the Bankruptcy Code, and upon such abandonment Consolidated Holdco shall transfer or assign, for no consideration and without representation, warranty, or recourse, title to the common equity** of the REIT Pro Rata to the REIT Preferred Security Holders**; provided that such transfer shall have no adverse tax consequences to the Debtors or Consolidated Holdco; provided, further, that in the event such assignment or transfer is approved, that prior to or upon such assignment or transfer, the common equity of the REIT is treated as restricted securities under applicable securities law**.

10.13. <u>Payment of Fees to United States Trustee</u>. On and after the Effective Date, all fees payable to the United States Trustee shall be paid as and when due by the Liquidating Trustee or the Plan Administrator, as applicable, and shall be considered a reasonable expense of the Liquidating Trust or Consolidated Holdco, as applicable.

10.14. <u>Continued Cooperation</u>. On or after the Effective Date, the Debtors, the Liquidating Trust, the Plan Administrator, the Liquidating Trustee, the Disbursing Agent, the Lone Star Releasees,**_the Plan Releasees,_** the REIT, the REIT Committee, the Trust Preferred Indenture Trustee, and the Trust Preferred Holders shall provide each other with such reasonable cooperation to effectuate the provisions of the Plan as may be reasonably requested, including, but not limited to, executing such documents as may be reasonably requested to carry out the terms of the Plan.

10.15. <u>Consolidated Debtors' Continued Existence</u>. From and after the Effective Date, the Consolidated Debtors shall remain in existence for the sole purpose of winding up the Debtors' businesses and transferring the Assets to the applicable Liquidating Trust and the Liquidating Trustee or its nominee shall be appointed officer and director of the Consolidated Debtors. Upon or before the completion of such liquidation, the Liquidating Trustee may file a certificate of dissolution as to each of the Consolidated Debtors. The Liquidating Trustee shall not be compelled to dissolve any Debtor if to do so would unduly burden the Liquidating Trust, notwithstanding any applicable law. On the Effective Date, the officers and the directors of the Debtors shall cease to serve and the Liquidating Trustee shall be deemed the sole director and officer of each Consolidated Debtor for all purposes. On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders or directors of one

or more of the Debtors or Consolidated Holdco or Consolidated Debtors, shall be authorized and approved in all respects, in each case without further action under applicable law, regulation, order or rule. Without limiting the foregoing, from and after the Effective Date, Consolidated Holdco or the Consolidated Debtors shall take any and all actions deemed necessary or appropriate to consummate the transactions under the Plan, and such Entities shall not require the affirmative vote of the Holders of Interests in order to take any corporate action.

10.16. <u>Consolidated Holdco's Continued Existence</u>. From and after the Effective Date, Consolidated Holdco shall remain in existence for the sole purpose of winding up the Debtors' businesses, liquidating Consolidated Holdco Assets, and making distributions in accordance with this Plan. Upon or before the completion of such liquidation, the Plan Administrator may file a certificate of dissolution as to each of the Consolidated Holdco entities. The Plan Administrator shall not be compelled to dissolve any Debtor if to do so would unduly burden Consolidated Holdco, notwithstanding any applicable law. On the Effective Date, the officers and the directors of the Consolidated Holdco shall cease to serve and the Plan Administrator shall be deemed the sole director and officer of each Consolidated Holdco entity for all purposes. On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders or directors of one or more of the Debtors or Consolidated Holdco or Consolidated Debtors, shall be authorized and approved in all respects, in each case without further action under applicable law, regulation, order or rule. Without limiting the foregoing, from and after the Effective Date, Consolidated Holdco or the Consolidated Debtors shall take any and all actions deemed necessary or appropriate to consummate the transactions under the Plan, and such Entities shall not require the affirmative vote of the Holders of Interests in order to take any corporate action.

10.17. <u>Debtors' Books and Records</u>. On the Effective Date, the Consolidated Debtors' books and records, in any form, including all electronic records, shall be transferred to the Liquidating Trust, and the Consolidated Holdco books and records shall be vested with the Plan Administrator. Books and records that cannot be allocated amongst the Debtors shall be vested with the Consolidated Debtors. The Liquidating Trustee or the Plan Administrator shall be free, in his or her discretion, to abandon, destroy, or otherwise dispose of those books and records in compliance with applicable non-bankruptcy law, <u>provided, however</u> that, in the sole discretion of the Plan Administrator or the Liquidating Trustee, as applicable, these books and records may be destroyed or disposed of beginning two (2) years after the Effective Date notwithstanding any applicable laws, rules, or regulations that would have required the Debtors to retain such books and records. While these books and records are retained, the Liquidating Trustee and the Plan Administrator shall take all reasonable steps necessary to comply with requests of the other to share the information contained therein with or provide copies of those books and records, at the expense of the requesting party.

10.18. <u>Accredited Preferred Securities Trust I Termination</u>. On the Effective Date, except to the extent provided elsewhere in this Plan, all of the agreements and other documents evidencing the claim or right of any Holder against the Debtors pursuant to or related to the Trust Preferred Common Securities, Trust Preferred Guarantee, Trust Preferred Indenture, Trust Preferred Note, Trust Preferred Note Claims, and/or Trust Preferred Securities shall be (i) automatically cancelled, discharged, terminated, and of no further force and effect, and (ii) deemed surrendered without any further act by the Debtors or the Trust Preferred Indenture

Trustee under any applicable agreement, law, regulation, order, or rule; provided, however, that the Trust Preferred Common Securities, Trust Preferred Guarantee, Trust Preferred Indenture, Trust Preferred Note, Trust Preferred Note Claims, and Trust Preferred Securities shall continue in effect solely for the purposes of (A) (i) permitting the Trust Preferred Indenture Trustee to make any distributions on account of Claims pursuant to this Plan and perform such other necessary administrative functions with respect thereto, (ii) permitting the Trust Preferred Indenture Trustee to receive any payments it is entitled to under the Trust Preferred Indenture and exercise any rights it is entitled to exercise under the Trust Preferred Indenture; and (B) permitting Kodiak CDO I Ltd., Kodiak CDO II Ltd., and the Trust Preferred Indenture Trustee to bring any other action, suit, or proceeding (other than against the Debtors or any other parties being released under the Plan and the Plan Support Agreement and Term Sheet) relating to, arising from, or in connection with the Trust Preferred Common Securities, Trust Preferred Guarantee, Trust Preferred Indenture, Trust Preferred Note, Trust Preferred Note Claims, and/or Trust Preferred Securities, and to participate in the prosecution, mediation, and/or settlement of such action, suit, or proceeding, or to appeal any order or decision in such action, suit, or proceeding, provided that such action is not a Consolidated Holdco Asset or Consolidated Debtors Asset.

10.19. Employee Agreements. On or before the Plan Supplement Filing Date, the Debtors will negotiate employment or consulting contracts with any current employees necessary to wind down the Debtors' Estates, with such contracts to be reasonably acceptable to the Committee. On the Effective Date, the Debtors' remaining employees will receive a payment equal to five (5) months' salary from the Consolidated Debtors, which payment shall be in satisfaction of any prior arrangements, agreements, or employment policies with the Debtors.

10.20. Closing of Debtors' Cases

(a) Consolidated Holdco Estates.

After the Consolidated Holdco Estates have been fully administered, the Plan Administrator shall file the final account and report with the Bankruptcy Court. At such time, if the Liquidating Trustee has already filed a final account and report with the Bankruptcy Court, the Plan Administrator shall move for the Bankruptcy Court to enter a Final Decree closing the Bankruptcy Proceeding pursuant to § 350 of the Bankruptcy Code and Bankruptcy Rule 3022.

(b) Consolidated Debtors Estates.

After the Liquidating Trust Assets have been fully administered, the Liquidating Trustee shall file the final account and report with the Bankruptcy Court. At such time, if the Plan Administrator has already filed a final account and report with the Bankruptcy Court, the Liquidating Trustee shall move for the Bankruptcy Court to enter a Final Decree closing the Bankruptcy Proceeding pursuant to § 350 of the Bankruptcy Code and Bankruptcy Rule 3022.

10.21. Distribution of Property Under this Plan.

The following procedures set forth in this Plan apply to distributions made pursuant to this Plan by Consolidated Holdco, the Consolidated Debtors, the Disbursing Agent, the Liquidating Trustee, and the Plan Administrator. As set forth in the Plan, the Debtors, the

Liquidating Trustee, or the Plan Administrator shall make all distributions under this Plan. To the extent required by applicable law, distributions that are Cash shall be in compliance with all tax withholding and reporting requirements imposed by any governmental unit, and all distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Debtors, the Disbursing Agent, the Liquidating Trustee, and the Plan Administrator may withhold the entire Cash distribution due to any holder of an Allowed Claim or Allowed Interest until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit.

    (a)    <u>Manner of Cash Payments Under this Plan.</u>

Cash payments to domestic persons holding Allowed Claims or Allowed Interests will be tendered in United States dollars and will be made by checks drawn on a United States domestic bank or by wire transfer from a United States domestic bank. Any domestic person holding a Claim or Interest that wishes to receive a Cash payment by wire transfer shall provide wire instructions to the Debtors, the Liquidating Trustee, the Disbursing Agent, or the Plan Administrator. In any such case, the Debtors, the Liquidating Trustee, the Disbursing Agent, or the Plan Administrator shall make the Cash payment(s) by wire transfer in accordance with the wire instructions, provided that the costs of such wire transfer shall be deducted from such entity's distribution. Payments made to foreign creditors holding Allowed Claims or Allowed Interests may be paid or caused to be paid, at the option of the Debtors, the Disbursing Agent, the Plan Administrator, or the Liquidating Trustee, as applicable, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

    (b)    <u>No *De Minimis* Distributions.</u>

Notwithstanding anything to the contrary in this Plan, no Cash payment of less than Fifty Dollars ($50) will be made to any Person. No consideration will be provided in lieu of the *de minimis* distributions that are not made under this provision, and the Debtors, the Liquidating Trustee after consultation with the Liquidating Trust Advisory Board, the Disbursing Agent, or the Plan Administrator shall be authorized to pay such amounts to the other holders of Allowed Claims or Allowed Interests.

    (c)    <u>Allowance of Claims and Interests.</u>

        (i)    Objections to Claims

Except as otherwise provided under the Plan, the Liquidating Trustee and the Plan Administrator shall file objections to Claims or Interests within one hundred eighty (180) days of the Effective Date. The Liquidating Trustee and the Plan Administrator may obtain an extension of this date by filing a motion in the Bankruptcy Court, based upon a showing of "cause." Once a Claim or Interest becomes an Allowed Claim or Interest, it will receive the treatment afforded by this Plan.

        (ii)    Disallowance of Claims.

All Claims held by persons against whom the Debtors (including, without limitation, their successors and assigns) have asserted an Avoidance Action shall be

deemed disallowed pursuant to § 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distribution under the Plan or vote to accept or reject this Plan, both consequences to be in effect until such time as such causes of action against that entity have been settled or resolved by a Final Order and all sums due to the related Debtor(s) by that entity, if any, are turned over to Debtor(s) or, after the Effective Date, the Liquidating Trustee or Plan Administrator.

        (iii)    Allowance of Claims and Interests.

Except as expressly provided in this Plan, no Claim or Interest shall be deemed Allowed by virtue of this Plan or entry of the Confirmation Order, unless and until such Claim or Interest is deemed Allowed under the Bankruptcy Code or the Bankruptcy Court enters a Final Order in the Case allowing such Claim or Interest.

    (d)    <u>Distributions to Holders as of the Distribution Record Date</u>.

At the close of business on the Distribution Record Date, the claims register shall be closed, and there shall be no further changes in the record holder of any Claim or Interest. The Debtors, the Liquidating Trustee, the Disbursing Agent, the Plan Administrator, or any other party responsible for making distributions under this Plan shall have no obligation to recognize any transfer of any Claim or Interest occurring after the Distribution Record Date except as otherwise provided under the Plan; and shall instead be authorized and entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the claims register and stock transfer books as of the close of business on the Distribution Record Date.

    (e)    <u>Deemed Distributions to Subordinated Creditors</u>.

Wherever this Plan effectuates contractual or Plan subordination rights by requiring distributions that would be made to subordinated creditors to be distributed to other creditors, including, but not limited to, the provisions in Article 4 of this Plan, those distributions shall be deemed to have been made to the subordinated creditors and then transferred by those subordinated creditors to the creditors receiving those distributions pursuant to this Plan.

    (f)    <u>Delivery of Distributions and Undeliverable/Unclaimed Distributions</u>.

        (i)    Delivery of Distributions in General.

The Debtors, the Plan Administrator, the Disbursing Agent, or the Liquidating Trustee shall make distributions to each holder of an Allowed Claim by mail as follows: (a) at the address set forth on the proof of claim filed by such holder of an Allowed Claim; (b) at the address set forth in any written notice of address change delivered to counsel to the Debtors, the Plan Administrator, or the Liquidating Trustee, as applicable, after the date of any related proof of claim; and (c) at the address reflected in the Schedules if no proof of claim is filed and the Debtors, the Plan Administrator, the Disbursing Agent, or the Liquidating Trustee has not received a written notice of a change of address; <u>provided</u>, <u>however</u>, that the distributions to the Trust Preferred Holders shall be made to the Trust Preferred Indenture Trustee.

The Debtors, the Plan Administrator, or the Liquidating Trustee may withhold the entire distribution due to any holder of an Allowed Claim or Allowed Interest until such time as the holder provides the Debtors, the Plan Administrator, or the Liquidating Trustee with the information necessary to make a distribution to such holder in accordance with this Plan and applicable law, and Holders of Allowed Claims or Allowed Interests who do not provide such information may be barred from participating in distributions under the Plan.

       (ii)      Undeliverable and Unclaimed Distributions.

If the distribution to the Holder of any Allowed Claim or Allowed Interest is returned as undeliverable, no further distribution shall be made to such Holder unless and until the Liquidating Trustee, the Disbursing Agent, or the Plan Administrator is notified in writing of such Holder's then current address. Insofar as a distribution is returned to the Liquidating Trustee as undeliverable, the Liquidating Trustee, the Disbursing Agent, or the Plan Administrator shall remit the undeliverable distribution back to the account established by the Liquidating Trustee or the Plan Administrator as soon as is practicable. Subject to the other provisions of this Plan, undeliverable distributions shall remain in the possession of the Liquidating Trustee, the Disbursing Agent, or the Plan Administrator pursuant to this Section until such time as a distribution becomes deliverable. All undeliverable Cash distributions will be held in unsegregated, interest-bearing bank accounts for the benefit of the entities entitled to the distributions. These entities will be entitled to any interest actually earned on account of the undeliverable distributions. The bank account will be maintained in the name of the Liquidating Trustee, the Disbursing Agent, or the Plan Administrator, but it will be accounted for separately.

Any holder of an Allowed Claim or Allowed Interest who does not assert a claim in writing for any undeliverable distribution within one (1) year after such distribution was first made shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any distributions under this Plan, or from asserting a Claim against or Interest in the Debtors, the Estate, or their respective property, and the Claim or Interest giving rise to the undeliverable distribution will be barred.

Any undeliverable distributions that are not claimed under this Section will be transferred to the account maintained by the Liquidating Trustee, the Disbursing Agent, or the Plan Administrator to be paid or caused to be paid to the other holders of Allowed Claims or Allowed Interests.

     (g)     Distributions of Consolidated Holdco Residual Assets and Liquidating Trust Residual Assets

The Plan Administrator shall hold the Consolidated Holdco Residual Assets in trust for the Holders of Claims against and Interests in Consolidated Holdco who are entitled to receive the same. The Plan Administrator shall hold no economic or beneficial interests in the Consolidated Holdco Residual Assets. The Liquidating Trustee shall hold the Liquidating Trust Residual Assets in trust for the Holders of Claims against and

Interests in the Liquidating Trust and Consolidated Debtors, as applicable, who are entitled to receive the same. The Liquidating Trustee shall hold no economic or beneficial interests in the Liquidating Trust Residual Assets. With regard to these Residual Assets, the Plan Administrator and Liquidating Trustee shall be empowered to (i) take all steps and execute all documents and instruments necessary to effectuate the Plan, (ii) make distributions contemplated by the Plan, (iii) comply with the Plan and obligations thereunder, and (iv) exercise such powers as may be vested by the Plan, order of the Bankruptcy Court, or deemed by the Plan Administrator or Liquidating Trustee to be necessary and proper to implement the provisions of the Plan.

(h)    <u>Fees and Expenses Incurred in Distributing Consolidated Holdco Residual Assets and Liquidating Trust Residual Assets</u>.

The reasonable fees and expenses incurred by the Plan Administrator, including, without limitation, reasonable fees and expenses of counsel, in disbursing the Consolidated Holdco Residual Assets shall be paid in Cash from such assets without further application to or approval from the Bankruptcy Court. The reasonable fees and expenses incurred by the Liquidating Trustee, including, without limitation, reasonable fees and expenses of counsel, in disbursing the Liquidating Trust Residual Assets shall be paid in Cash from such assets without further application to or approval from the Bankruptcy Court.

## 11.    <u>CONDITIONS PRECEDENT TO EFFECTIVE DATE OF PLAN</u>

11.1.  <u>Conditions Precedent to Effective Date of Plan</u>. The occurrence of the Effective Date and the substantial consummation of the Plan are subject to the satisfaction of the following conditions precedent:

(a)    The receipt by the Consolidated Debtors, the Disbursing Agent, or the Liquidating Trustee of (i) the Lone Star Creditor Release Settlement Payment, (ii) the Lone Star Consolidated Debtors Settlement Payment, and (iii) the Consolidated Holdco Professional Fee Claim Payment;

(b)    The receipt by Consolidated Holdco or the Plan Administrator of the Lone Star Advance;

(c)    The Confirmation Order shall be entered by the Bankruptcy Court;

(d)    The Confirmation Order shall be in form and substance reasonably acceptable to the Debtors, the Committee, the REIT, and the Lone Star Entities;

(e)    The Plan Support Agreement and Term Sheet shall not have terminated by its terms;

(f)    The Bankruptcy Court shall have determined that the compromises and settlements set forth in the Plan are appropriate, reasonable, and fair, and such compromises and settlements have been approved;

(g)     The Debtors and the parties to the Plan Support Agreement and Term Sheet shall have sufficient Cash and assets to permit compliance with the terms and conditions of the Plan, including but not limited to projected fees and expenses, and payment of the Trust Preferred Holdco Distributions plus the Lone Star Trust Preferred Settlement Payment in an amount equal to Forty Million Dollars ($40,000,000);

(h)     The Bankruptcy Court shall have approved and authorized the documents and agreements in the Plan Supplement;

(i)     The Liquidating Trust is created pursuant to the terms of the Plan once the Bankruptcy Court has appointed the Liquidating Trustee and approved the Liquidating Trust Agreement in form and substance acceptable to the Committee;

(j)     The Bankruptcy Court has appointed the Plan Administrator and approved the Plan Administrator Retention Agreement in form and substance acceptable to the Committee and the REIT; and

(k)     All other actions and documents necessary to implement the Plan shall have been executed and effected.

11.2.   Waiver of Conditions Precedent.   To the extent practicable and legally permissible, each of the conditions, other than 11.1(a), (b), (c), (d), (e), and (f) may be waived, in whole or in part, by the Debtors, subject to approval of the Committee, the Lone Star Entities, the REIT, and the Trust Preferred Indenture Trustee.

11.3.   Nonoccurrence of Conditions to Consummation.   If each of the conditions to the occurrence of the Effective Date has not been satisfied or duly and properly waived on or before the first Business Day that is one hundred, eighty (180) days after the Confirmation Date, or such later date as agreed to by the Debtors and the Committee, the Confirmation Order shall be deemed vacated and the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute a waiver or release of any Claims.

## 12.   MISCELLANEOUS PROVISIONS

12.1.   No Discharge of Debtors.   Pursuant to § 1141(d)(3) of the Bankruptcy Code, confirmation of this Plan will not discharge the Debtors.  Other than as set forth in Article 12.3 below, no non-Debtors shall receive a discharge under the Plan or the Confirmation Order.

**12.2.   Post-Confirmation Injunction.   From and after the Confirmation Date, and as provided for by the Confirmation Order, there shall be in place with regard to the Debtors, the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Assets, the Consolidated Debtors, the Consolidated Debtors Assets, the Plan Administrator, the Disbursing Agent, Consolidated Holdco, Consolidated Holdco Assets, and any Claims, the Injunction, which shall have the same extent and with the same effect as the stay imposed by § 362 of the Bankruptcy Code, as modified by orders entered by the Bankruptcy Court in this Bankruptcy Proceeding, except as provided in this Plan. The Injunction will remain in effect until the Bankruptcy Proceeding is closed pursuant to § 350 of the Bankruptcy Code except as otherwise expressly provided herein.  Except as provided elsewhere in this**

Plan, all Holders of Claims or Interests shall be precluded and enjoined by the Injunction from asserting any Claim against the Debtors, the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Assets, the Consolidated Debtors, the Consolidated Debtors Assets, the Plan Administrator, Consolidated Holdco, Consolidated Holdco Assets, and their respective agents, successors, and assigns, and also from asserting any other and further Claim based on any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, against the Debtors, the Liquidating Trust, the Liquidating Trustee, and the Plan Administrators, as representatives of the Estates, as well as their successors or their respective agents, successors, and assigns, whether or not the holder filed a proof of claim, and shall be enjoined from commencing or continuing, directly or indirectly, in any manner, any action or proceeding of any kind on any such Claim or Interest, or the enforcement, attachment, collection, or recovery by any manner or means, or creating, perfecting, or enforcing any encumbrance. Nothing herein shall prohibit an action against the Debtors and only the Debtors and their assets after dissolution of the Injunction.

12.3.  **Exculpation.**  Neither the Debtors nor their officers, directors, managers, employees, professionals, restructuring advisors, or the Committee and its professionals and advisors and members in their capacity as members of the Committee and their respective professionals and advisors, the Liquidating Trust, the Liquidating Trustee, the Disbursing Agent, nor the Plan Administrator will have or incur any liability to any holder of a Claim or Interest or any other entity for any act or omission in connection with, in preparation for, or arising out of, the Bankruptcy Proceeding or the cases, including but not limited to the formulation, preparation, dissemination, approval, confirmation, execution, administration, or consummation of the Plan Support Agreement and Term Sheet, the Plan or the Disclosure Statement, the solicitation of votes for or confirmation of the Plan, or implementation, consummation, or administration of the Plan or the property to be distributed under the Plan, or any compromises and settlements under the Plan, except for liability arising from conduct constituting willful misconduct or gross negligence pursuant to a Final Order; provided, however, that, except as provided in Section 3.1(b) of the Plan, such exculpation shall not be deemed or construed in any way to limit or impair a party in interest to object or challenge the allowance or payment or seek disgorgement of any professional's fees and expenses in connection with any interim or final fee application including resolution or adjudication of any pending objections or reservations by any such party in interest. The foregoing parties will be entitled to rely upon the advice of counsel in all respects regarding their duties and responsibilities under the Plan. Notwithstanding the foregoing, this Sec. 12.3 of the Plan shall not be construed to release any claims, rights or causes of action that any professional or restructuring advisor retained pre- or post-petition by the Debtors or their non-debtor Affiliates may have against its current or former employees.

12.4.  Permissible Continuation of Actions.  Notwithstanding the rest of this Plan, the Injunction imposed herein shall not apply to prevent the commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtors or any real property in which the Debtors may have an interest; provided, however, that any order entered or judgment, fine, sanction, penalty, declaration, determination, or monetary award assessed against the Debtors in such an action proceeding may not be enforced against the Debtors, the Liquidating

Trust, the Liquidating Trustee, the Liquidating Trust, the Plan Administrator, their Assets, and their respective agents, successors, and assigns, that such an award or determination shall not give rise to an Allowed Claim, and that any judgment, fine, sanction, penalty, declaration, determination, award, or other action which affects property of the Debtors, the Liquidating Trust, the Liquidating Trustee, or the Plan Administrator, creates personal liability for the agents, successors, and assigns of the Debtors, or creates personal liability for the Consolidated Debtors, the Liquidating Trust, the Liquidating Trustee, the Plan Administrator, and their respective agents, successors, and assigns, shall be void. Nothing herein shall prevent the Court from modifying the Injunction at the request of any party, upon notice and a hearing.

12.5. <u>Vesting of Assets</u>.

(a) <u>Consolidated Debtors</u>.

Except as otherwise provided in this Plan, the Liquidating Trustee shall be vested, as of the Effective Date, with all of the Liquidating Trust Assets Property free and clear of all claims, liens, encumbrances, charges, and other interests of holders of Claims against, or Interests in, the Debtors and their Property.

(b) <u>Consolidated Holdco</u>.

Except as otherwise provided in this Plan, Consolidated Holdco shall be vested, as of the Effective Date, with all of the Consolidated Holdco Assets free and clear of all claims, liens, encumbrances, charges, and other interests of Holders of Claims against, or Interests in, the Debtors and their Property.

12.6. <u>Unclaimed Property</u>. Notwithstanding any local, state, federal, or other laws or regulations regarding unclaimed property or escheatment of property, all funds or other property possessed by the Debtors on the Effective Date that is unclaimed, subject to escheatment, or potentially subject to escheatment shall be treated as Assets of such Debtors under this Plan, and shall accordingly be transferred to, vested with, and become the property of the Liquidating Trustee or Plan Administrator, as applicable, to be held and distributed pursuant to the terms of this Plan free and clear of all such laws or regulations, and free and clear of any other claims, liens, encumbrances, charges, and other interests in such property.

12.7. <u>Reasonable Efforts to Collect Tax Refunds</u>. The Debtors, the Committee, the Liquidating Trust, the Plan Administrator, the Lone Star Releasees,<u> **the Plan Releasees,**</u> the REIT, and the REIT Committee shall take such reasonable steps as may be requested by the Liquidating Trustee to cooperate with and assist in obtaining the Tax Refunds; provided, however, that none of such parties shall be obligated to incur any material liability or unreimbursed cost in connection with such assistance. The Consolidated Debtors and the Liquidating Trustee shall take reasonable steps to collect and maximize the amount of the Tax Refunds and, if necessary, direct all taxing authorities to pay the refunds to the Liquidating Trust. Should Consolidated Holdco, the Plan Administrator or any successor of Consolidated Holdco receive the Tax Refunds, such person shall immediately remit such Tax Refunds to the Liquidating Trust, except for the distribution of Tax Refunds from the Amended 2008 Tax Returns designated in this Plan for the Trust Preferred Holdco Distributions.

12.8.  <u>Privileges</u>.  All Privileges shall be transferred, assigned and delivered to the Liquidating Trust, or shall remain with Consolidated Holdco, as applicable without waiver or release, and shall vest with the Liquidating Trustee or Plan Administrator, as applicable.  The Liquidating Trustee and Plan Administrator shall hold and be the beneficiary of all Privileges and entitled to assert all Privileges.  No Privilege shall be waived by disclosures to the Liquidating Trustee or Plan Administrator of the Debtors' documents, information or communications subject to attorney-client privileges, work product protections or immunities or protections from disclosure jointly held by the Debtors and the Committee.

12.9.  <u>Preservation of All Rights of Action Not Expressly Settled or Released</u>.  Unless a claim against a Creditor or other Entity or Cause of Action is expressly waived, relinquished, released, compromised or settled in this Plan, or any Final Order, the Debtors expressly reserve such claim or Cause of Action for later enforcement by the Liquidating Trust or Consolidated Holdco (including, without limitation, claims and Causes of Action set forth in the Plan Supplement or not specifically identified or which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances which may change or be different from those which the Debtors no believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the confirmation or consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, expect where such claims or Causes of Action have been expressly released in this Plan or other Final Order.  In addition, the Liquidating Trust and Consolidated Holdco expressly reserve the right to pursue or adopt any claim, crossclaim or counterclaims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any person or entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, subject to the provisions of this Plan or any Final Order.

12.10.  <u>Waiver of Taxes</u>.  The making or delivery of an instrument of transfer under this Plan, including, but not limited to, the issuance, transfer or exchange of any security under this Plan, may not be taxed under any law imposing a stamp or similar tax.

12.11.  <u>Plan Governs</u>.  To the extent that the terms of this Plan are inconsistent with the terms of any agreement or instrument concerning any Claim, any Interest or any other matter, the terms of this Plan shall control.

12.12.  <u>Business Days</u>.  If any payment is due or any action is required to be taken under this Plan on a day that is not a Business Day, then such payment shall be due and any action shall be required to be taken on the next Business Day.

12.13.  <u>Dissolution of the Committee</u>.  On the fifth (5th) Business Date following the Effective Date, and provided the Liquidating Trust has become effective as provided under the Plan, the  Committee shall be dissolved and the Committee and its members shall be released and discharged from the rights and duties arising from or related to the Case, and the retention or employment of the Committee professionals shall terminate, except with respect to final applications for professionals' compensation, provided that the Committee shall continue for the sole purpose of reviewing and taking any appropriate action (including, without limitation, filing

objections thereto) in connection with Professional Fee Claims.  The professionals retained by the Committee and the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered or expenses incurred after the fifth (5th) Business Day following the Effective Date, except for (i) services rendered and expenses incurred in connection with any applications by such professionals or Committee members for allowance of compensation and reimbursement of expenses pending on the Effective Date or timely Filed after the Effective Date as provided in this Plan, as approved by the Court, (ii) services rendered and expenses incurred as requested by the Committee in connection with Professional Fee Claims and (iii) services rendered or expenses incurred with respect to implementation or enforcement of the Plan.  Notwithstanding the foregoing, the Committee may, at its own discretion, continue or resume its duties arising from or related to any pending litigation, contested matter, adversary proceeding or appeal to which it is a party and, in such a case, the Liquidating Trustee shall compensate the post-Effective Date fees and expenses of the Committee's professionals.

12.14.  Evidence.  In the event this Plan shall not take effect for whatever reason, nothing here shall constitute an admission or denial with respect to whether any of the Claims or Interests held by the Debtors, Creditors or holders of Interests are (a) entitled to allowance or disallowance, (b) secured or unsecured, (c) entitled to priority treatment under the Bankruptcy Code, (d) liable to subordination, or (e) liable for any claims or causes of action, including but not limited to claims under §§ 506, 510, 522, 542, 543, 544, 545, 547, 548, 549 and/or 550 of the Bankruptcy Code.

12.15.  Taxpayer Identification.  Each Claim Holder shall be required, before any distribution is made to such Holder, to return to the applicable Liquidating Trustee, Plan Administrator, or Debtors an executed IRS W-9 forms and such other appropriate taxpayer identification information necessary to allow the applicable Liquidating Trustee, Plan Administrator, or Debtors to report all required tax information under applicable law on behalf of the applicable Liquidating Trust or Debtors.  If a Claim Holder fails to return to the applicable Liquidating Trustee, Plan Administrator, or Debtors any requested taxpayer identification information within sixty (60) days after a request for this information, this failure shall be deemed a waiver of all claims against the applicable Debtors and Liquidating Trusts, including the right to any and all distributions, and the funds that would otherwise have been distributed to such Claim Holder shall revert to the applicable Liquidating Trusts or Debtors to be distributed to other Claim Holders who have provided the requested taxpayer identification information.  The Claim Holder shall be responsible for the payment of taxes in connection with any distributions received from the Debtors or the Liquidating Trusts.

12.16.  Forfeiture of Payment.  The Holder of a Claim or any other entity entitled to be paid under this Plan who has not claimed such Claim Holder's payment within ninety (90) days of the disbursement or attempted disbursement of such funds under this Plan shall be deemed to have forfeited such Claim Holder's right to receive such payment pursuant to the Plan.  A Claim Holder shall be deemed to have failed to claim a payment if (a) a check to such Claim Holder is returned as undeliverable without a proper forwarding address, (b) such Claim Holder's check has not been cashed within ninety (90) days of the date such instrument was mailed, or (c) a check to such Claim Holder could not be mailed or delivered because of the absence of a proper address to which to mail or deliver such check.  Any such unclaimed payment shall be deemed to

be forfeited and, such funds will be returned to the applicable Debtor or Liquidating Trust Account and distributed in accordance with the Plan.

12.17. <u>Subordination of Late Filed Claims</u>. The Bar Date for filing Claims against the Debtors has passed, other than Administrative Claims, Professional Fee Claims, REIT Preferred Security Holder Subordinated Guaranty Claims and Claims arising from the assumption or rejection of any executory contract or unexpired lease pursuant to this Plan. Late Filed Claims are automatically treated as Subordinated Claims, unless and until the Court enters an Final Order allowing or approving a stipulation allowing a Late Filed Claim, or the Plan allows such Claims.

12.18. <u>Exemption from Securities Laws</u>. To the maximum extent provided by § 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance under the Plan of the beneficial interests in the Liquidating Trusts will be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder.

12.19. <u>Deemed Consent</u>. By submitting a Ballot or receiving a Distribution under or any benefit pursuant to the Plan and not electing to withhold consent as provided under the Plan prior to the Confirmation Date, or by order of the Bankruptcy Court, each Holder of a Claim or Interest shall be deemed to have specifically consented to the terms of the Plan, including the releases and treatment contained herein.

12.20. <u>Governing Law</u>. Expect to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent any document entered into in connection with the Plan so provides, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of Delaware, without giving effect to the principles of conflicts of law.

12.21. <u>Notice</u>. Any notice required under this Plan shall be given to:

To the Debtors:

> Meade A. Monger
> AlixPartners
> 2101 Cedar Springs Rd., Suite 1100
> Dallas, TX 75201
> Telephone: 214-647-7500
> Facsimile: 214-647-7501
> Attn:   Meade A. Monger (mmonger@alixpartners.com)

With a copy to:

> Hunton & Williams LLP
> 1445 Ross Ave., Suit 3700
> Dallas, TX 75202
> Telephone: 214-979-3000
> Facsimile: 214-468-3599

Attn:   Gregory G. Hesse (ghesse@hunton.com)

-and-

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:                              (302)                    652-4100
Facsimile:  (302) 652-4400
Attn:   Kathleen P. Makowski (kmakowski@pszjlaw.com)

To the Committee:

Arent Fox LLP
1675 Broadway
New York, NY 10019
Telephone: 212-484-3900
Facsimile: 212-484-3990
Attn:   Andrew I. Silfen (silfen.andrew@arentfox.com)
           Jeffrey N. Rothleder (rothleder.jeffrey@arentfox.com)

-and-

Elliott                                                              Greenleaf
1105             Market            St.,            Suite            1700
Wilmington,                  DE                                      19801
Telephone:                              (302)                    384-9400
Facsimile:  (302) 384-9399
Attn:   Rafael X. Zahralddin-Aravena (rxza@elliottgreenleaf.com)

To the Lone Star Entities:

Vinson & Elkins LLP
Josiah M. Daniel, III
2001 Ross Ave., Suite 3700
Dallas, TX 75201
Telephone: 214-220-7718
Facsimile: 214-999-7718
Attn:   Josiah M. Daniel, III (jdaniel@velaw.com)

-and-

Young, Conaway, Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone: 302-571-6600
Facsimile: 302-576-3401

Attn: John T. Dorsey (jdorsey@ycst.com)

## 13. MODIFICATION OF THE PLAN

13.1.   <u>Pre-Confirmation Modification</u>.  At any time before the Confirmation Date, the Plan or Plan Supplement may be modified by the Debtors, subject to the consent of the Committee, the Lone Star Entities, the Trust Preferred Holders, the Trust Preferred Indenture Trustee, the REIT, and the REIT Committee, which consent, to the extent such modifications do not adversely affect the rights, treatment, benefits or obligations of the respective parties or constituencies, or the substance of the economic provisions set forth in the Plan, shall not be unreasonably withheld, upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of §§ 1122 & 1123 of the Bankruptcy Code.  In the event that there is a modification of the Plan, then the Plan as modified shall become the Plan.

13.2.   <u>Pre-Consummation Modifications</u>.  At any time after the Confirmation Date, but before substantial consummation of the Plan, the Plan or Plan Supplement may be modified by the Debtors, subject to the consent of the Committee, the Lone Star Entities, the Trust Preferred Holders, the Trust Preferred Indenture Trustee, the REIT, and the REIT Committee, which consent, to the extent such modifications do not adversely affect the rights, treatment, benefits or obligations of the respective parties or constituencies, or the substance of the economic provisions set forth in the Plan, shall not be unreasonably withheld, upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of §§ 1122 &1123 of the Bankruptcy Code.  The Plan, as modified under this section, becomes a Plan only if the Court, after notice and hearing, confirms such Plan, as modified, under § 1129 of the Bankruptcy Code.

13.3.   <u>Non-Material Modifications</u>.  At any time after the Confirmation Date, the applicable Debtors may, without the approval of the Court, remedy any defect or omission, or reconcile any such inconsistencies in the Plan or Plan Supplement or in the Confirmation Order, as such matters may be necessary to carry out the purposes, intent, and effect of this Plan, provided that they do not materially or adversely affect the interests of creditors or other entities, subject to the terms of the Plan Support Agreement and Term Sheet and upon consultation with the Committee.

## 14. RETENTION OF JURISDICTION

14.1   Notwithstanding confirmation of this Plan or the Effective Date having occurred, the Bankruptcy Court, unless it otherwise provides in the order confirming this Plan, shall retain jurisdiction to enforce, implement, or interpret the provisions, purposes and intent of this Plan, until the entry of the Final Decree, including, without limitation, jurisdiction with respect to the following matters:

(a)   To determine the classification, allowance or disallowance of all Claims or Interests, including, without limitation, Claims and objections relating to the assumption or rejection of executory contracts or unexpired leases pursuant to this Plan, and to hear and determine any and all objections to such Claims or Interests including, without limitation, Claims

and objections relating to the assumption of executory contracts or unexpired leases pursuant to this Plan;

(b)     To enable the Liquidating Trustee or Plan Administrator to commence, prosecute, settle, compromise, or abandon any and all claims or Causes of Action of the Debtors;

(c)     To adjudicate all Claims to a security or ownership interest in any Property of the Debtors or in any proceeds thereof;

(d)     To liquidate damages or estimate Claims in connection with any Disputed Claims or contingent or unliquidated Claims;

(e)     To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, consummation, or performance of this Plan including, but not limited to, any matters related to the Plan Support Agreement and Term Sheet, as well as all controversies, suits, and disputes that may be pending before the Bankruptcy Court on or before the Confirmation Date or may be brought thereafter;

(f)     To determine and Allow all expenses of administration of the Bankruptcy Proceeding, including, without limitation, all requests for Professional Fees for periods prior to the Effective Date;

(g)     To recover all Assets and Property of the Debtors, wherever located;

(h)     To interpret, construe or enforce this Plan, the Confirmation Order or any order previously entered by the Bankruptcy Court in this case;

(i)     To hear, determine and enforce any and all Causes of Action, to set aside liens or encumbrances, to recover any transfers, assets or damages to which the Estate may be entitled, to avoid or recover any preferences, fraudulent conveyances, or obligations, or other obligations or transfers voidable or subject to avoidance under applicable provisions of the Bankruptcy Code or other federal, state, or local law, or to subordinate or disallow, in whole or in part, any Claim, under applicable provisions of the Bankruptcy Code or other federal, state, or local law;

(j)     To consider and determine any proposed modification or amendment of the Plan;

(k)     To make any determination necessary or appropriate under § 505 of the Bankruptcy Code or other determination relating to taxes paid or payable by the Debtors, Plan Administrator, or Liquidating Trust, Tax Refunds due to the Debtors, Plan Administrator, or the Liquidating Trusts, and tax returns filed or to be filed by the Debtors, Plan Administrator, or the Liquidating Trusts, for all periods through the end of the fiscal year in which the Effective Date occurs;

(l)     To implement the provisions of this Plan and enter any orders in aid of its implementation or in furtherance of its purposes and intent;

(m)     To make such orders as the Bankruptcy Court deems necessary or appropriate to carry out the provisions, purposes, or intent of this Plan;

(n)     To adjudicate any dispute with respect to any obligations of the Debtors, the Liquidating Trust, and the Plan Administrator, including any fees requested by professionals employed by the Liquidating Trust or Plan Administrator; and

(o)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order.

14.2    If the Bankruptcy Court abstains from exercising, declines to exercise, or is otherwise without jurisdiction over any matter arising out of the Cases, the provisions of the Plan shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## 15.    REQUEST FOR CONFIRMATION

15.1    The Debtors request confirmation of the Plan under §§ 1129(a) or 1129(b) of the Bankruptcy Code, as appropriate.

Dated: ~~March~~,April 4, 2011

Wilmington, Delaware

Respectfully submitted,

**ACCREDITED HOME LENDERS HOLDING COMPANY AND VENDOR MANAGEMENT SERVICES, LLC**

By:

Meade A. Monger
Their: Chief Restructuring Officer

**ACCREDITED HOME LENDERS, INC., INZURA INSURANCE SERVICES, INC., and WINDSOR MANAGEMENT CO.**

By:

Meade A. Monger
Their: Chief Restructuring Officer

Document comparison done by Workshare DeltaView on Monday, April 04, 2011 3:54:18 PM

| Input: | |
|---|---|
| Document 1 | interwovenSite://EMF_US/HW_US/29688829/38 |
| Document 2 | interwovenSite://EMF_US/HW_US/29688829/39 |
| Rendering set | H&W |

| Legend: |
|---|
| **Insertion** |
| ~~Deletion~~ |
| ~~Moved from~~ |
| Moved to |
| Style change |
| Format change |
| ~~Moved deletion~~ |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 333 |
| Deletions | 357 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 690 |