(c) subject to the requirements of § 1124(2) of the Bankruptcy Code, the legal, equitable and contractual rights of the Holder of such Allowed Secured Claim shall be reinstated, at the sole option of the Plan Administrator. The Plan Administrator or Debtor and the Holder of a Class 1 H Allowed Secured Claim may agree to less favorable treatment of such Class 1 H Allowed Secured Claim.

**BECAUSE CLASS 1 H CLAIMS ARE NOT IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 1 H CLAIMS ARE NOT ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

Class 2 H - Priority Claims, other than Priority Tax Claims: Class 2 H Priority Claims are unimpaired. Subject to §§ 3.1 and 3.2 of the Plan, any Holder of a Class 2 H Allowed Priority Non-Tax Claim shall receive the full amount of the Holder's Class 2 H Allowed Priority Non-Tax Claim in one Cash payment as part of the Effective Date Distribution from Consolidated Holdco. A Class 2 H Priority Non-Tax Claim that is a Disputed Claim shall not receive any distribution unless and until such Claim becomes a Class 2 H Allowed Priority Non-Tax Claim. Upon the entry of a Final Order allowing the Class 2 H Allowed Priority Non-Tax Claim against Consolidated Holdco after the Effective Date, the Holder of that Claim shall receive the full amount of such Claim in one Cash payment from Consolidated Holdco. The Plan Administrator or Debtor and the Holder of a Class 2 H Allowed Priority Non-Tax Claim may agree to less favorable treatment of such Class 2 H Allowed Priority Non-Tax Claim.

**BECAUSE CLASS 2 H CLAIMS ARE NOT IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 2 H CLAIMS ARE NOT ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

Class 3 H - General Unsecured Claims against Consolidated Holdco Accepting the Creditor Release: The Class 3 H Claims are impaired. Class 3 H consists of Allowed Unsecured Claims against Consolidated Holdco whose Holders cast a timely Ballot affirmatively accepting and agreeing to the Creditor Release or provide written consent for to the Creditor Release to Consolidated Holdco. Subject to §§ 3.1 and 3.2 of the Plan, Holders of Class 3 H Allowed Claims shall receive distributions equal to their Pro Rata Share of any distributions of Consolidated Holdco Assets made by the Plan Administrator in accordance with the Plan, and continuing on each Subsequent Distribution Date. In calculating the distribution to the Holders of Class 3 H Claims, the Pro Rata Share shall include in the calculation the Allowed Claims and Disputed Claims included in Class 3 H, 4 H, 5 H, and 6 H. Until the Holders of the Class 3 H Allowed Claims are satisfied in full without any post-petition interest thereon, the Holder of Class 3 H Allowed Claims shall be entitled to receive their Pro Rata Share of distributions made by the Plan Administrator in accordance with the Plan.

In the event of entry of a Final Order determining a Disputed Claim to be an Allowed Claim, the Plan Administrator in his sole discretion may make an Interim Distribution to the Holder of such Allowed Claim from the reserve established for such Disputed Claim, with the balance of the reserve, if any, held for such Disputed Claim to be released from the reserve and made part of Consolidated Holdco Assets available for general distribution under the Plan. The

Holders of Class 3 H Allowed Claims shall thereafter receive their Pro Rata Share of Subsequent Distributions from Consolidated Holdco.

In the event Class 3 H votes in favor of the Plan, the payment of Class 5 H Claims will be subordinated and junior to the payment of Class 3 H Claims, any distributions that would have been made to Holders of Allowed Class 5 H Claims shall instead be made to Holders of Class 3 H Claims and Class 6 H Claims (if Class 6 H also votes to in favor of the Plan) on a Pro Rata Basis, and Holders of Allowed Class 5 H Claims shall not receive any distribution until Class 3 H Claims (and possibly Classes 6H and 9H claims) are paid in full under the Plan, and all subrogation rights of Class 5 H shall be deemed waived and released. In calculating, for a Holder of an Allowed Class 3 H Claim, its Pro Rata Share of the distribution to which Holders of Class 5 H Claim would be entitled, the Plan Administrator or Consolidated Holder, as applicable shall aggregate the total amount of the Class 3 H and Class 6 H Claims, whether Allowed or Disputed, on the Effective Date.

**BECAUSE CLASS 3 H CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 3 H CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

<u>Class 4 H - General Unsecured Claims against Consolidated Holdco, except for separately classified Claims</u>. The Class 4 H Claims are impaired. Class 4 H consists of Allowed Unsecured Claims against Consolidated Holdco that are not separately classified under the Plan. Subject to §§ 3.1 and 3.2 of the Plan, Holders of Class 4 H Allowed Claims shall receive distributions equal to their Pro Rata Share of any distributions of Consolidated Holdco Assets made by the Plan Administrator in accordance with the Plan, and continuing on each Subsequent Distribution Date. In calculating the distribution to the Holders of Class 4 H Claims, the Pro Rata Share shall include in the calculation the Allowed Claims and Disputed Claims included in Class 3 H, 4 H, 5 H, and 6 H. Until the Holders of the Class 4 H Allowed Claims are satisfied in full without any post-petition interest thereon, the Holder of Class 4 H Allowed Claims shall be entitled to receive their Pro Rata Share of distributions made by the Plan Administrator in accordance with the Plan.

In the event of entry of a Final Order determining a Disputed Claim to be an Allowed Claim, the Plan Administrator in his sole discretion may make an Interim Distribution to the Holder of such Allowed Claim from the reserve established for such Disputed Claim, with the balance of the reserve, if any, held for such Disputed Claim to be released from the reserve and made part of Consolidated Holdco Assets available for general distribution under the Plan. The Holders of Class 4 H Allowed Claims shall thereafter receive their Pro Rata Share of Subsequent Distributions from Consolidated Holdco.

For the avoidance of doubt, Holders of Allowed Class 4 H Claims opting out of the Creditor Release shall not be entitled to receive any distributions that would have been made to Holders of Allowed Class 5 H Claims.

**BECAUSE CLASS 4 H CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 4 H CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

<u>Class 5 H - Unsecured Claims Against Consolidated Holdco held by LSF-MRA, LLC</u>: The Class 5 H Claims <u>are</u> impaired. Class 5 H is the Allowed Claim of LSF-MRA, LLC in the amount of $96,764,904.97. Subject to the provisions of §§ 3.1, 3.2, 4.3, 4.5 and 4.6 of the Plan, Holders of Allowed Class 5 H Claims shall receive a Pro Rata Share of any distributions of Consolidated Holdco Assets made by the Plan Administrator in accordance with the Plan, and continuing on each Subsequent Distribution Date. In calculating the distribution to the Holders of Class 5 H Claims, the Pro Rata Share shall include in the calculation the Allowed Claims and Disputed Claims included in Class 3 H, 4 H, 5 H, and 6 H. Until the Holders of the Class 5 H Allowed Claims are satisfied in full without any post-petition interest thereon, the Holder of Class 5 H Allowed Claims shall be entitled to receive their Pro Rata Share of distributions made by the Plan Administrator in accordance with the Plan.

Notwithstanding the foregoing, in the event Class 3 H votes in favor of the Plan, the payment of Allowed Class 5 H Claims will be subordinated and junior to the payment of Class 3 H Claims, and Holders of Allowed Class 5 H Claims shall not receive any distribution until Holders of Allowed Class 3 H Claims are paid in full or paid as otherwise provided under the Plan, and such distributions shall be treated and distributed as provided under this Plan.

In the event Class 6 H votes in favor of the Plan and does not object to the Plan, the payment of Allowed Class 5 H Claims will be subordinated and junior to the payment of Class 6 H Claims and Holders of Allowed Class 5 H Claims shall not receive any distribution until Holders of Class 6 H Claims (and potentially Class 3 H and Class 9 H Claims) are paid in full under the Plan, and such distributions shall be treated and distributed as provided under this Plan and all subrogation rights of Class 5 H Claims shall be deemed waived and released. In calculating, for a Holder of an Allowed Class 3 H or Allowed Class 6 H Claim, its Pro Rata Share of the Distribution to which Holders of Class 5 H Claims would be entitled, the Plan Administrator or Consolidated Holdco, as applicable, shall aggregate the total amount of Class 3 H and Class 6 H Claims, whether Allowed or Disputed, on the Effective Date.

The Holders of Class 5 H Claims shall be deemed to have waived any rights of subrogation with respect to the subordination of their Class 5 H Claims.

**BECAUSE CLASS 5 H CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 5 H CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

<u>Class 6 H - Unsecured Claims Held by the REIT</u>: The Class 6 H Claim <u>is</u> impaired. The Class 6 H Claim of the REIT shall be fixed and Allowed as an Unsecured Claim against Consolidated Holdco in the amount of Twenty Million Dollars ($20,000,000) and, on account of such Claim, the Holder of the Allowed Class 6 H Claim shall receive a Pro Rata Share of any distributions of Consolidated Holdco Assets made by the Plan Administrator in accordance with the Plan, and continuing on each Subsequent Distribution Date. In calculating the distribution to

the Holder of Class 6 H Claims, the Pro Rata Share shall include in the calculation the Allowed Claims and Disputed Claims included in Class 3 H, 4 H, 5 H, and 6 H. Until the Holder of the Class 6 H Claim is satisfied in full, without any post-petition interest thereon, the Holder of the Class 6 Claim shall be entitled to receive its Pro Rata Share of distributions made by the Plan Administrator in accordance with the Plan. The Holder of Allowed Class 6 H Claims will waive its right to enforce any subordination provisions relating to Class 8 H Claims.

In the event Class 6 H votes in favor of the Plan, the payment of Allowed Class 5 H Claims will be subordinated and junior to the payment of the Class 6 H Claim, any distributions that would have been made to Holders of Allowed Class 5 H Claims shall instead be made to Holder of the Class 6 H Claim (and Class 3 H Claims (if Class 3 H also votes to in favor of the Plan) and Class 9 H Claims) on a Pro Rata Basis, and Class 5 H Claims shall not receive any distribution until Class 3 H, Class 6 H, and Class 9 H Claims are paid in full under the Plan. In calculating, for a Holder of an Allowed Class 6 H Claim, its Pro Rata Share of the Distribution to which Holders of Class 5 H Claims would be entitled, the Plan Administrator or Consolidated Holdco, as applicable, shall aggregate the total amount of Class 3 H and Class 6 H Claims, whether Allowed or Disputed, on the Effective Date.

The REIT is expected to receive increased recoveries if the Plan is confirmed with this voluntary subordination by the Lone Star Entities and payment of other creditors by the Lone Star Entities—as explained in more detail in the Liquidation Analysis attached as Exhibit B, Holders of Class 6 H Claims are estimated to recover between 76.4% and 86.8% of their Claims under the Plan, as opposed to 2.4% to 14.3% in liquidation.

**BECAUSE THE CLASS 6 H CLAIM <u>IS</u> IMPAIRED UNDER THE PLAN, THE HOLDER OF THE CLASS 6 H CLAIM <u>IS</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

<u>Class 7 H - Convenience Class Claims</u>: The Class 7 H Claims <u>are</u> impaired. Each Holder of an Allowed Consolidated Holdco Convenience Claim in Class 7 H shall receive the lesser of (a) sixty-five percent (65%) of the Holder's Allowed Class 7 H Convenience Claim in one Cash payment as part of the Effective Date Distribution from Consolidated Holdco or (b) their Pro Rata Share of One Million Five Hundred Thousand Dollars ($1,500,000), or such other, less favorable treatment as is agreed upon by Consolidated Holdco and the Holder of such Consolidated Holdco Convenience Claim. Any Holder of an Allowed General Unsecured Claim against Consolidated Holdco, other than Claims in Class 4 H, 5 H, 6 H, 8 H, and 9 H, may make the Consolidated Holdco Convenience Class Election. Such election must be made on a Ballot that is properly and timely cast in accordance with applicable law and orders of the Bankruptcy Court.

Holders of Class 7 H Claims will recover 65% of their Claims under the Plan, as opposed to estimated returns of 76.4% to 86.8% for Holders of Claims in Class 3 H. However, these recoveries are not guaranteed and will be paid over a period of months or years. In contrast, Class 7 H Claims will be paid a guaranteed 65% of such Claims on the Effective Date. Any Holder of a Class 7 H Claim may opt in to Class 3 H or 4 H on a Ballot that is properly and timely cast in accordance with applicable law and orders of the Bankruptcy Court.

74392.000009 EMF_US 29471070v30

**BECAUSE CLASS 7 H CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 7 H CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

<u>Class 8 H - Claims against Consolidated Holdco relating to Accredited Preferred Securities Trust I</u>: The Class 8 H Claims <u>are</u> impaired. Class 8 H consists of Allowed Claims against Holdco that relate to the Trust Preferred Securities, Trust Preferred Notes, the Trust Preferred Guarantee, and the Trust Preferred Note Claims, Claims held or asserted or that could be asserted by the Trust Preferred Holders or other Person, and Claims held or asserted or that could be asserted by the Trust Preferred Indenture Trustee. The Claims of Holders of Allowed Class 8 H Claims shall be fixed and Allowed as a single Unsecured Claim in favor of the Trust Preferred Indenture Trustee against Consolidated Holdco, and shall be deemed fully satisfied and paid in full by the Lone Star Trust Preferred Settlement Payment and the Trust Preferred Holdco Distributions to the Trust Preferred Indenture Trustee.

**BECAUSE CLASS 8 H CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 8 H CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

<u>Class 9 H - REIT Preferred Holders' Subordinated Guaranty Claims</u>: The Class 9 H Claims <u>are</u> impaired. Unless otherwise agreed to by the Committee and the REIT Committee, on the Effective Date (i) the Holders of Allowed Class 9 H Claims shall not be entitled to receive any direct distributions from Consolidated Holdco until all Holders of Allowed Claims in Classes 3 H, 4 H, and 6 H have been paid in full as provided under the Plan prior to the Consolidated Holdco Assets being fully administered, and (ii) the Holders of Allowed Class 9 H Claims shall not be entitled to any reports or notices from Consolidated Holdco or the Plan Administrator, until the Plan Administrator determines that such holders are likely to receive a direct distribution. If the Holders of Class 3 H, 4 H, and 6 H Claims are not paid in full as provided under the Plan, or if the Consolidated Holdco Assets are fully administered prior to the time when such senior unsecured Claims are paid in full, then the Holders of Allowed Class 9 H Claims shall not receive any distribution under the Plan.

In the event the Plan Administrator determines that the Holders of Class 9 H Claims are likely to receive a direct distribution, the Plan Administrator shall seek an order of the Bankruptcy Court setting a bar date for the filing of proofs of Subordinated Guaranty Claims by REIT Preferred Security Holders. Such proofs of Subordinated Guaranty Claims shall contain a Creditor Release provision pursuant to which REIT Preferred Security Holders may opt out of the Creditor Release.

After the Holders of Class 3 H, 4 H, and 6 H Claims are paid in full as provided under the Plan prior to the full administration of the Consolidated Holdco Assets, the Holders of Allowed Class 9 H Claims shall receive a Pro Rata Share of any Subsequent Distributions made after such time, and their Pro Rata Share of the Consolidated Holdco Residual Assets, as applicable.

The payment of Class 5 H Claims will be subordinated and junior to payments Holders of Class 9 H Claims who do not opt out of the Creditor Release. Any distributions that would have

been made on a Pro Rata basis to Holders Class 5 H Claims shall instead be made to such Holders of Class 9 H Claims who do not opt out of the Creditor Release, and Class 5 H Claims shall not receive any distribution until such Class 9 H Claims are paid in full under the Plan.

In the event the REIT Committee shall advise the Debtors in writing not later than five (5) days before the Confirmation Hearing of their request to transfer title to the common stock of the REIT Pro Rata to the REIT Preferred Security Holders and the Debtors and the Committee consent to such request, Holdco shall abandon and transfer title to the common stock of the REIT Pro Rata to the REIT Preferred Shareholders.

**BECAUSE CLASS 9 H CLAIMS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTION, THE HOLDERS OF CLASS 9 H CLAIMS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN, AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

Class 10 H - Subordinated Claims against Holdco (including Late Filed Claims): The Class 10 H Claims are impaired. Class 10 H consists of Claims against Consolidated Holdco that are not separately classified and are subordinated for any reason under § 510 of the Bankruptcy Code, or are Late Filed Claims. Holders of Class 10 H Claims shall not receive any distributions until the Holders of Class 3 H, 4 H, 5 H, 6 H, and 9 H Claims against Consolidated Holdco have been satisfied, without any post-petition interest thereon, as provided under the Plan, in which event the holders of Class 10 H Claims shall receive their Pro Rata Share of Subsequent Distributions and their Pro Rata Share of the Consolidated Holdco Residual Assets, as applicable.

**BECAUSE CLASS 10 H CLAIMS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTION, THE HOLDERS OF CLASS 10 H CLAIMS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN, AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

Class 11 H- Interests in Consolidated Holdco: The Class 11 H Claims are impaired. Class 11 H consists of the Interests in Consolidated Holdco, including those Interests held by the Lone Star Entities. All Interests, including those Interests held by the Lone Star Entities, shall be canceled after the Effective Date and in accordance with the terms of the Plan, and the Holders thereof shall receive no distribution under the Plan, unless Holders of all Class 9 H and 10 H Claims against Consolidated Holdco are satisfied, without any post-petition interest thereon, as provided under the Plan, in which event the holders of Class 11 H Interests shall receive their Pro Rata Share of Subsequent Distributions and their Pro Rata Share of the Consolidated Holdco Residual Assets, as applicable.

**BECAUSE CLASS 11 H INTERESTS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTION, THE HOLDERS OF CLASS 11 H INTERESTS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

74392.000009 EMF_US 29471070v30

3.    Treatment of Classes of Claims against and Interests in the Consolidated Debtors

Class 1 C - Secured Claims against the Consolidated Debtors: Class 1 C Secured Claims are unimpaired. Any Holder of a Class 1 C Allowed Secured Claim shall, at the sole option of the Consolidated Debtors, receive (a) the full amount of the Holder's Allowed Class 1 C Secured Claim in one Cash payment as part of the Effective Date Distribution from the Consolidated Debtors, (b) all or a portion of the Assets securing the Allowed Secured Claim or (c) subject to the requirements of § 1124(2) of the Bankruptcy Code, the legal, equitable and contractual rights of the Holder of such Allowed Secured Claim shall be reinstated. A Class 1 C Secured Claim that is a Disputed Claim shall not receive any distribution unless and until such Claim becomes an Allowed Class 1 C Secured Claim. Upon the entry of a Final Order allowing the Allowed Class 1 C Secured Claim against the Consolidated Debtors after the Effective Date, the Holder of that Claim shall, at the sole option of the Liquidating Trustee, receive (a) the full amount of such Claim in one Cash payment from the Liquidating Trust, (b) all or a portion of the Assets securing the Allowed Secured Claim or (c) the reinstatement of the legal, equitable and contractual rights of the Holder of such Allowed Secured Claim, subject to the requirements of § 1124(2) of the Bankruptcy Code. The Liquidating Trustee or Consolidated Debtors and the Holder of an Allowed Class 1 C Secured Claim may agree to less favorable treatment of such Allowed Class 1 C Secured Claim.

**BECAUSE CLASS 1 C CLAIMS ARE NOT IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 1 C CLAIMS ARE NOT ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

Class 2 C - Priority Claims, other than Priority Tax Claims, against the Consolidated Debtors: The Class 2C Claims are unimpaired. Any Holder of a Class 2C Allowed Priority Non-Tax Claim shall receive the full amount of the Holder's Class 2C Allowed Priority Non-Tax Claim in one Cash payment as part of the Effective Date Distribution from the Consolidated Debtors. A Class 2C Priority Non-Tax Claim that is a Disputed Claim shall not receive any distribution unless and until such Claim becomes a Class 2C Allowed Priority Non-Tax Claim. Upon the entry of a Final Order allowing the Class 2C Allowed Priority Non-Tax Claim against the Consolidated Debtors after the Effective Date, the Holder of that Claim shall receive the full amount of such Claim in one Cash payment from the Liquidating Trust. The Liquidating Trustee or Debtor and the Holder of a Class 2C Allowed Priority Non-Tax Claim may agree to less favorable treatment of such Class 2C Allowed Priority Non-Tax Claim.

**BECAUSE CLASS 2 C CLAIMS ARE NOT IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 2 C CLAIMS ARE NOT ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

Class 3 C - General Unsecured Claims against the Consolidated Debtors Accepting the Creditor Release: The Class 3 C Claims are impaired. Class 3 C consists of Allowed Unsecured Claims against the Consolidated Debtors whose Holders cast a timely Ballot affirmatively accepting and agreeing to the Creditor Release. Holders of Allowed Class 3 C and 4 C Claims shall be entitled to receive a Pro Rata Share of interests in the Liquidating Trust and are entitled to receive distributions equal to their Pro Rata Share of any distributions of the Liquidating Trust

74392.000009 EMF_US 29471070v30

Assets made by the Liquidating Trustee out of the Liquidating Trust in accordance with the Liquidating Trust Agreement and the Plan, and continuing on the dates of Subsequent Distributions, equal to their Pro Rata Share of any Subsequent Distributions of Liquidating Trust Assets made by the Liquidating Trustee out of the Liquidating Trust, as provided under the Plan.

In addition to the distributions described above, Holders of Allowed Class 3 C General Unsecured Claims as of the Effective Date shall be entitled to receive a Pro Rata Share of the Lone Star Creditor Release Settlement Payment subject to the terms of this Plan. The Liquidating Trustee and the Disbursing Agent shall hold and distribute the Lone Star Creditor Release Settlement Payment pursuant to the terms of this Plan..

In the event of entry of a Final Order determining a Disputed Claim to be an Allowed Claim, the Holder of the subject Claim shall receive its Pro Rata Share of interests in the Liquidating Trust, and the Liquidating Trustee, in his sole discretion, may make an Interim Distribution to the Holder of such Allowed Claim from the Liquidating Trust Reserve, or may release funds from the Liquidating Trust Reserve to such Holder in a Subsequent Distribution. The Holders of Allowed Class 3 C Claims shall thereafter receive their Pro Rata Share of Subsequent Distributions from the Liquidating Trust.

Upon full administration of the Assets vested in the Liquidating Trust, the Liquidating Trustee shall make the Final Distribution, and all obligations under the Plan of the Liquidating Trustee to the Holders of Allowed Class 3 C Claims shall be satisfied. In the event that the Holders of Allowed Class 3 C Claims are paid in full, without any post-petition interest, any funds remaining in the Liquidating Trust Account, net of expenses, shall be distributed first to the Holders of the Allowed Class 4 C Claims and then to the Holder of the Allowed Class 7 C Claim in accordance with the provisions of the Plan.

The Lone Star Entities have agreed to waive the right to receive distributions on their Claims and provide the Lone Star Creditor Release Settlement Payment to Holders of Class 3 C and 6 C Claims if the Plan is confirmed. Thus, Class 3 C Claims are expected to receive increased recoveries if the Plan is confirmed—as explained in more detail in the Liquidation Analysis attached as Exhibit B, Holders of Class 3 C Claims are estimated to recover between 97.9% and 100% of their Claims under the Plan, as opposed to 27.4% to 46% in liquidation.

**BECAUSE CLASS 3 C CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 3 C CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

<u>Class 4 C - General Unsecured Claims against the Consolidated Debtors, except for separately classified Claims</u>: The Class 4 C Claims <u>are</u> impaired. Class 4 C consists of Allowed Unsecured Claims against the Consolidated Debtors that are not separately classified under this Plan. Holders of Allowed Class 3 C and 4 C Claims shall be entitled to receive a Pro Rata Share of interests in the Liquidating Trust and are entitled to receive distributions equal to their Pro Rata Share of any distributions of the Liquidating Trust Assets made by the Liquidating Trustee out of the Liquidating Trust in accordance with the Liquidating Trust Agreement, and continuing on each Subsequent Distribution Date, equal to their Pro Rata Share of any Subsequent

74392.000009 EMF_US 29471070v30

Distributions of Liquidating Trust Assets made by the Liquidating Trustee out of the Liquidating Trust.

For the avoidance of doubt, Holders of Allowed Class 4 C Claims shall not be entitled to receive any distributions from the Lone Star Consolidated Creditor Release Payment because such Holders are not accepting the Creditor Release. The Debtors estimate that Holders of Allowed Unsecured Claims against the Consolidated Debtors who elect for treatment in Class 3 C will receive an <u>additional 15%</u> of their Claims through distributions from the Lone Star Consolidated Debtors Creditor Release Payment. **Holders of Allowed Unsecured Claims against the Consolidated Debtors must cast a proper and timely Ballot electing for treatment in either Class 3 C or Class 6 C to receive distributions from the Lone Star Consolidated Debtors Creditor Release Payment.**

In the event of entry of a Final Order determining a Disputed Claim to be an Allowed Claim, the Holder of the subject Claim shall receive its Pro Rata Share of interests in the Liquidating Trust, and the Liquidating Trustee, in his sole discretion, may make an Interim Distribution to the Holder of such Allowed Claim from the Liquidating Trust Reserve, or may release funds from the Liquidating Trust Reserve to such Holder in a Subsequent Distribution. The Holders of Allowed Class 4 C Claims shall thereafter receive their Pro Rata Share of Subsequent Distributions from the Liquidating Trust.

Upon full administration of the Assets vested in the Liquidating Trust, the Liquidating Trustee shall make the Final Distribution, and all obligations under the Plan of the Liquidating Trustee to the Holders of Allowed Class 4 C Claims shall be satisfied. In the event that the Holders of Allowed Class 4C Claims are paid in full, without any post-petition interest thereon, any funds remaining in the Liquidating Trust Account, net of expenses, shall be distributed to the Holders of Allowed Class 7 C Claims in accordance with the provisions of the Plan.

**BECAUSE CLASS 4 C CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 4 C CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

<u>Class 5 C - Unsecured Claims Against the Consolidated Debtors held by the Lone Star Entities</u>: The Class 5 C Claims <u>are</u> impaired. The Claims of the Lone Star Entities shall be waived and released and shall receive no distributions under this Plan.

**BECAUSE CLASS 5 C CLAIMS <u>ARE</u> IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 5 C CLAIMS <u>ARE</u> ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

<u>Class 6 C - Consolidated Debtors Convenience Class Claims</u>: The Class 6 C Claims are impaired. On the Effective Date, or as soon as practicable thereafter, each Holder of an Allowed Consolidated Debtor Convenience Claim in Class 6 C shall receive seventy-five percent (75%) of the Holder's Allowed Class 6 C Convenience Claim in one Cash payment as part of the Effective Date Distribution from the Consolidated Debtors, or such other less favorable

74392.000009 EMF_US 29471070v30

treatment as is agreed upon by the Consolidated Debtors and the Holder of such Allowed Consolidated Debtor Convenience Claim.

Any Holder of an Allowed General Unsecured Claim against the Consolidated Debtors, other than Claims in Class 5 C, 7 C, and 8 C, may make the Consolidated Debtors Convenience Class Election. Such election, which requires the acceptance of the Creditor Release, must be made on a Ballot that is properly and timely cast in accordance with applicable law and orders of the Bankruptcy Court.

Holders of Class 6 C Claims will recover 75% of their Claims under the Plan, as opposed to estimated returns of 97.9% to 100% for Holders of Claims in Class 3 C. However, these recoveries are not guaranteed and will be paid over a period of months or years. In contrast, Class 6 C Claims will be paid a guaranteed 75% of such Claims on the Effective Date. Any Holder of a Class 6 C Claim may opt in to Class 3 C or 4 C on a Ballot that is properly and timely cast in accordance with applicable law and orders of the Bankruptcy Court.

**BECAUSE CLASS 6 C CLAIMS ARE IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 6 C CLAIMS ARE ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

Class 7 C - REIT Junior Claim. The Class 7 C Claims are impaired. Class 7 C consists of the REIT Junior Claim, which is Allowed as a Class 7 C Claim in the fixed amount of Fifteen Million Dollars ($15,000,000) held by the REIT. The Holder of the Allowed Class 7 C Claims shall receive its Pro Rata Share of interests in the Liquidating Trust subject to the enforcement of the applicable subordination provisions as described herein.

Pursuant to the terms of the Plan, the Class 7 C Claim is subordinated and junior to the Class 3 C, 4 C, and 6 C Claims, and the Holder of the Class 7 C Claim will not receive any distributions until all Allowed Claims in Classes 3 and 4 C are paid in full, without any interest thereon, as provided under the Plan, and the Holders of Class 6 C Claims receive the distribution they are entitled to receive under the Plan, in which event the holder of the Class 7 C Claim shall receive its Pro Rata Share of any Subsequent Distributions made by the Liquidating Trustee after such time, and its Pro Rata Share of the Liquidating Trust Residual Assets, as applicable.

**BECAUSE CLASS 7 C CLAIMS ARE IMPAIRED UNDER THE PLAN, HOLDERS OF CLASS 7 C CLAIMS ARE ENTITLED TO VOTE FOR OR AGAINST CONFIRMATION OF THE PLAN.**

Class 8 C - Subordinated Claims against the Consolidated Debtors (including Late Filed Claims: The Class 8 C Claims are impaired. Class 8 C consists of Subordinated Claims against the Consolidated Debtors, including Late Filed Claims. Holders of Class 8 C Subordinated Claims shall receive no distribution under the Plan unless the Holders of Allowed Class 3 C, 4 C and 7 C Claims are paid in full, without any post-petition interest thereon, as provided under the Plan and the Liquidating Trust is terminated, as provided under the Plan, in which event the holders of Class 8 C Claims shall receive their Pro Rata Share of the Liquidating Trust Residual Assets, which distributions shall be made by the Disbursing Agent.

74392.000009 EMF_US 29471070v30

**BECAUSE CLASS 8 C CLAIMS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTION, THE HOLDERS OF CLASS 8 C CLAIMS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN, AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

Class 9 C - Claims against Consolidated Debtors relating to Accredited Preferred Securities Trust I. The Class 9 C Claims are impaired. Class 9 C consists of Allowed Claims against the Consolidated Debtors that relate to the Trust Preferred Securities, Trust Preferred Notes, Trust Preferred Guarantee, and the Trust Preferred Note Claims. All such Claims are reduced, fixed, and Allowed as a Class 9 C Claim in the amount of Five Million Dollars ($5,000,000) held by the Trust Preferred Indenture Trustee (the "Trust Preferred Junior Claims"). Holders of Allowed Class 9 C Claims shall receive their Pro Rata Share of interests in the Liquidating Trust subject to the enforcement of the applicable subordination provisions as described herein.

Pursuant to the terms of the Plan, the Class 9 C Claims are subordinated and junior to the Class 3 C, 4 C, 6 C 7 C and 8 C Claims, and Holders of Class 9 C Claims will not receive any distributions until all Claims in Classes 3 C, 4 C, 7 C, and 8 C are paid in full, without any post-petition interest thereon, as provided under the plan, and the Liquidating Trust is terminated, as provided under the Plan, in which event the holders of Class 9 C Claims shall receive their Pro Rata Share of the Liquidating Trust Residual Assets, which distributions shall be made by the Disbursing Agent.

**BECAUSE CLASS 9 C CLAIMS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTION, THE HOLDERS OF CLASS 9 C CLAIMS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN, AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

Class 10 C - Interests in the Consolidated Debtors. The Class 10 C Interests are impaired. Class 10 C consists of the Interests in the Consolidated Debtors. All Interests shall be canceled after the Effective Date and the Holders thereof shall receive no distribution under the Plan, unless Holders of all Class 9 C Allowed Subordinated Claims against the Consolidated Debtors are paid in full, without any post-petition interest thereon, as provided under the Plan, and the Liquidating Trust is terminated, as provided under the Plan, in which event the holders of Class 10 C Interests shall receive their Pro Rata Share of the Liquidating Trust Residual Assets, which distributions shall be made by the Disbursing Agent.

**BECAUSE CLASS 10 C INTERESTS ARE IMPAIRED AND WILL ALMOST CERTAINLY RECEIVE NO DISTRIBUTIONS UNDER THE PLAN, THE HOLDERS OF CLASS 10 C INTERESTS ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN AND THEREFORE ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

    4.    Intercompany Claims

        (a)    Inter-Debtor Waivers

By virtue of the compromises and settlement of the issues set forth in the Plan, on the Effective Date, (i) AHL Canada shall pay and satisfy the Claims of the Consolidated Debtors against AHL Canada, and, after giving effect to such payments, (ii) each Debtor shall waive any defense, including, without limitation, defenses arising under §§ 502(d) and 553(a) of the Bankruptcy Code, to Intercompany Claims asserted by another Debtor and such Claims shall be deemed Allowed Claims, (iii) Intercompany Claims between Debtors shall be deemed to be mutual claims arising prior to the Petition Date for purposes of setoff, (iv) except as provided in Section 3.1 of the Plan, each Debtor shall waive its right to receive any distribution on any Claims and Causes of Action such Debtor may have against another Debtor, and (v) except as provided in Section 3.1 of the Plan, each Debtor shall waive and forever release any right, Claim, or Cause of Action which has been or could have been asserted by such Debtor against any other Debtor.

(b)    Non-Debtor Subsidiary Waivers

By virtue of the compromises and settlement of the issues set forth in the Plan and except as otherwise provided in this Plan, on the Effective Date, (i) AHL Canada shall pay and satisfy the claims of the Consolidated Debtors against AHL Canada, and, after giving effect to such payments, (ii) each Non-Debtor Subsidiary shall waive any defense, including, without limitation, defenses arising under §§ 502(d) and 553(a) of the Bankruptcy Code, to Intercompany Claims asserted by another Debtor or Non-Debtor Subsidiary against any Debtor and such Claims shall be deemed Allowed Claims, (iii) Intercompany Claims between Debtors and Non-Debtor Subsidiaries shall be deemed to be mutual claims arising prior to the Petition Date for purposes of setoff, (iv) each Non-Debtor Subsidiary, shall waive its right to receive any distribution on any Claims and Causes of Action such Non-Debtor Subsidiary may have against any Debtor, (v) except as provided in this Section 6.2 of the Plan, each Non-Debtor Subsidiary, except REIT, shall waive and forever release any right, Claim or Cause of Action which has been or could have been asserted by such Non-Debtor Subsidiary against any Debtor, and (vi) each Debtor shall waive its right to receive any distribution on any Claims and Causes of Action such Debtor may have against any Non-Debtor Subsidiary, provided, however, that AHL Canada shall pay all amounts owing to the Consolidated Debtors on the Effective Date. Notwithstanding anything contained in this section to the contrary, the REIT shall have the allowed claims against the Debtors specified in Section 8.2 of the Plan and shall be entitled to distributions thereon as set forth in the Plan.

(c)    Asset Allocation

The allocation of certain Assets is an integral component of the comprehensive compromise and settlement concerning Intercompany Claims and intra-Debtor issues as determined in light of a number of facts, including, but not limited to, (i) respective legal claims, rights and entitlements of the Debtors, (ii) validity and enforceability of Intercompany Claims, (iii) Intercompany Claims not reflected as inter-company payables or receivables in the Debtors' books and records, (iv) relative value of Assets under administration in each Debtor, (v) Intercompany Claims for contribution or reimbursement, (vi) the necessity of resolving inter-Estate and inter-Debtor issues and disputes through the Plan, and (vii) administration and

liquidation of Trust Assets unfettered or effected by inter-Estate or inter-Debtor conflicts of interest or multiple claims.

## B. Convenience Classes

As discussed above, Holders of Consolidated Debtor Convenience Claims will be paid 75% of their Allowed Claims in full in Cash upon the Effective Date, and Holders of Consolidated Holdco Convenience Claims will be paid 65% of their Allowed Claims in full in Cash upon the Effective Date. The ultimate returns to Holders of Unsecured Claims against the Consolidated Debtors are expected to be higher than 75%, and the ultimate returns to Holders or Unsecured Claims against Consolidated Holdco may be higher than 65%. However, such recoveries are not guaranteed, and will be made over a period of months or years after the Effective Date. Thus, the Debtors believe that the treatment of the Convenience Claims proposed under the Plan is more favorable than the treatment proposed for holders of general Unsecured Claims. Further, any Holder of a Claim may opt out of the Convenience Class.

In exchange for this favorable Convenience Class treatment, such Holders will not be entitled to receive any further distributions. Holders of Allowed Claims against Consolidated Holdco must agree to reduce their Claims to $1,000,000 (if such Claims are greater than $1,000,000), vote to accept the Plan, and consent to the Creditor Release in order to receive this favorable treatment. Holders of Allowed Claims against the Consolidated Debtors must agree to reduce their Claims to $25,000 (if such Claims are greater than $25,000), vote to accept the Plan, and consent to the creditor release in order to receive this favorable treatment.

Eligible Creditors will have the opportunity to elect for Convenience Class treatment, or opt out of the Convenience Class, on the Ballot they receive as part of the process of voting upon the Plan.

## C. Allowance and Disallowance of Claims and Interests

No distribution shall be made with respect to any Disputed Claim, even if a portion of the Claim is not disputed, until the entire Claim is resolved by a Final Order. At such time as a Disputed Claim becomes an Allowed Claim, the Holder of such Allowed Claim shall receive the Cash and/or other distributions to which such Holder is then entitled to under the Plan, but in no event prior to the later of (i) the Distribution Date, (ii) the date that an order regarding such Claim becomes a Final Order, or (iii) in accordance therewith when assets become available for distribution to the Holder of such Claim under the Plan.

The Liquidating Trustee or Plan Administrator shall file objections to Claims or Interests within one hundred eight (180) days of the Effective Date. The Liquidating Trustee or Plan Administrator may obtain an extension of this date by filing a motion in the Bankruptcy Court, based upon a showing of "cause." Once a Claim or Interest becomes an Allowed Claim or Interest, it will receive the treatment afforded by this Plan.

The deadline for filing with the Bankruptcy Court any and all Claims against the Debtor, other than Administrative Claims and Claims arising from the assumption or rejection of any

executory contract or unexpired lease pursuant to the Plan, was October 6, 2009. Any such Claim that was not filed prior to that time, except as otherwise set forth in the Plan or order entered by the Court, is forever barred and shall be conclusively deemed discharged and disallowed for purposes of voting on this Plan or receiving any distributions hereunder.

**D.      Subordination of Late Filed Claims.**

A Late Filed Claim is any Claim that was not filed prior to the applicable Bar Date, Rejection Claim Bar Date, Administrative Claim Bar Date, or Professional Fee Claim Bar Date, except for those Claims that are Allowed as timely under this Plan or under a Final Order entered by the Bankruptcy Court (which includes REIT Preferred Security Holder Subordinated Guaranty Claims). The Bar Date for filing Claims against the Debtors has passed, other than Administrative Claims, Professional Fee Claims, REIT Preferred Security Holder Subordinated Guaranty Claims, and Claims arising from the assumption or rejection of any executory contract or unexpired lease pursuant to this Plan. Late Filed Claims are automatically treated as Subordinated Claims, unless and until the Court enters an Final Order allowing or approving a stipulation allowing a Late Filed Claim, or the Plan allows such Claims..

**E.      Subordination and Subrogation Rights and Claims of Subordination and Subrogation**

Pursuant to § 510(a) of the Bankruptcy Code, except as otherwise agreed to by a creditor, Class of creditors, or as otherwise provided under the Plan, nothing in this Plan is intended to affect the terms or enforceability of any subordination or subrogation agreement entered into prior to the Effective Date by any creditor or group of creditors in favor of any other creditors of the Debtors in respect of any obligations owing by the Debtors; provided, however, that any disagreement with the priorities or distributions set forth in the Plan shall be raised prior to, ahead of and decided at the hearing on confirmation of the Plan; that, absent any timely objections or challenges, such priorities and distributions (including the waiver or subordination and subrogation) shall be deemed binding on such creditors and Classes of creditors; and, that if the decisions of the Bankruptcy Court relating to confirmation of the Plan differ from the priorities or treatment under the Plan, then all issues with respect to contractual subrogation and subordination shall be governed pursuant to such decision. To the extent that the priorities set forth in the Plan conflict with the contractual subordination and subrogation provisions of any Holders of Class of Claims, the Plan shall govern and control.

**F.      Deemed Consent**

By submitting a Ballot or receiving a Distribution under or any benefit pursuant to the Plan and not electing to withhold consent as provided under the Plan prior to the Confirmation Date, or by order of the Bankruptcy Court, each Holder of a Claim or Interest shall be deemed to have specifically consented to the terms of the Plan, including the releases and treatment contained in the Plan.

**G.      Liquidating Trust**

74392.000009 EMF_US 29471070v30

1.  Appointment of Liquidating Trustee

(a)     On or before the Plan Supplement Filing Date, the Liquidating Trustee shall be selected by the Committee and be reasonably acceptable to the Debtors and REIT; provided, however, that none of the Lone Star Entities, the Trust Preferred Holders, the Trust Preferred Indenture Trustee, or their Affiliates, officers, directors, or employees shall serve as Liquidating Trustee.  Prior to the Confirmation Date, the Person(s) designated as Liquidating Trustee shall file an affidavit demonstrating that such Person is disinterested.  If approved by the Bankruptcy Court in the Confirmation Order, the person so designated shall become the Liquidating Trustee of the Liquidating Trust on the Effective Date.

(b)     The Liquidating Trustee shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Liquidating Trust Agreement and the Plan.

(c)     The Liquidating Trustee shall be deemed a party in interest and have standing to seek disgorgement or challenge or object to the allowance or payment of Professionals under any interim or final fee application and with respect to challenging any Claims for substantial contribution made under § 503(b) of the Bankruptcy Code or similar claims.

(d)     The Liquidating Trustee shall be the Disbursing Agent as provided under the Plan.

2.  Funding of the Liquidating Trust

The Liquidating Trust shall consist of the Liquidating Trust Assets. The Liquidating Trust will be funded initially by a contribution to the Liquidating Trust Account by the Consolidated Debtors equal to their Effective Date Balance less any payments made to the Holders of Allowed Administrative Claims, Holders of Allowed Secured Claims, Holders of Allowed Priority Claims, Holders of Allowed Priority Tax Claims, and Holders of Allowed Convenience Claims against the Consolidated Debtors on the Effective Date.  The Liquidating Trust shall subsequently be funded from the other Proceeds of Consolidated Debtors Assets.

3.  Lone Star Creditor Release Settlement Payment

Prior to or on the Effective Date, in the event that the Plan is confirmed, the Lone Star Entities shall cause the Lone Star Creditor Release Settlement Payment to be delivered to the Consolidated Debtors.  The Consolidated Debtors shall use the Lone Star Creditor Release Settlement Payment to provide Holders of Allowed Class 3 C Claims with their Pro Rata Share of the Lone Star Creditor Release Settlement Payment, and then shall transfer the remainder of the Lone Star Creditor Release Settlement Payment to the Liquidating Trustee, who shall hold the Lone Star Creditor Release Settlement payment in trust in a segregated account for the benefit of Holders of Allowed Class 3 C Claims.  If necessary, the Lone Star Creditor Release Settlement Payment shall be used by the Consolidated Debtors on the Effective Date or by the Liquidating Trustee or the Disbursing Agent subsequent to the Effective Date to pay Allowed Administrative Claims against the Consolidated Debtors, provided that, prior to making any Subsequent Distributions to any Unsecured Claims, the Liquidating Trustee shall fully repay any amounts used to pay Allowed Administrative Claims to the Lone Star Creditor Release

Settlement Payment with Liquidating Trust Assets as funds become available. The Liquidating Trustee or Disbursing Agent shall hold the remaining Lone Star Creditor Release Settlement Payment in a segregated account in trust for the benefit of the remaining Holders of Class 3 C Claims. The Liquidating Trustee or Disbursing Agent shall use the remaining Lone Star Creditor Release Settlement Payment to fund Subsequent Distributions, in the same manner as set forth in this Plan, to Holders of Allowed Class 3 C Claims, with Holders of Allowed Class 3 C Claims continuing to receive their Pro Rata Share of the remaining Lone Star Creditor Release Settlement Payment. When the remaining Lone Star Creditor Release Settlement Payment is equal to or less than $200,000, it shall be transferred to the Liquidating Trust and deemed a Liquidating Trust Asset.

4. <u>Lone Star Consolidated Debtors Settlement Payment.</u>

On or before the Effective Date, one or more of the Lone Star Entities, other than LSF MRA, LLC, shall pay the Lone Star Consolidated Debtors Settlement Payment, which is a $150,000 payment in Cash., to the Consolidated Debtors.

5. <u>Transfer of Liquidating Trust Assets to the Liquidating Trust</u>

On the Effective Date, the Debtors shall transfer and shall be deemed to have irrevocably transferred the Liquidating Trust Assets to the Liquidating Trust, for payment of Claims as provided in this Plan, and, after payment of such Claims, on behalf of the beneficiaries of the Liquidating Trust, with no reversionary interest in the Debtors.

The Liquidating Trust Assets include, but are not limited to, (a) any Tax Refunds received by the Debtors, Consolidated Holdco, or the Plan Administrator, or any other Person, and any rights to receive any Tax Refunds, whether contingent, disputed, or unliquidated, and any proceeds of any Tax Refunds, shall be vested in the Liquidating Trust and shall be paid or transferred to the Liquidating Trust, except for the first payments from the Tax Refunds, not to exceed Two Million Dollars ($2,000,000), which are designated in the Plan for the Trust Preferred Holdco Distributions, (b) the Trust Preferred Common Securities shall be transferred by Consolidated Holdco to the Liquidating Trust, and (c) all rights and interests in the Deferred Compensation Settlement shall be transferred to the Liquidating Trust.

6. <u>The Liquidating Trust</u>

(a) Without any further action of the directors or shareholders of the Debtors, on the Effective Date, the Liquidating Trust Agreement for the Liquidating Trust, substantially in the form included in the Plan Supplement, shall become effective. On or before the Effective Date, the Debtors and the Liquidating Trustee shall execute the Liquidating Trust Agreement and shall take such other necessary steps to establish the Liquidating Trust. The Liquidating Trustee shall accept the Liquidating Trust Assets and sign the Liquidating Trust Agreement on the Effective Date and the Liquidating Trust will then be deemed created and effective.

(b) The Liquidating Trustee shall have full authority to take any steps necessary to administer the Liquidating Trust Assets and the Lone Star Creditor Release Settlement Payment, as applicable, including, without limitation, the duty and obligation to liquidate Liquidating Trust

Assets, and to pursue and settle any other trust claims, subject to the approval of the Liquidating Trust Advisory Board and the procedures in the Liquidating Trust Agreement. Upon such transfer (which, as stated above, shall occur on the Effective Date), the Debtors and their Estates shall have no other rights or obligations with respect to the Liquidating Trusts.

(c)     All Liquidating Trust Expenses shall be the responsibility of and paid by the Liquidating Trust from the Liquidating Trust Assets. Liquidating Trust Expenses may not exceed Two Million Dollars ($2,000,000), except pursuant to an order from the Bankruptcy Court approving an increase in this limit, which order may be obtained by the Liquidating Trustee with the consent of the Liquidating Trust Advisory Board and a showing of cause for such increase to the Bankruptcy Court.

(d)     The Liquidating Trustee may retain such law firms, accounting firms, experts, advisors, consultants, investigators, appraiser, auctioneers or other professionals as it may deem necessary (collectively, the "Liquidating Trustee Professionals"), in his sole discretion, and at the sole expense of the Liquidating Trust, to aid in the performance of its responsibilities pursuant to the terms of this Plan including, without limitation, the liquidation and distribution of Liquidating Trust Assets and the Lone Star Creditor Release Settlement Payment, as applicable.

(e)     The Liquidating Trustee is required to distribute to the holders of Allowed Claims on account of their interests in the Liquidating Trust, on a periodic basis, and at least once per year, all unrestricted Cash on hand (including any Cash received from the applicable Debtors on the Effective Date, and treating any permissible investment as Cash for purposes of this Section 9.6(e)), except such amounts (i) as have been reserved on account of Disputed Claims, or are otherwise part of the claims reserve established by the Liquidating Trustee, (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (iii) as are necessary to pay reasonable incurred or anticipated expenses (including, but not limited to, any taxes imposed on or payable by the Debtors or the Liquidating Trust or in respect of the Liquidating Trust Assets), or (iv) as are necessary to satisfy other liabilities incurred or anticipated by the Liquidating Trust in accordance with the Plan or the Liquidating Trust Agreement; provided, however, that the Liquidating Trustee shall not be required to make a distribution pursuant to this Section 9.6(e) if the aggregate, net amount of unrestricted Cash available for distribution (taking into account the above listed exclusions) is such as would make the distribution impracticable as reasonably determined by the Liquidating Trustee; and provided further that nothing in this Plan shall compel the Liquidating Trustee to treat any tentative Tax Refund(s) obtained pursuant to Tax Code Section 6411 as unrestricted Cash until completion of the associated audit by the relevant authorities.

(f)     For federal tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under Treasury Regulation Section 301.7701-4 and that the trust beneficiaries will be treated as grantors and deemed owners of the trust. Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution of an undivided interest in the Liquidating Trust Assets and then contributed such interests to the Liquidating Trust. The Liquidating Trust Agreement shall (i) state that the sole purpose of the Liquidating Trust is to liquidate the Liquidating Trust Assets with no objective to continue or engage in the conduct of a trade or business and (ii) contain a fixed or determinable termination

date that is not more than five (5) years from the date of creation of the Liquidating Trust, which termination date may be extended for one or more finite terms subject to the approval of the Bankruptcy Court upon a finding that the extension is necessary to its liquidating purpose. Each such extension must be approved by the Bankruptcy Court within six (6) months before the beginning of the extended term..

(g)     The Liquidating Trustee shall be responsible for filing all federal, state and local tax returns for the Liquidating Trust. The Liquidating Trustee shall file all federal tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4. The Liquidating Trustee also will annually send to each holder of a Liquidating Trust Interest a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holder's underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns. The Liquidating Trustee shall also file (or cause to be filed) any other statement, return or disclosure relating to the Liquidating Trust that is required by any governmental unit.

(h)     On or before the Effective Date, the Debtors shall provide the Liquidating Trustee with a good-faith valuation of the Tax Refunds as of the Effective Date. As soon as practical after the Effective Date, the Liquidating Trustee shall determine the fair market value, as of the Effective Date, of all other Liquidating Trust Assets, and shall make all such values (including the Tax Refunds value) available from time to time, to the extent relevant, and such values shall be used consistently by all parties to the Liquidating Trust (including, without limitation, the Debtors, the Liquidating Trustee, and Liquidating Trust Beneficiaries) for all United States federal income tax purposes.

(i)     The Liquidating Trustee shall have full and exclusive authority and responsibility with respect to all Tax Refunds to the same extent as if the Liquidating Trustee were the same entity, as applicable, the Consolidated Debtors, Consolidated Holdco, debtors, or debtors-in-possession, including the filing of tax returns (including amended tax returns), or requests for refunds for one or more of the Debtors. Without limiting the foregoing, each of the Debtors shall execute, on or prior to the Effective Date, a power of attorney authorizing the Liquidating Trustee to correspond with any tax authority on behalf of such Debtor and to sign, collect, negotiate, settle, and administer the Tax Refunds, tax payments and tax returns. The Consolidated Debtors (and the Liquidating Trustee, as assignee) shall be entitled to the Tax Refunds, other than the entitlement to a portion of the Tax Refunds from the Amended 2008 Tax Returns designated in this Plan for the Trust Preferred Holdco Distributions. For the avoidance of doubt, Consolidated Holdco hereby waives and relinquishes any right or interest to the Tax Refunds and the Tax Refunds shall be and is hereby deemed assets and property of the Consolidated Debtors, other than the entitlement of that portion of Tax Refunds from the Amended 2008 Tax Returns designated in this Plan for the Trust Preferred Holdco Distributions.

(j)     Payments and Distributions on Disputed Claims:

(i)     From and after the Effective Date, and until such time as each Disputed Claim has been compromised and settled, estimated by the Bankruptcy Court in an amount constituting the allowed amount, or allowed or disallowed by Final Order of the Bankruptcy Court, the Liquidating Trustee shall retain, for the benefit of each holder of a Disputed Claim, interests in the Liquidating Trust and any dividends, gains or income attributable thereto, in an amount equal to the Pro Rata Share of distributions that would have been made to the holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the liquidated amount set forth in the filed Proof of Claim relating to such Disputed Claim, (ii) the amount in which the Disputed Claim shall be estimated by the Bankruptcy Court pursuant to Section 502 of the Bankruptcy Code constitutes and represents the maximum amount in which such Claim may ultimately become an Allowed Claim, or (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and the Liquidating Trustee. Any interest in the Liquidating Trust Interests retained and held for the benefit of a holder of a Disputed Claim shall be treated as a payment and reduction on account of such Disputed Claim for purposes of computing any additional amounts to be paid in Cash or distributed in interests in the Liquidating Trust in the event the Disputed Claim ultimately becomes an Allowed Claim. Such dividends, gains or income paid on account of the interests in the Liquidating Trust (if any) retained for the benefit of holders of Disputed Claims shall be retained by the Liquidating Trust for the benefit of such holders pending determination of their entitlement thereto under the terms of the Plan.

(ii)    At such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the Liquidating Trustee shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the Plan, together with any earnings that has accrued on the amount of interests in the Liquidating Trust Interests so retained (net of any expenses, including any taxes, relating thereto), but only to the extent that such earnings are attributable to the amount of the Allowed Claim. Such distribution, if any, shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim becomes a Final Order, but in no event later than the next Subsequent Distribution date. The balance of any interests in the Liquidating Trust previously retained but not distributed to a Disputed Claim holder shall be included in future calculations of Cash, and interests in the Liquidating Trust, respectively, to holders of Allowed Claims.

(iii)   Tax Treatment of Retained Assets. The Liquidating Trustee shall treat any Assets retained pursuant to this Section 9.4 as part of the Liquidating Trust Claims Reserve.

7.      Limitation of Liability for Liquidating Trustee

Upon the Effective Date and execution of the Liquidating Trust, the Liquidating Trustee as trustee of the Liquidating Trust, and not personally, shall be vested in all right, title and

interest in all Liquidating Trust Assets, and shall have all rights to enforce orders of the Bankruptcy Court entered in this Bankruptcy Proceeding. The Liquidating Trustee shall liquidate the Liquidating Trust Assets and distribute the proceeds thereof in accordance with this Plan and the Liquidating Trust Agreement.

8.    The Liquidating Trust Advisory Board

(a)    The Liquidating Trust Advisory Boards shall be comprised of up to three (3) members selected by the Committee, who shall be reasonably acceptable to the Consolidated Debtors and the REIT; provided, however, that none of the Lone Star Releasees, the Plan Releasees, the Trust Preferred Holders, or the Trust Preferred Indenture Trustee, or their Affiliates, officers, directors or employees shall serve on either of the Liquidating Trust Advisory Board. Written notice of the identities of such members shall be filed with the Bankruptcy Court by the Plan Supplement Filing Date. The Liquidating Trust Advisory Board shall adopt such by-laws as it may deem appropriate. In the event written notice is not filed prior to the Plan Supplement Filing Date, there will be no Liquidating Trust Advisory Board, and compliance with the reporting, consulting and consent requirements under the Plan shall not be required and such terms shall be removed or deemed removed from the Trust Agreement and Plan. The Liquidating Trustee shall consult regularly with the Liquidating Trust Advisory Board when carrying out the purpose and intent of the Liquidating Trust. Members of the Liquidating Trust Advisory Board shall be entitled to reimbursement of the reasonable and necessary expenses incurred by them in carrying out the purpose of the Liquidating Trust Advisory Board. Reimbursement of the reasonable and necessary expenses of the members of the Liquidating Trust Advisory Board shall be payable by the Liquidating Trust.

(b)    The Liquidating Trust Advisory Board shall advise and approve the material actions of the Liquidating Trustee and have the right and duties as more particularly set forth in the Liquidating Trust Agreements, including, but not limited to, (a) authorize the Liquidating Trustee to commence, continue to prosecute or abandon any Causes of Action; (b) approve the settlement or compromise of any Cause of Action if the amount sought to be recovered in the complaint or other pleadings or documents initiating, evidencing, or stating such Cause of Action exceeds $1,000,000; (c) approve the sale, assignment, or other conveyance or abandonment of any Liquidating Trust Asset for an amount exceeding $1,000,000 or that has a value in excess of $1,000,000; (d) approve the allowance of any Disputed Claim, if the asserted amount of such Claim exceeds $250,000; (e) consult upon and approve all matters concern the Tax Refunds, (f) review, contest, or challenge to fees and expenses of the Liquidating Trustee and its professionals, and (g) approve any increase in the budget for Liquidating Trust Expenses.

(c)    In the case of an inability or unwillingness of any member of the Liquidating Trust Advisory Board to serve, such member shall be replaced by designation of the remaining members of the Liquidating Trust Advisory Board. If the Liquidating Trust Advisory Board has only one member and any position on the Liquidating Trust Advisory Board remains vacant for more than thirty (30) days, such vacancy shall be filed within fifteen (15) days thereafter by the designation of the Liquidating Trustee without the requirement of a vote by the other members of the Liquidating Trust Advisory Board.

74392.000009 EMF_US 29471070v30

(d)     Upon the certification by the Liquidating Trustee that all Liquidating Trust Assets have been distributed, abandoned or otherwise disposed of, the members of the Liquidating Trust Advisory Board shall resign their positions, whereupon they shall be discharged from further duties and responsibilities.

(e)     The Liquidating Trust Advisory Board, in its discretion, may remove the Liquidating Trustee by majority vote. In the event the requisite approval is not obtained, the Liquidating Trustee may be removed by the Bankruptcy Court for cause shown. In the event of the resignation or removal of the Liquidating Trustee, the Liquidating Trust Advisory Board shall, by majority vote, designate a person to serve as successor Liquidating Trustee. In the event the Liquidating Trust Advisory Board does not designate a person to serve as successor Liquidating Trustee, the Bankruptcy Court shall make such selection.

(f)     Notwithstanding anything to the contrary in this Plan, neither the Liquidating Trust Advisory Board nor any of its members, designees, or any duly designated agent or representative of any such party shall be liable for the act, default or misconduct of any other member of the Liquidating Trust Advisory Board, nor shall any member be liable for anything other than such member's own gross negligence or willful misconduct. The Liquidating Trust Advisory Board may, in connection with the performance of its duties, and in its sole and absolute discretion, consult with its counsel, accountants or other professionals, and shall not be liable for anything done or omitted or suffered to be done in accordance with such advice or opinions. If the Liquidating Trust Advisory Board determines not to consult with its counsel, accountants or other professionals, that fact alone shall not be deemed to impose any liability on the Liquidating Trust Advisory Board, or its members and/or designees.

(g)     To the extent the Liquidating Trust Advisory Board adopts by-laws, no provisions of such by-laws shall supersede any express provision of the Plan.

9.     Transferability

The Debtors shall cause the interests in the Liquidating Trust to be non-transferrable and any such transfer shall be disregarded by the applicable Liquidating Trustee except with respect to a transfer by will or under laws of descent and distribution; provided, however, such transfer will not be effective until and unless the Liquidating Trustee receives written notice of such transfer under the law of descent and distribution.

10.     Final Administration of Liquidating Trusts

Upon the earlier of (i) payment in full of the Holders of Class 7 C Claims, or (ii) full administration of the Assets vested in the Liquidating Trust, and the satisfaction as far as possible of all remaining liabilities of the Liquidating Trust, in accordance with the Plan, the Liquidating Trustee, shall: (i) terminate the Liquidating Trust, notwithstanding any applicable law, solely by filing written notice of termination with the Bankruptcy Court and providing such notice to the Beneficiaries and the United States Trustee; (ii) as soon as practicable after termination of the Liquidating Trust, provide to the United States Trustee, and file with the Bankruptcy Court, a final account and report of Liquidating Trust administration; and (iii)

thereupon distribute the Liquidating Trust Residual Assets and be forever discharged of and released from all power, duties, and responsibilities arising under the Liquidating Trust Agreement and the Plan or relating to the Debtors or their Estates. Every effort shall be made to effectuate such termination no later than the time reasonably necessary to accomplish the Liquidating Trust's purpose of liquidating the Liquidating Trust Assets and distributing the proceeds thereof to the Beneficiaries in accordance with the Liquidating Trust Agreement and the Plan, and in no event shall the Liquidating Trust continue for more than five (5) years after the Effective Date without further order of the Bankruptcy Court.

## H. Consolidated Holdco Plan Administrator.

### 1. Appointment of Plan Administrator

On or before the Plan Supplement Filing Date, the Plan Administrator shall be selected by the REIT and the Committee; provided, however, that none of the Lone Star Entities, Trust Preferred Holders, or Trust Preferred Indenture Trustee, or their Affiliates, officers, directors or employees shall serve as Plan Administrator. Prior to the Confirmation Date, the Person(s) designated as Plan Administrator shall file an affidavit demonstrating that such Person is disinterested. If approved by the Bankruptcy Court in the Confirmation Order, the Person so designated shall become the Plan Administrator and be deemed sole director and officer of the Consolidated Holdco entities on the Effective Date, and shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Plan Administrator Retention Agreement.

### 2. Authority of Plan Administrator & Plan Administration Agreement

The Plan Administrator shall have full authority to take any steps necessary to administer and distribute the Consolidated Holdco Assets, including, without limitation, the duty and obligation to liquidate Consolidated Holdco Assets, and to pursue and settle any other Estate claims and Causes of Action constituting Consolidated Holdco Assets and as provided under the Plan Administration Agreement. Without further action of the directors or shareholders of Consolidated Holdco, on the Effective Date, the Plan Administration Agreement, substantially in the form included in the Plan Supplement, shall become effective.

### 3. Plan Administration Expenses

The Consolidated Holdco Plan Administration Expenses shall be the responsibility of and paid by Consolidated Holdco from Consolidated Holdco Assets.

### 4. Plan Administrator Professionals

The Plan Administrator may retain professionals, in its sole discretion, and at the sole expense of Consolidated Holdco, to aid in the performance of its responsibilities pursuant to the terms of this Plan including, without limitation, the liquidation and distribution of Consolidated Holdco Assets.

74392.000009 EMF_US 29471070v30

5.    Consolidated Holdco Tax Returns

Except as provided in the Plan, the Plan Administrator shall be responsible for filing all federal, state and local tax returns for Consolidated Holdco.

6.    Consolidated Holdco Distributions.

Upon the Effective Date, the Cash of Consolidated Holdco (excluding any Cash belonging to the Consolidated Debtors, including, but not limited to the Tax Refunds and the Lone Star Consolidated Debtors Settlement Payment), including the Lone Star Trust Preferred Settlement Payment, shall be used to make (i) payment of or reserve for the Consolidated Holdco Professional Fee Claim Payment in an amount not to exceed Two Million Dollars ($2,000,000) combined, (ii) an appropriate reserve for Consolidated Holdco Plan Administration Expenses not to exceed One Million Dollars ($1,000,000) (unless after the Effective Date some other amount is agreed upon by the REIT, the Lone Star Entities, and the Plan Administrator), (iii) distributions to Holders of Class 7 H Consolidated Holdco Convenience Claims (including the Viera Claims against Holdco) in an amount not to exceed One Million Five Hundred Thousand Dollars ($1,500,000), and (iv) reserves, in an amount, not to exceed One Million Dollars ($1,000,000), for other Claims against Consolidated Holdco (if any) as provided under the Plan. The balance of the Cash of Consolidated Holdco, including the Lone Star Trust Preferred Settlement Payment, shall be distributed Pro Rata (after adjusting for the Lone Star Trust Preferred Settlement Payment to the Trust Preferred Indenture Trustee as if it were part of such distribution) on account of (a) the Allowed Class 8 H Claim of the Trust Preferred Indenture Trustee (not to exceed a total distribution upon such Claim, including the Lone Star Trust Preferred Settlement Payment, of $40 million), and (b) the Allowed Class 6 H Claim of the REIT, provided that REIT First Distribution shall not exceed Nine Million Dollars ($9,000,000) unless the Allowed Class 8 H Claim of the Trust Preferred Indenture Trustee has received distributions equal to or greater than Forty Million Dollars ($40,000,000) (including the Lone Star Trust Preferred Settlement Payment).

7.    Trust Preferred Holdco Distributions Shortfall.

To the extent that the aggregate amount of the Trust Preferred Holdco Distributions plus the Lone Star Trust Preferred Settlement Payment is less than $40 million, such shortfall shall be paid to the Trust Preferred Indenture Trustee on the Effective Date from the following sources in the following priority (x) first, from any amount by which the REIT First Distribution would otherwise exceed Nine Million Dollars ($9,000,000), (y) next, to the extent of any remaining shortfall up to a maximum amount of Eight Million Dollars ($8,000,000), 50% from the Lone Star Advance (not to exceed Four Million Dollars ($4,000,000)), and 50% from the REIT First Distribution (not to exceed Four Million Dollars ($4,000,000), and (z) thereafter, to the extent of any remaining shortfall, from the REIT First Distribution.

8.    Consolidated Holdco Priority Administrative Claims.

From and after the Effective Date, and after the payment of or funding of (i) the Consolidated Holdco Reserves, (ii) the Lone Star Trust Preferred Settlement Payment and the

first $10,000,000 of the Trust Preferred Holdco Distributions to the Trust Preferred Indenture Trustee, (iii) the REIT First Distribution, and (iv) other payments due under the Plan, any funds collected by the Plan Administrator from any source constituting Consolidated Holdco Assets shall be distributed on a monthly basis in the following order and priority: (a) first, to the REIT on account of any unpaid portion of the REIT First Distribution, if any, until paid in full; (b) next, 50% to the Lone Star Entities that funded the Lone Star Advance to repay the Lone Star Advance until it is repaid in full, and 50% to Holders of Allowed Class 3 H, 4 H, and 6 H Claims, which shall be divided on a Pro Rata basis amongst such Holders; and (c) once the Lone Star Advance has been repaid in full, to Holders of Allowed Class 3 H, 4 H, and 6 H Claims, which shall be divided on a Pro Rata basis amongst such Holders until such Claims have been paid in full; and (d) the balance, if any, shall be used in accordance with the terms of this Plan. Subject to the distribution priorities set forth above, including the payment of or reserve for the Consolidated Holdco Reserves, the claims for (a) repayment of the Lone Star Advance, and (b) payment of the unpaid deficiency from the REIT First Distribution shall be entitled to an Administrative Claim against the Consolidated Holdco Distributable Cash under § 503 of the Bankruptcy Code with priority over any and all administrative expenses of the kind specified in §§ 503(b) or 507(b) of the Bankruptcy Code.

9.    Final Administration of Consolidated Holdco Assets

Upon full administration of the Consolidated Holdco Assets, and the satisfaction as far as possible of all remaining liabilities of Consolidated Holdco, in accordance with the Plan, the Plan Administrator, shall: (i) dissolve and terminate Consolidated Holdco, notwithstanding any applicable law, solely by filing written notice of termination with the Bankruptcy Court and providing such notice to the Holders of Allowed Claims against Consolidated Holdco and the United States Trustee; (ii) as soon as practicable after termination and dissolution of Consolidated Holdco, provide to the United States Trustee, and file with the Bankruptcy Court, a final account and report of the administration of the Consolidated Holdco Assets; and (iii) thereupon distribute the Consolidated Holdco Residual Assets and be forever discharged of and released from all power, duties and responsibilities arising under the Plan or relating to the Debtors or their Estates. Every effort shall be made to effectuate such termination no later than the time reasonably necessary to accomplish the purpose of liquidating the Consolidated Holdco Assets and distributing the proceeds thereof to the creditors of Consolidated Holdco in accordance the Plan, and in no event shall Consolidated Holdco continue for more than five (5) years after the Effective Date without further order of the Bankruptcy Court.

I.    **Global Settlement and Compromise of Disputes**

The Plan is deemed to be a motion pursuant to §§ 363, 502, and 1123 of the Bankruptcy Code and Fed. R. Bankr. P 9019 to approve the settlements provided for in § 8.2 of the Plan between and among the Debtors, their major creditor constituencies, including the Trust Preferred Holders and the Trust Preferred Indenture Trustee, the REIT, the REIT Committee, and the Lone Star Entities. Upon the occurrence of the Effective Date, the Plan Support Agreement and Term Sheet shall be deemed superseded by the confirmed Plan and Confirmation Order and shall have no further force or effect.

74392.000009 EMF_US 29471070v30

1.  Terms of the Global Settlement.

(a)  REIT Adversary Settlement.  Prior to the Bar Date, the REIT Committee filed on behalf of the REIT proofs of claim against all the Debtors asserting unsecured claims in the amount of at least $227 Million, which claims have been contested by the Committee in the REIT Adversary.  The Confirmation Order shall include approval of the settlement of the REIT Adversary, and, upon the Effective Date, the REIT Adversary shall be dismissed or withdrawn with prejudice and the REIT shall have as Allowed Claims: (1) an Allowed Unsecured Claim against the Consolidated Debtors in the amount of $37.5 Million, which Claim shall be included in and receive the treatment provided for in Class 3 C; (2) the REIT Junior Claim in the amount of $15 Million in Class 7 C; which Claim shall be included in and receive the treatment provided for in Class 7 C; and (3) an Allowed Unsecured Claim against Consolidated Holdco in the amount of $20 Million in Class 6 H, which Claim shall receive the treatment provided under the Plan, including the REIT First Distribution.  Further, the REIT is waiving its subordination rights against the Trust Preferred Holders or the Trust Preferred Indenture Trustee to the extent necessary to provide those creditors with the treatment described below[31].  The REIT Committee shall continue to have the right to file a Claim for its substantial contribution in these proceedings pursuant to § 503(b) of the Bankruptcy Code, which application shall be provided to the Debtors and the Committee prior to filing for review.  Nothing contained in the Plan shall prohibit any party-in-interest from filing an objection to such Claim.  To the extent the Claims of the REIT, or any Claims asserted by other Persons on behalf of the REIT, against the Debtors, the Estates, and the Assets of the Debtors, are not otherwise Allowed under the Plan, such Claims are disallowed, expunged, and released.

Absent the proposed settlement of the REIT Adversary Proceeding, the estates would be required to continue to finance the Committee's prosecution of its litigation efforts to subordinate and otherwise contest the allowance of the claims asserted on behalf of the REIT.  Due to the risks inherent in litigation, the parties to the Plan Support Agreement and Term Sheet have concluded that the REIT Adversary Proceeding should be settled.  The Debtors believe that the proposed settlement of the REIT Adversary Proceeding is in the best interests of the Estates.

(b)  Citigroup Settlement.  Citigroup Global Markets Realty Corp. filed a proof of claim against the AHL, Inc. alleging claims and damages in excess of $43 million arising from the sale of mortgage loans to it by AHL, Inc., including, but not limited to, claims for breach of contract, fraud, unjust enrichment and indemnification.  The Confirmation Order shall include approval of the settlement of the Claims of Citigroup, and, upon the Effective Date, Citigroup shall have an Allowed Unsecured Claim against Debtor AHL in the amount of $12.1 Million, which Claim shall be classified as an Allowed Class 3 C Claim.  Citigroup shall continue to have the right to file a Claim for its substantial contribution in these proceedings pursuant to § 503(b) of the Bankruptcy Code which Application shall be provided to Debtors and the Committee prior to filing for review.  Nothing contained in the Plan shall prohibit any party-in-interest from filing an objection to such Claim.  Except as to its Claim under § 503(b) of the Bankruptcy Code, Citigroup shall not have the right to otherwise amend their Proof of Claim or file or assert any

---

[31] The Trust Preferred Security Holders deny that the Claims arising from the Trust Preferred Note and the Trust Preferred Guaranty are subordinate to the Claims of the REIT.

new Claims against the Debtors and the Claims of Citigroup and its affiliates against the Debtors that are not otherwise Allowed under this Plan, such Claims are disallowed, released, and expunged.

(c)  Trust Preferred Settlement. The Confirmation Order shall include approval of the settlement of the Claims relating to the Trust Preferred Securities, Trust Preferred Notes, the Trust Preferred Guarantee, and the Trust Preferred Note Claims (which includes any claims that have been or could be asserted by the Trust Preferred Holders or the Trust Preferred Indenture Trustee), and, upon the Effective Date, all such Claims against Consolidated Holdco, whether direct, indirect, or derivative, including any claims by the Trust Preferred Indenture Trustee for compensation and indemnity under the Trust Preferred Indenture, Trust Declaration, and Trust Preferred Guarantee shall be deemed satisfied and paid in full by the Lone Star Trust Preferred Settlement Payment and the Trust Preferred Holdco Distributions, all such Claims against the Consolidated Debtors, whether direct, indirect, or derivative, shall be reduced, consolidated, subordinated, and Allowed as a Class 9 C Claim in the amount of Five Million Dollars ($5,000,000) held by the Trust Preferred Indenture Trustee. This treatment for the Claims of the Trust Preferred Indenture Trustee and the Trust Preferred Holder can be attributed in part to REIT's waiver of its subordination rights against such Trust Preferred Indenture Trustee and the Trust Preferred to the extent called for by this Plan.[32] Accordingly, upon the Effective Date, all scheduled claims and proofs of claim held by Wells Fargo Bank, N.A., in its capacity as Indenture Trustee and Property Trustee, Kodiak CDO I, Ltd., Kodiak CDO II, Ltd., and/or JP Morgan Funding LLC will be satisfied, discharged, and expunged in accordance with this Global Settlement and the Plan. Further, the Trust Preferred Adversary Proceeding shall be dismissed or withdrawn, with prejudice. Further, the Trust Preferred Indenture Trustee and the Trust Preferred Holders waive any right, claim, or entitlement to seek reimbursement of any fees and expenses incurred in connection with these Chapter 11 Cases from the Debtors or their Estates (including the Liquidating Trustee or Plan Administrator) under § 503(b) of the Bankruptcy Code or any other applicable section of the Bankruptcy Code or applicable law.

(d)  Lone Star Settlement. Provided that less than 25% in amount of the Allowed Unsecured Claims against the Consolidated Debtors eligible to vote on the Plan as of the Confirmation Date elect treatment as Class 4 C Creditors (rather than Class 3 C Creditors) and to withhold releases of direct and personal claims under the Plan:

(i)  one or more of the Lone Star Entities (other than LSF MRA, LLC) shall make the Lone Star Creditor Release Settlement Payment to the Consolidated Debtors on or before the Effective Date;

---

[32] The Trust Preferred Security Holders deny that the Claims arising from the Trust Preferred Notes and the Trust Preferred Guaranty are subordinated to the Claims asserted by the REIT. It should be further noted that part of the consideration going to the Trust Preferred Indenture Trustee and the Trust Preferred Holders under the Plan and global settlement comes from non-debtor sources (*i.e.*, the Lone Star Entities and their insurers) in exchange for the release of the Trust Preferred Indenture Trustee and the Trust Preferred Holders against the Lone Star Releasees and the Plan Releasees.

(ii)     one or more of the Lone Star Entities (other than LSF MRA, LLC) shall make the Lone Star Advance to Consolidated Holdco on or before the Effective Date;

(iii)    one or more of the Lone Star Entities (other than LSF MRA, LLC) shall pay the Lone Star Consolidated Debtors Settlement Payment to the Consolidated Debtors on or before the Effective Date;

(iv)    one or more of the Lone Star Entities (other than LSF MRA, LLC), their insurers, and the Debtors' insurers under the D&O Policies shall make their respective portion of the Lone Star Trust Preferred Settlement Payment, as provided under the Trust Preferred Indenture and related documents, to the Trust Preferred Indenture Trustee on behalf of the Trust Preferred Holders in satisfaction of the Claims of the Trust Preferred Indenture Trustee, the Trust Preferred Holders or any other Person holding a Claim arising under or related, directly or indirectly, to the Trust Preferred Indenture and related documents against Holdco (including any claims that have been asserted or could be asserted by the Trust Preferred Indenture Trustee or the Trust Preferred Holders) as provided under the Plan;

(v)     the Lone Star Entities and their Affiliates shall be deemed to have waived, for purposes of the Plan and receiving distributions under the Plan, either directly or indirectly, all Claims against the Consolidated Debtors or their respective properties, including those asserted in the Lone Star Proofs of Claim and all such Claims shall be expunged, discharged and released; and

(vi)    the Lone Star Entities and their Affiliates shall be deemed to have subordinated, for purposes of the Plan and receiving distributions hereunder, all Claims asserted against Consolidated Holdco in favor of Classes 3 H and 6 H if those applicable Classes do not vote to reject the Plan, and potentially Class 9 H, to the extent such Claims of the Lone Star Entities are not disallowed, so that any distributions that would be made to the Lone Star Entities on account of Claims against Consolidated Holdco on a pro rata basis (the "Subordinated Distributions") will first be distributed in accordance with this Plan to such non-rejecting Classes, or, with respect to the Holders of Class 9 H Claims, to Holders who elect to provide the Creditor Release, until such Claims are paid in full (which Subordinated Distributions shall not be subject to disgorgement). The Plan Administrator shall distribute the Subordinate Distributions pursuant to the terms of the Plan and the Lone Star Entities and Affiliates have waived any rights of subrogation.

(e)     **Release of Settling Parties' Claims against the Lone Star Releasees and Plan Releasees.**

**Upon the Effective Date of the Plan, for good and valuable consideration, pursuant to the Plan, except as otherwise specifically provided for in the Plan, the Lone Star Releasees and Plan Releasees shall be released from all claims, potential claims, suits, debts, liens, contracts, agreements, promises, liabilities, demands, rights, costs, expenses, actions, causes of action, and damages of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, which any releasor**

74392.000009 EMF_US 29471070v30

identified below has or may have, or which have been asserted or could be asserted in the future, which are based upon, arise out of, or in any way relate to the Debtors or their business or operations (including the business or operations of the REIT and the other Non-Debtor Subsidiaries and any claims under Chapter 5 of the Bankruptcy Code or similar State or Federal law), by (i) the estates of the Consolidated Debtors and Consolidated Holdco, (ii) the non-debtor Affiliates of the Debtors, (iii) the REIT (subject to the carveout for certain insurance coverage claims set forth below), and (iv) the Committee.

(f)     Release of Creditors' Claims against the Lone Star Releasees and Plan Releasees.

Upon the Effective Date of the Plan, for good and valuable consideration, pursuant to the Plan, except as otherwise specifically provided for in the Plan, the Lone Star Releasees and Plan Releasees shall be released from all claims, potential claims, suits, debts, liens, contracts, agreements, promises, liabilities, demands, rights, costs, expenses, actions, causes of action, and damages of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, which any releasor identified below has or may have, or which have been asserted or could be asserted in the future, which are based upon, arise out of, or in any way relate to the Debtors or their business or operations (including the business or operations of the REIT and the other Non-Debtor Subsidiaries and any claims under Chapter 5 of the Bankruptcy Code or similar State or Federal law), by (i) individual creditors of the Consolidated Debtors in Class 3 C, (ii) individual creditors of Consolidated Holdco in Class 3 H, and, if applicable, Class 9 H, (iii) individual creditors making the Consolidated Debtors Convenience Class Election, and (iv) individual creditors making the Consolidated Holdco Convenience Class Election.

(g)     Mutual Releases Amongst Settling Parties.

Upon the Effective Date, for good and valuable consideration, each of the Trust Preferred Holders, the Trust Preferred Indenture Trustee, the REIT, the Lone Star Releasees, the Plan Releasees, the Debtors, the Non-Debtor Subsidiaries, the Committee, members of the  Committee acting in their capacity as such, the REIT Committee, the members of the REIT Committee acting in their capacity as such, and Citigroup, effective pursuant to the Confirmation Order, shall, except as otherwise specifically provided for in the Plan, grant a full and complete release to each of the Lone Star Releasees, the Plan Releasees, the Trust Preferred Holders, the Trust Preferred Indenture Trustee, the REIT, the Debtors, the Non-Debtor Subsidiaries, the Committee, the members of the Committee acting in their capacity as such, the REIT Committee, the members of the REIT Committee acting in their capacity as such, and Citigroup and to their predecessor entities, Affiliates, successors and assigns and their respective professionals and advisors from all claims, potential claims, suits, debts, liens, contracts, agreements, promises, liabilities, demands, rights, costs, expenses, actions, causes of action, and damages of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, which the releasor has or may have, or which have been asserted or may be asserted in the

74392.000009 EMF_US 29471070v30

future, that are based upon, arise out of, or in any way relate to the Debtors or their business or operations related to the Debtors and their businesses (including related to the REIT and any other Non-Debtor Subsidiaries and Affiliates of the Debtors and their business or operations and any claims under Chapter 5 of the Bankruptcy Code or similar State or Federal law), including without limitation any and all claims or causes of action that were set forth or could have been set forth in any complaint or pleading filed by any of the foregoing in the Trust Preferred Adversary Proceeding, the REIT Adversary Proceedings or elsewhere; provided, however, that nothing contained herein or therein shall release any releasor's rights and claims under this Plan or the Allowed Claims granted to it under the Plan.

(h)     Notwithstanding any other provisions of the Plan, no current or former officer or director of any of the Lone Star Entities or of their Affiliates or subsidiaries or of the Debtors shall receive a release from the Debtors without providing (i) a mutual release to the Debtors and their estates, and (ii) a full release to the insurers set forth in Schedule B to the Plan Support Agreement and Term Sheet, the REIT and the other non-debtor subsidiaries of the Debtors for the matters released in the Plan, which for the convenience of the officers and directors shall be deemed granted as of the Effective Date of the Plan unless such officer or director objects on or prior to the hearing to consider confirmation of the Plan and a Final Order is entered sustaining such objection; provided, however, that restructuring advisors retained as officers of the Debtors pursuant to an order entered by the Bankruptcy Court shall retain any claims against the Insurers pursuant to any valid insurance policy.

(i)     Notwithstanding any other provisions of the Plan, the release of the Debtors' pre- and post-petition professionals and restructuring advisors retained or employed pursuant to §§ 363 and 327 of the Bankruptcy Code set forth in the Plan shall not include the release (i) of any claim for the avoidance of a preferential transfer under § 547 of the Bankruptcy Code, (ii) of any claim for the return of an unused retainer, or (iii) of any postpetition claim against a restructuring advisor employed under § 363 or an estate professional retained under § 327 and compensated under § 330 of the Bankruptcy Code (which restructuring advisors and retained professionals shall received the benefit of and the corresponding exclusion to the exculpation set forth in the Plan).

(j)     Notwithstanding any other provisions of the Plan, the foregoing releases shall not be construed to release any claims, rights or causes of action that any professional or restructuring advisor retained pre- or post-petition by the Debtors or their non-debtor Affiliates may have against its current or former employees.

(k)     Nothing in the Plan shall release any party from any of its obligations under the Plan.

(l)     Upon or after the Effective Date, the Liquidating Trustee, the Plan Administrator, and the parties to the Plan Support Agreement and Term Sheet will comply, without cost or expense to them, with any reasonable requests received from each other for written confirmation of the effectiveness of the releases as set forth herein.

(m)     The Consolidated Debtors, the Liquidating Trustee, Consolidated Holdco,. and the Holdco Plan Administrator shall agree and covenant not to make, assert or pursue any claim or commence any action or litigation against the Lone Star Releasees, the Plan Releasees, or the current and former directors and officers of the Debtors released as set forth herein or under or against the applicable D&O Policies; provided, however, that any release of current or former Directors and Officers of the Debtors as set forth in the Plan shall also be conditioned on such officer or director granting a full release of claims against the Consolidated Debtors and their respective properties (including all claims under or that could be asserted under filed proofs of claim, which claims shall be deemed expunged and relinquished).     Notwithstanding the foregoing, this provision will not limit, release or modify any Retained Advisor Indemnification Obligations or any rights of a restructuring advisor retained pursuant to an order of the Bankruptcy Court to coverage from an insurance policy of the Debtors for acts occurring during the period from the Petition Date through and including the Confirmation Date.

(n)     Each of these release provisions is an integral part of the Plan and is essential to its implementation.  These release provisions shall be effective pursuant to the Confirmation Order, without any further action.

## J.     Means for Implementation of the Plan

1.     <u>Substantive Consolidation</u>

Substantive consolidation is an equitable remedy that the Bankruptcy Court may be asked to apply in cases that involve affiliated debtors.  As contrasted with procedural consolidation, substantive consolidation may affect the substantive rights and obligations of creditors and debtors.  Substantive consolidation involves the pooling and merging of the assets and liabilities of the debtors in the substantively consolidated group; all of the debtors in that group are treated as if they were a single corporate and economic entity for purposes of the plan.  The consolidated assets create a single fund from which all claims against each of the consolidated debtors is satisfied.  Consequently, a creditor of one of the substantively consolidated debtors is treated as a creditor of the substantively consolidated group of debtors and issues of corporate ownership of property and individual corporate liability on obligations are ignored.  However, substantive consolidation does not affect the debtors' separate corporate existence or independent ownership of property for any purposes other than for making distributions of property under a plan of reorganization or otherwise as necessary to implement the plan.

The power to substantively consolidate interrelated bankruptcy estates arises from the general equitable powers of a Bankruptcy Court established in section 105(a) of the Bankruptcy Code.  Within this framework, the principal factors to which courts have looked to determine the propriety of substantive consolidation include: (i) whether creditors dealt with the debtor entities as a single economic unit and did not rely on their separate identities in extending credit, and (ii) whether the affairs of the debtors are so entangled that the consolidation will benefit all creditors of the debtors' estates.  Additional factors to be considered include: (i) the presence or absence of consolidated financial statements; (ii) the existence of inter-company guaranties or loans; (iii) the unity of interest and ownership between the various corporate entities; (iv) the transfer of assets without formal observance of corporate formalities; (v) the degree of difficulty in

74392.000009 EMF_US 29471070v30

segregating and ascertaining individual assets and liabilities; (vi) common directors and/or officers shared by the parents, affiliates and subsidiaries; (vii) a parent or its affiliates financing one another; and (viii) commingling of assets and business functions.

The Plan provides for the Estates of AHL, Inc., Inzura Services, Inc., and Windsor Management Co., d/b/a AHL Foreclosure Services Co. to be substantively consolidated for purposes related to the Plan and any distributions made thereunder. The Plan also provides for the Estate of Accredited Home Lenders Holding Co. to be substantively consolidated with the Estate of its wholly-owned subsidiary, Vendor Management Services, L.L.C, d/b/a Inzura Settlement Services. As discussed above, Intercompany Claims amongst the Estates being consolidated shall be released, all Claims against any of the Estates being consolidated shall be deemed filed against the relevant consolidated Estate, which shall be deemed a single obligation of the relevant Estate, and the Estates shall be effectively treated as one entity for purposes of distribution. The Debtors believe that the substantive consolidation of these Estates in this manner will facilitate confirmation of the Plan, foster similarity and fairness of treatment of Holders of Claims of similar priority, and will not have a materially adverse impact upon the distributions to unsecured creditors.

> 2.  Settlement Amongst the Estates

The allocation of certain Assets is an integral component of the comprehensive compromise and settlement concerning Intercompany Claims and intra-Debtor issues as determined in light of a number of facts, including, but not limited to, (i) respective legal claims, rights and entitlements of the Debtors, (ii) validity and enforceability of Intercompany Claims, (iii) Intercompany Claims not reflected as inter-company payables or receivables in the Debtors' books and records, (iv) relative value of Assets under administration in each Debtor, (v) Intercompany Claims for contribution or reimbursement, (vi) the necessity of resolving inter-Estate and inter-Debtor issues and disputes through the Plan, and (vii) administration and liquidation of Trust Assets unfettered or effected by inter-Estate or inter-Debtor conflicts of interest or multiple claims. As part of the process of settling the Intercompany Claims and intra-Debtor issues, AP Services performed an analysis of the administrative claims incurred by the Debtors on a project by project basis, the results of which have been factored into the proposed settlement among the estates.

In order to facilitate an orderly wind down of these estates, the Debtors have agreed to settle a number of disputes that may exist among the Debtors. Among the disputes that exist are the following:

- The potential cause of action between Holdco and AHL, Inc. relating to the transfer of ownership of AHL Canada from Holdco to AHL, Inc. and the transfer of ownership of the REIT from AHL, Inc. and Holdco;

- Intercompany Claims between AHL, Inc. and Holdco, including the scheduled Claim of Holdco against AHL, Inc.;

- A potential dispute among the Debtors over the ownership of the Tax Refunds;

- A potential dispute over the allocation of professional fees and administrative expenses among the various Debtors.

The general terms of the settlement set forth in the Plan include the following:

- The interests of AHL, Inc. in AHL Canada, the subsidiaries thereof, and the proceeds therefrom shall be transferred to Consolidated Holdco, and AHL Canada shall repay its obligations to AHL, Inc. By unwinding this transfer without litigation, AHL Canada's assets, which have an estimated undiscounted value of $25 to $30 million, will be distributed to the Consolidated Holdco Creditors;

- All Cash held by Vendor Management Services, Inc. will be transferred to Consolidated Holdco;

- The Consolidated Debtors shall be responsible for payment of Professional Fee Administrative Claims and CRO fees and expenses after receiving a $2 Million contribution from Consolidated Holdco;

- Any Tax Refunds received by the Debtors, any rights to receive any Tax Refunds, whether contingent, disputed, or unliquidated, and any proceeds of any Tax Refunds, shall be vested in the Liquidating Trust and shall be paid to the Liquidating Trust in the same manner that such Tax Refunds would be paid to the Debtors or original taxpayers, and shall be distributed to the Consolidated Debtors' Creditors, except for the portion of the Tax Refunds designated in the Plan for the Trust Preferred Holdco Distributions;

- The Common Securities in the Accredited Preferred Securities Trust I shall be transferred by Holdco to the Consolidated Debtors;

- The equity interest in the REIT held by Holdco shall be abandoned or abandoned and transferred to the REIT Preferred Holders as provided for in the Plan; and

- All rights and interests in the First American Trust FSB Deferred Compensation Trust settlement payment shall be transferred to the Liquidating Trust.

On or before the Effective Date, AHL Canada will pay AHL, Inc. the amounts it owes on an intercompany basis. All other intercompany claims between and among the Debtors shall be released, including the following intercompany claims, as listed on the schedules of liabilities as of the Petition Date that the Debtors filed with the Bankruptcy Court:

| Obligor | Obligee | Scheduled Amount |
|---|---|---|
| AHL, Inc. | Holdco | $19,472,980 |
| AHL, Inc. | Inzura Insurance Services, Inc. | $5,064,952 |
| Vendor Management Svcs., LLC | AHL, Inc. | $894,917 |
| Windsor Management Co. | AHL, Inc. | $582,412 |
| Vendor Management Svcs., LLC | Inzura Insurance Services, Inc. | $458 |

3. Injunction

74392.000009 EMF_US 29471070v30

Since the Petition Date, the Debtors and their Assets have enjoyed the protection of the "automatic stay," a provision in section 362 of the Bankruptcy Code. The automatic stay prohibits, among other things, the commencement or continuation of a judicial, administrative, or other action or proceeding against the Debtors. The automatic stay also prohibits the enforcement of any judgment against the Debtors, any act to obtain possession of the Debtors' property or to exercise control over the Debtors' property, and any act to collect, assess, or recover a Claim against the Debtor. The automatic stay channels the Claims of Creditors through the bankruptcy process, thereby ensuring that equally-situated creditors receive equal treatment.

Under the Plan, the Court will enter an Injunction that will continue to provide the Debtors, the Liquidating Trust, the Liquidating Trustee, and their agents, successors, and assigns with the protections of the automatic stay until all distributions are made from the Liquidating Trust and the Bankruptcy Proceeding is closed.

However, this continuing Injunction shall not prohibit the commencement or continuation of any proceedings against the Debtors or real property in which the Debtors may have an interest, provided that those proceedings do not affect or give rise to any enforceable Claims against the Debtors, the Plan Administrator, the Liquidating Trust, the Liquidating Trustee, their respective agents, successors, and assigns, and their property. To the extent an un-stayed legal proceeding does give rise to a judgment, order, declaration, or claim that affects the Debtors, the Liquidating Trust, the Liquidating Trustee, the Plan Administrator their respective agents, successors, and assigns, and their property, such judgment, order, declaration, or claim shall be void.

This exception to the Injunction is designed to allow legal proceedings in which the Debtors must be included as nominal parties to continue as normal without further order of the Bankruptcy Court, while protecting the Assets of the Debtors and the Liquidating Trusts and ensuring that similarly-situated Claim Holders continue to receive equal treatment.

4. United States Trustee Fees

On and after the Effective Date, all fees payable to the United States Trustee shall be paid as and when due by the Liquidating Trustee, which payments shall be considered a reasonable expense of the Liquidating Trust.

5. Continued Cooperation

On or after the Effective Date, the Debtors, the Liquidating Trust, the Plan Administrator, the Liquidating Trustee, the Lone Star Releasees, the Plan Releasees, the REIT, the REIT Committee, the Trust Preferred Indenture Trustee, and the Trust Preferred Holders shall provide each other with such reasonable cooperation to effectuate the provisions of the Plan as may be reasonably requested, including, but not limited to, executing such documents as might be reasonably requested to carry out the terms of the Plan.

6. Consolidated Debtors' Continued Existence

74392.000009 EMF_US 29471070v30

From and after the Effective Date, the Consolidated Debtors shall remain in existence for the sole purpose of winding up the Debtors' businesses and transferring the Assets to the applicable Liquidating Trust and the Liquidating Trustee or its nominee shall be appointed officer and director of the Consolidated Debtors. Upon or before the completion of such liquidation, the Liquidating Trustee may file a certificate of dissolution as to each of the Consolidated Debtors. The Liquidating Trustee shall not be compelled to dissolve any Debtor if to do so would unduly burden the Liquidating Trust, notwithstanding any applicable law. On the Effective Date, the officers and the directors of the Debtors shall cease to serve and the Liquidating Trustee shall be deemed the sole director and officer of each Consolidated Debtor for all purposes. On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders or directors of one or more of the Debtors or Consolidated Holdco or Consolidated Debtors, shall be authorized and approved in all respects, in each case without further action under applicable law, regulation, order or rule. Without limiting the foregoing, from and after the Effective Date, Consolidated Holdco or the Consolidated Debtors shall take any and all actions deemed necessary or appropriate to consummate the transactions under the Plan, and such Entities shall not require the affirmative vote of the Holders of Interests in order to take any corporate action.

7.    Consolidated Holdco's Continued Existence

From and after the Effective Date, Consolidated Holdco shall remain in existence for the sole purpose of winding up the Debtors' businesses, liquidating Consolidated Holdco Assets, and making distributions in accordance with this Plan. Upon or before the completion of such liquidation, the Plan Administrator may file a certificate of dissolution as to each of the Consolidated Holdco entities. The Plan Administrator shall not be compelled to dissolve any Debtor if to do so would unduly burden Consolidated Holdco, notwithstanding any applicable law. On the Effective Date, the officers and the directors of the Consolidated Holdco shall cease to serve and the Plan Administrator shall be deemed the sole director and officer of each Consolidated Holdco entity for all purposes. On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders or directors of one or more of the Debtors or Consolidated Holdco or Consolidated Debtors, shall be authorized and approved in all respects, in each case without further action under applicable law, regulation, order or rule. Without limiting the foregoing, from and after the Effective Date, Consolidated Holdco or the Consolidated Debtors shall take any and all actions deemed necessary or appropriate to consummate the transactions under the Plan, and such Entities shall not require the affirmative vote of the Holders of Interests in order to take any corporate action.

8.    Debtors' Books and Records

On the Effective Date, the Consolidated Debtors' books and records, in any form, including all electronic records, shall be transferred to the Liquidating Trust, and the Consolidated Holdco books and records shall be vested with the Plan Administrator. Books and records that cannot be allocated amongst the Debtors shall be vested with the Consolidated Debtors. The Liquidating Trustee or the Plan Administrator shall be free, in his or her discretion, to abandon, destroy, or otherwise dispose of those books and records in compliance with applicable non-bankruptcy law, provided, however that, in the sole discretion of the Plan

Administrator or the Liquidating Trustee, as applicable, these books and records may be destroyed or disposed of beginning two (2) years after the Effective Date notwithstanding any applicable laws, rules, or regulations that would have required the Debtors to retain such books and records. While these books and records are retained, the Liquidating Trustee and the Plan Administrator shall take all reasonable steps necessary to comply with requests of the other to share the information contained therein with or provide copies of those books and records, at the expense of the requesting party.

9. Privileges

All Privileges shall be transferred, assigned and delivered to the Liquidating Trust, or shall remain with Consolidated Holdco, as applicable without waiver or release, and shall vest with the Liquidating Trustee or Plan Administrator, as applicable. The Liquidating Trustee and Plan Administrator shall hold and be the beneficiary of all Privileges and entitled to assert all Privileges. No Privilege shall be waived by disclosures to the Liquidating Trustee or Plan Administrator of the Debtors' documents, information or communications subject to attorney-client privileges, work product protections or immunities or protections from disclosure jointly held by the Debtors and the Committee.

10. Dissolution of Committee

On the fifth (5th) Business Date following the Effective Date, and provided the Liquidating Trust has become effective as provided under the Plan, the Committee will be dissolved and the Committee and its members shall be released and discharged from the rights and duties arising from or related to these chapter 11 cases and the retention or employment of the Committee professionals shall terminate, except with respect to final applications for professionals' compensation, provided that the Committee shall continue for the sole purpose of reviewing and taking any appropriate action (including, without limitation, filing objections thereto) in connection with Professional Fee Claims. The professionals retained by the Committee and the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered or expenses incurred after the fifth (5th) Business Day following the Effective Date, except for (i) services rendered and expenses incurred in connection with any applications by such professionals or Committee members for allowance of compensation and reimbursement of expenses pending on the Effective Date or timely Filed after the Effective Date as provided in this Plan, as approved by the Court, (ii) services rendered and expenses incurred as requested by the Committee in connection with Professional Fee Claims and (iii) services rendered or expenses incurred with respect to implementation or enforcement of the Plan. Notwithstanding the foregoing, the Committee may, at its own discretion, continue or resume its duties arising from or related to any pending litigation, contested matter, adversary proceeding or appeal to which it is a party and, in such a case, the Liquidating Trustee shall compensate the post-Effective Date fees and expenses of the Committee's professionals.

11. Accredited Preferred Securities Trust I Termination.

On the Effective Date all of the agreements and other documents evidencing the claim or right of any Holder against the Debtors pursuant to or related to the Trust Preferred Common

Securities, Trust Preferred Guarantee, Trust Preferred Indenture, Trust Preferred Note, Trust Preferred Note Claims, and/or Trust Preferred Securities shall be (i) automatically cancelled, discharged, terminated, and of no further force and effect, and (ii) deemed surrendered without any further act by the Debtors or the Trust Preferred Indenture Trustee under any applicable agreement, law, regulation, order, or rule. However, the Trust Preferred Common Securities, Trust Preferred Guarantee, Trust Preferred Indenture, Trust Preferred Note, Trust Preferred Note Claims, and Trust Preferred Securities shall continue in effect solely for the purposes of (A) (i) permitting the Trust Preferred Indenture Trustee to make any distributions on account of Allowed Class 7 H Claims pursuant to this Plan and perform such other necessary administrative functions with respect thereto, (ii) permitting the Trust Preferred Indenture Trustee to receive any payments it is entitled to under the Trust Preferred Indenture and exercise any rights it is entitled to exercise under the Trust Preferred Indentures; and (B) permitting Kodiak CDO I Ltd., Kodiak CDO II Ltd., and the Trust Preferred Indenture Trustee (i) to continue to participate in the prosecution, mediation, or settlement of the Trust Preferred Adversary Proceeding, or to appeal any order or decision arising from the Trust Preferred Adversary Proceeding, and (ii) to bring any other action, suit, or proceeding against the Lone Star Entities or any other persons or entities (other than the Debtors) relating to, arising from, or in connection with the Trust Preferred Common Securities, Trust Preferred Guarantee, Trust Preferred Indenture, Trust Preferred Note, Trust Preferred Note Claims, and/or Trust Preferred Securities, and to participate in the prosecution, mediation, and/or settlement of such action, suit, or proceeding, or to appeal any order or decision in such action, suit, or proceeding, provided that such action is not a Consolidated Holdco Asset or Consolidated Debtors Asset.

## K.    Executory Contracts and Unexpired Leases

The following shall be the treatment of Executory Contracts:

### 1.    Rejection of Certain Executory Contracts

All executory contracts and unexpired leases, other than those executory contracts and unexpired leases which (i) were executed subsequent to the Petition Date, (ii) have not expired by their own terms prior to the Confirmation Date, (iii) were assumed prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court, or (iv) were identified in the Plan Supplement as being assumed and assigned under this Plan, shall be deemed rejected upon the Confirmation Date. Upon the Effective Date, all executory contracts and unexpired leases that (i) were executed subsequent to the Petition Date, (ii) were assumed prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court, or (iii) were identified in the Plan Supplement as being assumed and assigned under this Plan, shall either (i) be assumed by Consolidated Holdco, if such leases and contracts are with Consolidated Holdco, or (ii) be assumed by the Consolidated Debtors and assigned to the Liquidating Trust, if such leases and contracts are with the Consolidated Debtors. Unless otherwise agreed to by the parties to such lease or contract, or required by an Order of the Court, there shall be no cure costs or adequate protection payments required in connection with the assumption and assignment of such leases and contracts.

### 2.    Indemnification Agreements.

The obligations of the Debtors to indemnify any Person having served as an officer or director of the Debtors, to the extent provided in any of the Debtors' corporate governance documents or by written or other agreement or applicable law, shall be terminated and extinguished and, to any extent necessary, deemed an executory contract, terminated and rejected under the Plan, and such Person's rights to assert rejection damages claims arising there from, if any, shall be governed by Section 7.3 of the Plan. Notwithstanding the foregoing, this provision will not limit, release or modify any indemnification obligations to those persons who have served, during the period from and after the Petition Date, as officers of the Debtors pursuant to a court-approved retention or engagement letter (the "Retained Advisor Indemnification Obligations"). Notwithstanding any provision herein, no person making a claim with respect to indemnification obligation approved by the Bankruptcy Court shall be required to file a proof of claim with respect to such Retained Advisor Indemnification Obligations, and any right to payment with respect to such Retained Advisor Indemnification Obligations shall not be impacted by this Plan.

3. Employee Agreements.

On or before the Plan Supplement Filing Date, the Debtors will negotiate employment or consulting contracts with any current employees necessary to wind down the Debtors' Estates, with such contracts to be reasonably acceptable to the Committee. On the Effective Date, the Debtors' remaining employees will receive a payment equal to five (5) months' salary from the Consolidated Debtors, which payment shall be in satisfaction of any prior arrangements, agreements, or employment policies with the Debtors.

4. Insurance Policies.

To the extent that any and all insurance policies are considered executory contracts, then notwithstanding anything contained in the Plan to the contrary, such insurance policies that are policies of the Consolidated Debtors shall be deemed assumed and assigned to the Liquidating Trust, and such policies that are policies of Consolidated Holdco shall be assumed by Consolidated Holdco. Unless otherwise determined by the Bankruptcy Court, pursuant to a Final Order, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such policy. For the avoidance of any doubt, all rights under any insurance policy that is not an executory contract, and all rights under any other insurance policies under which the Debtors may be beneficiaries, shall be preserved, and, nothing herein shall alter or adversely affect the rights of any non-Debtor beneficiaries of or covered persons under such insurance policies.

5. Bar Date For Rejection Damage Claims

Any party to an executory contract or unexpired lease not previously assumed or rejected and to which no bar date has been established, which is assumed or rejected pursuant to this Plan or is the subject of a pending rejection motion, is required under the terms of this Plan to file a proof of claim for amounts due as a result of such assumption or rejection by the Rejection Bar Date; provided, however, if a motion seeking assumption or rejection is not heard and determined prior to the Effective Date, any Claim based thereon shall be filed within thirty (30)

days of entry of an Order ruling on the motion. Any Allowed Cure Claim relating to the assumption of executory contracts or leases pursuant to the Plan shall be paid in full from the Effective Date Distribution to the extent Finally Determined as of the Effective Date, or, to the extent thereafter, from an Interim Distribution or Subsequent Distribution by the Liquidating Trustee or Plan Administrator. Any such claim not filed by the Rejection Bar Date as provided in the Plan shall be forever barred and shall not be enforceable against the Debtors or their properties or the Liquidating Trust, and the Debtors and the Liquidating Trust shall have no obligation to pay the same.

## L.  Vesting of Assets

### 1.  Consolidated Debtors

Except as otherwise provided in the Plan, the Liquidating Trustee shall be vested, as of the Effective Date, with all of the Liquidating Trust Assets free and clear of all claims, liens, encumbrances, charges, and other interests of holders of Claims against, or Interests in, the Debtors and their Property.

### 2.  Consolidated Holdco

Except as otherwise provided in this Plan, Consolidated Holdco shall be vested, as of the Effective Date, with all of the Consolidated Holdco Assets free and clear of all claims, liens, encumbrances, charges, and other interests of Holders of Claims against, or Interests in, the Debtors and their Property.

### 3.  Unclaimed Property

Notwithstanding any local, state, federal, or other laws or regulations regarding unclaimed property or escheatment of property, all funds or other property possessed by the Debtors on the Effective that is unclaimed, subject to escheatment, or potentially subject to escheatment shall be treated as Assets of such Debtors under this Plan, and shall accordingly be transferred to, vested with, and become the property of the Debtors, Plan Administrator, or Liquidating Trustee to be held and distributed pursuant to the terms of this Plan free and clear of all such laws or regulations, and free and clear of any other claims, liens, encumbrances, charges, and other interests in such property.

## M.  Distributions

As set forth in the Plan, the Debtors, the Liquidating Trustee, or the Plan Administrator shall make all distributions under this Plan. To the extent required by applicable law, distributions that are Cash shall be in compliance with all tax withholding and reporting requirements imposed by any governmental unit, and all distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Debtors, the Disbursing Agent, the Liquidating Trustee, and the Plan Administrator may withhold the entire Cash distribution due to any holder of an Allowed Claim or Allowed Interest until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit.

74392.000009 EMF_US 29471070v30

1.   Manner of Cash Payments Under this Plan

Cash payments to domestic persons holding Allowed Claims or Allowed Interests will be tendered in United States dollars and will be made by checks drawn on a United States domestic bank or by wire transfer from a United States domestic bank. Any domestic person holding a Claim or Interest that wishes to receive a Cash payment by wire transfer shall provide wire instructions to the Debtors, the Liquidating Trustee, the Disbursing Agent, or the Plan Administrator. In any such case, the Debtors, the Liquidating Trustee, the Disbursing Agent, or the Plan Administrator shall make the Cash payment(s) by wire transfer in accordance with the wire instructions, provided that the costs of such wire transfer shall be deducted from such entity's distribution. Payments made to foreign creditors holding Allowed Claims or Allowed Interests may be paid or caused to be paid, at the option of the Debtors, the Disbursing Agent, the Plan Administrator, or the Liquidating Trustee, as applicable, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

2.   No *De Minimis* Distributions

Notwithstanding anything to the contrary in this Plan, no Cash payment of less than Fifty Dollars ($50) will be made to any Person. No consideration will be provided in lieu of the *de minimis* distributions that are not made under this provision, and the Debtors, the Liquidating Trustee after consultation with the Liquidating Trust Advisory Board, the Disbursing Agent, or the Plan Administrator shall be authorized to pay such amounts to the other holders of Allowed Claims or Allowed Interests.

3.   Distributions to Holders as of the Distribution Record Date

At the close of business on the Distribution Record Date, the claims register shall be closed, and there shall be no further changes in the record Holder of any Claim or Interest. The Debtors, Plan Administrator, Liquidating Trustee, the Disbursing Agent, or any other party responsible for making distributions under this Plan shall have no obligation to recognize any transfer of any Claim or Interest occurring after the Distribution Record Date; and shall instead be authorized and entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the claims register and stock transfer books as of the close of business on the Distribution Record Date.

4.   Deemed Distributions to Subordinated Creditors

Wherever this Plan effectuates contractual or Plan subordination rights by requiring distributions that would be made to subordinated creditors to be distributed to other creditors, including but not limited to the provisions in Article 4 of this Plan, those distributions shall be deemed to have been made to the subordinated creditors and then transferred by those subordinated creditors to the creditors receiving those distributions pursuant to this Plan.

5.   Delivery of Distributions and Undeliverable/Unclaimed Distributions

(a)   Delivery of Distributions in General.