The Debtors, Plan Administrator, Disbursing Agent, or Liquidating Trustee shall make distributions to each Holder of an Allowed Claim by mail as follows: (a) to the address set forth on the proof of claim filed by such holder of an Allowed Claim; (b) to the address set forth in any written notice of address change delivered to counsel to the Debtors, Plan Administrator, Disbursing Agent, or Liquidating Trustee, as applicable, after the date of any related proof of claim; and (c) to the address reflected in the Schedules if no proof of claim is filed and the Debtors, Plan Administrator, Disbursing Agent, or Liquidating Trustee has not received a written notice of a change of address; provided, however, that the distributions to the Trust Preferred Holders shall be made to the Trust Preferred Indenture Trustee.

The Debtors, Plan Administrator, or Liquidating Trustee may withhold the entire distribution due to any Holder of an Allowed Claim or Allowed Interest until such time as the holder provides the Debtors, Plan Administrator, or Liquidating Trustee with the information necessary to make a distribution to such holder in accordance with this Plan and applicable law, and Holders of Allowed Claims or Allowed Interests who do not provide such information may be barred from participating in distributions under the Plan.

(b)     Undeliverable and Unclaimed Distributions.

If the distribution to the Holder of any Allowed Claim or Allowed Interest is returned as undeliverable, no further distribution shall be made to such Holder unless and until the Liquidating Trustee, Disbursing Agent, or Plan Administrator is notified in writing of such Holder's then current address. Insofar as a distribution is returned to the Liquidating Trustee or Plan Administrator as undeliverable, the Liquidating Trustee, Disbursing Agent, or Plan Administrator shall remit the undeliverable distribution back to the account established by the Liquidating Trustee or Plan Administrator as soon as is practicable. Subject to the other provisions of the Plan, undeliverable distributions shall remain in the possession of the Liquidating Trustee or Plan Administrator until such time as a distribution becomes deliverable. All undeliverable Cash distributions will be held in unsegregated, interest-bearing bank accounts for the benefit of the entities entitled to the distributions. These entities will be entitled to any interest actually earned on account of the undeliverable distributions. The bank account will be maintained in the name of the Liquidating Trustee, Disbursing Agent, or Plan Administrator, but it will be accounted for separately.

Any Holder of an Allowed Claim or Allowed Interest who does not assert a claim in writing for any undeliverable distribution within one (1) year after such distribution was first made shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any distributions under this Plan, or from asserting a Claim against or Interest in the Debtors, the Estate, or their respective property, and the Claim or Interest giving rise to the undeliverable distribution will be barred.

Any undeliverable distributions that are not claimed under this Section will be transferred to the account maintained by the Liquidating Trustee, Disbursing Agent, or Plan Administrator to be paid or caused to be paid to the other holders of Allowed Claims or Allowed Interests.

74392.000009 EMF_US 29471070v30

(c) Distributions of Consolidated Holdco Residual Assets and Liquidating Trust Residual Assets

The Plan Administrator shall hold the Consolidated Holdco Residual Assets in trust for the Holders of Claims against and Interests in Consolidated Holdco who are entitled to receive the same. The Plan Administrator shall hold no economic or beneficial interests in the Consolidated Holdco Residual Assets. The Liquidating Trustee shall hold the Liquidating Trust Residual Assets in trust for the Holders of Claims against and Interests in the Liquidating Trust and Consolidated Debtors, as applicable, who are entitled to receive the same. The Liquidating Trustee shall hold no economic or beneficial interests in the Liquidating Trust Residual Assets. With regard to these Residual Assets, the Plan Administrator and Liquidating Trustee shall be empowered to (i) take all steps and execute all documents and instruments necessary to effectuate the Plan, (ii) make distributions contemplated by the Plan, (iii) comply with the Plan and obligations thereunder, and (iv) exercise such powers as may be vested by the Plan, order of the Bankruptcy Court, or deemed by the Plan Administrator or Liquidating Trustee to be necessary and proper to implement the provisions of the Plan.

(d) Fees and Expenses Incurred in Distributing Consolidated Holdco Residual Assets and Liquidating Trust Residual Assets.

The reasonable fees and expenses incurred by the Plan Administrator, including, without limitation, reasonable fees and expenses of counsel, in disbursing the Consolidated Holdco Residual Assets shall be paid in Cash from such assets without further application to or approval from the Bankruptcy Court. The reasonable fees and expenses incurred by the Liquidating Trustee, including, without limitation, reasonable fees and expenses of counsel, in disbursing the Liquidating Trust Residual Assets shall be paid in Cash from such assets without further application to or approval from the Bankruptcy Court.

## N. Exculpations

**Neither the Debtors nor their officers, directors, managers, employees, professionals, restructuring advisors, or the Committee and its professionals and advisors and members in their capacity as members of the Committee and their respective professionals and advisors, the Liquidating Trust, the Liquidating Trustee, Disbursing Agent, nor the Plan Administrator will have or incur any liability to any holder of a Claim or Interest or any other entity for any act or omission in connection with, in preparation for, or arising out of, the Bankruptcy Proceeding or the cases, including but not limited to the formulation, preparation, dissemination, approval, confirmation, execution, administration, or consummation of the Plan Support Agreement and Term Sheet, the Plan or the Disclosure Statement, the solicitation of votes for or confirmation of the Plan, or implementation, consummation, or administration of the Plan or the property to be distributed under the Plan, or any compromises and settlements under the Plan, except for liability arising from conduct constituting willful misconduct or gross negligence pursuant to a Final Order; provided, however, that except as provided in Section 3.1(b) of the Plan, such exculpation shall not be deemed or construed in any way to limit or impair a party in to object or challenge the allowance or payment or seek disgorgement of any professional's**

fees and expenses in connection with any interim or final fee application including resolution or adjudication of any pending objections or reservations by any such party in interest. The foregoing parties will be entitled to rely upon the advice of counsel in all respects regarding their duties and responsibilities under the Plan. Notwithstanding the foregoing, Sec. 12.3 of the Plan shall not be construed to release any claims, rights or causes of action that any professional or restructuring advisor retained pre- or post-petition by the Debtors or their non-debtor Affiliates may have against its current or former employees.

## O.    Preservation of Debtors' Causes of Action

The Plan provides for the continuance of Consolidated Holdco and establishment of the Liquidating Trusts to, in part, prosecute or settle and reduce to Cash Debtor and estate claims not released under the Plan. The assets of the Liquidating Trust will include Debtor and estate claims. The resolution and recovery of these Debtor and estate claims and the process and mechanisms to litigate or settle these claims are significant and important aspects of the Plan. These claims include, but are not limited to, Debtor and estate claims against non-released officers and directors of the Debtors, professionals of the Debtors, accountants and auditors of the Debtors and affiliates and insiders of the Debtors. Unless a claim against a Creditor or other Entity or Cause of Action is expressly waived, relinquished, released, compromised or settled in this Plan, or any Final Order, the Debtors expressly reserve such claim or Cause of Action for later enforcement by the Consolidated Holdco or the Liquidating Trust (including, without limitation, claims and Causes of Action not specifically identified or which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances which may change or be different from those which the Debtors no believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the confirmation or consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, expect where such claims or Causes of Action have been expressly released in this Plan or other Final Order. In addition, the Consolidated Holdco and the Liquidating Trust expressly reserve the right to pursue or adopt any claim, crossclaim or counterclaims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any person or entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, subject to the provisions of this Plan or any Final Order.

## P.    Plan Injunction

From and after the Confirmation Date, and as provided for by the Confirmation Order, there shall be in place with regard to the Debtors, the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Assets, the Disbursing Agent, the Consolidated Debtors, the Consolidated Debtors Assets, the Plan Administrator, Consolidated Holdco, Consolidated Holdco Assets, and any Claims, the Injunction, which shall have the same extent and with the same effect as the stay imposed by § 362 of the Bankruptcy Code, as modified by orders entered by the Bankruptcy Court in this Bankruptcy Proceeding, except as provided in this Plan. The Injunction will remain in effect until the Bankruptcy

Proceeding is closed pursuant to § 350 of the Bankruptcy Code except as otherwise expressly provided. Except as provided elsewhere in the Plan, all Holders of Claims or Interests shall be precluded and enjoined by the Injunction from asserting any Claim against the Debtors, the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Assets, the Consolidated Debtors, the Consolidated Debtors Assets, the Plan Administrator, Consolidated Holdco, Consolidated Holdco Assets, and their respective agents, successors, and assigns, and also from asserting any other and further Claim based on any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, against the Debtors, the Liquidating Trust, the Liquidating Trustee, and the Plan Administrators, as representatives of the Estates, as well as their successors or their respective agents, successors, and assigns, whether or not the holder filed a proof of claim, and shall be enjoined from commencing or continuing, directly or indirectly, in any manner, any action or proceeding of any kind on any such Claim or Interest, or the enforcement, attachment, collection, or recovery by any manner or means, or creating, perfecting, or enforcing any encumbrance. Nothing in the Plan shall prohibit an action against the Debtors and only the Debtors and their assets after dissolution of the Injunction.

Notwithstanding the rest of the Plan, the Injunction imposed herein shall not apply to prevent the commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtors or any real property in which the Debtors may have an interest; provided, however, that any order entered or judgment, fine, sanction, penalty, declaration, determination, or monetary award assessed against the Debtors in such an action proceeding may not be enforced against the Debtors, the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust, the Plan Administrator, their Assets, and their respective agents, successors, and assigns, that such an award or determination shall not give rise to an Allowed Claim, and that any judgment, fine, sanction, penalty, declaration, determination, award, or other action which affects property of the Debtors, the Liquidating Trust, the Liquidating Trustee, or the Plan Administrator, creates personal liability for the agents, successors, and assigns of the Debtors, or creates personal liability for the Consolidated Debtors, the Liquidating Trust, the Liquidating Trustee, the Plan Administrator, and their respective agents, successors, and assigns, shall be void. Nothing in the Plan shall prevent the Court from modifying the Injunction at the request of any party, upon notice and a hearing.

Q.    Conditions Precedent to Effective Date of Plan.

The occurrence of the Effective Date and the substantial consummation of the Plan are subject to the satisfaction of the following conditions precedent:

(a)    The receipt by the Consolidated Debtors, the Disbursing Agent, or the Liquidating Trustee of (i) the Lone Star Creditor Release Settlement Payment, (ii) the Lone Star Consolidated Debtors Settlement Payment, and (iii) the Consolidated Holdco Professional Fee Claim Payment;

(b)     The receipt by Consolidated Holdco or the Plan Administrator of the Lone Star Advance;

(c)     The Confirmation Order shall be entered by the Bankruptcy Court;

(d)     The Confirmation Order shall be in form and substance reasonably acceptable to the Debtors, the Committee, the REIT, and the Lone Star Entities;

(e)     The Plan Support Agreement and Term Sheet shall not have terminated by its terms;

(f)     The Bankruptcy Court shall have determined that the compromises and settlements set forth in the Plan are appropriate, reasonable, and fair, and such compromises and settlements have been approved;

(g)     The Debtors and the parties to the Plan Support Agreement and Term Sheet shall have sufficient Cash and assets to permit compliance with the terms and conditions of the Plan and the Plan Support Agreement and Term Sheet, including but not limited to projected fees and expenses, and payment of the Trust Preferred Holdco Distributions plus the Lone Star Trust Preferred Settlement Payment in an amount equal to Forty Million Dollars ($40,000,000);

(h)     The Bankruptcy Court shall have approved and authorized the documents and agreements in the Plan Supplement;

(i)     The Liquidating Trust is created pursuant to the terms of the Plan once the Bankruptcy Court has appointed the Liquidating Trustee and approved the Liquidating Trust Agreement in form and substance acceptable to the Committee;

(j)     The Bankruptcy Court has appointed the Plan Administrator and approved the Plan Administrator Retention Agreement in form and substance acceptable to the Committee and the REIT; and

(k)     All other actions and documents necessary to implement the Plan shall have been executed and effected.

To the extent practicable and legally permissible, each of the conditions, other than 11.1(a), (b), (c), (d), (e), and (f) may be waived, in whole or in part, by the Debtors, subject to approval of the Committee and, the Lone Star Entities, the REIT, and the Trust Preferred Indenture Trustee.

## R.     Retention of Jurisdiction

### 1.     General Scope of Retention of Jurisdiction

Following the Effective Date, the Bankruptcy Court shall retain jurisdiction over these Cases to the extent legally permissible, including without limitation such jurisdiction as is necessary to ensure that the purposes and intent of the Plan are carried out.

89

2. <u>Claims and Actions</u>

The Bankruptcy Court shall retain jurisdiction (a) to classify, resolve objections to, and determine or estimate pursuant to Bankruptcy Code § 502(c) all Claims against, and Interests in, the Debtors and (b) to adjudicate and enforce all claims and causes of action owned by the Debtors or the Liquidating Trust.

3. <u>Specific Jurisdiction</u>

Without in any way limiting the scope of the Bankruptcy Court's retention of jurisdiction over these Cases as otherwise set forth in the Plan, the Bankruptcy Court shall retain jurisdiction for the following specific purposes:

(a) To determine the classification, allowance or disallowance of all Claims or Interests, including, without limitation, Claims and objections relating to the assumption or rejection of executory contracts or unexpired leases pursuant to this Plan, and to hear and determine any and all objections to such Claims or Interests including, without limitation, Claims and objections relating to the assumption of executory contracts or unexpired leases pursuant to this Plan;

(b) To enable the Liquidating Trustee or Plan Administrator to commence, prosecute, settle, compromise, or abandon any and all claims or Causes of Action of the Debtors;

(c) To adjudicate all Claims to a security or ownership interest in any Property of the Debtors or in any proceeds thereof;

(d) To liquidate damages or estimate Claims in connection with any Disputed Claims or contingent or unliquidated Claims;

(e) To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, consummation, or performance of this Plan including, but not limited to, any matters related to the Plan Support Agreement and Term Sheet, as well as all controversies, suits, and disputes that may be pending before the Bankruptcy Court on or before the Confirmation Date or may be brought thereafter;

(f) To determine and Allow all expenses of administration of the Bankruptcy Proceeding, including, without limitation, all requests for Professional Fees for periods prior to the Effective Date;

(g) To recover all Assets and Property of the Debtors, wherever located;

(h) To interpret, construe or enforce this Plan, the Confirmation Order or any order previously entered by the Bankruptcy Court in this case;

(i) To hear, determine and enforce any and all Causes of Action, to set aside liens or encumbrances, to recover any transfers, assets or damages to which the Estate may be

74392.000009 EMF_US 29471070v30

entitled, to avoid or recover any preferences, fraudulent conveyances, or obligations, or other obligations or transfers voidable or subject to avoidance under applicable provisions of the Bankruptcy Code or other federal, state, or local law, or to subordinate or disallow, in whole or in part, any Claim, under applicable provisions of the Bankruptcy Code or other federal, state, or local law;

(j)  To consider and determine any proposed modification or amendment of the Plan;

(k)  To make any determination necessary or appropriate under § 505 of the Bankruptcy Code or other determination relating to taxes paid or payable by the Debtors, Plan Administrator, or Liquidating Trust, Tax Refunds due to the Debtors, Plan Administrator, or the Liquidating Trusts, and tax returns filed or to be filed by the Debtors, Plan Administrator,  or the Liquidating Trusts, for all periods through the end of the fiscal year in which the Effective Date occurs;

(l)  To implement the provisions of this Plan and enter any orders in aid of its implementation or in furtherance of its purposes and intent;

(m)  To make such orders as the Bankruptcy Court deems necessary or appropriate to carry out the provisions, purposes, or intent of this Plan;

(n)  To adjudicate any dispute with respect to any obligations of the Debtors, the Liquidating Trust, and the Plan Administrator, including any fees requested by professionals employed by the Liquidating Trust or Plan Administrator; and

(o)  To determine such other matters and for such other purposes as may be provided in the Confirmation Order.

74392.000009 EMF_US 29471070v30

4. Failure of Bankruptcy Court to Exercise Jurisdiction

If the Bankruptcy Court abstains from exercising, declines to exercise, or is otherwise without jurisdiction over any matter arising out of the Cases, the provisions of the Plan shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

5. Modification of the Plan

At any time before the Confirmation Date, the Plan or Plan Supplement may be modified by the Debtors, subject to the consent of the Committee, the Lone Star Entities, the Trust Preferred Holders, the Trust Preferred Indenture Trustee, the REIT, and the REIT Committee which consent, to the extent such modifications do not adversely affect the rights, treatment, benefits or obligations of the respective parties or constituencies, or the substance of the economic provisions set forth in the Plan, shall not be unreasonably withheld, upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of §§ 1122 & 1123 of the Bankruptcy Code. In the event that there is a modification of the Plan, then the Plan as modified shall become the Plan.

At any time after the Confirmation Date, but before substantial consummation of the Plan, the Plan or Plan Supplement may be modified by the Debtors, subject to the consent of the Committee, the Lone Star Entities, the Trust Preferred Holders, the Trust Preferred Indenture Trustee, the REIT, and the REIT Committee, which consent, to the extent such modifications do not adversely affect the rights, treatment, benefits or obligations of the respective parties or constituencies, or the substance of the economic provisions set forth in the Plan, shall not be unreasonably withheld, upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of §§ 1122 &1123 of the Bankruptcy Code. The Plan, as modified under this section, becomes a Plan only if the Court, after notice and hearing, confirms such Plan, as modified, under § 1129 of the Bankruptcy Code.

At any time after the Confirmation Date, the applicable Debtors may, without the approval of the Court, remedy any defect or omission, or reconcile any such inconsistencies in the Plan or Plan Supplement or in the Confirmation Order, as such matters may be necessary to carry out the purposes, intent, and effect of this Plan, provided that they do not materially or adversely affect the interests of creditors or other entities, subject to the terms of the Lone Star Settlement and the Plan Support and Term Sheet and upon consultation with the Committee.

6. Revocation and Withdrawal of the Plan

The Debtors reserve the right to revoke or withdraw the Plan at any time before entry of a Confirmation Order. If the Debtors, or one of the individual Debtors, as the case may be, revoke or withdraw the Plan prior to the Confirmation Date, or if the confirmation or the Effective Date does not occur with respect to one or more of the Debtors, then the Plan shall be deemed to be null and void as to that Estate. In such event, nothing contained herein, in the Plan or in any document relating to the Plan shall be deemed to constitute an admission of validity, waiver or

release of any Claims by or against the Debtors or any Person or to prejudice in any manner the rights of the Debtors or any Person in any proceeding involving the Debtors.

7. Sections 1145 and 1146(a) Exemption

To the maximum extent provided by § 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance under the Plan of the beneficial interests in the Liquidating Trust will be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder.

Pursuant to Bankruptcy Code § 1146(a), the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, or the re-vesting, transfer or sale of any real or personal property of the Debtors or the Liquidating Trust pursuant to, in implementation of, or as contemplated by the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.

8. No Admission of Liability.

The submission of the Plan is not intended to be, nor shall it be construed as, an admission or evidence in any pending or subsequent suit, action, proceeding or dispute of any liability, wrongdoing, or obligation whatsoever (including as to the merits of any claim or defense) by any Entity with respect to any of the matters addressed in the Plan.

None of the Plan (including, without limitation, the Exhibits thereto), or any settlement entered, act performed or document executed in connection with the Plan: (i) is or may be deemed to be or may be used as an admission or evidence of the validity of any claim, or any allegation made in any of the related actions or of any wrongdoing or liability of any Entity; (ii) is or may be deemed to be or may be used as an admission or evidence of any liability, fault or omission of any Entity in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; or (iii) is or may be deemed to be or used as an admission or evidence against the Debtors, or any other Person or Entity with respect to the validity of any Claim. None of the Plan or any settlement entered, act performed or document executed in connection with the Plan shall be admissible in any proceeding for any purposes, except to carry out the terms of the Plan Support Agreement and Term Sheet and the Plan, and except that, once confirmed, any Entity may file the Plan in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on the principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense of counterclaim.

9. Plan Governs

To the extent that the terms of this Disclosure Statement or the Plan are inconsistent with the terms of any agreement or instrument concerning any Claim, any Interest or any other matter, the terms of the Plan shall control.

74392.000009 EMF_US 29471070v30

10.    Governing Law

Expect to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent any document entered into in connection with the Plan so provides, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of Delaware, without giving effect to the principles of conflicts of law.

## VI.  **CONFIRMATION AND CONSUMMATION PROCEDURE**

### A.    **Disclosure and Solicitation**

This Disclosure Statement is presented to the Holders of Claims and Interests that are entitled to vote on the Plan to satisfy the requirements Sections 1125 and 1126 of the Bankruptcy Code.  Section 1125 of the Bankruptcy Code requires that full disclosure be made to all Holders of Claims and Interests in impaired Classes that receive or retain property pursuant to a plan at the time, or before, solicitation of acceptances of such plan is commenced.

### B.    **Acceptance of the Plan**

As more fully stated in Section III of this Disclosure Statement, the Bankruptcy Code defines acceptance of a plan by a Class of creditors or interest-holders as acceptance by holders of more than two-thirds in dollar amount and more than one-half in number of the Claims of that Class that have timely voted on a plan.  A vote may be disregarded if the Court determines, after notice and a hearing, that such acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

A vote to accept or reject the Plan can only occur by proper submission of a duly executed Ballot.  Failure of a holder to vote does not constitute a vote to reject the Plan by that holder.  Each Holder of a Claim or Interest should seek such independent legal and/or business advice as it deems appropriate regarding whether to vote to accept or reject the Plan.

### C.    **Classification**

The Debtors are required under Section 1122 of the Bankruptcy Code to classify the Claims and Interests into Classes that contain Claims and Interests that are substantially similar to the other Claims or Interests in such Class.  The Plan can be confirmed so long as there is at least one consenting Class of impaired Claims under the Plan (not including the votes of insiders), and so long as the other requirements for confirmation are met.

### D.    **Confirmation**

The Bankruptcy Code requires the Court, after notice, to hold a Confirmation Hearing. At the Confirmation Hearing, the Court will confirm the Plan only if all the requirements of Section 1129 of the Bankruptcy Code are met.  Among the requirements for Confirmation of a plan are that the Plan be (i) accepted by all impaired Classes of Claims and Interests or, if rejected by an impaired Class, that the Plan "not discriminate unfairly" and be "fair and

94

equitable" as to such impaired Class; (ii) feasible; and (iii) in the "best interests" of rejecting Holders of Claims and Interest impaired under the Plan.

1. Acceptance

In order for the Plan to be Confirmed, one impaired class of Consolidated Holdco and one impaired class of the Consolidated Debtors (not including the votes of insiders) must accept the Plan. For classes of Claims that have rejected the Plan, the Court must determine that the Plan is "fair and equitable" with respect to the rejecting classes. The "fair and equitable" test is described below under the heading *Confirmation Without Acceptance by All Impaired Classes*.

2. Feasibility

Under Section 1129(a)(11) of the Bankruptcy Code, to confirm the Plan, the Court must find that the Plan is feasible—that is, that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization unless such liquidation or reorganization is proposed in the Plan. Since the Plan proposes liquidation, and since the Liquidating Trust will have the assets necessary to accomplish this liquidation, the Debtors believe that the Plan is feasible.

3. Best Interests Test

With respect to each impaired Class, confirmation of the Plan requires that each Holder of an Allowed Claim or Allowed Interest in such Class either (i) accepts the Plan or (ii) receives or retains under the Plan property of a value, as of the Effective Date, that is not less than the value such Holder would receive or retain if Debtors were liquidated under Chapter 7 of the Bankruptcy Code.

Under the Debtor's Liquidation Analysis attached as Exhibit B hereto, the Debtors estimate that each class of creditors will receive at least as much property under this Plan as they would receive in a Chapter 7. See Section IX, *Alternatives to Confirmation and Consummation of the Plan*, and the Debtors' Liquidation Analysis attached as Exhibit B hereto for a further discussion of why Debtors believe that the Plan is in the best interests of Holders of Claims and Interests.

4. Confirmation Without Acceptance By All Impaired Classes

The Bankruptcy Code provides that, so long as at least one Class of Claims that is impaired under the Plan accepts the Plan (without respect to the votes cast by insiders), the Debtors may seek confirmation of the Plan over the objections of any non-consenting Class, provided that the Debtors demonstrate that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting Classes. These "cramdown" provisions for confirmation of the Plan, despite the non-acceptance of one or more impaired Classes of Claims or Interests, are set forth in Bankruptcy Code § 1129(b).

The Bankruptcy Code establishes different "fair and equitable" tests for Holders of Secured Claims, Unsecured Claims and Interests. The respective tests are as follows:

95

(a)    Secured Creditors

Either (i) each impaired Holder of Secured Claim of the rejecting Class (a) retains its liens in the collateral securing such Claim or in the proceeds thereof to the extent of the Allowed amount of the Secured Claim and (b) receives deferred Cash payments in at least the Allowed amount of such Secured Claim with a present value at the Effective Date at least equal to such creditor's interest in its collateral or in the proceeds thereof or (ii) the Plan provides each impaired Holder of a Secured Claim with the "indubitable equivalent" of its Secured Claim.

(b)    Unsecured Creditors

Either (i) each impaired Holder of an Unsecured Claim of the rejecting Class receives or retains under the Plan property of a value equal to the amount of its Allowed Claim or (ii) the Holders of Claims and Interests that are junior to the Claims of the dissenting Class do not receive or retain any property under the Plan.

(c)    Interest Holders

Either (i) each Interest Holder of the rejecting Class receives or retains under the Plan property of a value equal to the greater of (a) the fixed liquidation preference or redemption prices, if any, of the Interest it holds or (b) the value of such Interest or (ii) the Holders of Interests that are junior to such Interest do not receive or retain any property under the Plan.

The Debtors believe that the Plan meets the applicable tests described above, even in the event that it is rejected by the Holders of one or more Classes of Claims and Interests.

## VII.    CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The following discussion is a general summary of certain material U.S. federal income tax consequences of the Plan to the Debtors and the Holders of certain Claims and Interests. This discussion is based on current provisions of the Internal Revenue Code of 1986, as amended (the "Tax Code"), applicable Treasury Department regulations promulgated thereunder ("Treasury Regulations"), judicial authority and current administrative rulings and pronouncements of the Internal Revenue Service (the "Service"). There can be no assurance that the Service will not take a contrary view. No ruling from the Service has been or will be sought nor will any counsel provide a legal opinion as to any of the expected tax consequences set forth below.

Legislative, judicial or administrative changes or interpretations may be forthcoming that could alter or modify the statements and conclusions set forth herein. Any such changes or interpretations may or may not be retroactive and could affect the tax consequences to the Holders of Claims or Interests and the Debtors. It cannot be predicted whether any tax legislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the tax consequences to Holders of Claims or Interests and the Debtors.

The following discussion is for general information only. The tax treatment of a Holder of a Claim or Interest may vary depending upon such Holder's particular situation. In addition, this summary does not address foreign, state or local tax consequences of the Plan, nor does it address federal income tax consequences of the Plan to special classes of taxpayers (such as foreign taxpayers, broker-dealers, banks, mutual funds, insurance companies, other financial institutions, small business investment companies, regulated investment companies, real estate investment trusts, U.S. persons whose functional currency is not the U.S. dollar, traders that mark-to-market their securities, taxpayer subject to the alternative minimum tax, tax-exempt organizations (including, without limitation, certain pension funds), persons holding an equity interest as part of an integrated constructive sale, hedge, conversion transaction or straddle, pass-through entities and investors in pass-through entities). Furthermore, this summary does not address U.S. federal taxes other than income taxes.

**EACH HOLDER OF A CLAIM OR INTEREST SHOULD CONSULT ITS TAX ADVISOR AS TO THE PARTICULAR TAX CONSEQUENCES TO IT OF THE PLAN, INCLUDING THE APPLICABILITY OF ANY U.S. FEDERAL, STATE, LOCAL OR FOREIGN TAX LAWS.**

<u>**INTERNAL REVENUE SERVICE CIRCULAR 230 DISCLOSURE**</u>

**TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE INTERNAL REVENUE SERVICE, THE HOLDERS OF CLAIMS OR INTERESTS ARE HEREBY NOTIFIED THAT: (A) ANY UNITED STATES FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS OR INTERESTS FOR THE PURPOSE OF AVOIDING UNITED STATES FEDERAL TAX PENALTIES, (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE DEBTORS OF THE TRANSACTION OR MATTERS ADDRESSED HEREIN AND (C) HOLDERS OF CLAIMS OR INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISER.**

A.      **Tax Treatment of the Liquidating Trust**

The Liquidating Trust is intended to be treated for federal income tax purposes as a grantor trust. Assuming the Liquidating Trust qualifies as a grantor trust for federal income tax purposes, the Holders of Class 3 C Claims, Class 4 C Claims and Class 5 C Claims may be treated as the grantors of the Liquidating Trust, the Liquidating Trust should be disregarded for tax purposes as an entity separate from the grantors, and the grantors would report the income and loss from the Liquidating Trust. Under the Plan, the transfer of Cash and any remaining assets of the Consolidated Debtors to the Liquidating Trust may be treated for federal income tax purposes as if the Consolidated Debtors distributed an interest in each of the assets  transferred directly to the Holders of Class 3 C Claims, Class 4 C Claims and Class 5 C Claims in  exchange for their outstanding Claims against the Consolidated Debtors. The Holders of Class 3 C Claims, Class 4 C Claims and Class 5 C Claims would then be deemed to contribute their interest in these assets to the Liquidating Trust.

If the Liquidating Trust is not treated for federal income tax purposes as a grantor trust, then the Liquidating Trust may be classified as a partnership for federal income tax purposes, in which case the Holders of Class 3 C Claims, Class 4 C Claims, and Class 5 C Claims would be treated as partners in the partnership. Unlike a grantor trust, the partnership would be treated as an entity required to compute income and loss, file tax returns, and make tax elections, but income and loss would pass through to the partners to be reported by them on their separate tax returns. If the Liquidating Trust is treated as a partnership for federal income tax purposes, the transfer of Cash and any remaining assets of the Consolidated Debtors to the Liquidating Trust under the Plan may be treated for federal income tax purposes as if the Consolidated Debtors had distributed an interest in each of the assets so transferred directly to the Holders of Class 3 C Claims, Class 4 C Claims and Class 5 C Claims in exchange for their outstanding Claims against the assets or stock of the Consolidated Debtors. The Holders of Class 3 C Claims, Class 4 C Claims and Class 5 C Claims would then be deemed to contribute their interest in these assets to the Liquidating Trust in for an interest in the Liquidating Trust.

## B.    Federal Income Tax Consequences of the Plan to the Debtors

Generally, a debtor will recognize gain or loss on the sale of its assets in an amount equal to the sum of the Cash and the fair market value of property received less the debtor's adjusted tax basis in the assets sold. A debtor that transfers an asset in payment for a debt will be treated for federal income tax purposes as having sold the asset for its fair market value. Under the Plan, each of the Debtors will recognize gain or loss the transfer of its assets to the Holders of Claims to the extent that the difference between fair market value of the assets transferred and that Debtor's tax basis in such assets.

In addition, a taxpayer recognizes cancellation of indebtedness ("COD") income upon satisfaction of its outstanding indebtedness for less than its adjusted issue price. The amount of COD income is, in general, the excess of (i) the amount of the indebtedness satisfied, over (ii) the amount of Cash and the fair market value of any other consideration (including any new indebtedness issued by the taxpayer or stock of the taxpayer) given in exchange for the indebtedness satisfied. Under this rule, Consolidated Holdco would recognize COD income under the Plan to the extent the amount of the Consolidated Holdco debt cancelled exceeds the sum of the fair market value of the assets (including Cash) used to pay the Holders of Class 6 H Claims. Similarly under this rule, the Consolidated Debtors would recognize COD income under this Plan to the extent the amount of Consolidated Debtors' debt cancelled exceeds the sum of the fair market value of the assets (including Cash) contributed to the Liquidating Trust and the fair market value of the assets (including Cash) used to pay the Holders of Class 6 C Claims. However, COD income is not included in gross income to a debtor if the discharge occurs in a formal Title 11 bankruptcy case. The Plan, if approved, would enable both Consolidated Holdco and the Consolidated Debtors to qualify for this bankruptcy exclusion rule with respect to any COD income triggered by the Plan.

If debt is discharged in a formal Title 11 bankruptcy case, however, certain tax attributes otherwise available and of value to the debtor are reduced, in most cases by the principal amount of the indebtedness forgiven. Tax attributes subject to reduction include: (a) NOLs and NOL carryforwards; (b) most credit carryforwards, including the general business credit and minimum

tax credit; and (c) capital losses and capital loss carryforwards. Attribute reduction is calculated only after the tax for the year of discharge has been determined.

The Debtors anticipate that none of the Debtors will not incur any taxable income for federal income tax purposes as a result of the transfer of assets as provided in the Plan that will not be offset by NOLs. Accordingly, the implementation of the Plan should not result in any federal income tax liability (other than AMT liability) to any of Debtors.

In general, an alternative minimum tax ("AMT") is imposed on a corporation to the extent such corporation's tentative minimum tax, determined by multiplying its "alternative minimum taxable income" by the corporate AMT rate of 20%, exceeds the corporation's regular federal income tax. For purposes of computing taxable income for AMT purposes, certain tax deductions and other beneficial allowances are modified or eliminated. In particular, even though a corporation otherwise might be able to offset all of its taxable income for regular tax purposes by available NOL carryovers, only 90% of a corporation's taxable income for AMT purposes may be offset by available NOL carryovers (as computed for AMT purposes) and subject to the AMT at a 20% rate, yielding an effective rate of 2% (calculated by multiplying the 20% tax rate by the 10% of alternative minimum taxable income not offset by NOL carryovers). The Debtors do not anticipate that the Plan will generate a significant amount, if any, of federal AMT liability.

## C.    Federal Income Tax Consequences of the Plan to Holders of Claims or Interests

In general, Holders of Claims or Interests will recognize income, gain or loss on their Claims or Interests as set forth below. The character of any gain or loss as capital or ordinary gain or loss (or ordinary income) and, in the case of capital gain or loss, as short-term or long-term, will depend on a number of factors, including: (i) the nature and origin of the Claim or Interest; (ii) the tax status of the Holder of the Claim or Interest; (iii) whether the Claim or Interest has been held for more than one year; and (iv) the extent to which the Holder previously claimed a loss or bad debt deduction with respect to the Claim.

    1.    Consequences to Holders of Claims Against Consolidated Holdco

        (a)    Consequences to Holders of Class 1 H and Class 2 H Claims

Holders of Class 1 H or Class 2 H Claims may receive specified fixed amounts from Consolidated Holdco in exchange for these Claims on the date of payment thereof. Accordingly, the Debtors believe that a Holder of a Class 1 H or Class 2 H Claim should generally recognize gain or loss in an amount equal to the Cash received (plus the fair market value of other property received, if any) with respect to its Claim (other than any amounts attributable to accrued by unpaid interest) less its adjusted tax basis in its Claim (other than for accrued but unpaid interest).

        (b)    Consequences to Holders of Class 3 H Claims, Class 4 H Claims, Class 5 H Claims, and Class 6 H Claims

The Debtors believe that a Holder of a Class 3 H Claim, Class 4 H Claim, Class 5 H Claim or Class 6 H Claim (collectively, a "Consolidated Holdco Claim") as of the Effective Date should be treated as receiving from Consolidated Holdco their share of the Consolidated Holdco Assets in satisfaction of each such Consolidated Holdco Claim. A Holder of a Consolidated Holdco Claim may recognize a taxable loss (or gain) to the extent the amount realized by such Holder in respect of its Consolidated Holdco Claim, excluding accrued interest, is less (or greater) than the Holder's tax basis in such Consolidated Holdco Claim, excluding any Claim for accrued interest. The amount realized by a Holder of a Consolidated Holdco Claim should be equal to the amount of Cash and the fair market value of any other consideration received pursuant to the Plan. If a Holder of a Consolidated Holdco Claim receives distributions from Consolidated Holdco in more than one tax year, such Holder should consult with its own tax advisor as to the timing of the recognition of income, gain, or loss.

Notwithstanding the foregoing, it is possible that the Service may assert that any income, gain, or loss by Holders of Consolidated Holdco Claims should be deferred until Plan Administrator makes the final distributions of the Consolidated Holdco Assets. In addition, a Holder's ultimate share of the Consolidated Holdco Assets may differ from the initial estimates thereof. This may result in a Holder having to recognize additional or offsetting income or gain or loss if, and to the extent, that, the aggregate amount of Cash and the fair market value of property received by that Holder differs from the amount used in initially determining that Holder's any income, gain or loss. Holders of Consolidated Holdco Claims should consult their own tax advisors regarding the possibility that the recognition of income, gain or loss may be accelerated or deferred.

(c)     Consequences to Holders of Class 7 H Claims

Holders of Class 7 H Claims will receive specified fixed amounts from Consolidated Holdco in an amount equal to 65% of each such Claim in exchange for these Claims on the date of payment thereof. Accordingly, the Debtors believe that a Holder of a Class 7 H Claim should generally recognize gain or loss in an amount equal to the Cash received (plus the fair market value of other property received, if any) with respect to its Claim (other than any amounts attributable to accrued by unpaid interest) less its adjusted tax basis in its Claim (other than for accrued but unpaid interest).

(d)     Consequences to Holders of Class 8 H Claims

Holders of Class 8 H Claims will receive their proportionate part of the Lone Star Trust Preferred Settlement Payment and the Trust Preferred Holdco Distributions. A holder of a Class 8 H Claim will recognize a taxable loss (or gain) to the extent that the amount realized by such Holder in respect to its Class 8 H Claim, excluding accrued interest, is less (or greater) than the Holder's tax basis in such Class 8 H Claim, excluding any Claim for accrued interest. The amount realized by a Holder of a Class 8 H Claim should be equal to the amount of Cash and the fair market value of any other consideration received pursuant to the Plan. If a Holder of a Class 8 H Claim receives distributions with respect to its Class 8 H Claim in more than one tax year, such Holder should consult with its own tax advisor as to the timing of the recognition of income, gain, or loss.

74392.000009 EMF_US 29471070v30

(e)     Consequences to Holders of Class 9 H and 10 H Claims

Under the Plan, Holders of Class 9 H and 10 H Claims will recognize a taxable loss (or gain) to the extent that amount realized by each such Holder in exchange for their Class 9 H or 10 H Claim is less (or greater) than such Holder's tax basis in their Class 9 H or 10 H Claim exchanged therefor. The amount realized by a Holder of a Class 9 H or 10 H Claim should be equal to the amount of Cash and the fair market value of any other consideration received from Consolidated Holdco, if any, pursuant to the Plan, in the event the Holders of Class 3 H, Class 4 H, and Class 6 H Claims are paid in full.

(f)     Consequences to Holders of Class 11 H Interests

Under the Plan, Holders of Class 11 H Interests will recognize a taxable loss (or gain) to the extent the amount realized by each such Holder in exchange for their Interest is less (or greater) than such Holder's tax basis in their Interest exchanged therefore. The amount realized by the Holder of a Class 11 H Interest should be equal to the amount of Cash and the fair market value of any other consideration received from Consolidated Holdco if any, pursuant to the Plan, in the event the Holders of Class 3 H, Class 4 H, Class 5 H, Class 6 H, Class 9 H, and Class 10 H Claims are paid in full. The gain or loss should be a capital gain provided the Holder held their Class 11 H Interest as a capital assets within the meaning of Tax Code Section 1221 at the effective time of the Plan.

2.     Consequences to Holders of Claims Against Consolidated Debtors

(a)     Consequences to Holders of Class 1 C and Class 2 C Claims

Holders of Class 1 C or Class 2 C Claims may receive specified fixed amounts from Consolidated Debtors in exchange for these Claims on the date of payment thereof. Accordingly, the Debtors believe that a Holder of a Class 1 C or Class 2 C Claim should generally recognize gain or loss in an amount equal to the Cash received (plus the fair market value of other property received, if any) with respect to its Claim (other than any amounts attributable to accrued by unpaid interest) less its adjusted tax basis in its Claim (other than for accrued but unpaid interest).

(b)     Consequences to Holders of Class 3 C Claims

The Debtors believe that a Holder of a Class 3 C Claim as of the Effective Date should be treated as receiving from the Consolidated Debtors their share of the respective assets transferred to the Liquidating Trust in satisfaction of each such Class 3 C Claim and simultaneously transferring such assets to the Liquidating Trust. Assuming the Liquidating Trust is taxed as a grantor trust or as a partnership for federal income tax purposes, under the Plan, a Holder of a Class 3 C Claim may recognize a taxable loss (or gain) to the extent the amount realized by such Holder in respect of its Class 3 C Claim, excluding accrued interest, is less (or greater) than the Holder's tax basis in such Class 3 C Claim, excluding any Claim for accrued interest. The amount realized by a Holder of a Class 3 C Claim should be equal to the amount of Cash and the fair market value of any other consideration received pursuant to the Plan (including any amounts received from the Lone Star Creditor Release Settlement Payment). If a Holder of a

Class 3 C Claim receives distributions from the Liquidating Trust in more than one tax year, such Holder should consult with its own tax advisor as to the timing of the recognition of income, gain, or loss. Additionally, the Debtors believe that Holders of Class 3 C Claims should recognize their allocable share of taxable income on the assets transferred to the Liquidating Trust on an annual basis.

Notwithstanding the foregoing, it is possible that the Service may assert that any income, gain, or loss by Holders of Class 3 C Claims should be deferred until the Liquidating Trustee makes the final distributions from the Liquidating Trust. In addition, a Holder's ultimate share of the assets of the Liquidating Trust based on its Class 3 C Claim may differ from the initial estimates thereof. This may result in a Holder having to recognize additional or offsetting income or gain or loss if, and to the extent, that, the aggregate amount of Cash and the fair market value of property received by that Holder from the Liquidating Trust differs from the amount used in initially determining that Holder's any income, gain or loss. Holders of Class 3 Claims should consult their own tax advisors regarding the possibility that the recognition of income, gain or loss may be accelerated or deferred.

(c)     Consequences to Holders of Class 4 C Claims

The Debtors believe that a Holder of a Class 4 C Claim as of the Effective Date should be treated as receiving from the Consolidated Debtors their share of the respective assets transferred to the Liquidating Trust in satisfaction of each such Class 4 C Claim and simultaneously transferring such assets to the Liquidating Trust. Assuming the Liquidating Trust is taxed as a grantor trust or as a partnership for federal income tax purposes, under the Plan, a Holder of a Class 4 C Claim may recognize a taxable loss (or gain) to the extent the amount realized by such Holder in respect of its Class 4 C Claim, excluding accrued interest, is less (or greater) than the Holder's tax basis in such Class 4 C Claim, excluding any Claim for accrued interest. The amount realized by a Holder of a Class 4 C Claim should be equal to the amount of Cash and the fair market value of any other consideration received pursuant to the Plan. If a Holder of a Class 4 C Claim receives distributions from the Liquidating Trust in more than one tax year, such Holder should consult with its own tax advisor as to the timing of the recognition of income, gain, or loss. Additionally, the Debtors believe that Holders of Class 4 C Claims should recognize their allocable share of taxable income on the assets transferred to the Liquidating Trust on an annual basis.

Notwithstanding the foregoing, it is possible that the Service may assert that any income, gain, or loss by Holders of Class 4 C Claims should be deferred until the Liquidating Trustee makes the final distributions from the Debtors Liquidating Trust. In addition, a Holder's ultimate share of the assets of the Liquidating Trust based on its Class 4 C Claim may differ from the initial estimates thereof. This may result in a Holder having to recognize additional or offsetting income or gain or loss if, and to the extent, that, the aggregate amount of Cash and the fair market value of property received by that Holder from the Liquidating Trust differs from the amount used in initially determining that Holder's any income, gain or loss. Holders of Class 4 Claims should consult their own tax advisors regarding the possibility that the recognition of income, gain or loss may be accelerated or deferred.

74392.000009 EMF_US 29471070v30

(d)     Consequences to Holders of Class 5 C Claims

The Debtors believe that a Holder of a Class 5 C Claim as of the Effective Date should be treated as receiving from the Consolidated Debtors their share of the respective assets transferred to the Liquidating Trust in satisfaction of each such Class 5 C Claim and simultaneously transferring such assets to the Liquidating Trust. Assuming the Liquidating Trust is taxed as a grantor trust or as a partnership for federal income tax purposes, under the Plan, a Holder of a Class 5 C Claim may recognize a taxable loss (or gain) to the extent the amount realized by such Holder in respect of its Class 5 C Claim, excluding accrued interest, is less (or greater) than the Holder's tax basis in such Class 5 C Claim, excluding any Claim for accrued interest. The amount realized by a Holder of a Class 5 C Claim should be equal to the amount of Cash and the fair market value of any other consideration received from the Liquidating Trust, if any, pursuant to the Plan in the event the Holders of Class 3 C and Class 4 C Claims are paid in full. If a Holder of a Class 5 C Claim receives distributions from the Liquidating Trust in more than one tax year, such Holder should consult with its own tax advisor as to the timing of the recognition of income, gain, or loss. Additionally, the Debtors believe that Holders of Class 5 C Claims should recognize their allocable share of taxable income on the assets transferred to the Liquidating Trust on an annual basis.

Notwithstanding the foregoing, it is possible that the Service may assert that any income, gain, or loss by Holders of Class 5 C Claims should be deferred until the Liquidating Trustee makes the final distributions from the Liquidating Trust. In addition, a Holder's ultimate share of the assets of the Liquidating Trust based on its Class 5 C Claim may differ from the initial estimates thereof. This may result in a Holder having to recognize additional or offsetting income or gain or loss if, and to the extent, that, the aggregate amount of Cash and the fair market value of property received by that Holder from Liquidating Trust differs from the amount used in initially determining that Holder's any income, gain or loss. Holders of Class 5 Claims should consult their own tax advisors regarding the possibility that the recognition of income, gain or loss may be accelerated or deferred.

(e)     Consequences to Holders of Class 6 C Claims

Holders of Class 6 C Claims will receive specified fixed amounts from Consolidated Holdco in an amount equal to 75% of each such Claim in exchange for these Claims on the date of payment thereof. Accordingly, the Debtors believe that a Holder of a Class 6 C Claim should generally recognize gain or loss in an amount equal to the Cash received (plus the fair market value of other property received, if any) with respect to its Claim (other than any amounts attributable to accrued by unpaid interest) less its adjusted tax basis in its Claim (other than for accrued but unpaid interest).

(f)     Consequences to Holders of Class 7 C Claims

Under the Plan, Holders of Class 7 C Claims will recognize a taxable loss (or gain) to the extent that amount realized by each such Holder in exchange for their Class 7 C Claim is less (or greater) than such Holder's tax basis in their Class 7 C Claim exchanged therefor. The amount realized by a Holder of a Class 7 C Claim should be equal to the amount of Cash and the fair

market value of any other consideration received from the Liquidating Trust, if any, pursuant to the Plan, in the event the Holders of Class 3 C, Class 4 C, and Class 5 C Claims are paid in full.

(g)    Consequences to Holders of Class 8 C Claims

Under the Plan, Holders of Class 8 C Claims will recognize a taxable loss (or gain) to the extent that amount realized by each such Holder in exchange for their Class 8 C Claim is less (or greater) than such Holder's tax basis in their Class 8 C Claim exchanged therefor. The amount realized by a Holder of a Class 8 C Claim should be equal to the amount of Cash and the fair market value of any other consideration received from the Liquidating Trust, if any, pursuant to the Plan, in the event the Holders of Class 3 C, Class 4 C, Class 5 C Claims, and Class 7 C Claims are paid in full.

(h)    Consequences to Holders of Class 9 C Claims

Under the Plan, Holders of Class 9 C Claims will recognize a taxable loss (or gain) to the extent that amount realized by each such Holder in exchange for their Class 9 C Claim is less (or greater) than such Holder's tax basis in their Class 9 C Claim exchanged therefor. The amount realized by a Holder of a Class 9 C Claim should be equal to the amount of Cash and the fair market value of any other consideration received from the Liquidating Trust, if any, pursuant to the Plan, in the event the Holders of Class 3 C, Class 4 C, Class 5 C Claims, Class 7 C, and Class 8 C Claims are paid in full.

(i)    Consequences to Holders of Class 10 C Interests

Under the Plan, Holders of Class 10 C Interests will recognize a taxable loss (or gain) to the extent the amount realized by each such Holder in exchange for their Interest is less (or greater) than such Holder's tax basis in their Interest exchanged therefore. The amount realized by the Holder of a Class 10 C Interest should be equal to the amount of Cash and the fair market value of any other consideration received from the Liquidating Trust, if any, pursuant to the Plan, in the event the Holders of Class 3 C, Class 4 C, Class 5 C, Class 8 C, and Class 9 C Claims are paid in full. The gain or loss should be a capital gain provided the Holder held their Class 9 C Interest as a capital assets within the meaning of Tax Code Section 1221 at the effective time of the Plan.

3.    Interest Income

Taxable interest income earned on the assets held by the Liquidating Trust will be reported as taxable income to the Holders of Class 3 C, Class 4 C and Class 5 C Claims on an annual basis and will be taxable to such Holders in accordance with their method of tax accounting. In addition, Holders of Claims will be treated as receiving a payment of interest (includible in income in accordance with the Holder's method of accounting for tax purposes) to the extent that any Cash or other property received (or deemed received) pursuant to the Plan is attributable to accrued but unpaid interest, if any, on such Claim. Each Holder should consult its own tax advisor regarding the determination of the amount of consideration received under the Plan that is attributable to interest (if any).

74392.000009 EMF_US 29471070v30

4. <u>Gain or Loss from Subsequent Sales</u>

Any taxable gains or losses on a subsequent sale of assets (other than Cash) held by the Liquidating Trust will be reported as taxable gain or taxable loss to the Holders with interests in the liquidating trust on an annual basis and will be taxable to such Holders in accordance with their method of tax accounting. The amount of such gain or loss realized by each Holder with respect to each such sale will be the difference between the portion of the amount realized on such sale allocable to such Holder and the portion of the tax basis in such asset sold allocable to such Holder. Each Holder should consult its own tax advisor regarding the possibility of recognizing gain or loss on any assets (other than Cash) owned by the Liquidating Trust and the timing and character of any income or loss recognized with respect to any such sales.

5. <u>Backup Withholding and Information Reporting</u>

In general, a Holder of a Claim may be subject to backup withholding at the applicable rate with respect to any "reportable" payments received pursuant to the Plan unless (i) such Holder is a corporation or comes within certain other exempt categories and, when required, demonstrates this fact or (ii) provides to the Debtor and/or the Liquidating Trust (on IRS Form W-9) a correct taxpayer identification number, certifies as to no loss of exemption from backup withholding and complies with applicable requirements of backup withholding rules. A Holder that does not provide a correct taxpayer identification number may be subject to penalties imposed by the Service. Amounts withheld under the backup withholding rules may be credited against a Holder's tax liability, and a Holder may obtain a refund of any excess amounts withheld under the backup withholding rules by filing the appropriate claim for refund with the Service.

The Liquidating Trustee will report annually to each Holder of a Class 3 C, Class 4 C , Class 5 C, and Class 6 C Claim such Holder's share of income, gains and losses of the Consolidated Liquidating Trust during the calendar year to the extent required by law.

The Debtors and the Liquidating Trust will withhold from distributions provided under the Plan any amount which is required by law to be withheld, and will also comply with all applicable reporting requirements of the United States Tax Code and other applicable law. In order to receive distributions, creditors must provide the Debtors and/or the Liquidating Trust with the information needed to allow the Debtors and/or the Liquidating Trust to comply with applicable law.

## VIII. <u>CERTAIN RISK FACTORS AND OTHER CONSIDERATIONS</u>

**A.** **Forward Looking Statements in this Disclosure Statement May Prove to be Inaccurate**

Many of the statements included in this Disclosure Statement contain forward-looking statements and information relating to the Debtors. These forward-looking statements are generally identified by the use of terminology such as "may," "will," "could," "should," "potential," "continue," "expect," "intend," "plan," "estimate," "project," "forecast," "anticipate," "believe," or similar phrases or the negatives of such terms. These statements are

74392.000009 EMF_US 29471070v30

based on the beliefs of management as well as assumptions made using information currently available to management. Such statements are subject to risks, uncertainties and assumptions, as well as other matters not yet known or not currently considered material by management. Should one or more of these risks or uncertainties materialize, or should underlying assumptions prove incorrect, actual results may vary materially from those anticipated, estimated or projected. Given these risks and uncertainties, you are cautioned not to place undue reliance on such forward-looking statements. Forward-looking statements do not guarantee future performance. You should recognize these statements for what they are and not rely on them as facts. None of the Debtors undertakes any obligation to update or revise any of these forward-looking statements to reflect new events or circumstances after the date of this Disclosure Statement.

## IX. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Debtors have evaluated and considered several alternatives to the Plan including other plan structures. After studying and considering these alternatives, the Debtors have concluded that the Plan is the best option and will maximize recoveries to creditors.

If the Plan is not confirmed or consummated, the alternatives include, in addition to dismissal of the Cases, (i) liquidation of the Debtors under chapter 7 of the Bankruptcy Code or (ii) an alternative chapter 11 plan.

### A. Liquidation Under Chapter 7

If no plan can be confirmed or the Court determines other cause exists for conversion, the bankruptcy cases may be converted to cases under chapter 7 of the Bankruptcy Code. In this event, a chapter 7 trustee would be elected or appointed to liquidate the assets of the Debtors for distribution to creditors in accordance with priorities established by the Bankruptcy Code.

The Debtors believe that conversion to chapter 7 and the appointment of one or more chapter 7 trustees would result in substantial additional Administrative Claims related to the attorneys and other professionals necessary to assist such trustee(s) and their need to study extensively these bankruptcy cases in order to fulfill their fiduciary duties, as well as the significant delays attendant to the chapter 7 trustee's need to analyze issues and research the background of the Debtors, their assets, their liabilities, their intra-debtor claims, and make a recovery analysis. Indeed, the Debtors' Liquidation Analysis concludes that under a chapter 7 liquidation, creditors would not recover as much as they would under the Plan. If the cases were converted the intra-debtor and inter-estate claims and issues would not be resolved. The Debtors believe that there would be additional costs and expense and risks and uncertainties with respect to intra-debtor and intra-estate disputes and issues that would need to be resolved or litigated. A copy of the Liquidation Analysis is Annexed hereto as Exhibit B.

### B. Alternative Plan(s) of Reorganization

If the Debtors' exclusive period to file a plan of reorganization and solicit acceptances of a plan of reorganization expires pursuant to § 1121 of the Bankruptcy Code, other parties could propose their own plans of reorganization for the Debtors. The Debtors believe that the

74392.000009 EMF_US 29471070v30

transactions reflected in the Plan and this Disclosure Statement will result in quicker and higher recoveries for all constituencies than any alternative scenario.

The Debtors believe that confirmation and implementation of the Plan are preferable to either of the above-described alternatives and recommend that all Creditors vote in favor of the Plan.

## X. **CONCLUSION**

The Debtors believe that acceptance of the Plan is in the best interest of Creditors and recommend that you vote to accept the Plan.

74392.000009 EMF_US 29471070v30

**PACHULSKI STANG ZIEHL & JONES LLP**

_/s/ Kathleen P. Makowski_

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email:     ljones@pszjlaw.com
           joneill@pszjlaw.com
           kmakowski@pszjlaw.com

-and-

**HUNTON & WILLIAMS LLP**

Gregory G. Hesse (Texas Bar No. 09549419)
Lynnette R. Warman (Texas Bar No. 20867940)
Jesse T. Moore (Texas Bar No. 24056001)
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Telephone: (214) 979-3000
Telecopy: (214) 880-0011
Email:     ghesse@hunton.com
           lwarman@hunton.com
           jtmoore@hunton.com

ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION

74392.000009 EMF_US 29471070v30