1. Terms of the Global Settlement.

(a) **REIT Adversary Settlement.** Prior to the Bar Date, the REIT Committee filed on behalf of the REIT proofs of claim against all the Debtors asserting unsecured claims in the amount of at least $227 Million, which claims have been contested by the Committee in the REIT Adversary. The Confirmation Order shall include approval of the settlement of the REIT Adversary, and, upon the Effective Date, the REIT Adversary shall be dismissed or withdrawn with prejudice and the REIT shall have as Allowed Claims: (1) an Allowed Unsecured Claim against the Consolidated Debtors in the amount of $37.5 Million, which Claim shall be included in and receive the treatment provided for in Class 3 C; (2) the REIT Junior Claim in the amount of $15 Million in Class 7 C; which Claim shall be included in and receive the treatment provided for in Class 7 C; and (3) an Allowed Unsecured Claim against Consolidated Holdco in the amount of $20 Million in Class 6 H, which Claim shall receive the treatment provided under the Plan, including the REIT First Distribution. **Further, the REIT is waiving its subordination rights against the Trust Preferred Holders or the Trust Preferred Indenture Trustee to the extent necessary to provide those creditors with the treatment described below[31].** The REIT Committee shall continue to have the right to file a Claim for its substantial contribution in these proceedings pursuant to § 503(b) of the Bankruptcy Code, which application shall be provided to the Debtors and the Committee prior to filing for review. Nothing contained in the Plan shall prohibit any party-in-interest from filing an objection to such Claim. To the extent the Claims of the REIT, or any Claims asserted by other Persons on behalf of the REIT, against the Debtors, the Estates, and the Assets of the Debtors, are not otherwise Allowed under the Plan, such Claims are disallowed, expunged, and released.

Absent the proposed settlement of the REIT Adversary Proceeding, the estates would be required to continue to finance the Committee's prosecution of its litigation efforts to subordinate and otherwise contest the allowance of the claims asserted on behalf of the REIT. Due to the risks inherent in litigation, the parties to the Plan Support Agreement and Term Sheet have concluded that the REIT Adversary Proceeding should be settled. The Debtors believe that the proposed settlement of the REIT Adversary Proceeding is in the best interests of the Estates.

(b) **Citigroup Settlement.** Citigroup Global Markets Realty Corp. filed a proof of claim against the AHL, Inc. alleging claims and damages in excess of $43 million arising from the sale of mortgage loans to it by AHL, Inc., including, but not limited to, claims for breach of contract, fraud, unjust enrichment and indemnification. The Confirmation Order shall include approval of the settlement of the Claims of Citigroup, and, upon the Effective Date, Citigroup shall have an Allowed Unsecured Claim against Debtor AHL in the amount of $12.1 Million, which Claim shall be classified as an Allowed Class 3 C Claim. Citigroup shall continue to have the right to file a Claim for its substantial contribution in these proceedings pursuant to § 503(b) of the Bankruptcy Code which Application shall be provided to Debtors and the Committee prior to filing for review. Nothing contained in the Plan shall prohibit any party-in-interest from filing an objection to such Claim. Except as to its Claim under § 503(b) of the Bankruptcy Code, Citigroup shall not have the right to otherwise amend their Proof of Claim or file or assert any

---

[31] **The Trust Preferred Security Holders deny that the Claims arising from the Trust Preferred Note and the Trust Preferred Guaranty are subordinate to the Claims of the REIT.**

new Claims against the Debtors and the Claims of Citigroup and its affiliates against the Debtors that are not otherwise Allowed under this Plan, such Claims are disallowed, released, and expunged.

(c)     Trust Preferred Settlement. The Confirmation Order shall include approval of the settlement of the Claims relating to the Trust Preferred Securities, Trust Preferred Notes, the Trust Preferred Guarantee, and the Trust Preferred Note Claims (which includes any claims that have been or could be asserted by the Trust Preferred Holders or the Trust Preferred Indenture Trustee), and, upon the Effective Date, all such Claims against Consolidated Holdco, whether direct, indirect, or derivative, including any claims by the Trust Preferred Indenture Trustee for compensation and indemnity under the Trust Preferred Indenture, Trust Declaration, and Trust Preferred Guarantee shall be deemed satisfied and paid in full by the Lone Star Trust Preferred Settlement Payment and the Trust Preferred Holdco Distributions, all such Claims against the Consolidated Debtors, whether direct, indirect, or derivative, shall be reduced, consolidated, subordinated, and Allowed as a Class 9 C Claim in the amount of Five Million Dollars ($5,000,000) held by the Trust Preferred Indenture Trustee.  **This treatment for the Claims of the Trust Preferred Indenture Trustee and the Trust Preferred Holder can be attributed in part to  REIT's waiver of its subordination rights against such Trust Preferred Indenture Trustee and the Trust Preferred to the extent called for by this Plan.**[32]  Accordingly, upon the Effective Date, all scheduled claims and proofs of claim held by Wells Fargo Bank, N.A., in its capacity as Indenture Trustee and Property Trustee, Kodiak CDO I, Ltd., Kodiak CDO II, Ltd., and/or JP Morgan Funding LLC will be satisfied, discharged, and expunged in accordance with this Global Settlement and the Plan.  Further, the Trust Preferred Adversary Proceeding shall be dismissed or withdrawn, with prejudice.  Further, the Trust Preferred Indenture Trustee and the Trust Preferred Holders waive any right, claim, or entitlement to seek reimbursement of any fees and expenses incurred in connection with these Chapter 11 Cases from the Debtors or their Estates (including the Liquidating Trustee or Plan Administrator) under § 503(b) of the Bankruptcy Code or any other applicable section of the Bankruptcy Code or applicable law.

(d)     Lone Star Settlement. Provided that less than 25% in amount of the Allowed Unsecured Claims against the Consolidated Debtors eligible to vote on the Plan as of the Confirmation Date elect treatment as Class 4 C Creditors (rather than Class 3 C Creditors) and to withhold releases of direct and personal claims under the Plan:

(i)     one or more of the Lone Star Entities (other than LSF MRA, LLC) shall make the Lone Star Creditor Release Settlement Payment to the Consolidated Debtors on or before the Effective Date;

---

[32] **The Trust Preferred Security Holders deny that the Claims arising from the Trust Preferred Notes and the Trust Preferred Guaranty are subordinated to the Claims asserted by the REIT.  It should be further noted that part of the consideration going to the Trust Preferred Indenture Trustee and the Trust Preferred Holders under the Plan and global settlement comes from non-debtor sources (*i.e.,* the Lone Star Entities and their insurers) in exchange for the release of the Trust Preferred Indenture Trustee and the Trust Preferred Holders against the Lone Star Releasees and the Plan Releasees.**

(ii)     one or more of the Lone Star Entities (other than LSF MRA, LLC) shall make the Lone Star Advance to Consolidated Holdco on or before the Effective Date;

(iii)     one or more of the Lone Star Entities (other than LSF MRA, LLC) shall pay the Lone Star Consolidated Debtors Settlement Payment to the Consolidated Debtors on or before the Effective Date;

(iv)     one or more of the Lone Star Entities (other than LSF MRA, LLC), their insurers, and the Debtors' insurers under the D&O Policies shall make their respective portion of the Lone Star Trust Preferred Settlement Payment, as provided under the Trust Preferred Indenture and related documents, to the Trust Preferred Indenture Trustee on behalf of the Trust Preferred Holders in satisfaction of the Claims of the Trust Preferred Indenture Trustee, the Trust Preferred Holders or any other Person holding a Claim arising under or related, directly or indirectly, to the Trust Preferred Indenture and related documents against Holdco (including any claims that have been asserted or could be asserted by the Trust Preferred Indenture Trustee or the Trust Preferred Holders) as provided under the Plan;

(v)     the Lone Star Entities and their Affiliates shall be deemed to have waived, for purposes of the Plan and receiving distributions under the Plan, either directly or indirectly, all Claims against the Consolidated Debtors or their respective properties, including those asserted in the Lone Star Proofs of Claim and all such Claims shall be expunged, discharged and released; and

(vi)     the Lone Star Entities and their Affiliates shall be deemed to have subordinated, for purposes of the Plan and receiving distributions hereunder, all Claims asserted against Consolidated Holdco in favor of Classes 3 H and 6 H if those applicable Classes do not vote to reject the Plan, and potentially Class 9 H, to the extent such Claims of the Lone Star Entities are not disallowed, so that any distributions that would be made to the Lone Star Entities on account of Claims against Consolidated Holdco on a pro rata basis (the "Subordinated Distributions") will first be distributed in accordance with this Plan to such non-rejecting Classes, or, with respect to the Holders of Class 9 H Claims, to Holders who elect to provide the Creditor Release, until such Claims are paid in full (which Subordinated Distributions shall not be subject to disgorgement).   The Plan Administrator shall distribute the Subordinate Distributions pursuant to the terms of the Plan and the Lone Star Entities and Affiliates have waived any rights of subrogation.

(e)     **Release of Settling Parties' Claims against the Lone Star Releasees and Plan Releasees.**

**Upon the Effective Date of the Plan, for good and valuable consideration, pursuant to the Plan, except as otherwise specifically provided for in the Plan, the Lone Star Releasees and Plan Releasees shall be released from all claims, potential claims, suits, debts, liens, contracts, agreements, promises, liabilities, demands, rights, costs, expenses, actions, causes of action, and damages of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, which any releasor**

identified below has or may have, or which have been asserted or could be asserted in the future, which are based upon, arise out of, or in any way relate to the Debtors or their business or operations (including the business or operations of the REIT and the other Non-Debtor Subsidiaries and any claims under Chapter 5 of the Bankruptcy Code or similar State or Federal law), by (i) the estates of the Consolidated Debtors and Consolidated Holdco, (ii) the non-debtor Affiliates of the Debtors, (iii) the REIT (subject to the carveout for certain insurance coverage claims set forth below), and (iv) the Committee.

(f)     Release of Creditors' Claims against the Lone Star Releasees and Plan Releasees.

Upon the Effective Date of the Plan, for good and valuable consideration, pursuant to the Plan, except as otherwise specifically provided for in the Plan, the Lone Star Releasees and Plan Releasees shall be released from all claims, potential claims, suits, debts, liens, contracts, agreements, promises, liabilities, demands, rights, costs, expenses, actions, causes of action, and damages of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, which any releasor identified below has or may have, or which have been asserted or could be asserted in the future, which are based upon, arise out of, or in any way relate to the Debtors or their business or operations (including the business or operations of the REIT and the other Non-Debtor Subsidiaries and any claims under Chapter 5 of the Bankruptcy Code or similar State or Federal law), by (i) individual creditors of the Consolidated Debtors in Class 3 C, (ii) individual creditors of Consolidated Holdco in Class 3 H, and, if applicable, Class 9 H, (iii) individual creditors making the Consolidated Debtors Convenience Class Election, and (iv) individual creditors making the Consolidated Holdco Convenience Class Election.

(g)     Mutual Releases Amongst Settling Parties.

Upon the Effective Date, for good and valuable consideration, each of the Trust Preferred Holders, the Trust Preferred Indenture Trustee, the REIT, the Lone Star Releasees, the Plan Releasees, the Debtors, the Non-Debtor Subsidiaries, the Committee, members of the Committee acting in their capacity as such, the REIT Committee, the members of the REIT Committee acting in their capacity as such, and Citigroup, effective pursuant to the Confirmation Order, shall, except as otherwise specifically provided for in the Plan, grant a full and complete release to each of the Lone Star Releasees, the Plan Releasees, the Trust Preferred Holders, the Trust Preferred Indenture Trustee, the REIT, the Debtors, the Non-Debtor Subsidiaries, the Committee, the members of the Committee acting in their capacity as such, the REIT Committee, the members of the REIT Committee acting in their capacity as such, and Citigroup and to their predecessor entities, Affiliates, successors and assigns and their respective professionals and advisors from all claims, potential claims, suits, debts, liens, contracts, agreements, promises, liabilities, demands, rights, costs, expenses, actions, causes of action, and damages of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, which the releasor has or may have, or which have been asserted or may be asserted in the

future, that are based upon, arise out of, or in any way relate to the Debtors or their business or operations related to the Debtors and their businesses (including related to the REIT and any other Non-Debtor Subsidiaries and Affiliates of the Debtors and their business or operations and any claims under Chapter 5 of the Bankruptcy Code or similar State or Federal law), including without limitation any and all claims or causes of action that were set forth or could have been set forth in any complaint or pleading filed by any of the foregoing in the Trust Preferred Adversary Proceeding, the REIT Adversary Proceedings or elsewhere; provided, however, that nothing contained herein or therein shall release any releasor's rights and claims under this Plan or the Allowed Claims granted to it under the Plan.

(h)     Notwithstanding any other provisions of the Plan, no current or former officer or director of any of the Lone Star Entities or of their Affiliates or subsidiaries or of the Debtors shall receive a release from the Debtors without providing (i) a mutual release to the Debtors and their estates, and (ii) a full release to the insurers set forth in Schedule B to the Plan Support Agreement and Term Sheet, the REIT and the other non-debtor subsidiaries of the Debtors for the matters released in the Plan, which for the convenience of the officers and directors shall be deemed granted as of the Effective Date of the Plan unless such officer or director objects on or prior to the hearing to consider confirmation of the Plan and a Final Order is entered sustaining such objection; provided, however, that restructuring advisors retained as officers of the Debtors pursuant to an order entered by the Bankruptcy Court shall retain any claims against the Insurers pursuant to any valid insurance policy.

(i)     Notwithstanding any other provisions of the Plan, the release of the Debtors' pre- and post-petition professionals and restructuring advisors retained or employed pursuant to §§ 363 and 327 of the Bankruptcy Code set forth in the Plan shall not include the release (i) of any claim for the avoidance of a preferential transfer under § 547 of the Bankruptcy Code, (ii) of any claim for the return of an unused retainer, or (iii) of any postpetition claim against a restructuring advisor employed under § 363 or an estate professional retained under § 327 and compensated under § 330 of the Bankruptcy Code (which restructuring advisors and retained professionals shall received the benefit of and the corresponding exclusion to the exculpation set forth in the Plan).

(j)     Notwithstanding any other provisions of the Plan, the foregoing releases shall not be construed to release any claims, rights or causes of action that any professional or restructuring advisor retained pre- or post-petition by the Debtors or their non-debtor Affiliates may have against its current or former employees.

(k)     Nothing in the Plan shall release any party from any of its obligations under the Plan.

(l)     Upon or after the Effective Date, the Liquidating Trustee, the Plan Administrator, and the parties to the Plan Support Agreement and Term Sheet will comply, without cost or expense to them, with any reasonable requests received from each other for written confirmation of the effectiveness of the releases as set forth herein.

(m)     The Consolidated Debtors, the Liquidating Trustee, Consolidated Holdco,. and the Holdco Plan Administrator shall agree and covenant not to make, assert or pursue any claim or commence any action or litigation against the Lone Star Releasees, **the Plan Releasees,** or the current and former directors and officers of the Debtors released as set forth herein or under or against the applicable D&O Policies; provided, however, that any release of current or former Directors and Officers of the Debtors as set forth in the Plan shall also be conditioned on such officer or director granting a full release of claims against the Consolidated Debtors and their respective properties (including all claims under or that could be asserted under filed proofs of claim, which claims shall be deemed expunged and relinquished).     Notwithstanding the foregoing, this provision will not limit, release or modify any Retained Advisor Indemnification Obligations or any rights of a restructuring advisor retained pursuant to an order of the Bankruptcy Court to coverage from an insurance policy of the Debtors for acts occurring during the period from the Petition Date through and including the Confirmation Date.

(n)     Each of these release provisions is an integral part of the Plan and is essential to its implementation.   These release provisions shall be effective pursuant to the Confirmation Order, without any further action.

## J.     Means for Implementation of the Plan

### 1.   Substantive Consolidation

Substantive consolidation is an equitable remedy that the Bankruptcy Court may be asked to apply in cases that involve affiliated debtors.  As contrasted with procedural consolidation, substantive consolidation may affect the substantive rights and obligations of creditors and debtors.  Substantive consolidation involves the pooling and merging of the assets and liabilities of the debtors in the substantively consolidated group; all of the debtors in that group are treated as if they were a single corporate and economic entity for purposes of the plan.  The consolidated assets create a single fund from which all claims against each of the consolidated debtors is satisfied.  Consequently, a creditor of one of the substantively consolidated debtors is treated as a creditor of the substantively consolidated group of debtors and issues of corporate ownership of property and individual corporate liability on obligations are ignored.   However, substantive consolidation does not affect the debtors' separate corporate existence or independent ownership of property for any purposes other than for making distributions of property under a plan of reorganization or otherwise as necessary to implement the plan.

The power to substantively consolidate interrelated bankruptcy estates arises from the general equitable powers of a Bankruptcy Court established in section 105(a) of the Bankruptcy Code.  Within this framework, the principal factors to which courts have looked to determine the propriety of substantive consolidation include: (i) whether creditors dealt with the debtor entities as a single economic unit and did not rely on their separate identities in extending credit, and (ii) whether the affairs of the debtors are so entangled that the consolidation will benefit all creditors of the debtors' estates.  Additional factors to be considered include: (i) the presence or absence of consolidated financial statements; (ii) the existence of inter-company guaranties or loans; (iii) the unity of interest and ownership between the various corporate entities; (iv) the transfer of assets without formal observance of corporate formalities; (v) the degree of difficulty in

segregating and ascertaining individual assets and liabilities; (vi) common directors and/or officers shared by the parents, affiliates and subsidiaries; (vii) a parent or its affiliates financing one another; and (viii) commingling of assets and business functions.

The Plan provides for the Estates of AHL, Inc., Inzura Services, Inc., and Windsor Management Co., d/b/a AHL Foreclosure Services Co. to be substantively consolidated for purposes related to the Plan and any distributions made thereunder. The Plan also provides for the Estate of Accredited Home Lenders Holding Co. to be substantively consolidated with the Estate of its wholly-owned subsidiary, Vendor Management Services, L.L.C, d/b/a Inzura Settlement Services. As discussed above, Intercompany Claims amongst the Estates being consolidated shall be released, all Claims against any of the Estates being consolidated shall be deemed filed against the relevant consolidated Estate, which shall be deemed a single obligation of the relevant Estate, and the Estates shall be effectively treated as one entity for purposes of distribution. The Debtors believe that the substantive consolidation of these Estates in this manner will facilitate confirmation of the Plan, foster similarity and fairness of treatment of Holders of Claims of similar priority, and will not have a materially adverse impact upon the distributions to unsecured creditors.

2.    Settlement Amongst the Estates

The allocation of certain Assets is an integral component of the comprehensive compromise and settlement concerning Intercompany Claims and intra-Debtor issues as determined in light of a number of facts, including, but not limited to, (i) respective legal claims, rights and entitlements of the Debtors, (ii) validity and enforceability of Intercompany Claims, (iii) Intercompany Claims not reflected as inter-company payables or receivables in the Debtors' books and records, (iv) relative value of Assets under administration in each Debtor, (v) Intercompany Claims for contribution or reimbursement, (vi) the necessity of resolving inter-Estate and inter-Debtor issues and disputes through the Plan, and (vii) administration and liquidation of Trust Assets unfettered or effected by inter-Estate or inter-Debtor conflicts of interest or multiple claims. As part of the process of settling the Intercompany Claims and intra-Debtor issues, AP Services performed an analysis of the administrative claims incurred by the Debtors on a project by project basis, the results of which have been factored into the proposed settlement among the estates.

In order to facilitate an orderly wind down of these estates, the Debtors have agreed to settle a number of disputes that may exist among the Debtors. Among the disputes that exist are the following:

- The potential cause of action between Holdco and AHL, Inc. relating to the transfer of ownership of AHL Canada from Holdco to AHL, Inc. and the transfer of ownership of the REIT from AHL, Inc. and Holdco;

- Intercompany Claims between AHL, Inc. and Holdco, including the scheduled Claim of Holdco against AHL, Inc.;

- A potential dispute among the Debtors over the ownership of the Tax Refunds;

- A potential dispute over the allocation of professional fees and administrative expenses among the various Debtors.

The general terms of the settlement set forth in the Plan include the following:

- The interests of AHL, Inc. in AHL Canada, the subsidiaries thereof, and the proceeds therefrom shall be transferred to Consolidated Holdco, and AHL Canada shall repay its obligations to AHL, Inc. By unwinding this transfer without litigation, AHL Canada's assets, which have an estimated undiscounted value of $25 to $30 million, will be distributed to the Consolidated Holdco Creditors;

- All Cash held by Vendor Management Services, Inc. will be transferred to Consolidated Holdco;

- The Consolidated Debtors shall be responsible for payment of Professional Fee Administrative Claims and CRO fees and expenses after receiving a $2 Million contribution from Consolidated Holdco;

- Any Tax Refunds received by the Debtors, any rights to receive any Tax Refunds, whether contingent, disputed, or unliquidated, and any proceeds of any Tax Refunds, shall be vested in the Liquidating Trust and shall be paid to the Liquidating Trust in the same manner that such Tax Refunds would be paid to the Debtors or original taxpayers, and shall be distributed to the Consolidated Debtors' Creditors, except for the portion of the Tax Refunds designated in the Plan for the Trust Preferred Holdco Distributions;

- The Common Securities in the Accredited Preferred Securities Trust I shall be transferred by Holdco to the Consolidated Debtors;

- The equity interest in the REIT held by Holdco shall be abandoned or abandoned and transferred to the REIT Preferred Holders as provided for in the Plan; and

- All rights and interests in the First American Trust FSB Deferred Compensation Trust settlement payment shall be transferred to the Liquidating Trust.

~~Further, all~~**On or before the Effective Date, AHL Canada will pay AHL, Inc. the amounts it owes on an intercompany basis. All other** intercompany claims between and among the Debtors shall be released~~.~~**, including the following intercompany claims, as listed on the schedules of liabilities as of the Petition Date that the Debtors filed with the Bankruptcy Court:**

| Obligor | Obligee | Scheduled Amount |
|---|---|---|
| AHL, Inc. | Holdco | $19,472,980 |
| AHL, Inc. | Inzura Insurance Services, Inc. | $5,064,952 |
| Vendor Management Svcs., LLC | AHL, Inc. | $894,917 |
| Windsor Management Co. | AHL, Inc. | $582,412 |
| Vendor Management Svcs., LLC | Inzura Insurance Services, Inc. | $458 |

3. <u>Injunction</u>

Since the Petition Date, the Debtors and their Assets have enjoyed the protection of the "automatic stay," a provision in section 362 of the Bankruptcy Code. The automatic stay prohibits, among other things, the commencement or continuation of a judicial, administrative, or other action or proceeding against the Debtors. The automatic stay also prohibits the enforcement of any judgment against the Debtors, any act to obtain possession of the Debtors' property or to exercise control over the Debtors' property, and any act to collect, assess, or recover a Claim against the Debtor. The automatic stay channels the Claims of Creditors through the bankruptcy process, thereby ensuring that equally-situated creditors receive equal treatment.

Under the Plan, the Court will enter an Injunction that will continue to provide the Debtors, the Liquidating Trust, the Liquidating Trustee, and their agents, successors, and assigns with the protections of the automatic stay until all distributions are made from the Liquidating Trust and the Bankruptcy Proceeding is closed.

However, this continuing Injunction shall not prohibit the commencement or continuation of any proceedings against the Debtors or real property in which the Debtors may have an interest, provided that those proceedings do not affect or give rise to any enforceable Claims against the Debtors, the Plan Administrator, the Liquidating Trust, the Liquidating Trustee, their respective agents, successors, and assigns, and their property. To the extent an un-stayed legal proceeding does give rise to a judgment, order, declaration, or claim that affects the Debtors, the Liquidating Trust, the Liquidating Trustee, the Plan Administrator their respective agents, successors, and assigns, and their property, such judgment, order, declaration, or claim shall be void.

This exception to the Injunction is designed to allow legal proceedings in which the Debtors must be included as nominal parties to continue as normal without further order of the Bankruptcy Court, while protecting the Assets of the Debtors and the Liquidating Trusts and ensuring that similarly-situated Claim Holders continue to receive equal treatment.

4. <u>United States Trustee Fees</u>

On and after the Effective Date, all fees payable to the United States Trustee shall be paid as and when due by the Liquidating Trustee, which payments shall be considered a reasonable expense of the Liquidating Trust.

5. <u>Continued Cooperation</u>

On or after the Effective Date, the Debtors, the Liquidating Trust, the Plan Administrator, the Liquidating Trustee, the Lone Star Releasees, **the Plan Releasees,** the REIT, the REIT Committee, the Trust Preferred Indenture Trustee, and the Trust Preferred Holders shall provide each other with such reasonable cooperation to effectuate the provisions of the Plan as may be reasonably requested, including, but not limited to, executing such documents as might be reasonably requested to carry out the terms of the Plan.

6. Consolidated Debtors' Continued Existence

From and after the Effective Date, the Consolidated Debtors shall remain in existence for the sole purpose of winding up the Debtors' businesses and transferring the Assets to the applicable Liquidating Trust and the Liquidating Trustee or its nominee shall be appointed officer and director of the Consolidated Debtors. Upon or before the completion of such liquidation, the Liquidating Trustee may file a certificate of dissolution as to each of the Consolidated Debtors. The Liquidating Trustee shall not be compelled to dissolve any Debtor if to do so would unduly burden the Liquidating Trust, notwithstanding any applicable law. On the Effective Date, the officers and the directors of the Debtors shall cease to serve and the Liquidating Trustee shall be deemed the sole director and officer of each Consolidated Debtor for all purposes. On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders or directors of one or more of the Debtors or Consolidated Holdco or Consolidated Debtors, shall be authorized and approved in all respects, in each case without further action under applicable law, regulation, order or rule. Without limiting the foregoing, from and after the Effective Date, Consolidated Holdco or the Consolidated Debtors shall take any and all actions deemed necessary or appropriate to consummate the transactions under the Plan, and such Entities shall not require the affirmative vote of the Holders of Interests in order to take any corporate action.

7. Consolidated Holdco's Continued Existence

From and after the Effective Date, Consolidated Holdco shall remain in existence for the sole purpose of winding up the Debtors' businesses, liquidating Consolidated Holdco Assets, and making distributions in accordance with this Plan. Upon or before the completion of such liquidation, the Plan Administrator may file a certificate of dissolution as to each of the Consolidated Holdco entities. The Plan Administrator shall not be compelled to dissolve any Debtor if to do so would unduly burden Consolidated Holdco, notwithstanding any applicable law. On the Effective Date, the officers and the directors of the Consolidated Holdco shall cease to serve and the Plan Administrator shall be deemed the sole director and officer of each Consolidated Holdco entity for all purposes. On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders or directors of one or more of the Debtors or Consolidated Holdco or Consolidated Debtors, shall be authorized and approved in all respects, in each case without further action under applicable law, regulation, order or rule. Without limiting the foregoing, from and after the Effective Date, Consolidated Holdco or the Consolidated Debtors shall take any and all actions deemed necessary or appropriate to consummate the transactions under the Plan, and such Entities shall not require the affirmative vote of the Holders of Interests in order to take any corporate action.

8. Debtors' Books and Records

On the Effective Date, the Consolidated Debtors' books and records, in any form, including all electronic records, shall be transferred to the Liquidating Trust, and the Consolidated Holdco books and records shall be vested with the Plan Administrator. Books and records that cannot be allocated amongst the Debtors shall be vested with the Consolidated Debtors. The Liquidating Trustee or the Plan Administrator shall be free, in his or her discretion,

to abandon, destroy, or otherwise dispose of those books and records in compliance with applicable non-bankruptcy law, provided, however that, in the sole discretion of the Plan Administrator or the Liquidating Trustee, as applicable, these books and records may be destroyed or disposed of beginning two (2) years after the Effective Date notwithstanding any applicable laws, rules, or regulations that would have required the Debtors to retain such books and records. While these books and records are retained, the Liquidating Trustee and the Plan Administrator shall take all reasonable steps necessary to comply with requests of the other to share the information contained therein with or provide copies of those books and records, at the expense of the requesting party.

9.   Privileges

All Privileges shall be transferred, assigned and delivered to the Liquidating Trust, or shall remain with Consolidated Holdco, as applicable without waiver or release, and shall vest with the Liquidating Trustee or Plan Administrator, as applicable. The Liquidating Trustee and Plan Administrator shall hold and be the beneficiary of all Privileges and entitled to assert all Privileges. No Privilege shall be waived by disclosures to the Liquidating Trustee or Plan Administrator of the Debtors' documents, information or communications subject to attorney-client privileges, work product protections or immunities or protections from disclosure jointly held by the Debtors and the Committee.

10.  Dissolution of Committee

On the fifth (5th) Business Date following the Effective Date, and provided the Liquidating Trust has become effective as provided under the Plan, the Committee will be dissolved and the Committee and its members shall be released and discharged from the rights and duties arising from or related to these chapter 11 cases and the retention or employment of the Committee professionals shall terminate, except with respect to final applications for professionals' compensation, provided that the Committee shall continue for the sole purpose of reviewing and taking any appropriate action (including, without limitation, filing objections thereto) in connection with Professional Fee Claims. The professionals retained by the Committee and the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered or expenses incurred after the fifth (5th) Business Day following the Effective Date, except for (i) services rendered and expenses incurred in connection with any applications by such professionals or Committee members for allowance of compensation and reimbursement of expenses pending on the Effective Date or timely Filed after the Effective Date as provided in this Plan, as approved by the Court, (ii) services rendered and expenses incurred as requested by the Committee in connection with Professional Fee Claims and (iii) services rendered or expenses incurred with respect to implementation or enforcement of the Plan. Notwithstanding the foregoing, the Committee may, at its own discretion, continue or resume its duties arising from or related to any pending litigation, contested matter, adversary proceeding or appeal to which it is a party and, in such a case, the Liquidating Trustee shall compensate the post-Effective Date fees and expenses of the Committee's professionals.

11.  Accredited Preferred Securities Trust I Termination.

74392.000009 EMF_US 29471070v2730

On the Effective Date all of the agreements and other documents evidencing the claim or right of any Holder against the Debtors pursuant to or related to the Trust Preferred Common Securities, Trust Preferred Guarantee, Trust Preferred Indenture, Trust Preferred Note, Trust Preferred Note Claims, and/or Trust Preferred Securities shall be (i) automatically cancelled, discharged, terminated, and of no further force and effect, and (ii) deemed surrendered without any further act by the Debtors or the Trust Preferred Indenture Trustee under any applicable agreement, law, regulation, order, or rule. However, the Trust Preferred Common Securities, Trust Preferred Guarantee, Trust Preferred Indenture, Trust Preferred Note, Trust Preferred Note Claims, and Trust Preferred Securities shall continue in effect solely for the purposes of (A) (i) permitting the Trust Preferred Indenture Trustee to make any distributions on account of Allowed Class 7 H Claims pursuant to this Plan and perform such other necessary administrative functions with respect thereto, (ii) permitting the Trust Preferred Indenture Trustee to receive any payments it is entitled to under the Trust Preferred Indenture and exercise any rights it is entitled to exercise under the Trust Preferred Indentures; and (B) permitting Kodiak CDO I Ltd., Kodiak CDO II Ltd., and the Trust Preferred Indenture Trustee (i) to continue to participate in the prosecution, mediation, or settlement of the Trust Preferred Adversary Proceeding, or to appeal any order or decision arising from the Trust Preferred Adversary Proceeding, and (ii) to bring any other action, suit, or proceeding against the Lone Star Entities or any other persons or entities (other than the Debtors) relating to, arising from, or in connection with the Trust Preferred Common Securities, Trust Preferred Guarantee, Trust Preferred Indenture, Trust Preferred Note, Trust Preferred Note Claims, and/or Trust Preferred Securities, and to participate in the prosecution, mediation, and/or settlement of such action, suit, or proceeding, or to appeal any order or decision in such action, suit, or proceeding, provided that such action is not a Consolidated Holdco Asset or Consolidated Debtors Asset.

## K. Executory Contracts and Unexpired Leases

The following shall be the treatment of Executory Contracts:

### 1. Rejection of Certain Executory Contracts

All executory contracts and unexpired leases, other than those executory contracts and unexpired leases which (i) were executed subsequent to the Petition Date, (ii) have not expired by their own terms prior to the Confirmation Date, (iii) were assumed prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court, or (iv) were identified in the Plan Supplement as being assumed and assigned under this Plan, shall be deemed rejected upon the Confirmation Date. Upon the Effective Date, all executory contracts and unexpired leases that (i) were executed subsequent to the Petition Date, (ii) were assumed prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court, or (iii) were identified in the Plan Supplement as being assumed and assigned under this Plan, shall either (i) be assumed by Consolidated Holdco, if such leases and contracts are with Consolidated Holdco, or (ii) be assumed by the Consolidated Debtors and assigned to the Liquidating Trust, if such leases and contracts are with the Consolidated Debtors. Unless otherwise agreed to by the parties to such lease or contract, or required by an Order of the Court, there shall be no cure costs or adequate protection payments required in connection with the assumption and assignment of such leases and contracts.

74392.000009 EMF_US 29471070v2730

2. Indemnification Agreements.

The obligations of the Debtors to indemnify any Person having served as an officer or director of the Debtors, to the extent provided in any of the Debtors' corporate governance documents or by written or other agreement or applicable law, shall be terminated and extinguished and, to any extent necessary, deemed an executory contract, terminated and rejected under the Plan, and such Person's rights to assert rejection damages claims arising there from, if any, shall be governed by Section 7.3 of the Plan. Notwithstanding the foregoing, this provision will not limit, release or modify any indemnification obligations to those persons who have served, during the period from and after the Petition Date, as officers of the Debtors pursuant to a court-approved retention or engagement letter (the "Retained Advisor Indemnification Obligations"). Notwithstanding any provision herein, no person making a claim with respect to indemnification obligation approved by the Bankruptcy Court shall be required to file a proof of claim with respect to such Retained Advisor Indemnification Obligations, and any right to payment with respect to such Retained Advisor Indemnification Obligations shall not be impacted by this Plan.

3. Employee Agreements.

On or before the Plan Supplement Filing Date, the Debtors will negotiate employment or consulting contracts with any current employees necessary to wind down the Debtors' Estates, with such contracts to be reasonably acceptable to the Committee. On the Effective Date, the Debtors' remaining employees will receive a payment equal to five (5) months' salary from the Consolidated Debtors, which payment shall be in satisfaction of any prior arrangements, agreements, or employment policies with the Debtors.

4. Insurance Policies.

To the extent that any and all insurance policies are considered executory contracts, then notwithstanding anything contained in the Plan to the contrary, such insurance policies that are policies of the Consolidated Debtors shall be deemed assumed and assigned to the Liquidating Trust, and such policies that are policies of Consolidated Holdco shall be assumed by Consolidated Holdco. Unless otherwise determined by the Bankruptcy Court, pursuant to a Final Order, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such policy. For the avoidance of any doubt, all rights under any insurance policy that is not an executory contract, and all rights under any other insurance policies under which the Debtors may be beneficiaries, shall be preserved, and, nothing herein shall alter or adversely affect the rights of any non-Debtor beneficiaries of or covered persons under such insurance policies.

5. Bar Date For Rejection Damage Claims

Any party to an executory contract or unexpired lease not previously assumed or rejected and to which no bar date has been established, which is assumed or rejected pursuant to this Plan or is the subject of a pending rejection motion, is required under the terms of this Plan to file a proof of claim for amounts due as a result of such assumption or rejection by the Rejection Bar

Date; provided, however, if a motion seeking assumption or rejection is not heard and determined prior to the Effective Date, any Claim based thereon shall be filed within thirty (30) days of entry of an Order ruling on the motion. Any Allowed Cure Claim relating to the assumption of executory contracts or leases pursuant to the Plan shall be paid in full from the Effective Date Distribution to the extent Finally Determined as of the Effective Date, or, to the extent thereafter, from an Interim Distribution or Subsequent Distribution by the Liquidating Trustee or Plan Administrator. Any such claim not filed by the Rejection Bar Date as provided in the Plan shall be forever barred and shall not be enforceable against the Debtors or their properties or the Liquidating Trust, and the Debtors and the Liquidating Trust shall have no obligation to pay the same.

## L.    Vesting of Assets

### 1.    Consolidated Debtors

Except as otherwise provided in the Plan, the Liquidating Trustee shall be vested, as of the Effective Date, with all of the Liquidating Trust Assets free and clear of all claims, liens, encumbrances, charges, and other interests of holders of Claims against, or Interests in, the Debtors and their Property.

### 2.    Consolidated Holdco

Except as otherwise provided in this Plan, Consolidated Holdco shall be vested, as of the Effective Date, with all of the Consolidated Holdco Assets free and clear of all claims, liens, encumbrances, charges, and other interests of Holders of Claims against, or Interests in, the Debtors and their Property.

### 3.    Unclaimed Property

Notwithstanding any local, state, federal, or other laws or regulations regarding unclaimed property or escheatment of property, all funds or other property possessed by the Debtors on the Effective that is unclaimed, subject to escheatment, or potentially subject to escheatment shall be treated as Assets of such Debtors under this Plan, and shall accordingly be transferred to, vested with, and become the property of the Debtors, Plan Administrator, or Liquidating Trustee to be held and distributed pursuant to the terms of this Plan free and clear of all such laws or regulations, and free and clear of any other claims, liens, encumbrances, charges, and other interests in such property.

## M.    Distributions

As set forth in the Plan, the Debtors, the Liquidating Trustee, or the Plan Administrator shall make all distributions under this Plan. To the extent required by applicable law, distributions that are Cash shall be in compliance with all tax withholding and reporting requirements imposed by any governmental unit, and all distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Debtors, the Disbursing Agent, the Liquidating Trustee, and the Plan Administrator may withhold the entire Cash distribution due to any holder of an Allowed Claim or Allowed Interest until such time as such holder

provides the necessary information to comply with any withholding requirements of any governmental unit.

1.  Manner of Cash Payments Under this Plan

Cash payments to domestic persons holding Allowed Claims or Allowed Interests will be tendered in United States dollars and will be made by checks drawn on a United States domestic bank or by wire transfer from a United States domestic bank. Any domestic person holding a Claim or Interest that wishes to receive a Cash payment by wire transfer shall provide wire instructions to the Debtors, the Liquidating Trustee, the Disbursing Agent, or the Plan Administrator. In any such case, the Debtors, the Liquidating Trustee, the Disbursing Agent, or the Plan Administrator shall make the Cash payment(s) by wire transfer in accordance with the wire instructions, provided that the costs of such wire transfer shall be deducted from such entity's distribution. Payments made to foreign creditors holding Allowed Claims or Allowed Interests may be paid or caused to be paid, at the option of the Debtors, the Disbursing Agent, the Plan Administrator, or the Liquidating Trustee, as applicable, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

2.  No *De Minimis* Distributions

Notwithstanding anything to the contrary in this Plan, no Cash payment of less than Fifty Dollars ($50) will be made to any Person. No consideration will be provided in lieu of the *de minimis* distributions that are not made under this provision, and the Debtors, the Liquidating Trustee after consultation with the Liquidating Trust Advisory Board, the Disbursing Agent, or the Plan Administrator shall be authorized to pay such amounts to the other holders of Allowed Claims or Allowed Interests.

3.  Distributions to Holders as of the Distribution Record Date

At the close of business on the Distribution Record Date, the claims register shall be closed, and there shall be no further changes in the record Holder of any Claim or Interest. The Debtors, Plan Administrator, Liquidating Trustee, the Disbursing Agent, or any other party responsible for making distributions under this Plan shall have no obligation to recognize any transfer of any Claim or Interest occurring after the Distribution Record Date; and shall instead be authorized and entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the claims register and stock transfer books as of the close of business on the Distribution Record Date.

74392.000009 EMF_US 29471070v2730

4.    Deemed Distributions to Subordinated Creditors

Wherever this Plan effectuates contractual or Plan subordination rights by requiring distributions that would be made to subordinated creditors to be distributed to other creditors, including but not limited to the provisions in Article 4 of this Plan, those distributions shall be deemed to have been made to the subordinated creditors and then transferred by those subordinated creditors to the creditors receiving those distributions pursuant to this Plan.

5.    Delivery of Distributions and Undeliverable/Unclaimed Distributions

(a)    Delivery of Distributions in General.

The Debtors, Plan Administrator, Disbursing Agent, or Liquidating Trustee shall make distributions to each Holder of an Allowed Claim by mail as follows: (a) to the address set forth on the proof of claim filed by such holder of an Allowed Claim; (b) to the address set forth in any written notice of address change delivered to counsel to the Debtors, Plan Administrator, Disbursing Agent, or Liquidating Trustee, as applicable, after the date of any related proof of claim; and (c) to the address reflected in the Schedules if no proof of claim is filed and the Debtors, Plan Administrator, Disbursing Agent, or Liquidating Trustee has not received a written notice of a change of address; provided, however, that the distributions to the Trust Preferred Holders shall be made to the Trust Preferred Indenture Trustee.

The Debtors, Plan Administrator, or Liquidating Trustee may withhold the entire distribution due to any Holder of an Allowed Claim or Allowed Interest until such time as the holder provides the Debtors, Plan Administrator, or Liquidating Trustee with the information necessary to make a distribution to such holder in accordance with this Plan and applicable law, and Holders of Allowed Claims or Allowed Interests who do not provide such information may be barred from participating in distributions under the Plan.

(b)    Undeliverable and Unclaimed Distributions.

If the distribution to the Holder of any Allowed Claim or Allowed Interest is returned as undeliverable, no further distribution shall be made to such Holder unless and until the Liquidating Trustee, Disbursing Agent, or Plan Administrator is notified in writing of such Holder's then current address. Insofar as a distribution is returned to the Liquidating Trustee or Plan Administrator as undeliverable, the Liquidating Trustee, Disbursing Agent, or Plan Administrator shall remit the undeliverable distribution back to the account established by the Liquidating Trustee or Plan Administrator as soon as is practicable. Subject to the other provisions of the Plan, undeliverable distributions shall remain in the possession of the Liquidating Trustee or Plan Administrator until such time as a distribution becomes deliverable. All undeliverable Cash distributions will be held in unsegregated, interest-bearing bank accounts for the benefit of the entities entitled to the distributions. These entities will be entitled to any interest actually earned on account of the undeliverable distributions. The bank account will be maintained in the name of the Liquidating Trustee, Disbursing Agent, or Plan Administrator, but it will be accounted for separately.

Any Holder of an Allowed Claim or Allowed Interest who does not assert a claim in writing for any undeliverable distribution within one (1) year after such distribution was first made shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any distributions under this Plan, or from asserting a Claim against or Interest in the Debtors, the Estate, or their respective property, and the Claim or Interest giving rise to the undeliverable distribution will be barred.

Any undeliverable distributions that are not claimed under this Section will be transferred to the account maintained by the Liquidating Trustee, Disbursing Agent, or Plan Administrator to be paid or caused to be paid to the other holders of Allowed Claims or Allowed Interests.

(c) Distributions of Consolidated Holdco Residual Assets and Liquidating Trust Residual Assets

The Plan Administrator shall hold the Consolidated Holdco Residual Assets in trust for the Holders of Claims against and Interests in Consolidated Holdco who are entitled to receive the same. The Plan Administrator shall hold no economic or beneficial interests in the Consolidated Holdco Residual Assets. The Liquidating Trustee shall hold the Liquidating Trust Residual Assets in trust for the Holders of Claims against and Interests in the Liquidating Trust and Consolidated Debtors, as applicable, who are entitled to receive the same. The Liquidating Trustee shall hold no economic or beneficial interests in the Liquidating Trust Residual Assets. With regard to these Residual Assets, the Plan Administrator and Liquidating Trustee shall be empowered to (i) take all steps and execute all documents and instruments necessary to effectuate the Plan, (ii) make distributions contemplated by the Plan, (iii) comply with the Plan and obligations thereunder, and (iv) exercise such powers as may be vested by the Plan, order of the Bankruptcy Court, or deemed by the Plan Administrator or Liquidating Trustee to be necessary and proper to implement the provisions of the Plan.

(d) Fees and Expenses Incurred in Distributing Consolidated Holdco Residual Assets and Liquidating Trust Residual Assets.

The reasonable fees and expenses incurred by the Plan Administrator, including, without limitation, reasonable fees and expenses of counsel, in disbursing the Consolidated Holdco Residual Assets shall be paid in Cash from such assets without further application to or approval from the Bankruptcy Court. The reasonable fees and expenses incurred by the Liquidating Trustee, including, without limitation, reasonable fees and expenses of counsel, in disbursing the Liquidating Trust Residual Assets shall be paid in Cash from such assets without further application to or approval from the Bankruptcy Court.

N. **Exculpations**

**Neither the Debtors nor their officers, directors, managers, employees, professionals, restructuring advisors, or the Committee and its professionals and advisors and members in their capacity as members of the Committee and their respective professionals and advisors, the Liquidating Trust, the Liquidating Trustee, Disbursing Agent, nor the Plan Administrator will have or incur any liability to any holder of a Claim**

or Interest or any other entity for any act or omission in connection with, in preparation for, or arising out of, the Bankruptcy Proceeding or the cases, including but not limited to the formulation, preparation, dissemination, approval, confirmation, execution, administration, or consummation of the Plan Support Agreement and Term Sheet, the Plan or the Disclosure Statement, the solicitation of votes for or confirmation of the Plan, or implementation, consummation, or administration of the Plan or the property to be distributed under the Plan, or any compromises and settlements under the Plan, except for liability arising from conduct constituting willful misconduct or gross negligence pursuant to a Final Order; provided, however, that except as provided in Section 3.1(b) of the Plan, such exculpation shall not be deemed or construed in any way to limit or impair a party in to object or challenge the allowance or payment or seek disgorgement of any professional's fees and expenses in connection with any interim or final fee application including resolution or adjudication of any pending objections or reservations by any such party in interest. The foregoing parties will be entitled to rely upon the advice of counsel in all respects regarding their duties and responsibilities under the Plan. Notwithstanding the foregoing, Sec. 12.3 of the Plan shall not be construed to release any claims, rights or causes of action that any professional or restructuring advisor retained pre- or post-petition by the Debtors or their non-debtor Affiliates may have against its current or former employees.

O.     **Preservation of Debtors' Causes of Action**

The Plan provides for the continuance of Consolidated Holdco and establishment of the Liquidating Trusts to, in part, prosecute or settle and reduce to Cash Debtor and estate claims not released under the Plan. The assets of the Liquidating Trust will include Debtor and estate claims. The resolution and recovery of these Debtor and estate claims and the process and mechanisms to litigate or settle these claims are significant and important aspects of the Plan. These claims include, but are not limited to, Debtor and estate claims against non-released officers and directors of the Debtors, professionals of the Debtors, accountants and auditors of the Debtors and affiliates and insiders of the Debtors. Unless a claim against a Creditor or other Entity or Cause of Action is expressly waived, relinquished, released, compromised or settled in this Plan, or any Final Order, the Debtors expressly reserve such claim or Cause of Action for later enforcement by the Consolidated Holdco or the Liquidating Trust (including, without limitation, claims and Causes of Action not specifically identified or which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances which may change or be different from those which the Debtors no believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the confirmation or consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, expect where such claims or Causes of Action have been expressly released in this Plan or other Final Order. In addition, the Consolidated Holdco and the Liquidating Trust expressly reserve the right to pursue or adopt any claim, crossclaim or counterclaims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any person or entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, subject to the provisions of this Plan or any Final Order.

74392.000009 EMF_US 29471070v2730

## P.    Plan Injunction

From and after the Confirmation Date, and as provided for by the Confirmation Order, there shall be in place with regard to the Debtors, the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Assets, the Disbursing Agent, the Consolidated Debtors, the Consolidated Debtors Assets, the Plan Administrator, Consolidated Holdco, Consolidated Holdco Assets, and any Claims, the Injunction, which shall have the same extent and with the same effect as the stay imposed by § 362 of the Bankruptcy Code, as modified by orders entered by the Bankruptcy Court in this Bankruptcy Proceeding, except as provided in this Plan.  The Injunction will remain in effect until the Bankruptcy Proceeding is closed pursuant to § 350 of the Bankruptcy Code except as otherwise expressly provided.  Except as provided elsewhere in the Plan, all Holders of Claims or Interests shall be precluded and enjoined by the Injunction from asserting any Claim against the Debtors, the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Assets, the Consolidated Debtors, the Consolidated Debtors Assets, the Plan Administrator, Consolidated Holdco, Consolidated Holdco Assets, and their respective agents, successors, and assigns, and also from asserting any other and further Claim based on any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, against the Debtors, the Liquidating Trust, the Liquidating Trustee, and the Plan Administrators, as representatives of the Estates, as well as their successors or their respective agents, successors, and assigns, whether or not the holder filed a proof of claim, and shall be enjoined from commencing or continuing, directly or indirectly, in any manner, any action or proceeding of any kind on any such Claim or Interest, or the enforcement, attachment, collection, or recovery by any manner or means, or creating, perfecting, or enforcing any encumbrance.  Nothing in the Plan shall prohibit an action against the Debtors and only the Debtors and their assets after dissolution of the Injunction.

Notwithstanding the rest of the Plan, the Injunction imposed herein shall not apply to prevent the commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtors or any real property in which the Debtors may have an interest; provided, however, that any order entered or judgment, fine, sanction, penalty, declaration, determination, or monetary award assessed against the Debtors in such an action proceeding may not be enforced against the Debtors, the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust, the Plan Administrator, their Assets, and their respective agents, successors, and assigns, that such an award or determination shall not give rise to an Allowed Claim, and that any judgment, fine, sanction, penalty, declaration, determination, award, or other action which affects property of the Debtors, the Liquidating Trust, the Liquidating Trustee, or the Plan Administrator, creates personal liability for the agents, successors, and assigns of the Debtors, or creates personal liability for the Consolidated Debtors, the Liquidating Trust, the Liquidating Trustee, the Plan Administrator, and their respective agents, successors, and assigns, shall be void.  Nothing in the Plan shall prevent the Court from modifying the Injunction at the request of any party, upon notice and a hearing.

**Q.     Conditions Precedent to Effective Date of Plan.**

The occurrence of the Effective Date and the substantial consummation of the Plan are subject to the satisfaction of the following conditions precedent:

(a)     The receipt by the Consolidated Debtors, the Disbursing Agent, or the Liquidating Trustee of (i) the Lone Star Creditor Release Settlement Payment, (ii) the Lone Star Consolidated Debtors Settlement Payment, and (iii) the Consolidated Holdco Professional Fee Claim Payment;

(b)     The receipt by Consolidated Holdco or the Plan Administrator of the Lone Star Advance;

(c)     The Confirmation Order shall be entered by the Bankruptcy Court;

(d)     The Confirmation Order shall be in form and substance reasonably acceptable to the Debtors, the Committee, the REIT, and the Lone Star Entities;

(e)     The Plan Support Agreement and Term Sheet shall not have terminated by its terms;

(f)     The Bankruptcy Court shall have determined that the compromises and settlements set forth in the Plan are appropriate, reasonable, and fair, and such compromises and settlements have been approved;

(g)     The Debtors and the parties to the Plan Support Agreement and Term Sheet shall have sufficient Cash and assets to permit compliance with the terms and conditions of the Plan and the Plan Support Agreement and Term Sheet, including but not limited to projected fees and expenses, and payment of the Trust Preferred Holdco Distributions plus the Lone Star Trust Preferred Settlement Payment in an amount equal to Forty Million Dollars ($40,000,000);

(h)     The Bankruptcy Court shall have approved and authorized the documents and agreements in the Plan Supplement;

(i)     The Liquidating Trust is created pursuant to the terms of the Plan once the Bankruptcy Court has appointed the Liquidating Trustee and approved the Liquidating Trust Agreement in form and substance acceptable to the Committee;

(j)     The Bankruptcy Court has appointed the Plan Administrator and approved the Plan Administrator Retention Agreement in form and substance acceptable to the Committee and the REIT; and

(k)     All other actions and documents necessary to implement the Plan shall have been executed and effected.

74392.000009 EMF_US 29471070v2730

To the extent practicable and legally permissible, each of the conditions, other than 11.1(a), (b), (c), (d), (e), and (f) may be waived, in whole or in part, by the Debtors, subject to approval of the Committee and, the Lone Star Entities, the REIT, and the Trust Preferred Indenture Trustee.

## R.    Retention of Jurisdiction

### 1.    General Scope of Retention of Jurisdiction

Following the Effective Date, the Bankruptcy Court shall retain jurisdiction over these Cases to the extent legally permissible, including without limitation such jurisdiction as is necessary to ensure that the purposes and intent of the Plan are carried out.

### 2.    Claims and Actions

The Bankruptcy Court shall retain jurisdiction (a) to classify, resolve objections to, and determine or estimate pursuant to Bankruptcy Code § 502(c) all Claims against, and Interests in, the Debtors and (b) to adjudicate and enforce all claims and causes of action owned by the Debtors or the Liquidating Trust.

### 3.    Specific Jurisdiction

Without in any way limiting the scope of the Bankruptcy Court's retention of jurisdiction over these Cases as otherwise set forth in the Plan, the Bankruptcy Court shall retain jurisdiction for the following specific purposes:

(a) To determine the classification, allowance or disallowance of all Claims or Interests, including, without limitation, Claims and objections relating to the assumption or rejection of executory contracts or unexpired leases pursuant to this Plan, and to hear and determine any and all objections to such Claims or Interests including, without limitation, Claims and objections relating to the assumption of executory contracts or unexpired leases pursuant to this Plan;

(b) To enable the Liquidating Trustee or Plan Administrator to commence, prosecute, settle, compromise, or abandon any and all claims or Causes of Action of the Debtors;

(c) To adjudicate all Claims to a security or ownership interest in any Property of the Debtors or in any proceeds thereof;

(d) To liquidate damages or estimate Claims in connection with any Disputed Claims or contingent or unliquidated Claims;

(e) To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, consummation, or performance of this Plan including, but not limited to, any matters related to the Plan Support Agreement and Term Sheet, as well as all controversies, suits, and disputes that may be pending before the Bankruptcy Court on or before the Confirmation Date or may be brought thereafter;

(f)  To determine and Allow all expenses of administration of the Bankruptcy Proceeding, including, without limitation, all requests for Professional Fees for periods prior to the Effective Date;

(g)  To recover all Assets and Property of the Debtors, wherever located;

(h)  To interpret, construe or enforce this Plan, the Confirmation Order or any order previously entered by the Bankruptcy Court in this case;

(i)  To hear, determine and enforce any and all Causes of Action, to set aside liens or encumbrances, to recover any transfers, assets or damages to which the Estate may be entitled, to avoid or recover any preferences, fraudulent conveyances, or obligations, or other obligations or transfers voidable or subject to avoidance under applicable provisions of the Bankruptcy Code or other federal, state, or local law, or to subordinate or disallow, in whole or in part, any Claim, under applicable provisions of the Bankruptcy Code or other federal, state, or local law;

(j)  To consider and determine any proposed modification or amendment of the Plan;

(k)  To make any determination necessary or appropriate under § 505 of the Bankruptcy Code or other determination relating to taxes paid or payable by the Debtors, Plan Administrator, or Liquidating Trust, Tax Refunds due to the Debtors, Plan Administrator, or the Liquidating Trusts, and tax returns filed or to be filed by the Debtors, Plan Administrator,  or the Liquidating Trusts, for all periods through the end of the fiscal year in which the Effective Date occurs;

(l)  To implement the provisions of this Plan and enter any orders in aid of its implementation or in furtherance of its purposes and intent;

(m) To make such orders as the Bankruptcy Court deems necessary or appropriate to carry out the provisions, purposes, or intent of this Plan;

(n)  To adjudicate any dispute with respect to any obligations of the Debtors, the Liquidating Trust, and the Plan Administrator, including any fees requested by professionals employed by the Liquidating Trust or Plan Administrator; and

(o)  To determine such other matters and for such other purposes as may be provided in the Confirmation Order.

74392.000009 EMF_US 29471070v2730

4.  Failure of Bankruptcy Court to Exercise Jurisdiction

If the Bankruptcy Court abstains from exercising, declines to exercise, or is otherwise without jurisdiction over any matter arising out of the Cases, the provisions of the Plan shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

5.  Modification of the Plan

At any time before the Confirmation Date, the Plan or Plan Supplement may be modified by the Debtors, subject to the consent of the Committee, the Lone Star Entities, the Trust Preferred Holders, the Trust Preferred Indenture Trustee, the REIT, and the REIT Committee which consent, to the extent such modifications do not adversely affect the rights, treatment, benefits or obligations of the respective parties or constituencies, or the substance of the economic provisions set forth in the Plan, shall not be unreasonably withheld, upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of §§ 1122 & 1123 of the Bankruptcy Code. In the event that there is a modification of the Plan, then the Plan as modified shall become the Plan.

At any time after the Confirmation Date, but before substantial consummation of the Plan, the Plan or Plan Supplement may be modified by the Debtors, subject to the consent of the Committee, the Lone Star Entities, the Trust Preferred Holders, the Trust Preferred Indenture Trustee, the REIT, and the REIT Committee, which consent, to the extent such modifications do not adversely affect the rights, treatment, benefits or obligations of the respective parties or constituencies, or the substance of the economic provisions set forth in the Plan, shall not be unreasonably withheld, upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of §§ 1122 &1123 of the Bankruptcy Code. The Plan, as modified under this section, becomes a Plan only if the Court, after notice and hearing, confirms such Plan, as modified, under § 1129 of the Bankruptcy Code.

At any time after the Confirmation Date, the applicable Debtors may, without the approval of the Court, remedy any defect or omission, or reconcile any such inconsistencies in the Plan or Plan Supplement or in the Confirmation Order, as such matters may be necessary to carry out the purposes, intent, and effect of this Plan, provided that they do not materially or adversely affect the interests of creditors or other entities, subject to the terms of the Lone Star Settlement and the Plan Support and Term Sheet and upon consultation with the Committee.

6.  Revocation and Withdrawal of the Plan

The Debtors reserve the right to revoke or withdraw the Plan at any time before entry of a Confirmation Order. If the Debtors, or one of the individual Debtors, as the case may be, revoke or withdraw the Plan prior to the Confirmation Date, or if the confirmation or the Effective Date does not occur with respect to one or more of the Debtors, then the Plan shall be deemed to be null and void as to that Estate. In such event, nothing contained herein, in the Plan or in any document relating to the Plan shall be deemed to constitute an admission of validity, waiver or

release of any Claims by or against the Debtors or any Person or to prejudice in any manner the rights of the Debtors or any Person in any proceeding involving the Debtors.

7. Sections 1145 and 1146(a) Exemption

To the maximum extent provided by § 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance under the Plan of the beneficial interests in the Liquidating Trust will be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder.

Pursuant to Bankruptcy Code § 1146(a), the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, or the re-vesting, transfer or sale of any real or personal property of the Debtors or the Liquidating Trust pursuant to, in implementation of, or as contemplated by the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.

8. No Admission of Liability.

The submission of the Plan is not intended to be, nor shall it be construed as, an admission or evidence in any pending or subsequent suit, action, proceeding or dispute of any liability, wrongdoing, or obligation whatsoever (including as to the merits of any claim or defense) by any Entity with respect to any of the matters addressed in the Plan.

None of the Plan (including, without limitation, the Exhibits thereto), or any settlement entered, act performed or document executed in connection with the Plan: (i) is or may be deemed to be or may be used as an admission or evidence of the validity of any claim, or any allegation made in any of the related actions or of any wrongdoing or liability of any Entity; (ii) is or may be deemed to be or may be used as an admission or evidence of any liability, fault or omission of any Entity in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; or (iii) is or may be deemed to be or used as an admission or evidence against the Debtors, or any other Person or Entity with respect to the validity of any Claim. None of the Plan or any settlement entered, act performed or document executed in connection with the Plan shall be admissible in any proceeding for any purposes, except to carry out the terms of the Plan Support Agreement and Term Sheet and the Plan, and except that, once confirmed, any Entity may file the Plan in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on the principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense of counterclaim.

9. Plan Governs

To the extent that the terms of this Disclosure Statement or the Plan are inconsistent with the terms of any agreement or instrument concerning any Claim, any Interest or any other matter, the terms of the Plan shall control.

10. <u>Governing Law</u>

Expect to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent any document entered into in connection with the Plan so provides, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of Delaware, without giving effect to the principles of conflicts of law.

## VI. **CONFIRMATION AND CONSUMMATION PROCEDURE**

### A.    **Disclosure and Solicitation**

This Disclosure Statement is presented to the Holders of Claims and Interests that are entitled to vote on the Plan to satisfy the requirements Sections 1125 and 1126 of the Bankruptcy Code. Section 1125 of the Bankruptcy Code requires that full disclosure be made to all Holders of Claims and Interests in impaired Classes that receive or retain property pursuant to a plan at the time, or before, solicitation of acceptances of such plan is commenced.

### B.    **Acceptance of the Plan**

As more fully stated in Section III of this Disclosure Statement, the Bankruptcy Code defines acceptance of a plan by a Class of creditors or interest-holders as acceptance by holders of more than two-thirds in dollar amount and more than one-half in number of the Claims of that Class that have timely voted on a plan. A vote may be disregarded if the Court determines, after notice and a hearing, that such acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

A vote to accept or reject the Plan can only occur by proper submission of a duly executed Ballot. Failure of a holder to vote does not constitute a vote to reject the Plan by that holder. Each Holder of a Claim or Interest should seek such independent legal and/or business advice as it deems appropriate regarding whether to vote to accept or reject the Plan.

### C.    **Classification**

The Debtors are required under Section 1122 of the Bankruptcy Code to classify the Claims and Interests into Classes that contain Claims and Interests that are substantially similar to the other Claims or Interests in such Class. The Plan can be confirmed so long as there is at least one consenting Class of impaired Claims under the Plan (not including the votes of insiders), and so long as the other requirements for confirmation are met.

### D.    **Confirmation**

The Bankruptcy Code requires the Court, after notice, to hold a Confirmation Hearing. At the Confirmation Hearing, the Court will confirm the Plan only if all the requirements of Section 1129 of the Bankruptcy Code are met. Among the requirements for Confirmation of a plan are that the Plan be (i) accepted by all impaired Classes of Claims and Interests or, if rejected by an impaired Class, that the Plan "not discriminate unfairly" and be "fair and

equitable" as to such impaired Class; (ii) feasible; and (iii) in the "best interests" of rejecting Holders of Claims and Interest impaired under the Plan.

1.  Acceptance

In order for the Plan to be Confirmed, one impaired class of Consolidated Holdco and one impaired class of the Consolidated Debtors (not including the votes of insiders) must accept the Plan. For classes of Claims that have rejected the Plan, the Court must determine that the Plan is "fair and equitable" with respect to the rejecting classes. The "fair and equitable" test is described below under the heading *Confirmation Without Acceptance by All Impaired Classes*.

2.  Feasibility

Under Section 1129(a)(11) of the Bankruptcy Code, to confirm the Plan, the Court must find that the Plan is feasible—that is, that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization unless such liquidation or reorganization is proposed in the Plan. Since the Plan proposes liquidation, and since the Liquidating Trust will have the assets necessary to accomplish this liquidation, the Debtors believe that the Plan is feasible.

3.  Best Interests Test

With respect to each impaired Class, confirmation of the Plan requires that each Holder of an Allowed Claim or Allowed Interest in such Class either (i) accepts the Plan or (ii) receives or retains under the Plan property of a value, as of the Effective Date, that is not less than the value such Holder would receive or retain if Debtors were liquidated under Chapter 7 of the Bankruptcy Code.

Under the Debtor's Liquidation Analysis attached as Exhibit B hereto, the Debtors estimate that each class of creditors will receive at least as much property under this Plan as they would receive in a Chapter 7. See Section IX, *Alternatives to Confirmation and Consummation of the Plan*, and the Debtors' Liquidation Analysis attached as Exhibit B hereto for a further discussion of why Debtors believe that the Plan is in the best interests of Holders of Claims and Interests.

4.  Confirmation Without Acceptance By All Impaired Classes

The Bankruptcy Code provides that, so long as at least one Class of Claims that is impaired under the Plan accepts the Plan (without respect to the votes cast by insiders), the Debtors may seek confirmation of the Plan over the objections of any non-consenting Class, provided that the Debtors demonstrate that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting Classes. These "cramdown" provisions for confirmation of the Plan, despite the non-acceptance of one or more impaired Classes of Claims or Interests, are set forth in Bankruptcy Code § 1129(b).

The Bankruptcy Code establishes different "fair and equitable" tests for Holders of Secured Claims, Unsecured Claims and Interests. The respective tests are as follows:

(a)    Secured Creditors

Either (i) each impaired Holder of Secured Claim of the rejecting Class (a) retains its liens in the collateral securing such Claim or in the proceeds thereof to the extent of the Allowed amount of the Secured Claim and (b) receives deferred Cash payments in at least the Allowed amount of such Secured Claim with a present value at the Effective Date at least equal to such creditor's interest in its collateral or in the proceeds thereof or (ii) the Plan provides each impaired Holder of a Secured Claim with the "indubitable equivalent" of its Secured Claim.

(b)    Unsecured Creditors

Either (i) each impaired Holder of an Unsecured Claim of the rejecting Class receives or retains under the Plan property of a value equal to the amount of its Allowed Claim or (ii) the Holders of Claims and Interests that are junior to the Claims of the dissenting Class do not receive or retain any property under the Plan.

(c)    Interest Holders

Either (i) each Interest Holder of the rejecting Class receives or retains under the Plan property of a value equal to the greater of (a) the fixed liquidation preference or redemption prices, if any, of the Interest it holds or (b) the value of such Interest or (ii) the Holders of Interests that are junior to such Interest do not receive or retain any property under the Plan.

The Debtors believe that the Plan meets the applicable tests described above, even in the event that it is rejected by the Holders of one or more Classes of Claims and Interests.

## VII.  CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The following discussion is a general summary of certain material U.S. federal income tax consequences of the Plan to the Debtors and the Holders of certain Claims and Interests. This discussion is based on current provisions of the Internal Revenue Code of 1986, as amended (the "Tax Code"), applicable Treasury Department regulations promulgated thereunder ("Treasury Regulations"), judicial authority and current administrative rulings and pronouncements of the Internal Revenue Service (the "Service"). There can be no assurance that the Service will not take a contrary view. No ruling from the Service has been or will be sought nor will any counsel provide a legal opinion as to any of the expected tax consequences set forth below.

Legislative, judicial or administrative changes or interpretations may be forthcoming that could alter or modify the statements and conclusions set forth herein. Any such changes or interpretations may or may not be retroactive and could affect the tax consequences to the Holders of Claims or Interests and the Debtors. It cannot be predicted whether any tax legislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the tax consequences to Holders of Claims or Interests and the Debtors.

The following discussion is for general information only. The tax treatment of a Holder of a Claim or Interest may vary depending upon such Holder's particular situation. In addition, this summary does not address foreign, state or local tax consequences of the Plan, nor does it address federal income tax consequences of the Plan to special classes of taxpayers (such as foreign taxpayers, broker-dealers, banks, mutual funds, insurance companies, other financial institutions, small business investment companies, regulated investment companies, real estate investment trusts, U.S. persons whose functional currency is not the U.S. dollar, traders that mark-to-market their securities, taxpayer subject to the alternative minimum tax, tax-exempt organizations (including, without limitation, certain pension funds), persons holding an equity interest as part of an integrated constructive sale, hedge, conversion transaction or straddle, pass-through entities and investors in pass-through entities). Furthermore, this summary does not address U.S. federal taxes other than income taxes.

**EACH HOLDER OF A CLAIM OR INTEREST SHOULD CONSULT ITS TAX ADVISOR AS TO THE PARTICULAR TAX CONSEQUENCES TO IT OF THE PLAN, INCLUDING THE APPLICABILITY OF ANY U.S. FEDERAL, STATE, LOCAL OR FOREIGN TAX LAWS.**

**INTERNAL REVENUE SERVICE CIRCULAR 230 DISCLOSURE**

**TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE INTERNAL REVENUE SERVICE, THE HOLDERS OF CLAIMS OR INTERESTS ARE HEREBY NOTIFIED THAT: (A) ANY UNITED STATES FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS OR INTERESTS FOR THE PURPOSE OF AVOIDING UNITED STATES FEDERAL TAX PENALTIES, (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE DEBTORS OF THE TRANSACTION OR MATTERS ADDRESSED HEREIN AND (C) HOLDERS OF CLAIMS OR INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISER.**

**A.      Tax Treatment of the Liquidating Trust**

The Liquidating Trust is intended to be treated for federal income tax purposes as a grantor trust. Assuming the Liquidating Trust qualifies as a grantor trust for federal income tax purposes, the Holders of Class 3 C Claims, Class 4 C Claims and Class 5 C Claims may be treated as the grantors of the Liquidating Trust, the Liquidating Trust should be disregarded for tax purposes as an entity separate from the grantors, and the grantors would report the income and loss from the Liquidating Trust. Under the Plan, the transfer of Cash and any remaining assets of the Consolidated Debtors to the Liquidating Trust may be treated for federal income tax purposes as if the Consolidated Debtors distributed an interest in each of the assets  transferred directly to the Holders of Class 3 C Claims, Class 4 C Claims and Class 5 C Claims in  exchange for their outstanding Claims against the Consolidated Debtors. The Holders of Class 3 C Claims, Class 4 C Claims and Class 5 C Claims would then be deemed to contribute their interest in these assets to the Liquidating Trust.

If the Liquidating Trust is not treated for federal income tax purposes as a grantor trust, then the Liquidating Trust may be classified as a partnership for federal income tax purposes, in which case the Holders of Class 3 C Claims, Class 4 C Claims, and Class 5 C Claims would be treated as partners in the partnership. Unlike a grantor trust, the partnership would be treated as an entity required to compute income and loss, file tax returns, and make tax elections, but income and loss would pass through to the partners to be reported by them on their separate tax returns. If the Liquidating Trust is treated as a partnership for federal income tax purposes, the transfer of Cash and any remaining assets of the Consolidated Debtors to the Liquidating Trust under the Plan may be treated for federal income tax purposes as if the Consolidated Debtors had distributed an interest in each of the assets so transferred directly to the Holders of Class 3 C Claims, Class 4 C Claims and Class 5 C Claims in exchange for their outstanding Claims against the assets or stock of the Consolidated Debtors. The Holders of Class 3 C Claims, Class 4 C Claims and Class 5 C Claims would then be deemed to contribute their interest in these assets to the Liquidating Trust in for an interest in the Liquidating Trust.

## B.  Federal Income Tax Consequences of the Plan to the Debtors

Generally, a debtor will recognize gain or loss on the sale of its assets in an amount equal to the sum of the Cash and the fair market value of property received less the debtor's adjusted tax basis in the assets sold. A debtor that transfers an asset in payment for a debt will be treated for federal income tax purposes as having sold the asset for its fair market value. Under the Plan, each of the Debtors will recognize gain or loss the transfer of its assets to the Holders of Claims to the extent that the difference between fair market value of the assets transferred and that Debtor's tax basis in such assets.

In addition, a taxpayer recognizes cancellation of indebtedness ("COD") income upon satisfaction of its outstanding indebtedness for less than its adjusted issue price. The amount of COD income is, in general, the excess of (i) the amount of the indebtedness satisfied, over (ii) the amount of Cash and the fair market value of any other consideration (including any new indebtedness issued by the taxpayer or stock of the taxpayer) given in exchange for the indebtedness satisfied. Under this rule, Consolidated Holdco would recognize COD income under the Plan to the extent the amount of the Consolidated Holdco debt cancelled exceeds the sum of the fair market value of the assets (including Cash) used to pay the Holders of Class 6 H Claims. Similarly under this rule, the Consolidated Debtors would recognize COD income under this Plan to the extent the amount of Consolidated Debtors' debt cancelled exceeds the sum of the fair market value of the assets (including Cash) contributed to the Liquidating Trust and the fair market value of the assets (including Cash) used to pay the Holders of Class 6 C Claims. However, COD income is not included in gross income to a debtor if the discharge occurs in a formal Title 11 bankruptcy case. The Plan, if approved, would enable both Consolidated Holdco and the Consolidated Debtors to qualify for this bankruptcy exclusion rule with respect to any COD income triggered by the Plan.

If debt is discharged in a formal Title 11 bankruptcy case, however, certain tax attributes otherwise available and of value to the debtor are reduced, in most cases by the principal amount of the indebtedness forgiven. Tax attributes subject to reduction include:  (a) NOLs and NOL carryforwards; (b) most credit carryforwards, including the general business credit and minimum

tax credit; and (c) capital losses and capital loss carryforwards. Attribute reduction is calculated only after the tax for the year of discharge has been determined.

The Debtors anticipate that none of the Debtors will not incur any taxable income for federal income tax purposes as a result of the transfer of assets as provided in the Plan that will not be offset by NOLs. Accordingly, the implementation of the Plan should not result in any federal income tax liability (other than AMT liability) to any of Debtors.

In general, an alternative minimum tax ("AMT") is imposed on a corporation to the extent such corporation's tentative minimum tax, determined by multiplying its "alternative minimum taxable income" by the corporate AMT rate of 20%, exceeds the corporation's regular federal income tax. For purposes of computing taxable income for AMT purposes, certain tax deductions and other beneficial allowances are modified or eliminated. In particular, even though a corporation otherwise might be able to offset all of its taxable income for regular tax purposes by available NOL carryovers, only 90% of a corporation's taxable income for AMT purposes may be offset by available NOL carryovers (as computed for AMT purposes) and subject to the AMT at a 20% rate, yielding an effective rate of 2% (calculated by multiplying the 20% tax rate by the 10% of alternative minimum taxable income not offset by NOL carryovers). The Debtors do not anticipate that the Plan will generate a significant amount, if any, of federal AMT liability.

## C. Federal Income Tax Consequences of the Plan to Holders of Claims or Interests

In general, Holders of Claims or Interests will recognize income, gain or loss on their Claims or Interests as set forth below. The character of any gain or loss as capital or ordinary gain or loss (or ordinary income) and, in the case of capital gain or loss, as short-term or long-term, will depend on a number of factors, including: (i) the nature and origin of the Claim or Interest; (ii) the tax status of the Holder of the Claim or Interest; (iii) whether the Claim or Interest has been held for more than one year; and (iv) the extent to which the Holder previously claimed a loss or bad debt deduction with respect to the Claim.

### 1. Consequences to Holders of Claims Against Consolidated Holdco

(a) Consequences to Holders of Class 1 H and Class 2 H Claims

Holders of Class 1 H or Class 2 H Claims may receive specified fixed amounts from Consolidated Holdco in exchange for these Claims on the date of payment thereof. Accordingly, the Debtors believe that a Holder of a Class 1 H or Class 2 H Claim should generally recognize gain or loss in an amount equal to the Cash received (plus the fair market value of other property received, if any) with respect to its Claim (other than any amounts attributable to accrued by unpaid interest) less its adjusted tax basis in its Claim (other than for accrued but unpaid interest).

(b) Consequences to Holders of Class 3 H Claims, Class 4 H Claims, Class 5 H Claims, and Class 6 H Claims

The Debtors believe that a Holder of a Class 3 H Claim, Class 4 H Claim, Class 5 H Claim or Class 6 H Claim (collectively, a "Consolidated Holdco Claim") as of the Effective Date should be treated as receiving from Consolidated Holdco their share of the Consolidated Holdco Assets in satisfaction of each such Consolidated Holdco Claim. A Holder of a Consolidated Holdco Claim may recognize a taxable loss (or gain) to the extent the amount realized by such Holder in respect of its Consolidated Holdco Claim, excluding accrued interest, is less (or greater) than the Holder's tax basis in such Consolidated Holdco Claim, excluding any Claim for accrued interest. The amount realized by a Holder of a Consolidated Holdco Claim should be equal to the amount of Cash and the fair market value of any other consideration received pursuant to the Plan. If a Holder of a Consolidated Holdco Claim receives distributions from Consolidated Holdco in more than one tax year, such Holder should consult with its own tax advisor as to the timing of the recognition of income, gain, or loss.

Notwithstanding the foregoing, it is possible that the Service may assert that any income, gain, or loss by Holders of Consolidated Holdco Claims should be deferred until Plan Administrator makes the final distributions of the Consolidated Holdco Assets. In addition, a Holder's ultimate share of the Consolidated Holdco Assets may differ from the initial estimates thereof. This may result in a Holder having to recognize additional or offsetting income or gain or loss if, and to the extent, that, the aggregate amount of Cash and the fair market value of property received by that Holder differs from the amount used in initially determining that Holder's any income, gain or loss. Holders of Consolidated Holdco Claims should consult their own tax advisors regarding the possibility that the recognition of income, gain or loss may be accelerated or deferred.

(c)     Consequences to Holders of Class 7 H Claims

Holders of Class 7 H Claims will receive specified fixed amounts from Consolidated Holdco in an amount equal to 65% of each such Claim in exchange for these Claims on the date of payment thereof. Accordingly, the Debtors believe that a Holder of a Class 7 H Claim should generally recognize gain or loss in an amount equal to the Cash received (plus the fair market value of other property received, if any) with respect to its Claim (other than any amounts attributable to accrued by unpaid interest) less its adjusted tax basis in its Claim (other than for accrued but unpaid interest).

(d)     Consequences to Holders of Class 8 H Claims

Holders of Class 8 H Claims will receive their proportionate part of the Lone Star Trust Preferred Settlement Payment and the Trust Preferred Holdco Distributions. A holder of a Class 8 H Claim will recognize a taxable loss (or gain) to the extent that the amount realized by such Holder in respect to its Class 8 H Claim, excluding accrued interest, is less (or greater) than the Holder's tax basis in such Class 8 H Claim, excluding any Claim for accrued interest. The amount realized by a Holder of a Class 8 H Claim should be equal to the amount of Cash and the fair market value of any other consideration received pursuant to the Plan. If a Holder of a Class 8 H Claim receives distributions with respect to its Class 8 H Claim in more than one tax year, such Holder should consult with its own tax advisor as to the timing of the recognition of income, gain, or loss.

74392.000009 EMF_US 29471070v2730

(e)     Consequences to Holders of Class 9 H and 10 H Claims

Under the Plan, Holders of Class 9 H and 10 H Claims will recognize a taxable loss (or gain) to the extent that amount realized by each such Holder in exchange for their Class 9 H or 10 H Claim is less (or greater) than such Holder's tax basis in their Class 9 H or 10 H Claim exchanged therefor. The amount realized by a Holder of a Class 9 H or 10 H Claim should be equal to the amount of Cash and the fair market value of any other consideration received from Consolidated Holdco, if any, pursuant to the Plan, in the event the Holders of Class 3 H, Class 4 H, and Class 6 H Claims are paid in full.

(f)     Consequences to Holders of Class 11 H Interests

Under the Plan, Holders of Class 11 H Interests will recognize a taxable loss (or gain) to the extent the amount realized by each such Holder in exchange for their Interest is less (or greater) than such Holder's tax basis in their Interest exchanged therefore. The amount realized by the Holder of a Class 11 H Interest should be equal to the amount of Cash and the fair market value of any other consideration received from Consolidated Holdco if any, pursuant to the Plan, in the event the Holders of Class 3 H, Class 4 H, Class 5 H, Class 6 H, Class 9 H, and Class 10 H Claims are paid in full. The gain or loss should be a capital gain provided the Holder held their Class 11 H Interest as a capital assets within the meaning of Tax Code Section 1221 at the effective time of the Plan.

2.     Consequences to Holders of Claims Against Consolidated Debtors

(a)     Consequences to Holders of Class 1 C and Class 2 C Claims

Holders of Class 1 C or Class 2 C Claims may receive specified fixed amounts from Consolidated Debtors in exchange for these Claims on the date of payment thereof. Accordingly, the Debtors believe that a Holder of a Class 1 C or Class 2 C Claim should generally recognize gain or loss in an amount equal to the Cash received (plus the fair market value of other property received, if any) with respect to its Claim (other than any amounts attributable to accrued by unpaid interest) less its adjusted tax basis in its Claim (other than for accrued but unpaid interest).

(b)     Consequences to Holders of Class 3 C Claims

The Debtors believe that a Holder of a Class 3 C Claim as of the Effective Date should be treated as receiving from the Consolidated Debtors their share of the respective assets transferred to the Liquidating Trust in satisfaction of each such Class 3 C Claim and simultaneously transferring such assets to the Liquidating Trust. Assuming the Liquidating Trust is taxed as a grantor trust or as a partnership for federal income tax purposes, under the Plan, a Holder of a Class 3 C Claim may recognize a taxable loss (or gain) to the extent the amount realized by such Holder in respect of its Class 3 C Claim, excluding accrued interest, is less (or greater) than the Holder's tax basis in such Class 3 C Claim, excluding any Claim for accrued interest. The amount realized by a Holder of a Class 3 C Claim should be equal to the amount of Cash and the fair market value of any other consideration received pursuant to the Plan (including any amounts received from the Lone Star Creditor Release Settlement Payment). If a Holder of a

Class 3 C Claim receives distributions from the Liquidating Trust in more than one tax year, such Holder should consult with its own tax advisor as to the timing of the recognition of income, gain, or loss. Additionally, the Debtors believe that Holders of Class 3 C Claims should recognize their allocable share of taxable income on the assets transferred to the Liquidating Trust on an annual basis.

Notwithstanding the foregoing, it is possible that the Service may assert that any income, gain, or loss by Holders of Class 3 C Claims should be deferred until the Liquidating Trustee makes the final distributions from the Liquidating Trust. In addition, a Holder's ultimate share of the assets of the Liquidating Trust based on its Class 3 C Claim may differ from the initial estimates thereof. This may result in a Holder having to recognize additional or offsetting income or gain or loss if, and to the extent, that, the aggregate amount of Cash and the fair market value of property received by that Holder from the Liquidating Trust differs from the amount used in initially determining that Holder's any income, gain or loss. Holders of Class 3 Claims should consult their own tax advisors regarding the possibility that the recognition of income, gain or loss may be accelerated or deferred.

(c)     Consequences to Holders of Class 4 C Claims

The Debtors believe that a Holder of a Class 4 C Claim as of the Effective Date should be treated as receiving from the Consolidated Debtors their share of the respective assets transferred to the Liquidating Trust in satisfaction of each such Class 4 C Claim and simultaneously transferring such assets to the Liquidating Trust. Assuming the Liquidating Trust is taxed as a grantor trust or as a partnership for federal income tax purposes, under the Plan, a Holder of a Class 4 C Claim may recognize a taxable loss (or gain) to the extent the amount realized by such Holder in respect of its Class 4 C Claim, excluding accrued interest, is less (or greater) than the Holder's tax basis in such Class 4 C Claim, excluding any Claim for accrued interest. The amount realized by a Holder of a Class 4 C Claim should be equal to the amount of Cash and the fair market value of any other consideration received pursuant to the Plan. If a Holder of a Class 4 C Claim receives distributions from the Liquidating Trust in more than one tax year, such Holder should consult with its own tax advisor as to the timing of the recognition of income, gain, or loss. Additionally, the Debtors believe that Holders of Class 4 C Claims should recognize their allocable share of taxable income on the assets transferred to the Liquidating Trust on an annual basis.

Notwithstanding the foregoing, it is possible that the Service may assert that any income, gain, or loss by Holders of Class 4 C Claims should be deferred until the Liquidating Trustee makes the final distributions from the Debtors Liquidating Trust. In addition, a Holder's ultimate share of the assets of the Liquidating Trust based on its Class 4 C Claim may differ from the initial estimates thereof. This may result in a Holder having to recognize additional or offsetting income or gain or loss if, and to the extent, that, the aggregate amount of Cash and the fair market value of property received by that Holder from the Liquidating Trust differs from the amount used in initially determining that Holder's any income, gain or loss. Holders of Class 4 Claims should consult their own tax advisors regarding the possibility that the recognition of income, gain or loss may be accelerated or deferred.

(d)     Consequences to Holders of Class 5 C Claims

The Debtors believe that a Holder of a Class 5 C Claim as of the Effective Date should be treated as receiving from the Consolidated Debtors their share of the respective assets transferred to the Liquidating Trust in satisfaction of each such Class 5 C Claim and simultaneously transferring such assets to the Liquidating Trust. Assuming the Liquidating Trust is taxed as a grantor trust or as a partnership for federal income tax purposes, under the Plan, a Holder of a Class 5 C Claim may recognize a taxable loss (or gain) to the extent the amount realized by such Holder in respect of its Class 5 C Claim, excluding accrued interest, is less (or greater) than the Holder's tax basis in such Class 5 C Claim, excluding any Claim for accrued interest. The amount realized by a Holder of a Class 5 C Claim should be equal to the amount of Cash and the fair market value of any other consideration received from the Liquidating Trust, if any, pursuant to the Plan in the event the Holders of Class 3 C and Class 4 C Claims are paid in full. If a Holder of a Class 5 C Claim receives distributions from the Liquidating Trust in more than one tax year, such Holder should consult with its own tax advisor as to the timing of the recognition of income, gain, or loss. Additionally, the Debtors believe that Holders of Class 5 C Claims should recognize their allocable share of taxable income on the assets transferred to the Liquidating Trust on an annual basis.

Notwithstanding the foregoing, it is possible that the Service may assert that any income, gain, or loss by Holders of Class 5 C Claims should be deferred until the Liquidating Trustee makes the final distributions from the Liquidating Trust. In addition, a Holder's ultimate share of the assets of the Liquidating Trust based on its Class 5 C Claim may differ from the initial estimates thereof. This may result in a Holder having to recognize additional or offsetting income or gain or loss if, and to the extent, that, the aggregate amount of Cash and the fair market value of property received by that Holder from Liquidating Trust differs from the amount used in initially determining that Holder's any income, gain or loss. Holders of Class 5 Claims should consult their own tax advisors regarding the possibility that the recognition of income, gain or loss may be accelerated or deferred.

(e)     Consequences to Holders of Class 6 C Claims

Holders of Class 6 C Claims will receive specified fixed amounts from Consolidated Holdco in an amount equal to 75% of each such Claim in exchange for these Claims on the date of payment thereof. Accordingly, the Debtors believe that a Holder of a Class 6 C Claim should generally recognize gain or loss in an amount equal to the Cash received (plus the fair market value of other property received, if any) with respect to its Claim (other than any amounts attributable to accrued by unpaid interest) less its adjusted tax basis in its Claim (other than for accrued but unpaid interest).

(f)     Consequences to Holders of Class 7 C Claims

Under the Plan, Holders of Class 7 C Claims will recognize a taxable loss (or gain) to the extent that amount realized by each such Holder in exchange for their Class 7 C Claim is less (or greater) than such Holder's tax basis in their Class 7 C Claim exchanged therefor. The amount realized by a Holder of a Class 7 C Claim should be equal to the amount of Cash and the fair

market value of any other consideration received from the Liquidating Trust, if any, pursuant to the Plan, in the event the Holders of Class 3 C, Class 4 C, and Class 5 C Claims are paid in full.

      (g)    Consequences to Holders of Class 8 C Claims

Under the Plan, Holders of Class 8 C Claims will recognize a taxable loss (or gain) to the extent that amount realized by each such Holder in exchange for their Class 8 C Claim is less (or greater) than such Holder's tax basis in their Class 8 C Claim exchanged therefor. The amount realized by a Holder of a Class 8 C Claim should be equal to the amount of Cash and the fair market value of any other consideration received from the Liquidating Trust, if any, pursuant to the Plan, in the event the Holders of Class 3 C, Class 4 C, Class 5 C Claims, and Class 7 C Claims are paid in full.

      (h)    Consequences to Holders of Class 9 C Claims

Under the Plan, Holders of Class 9 C Claims will recognize a taxable loss (or gain) to the extent that amount realized by each such Holder in exchange for their Class 9 C Claim is less (or greater) than such Holder's tax basis in their Class 9 C Claim exchanged therefor. The amount realized by a Holder of a Class 9 C Claim should be equal to the amount of Cash and the fair market value of any other consideration received from the Liquidating Trust, if any, pursuant to the Plan, in the event the Holders of Class 3 C, Class 4 C, Class 5 C Claims, Class 7 C, and Class 8 C Claims are paid in full.

      (i)    Consequences to Holders of Class 10 C Interests

Under the Plan, Holders of Class 10 C Interests will recognize a taxable loss (or gain) to the extent the amount realized by each such Holder in exchange for their Interest is less (or greater) than such Holder's tax basis in their Interest exchanged therefore. The amount realized by the Holder of a Class 10 C Interest should be equal to the amount of Cash and the fair market value of any other consideration received from the Liquidating Trust, if any, pursuant to the Plan, in the event the Holders of Class 3 C, Class 4 C, Class 5 C, Class 8 C, and Class 9 C Claims are paid in full. The gain or loss should be a capital gain provided the Holder held their Class 9 C Interest as a capital assets within the meaning of Tax Code Section 1221 at the effective time of the Plan.

    3.    <u>Interest Income</u>

Taxable interest income earned on the assets held by the Liquidating Trust will be reported as taxable income to the Holders of Class 3 C, Class 4 C and Class 5 C Claims on an annual basis and will be taxable to such Holders in accordance with their method of tax accounting. In addition, Holders of Claims will be treated as receiving a payment of interest (includible in income in accordance with the Holder's method of accounting for tax purposes) to the extent that any Cash or other property received (or deemed received) pursuant to the Plan is attributable to accrued but unpaid interest, if any, on such Claim. Each Holder should consult its own tax advisor regarding the determination of the amount of consideration received under the Plan that is attributable to interest (if any).

4. <u>Gain or Loss from Subsequent Sales</u>

Any taxable gains or losses on a subsequent sale of assets (other than Cash) held by the Liquidating Trust will be reported as taxable gain or taxable loss to the Holders with interests in the liquidating trust on an annual basis and will be taxable to such Holders in accordance with their method of tax accounting. The amount of such gain or loss realized by each Holder with respect to each such sale will be the difference between the portion of the amount realized on such sale allocable to such Holder and the portion of the tax basis in such asset sold allocable to such Holder. Each Holder should consult its own tax advisor regarding the possibility of recognizing gain or loss on any assets (other than Cash) owned by the Liquidating Trust and the timing and character of any income or loss recognized with respect to any such sales.

5. <u>Backup Withholding and Information Reporting</u>

In general, a Holder of a Claim may be subject to backup withholding at the applicable rate with respect to any "reportable" payments received pursuant to the Plan unless (i) such Holder is a corporation or comes within certain other exempt categories and, when required, demonstrates this fact or (ii) provides to the Debtor and/or the Liquidating Trust (on IRS Form W-9) a correct taxpayer identification number, certifies as to no loss of exemption from backup withholding and complies with applicable requirements of backup withholding rules. A Holder that does not provide a correct taxpayer identification number may be subject to penalties imposed by the Service. Amounts withheld under the backup withholding rules may be credited against a Holder's tax liability, and a Holder may obtain a refund of any excess amounts withheld under the backup withholding rules by filing the appropriate claim for refund with the Service.

The Liquidating Trustee will report annually to each Holder of a Class 3 C, Class 4 C , Class 5 C, and Class 6 C Claim such Holder's share of income, gains and losses of the Consolidated Liquidating Trust during the calendar year to the extent required by law.

The Debtors and the Liquidating Trust will withhold from distributions provided under the Plan any amount which is required by law to be withheld, and will also comply with all applicable reporting requirements of the United States Tax Code and other applicable law. In order to receive distributions, creditors must provide the Debtors and/or the Liquidating Trust with the information needed to allow the Debtors and/or the Liquidating Trust to comply with applicable law.

# VIII. <u>CERTAIN RISK FACTORS AND OTHER CONSIDERATIONS</u>

**A. Forward Looking Statements in this Disclosure Statement May Prove to be Inaccurate**

Many of the statements included in this Disclosure Statement contain forward-looking statements and information relating to the Debtors. These forward-looking statements are generally identified by the use of terminology such as "may," "will," "could," "should," "potential," "continue," "expect," "intend," "plan," "estimate," "project," "forecast," "anticipate," "believe," or similar phrases or the negatives of such terms. These statements are

based on the beliefs of management as well as assumptions made using information currently available to management. Such statements are subject to risks, uncertainties and assumptions, as well as other matters not yet known or not currently considered material by management. Should one or more of these risks or uncertainties materialize, or should underlying assumptions prove incorrect, actual results may vary materially from those anticipated, estimated or projected. Given these risks and uncertainties, you are cautioned not to place undue reliance on such forward-looking statements. Forward-looking statements do not guarantee future performance. You should recognize these statements for what they are and not rely on them as facts. None of the Debtors undertakes any obligation to update or revise any of these forward-looking statements to reflect new events or circumstances after the date of this Disclosure Statement.

## IX. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Debtors have evaluated and considered several alternatives to the Plan including other plan structures. After studying and considering these alternatives, the Debtors have concluded that the Plan is the best option and will maximize recoveries to creditors.

If the Plan is not confirmed or consummated, the alternatives include, in addition to dismissal of the Cases, (i) liquidation of the Debtors under chapter 7 of the Bankruptcy Code or (ii) an alternative chapter 11 plan.

### A. Liquidation Under Chapter 7

If no plan can be confirmed or the Court determines other cause exists for conversion, the bankruptcy cases may be converted to cases under chapter 7 of the Bankruptcy Code. In this event, a chapter 7 trustee would be elected or appointed to liquidate the assets of the Debtors for distribution to creditors in accordance with priorities established by the Bankruptcy Code.

The Debtors believe that conversion to chapter 7 and the appointment of one or more chapter 7 trustees would result in substantial additional Administrative Claims related to the attorneys and other professionals necessary to assist such trustee(s) and their need to study extensively these bankruptcy cases in order to fulfill their fiduciary duties, as well as the significant delays attendant to the chapter 7 trustee's need to analyze issues and research the background of the Debtors, their assets, their liabilities, their intra-debtor claims, and make a recovery analysis. Indeed, the Debtors' Liquidation Analysis concludes that under a chapter 7 liquidation, creditors would not recover as much as they would under the Plan. If the cases were converted the intra-debtor and inter-estate claims and issues would not be resolved. The Debtors believe that there would be additional costs and expense and risks and uncertainties with respect to intra-debtor and intra-estate disputes and issues that would need to be resolved or litigated. A copy of the Liquidation Analysis is Annexed hereto as Exhibit B.

### B. Alternative Plan(s) of Reorganization

If the Debtors' exclusive period to file a plan of reorganization and solicit acceptances of a plan of reorganization expires pursuant to § 1121 of the Bankruptcy Code, other parties could propose their own plans of reorganization for the Debtors. The Debtors believe that the

112

transactions reflected in the Plan and this Disclosure Statement will result in quicker and higher recoveries for all constituencies than any alternative scenario.

The Debtors believe that confirmation and implementation of the Plan are preferable to either of the above-described alternatives and recommend that all Creditors vote in favor of the Plan.

## X. **CONCLUSION**

The Debtors believe that acceptance of the Plan is in the best interest of Creditors and recommend that you vote to accept the Plan.

74392.000009 EMF_US 29471070v2730

**PACHULSKI STANG ZIEHL & JONES LLP**

---

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:    ljones@pszjlaw.com
          joneill@pszjlaw.com
          kmakowski@pszjlaw.com

-and-

**HUNTON & WILLIAMS LLP**

Gregory G. Hesse (Texas Bar No. 09549419)
Lynnette R. Warman (Texas Bar No. 20867940)
Jesse T. Moore (Texas Bar No. 24056001)
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Telephone: (214) 979-3000
Telecopy: (214) 880-0011
Email:    ghesse@hunton.com
          lwarman@hunton.com
          jtmoore@hunton.com

ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION

Document comparison done by Workshare DeltaView on Monday, April 04, 2011 7:59:28 PM

| Input: | |
|---|---|
| Document 1 | interwovenSite://EMF_US/HW_US/29471070/27 |
| Document 2 | interwovenSite://EMF_US/HW_US/29471070/30 |
| Rendering set | H&W |

| Legend: | |
|---|---|
| **Insertion** | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 219 |
| Deletions | 143 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 362 |